No. 23-35136

# In The United States Court Of Appeals For The Ninth Circuit

MAVERICK GAMING LLC,

*Plaintiff – Appellant*,

v.

UNITED STATES OF AMERICA, *et al.*,

*Defendants – Appellees*,

SHOALWATER BAY TRIBE,

*Intervenor – Defendant – Appellee.*

On Appeal From the United States District Court for the
Western District of Washington
Case No. 3:22-cv-05325-DGE

The Honorable David G. Estudillo

**EXCERPTS OF RECORD (VOLUME 1 OF 1)**

THEODORE B. OLSON
MATTHEW D. MCGILL
LOCHLAN F. SHELFER
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Phone: 202.955.8668
Email: tolson@gibsondunn.com

*Counsel for Plaintiff-Appellant*

**INDEX**

| Document | D. Ct. ECF No. | ER Pages |
|---|---|---|
| Judgment in a Civil Case (Feb. 21, 2023) | 99 | ER-4 |
| Order Granting Limited Intervenor Shoalwater Bay Tribe's Motion to Dismiss (Dkt. No. 85) (Feb. 21, 2023) | 98 | ER-5–20 |
| Federal Defendants' Response to Shoalwater Bay Indian Tribe's Motion to Dismiss | 94 | ER-21–28 |
| Limited Intervenor Shoalwater Bay Tribe's Motion to Dismiss (Oct. 3, 2022) | 85 | ER-29–63 |
| Order Granting Shoalwater Bay Tribe's Motion for Limited Intervention (Sept. 29, 2022) | 84 | ER-64–71 |
| Order Granting Motion for Relief from Summary Judgment Deadlines (Aug. 22, 2022) | 81 | ER-72–79 |
| Letters Approving Compact Amendment Between the Shoalwater Bay Indian Tribe and the State of Washington (Sept. 10, 2021) | 67-9 | ER-80–83 |
| First Amended Complaint (July 5, 2022) | 66 | ER-84–126 |

| | | |
|---|---|---|
| Order on Stipulated Motion for Relief from Deadlines and for Briefing Schedule on Dispositive Cross-Motions (June 28, 2022) | 63 | ER-127–133 |
| Complaint (Jan. 11, 2022) | 1 | ER-134–175 |
| Notice of Appeal (Feb. 22, 2023) | 100 | ER-176–178 |
| Civil Docket for *Maverick Gaming LLC v. United States*, No. 3:22-cv-05325-DGE (W.D. Wash.) | | ER-179–198 |

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

MAVERICK GAMING LLC,

                        Plaintiff,

    v.

UNITED STATES OF AMERICA et al.,

                        Defendant.

**JUDGMENT IN A CIVIL CASE**

CASE NUMBER. 3:22-cv-5325-DGE

☐ **Jury Verdict**. This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court**. This action came to consideration before the Court. The issues have been considered and a decision has been rendered.

THE COURT HAS ORDERED THAT

Limited Intervenor Shoalwater Bay Indian Tribe of the Shoalwater Bay Indian

Reservation's ("Shoalwater") motion to dismiss (Dkt. No. 85) is GRANTED and Maverick's

claims are dismissed without prejudice

Dated February 21, 2023.

Ravi Subramanian
Clerk of Court

s/Michael Williams
Deputy Clerk

**ER4**

1
2
3
4
5
6
7

8        UNITED STATES DISTRICT COURT
       WESTERN DISTRICT OF WASHINGTON
9              AT TACOMA

10

11   MAVERICK GAMING LLC,                    CASE NO. 3:22-cv-05325-DGE

                    Plaintiff,               ORDER GRANTING LIMITED
12        v.                                 INTERVENOR SHOALWATER
                                             BAY TRIBE'S MOTION TO
13   UNITED STATES OF AMERICA et al.,        DISMISS (DKT. NO. 85)

14                  Defendants.

15

16              **I      INTRODUCTION**

17        This matter comes before the Court on Limited Intervenor Shoalwater Bay Indian Tribe

18   of the Shoalwater Bay Indian Reservation's ("Shoalwater") motion to dismiss (Dkt. No. 85) for

19   failure to join a required party pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19.

20   Having reviewed the briefing of the parties, the Court finds that Shoalwater is a required party

21   that cannot be joined and therefore GRANTS Shoalwater's motion.

22
23
24

ORDER GRANTING LIMITED INTERVENOR SHOALWATER BAY TRIBE'S MOTION TO DISMISS (DKT.
NO. 85) - 1

**II      BACKGROUND**

Plaintiff Maverick Gaming LLC ("Maverick") brings suit to challenge Washington state's tribal gaming monopoly.  (*See* Dkt. No. 66 at 4.)

**A.  Legal Framework**

The Indian Gaming Regulatory Act ("IGRA") was passed in 1988 after the Supreme Court's decision in *California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987), which overturned existing state laws regulating gaming on tribal lands.  *See Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1018 (9th Cir. 2002).

IGRA creates a classification system for different kinds of gaming.  "Class I includes social games for prizes of minimal value and traditional forms of Indian gaming. Class II includes bingo, similar games, and certain card games.  Class III comprises all games not in classes I or II. Slot machines, keno, and blackjack are Class III games." *Id.* at 1019 (internal citations omitted).  IGRA further provides that Class III gaming is permitted on tribal lands only where such activities are authorized by the tribe, "located in a State that permits such gaming for any purpose by any person, organization, or entity, and . . . conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State."  25 U.S.C. § 2710(d). Failure to operate pursuant to these provisions may subject a tribe to criminal liability under multiple statutes, including IGRA.  *See, e.g.*, 18 U.S.C. § 1166.

Once a tribe and a state have entered into a Tribal-State compact, they must submit the compact to the Secretary of Interior ("Secretary") for approval.  *Amador Cnty., Cal. v. Salazar*, 640 F.3d 373, 377 (D.C. Cir. 2011).  The Secretary may "approve the compact; he may disapprove the compact, but only if it violates IGRA or other federal law or trust obligations; or

ORDER GRANTING LIMITED INTERVENOR SHOALWATER BAY TRIBE'S MOTION TO DISMISS (DKT. NO. 85) - 2

1  he may choose to do nothing, in which case the compact is deemed approved after forty-five

2  days" to the extent the compact complies with IGRA.  *Id.*

3        Washington makes offering most forms of gaming a crime.  *See* Wash. Rev. Code §

4  9.46.222.  Nonetheless, starting in the 1990s the State slowly agreed to gaming compacts with

5  Washington's federally recognized tribes.  (Dkt. No. 87-1 at 11.)  Tribal gaming provides

6  significant economic benefits to the tribes themselves and also the State and local communities.

7  *See generally The Economic & Community Benefits of Tribes in Washington, Wash. Indian*

8  *Gaming Ass'n*, (May 2022), https://bit.ly/3RGO8Ri.

9        In March 2020, the Washington legislature passed a new bill permitting sports betting at

10  tribal casinos and gaming facilities.  *See* Wash. Rev. Code § 9.46.0368.  Sports betting otherwise

11  remains illegal in the State.  The State has steadily entered into amended compacts with

12  Washington's tribes permitting them to operate sports betting operations and the Secretary has

13  approved these amended compacts.  (Dkt. No. 66 at 17–19; *see generally* Dkt. No. 67.)

14     **B.  Procedural Background**

15        Maverick "owns and operates 18 cardrooms in Washington and owns several

16  hotel/casinos in Nevada and Colorado."  (*Id.* at 4.)  Maverick hopes to expand its gaming

17  operations further in Washington but alleges that "it is unable to proceed because of

18  Washington's criminal prohibitions of most forms of class III gaming."  (*Id.*)  Maverick's

19  complaint alleges the Secretary acted unlawfully when they approved Washington's compact

20  amendments for sports betting because these amendments violated IGRA and the Fifth

21  Amendment's equal protection clause.  (Dkt. No. 66 at 33–34.)  Maverick brings suit against the

22  United States Department of Interior as well as responsible federal officials (together the "United

23  States") and various state officials ("Washington State Defendants"). (*See generally id.*)

24

ORDER GRANTING LIMITED INTERVENOR SHOALWATER BAY TRIBE'S MOTION TO DISMISS (DKT. NO. 85) - 3

1      Maverick filed its initial complaint on January 11, 2022.  (Dkt. No. 1.)  On July 5, 2022,

2  Maverick filed an amended complaint.  (Dkt. No. 66.)  Shoalwater moved to intervene on August

3  3, 2022 (Dkt. No. 68) and the Court granted Shoalwater's motion for limited intervention on

4  September 29, 2022  (Dkt. No. 84).  On October 3, 2022, Shoalwater filed its motion to dismiss

5  for failure to join a required party.  (Dkt. No. 85.)  A group of federally recognized Indian

6  nations ("Amici" or "Tribes") moved to submit an amicus brief (Dkt. No. 87), which this Court

7  granted (Dkt. No. 91).  On October 24, 2022, the federal government filed its response to

8  Shoalwater's motion to dismiss.  (Dkt. No. 94.)  The United States supported the motion but

9  disagreed with some of the bases for the motion.  (*See id.* at 6.)  The Washington State

10  Defendants also filed a response in support of the motion.  (Dkt. No. 95.)  Maverick filed its

11  response in opposition to the motion (Dkt. No. 96) on that same day, and Shoalwater filed a

12  timely reply on October 28, 2022 (Dkt. No. 97).

13                        **III      DISCUSSION**

14      **C.  Legal Standard**

15      A party may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure

16  12(b)(7) by challenging the plaintiff's "failure to join a party under Rule 19."  Fed. R. Civ. P.

17  12(b)(7).  In evaluating whether to grant a motion pursuant to Rule 12(b)(7), a court must first

18  "determine whether a nonparty should be joined under Rule 19(a)."  *E.E.O.C. v. Peabody W.*

19  *Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005).  If the court determines that a nonparty is a required

20  party, "the second stage is for the court to determine whether it is feasible to order that the

21  absentee be joined."  *Id.*  If it is not feasible to join the absent party, "the court must determine at

22  the third stage whether the case can proceed without the absentee, or whether the absentee is an

23

24

ORDER GRANTING LIMITED INTERVENOR SHOALWATER BAY TRIBE'S MOTION TO DISMISS (DKT. NO. 85) - 4

**ER8**

1   'indispensable party' such that the action must be dismissed." *Id.*; *see also Klamath Irrigation*
2   *Dist. v. United States Bureau of Reclamation*, 48 F.4th 934, 943 (9th Cir. 2022).
3           The Court also accepts allegations in Plaintiff's complaint as true and construes the
4   complaint in Plaintiff's favor.  *See Dine Citizens Against Ruining Our Env't v. Bureau of Indian*
5   *Affs.*, 932 F.3d 843, 851 (9th Cir. 2019); *see also Her Majesty Queen in Right of Canada as*
6   *Represented by Minister of Agric. & Agri-Food v. Van Well Nursery, Inc.*, No. 2:20-CV-00181-
7   SAB, 2021 WL 131261, at *1 (E.D. Wash. Jan. 13, 2021).
8           **D.  Rule 19(a) Analysis**
9           The Court agrees Shoalwater is a required party.
10          An absentee is a required party if "in that person's absence, the court cannot accord
11  complete relief among existing parties; or . . . that person claims an interest relating to the subject
12  of the action and is so situated that disposing of the action in the person's absence may . . . as a
13  practical matter impair or impede the person's ability to protect the interest."  Fed. R. Civ. P.
14  19(a)(1).
15          Shoalwater argues it is a required party because it "has a federal right to conduct Class III
16  gaming on its Reservation, rights in its compact with Washington State that federal law expressly
17  recognizes, and the sovereign right to immunity from unconsented suit."  (Dkt. No. 85 at 22.)
18  Additionally, Shoalwater asserts that "complete relief is not available where the absent party is a
19  tribe that is a signatory to the agreement at issue because the judgment would not be binding on
20  the tribe, which could assert its rights under the agreement."  (*Id.* at 22–23.)
21          Maverick, in rebuttal, argues that Shoalwater's interest in conducting Class III gaming is
22  not sufficient to make it a required party and that the United States can adequately represent its
23  interests in this litigation.  (Dkt. No. 96 at 11–17.)
24

ORDER GRANTING LIMITED INTERVENOR SHOALWATER BAY TRIBE'S MOTION TO DISMISS (DKT. NO. 85) - 5

1      The named defendants and Amici support Shoalwater's position.  The United States, for

2  example, filed a response noting controlling Ninth Circuit precedent in *Dine* and *Klamath*

3  support a finding that Shoalwater is a required party.  (Dkt. No. 94 at 6.)  However, "the United

4  States [also] disagrees with the ruling in *Dine Citizens* and reserves the right to assert in future

5  proceedings that the United States is generally the only required and indispensable defendant in

6  APA litigation challenging federal agency action."  (*Id.*)  The Washington State Defendants and

7  Amici argue Shoalwater is a necessary party and no currently named party can adequately

8  represent their interests.   (*See* Dkt. Nos. 95 at 3–4; 87-1 at 15–25).

9      Ninth Circuit case law is "clear that an absent party may have a legally protected interest

10  at stake in procedural claims where the effect of a plaintiff's successful suit would be to impair a

11  right already granted."  *Dine*, 932 F.3d at 852.  And the Ninth Circuit has repeatedly held that

12  tribes are necessary parties in third party suits challenging federal agency actions where the suits

13  may negatively implicate tribal economic or sovereign interests.  *See, e.g.*, *Backcountry Against*

14  *Dumps v. Bureau of Indian Affs.*, No. 21-55869, 2022 WL 15523095, at *1 (9th Cir. Oct. 27,

15  2022); *Klamath*, 48 F.4th at 944; *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 997 (9th

16  Cir. 2020); *Dine*, 932 F.3d at, 852–53*; cf. Deschutes River All. v. Portland Gen. Elec. Co.*, 1

17  F.4th 1153, 1163 (9th Cir. 2021) (holding that Clean Water Act citizen suit against electric

18  company operating within tribal lands implicated "sovereign interests in self-governance and the

19  preservation of treaty-based fishing rights throughout the Deschutes River Basin."); *Am.*

20  *Greyhound Racing*, 305 F.3d at 1023 (determining that tribal compacts authorizing casino-type

21  gaming represent a legally protected interest for purposed of Rule 19).

22      The Court agrees with Shoalwater that, based on circuit precedent, it has a legally

23  protected interest and the outcome of this action may impair that interest if it was not included as

24

ORDER GRANTING LIMITED INTERVENOR SHOALWATER BAY TRIBE'S MOTION TO DISMISS (DKT. NO. 85) - 6

1  a party.  Shoalwater and the Amici highlight the importance of their gaming compacts and the

2  revenue that such compacts provide for Washington's federally recognized tribes.  (*See* Dkt.

3  Nos. 85 at 16; 87-1 at 11–14).  Amici also note the long history of tribal gaming and associated

4  employment benefits for the tribes and the surrounding community.  (Dkt. No. 87-1 at 11–13.)

5  Given this history, and the economic and sovereign rights implicated by Maverick's suit, the

6  Court agrees that Shoalwater is "necessary, and if not susceptible to joinder, indispensable to

7  litigation seeking to decimate that contract." *Dawavendewa v. Salt River Project Agr. Imp. &*

8  *Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002)

9        In response, Maverick does not directly dispute Shoalwater has a legally protected

10  interest that could be impaired by the instant litigation.  Rather, Maverick argues Shoalwater's

11  interests won't be impaired by this suit because the tribes are adequately represented by the

12  United States.[1]  (Dkt. No. 96 at 5.)

13        Maverick asserts that "federal courts have uniformly held that the federal government

14  adequately represents an Indian tribe in IGRA challenges like this one when it 'share[s] the

15  Tribe's position . . . that [a] Compact is consistent with [federal law].'"  (Dkt. No. 96 at 12.)

16  Maverick also points to the United States' repeated position that the federal government may

17  adequately represent tribal interests in challenges to IGRA.  (*Id.*)

18        "As a practical matter, an absent party's ability to protect its interest will not be impaired

19  by its absence from the suit where its interest will be adequately represented by existing parties

20  to the suit."  *Alto v. Black*, 738 F.3d 1111, 1127 (9th Cir. 2013) (quoting *Washington v. Daley*,

21  173 F.3d 1158, 1167 (9th Cir.1999)).  An existing party may adequately represent an absent one

22

23

24

[1] Maverick does not contest, and the Court agrees, that the State cannot adequately represent Shoalwater's interests in this litigation.  *See Am. Greyhound Racing*, 305 F.3d at 1023 n.5.

ORDER GRANTING LIMITED INTERVENOR SHOALWATER BAY TRIBE'S MOTION TO DISMISS (DKT. NO. 85) - 7

1    if the present party's interests are such that they will "undoubtedly" make all of the arguments of

2    the absent one, if the present party is capable and willing to make such arguments, and if the

3    absent party would not "offer any necessary element to the proceedings that the present parties

4    would neglect." *Klamath*, 48 F.4th at 944.

5           The Court is convinced that none of the parties can adequately represent Shoalwater's

6    interests in this lawsuit.  Shoalwater and the United States' interests clearly diverge under *Dine*

7    and its progeny.  In *Dine*, conservation groups sued the federal government challenging

8    environmental analyses under the National Environmental Policy Act ("NEPA") conducted by

9    federal agencies as part of their approval of the continued operation of a mine and power plant

10   owned by the Navajo Nation.  932 F.3d at 848–50.  The Navajo Transitional Energy Company

11   ("NTEC"), a Navajo Nation owned company that owned the mine at issue, moved to intervene

12   and asserted, like in the instant matter, that it was a necessary party and could not be joined

13   because of its sovereign immunity.  *Id.* at 850.  The Ninth Circuit ultimately upheld the district

14   court's dismissal for failure to join a required party.  *Id.* at 848.  In doing so, the Ninth Circuit

15   analyzed whether the federal government could adequately represent the NTEC's interests in the

16   suit such that they were not a required party.  The Ninth Circuit concluded that "[a]lthough

17   Federal Defendants have an interest in defending their decisions, their overriding

18   interest . . . must be in complying with environmental laws such as NEPA and the ESA.  This

19   interest differs in a meaningful sense from NTEC's and the Navajo Nation's sovereign interest in

20   ensuring that the Mine and Power Plant continue to operate and provide profits to the Navajo

21   Nation."  *Id.* at 855.

22          The Ninth Circuit further elaborated that though the federal government maintained the

23   same litigation position as the Navajo Nation, upholding environmental analyses supporting the

24

ORDER GRANTING LIMITED INTERVENOR SHOALWATER BAY TRIBE'S MOTION TO DISMISS (DKT.
NO. 85) - 8

1    continued operation of the mine and power plant, this position could change if the court found

2    the environmental analyses to be inadequate.  *Id.*  The Ninth Circuit placed great weight on how

3    decisions by the courts could implicate the Navajo Nation's "sovereign interests" and determined

4    that such interest could not be properly represented by the federal government or state

5    defendants.  *Id.* at 855–56.  Ultimately, the Ninth Circuit concluded that "while Federal

6    Defendants have an interest in defending their own analyses that formed the basis of the

7    approvals at issue, here they do not share an interest in the *outcome* of the approvals—the

8    continued operation of the Mine and Power Plant."  *Id*. at 855 (emphasis in original).

9          This emphasis on the inadequacy of the federal government, despite its trust relationship,

10   to adequately represent tribal sovereign interests, particularly where vested property or

11   contractual rights are at issue, has been reiterated in subsequent opinions.  *See, e.g.*, *Backcountry*,

12   2022 WL 15523095, at *1; *Klamath*, 48 F.4th at 944–45.  Indeed, the lower court in *Backcountry*

13   noted specifically that "Federal Defendants' overriding interest must be in complying with

14   environmental laws, an interest that is meaningfully different from the Tribe's sovereign interest

15   in ensuring that the Project is realized."  *Backcountry Against Dumps v. United States Bureau of*

16   *Indian Affs.*, No. 20-CV-2343 JLS (DEB), 2021 WL 3611049, at *8 (S.D. Cal. Aug. 6, 2021).

17         Here, as in *Dine*, Shoalwater asserts that the suit threatens their sovereign interests.  (Dkt.

18   No. 85 at 30.)  Granting the relief Maverick seeks would "eviscerate[] the Tribe's 'very ability to

19   govern itself, sustain itself financially, and make decisions about its own' gaming operation."

20   (*Id.*)  *Shoalwater* also attests to prior tensions with the State and federal government over

21   permitting casino gaming on tribal lands.  (*See, e.g.*, Dkt. No. 86-1, 86-2.)

22         Maverick attempts to distinguish this recent and binding authority.  Maverick argues that

23   *Dine* and its progeny are distinguishable because these cases involved statutes that required the

24

ORDER GRANTING LIMITED INTERVENOR SHOALWATER BAY TRIBE'S MOTION TO DISMISS (DKT. NO. 85) - 9

1    federal government to take actions in the interest of the general public, not the tribes (Dkt. No.

2    96 at 13) and any conflict of interest that may emerge after this Court makes a decision is

3    irrelevant to the Rule 19 analysis (*Id.* at 15).   Maverick also asserts that the other cases cited by

4    Shoalwater in support of its motion involved "an actual conflict between the federal government

5    and the absent tribe.  (*Id.* at 16.)

6          The Court is not persuaded that *Dine* and the other cases cited by Shoalwater are

7    distinguishable.  As discussed above, *Dine*'s analysis of the conflict between federal and tribal

8    sovereign interests appears to apply in this matter.  While the federal government has an interest

9    in upholding IGRA and IGRA is intended to promote "tribal economic development, self-

10   sufficiency, and strong tribal governments," 25 U.S.C. § 2702(1), this does not mean that the

11   federal government and the tribes' interests are aligned sufficiently such that the federal

12   government can adequately represent the tribes' interests. *See Ysleta Del Sur Pueblo v. Texas*,

13   142 S. Ct. 1929, 1936 (2022) ("Because *Cabazon* left certain States unable to apply their gaming

14   regulations on Indian reservations, some feared the Court's decision opened the door to a

15   significant amount of new and unregulated gaming on tribal lands.  In 1988, Congress sought to

16   fill that perceived void by adopting . . . IGRA.").  As Shoalwater notes, "it was IGRA that the

17   United States looked to for authority to shutter the Tribe's gaming operation, highlighting the

18   United States' view that its overriding obligation to ensure compliance with federal law

19   supersedes its general trust responsibility to the Tribe."  (Dkt. No. 97 at 9–10.)  Indeed, the

20   United States expressly details this conflict in its brief by noting that IGRA balances efforts to

21   promote tribal self-sufficiency with "a regulatory and supervisory role for the states and the

22   federal government to prevent the infiltration of 'organized crime and other corrupting

23   influences.'"  (Dkt. No. 94 at 3.)  And though the federal government maintains an interest in

24

ORDER GRANTING LIMITED INTERVENOR SHOALWATER BAY TRIBE'S MOTION TO DISMISS (DKT. NO. 85) - 10

1    defending its own analysis that formed the basis of its decision to approve the sports-betting

2    compact amendments, it does not share an interest in the *outcome* of the continued approval of

3    the sports-betting compact amendments—the continued operation of sports-betting at tribal

4    casinos—which Shoalwater asserts is a matter of sovereign authority.  (*See* Dkt. No. 97 at 12)

5    ("The Tribe maintains that its inherent authority to govern gaming activities on its Indian lands

6    predates IGRA and colonization under [*Cabazon*].").

7        Additionally, the Court finds that Shoalwater presents actual, not hypothetical or

8    unknown conflicts with the United States.  As Amici note, it is precisely because the United

9    States is obligated to uphold federal law that a conflict might arise.  (*See* Dkt. No. 87-1 at 21–

10   22.)  And there is a documented history of the federal government acting as an adverse party to

11   Shoalwater in the absence of a tribal compact with Washington that permits Class III gaming.

12   (*See* Dkt. No. 86-1.)  The Court is also cognizant that changes in policy or personnel within the

13   federal government may lead to changes in approach to federal litigation strategy.  *See, e.g.*,

14   *Mashpee Wampanoag Tribe v. Bernhardt*, 466 F. Supp. 3d 199, 210–11 (D.D.C. 2020); *see also*

15   *Connecticut v. United States Dep't of the Interior*, 344 F. Supp. 3d 279, 292 (D.D.C. 2018).

16       In sum, the Court concludes that Shoalwater is a required party with real interests at stake

17   in this litigation and that the current parties to this suit will not adequately represent those

18   interests.

19   **E.  Shoalwater Cannot be Joined to this Litigation**

20       The Court finds that Shoalwater has not waived its sovereign immunity and cannot be

21   joined to this action.

22       "Native American tribes are 'domestic dependent nations that exercise inherent sovereign

23   authority.'"  *Klamath*, 48 F.4th at 945–46 (quoting *Michigan v. Bay Mills Indian Comm.*, 572

24

ORDER GRANTING LIMITED INTERVENOR SHOALWATER BAY TRIBE'S MOTION TO DISMISS (DKT. NO. 85) - 11

1   U.S. 782, 788 (2014)); *see also Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (noting

2   that "Indian tribes have long been recognized as possessing the common-law immunity from suit

3   traditionally enjoyed by sovereign powers.").  Absent an express waiver by Congress or a clear

4   and unequivocal waiver by the tribe, tribes retain sovereign immunity from suit.  *See Deschutes*,

5   1 F.4th at 1159; *Dine*, 932 F.3d at 856.

6         Shoalwater has expressly indicated that it has not waived its sovereign immunity.  (Dkt.

7   No. 86 at 2.)  It is well established in this Circuit that tribes may intervene for the limited

8   purpose of asserting they are required parties without waiving their sovereign immunity.  *See*

9   *Backcountry*, 2022 WL 15523095, at *1; *Klamath*, 48 F.4th at 942; *Dine*, 932 F.3d at 850. The

10   Court also notes this procedure has been accepted by courts in sister circuits.  *See, e.g.*, *MGM*

11   *Glob. Resorts Dev., LLC v. United States Dep't of the Interior*, No. CV 19-2377 (RC), 2020 WL

12   5545496, at *6 (D.D.C. Sept. 16, 2020) (approving tribal intervention for the limited purpose of

13   asserting Rule 19 defense without finding a waiver of tribal sovereign immunity); *Citizens*

14   *Against Casino Gambling in Erie Cnty. v. Kempthorne*, 471 F. Supp. 2d 295, 312 (W.D.N.Y.

15   2007) (discussing propriety of intervening for the sole purpose of seeking dismissal based on

16   sovereign immunity).

17         Maverick analogizes to cases touching on state waiver of sovereign immunity (*see* Dkt.

18   No. 96 at 17–18) to argue that permitting such a procedural maneuver would produce unfair

19   results.  These cases are distinguishable, however.  The Supreme Court's decision in *Lapides v.*

20   *Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002) deals with waiver of sovereign

21   immunity in cases of removal to federal court, not intervention.  *Id.* at 619.  Though the Supreme

22   Court mentioned in passing that a state may waive sovereign immunity by intervening in a case,

23   *see id.*, the case cited in support of this principle involved interpleaded funds and the "the state of

24

ORDER GRANTING LIMITED INTERVENOR SHOALWATER BAY TRIBE'S MOTION TO DISMISS (DKT. NO. 85) - 12

1  Rhode Island appeared in the cause and presented and **prosecuted a claim to the fund in**

2  **controversy**, and thereby made itself a party to the litigation to the full extent required for its

3  complete determination." *Clark v. Barnard*, 108 U.S. 436, 448 (1883) (emphasis added).  It was

4  not the mere intervention of the state that merited waiver of sovereign immunity, but rather the

5  state's active prosecution of claims over disputed funds that led to the waiver.

6         As such, the Court finds that Shoalwater did not waive its sovereign immunity from suit

7  by intervening for the limited purpose of raising a Rule 19 defense and thus cannot feasibly be

8  joined in this litigation.

9      **F.   Rule 19(b) Analysis**

10        Since the Court has determined Shoalwater is a required party that cannot feasibly be

11 joined to this litigation, the Court must determine whether "in equity and good conscience, the

12 action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).

13 The Court must consider four factors: "1) the prejudice to any party or to the absent party; (2)

14 whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not

15 complete, can be awarded without the absent party; and (4) whether there exists an alternative

16 forum." *Dawavendewa*, 276 F.3d at 1161–62.

17        "[T]he first factor of prejudice, insofar as it focuses on the absent party, largely duplicates

18 the consideration that made a party necessary under Rule 19(a)." *Am. Greyhound Racing*, 305

19 F.3d at 1024–25.  As discussed, the suit poses a substantial risk to Shoalwater's sovereign

20 interests.  If Maverick were to prevail in seeking to invalidate the tribal compacts, the prejudice

21 to Shoalwater would be substantial.

22        The second factor also weighs in favor of dismissal.  Maverick seeks a declaratory

23 judgment that the tribal compacts permitting Class III gaming such as sports betting are

24

ORDER GRANTING LIMITED INTERVENOR SHOALWATER BAY TRIBE'S MOTION TO DISMISS (DKT. NO. 85) - 13

1   unconstitutional and therefore void.  (Dkt. No. 66 at 40.)  Maverick also seeks a declaratory

2   judgment that "the Tribes' class III gaming activities violate IGRA."  (*Id.*)  Such relief cannot be

3   tailored to lessen the prejudice faced by Shoalwater or other absent tribes—Maverick seeks

4   nothing less than a wholesale revocation of the tribes' ability to operate casino gaming facilities.

5   As the Tribes note, such relief threatens not only tribal revenue and contracts, but also tribal and

6   non-tribal employment and other businesses.  (*See* Dkt. No. 87-1 at 18.)

7         The third factor also favors Shoalwater.  To afford Maverick the relief it seeks, the Court

8   would not only have to find that tribal gaming violates IGRA and the Equal Protection Clause,

9   but also that the State's criminal laws prohibiting Class III gaming are unconstitutional.  (*See*

10  Dkt. No. 66 at 39–40.)  "A statute's severability is determined under state law."  *Arce v.*

11  *Douglas*, 793 F.3d 968, 989 (9th Cir. 2015).  In Washington, whether a law is severable depends

12  on "whether the constitutional and unconstitutional provisions are so connected . . . that it could

13  not be believed that the legislature would have passed one without the other."  *League of Educ.*

14  *Voters v. State*, 295 P.3d 743, 752 (Wash. 2013).  The Court agrees with Shoalwater that,

15  assuming the Court determined the Washington law permitting sports betting at tribal operated

16  casinos was unconstitutional, the proper remedy would be to strike the provision, not extend

17  intrusive injunctive relief.  Washington's broader regulatory scheme criminalizes gambling.  *See*

18  Wash. Rev. Code § 9.46.222   In authorizing sports betting on a limited basis, the Washington

19  legislature emphasized that "[i]t has long been the policy of this state to prohibit all forms and

20  means of gambling except where carefully and specifically authorized and regulated. The

21  legislature intends to further this policy by authorizing sports wagering on a very limited basis by

22  restricting it to tribal casinos in the state of Washington." H. Com. & Gaming 2638, 66th Leg.,

23  Reg. Sess. (Wash. 2020).  The remedy Maverick seeks runs in contrast to this legislative intent to

24

ORDER GRANTING LIMITED INTERVENOR SHOALWATER BAY TRIBE'S MOTION TO DISMISS (DKT. NO. 85) - 14

1    limit gambling and would run beyond this Court's jurisdiction.  Thus, the relief the Court could

2    provide to Maverick would not adequately remedy its injury because it would still be precluded

3    from operating sports betting or other Class III gambling operations.

4         The Court acknowledges that the fourth factor weighs in Maverick's favor.  There is no

5    alternate judicial forum in which Maverick could seek the relief it requests.  However, the Court

6    faces a "'wall of circuit authority' requiring dismissal when a Native American tribe cannot be

7    joined due to its assertion of tribal sovereign immunity." *Klamath*, 48 F.4th at 947 (quoting

8    *Deschutes*, 1 F.4th at 1163).  "The balancing of equitable factors under Rule 19(b) almost always

9    favors dismissal when a tribe cannot be joined due to tribal sovereign immunity." *Deschutes*, 1

10   F.4th at 1163 (quoting *Jamul Action Comm.*, 974 F.3d at 998).

11        The Court thus finds that the action should not proceed in equity or good conscience.

12   **G. The Public Rights Exception Does Not Apply**

13        Finally, the Court finds that the public rights exception does not apply.

14        "The public rights exception is a limited 'exception to traditional joinder rules' under

15   which a party, although necessary, will not be deemed 'indispensable,' and the litigation may

16   continue in the absence of that party.  *Dine*, 932 F.3d at 858 (quoting *Conner v. Burford*, 848

17   F.2d 1441, 1459 (9th Cir. 1988)).  The exception is applied in cases that seek "'to vindicate a

18   public right'" and may apply where litigation "could 'adversely affect the absent parties'

19   interests,' but 'the litigation must not destroy the legal entitlements of the absent parties' for the

20   exception to apply." *Id.* (quoting *Kescoli v. Babbitt*, 101 F.3d 1304, 1311 (9th Cir. 1996)).

21        The Court is persuaded that the threat posed by the instant suit to Shoalwater's legal

22   entitlements is sufficient such that the public rights exception should not apply.  *See Shermoen v.*

23   *United States*, 982 F.2d 1312, 1319 (9th Cir. 1992) ("Because of the threat to the absent tribes'

24

1  legal entitlements, and indeed to their sovereignty, posed by the present litigation, application of

2  the public rights exception to the joinder rules would be inappropriate.")  Maverick seeks to

3  invalidate tribal gaming compacts, an acknowledged legal entitlement.  As the Ninth Circuit has

4  noted, on a Rule 12(b)(7) motion "the question at this stage must be whether the litigation

5  threatens to destroy an absent party's legal entitlements." *Dine*, 932 F.3d 843, 860 (9th Cir.

6  2019); *see also Backcountry*, 2022 WL 15523095 at *1.[2]

7  **IV    CONCLUSION**

8      Accordingly, and having considered Shoalwater's motion (Dkt. No. 85), the briefing of

9  the parties, and the remainder of the record, the Court finds and ORDERS that Shoalwater's

10  motion is GRANTED and Maverick's claims are dismissed without prejudice.

11      Dated this 21st day of February, 2023.

12

13

14                                       David G. Estudillo
                                         United States District Judge

15

16

17

18

19

20

21

22

---

23  [2] The Court is also not convinced this litigation is brought in the public interest.  Maverick
    specifically details in the complaint how invalidation of the tribal compacts would "increas[e]

24  Maverick's commercial revenue."  (Dkt. No. 66 at 32.)

ORDER GRANTING LIMITED INTERVENOR SHOALWATER BAY TRIBE'S MOTION TO DISMISS (DKT.
NO. 85) - 16

THE HONORABLE DAVID G. ESTUDILLO

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| MAVERICK GAMING LLC,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | **Case No. 3:22-CV-05325-DGE**<br><br>**Federal Defendants' Response to Shoalwater Bay Indian Tribe's Motion to Dismiss** |

Federal Defendants the United States of America et al. ("Federal Defendants") hereby respond to the Shoalwater Bay Indian Tribe of the Shoalwater Bay Indian Reservation's ("Tribe") motion to dismiss (ECF No. 85).

**INTRODUCTION**

In this suit, Maverick Gaming LLC ("Plaintiff") asks the Court, *inter alia*, to declare that the Secretary of the Interior's ("Secretary") approval, pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-21 ("IGRA"), of eighteen (18) amendments to tribal-state gaming compacts entered into by eighteen federally recognized Indian tribes and the State of Washington ("State"), violates IGRA, other federal statutes, and the United States Constitution, and further asks the Court to declare as "void" such amendments so as to render them not in effect.  ECF 66

-1-

Federal Defendants' Response to
Shoalwater Bay Indian Tribe's
Motion to Dismiss

(3:22-CV-5325-DGE)

U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
(202) 616-3148

**ER21**

1    at 40-41.[1]  Relevant here, Plaintiff's suit includes a challenge to the September 10, 2021 approval

2    of the tribal-state gaming compact amendment entered into between the Tribe and the State.  *See*

3    ECF No. 67-9.

4         On August 3, 2022, the Tribe moved for limited intervention in this case, ECF No. 68, for

5    the purpose of seeking dismissal of this suit in its entirety pursuant to Fed. R. Civ. P. 19 ("Rule

6    19").  On September 29, 2022, the Court granted the motion, ECF No. 84, and the Tribe

7    subsequently filed its motion to dismiss on October 3, 2022, ECF No. 85.  The general position

8    of the United States is that in most contexts it is the only required and indispensable party in

9    litigation challenging final agency action under the Administrative Procedure Act, 5 U.S.C.

10   § 704 ("APA").  The United States, however, acknowledges that the Ninth Circuit's opinion in

11   *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843 (2019), *cert*

12   *denied*, 141 S. Ct. 161 (2020) ("*Dine Citizens*"), controls in this case and supports dismissal

13   pursuant to Rule 19.  *See also Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, 48 F. 4th

14   934, (9th Cir. 2022) ("*Klamath*"); *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984 (9th Cir.

15   2020), *cert denied*, 142 S. Ct. 83 (2021) ("*Jamul Action Comm.*").

16                                    **BACKGROUND**

17        IGRA "creates a framework for regulating gaming activity on Indian lands."  *Michigan v.*

18   *Bay Mills Indian Cmty.*, 572 U.S. 782, 785 (2014).  In enacting IGRA, Congress sought to

19   establish a system that would balance the competing interests of two sovereigns: tribal and state

20   governments.  On the one hand, IGRA aims "to provide a statutory basis for the operation of

21   gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency,

22   _____

23   [1] Plaintiff's First Amended Complaint, including the Prayer for Relief, refers to the Tribe's and
     other Indian tribes' "compacts."  *See, e.g.*, ECF No. 66 at 3; *id.* at 40.  Federal Defendants
24   contend that Plaintiff is not entitled to any relief whatsoever in this suit.  Further, to the extent
     Plaintiff challenges compacts or compact amendments that were approved more than six years
25   ago, those claims are barred by the applicable statute of limitations.  *See, e.g., Wind River Mining*
     *Corp. v. United States*, 946 F.2d 710 (9th Cir. 1991).  Federal Defendants reserve the right to
26   raise all affirmative defenses, including statute of limitations, in subsequent briefing should the
27   Court proceed to the merits in this case.

                                         -2-
28   Federal Defendants' Response to                    U.S. Department of Justice
     Shoalwater Bay Indian Tribe's                      P.O. Box 7611
     Motion to Dismiss                                  Washington, DC 20044
                                                        (202) 616-3148
     (3:22-CV-5325-DGE)

1   and strong tribal governments." 25 U.S.C. § 2702(1); *Confederated Tribes of the Grand Ronde*

2   *Cmty. of Or. v. Jewell*, 830 F.3d 552, 557 (D.C. Cir. 2016) ("[T]he whole point of the IGRA is to

3   'provide a statutory basis for the operation of gaming by Indian tribes as means of promoting

4   tribal economic development, self-sufficiency, and strong tribal governments.'") (quoting

5   *Diamond Game Enters., Inc. v. Reno*, 230 F.3d 365, 366-67 (D.C. Cir. 2000)).  On the other

6   hand, the statute contemplates a regulatory and supervisory role for the states and the federal

7   government to prevent the infiltration of "organized crime and other corrupting influences."  25

8   U.S.C. § 2702(2).

9        IGRA divides gaming into three classes.  *See Seminole Tribe of Fla. v. Florida*, 517 U.S.

10   44, 48 (1996).  The third of these—Class III gaming—is implicated here and includes "casino

11   games" such as blackjack, roulette and slot machines.  *See Bay Mills Indian Cmty.*, 572 U.S. at

12   785.  Class III gaming can occur on Indian lands only if "conducted in conformance with" an

13   approved tribal-state compact "entered into by the Indian tribe and the State," 25 U.S.C.

14   § 2710(d)(1)(C), or pursuant to procedures issued by the Secretary, *id.* at § 2710(d)(7).  "The

15   rationale for the compact system is that 'there is no adequate Federal regulatory system in place

16   for Class III gaming, nor do tribes have such systems for the regulation of Class III gaming

17   currently in place,' and thus 'a logical choice is to make use of existing State regulatory systems'

18   through a negotiated compact."  *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1549 (10th Cir.

19   1997) (quoting S. Rep. No. 100-446, at 13-14, reprinted in 1988 U.S.C.C.A.N. 3071, 3083-84).

20        IGRA provides no role for the federal government in the compact negotiation process

21   between tribes and states.  The Secretary's authority is limited to approving or, for limited

22   reasons, disapproving a compact entered into between a state and a tribe.  25 U.S.C.

23   § 2710(d)(8)(A)-(B).  Congress also directed, however, that "[i]f the Secretary does not approve

24   or disapprove a compact . . . before the date that is 45 days after the date on which the compact is

25   submitted to the Secretary for approval, the compact shall be considered to have been approved

26   by the Secretary, but only to the extent the compact is consistent with the provisions of [IGRA]."

27

28

-3-

Federal Defendants' Response to                        U.S. Department of Justice
Shoalwater Bay Indian Tribe's                         P.O. Box 7611
Motion to Dismiss                                       Washington, DC 20044
                                                (202) 616-3148

(3:22-CV-5325-DGE)

1    *Id.* § 2710(d)(8)(C).  Compacts approved by the Secretary, or deemed approved by operation of

2    IGRA when the Secretary does not act, become effective after the Secretary publishes notice in

3    the Federal Register.  *See id.* § 2710(d)(3)(B), (d)(8)(D).

4           Relevant here, the Tribe submitted to the Secretary the fully executed Third Amendment

5    to the Tribal State Compact for Class III Gaming Between the Shoalwater Bay Indian Tribe and

6    the State of Washington ("Compact Amendment"), which Interior received on August 24, 2021.

7    ECF No. 67-6.  The receipt of this submission triggered the Secretary's 45-day review period

8    under IGRA, in which the Secretary could either approve, disapprove, or take no action on the

9    Compact Amendment.  On September 10, 2021, before the expiration of the 45-day review

10   period, the Secretary's delegee, Assistant Secretary–Indian Affairs Bryan Newland, approved the

11   Compact Amendment.  ECF No. 67-9.  Notice of this approval was published in the Federal

12   Register on September 15, 2021.  ECF No. 67-10.

13          On October 3, 2022, the Tribe moved to dismiss this case.  ECF No. 85.  Citing to *Dine*

14   *Citizens*, *Jamul Action Comm.*, *Klamath*, and other authority, the Tribe argues it is a required

15   party under Rule 19(a), ECF No. 85 at 22-24, that cannot be joined due to its sovereign

16   immunity, *id.* at 24-25.  The Tribe further argues that the Court should not proceed in its absence

17   under Rule 19(b), and thus this suit should be dismissed in its entirety.  *Id.* at 25-33.  Among

18   other factors, the Tribe points to Plaintiff's effort to use this suit as a means to "void" not only

19   the Compact Amendment, but the entirety of the Tribe's tribal-state compact, to prevent the

20   Tribe from offering any gaming at all.  *Id.* at 22-24.  The Tribe states that Plaintiff's "sweeping"

21   request for relief "would cripple the Tribe's economy, jeopardize government services, and

22   deprive the Tribe of its compact rights."  *Id.* at 25.  The Tribe further contends that "[a]ny relief

23   in Maverick's favor thrusts the Tribe into uncharted legal waters that threaten to terminate its

24   sovereign rights and to destroy the tribal economy."  *Id.* at 25-26.

25

26

27
                                          -4-
28   Federal Defendants' Response to                      U.S. Department of Justice
     Shoalwater Bay Indian Tribe's                        P.O. Box 7611
     Motion to Dismiss                                    Washington, DC 20044
                                                          (202) 616-3148
     (3:22-CV-5325-DGE)

## THE NINTH CIRCUIT'S *DINE CITIZENS* OPINION

In *Dine Citizens*, plaintiff Dine Citizens Against Ruining Our Environment brought claims under the APA challenging Interior's approval of lease amendments, based on alleged violations of the National Environmental Policy Act and the Endangered Species Act. *Dine Citizens*, 932 F.3d at 847.  The Plaintiffs challenged, *inter alia*, the Bureau of Indian Affairs' approval of a lease amendment the Navajo Nation had entered into governing coal-mining operations on the Navajo Reservation.

The Navajo Transitional Energy Company, a corporation wholly owned by the Navajo Nation that owned the mine in question, moved to dismiss the action under Rule 19 and Fed. R. Civ. P. 12(b)(7), arguing "that it was a required party but that it could not be joined due to tribal sovereign immunity, and that the lawsuit could not proceed without it." *Id.* at 847-48.  The federal government opposed the motion, taking the position that the United States is generally the only required and indispensable defendant in such APA challenges. *Id.* at 850.  However, the district court disagreed and granted the motion, concluding that (1) "the 'relief Plaintiffs seek could directly affect the Navajo Nation . . . by disrupting its "interests in [its] lease agreements and the ability to obtain the bargained-for royalties and jobs;"'" and (2) the United States did not adequately represent Navajo's interests due to Navajo's greater interests in the outcome of the litigation and potential divergence of interest between the Navajo and the United States. *Id.*

Dine Citizens appealed, and the federal government filed an *amicus* brief in which it again took the position that the United States is generally the only indispensable defendant in such APA litigation. *Id.* at 858 n.8.  On July 29, 2019, the Ninth Circuit affirmed the district court, rejecting the federal government's argument that the United States is generally the only required and indispensable defendant in such APA challenges to federal agency action. *Id.* at 858-61.

-5-

Federal Defendants' Response to
Shoalwater Bay Indian Tribe's
Motion to Dismiss

(3:22-CV-5325-DGE)

U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
(202) 616-3148

**UNITED STATES' STATEMENT OF POSITION**

The Ninth Circuit's ruling in *Dine Citizens* is controlling authority in this case under the current state of the law in the Ninth Circuit and therefore supports the granting of the Tribe's motion to dismiss.  *See United States v. Gomez-Lopez*, 62 F.3d 304, 306 (9th Cir. 1995); *see also Klamath*, 48 F.4th at 943-48 (Indian tribes required parties and case could not proceed in their absence); *Jamul Action Comm.*, 974 F.3d at 996-98 (Indian tribe required and indispensable party in suit challenging "the trust status of its land and . . . its status as a federally recognized tribe"); *Deschutes River All. v. Portland Gen. Elec. Co.*, 1 F.4th 1153, 1163 (9th Cir. 2021) (holding that, under Rule 19, "[t]he Tribe's sovereign immunity requires dismissal of this suit, in which [plaintiff] challenges the operation of a large hydroelectric project co-owned and co-operated by the Tribe, and located partly on the Tribe's reservation").

This challenge has the potential to impair the Tribe's sovereign interest in protecting its "sovereign rights" and its "tribal economy."  ECF No. 85 at 25-26.  And under *Dine Citizens* and other Ninth Circuit precedent, the Tribe appears to satisfy the other criteria for granting dismissal under Rule 19.  *See Klamath*, 48 F.4th at 943-48; *Jamul Action Comm.*, 974 F.3d at 996-98; *Dine Citizens*, 932 F.3d at 855-56.  The United States therefore does not dispute that the Tribe's motion to dismiss, ECF No. 85, should be granted under the current state of the law in the Ninth Circuit.  For the reasons stated in the government's *amicus* brief filed in *Dine Citizens*, the United States disagrees with the ruling in *Dine Citizens* and reserves the right to assert in future proceedings that the United States is generally the only required and indispensable defendant in APA litigation challenging federal agency action.

DATED: October 24, 2022.

Respectfully submitted,
TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

-6-

Federal Defendants' Response to
Shoalwater Bay Indian Tribe's
Motion to Dismiss

(3:22-CV-5325-DGE)

U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
(202) 616-3148

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JODY H. SCHWARZ
Senior Attorney
U.S. Department of the Interior
Office of the Solicitor
Division of Indian Affairs

/s/ *Rebecca M. Ross*
HILLARY K. HOFFMAN, Trial Attorney
REBECCA M. ROSS, Senior Attorney
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice

*Attorneys for the United States*

-7-

Federal Defendants' Response to
Shoalwater Bay Indian Tribe's
Motion to Dismiss

(3:22-CV-5325-DGE)

U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
(202) 616-3148

**ER27**

1

**CERTIFICATE OF SERVICE**

2

     I, Rebecca M. Ross, hereby certify that on October 24, 2022, I caused the foregoing

3

FEDERAL DEFENDANTS' RESPONSE TO SHOALWATER BAY INDIAN TRIBE'S

4

MOTION TO DISMISS to be sent electronically to the registered participants as identified on

5

the Notice of Electronic Filing.

6

7
                             /s/  *Rebecca M. Ross*
                             REBECCA M. ROSS, Senior Attorney

8
                             Indian Resources Section
                             Environment and Natural Resources Division

9
                             United States Department of Justice

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Federal Defendants' Response to
Shoalwater Bay Indian Tribe's
Motion to Dismiss

(3:22-CV-5325-DGE)

                          U.S. Department of Justice
                          P.O. Box 7611
                          Washington, DC 20044
                          (202) 616-3148

1                                                   **HONORABLE DAVID G. ESTUDILLO**

2

3

4

5

6

7

8

9

10

11                       **UNITED STATES DISTRICT COURT**
                  **WESTERN DISTRICT OF WASHINGTON**

12                              **AT TACOMA**

13

14

15 MAVERICK GAMING LLC,            |    Case No.: 22-cv-05325-DGE

16               Plaintiff,           |

17 v.                               |    **LIMITED INTERVENOR**
                                      **SHOALWATER BAY TRIBE'S MOTION**

18                                       **TO DISMISS**

19 UNITED STATES OF AMERICA, et al.,  |
                                      **Note on Motion Calendar: October 28,**
                                      **2022**

20            Defendants.         |

21                                       **ORAL ARGUMENT REQUESTED**

22

23

24

25

26

27

28
   Motion to Dismiss                                                 Scott D. Crowell
   Case No. 22-cv-05325-DGE                             Crowell Law Office-Tribal Advocacy Group
                                                  1487 W. State Route 89A, Suite 8
                                                      Sedona, AZ 86336
                                                    Tel: (425) 802-5369

# TABLE OF CONTENTS

I.    Introduction .................................................................................................1

II.   Background and Context ............................................................................2

   A.   Statutory Context: The Tribal-State Gaming Compact. .......................2

      i. Federal Law: The Indian Gaming Regulatory Act ...........................2

      ii.State Law:  Statutory Structure for Negotiation and Ratification of Tribal-State
         Gaming Compacts .........................................................................4

   B.   Historical Context: The Shoalwater Bay Indian Tribe ........................5

   C.    The Instant Litigation.........................................................................9

III.  Argument ...................................................................................................10

   A.   Legal Standards for Dismissal Per Rule 12(b) 7 and Rule 19. ...........10

   B.    The Shoalwater Bay Tribe is a Required or Necessary Party. ...........13

   C.    The Shoalwater Bay Tribe Cannot Be Joined Because It Has Not Waived its Sovereign
      Immunity.........................................................................................15

   D.    All Four Factors Considered under Rule 19(b) weigh in the Tribe's favor; The Tribe's
      Interest in Maintaining Sovereign Immunity Leaves Very Little Room in Balancing the
      Four Factors of Rule 19(b).............................................................16

   E.    The Federal and State Defendants Are Not Able to Adequately Represent the Tribe's
      Protectable Interests. ......................................................................18

   F.    The Narrow Public Rights Exception Does Not Apply Where the Claims Threaten an
      Absent Party Tribe's Legal Entitlement and Sovereignty.................23

IV.  Conclusion.................................................................................................24

i

Scott D. Crowell
Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

## TABLE OF AUTHORITIES

**Cases**

*Aguayo v. Jewell*,
   827 F.3d 1213 (9th Cir. 2016) ........................................................................14

*Alto v. Black*,
   738 F.3d 1111 (9th Cir. 2013) ........................................................................18

*American Greyhound Racing, Inc. v. Hull*,
   305 F.3d 1015 (9th Cir. 2002) ....................................................................passim

*Backcountry Against Dumps v. United States Bureau of Indian Affairs*,
   2021 WL 2433942 (S.D. Cal. 2021) ................................................................21

*Behrens v. Donnelly*,
   236 F.R.D. 509 (D. Hawaii 2006) ..................................................................12

*Cachil Dehe Band of Wintun Indians of the Colusa Indian Community v. California*,
   547 F.3d 962 (9th Cir. 2008) .....................................................................2, 12

*California v. Cabazon Band of Mission Indians*,
   480 U.S. 202 (1987) ...........................................................................................2

*Chicken Ranch Rancheria of Me-wuk Indians v. California*,
   42 F.4th 1024  (9th Cir. July 28, 2022) .......................................................3, 4

*Clinton v. Babbitt*,
   180 F.3d 1081 (9th Cir. 1999) ........................................................................14

*Comenout v. Whitener*,
   2015 WL 917631 (W.D. Wash. 2015) ............................................................18

*Confed. Tribes of Chehalis Indian Reservation v. Washington*,
   96 F.3d 334 (9th Cir. 1996) ..............................................................................5

*Confederated Tribes of Siletz Indians v. Oregon*,
   143 F.3d 481 (9th Cir.1998) ...........................................................................13

ii

[Proposed] Motion to Dismiss                                                                    Scott D. Crowell
Case No.: 22-cv-05325-DGE                                    Crowell Law Office-Tribal Advocacy Group
                                                                                  1487 W. State Route 89A, Suite 8
                                                                                                    Sedona, AZ 86336
                                                                                               Tel: (425) 802-5369

ER31

1  *Confederated Tribes of the Chehalis Indian Reservation v. Lujan,*
2    928 F.2d 1496 (9th Cir. 1991) ............................................... 11
3  *Conner v. Burford,*
4    848 F.2d 1441 (9th Cir. 1988) ............................................... 23
5  *Crow Tribe of Indians v. Racicot,*
6    87 F.3d 1039 (9th Cir. 1996) ............................................... 13
7  *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.,*
8    276 F.3d 1150 (9th Cir. 2002) ...................................... 11, 13, 14, 16, 17
9  *Diné Citizens Against Ruining Our Env't v. Bureau of Indian Affairs,*
10   932 F.3d 843 (9th Cir. 2019) ............................................... passim
11 *E.E.O.C. v. Peabody Western Coal Co.,*
12   400 F.3d 774 (9th Cir. 2005) ............................................... 11, 12
13 *Enterprise Management Consultants, Inc. v. United States ex rel. Hodel,*
14   883 F.2d 890 (10th Cir. 1989) ............................................... 17
15 *Friends of Amador County v. Salazar,*
16   554 Fed. Appx. 562 (9th Cir. 2014) ............................................... 10
17 *Harris v. Lake of the Torches Resort,*
18   2015 WL 1014778 (Wisc. App. March 10, 2015) ............................... 16
19 *Jamul Action Comm. v. Simermeyer,*
20   974 F.3d 984 (9th Cir. 2020) ............................................... 21
21 *Kennedy v. United States Dept. of the Interior,*
22   282 F.R.D. 588 (E.D. Cal. 2012) ............................................... 24
23 *Kescoli v. Babbitt,*
24   101 F.3d 1304 (9th Cir. 1996) ...................................... 11, 12, 16, 23
25 *Kickapoo Tribe of Indians of Kickapoo Reservation in Kan. v. Babbitt,*
26   43 F.3d 1491 (D.C. Cir. 1995) ............................................... 13
27
28

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5819

ER32

*Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*,

   523 U.S. 751 (1998). ..................................................................................15

*Klamath Irrigation District et. al. v. United States Bureau of Reclamation et. al.*,

   ___4th____, 2022 WL 4101175 (9th Cir. Sept. 8, 2022)...................................passim

*Lac du Flambeau Band of Lake Superior Chippewa Indians v. Norton*,

   327 F. Supp. 2d 995 (W.D. Wis. 2004) ........................................................2

*Makah Indian Tribe v. Verity*,

   910 F.2d 555 (9th Cir. 1990) ...................................................11, 12, 24

*McShan v. Sherrill*,

   283 F.2d 462 (9th Cir. 1960) .................................................................12

*Michigan v. Bay Mills Indian Cmty.*,

   572 U.S. 782 (2014) .....................................................................1, 15

*Milligan v. Anderson*,

   522 F.2d 1202 (10th Cir. 1975) ..............................................................10

*MM&A Productions v. Yavapai Apache Nation*,

   234 Ariz. 60, 316 P.3d 1248 (Ariz. App. 2014) ..........................................16

*Naartex Consulting Corp. v. Watt*,

   722 F.2d 779 (D.C. Cir.1983)...............................................................15

*National Licorice Co. v. N.L.R.B.*,

   309 U.S. 350 (1940) ......................................................................23

*No Casino in Plymouth v. National Indian Gaming Comm'n*,

   2022 WL 1489498 (E.D. Cal. 2022) .......................................................21

*Northern Alaska Envtl. Ctr. v. Hodel*,

   803 F.2d 466 (9th Cir. 1986) ...............................................................12

*Northern Arapahoe Tribe v. Harnsberger*,

   660 F. Supp. 2d 1264 (D. Wyo. 2009) ....................................................18

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

ER33

1  *Okla. Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla.*,

2    498 U.S. 505 (1991) ...............................................................15

3  *Pit River Home & Agric. Coop. Ass'n v. United States*,

4    30 F.3d 1088 (9th Cir. 1994)........................................2, 10, 21

5  *Puyallup Tribe, Inc. v. Dep't of Game*,

6    433 U.S. 165 (1977) ...............................................................19

7  *Quileute Indian Tribe v. Babbitt*,

8    18 F.3d 1456 (9th Cir. 1994) ...................................................17

9  *Republic of Philippines v. Pimental*,

10    553 U.S. 851 (2008) .............................................................2, 11

11  *Safe Air v. Meyer*,

12    373 F.3d 1035 (9th Cir. 2004) .................................................12

13  *Salt River Project Agric. Improvement & Power Dist. v. Lee*,

14    672 F.3d 1176 (9th Cir. 2012) ...........................................11, 13

15  *Santa Clara Pueblo v. Martinez*,

16    436 U.S. 49 (1978) .................................................................15

17  *Shermoen v. United States*,

18    982 F.2d 1312 (9th Cir. 1992) ...........................................11, 23

19  *Shields v. Barrow*,

20    58 U.S 130 (1855) ..................................................................12

21  *Southwest Center for Biological Diversity v. Babbitt*,

22    150 F.3d 1152 (9th Cir. 1998) .................................................14

23  *Tulalip Tribes of Wash. v. Washington*,

24    783 F.3d 1151 (9th Cir. 2015) ...................................................2

25  *Union Pacific Railroad Co. v. Runyan*,

26    320 F.R.D. 245 (D. Ore. 2017) ................................................23

27

28
[Proposed] Motion to Dismiss                                          Scott D. Crowell
Case No.: 22-cv-05325-DGE                     Crowell Law Office-Tribal Advocacy Group
                                                          1487 W. State Route 89A, Suite 8
                                                                       Sedona, AZ 86336
                                                                   Tel: (425) 802-5819

1  *United States   v. USF&G,*
2     309 U.S. 506 (1940) ...................................................................................... 16
3  *United States v. Bowen,*
4     172 F.3d 682 (9th Cir. 1999) ......................................................................... 11
5  *United States v. Kagama,*
6     118 U.S. 375 (1886) ...................................................................................... 19
7  *United States v. Shoalwater Bay Indian Tribe,*
8     205 F.3d 1353, 1999 WL 1269343 (9th Cir. 1999) ........................................ 5
9  *United States v. Spokane Tribe,*
10     139 F.3d 1297 (9th Cir. 1998) ............................................................. 5, 19, 22
11  *United States v. Washington,*
12     853 F.3d 946, 954–64 (9th Cir. 2017), *aff'd by an equally divided Court,* 138 S. Ct. 1832
13     (2018) ........................................................................................................... 19
14  *United States v. Wheeler,*
15     435 U.S. 313 (1978) ...................................................................................... 15
16  *Ward v. Apple, Inc.,*
17     791 F.3d 1041 (9th Cir. 2015) ....................................................................... 11
18  *Wash. State Dep't of Licensing v. Cougar Den, Inc.,*
19     139 S. Ct. 1000 (2019) .................................................................................. 19
20  *Washington v. Confed. Tribes of Colville Indian Reservation,*
21     447 U.S. 134 (1980) ...................................................................................... 19
22  *White v. Univ. of Cal.,*
23     765 F.3d 1010 (9th Cir. 2014) ................................................................passim
24
25  **Statutes**
26  18 U.S.C. §§ 1165 ................................................................................................ 3
27
28

[Proposed] Motion to Dismiss                                    Scott D. Crowell
Case No.: 22-cv-05325-DGE              Crowell Law Office-Tribal Advocacy Group
                                              1487 W. State Route 89A, Suite 8
                                                        Sedona, AZ 86336
                                                    Tel: (425) 802-5369

**ER35**

18 U.S.C. §§ 1955 ........................................................................................3

25 U.S.C. § 2702(1) .....................................................................................3

25 U.S.C. § 2710(a) ......................................................................................3

25 U.S.C. § 2710(d)(3)(A) .....................................................................3, 10

25 U.S.C. §§ 2705(a) ...................................................................................3

25 U.S.C. §§ 2713 ........................................................................................3

25 U.S.C. §§ 2710(d)(7)(A)(ii) ....................................................................3

Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721 ("IGRA") ...................................passim

RCW § 9.46.360 ..........................................................................................4

RCW §§ 39.34.020, 39.34.030 ...................................................................4

**Other Authorities**

Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure: Civil 3d*. § 1359 at 68 (2004).............................................................................12

Office of Indian Gaming within the Department of the Interior. www.bia.gov/as-ia/oig...............6

**Rules**

Fed. R. Civ. P. 12(b)(7) ......................................................................passim

Fed. R. Civ. P. 19 ...............................................................................passim

Fed. R. Civ. P. 19(a) ..............................................................................11, 12

Fed. R. Civ. P. 19(b) ..........................................................................12, 16, 17

**Public Notices**

67 Fed. Reg. 68152......................................................................................6

72 Fed. Reg. 30392......................................................................................7

80 Fed. Reg. 31918......................................................................................7

86 Fed. Reg. 51373......................................................................................7

87 Fed. Reg. 4636, 4639 (2022) .................................................................5

[Proposed] Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369

1

**Constitutional Provisions**

2    House Bill Report H.B. 2638 at 6...................................................................................8

3    Laws of 2020, Chapter 127 § 1 ...................................................................................4

4    U.S. Const. art. I, § 8, cl. 3 .........................................................................................15

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

viii

[Proposed] Motion to Dismiss                                                      Scott D. Crowell
Case No.: 22-cv-05325-DGE                          Crowell Law Office-Tribal Advocacy Group
                                                              1487 W. State Route 89A, Suite 8
                                                                            Sedona, AZ 86336
                                                                        Tel: (425) 802-5369

ER37

Limited Intervenor the Shoalwater Bay Indian Tribe of the Shoalwater Bay Indian Reservation ("Shoalwater Bay Tribe" or "Tribe") moves pursuant to Fed. R. Civ. P. 12(b)(7) and Fed. R. Civ. P. 19 to dismiss this lawsuit filed by Plaintiff Maverick Gaming LLC ("Maverick").

## I.    Introduction

In this lawsuit, Maverick seeks to invalidate the compacts between the State of Washington (the "State") and twenty-nine Indian tribes ("Washington Tribes") entered into under the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721 ("IGRA"). The Washington Tribes are the true target of Maverick's suit as the requested relief is intended to shutter tribally owned and operated casinos across the State of Washington and deprive the Tribes of critical sources of funding for governmental programs. Yet, Maverick has not brought this action against any of the Washington Tribes, each of which possesses Indian lands within the boundaries of the State of Washington. Instead, Maverick sues the United States, various federal officials (collectively, "Federal Defendants"), and various officials of the State of Washington (collectively, "State Defendants").

There is a reason for the Tribes' absence from Maverick's corrected First Amended Complaint, Dkt. 66 ("FAC"): the Tribes are immune from suit. *See, e.g., Michigan v. Bay Mills Indian Community*, 572 U.S. 782 (2014). Maverick cannot sue the Washington Tribes directly seeking a declaration that their gaming is illegal. So, Maverick tries to circumvent the Washington Tribes' immunity by suing other defendants instead. This type of gamesmanship is precisely the circumstance that Rule 19 of the Federal Rules of Civil Procedure prevents – having a suit proceed in the absence of a necessary and required party.

The stated purpose of Maverick's lawsuit is to void the Tribal-State gaming compacts entered into by the non-party Washington Tribes and the State of Washington. The Tribe has not waived its sovereign immunity from the lawsuit. As a required party that cannot be joined to the

1

Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8, Sedona, AZ 86336
Tel: (425) 802-5369

1    FAC, the case cannot in equity and good conscience proceed in the Tribe's absence. Accordingly,

2    the FAC in its entirety should be dismissed.  With its substantial rights at stake, the Tribe  specially

3    appears for the limited purpose of moving to dismiss under Rules 12(b)(7) and 19.  For avoidance

4    of doubt, by intervening in this action for the limited purpose of filing the instant Motion, the Tribe

5    does not waive, and fully reserves, its sovereign immunity.  *See, e.g.*, *Pit River Home & Agric.*

6    *Coop. Ass'n v. United States*, 30 F.3d 1088, 1100 (9th Cir. 1994)[1]; *Lac du Flambeau Band of Lake*

7    *Superior Chippewa Indians v. Norton*, 327 F. Supp. 2d 995, 1000 (W.D. Wis. 2004).  Nothing

8    herein shall be construed as a waiver, in whole or in part, of the Tribe's immunity, or as the Tribe's

9    consent to be sued, and the undersigned legal counsel for the Tribe lack any authority to waive the

10   Tribe's immunity or to consent to the jurisdiction of this Court.

11

12   **II.  Background and Context**

13        **A.  Statutory Context: The Tribal-State Gaming Compact.**

14        "In Washington, the process for entering into tribal gaming compacts is governed by both

15   federal and state law." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1153 (9th Cir. 2015).

16

17        **i.   Federal Law: The Indian Gaming Regulatory Act**

18        In 1987, the Supreme Court ruled that due to "traditional notions of Indian sovereignty and

19   the congressional goal of Indian self-government," states may not regulate tribal gaming on tribal

20   land absent congressional authorization.  *California v. Cabazon Band of Mission Indians*, 480 U.S.

21   202, 216, 221–22 (1987).  The following year, Congress enacted IGRA with the purpose of

22

23

24

25   ---

[1] Many of the cases cited in support of the Tribe's Motion were issued prior to 2007. When Rule 19 was amended in 2007, the word 'necessary' was replaced by the word 'required' and the word 'indispensable' was removed. The changes were intended to be 'stylistic only' and "the substance and operation of the Rule both pre- and post-2007 are unchanged." *Republic of Philippines v. Pimental*, 553 U.S. 853, 855-56; *Cachil Dehe Band of Wintun Indians of the Colusa Indian Community v. California*, 547 F.3d 962, 969 n.6 (9th Cir. 2008).

26

27

28

Motion to Dismiss                                               Scott D. Crowell
Case No.: 22-cv-05325-DGE                    Crowell Law Office-Tribal Advocacy Group
                                        1487 W. State Route 89A, Suite 8, Sedona, AZ 86336
                                                     Tel: (425) 802-5369

1   creating a regulatory framework for Indian gaming that would allow for "gaming by Indian tribes

2   as a means of promoting tribal economic development, self-sufficiency, and strong tribal

3   governments." 25 U.S.C. § 2702(1).

4        Consistent with its purpose, IGRA broadly protects Indian tribes' right to conduct and

5   regulate gaming activities within a three-tier framework. *See, e.g., Chicken Ranch Rancheria of

6   *Me-wuk Indians v. California*, 42 F.4th 1024, 1032 (9th Cir. 2022). Class I gaming (traditional

7   and ceremonial games) and Class II gaming (bingo and non-banked card games) are regulated

8   principally by tribes. 25 U.S.C. § 2710(a). But Class III gaming (including casino games and

9   sports betting) is regulated differently because IGRA provides an opportunity for states to be

10  involved in the regulatory oversight of tribal gaming by negotiating compacts that will "govern[]

11  the conduct of [Class III] gaming activities" on Indian land. 25 U.S.C. § 2710(d)(3)(A).

12

13

14       Congress vested the National Indian Gaming Commission ("NIGC") and the Department

15  of Justice ("DOJ") with authority to take action against illegal gaming on Indian lands. 25 U.S.C.

16  §§ 2705(a) and 2713; 18 U.S.C. §§ 1166 and 1955. Congress identified allocation of criminal

17  jurisdiction as a proper subject of negotiation between states and Indian tribes. Congress vested

18  the federal courts with jurisdiction over an action by a state against a tribe for breach of compact.

19  25 U.S.C. § 2710(d)(7)(A)(ii). Maverick has remedies available to redress its perceived grievances.

20  It sought and failed to secure a sports betting entitlement in the Washington legislature. Maverick

21  could ask Congress to amend IGRA. Maverick could plead its case to the NIGC, DOJ or the State

22  and request that they take enforcement action against the Washington Tribes. But Maverick filing

23  its own federal litigation to shutter the Washington Tribes' gaming facilities is not among the

24  remedies available to it.

25

26

27

28

Motion to Dismiss                                                    Scott D. Crowell
Case No.: 22-cv-05325-DGE                          Crowell Law Office-Tribal Advocacy Group
                                                   1487 W. State Route 89A, Suite 8, Sedona, AZ 86336
                                                   Tel: (425) 802-5369

      **ii.**      **State Law:  Statutory Structure for Negotiation and Ratification of Tribal-State Gaming Compacts**

Congress provided states an opportunity to have a role in the regulation of tribal gaming, if they "engage in compact negotiations in good faith."  *Chicken Ranch*, 42 F.4th at 1032.  To capture this opportunity, Washington state law directs the State's Gambling Commission to "negotiate compacts for class III gaming on behalf of the state with federally recognized Indian tribes in the state of Washington."  RCW § 9.46.360.  Moreover, Washington statutes authorize intergovernmental joint powers agreements between tribes and local government agencies regarding provision of services to tribal casinos and reimbursement to local government for the costs of such services. RCW §§ 39.34.020, 39.34.030.

The State's approach to embracing the opportunities allowed by IGRA was most recently exemplified by the Washington legislature's approval of sports wagering in Indian country pursuant to IGRA compacts, which the legislature passed over Maverick's objection. The legislature found:

> It has long been the policy of this state to prohibit all forms and means of gambling except where carefully and specifically authorized and regulated. The legislature intends to further this policy by authorizing sports wagering on a very limited basis by restricting it to tribal casinos in the state of Washington. Tribes have more than twenty years' experience with, and a proven track record of, successfully operating and regulating gaming facilities in accordance with tribal gaming compacts. Tribal casinos can operate sports wagering pursuant to these tribal gaming compacts, offering the benefits of the same highly regulated environment to sports wagering.

Laws of 2020, Chapter 127 § 1.

**B.  Historical Context: The Shoalwater Bay Indian Tribe**

The Shoalwater Bay Indian Tribe is a federally recognized tribe, 87 Fed. Reg. 4636, 4639 (2022),  located in rural western Washington State.  The Shoalwater Bay people descend from the Lower Chinook and Lower Chehalis peoples who for centuries populated the villages that dotted

4

1    Washington's coastal waterways.  Despite severe population loss and cultural displacement that

2    European settlement brought to the region, the Tribe steadfastly resisted outside pressure to

3    relinquish its lands.  *Confed. Tribes of Chehalis Indian Reservation v. Washington*, 96 F.3d 334,

4    338 (9th Cir. 1996).  Ultimately, the federal government relented, and in 1866 President Andrew

5    Johnson set aside the Shoalwater Bay Indian Reservation within the Tribe's ancestral lands.  *Id.*

6

7            In the 1990s, seeking a source of employment and revenue to fund crucial tribal

8    government operations, the Tribe exercised its rights under IGRA and approached Washington

9    State to negotiate a gaming compact.  The State, however, insisted that the gambling machines the

10   tribes sought to operate gaming activities were illegal, while refusing to waive its Eleventh

11   Amendment immunity or otherwise consent to IGRA's negotiation/mediation remedial process.

12   *See United States v. Spokane Tribe*, 139 F.3d 1297, 1298 (9th Cir. 1998).  After years of

13   unsuccessful negotiations, in 1998, the Tribe opened a gaming facility on the Shoalwater Bay

14   Indian Reservation, over the objections of the State and without a compact. Specifically, the Tribe

15   installed 108 gambling devices wherein random number generators ("RNGs") contained within

16   the machines determined the outcome. *See United States v. Shoalwater Bay Indian Tribe*, 205 F.3d

17   1353, 1999 WL 1269343 at *1 n.3 (9th Cir. 1999) (unpublished decision).

18

19            The United States Attorney inserted itself in the dispute on the side of the State, filed an

20   *in rem* action against the 108 machines, and deploying federal officers**,** halted the Tribe's gaming

21   operation by seizing and carrying away the gaming machines from tribal property.  *See generally*

22   Arthur Santana & Jack Broom, *Shoalwater Tribe, Marshals Face Off—Agents Start to Confiscate*

23   *Slot Machines*, SEATTLE TIMES, Sept. 23, 1998 (article attached to the Declaration of Chairperson

24   Charlene Nelson ("Nelson Declaration") as Ex. B-1)). The gaming operation was the Tribe's most

25

26

27

28

5

1    significant source of employment and the primary source of discretionary governmental revenue,

2    and the seizure resulted in the loss of sixty much-needed reservation jobs. *Id.*

3           Shortly after the seizure of the Tribe's gaming machines by the United States marshals, the

4    Tribe installed a different type of gaming machine with a pre-determined win/loss percentage

5    resembling the compacted class III games in operation today within the State. That development

6    resulted in further enforcement action, but instead of United States marshals raiding the reservation

7    and seizing machines, the NIGC, in 1999, issued a Notice of Violation, NOV-99-10, and an Order

8    of Closure, OC-99-10. In the Tribe's subsequent administrative appeal to the United States

9    Department of the Interior Office of Hearings and Appeals, Docket No. NIGC 99-2, the Tribe was

10   successful in securing an Order enjoining the NIGC from taking further enforcement action until

11   the United States demonstrated that it was seeking to provide an effective remedy for the Tribe's

12   injuries resulting from Washington State's refusal to negotiate a gaming compact. *See* Order

13   Deferring Decision and Staying Proceedings on Reconsideration Motion, August 23, 2001

14   (Attached to Nelson Declaration as Ex. B-2). While that injunction was pending, the Tribe and the

15   State successfully reached agreement on a Tribal-State Compact, which became effective on

16   November 8, 2002. 67 Fed. Reg. 68152.[2]  Despite the coordinated and parallel efforts of both the

17   United States and the State of Washington to prevent the Tribe from conducting gaming, the

18   Tribe's gaming operation never closed, except for the few weeks between the seizure of the 108

19   gambling devices with RNGs and the installation of machines without RNGs.

---

[2] The complete text of the Compact and the several amendments thereto are available for public viewing at the official web page of the Office of Indian Gaming within the Department of the Interior. www.bia.gov/as-ia/oig

6

Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8, Sedona, AZ 86336
Tel: (425) 802-5369

ER43

1   That Compact marked a turning-point in the relationship between the three governments:

2   the Tribe, the State and the United States, ending years of contentious and often confrontational

3   disputes over gaming on the Tribe's lands. The Tribe and the State have subsequently reached

4   agreement on three amendments to the Compact, all approved by the Department of the Interior,

5   in 2007, 72 Fed. Reg. 30392; in 2015, 80 Fed. Reg. 31918; and most recently in 2021, 86 Fed.

6   Reg. 51373.  The Third Amendment in 2021, authorizing sports wagering, is the focus of

7   Maverick's FAC, but notably, it seeks also to invalidate the initial Compact and the three

8   amendments thereto in their entirety.

9

10   In stark contrast to the contentious and tumultuous non-compacted environment of the

11   1990s, today, the Tribe operates a small gaming facility free of disputes with the State and United

12   States.  The casino provides an anchor for the Tribe's economy and the economies of the

13   surrounding rural communities.   Willapa Bay Enterprises, the Tribally-owned entity which

14   operates the casino along with the restaurant, small lodge and other businesses,  employs 120

15   people, approximately 30% of whom are Tribal members, their spouses or direct family members.

16   *See* Nelson Declaration at 2, ¶ 7. The casino purchases goods and services from local vendors, and

17   creates a gathering place for the Tribe and the surrounding community. Importantly, the small

18   gaming facility is a source of pride for the Tribe and self-esteem for the Tribe's members. *Id.* at 2-

19   3, ¶¶ 8-9.

20   The Tribe and the State have replaced the adversity of the 1990s with a constructive,

21   working relationship for more than twenty years. Today's relationship is an example of the

22   successful relationship between all Washington Tribes and the State, a key factor in the

23   Washington legislature's decision to authorize sports betting at tribal casinos:

24

25

26

27

28

7

Motion to Dismiss                                                    Scott D. Crowell
Case No.: 22-cv-05325-DGE                          Crowell Law Office-Tribal Advocacy Group
                                                   1487 W. State Route 89A, Suite 8, Sedona, AZ 86336
                                                              Tel: (425) 802-5369

> Tribes and the state have an excellent working partnership already as sovereign-to-sovereign governments, including work done related to problem gambling, and so it makes sense to continue that partnership and add sports wagering as an additional offering at tribal casinos. The state has a history of acting conservatively in terms of expanding gambling. Tribal gaming is a structured regulatory environment and there are significant internal controls. Because tribes are located throughout the state, there will be access for consumers to sports betting no matter where they live. It is best to start slowly by authorizing sports wagering at existing tribal facilities, without adding mobile sports betting, and then to evaluate how it works.

House Bill Report H.B. 2638[3] at 6.

These facts are brought to this Court's attention in the context of the current motion as they highlight that the Compact, in effect as amended, is the vehicle that ended the adversity of the pre-compact relationship between the Tribe, the State and the United States. These facts are also relevant here because they highlight, as discussed in greater detail below in Section III(D), the adversarial environment which Maverick intends to recreate between the three respective governments if Maverick's requested relief, invalidation of the Compact, is ordered by this Court.

Maverick's owner, Eric Persson, boasts that he is a "proud" enrolled member of the Tribe and that his acquisition of commercial card rooms allows him "to come home again" to work with his "tribal brothers." *See* Maverick Gaming Press Releases of June 14, 2019; June 27, 2019; August 19, 2019; and October 1, 2019 (included as Ex. B-3 to Nelson Declaration). As a tribal member, Mr. Persson has access to the Tribe's governance and dispute mechanisms (voting, running for office, litigating in tribal court, etc.) to air his grievances. Mr. Persson has not had to use or rely upon the employment opportunities provided by, and/or the tribal programs funded by, the Tribe's gaming operation, because he left the reservation and relocated to the State of Nevada, where he amassed his own wealth with a very successful gaming company comprised of five casinos in

---

[3] https://lawfilesext.leg.wa.gov/biennium/2019-20/Pdf/Bill%20Reports/House/2638%20HBR%20APP%202020.pdf?q=20220519085734.

8

Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8, Sedona, AZ 86336
Tel: (425) 802-5369

ER45

northern Nevada, four casinos in Colorado, and eighteen[4] commercial card rooms in Washington State. *See* official webpage of Maverick Gaming LLC, www.maverickgaming.com. Rather than returning to Washington State to assist his own Tribe, he returned to Washington State to purchase a majority of the State's commercial card rooms, and he now seeks to destroy, through his requested prayer for relief in the instant litigation, the major source of employment and discretionary revenue for his own Tribe.

The irony of Eric Persson boasting of his proud membership in the Tribe, while filing an action to destroy the Tribe's gaming facility and the governmental revenues, programs and jobs it supports, while not even attempting to join the Tribe as a party to the litigation, is not lost on the Tribe. Accordingly, the Tribe is compelled to seek dismissal of this case and bring an end to his efforts to undermine his own Tribe's efforts to achieve economic self-sufficiency and provide adequate governmental services to its membership.

### C.   The Instant Litigation

On July 5, 2022, Maverick filed the FAC in this Court, making a sweeping request for declaratory and injunctive relief to prohibit Class III gaming on Shoalwater Bay Indian lands. More specifically, Maverick's FAC seeks, *inter alia*:

> (1) a declaration that the Tribe's compact and its amendments (and all such compacts and amendments between the State and the Washington Tribes) are "void, were not validly entered into, and are not in effect." FAC, Dkt. 66 at 40, prayer for relief at ¶ 207(1);
>
> (2) a declaration that the "Tribes' class III gaming activities violate IGRA." FAC, Dkt. 66 at 40, prayer for relief at ¶ 207(4); and

---

[4] Recent press reports indicate Maverick has sold one of the eighteen commercial card rooms listed on its web page as of October 1, 2022. The Tribe will defer to Maverick to clarify in its response brief.

9

Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8, Sedona, AZ 86336
Tel: (425) 802-5369

ER46

(3) an order "enjoining the continued administration of the Compacts and Compact Amendments by the members of the Washington State Gambling Commission."  FAC, Dkt. 66 at 40, prayer for relief at ¶ 207(6).

Despite seeking relief that is unmistakably directed against the Tribe, and despite the fact that federal law expressly recognizes the Tribe's direct interest in its Compact, *see* 25 U.S.C. § 2710(d)(3)(A), Maverick did not name the Tribe—or any other Washington Tribe—as a defendant. Thus, to protect its substantial interests in this matter, the Tribe now moves to dismiss under Rule 12(b)(7) and Rule 19.  *See Diné Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, 932 F.3d 843, 850 (9th Cir. 2019); *Klamath Irrigation District et. al. v. United States Bureau of Reclamation et. al.*, ___4th___, 2022 WL 4101175 (9th Cir. Sept. 8, 2022).  Because the Tribe is a necessary party, and because the Tribe is protected by sovereign immunity and cannot be joined, this action must be dismissed.  *See, e.g.*, *Pit River Home and Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1103 (9th Cir. 1994).

**III.  Argument**

**A.  Legal Standards for Dismissal Per Rule 12(b) 7 and Rule 19.**

The Tribe seeks an order dismissing the lawsuit in its entirety pursuant to Rule 12(b)(7) because the Tribe is a required party that cannot be joined, and accordingly, pursuant to Rule 19, the Court cannot in equity and good conscience proceed with the case without the Tribe.

A party may move to dismiss a complaint for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7)*; Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1022-25 (9th Cir. 2002)*.* Similarly, non-parties that have not consented to the court's jurisdiction may specially appear to seek dismissal pursuant to Rule 19*. See Friends of Amador County v. Salazar*, 554 Fed. Appx. 562, 564 (9th Cir. 2014); *Milligan v. Anderson*, 522 F.2d 1202, 1203-04 (10th Cir. 1975)*.*

10

Furthermore, a court may address whether to dismiss a case under Rule 19 *sua sponte*. *Republic of Philippines v. Pimental*, 553 U.S. 851, 861 (2008).

Rule 19 provides a three-step process for determining whether the court should dismiss an action for failure to join a purportedly indispensable party. *E.E.O.C. v. Peabody Western Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005); *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999); *see also Pimental*, 553 U.S. at 855-57; *accord, Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) (describes same process as a two-step process).

First, Rule 19 asks whether the absent party is "necessary (i.e., required to be joined if feasible) under Rule 19(a)." *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012); *White v. Univ. of Cal.*, 765 F.3d 1010, 1026 (9th Cir. 2014); *Confederated Tribes of the Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991). To make such a determination, the court "must consider whether 'complete relief' can be accorded among the existing parties, and whether the absent party has a 'legally protected interest' in the subject of the suit." *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992); *Ward, v. Apple, Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015). If the court finds that a party is not "necessary," then the court need not consider the second step under Rule 19 and the case may continue without the absent party. *Makah,* 910 F.2d at 559; *Kescoli v. Babbitt*, 101 F.3d 1304, 1310 (9th Cir. 1996).

If the party is "required" or "necessary," the court must then determine whether that party is "indispensable." *Id.* To make such a determination, the court asks whether it is "feasible to order that the absent party be joined." *Id.* "A party is indispensable if in 'equity and good conscience,' the court should not allow the action to proceed in its absence." *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1161 (9th Cir. 2002) (citing Fed. R. Civ. P. 19(b)). To make this determination, the court balances four factors: (1) the prejudice to any party

11

or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum. *Id.* at 1161–62; *Kescoli*, 101 F.3d at 1310.

If it is not feasible to join the absent party, the court asks whether the case can proceed without it — and if not, dismisses the action. *Peabody Western Coal*, 400 F.3d at 779, Fed. R. Civ. P. 19(b).  An indispensable party is one which "not only [has] an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Peabody Western Coal*, 400 F.3d at 780 (quoting *Shields v. Barrow*, 58 U.S 130, 139 (1855)).

The movant bears the burden of persuading the court that a party must be joined (or the case dismissed). *Makah*, 910 F.2d at 558. There is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a). The determination is heavily influenced by the facts and circumstances of each case. *Cachil Dehe Band*, 547 F.3d at 970; *Northern Alaska Envtl. Ctr. v. Hodel*, 803 F.2d 466, 468 (9th Cir. 1986). To determine whether Rule 19 requires the joinder of additional parties, the court may consider evidence outside the pleadings. *Safe Air v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960); *Behrens v. Donnelly*, 236 F.R.D. 509, 512 (D. Hawaii 2006) (citing Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure: Civil 3d*. § 1359 at 68 (2004)).

Application of these standards to the FAC and the circumstances of the Tribe compels the dismissal of Maverick's lawsuit. Because the Tribe is immune and therefore cannot be joined involuntarily, and because the Tribe is a necessary, indispensable party under Rule 19, the entire

12

Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8, Sedona, AZ 86336
Tel: (425) 802-5369

ER49

1   case must be dismissed per Rule 12(b)(7). *Salt River Project*, 672 F.3d at 1179; *Greyhound Racing*,

2   305 F.3d at 1022-25.

3              **B.     The Shoalwater Bay Tribe is a Required or Necessary Party.**

4        The Tribe is a required or necessary party because the Tribe's protectable interests in

5   continuing to offer gaming activities on its Indian lands are at stake, and Maverick cannot secure

6   complete relief without joining the Tribe. The Tribe's interests in this matter could not be more

7   clear.  The Tribe has a federal right to conduct Class III gaming on its Reservation, rights in its

8   Compact with Washington State that federal law expressly recognizes, and the sovereign right to

9   immunity from unconsented suit. The relationship between those legally protected interests and

10  Maverick's claims could not be any more direct:  Maverick brought this action to "void" the

11  Tribe's Compact in the Tribe's absence.  FAC, Dkt. 66 at 40, ¶¶ 207(1), (4) and (6). "Clearly," a

12  sovereign "has an interest in the validity of a compact to which it is a party, and this interest would

13  be directly affected by . . . relief" that purports to affect the validity of the compact. *Kickapoo*

14  *Tribe of Indians of Kickapoo Reservation in Kan. v. Babbitt*, 43 F.3d 1491, 1495 (D.C. Cir. 1995).

15  The Ninth Circuit recognizes that IGRA "compacts are agreements . . . and are interpreted as

16  contracts." *Chehalis,* 958 P.2d at 750 (citing *Confederated Tribes of Siletz Indians v. Oregon*, 143

17  F.3d 481, 485–486 (9th Cir.1998) and *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th

18  Cir. 1996)); *see also Dawavendewa*, 276 F.3d at 1156-57 ("No procedural principle is more deeply

19  imbedded in the common law than that, in an action to set aside a lease or contract, all parties who

20  may be affected by the determination of the action are indispensable.") *Greyhound Racing*, 305

21  F.3d at 1022-23 (tribes had "substantial" interest sufficient for Rule 19 purposes in renewal of their

22  compacts). It is the Tribe, along with the twenty-eight other Washington Tribes, that are the real

23  parties in interest in this litigation. It is the Tribe that will be devastated by the loss of employment

24

25

26

27

28

13

Motion to Dismiss                                        Scott D. Crowell
Case No.: 22-cv-05325-DGE                      Crowell Law Office-Tribal Advocacy Group
                                               1487 W. State Route 89A, Suite 8, Sedona, AZ 86336
                                               Tel: (425) 802-5369

**ER50**

and governmental revenue if Maverick succeeds. It is the Tribe that will be severely hampered from achieving Congress' purpose in enacting IGRA: tribal economic development, self-sufficiency and strengthened tribal governance through compacted gaming on its Indian lands.

Moreover, Maverick's efforts to make an "'end run around tribal sovereign immunity" would impair the Tribe's immunity. *Aguayo v. Jewell*, 827 F.3d 1213, 1222 (9th Cir. 2016). It is well established that plaintiffs cannot "circumvent the barrier of sovereign immunity by merely substituting" other parties or officials "in lieu of the Indian tribe." *Dawavendewa,* 276 F.3d at 1160. That is because sovereign immunity protects a tribe's ability to "govern [its] reservation," and suits that indirectly attack a Tribe's "ability to negotiate contracts" go to the heart of that core sovereign right. *Id.* at 1157.

Moreover, complete relief is not available where the absent party is a tribe that is a signatory to the agreement at issue because the judgment would not be binding on the tribe, which could assert its rights under the agreement. *Friends of Amador County*, 554 Fed. Appx. at 564 (appellants seek to invalidate tribe's compact with state); *Greyhound Racing*, 305 F.3d at 1022-25 ("[t]he interests of the tribes in their compacts are being impaired and, not being parties, the tribes cannot defend those interests."); *Southwest Center for Biological Diversity v. Babbitt*, 150 F.3d 1152 (9th Cir. 1998) (party to settlement agreement regarding water rights at issue in litigation); *Dawavendewa*, 276 F.3d at 1161 (absent tribe was party to lease that provided for tribal preference in hiring); *Clinton v. Babbitt*, 180 F.3d 1081, 1089 (9th Cir. 1999) (requested judgment would preclude absent tribe from fulfilling its obligations under settlement agreement); *Pit River*, 30 F.3d at 1099 ("[E]ven if the Association obtained its requested relief in [a dispute over which group of Indians are beneficial owners of a certain piece of property], it would not have complete relief, since judgment against the government would not bind the [other group of Indians], which could

14

Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8, Sedona, AZ 86336
Tel: (425) 802-5369

ER51

assert its right to possess the [property].”); *Chehalis*, 928 F.2d at 1498 (noting that judgment against federal officials in an action challenging an agreement between the United States and the Quinault Nation would not bind the Nation); *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C. Cir.1983) (“an action seeking rescission of a contract must be dismissed unless all parties to the contract, and others having a substantial interest in it, can be joined”). There can be no doubt that the Tribe is a required or necessary party.

### C. The Shoalwater Bay Tribe Cannot Be Joined Because It Has Not Waived its Sovereign Immunity.

Indian tribes are “domestic dependent nations” that exercise “inherent sovereign authority.” *Bay Mills Indian Cmty.*, 572 U.S. at 788 (quoting *Okla. Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla.*, 498 U.S. 505, 509 (1991)). “Thus, unless and ‘until Congress acts, the tribes retain’ their historical sovereign authority.” *Id.* (quoting *United States v. Wheeler*, 435 U.S. 313, 323 (1978)); *see also* U.S. Const. art. I, § 8, cl. 3 (authorizing Congress to “regulate Commerce . . . with the Indian Tribes”); *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 756 (1998). As “distinct, independent political communities” with sovereign powers that have never been extinguished, “Indian tribes have long been recognized as possessing the common law immunity from suit traditionally enjoyed by sovereign powers.” *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). *See also Bay Mills Indian Cmty*, 572 U.S. at 789 (sovereign immunity extends to bar suit whether on or off-reservation, whether or not the action concerns commercial activity). As such, “[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity.” *Kiowa Tribe*, 523 U.S. at 754. Further, any purported waiver must be duly authorized as a matter of tribal law. The person or entity that allegedly waived the immunity must have the authority to waive that immunity.

Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8, Sedona, AZ 86336
Tel: (425) 802-5369

*United States v. USF&G*, 309 U.S. 506, 513 (1940); *MM&A Productions v. Yavapai Apache Nation*, 234 Ariz. 60, 316 P.3d 1248 (Ariz. App. 2014); *Harris v. Lake of the Torches Resort*, 2015 WL 1014778 (Wisc. App. March 10, 2015) (An attorney's attestations in court are insufficient to waive tribal immunity unless the attorney is duly authorized under tribal law to do so).

Maverick seeks sweeping relief that would cripple the Tribe's economy, jeopardize government services, and deprive the Tribe of its compact rights. But Maverick cannot sue the Tribe due to the Tribe's sovereign immunity. The Tribe has not waived its sovereign immunity regarding this litigation. Nelson Declaration at 2, ¶ 5. The Tribe has not consented to this Court's jurisdiction to hear Maverick's claims. *Id.* No Tribal officials, including its attorneys in this litigation, are authorized under Tribal law to waive the Tribe's sovereign immunity regarding this litigation. *Id.* To sidestep this bar, Maverick seeks to proceed against *other* parties to indirectly obtain the relief that it cannot obtain directly. Federal Rule 19 forbids this sleight of hand.

> **D.    All Four Factors Considered under Rule 19(b) weigh in the Tribe's favor; The Tribe's Interest in Maintaining Sovereign Immunity Leaves Very Little Room in Balancing the Four Factors of Rule 19(b).**

To make the determination under Fed. R. Civ. P. 19(b), the court asks whether it is "feasible to order that the absent party be joined", and balances four factors: (1) the prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum. *Dawavendewa*, 276 F.3d at 1161 (9th Cir. 2002)*; Kescoli*, 101 F.3d at 1310. Here, the first factor, prejudice to the Tribe is overwhelming – Maverick seeks to "void" the Tribe's Compact through which tribal opportunities and benefits from tribal governmental gaming directly flow. The second and third factors regarding the adequacy and form of relief also weigh in favor of dismissal. Any relief in Maverick's favor thrusts the Tribe into uncharted legal waters

16

Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8, Sedona, AZ 86336
Tel: (425) 802-5369

ER53

1   that threaten to terminate its sovereign rights and to destroy the tribal economy. As discussed in

2   Section II(A)(i) above, Congress afforded Maverick alternative forums to seek redress, but a

3   private party's legal challenge to the legality of a Tribe's gaming facility is not among them. All

4   four factors weigh heavily in favor of dismissal.

5        A tribe's interest in sovereign immunity so greatly outweighs a plaintiff's interest in

6   litigating its claims that there is "very little room for balancing of other factors" under Rule 19(b)

7

8   in such cases.  *Greyhound Racing*, 305 F.3d at 1025. Virtually all the cases to consider the question

9   have dismissed under Rule 19, regardless of whether an alternative remedy is available, if the

10  absent parties are Indian tribes possessing sovereign immunity. *Dine Citizens*, 932 F.3d at 857;

11  *Klamath Irrigation*, 2022 WL 4101175 at *10; *White*, 765 F.3d at 1028; *Dawavendewa*, 276 F.3d

12  at 1152; *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1460 (9th Cir. 1994) ("Plaintiff's interest

13

14  in litigating a claim may  be outweighed by a tribe's interest in maintaining its sovereign

15  immunity."); *Chehalis*, 928 F.2d at 1499; *Enterprise Management Consultants, Inc. v. United*

16  *States ex rel. Hodel*, 883 F.2d 890, 894 (10th Cir. 1989) ("[w]hen, as here, a necessary party under

17

18  Rule 19(a) is immune from suit, there is very little room for balancing of other factors set out in

19  Rule 19(b), because immunity may be viewed as one of  those interests compelling by

20  themselves"). Federal courts acknowledge that plaintiffs may be left with no adequate remedy

21  upon dismissal for non-joinder, "[b]ut this result is a common consequence of   sovereign

22

23  immunity, and [the Tribe's] interest in maintaining [its] sovereign immunity outweighs

24  the  [Appellants'] interest in litigating their claims." *White*, 765 F.3d at 1028; *Greyhound Racing*,

25  305 F.3d at 1025; *Friends of Amador County*, 554 Fed. Appx. at 566. Thus, although the Rule

26

27  19(b) factors still must be considered, the court's "discretion in balancing the equities ... is to a

28

17

great degree circumscribed, and the scale is already heavily tipped in favor of dismissal." *Id. See also Comenout v. Whitener*, 2015 WL 917631 at *4 (W.D. Wash. 2015); *Northern Arapahoe Tribe v. Harnsberger*, 660 F. Supp. 2d 1264, 1280 (D. Wyo. 2009).

### E.  The Federal and State Defendants Are Not Able to Adequately Represent the Tribe's Protectable Interests.

In evaluating whether an existing party adequately represents the interests of an absent party, courts consider "whether the interest of a present party to the suit are such that it will undoubtedly make all of the absent party's arguments; whether the party is capable of and willing to make such arguments; and whether the absent party would offer any necessary element to the proceedings that the present parties would neglect." *Dine Citizens*, 932 F.3d at 852 (quoting *Alto v. Black*, 738 F.3d 1111, 1127 (9th Cir. 2013)).  In evaluating these considerations, it is not enough that the absent party and the existing defendants both currently wish to prevail in the suit.  As the Ninth Circuit has explained, an absent party is required (i) where the interests of the existing and intervening defendants "might [later] diverge" or (ii) where, in cases involving absent tribal parties, no existing defendant shares the absent tribe's "sovereign interest in ensuring that [a tribal business] continue[s] to operate and provide profits to the [Tribe]." *Dine Citizens*, 932 F.3d at 855; *See also Klamath Irrigation*, 2022 WL 4101175 at *7 (citing *Dine Citizens* with approval).

No party can be expected to defend the Tribe's interests in this matter.  Maverick is opposed to the Washington Tribes' interests as it seeks to ***shut down*** all Class III gaming in the State.  Nor can the Federal Defendants or the State Defendants be counted upon to adequately represent the protectable interests of the Tribe.

The State Defendants cannot adequately represent the protectable interests of the Tribe.  It is black letter law in this Circuit that the State Defendants cannot adequately represent the Tribe's

18

Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8, Sedona, AZ 86336
Tel: (425) 802-5369

**ER55**

interests.  *American Greyhound Racing, Inc.*, 305 F.3d at 1023 n.5, is the controlling case in the Ninth Circuit on the inability of a state to adequately represent the interest of absent tribes. In *Greyhound Racing*, a commercial racetrack filed a lawsuit against then-Arizona Governor Hull seeking to invalidate the gaming compacts Arizona had reached with several tribes. The Court noted "the State and the tribes have often been adversaries in disputes over gaming, and the State owes no trust duty to the tribes" and noted the "Governor's and the tribes' interests under the compacts are potentially adverse." *Id.* Those circumstances are also present here, hence, the State Defendants are not able to adequately represent the interests of the Tribe.

Moreover, the historical animosity between tribal and state interests stemming from competition over sovereign power prevents the State Defendants from adequately representing the Tribe.  *See, e.g.*, *United States v. Kagama*, 118 U.S. 375, 384 (1886) ("These Indian tribes . . . owe no allegiance to the states, and receive from them no protection.  Because of the local ill feeling, the people of the states where they are found are often their deadliest enemies.").  That is why, unlike the Tribe's desire to vigorously assert its immunity in this action, the State has frequently sought to *undermine* tribal sovereignty in order to expand its *own* authority.  *E.g.*, *Wash. State Dep't of Licensing v. Cougar Den, Inc.*, 139 S. Ct. 1000 (2019); *United States v. Washington*, 853 F.3d 946, 954–64 (9th Cir. 2017), *aff'd by an equally divided Court*, 138 S. Ct. 1832 (2018) (per curiam); *Washington v. Confed. Tribes of Colville Indian Reservation*, 447 U.S. 134, 152 (1980); *Puyallup Tribe, Inc. v. Dep't of Game*, 433 U.S. 165, 167 (1977); *Spokane Tribe*, 139 F.3d at 1301.

Nor can the Federal Defendants represent the Tribe's interests here.  As very recently reaffirmed in *Klamath Irrigation*, 2022 WL 4101175 at *7, *Dine Citizens* is the controlling case in the Ninth Circuit on when the United States cannot adequately represent the interest of absent

19

1  tribes. In *Dine Citizens*, the Ninth Circuit held that Federal Defendants are unable to adequately

2  represent an absent tribe where their obligations to follow relevant laws are in tension with tribal

3  interests. 932 F.3d. at 855. In *Dine Citizens*, the absent tribal entity of the Navajo Nation intervened

4  in an APA action challenging the federal government's compliance with federal laws requiring

5  review of the potential environmental impacts of federal approval for the operation of a tribal coal

6  mine and a power plant that relied on the coal mine.  The Nation sought intervention for the limited

7  purpose of filing a motion to dismiss pursuant to Rule 19. *Id.* at 850. Finding the absent tribal

8  entity to be a required party, the court turned to whether another party could adequately represent

9  the absent tribal entity's interests, and opined that neither the United States nor the tribal entity's

10  business partners could do so. The court reasoned that while federal defendants "have an interest

11  in defending their own analyses," they "do not share an interest in the *outcome* of the approvals—

12  the continued operation of" the tribe's mine and associated powerplant. *Id.* at 855. Similarly, in

13  *Klamath Irrigation,* the absent Tribal entities, the Klamath Tribes and the Hoopa Valley Tribe,

14  intervened in an Administrative Procedure Act ("APA") action challenging the federal Bureau of

15  Reclamation's decisions to maintain specific lake levels and instream flows to comply with the

16  Endangered Species Act and to safeguard the federal reserved water and fishing rights of the

17  (absent) Tribes. 2022 WL 4101175 at *2.  Citing and applying *Dine Citizens*, the court reasoned

18  "[t]he Tribes' primary interest is in ensuring the continued fulfillment of their reserved water and

19  fishing rights, while Reclamation's primary interest is in defending its Amended Proposed Action

20  taken pursuant to the ESA [Endangered Species Act] and APA. While Reclamation and the Tribes

21  share an interest in the ultimate outcome of this case, our precedent underscores that such

22  alignment on the ultimate outcome is insufficient for us to hold that the government is an adequate

23  representative of the tribes. *Klamath Irrigation,* 2022 WL 4101175 at *7.

24

25

26

27

28

20

Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8, Sedona, AZ 86336
Tel: (425) 802-5369

ER57

1   *Dine Citizens* also noted that the Navajo Nation's interest in being able to operate a mine

2   and benefit from an associated power plant to support its population was not merely pecuniary but

3   "sovereign" in nature, and the tribal entity's business partners could not adequately represent these

4   sovereign interests. 932 F.3d. at 855. Similarly, *Klamath Irrigation* found the Bureau of

5   Reclamation's "interest differs in a meaningful sense from [the tribe's] sovereign interest in

6   ensuring [continued access to natural resources]." 2022 WL 4101175 at *7*; see also Jamul Action*

7   *Comm. v. Simermeyer*, 974 F.3d 984 (9th Cir. 2020) (applying *Dine Citizens*); *Pit River*, 30 F.3d

8   at 1101 ("We have held that the United States cannot adequately represent an absent tribe, when

9   it may face competing interests."); *No Casino in Plymouth v. National Indian Gaming Comm'n,*

10  2022 WL 1489498 at *9-10 (E.D. Cal. 2022) (appeal pending); *Backcountry Against Dumps v.*

11  *United States Bureau of Indian Affairs*, 2021 WL 2433942 at *2-3 (S.D. Cal. 2021) (appeal

12  pending). The same is true here. A "[d]eclar[ation] that the Tribe['s] class III gaming activities"

13  are unlawful, FAC ¶ 207(4), would undermine the Tribe's unique sovereign interests by

14  eviscerating the Tribe's "very ability to govern itself, sustain itself financially, and make decisions

15  about its own" gaming operation. *Dine Citizens*, 932 F.3d at 856.

16      Indeed, this case is far clearer than *Dine Citizens*. There, one of the existing defendants

17  "share[d] at least some of [the absent tribal parties'] financial interest in the outcome of the case."

18  *Id.* at 856. Here, by contrast, the federal government has no pecuniary interest in the Tribe's

19  gaming operation. Quite the contrary: If the Court grants Maverick the requested relief, that likely

20  would result in conflict between the Shoalwater Bay Tribe and both the Federal Defendants and

21  the State Defendants over the Tribe's operation of gaming. The history discussed above at Section

22  II(B) suggests a finding the Compact is void could lead to renewed disagreements about the Tribe's

23  right to conduct gaming. For example, the United States may take enforcement action to stop the

21

ER58

1    Tribe's gaming following a court order granting such relief, while the Tribe would resist such an

2    effort. *See United States v. Spokane Tribe*, 139 F.3d 1297 (9th Cir. 1998) (vacating injunction of

3    tribal gaming and remanding for further proceedings in light of Supreme Court holding a portion

4    of IGRA unconstitutional). Applying *Dine Citizens*, the outcome of Maverick's lawsuit, if it were

5    successful, creates potentially competing interests between the Tribe and the United States.

6    Accordingly, the Federal Defendants are not able to adequately represent the interests of the Tribe.

7

8        Moreover, no Defendant has moved under Rule 12(b)(7) or 19 for failure to join the Tribe,

9    or otherwise raised the Tribe's sovereign immunity as an issue.  No Defendant has indicated in

10   filings in this case, during the April 28, 2022 status conference, or in the scheduling order, that it

11   would make such a motion.  And in conferring with the parties in advance of filing this Motion,

12   none of the parties—not the Federal Defendants, not the State Defendants, and certainly not

13   Maverick—stated that they would raise the Rule 19 issue if the Tribe did not. That factor itself

14   demonstrates that their interests diverge from those of the Tribe's. *Friends of Amador County*, 554

15   Fed. Appx. at 564.

16

17       Further, governmental entities are unable to adequately represent tribal interests where the

18   governmental entity (or other remaining parties) may pursue a settlement or litigation strategy that

19   diverges from the Tribe's. *Id.* ("[t]he government's response to the district court's questions on this

20   issue at a status conference caused the district court to suspect that the government favored judicial

21   resolution of the lawsuit as opposed to early dismissal, and would seek to avoid taking positions

22   contrary to its national Indian policy, even if contrary to the Tribe's interest"). Still further,

23   governmental entities such as Federal and State Defendants have a "broad obligation" to serve

24   many people, which may conflict with the governmental entities' obligations to a tribe. *White*, 765

25   F.3d at 1027 (finding that a state university could not adequately represent the interests of the

26

27

28

22

Motion to Dismiss                                              Scott D. Crowell
Case No.: 22-cv-05325-DGE                          Crowell Law Office-Tribal Advocacy Group
                                                          1487 W. State Route 89A, Suite 8, Sedona, AZ 86336
                                                                        Tel: (425) 802-5369

ER59

absent tribes because the university had a "broad obligation to serve the interests of the people of California, rather than any particular subset," and therefore had different motivations); *Union Pacific Railroad Co*. v. *Runyan*, 320 F.R.D. 245, 252 (D. Ore. 2017) (County government has broad obligations and no trust responsibility to protect absent tribes' treaty rights). Still further, even if the positions of the present parties are aligned with the absent tribe at a given point in time, they may diverge over the course of the litigation, including on appeal. *See, e.g.*, *White* 765 F.3d at 1027 ("At present, their interests are aligned. There is some reason to believe that they will not necessarily remain aligned."). Presently, the Tribe, the State and the United States appear poised to vigorously defend the compacts at issue, but they all have different and potentially competing interests which may diverge, or which may change over the course of the litigation.

    For all of these reasons, this Court cannot conclude that the State Defendants or the Federal Defendants are able to adequately represent the protectable interests of the Tribe.

### F.    The Narrow Public Rights Exception Does Not Apply Where the Claims Threaten an Absent Party Tribe's Legal Entitlement and Sovereignty.

    The federal courts recognize a public rights exception to the joinder rules when the lawsuit is narrowly restricted to the protection and enforcement of public rights. *National Licorice Co. v. N.L.R.B.*, 309 U.S. 350, 363 (1940). In order for the public rights exception to apply, (1) "the litigation must transcend the private interests of the litigants and seek to vindicate a public right," and (2) "although the litigation may adversely affect the absent parties' interests, the litigation must not destroy the legal entitlements of the   absent parties." *White*, 765 F.3d at 1028; *Kescoli*, 101 F.3d at 1311; *Conner v. Burford*, 848 F.2d 1441, 1459 (9th Cir. 1988); *Union Pacific Railroad Co*., 320 F.R.D. at 256-57. However, the public rights exception is generally precluded where the lawsuit seeks to extinguish a tribe's substantial legal entitlements. *See Shermoen*, 982 F.2d at 1319

Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8, Sedona, AZ 86336
Tel: (425) 802-5369

1
2
3
4
5
6
7
8
9
10
11
12
13

("Because of the threat to the absent tribes' legal entitlements, and indeed to their sovereignty, posed by the present litigation, application of the public rights exception to the joinder rules would be inappropriate."); *see also Kennedy v. United States Dept. of the Interior*, 282 F.R.D. 588, 599 (E.D. Cal. 2012). The only circumstance of which the Tribe is aware in which the public rights exception arguably prevented dismissal of claims involving absent tribes under Rule 19 is *Makah*, 910 F.2d at 559 n.6. There, the Ninth Circuit affirmed the District Court's dismissal on Rule 19 grounds in most respects, but allowed Makah's claims seeking ***future*** compliance with administrative procedures to be heard on remand. *Id.* Given the broad relief requested in Maverick's FAC, Dkt. 66 at 40, that extremely narrow exception is inapplicable to the circumstances here. *Id.* at 559 ("[T]he scope of the relief available to the Makah on their procedural claims is narrow.").

14

## IV.   Conclusion

15
16
17
18
19

The Shoalwater Bay Tribe and the other Washington Tribes are the real parties in interests in this litigation, none of which have waived their immunity from Maverick's lawsuit. Accordingly, the Tribe respectfully requests this Court to dismiss Maverick's claims in their entirety pursuant to Rule 12(b)(7) and Rule 19.

20

Respectfully submitted this 3rd day of October, 2022.

21
22
23
24
25
26
27

s/ *Scott D. Crowell*
SCOTT CROWELL (WSBA No. 18868)
CROWELL LAW OFFICES-TRIBAL
ADVOCACY GROUP
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Telephone: (425) 802-5369
Fax: (509) 290-6953
Email: scottcrowell@hotmail.com

28

24

Motion to Dismiss
Case No.: 22-cv-05325-DGE

Scott D. Crowell
Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Suite 8, Sedona, AZ 86336
Tel: (425) 802-5369

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAEL ECHO-HAWK (WSBA No. 34525)
MThirtySix, PLLC
700 Pennsylvania Avenue SE
The Yard – 2nd Floor
Washington, D.C. 20003
Telephone: (206) 271-0106
Email: Lael@MThirtySixPLLC.com


*Attorneys for Limited Intervenor Shoalwater*
*Bay Tribe*

1

## CERTIFICATE OF SERVICE

2

3        I hereby certify that on October 3, 2022, I filed the foregoing MOTION TO DISMISS with

4   the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

5   parties of record in this matter.

6   DATED: October 3, 2022

7

8                                        s/ Scott Crowell
                                         SCOTT CROWELL (WSBA No. 18868)
9                                        CROWELL LAW OFFICES-TRIBAL
                                         ADVOCACY GROUP
10                                       1487 W. State Route 89A, Suite 8
                                         Sedona, AZ 86336
11                                       Telephone: (425) 802-5369
                                         Fax: (509) 290-6953
12                                       Email: scottcrowell@hotmail.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Motion to Dismiss                                                      Scott D. Crowell
Case No.: 22-cv-05325-DGE                          Crowell Law Office-Tribal Advocacy Group
                                            1487 W. State Route 89A, Suite 8, Sedona, AZ 86336
                                                                     Tel: (425) 802-5369

**ER63**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MAVERICK GAMING LLC, | CASE NO. 3:22-cv-05325-DGE |
| Plaintiff, | ORDER GRANTING |
| v. | SHOALWATER BAY TRIBE'S |
| UNITED STATES OF AMERICA et al., | MOTION FOR LIMITED INTERVENTION |
| Defendants. | |

## I   INTRODUCTION

This matter comes before the Court on Shoalwater Bay Tribe's Motion for Limited Intervention.[1]  (Dkt. No. 68.)  Shoalwater Bay Tribe ("the Tribe") seeks to intervene in this action for the limited purpose of moving to dismiss under Federal Rules of Civil Procedure 12(b)(7) and 19.  (*Id.* at 7.)  Plaintiff Maverick Gaming LLC ("Maverick") opposes the Tribe's motion.  (Dkt. No. 78.)  Having reviewed the motion, the responses, and the relevant portions of

---

[1] The Tribe requests oral argument on this matter.  The Court believes the Tribe's motion can be determined without oral argument.  *See* LCR 7(b)(4).

ORDER GRANTING SHOALWATER BAY TRIBE'S MOTION FOR LIMITED INTERVENTION - 1

**ER64**

1   the record, the Court GRANTS the Tribe's motion and directs the Tribe to file its motion to

2   dismiss no later than September 30, 2022.

3               **II        BACKGROUND**

4          This litigation concerns compacts between twenty-nine federally recognized tribes

5   ("Washington Tribes") and the state of Washington entered under the Indian Gaming Regulatory

6   Act ("IGRA"), 25 U.S.C. §§ 2701-2721, and the Revised Code of Washington § 9.46.360 ("the

7   Compacts"). (Dkt. No. 66 at 3.) The Compacts permit Washington Tribes to offer most forms

8   of "casino-style gaming (known as 'class III' gaming under the IGRA)," most of which are

9   legally prohibited for other non-tribal entities. (*Id.*) Recent amendments to several of these

10  Compacts ("the Compact Amendments") also allow multiple Washington Tribes to offer sports

11  betting at their casinos, although it remains illegal for other casinos throughout the state. (*Id.*)

12         On January 11, 2022, Maverick sued the United States as well as associated federal and

13  Washington state officials under the Administrative Procedures Act and 42 U.S.C. § 1983. (*See*

14  Dkt. No. 1 at 34–40.) Maverick alleged the Compacts and Compact Amendments create a

15  "gaming monopoly," in violation of the IGRA, the Constitution's guarantee of equal protection,

16  and the Constitution's anti-commandeering doctrine. (*See id.* at 22–28.) Maverick filed its

17  Complaint with the United States District Court for the District of Columbia; however, on April

18  28, 2022, the court transferred the case to the Western District of Washington. (Dkt. No. 47.)

19  Once transferred, the parties stipulated to a briefing schedule on dispositive cross-motions

20  having agreed factual discovery was unnecessary. (Dkt. No. 63.) In accordance with the

21  stipulated briefing schedule, Maverick filed an unopposed First Amended Complaint on July 1,

22  2022. (*See* Dkt. Nos. 64, 66.) On August 3, 2022, the Tribe moved to suspend the briefing

23  schedule and intervene for the limited purpose of filing a motion to dismiss. (Dkt. Nos. 68, 69.)

24

ORDER GRANTING SHOALWATER BAY TRIBE'S MOTION FOR LIMITED INTERVENTION - 2

1  The Court suspended the briefing schedule (Dkt. No. 81) and now considers the Tribe's motion

2  to intervene.  The Tribe seeks permissive intervention under Federal Rule of Civil Procedure

3  24(b), or alternatively, intervention as a matter of right under Federal Rule of Civil Procedure

4  24(a).[2]  (Dkt. No. 68 at 7.)  The Federal Defendants take no position on the Tribe's Motion to

5  Intervene and the State Defendants consent to permissive intervention under Rule 24(b) but take

6  no position on the Tribe's intervention under Rule 24(a).  (Dkt. No. 68 at 7.)

7  ### III        DISCUSSION

8  **A. Permissive Intervention**

9  Federal Rule of Civil Procedure 24(b) provides for permissive intervention "where the

10  applicant for intervention shows. . . the motion is timely [and] the applicant's claim or defense,

11  and the main action, have a question of law or a question of fact in common."  *United States v.*

12  *City of Los Angeles, Cal.*, 288 F.3d 391, 403 (9th Cir. 2002) (internal quotations omitted).[3]

13  Because the Tribe timely moved to intervene and its defense that it is an immune, indispensable

14  party has questions of fact in common with the pending suit, the Court grants permissive

15  intervention for the limited purpose of the Tribe filing its Motion to Dismiss (Dkt. No. 68-1).

16  1.  Timeliness

17  "Timeliness is determined by the totality of the circumstances facing would-be

18  intervenors, with a focus on three primary factors: '(1) the stage of the proceeding at which an

19

20  [2] Because the Court finds the Tribe satisfies the requirements for permissive intervention under

21  Federal Rule of Civil Procedure 24(b), it does not consider whether the Tribe is entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24(a).

22  [3] Permissive intervention to litigate a claim on the merits requires an independent ground for

23  jurisdiction.  *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992).  However, because the Tribe is not seeking to litigate Plaintiff's claims on the merits, independent jurisdiction is not required in this case.  *See id.*  Plaintiff makes no argument involving

24  independent jurisdiction.  (*See generally* Dkt. No. 78.)

ORDER GRANTING SHOALWATER BAY TRIBE'S MOTION FOR LIMITED INTERVENTION - 3

1    applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length

2    of the delay.'"  *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016).

3    Timeliness is measured from "when proposed intervenors should have been aware that their

4    interests would not be adequately protected by the existing parties."  *Smith v. Marsh*, 194 F.3d

5    1045, 1052 (9th Cir. 1999).

6         The Tribe's motion to intervene comes at an early stage of these proceedings because the

7    Court has yet to substantively engage with the issues of the case.  *See League of United Latin*

8    *American Citizen v. Wilson*, 131 F.3d 1297, 1303 (9th Cir. 1997) (holding "the fact that the

9    district court has substantively—and substantially—engaged the issues in this case [by ruling on

10   a preliminary injunction, class certification, a motion to dismiss, and partial summary judgment]

11   weighs heavily against allowing intervention[.]").  Although Plaintiff filed its Complaint on

12   January 11, 2022, procedural issues delayed the case from moving forward.  Specifically,

13   Defendants challenged Plaintiff's selected venue and the case was transferred to the Western

14   District of Washington on May 9, 2022 (Dkt. No. 47), several months after Plaintiff initiated the

15   case.    This Court set a new briefing schedule on June 28, 2022.  (Dkt. No. 63.)  As a result, the

16   Court has not considered dispositive motions, nor has it considered motions going to the merits

17   of this case.

18        Plaintiff argues the Tribe's intervention is untimely because it moved nine days before

19   Plaintiff's summary judgment deadline, even though the Tribe should have known its interests

20   would be affected when the suit first commenced in January.  (Dkt. No. 78 at 15–16) (citing

21   *United States v. Alisal Water Corp.*, 370 F.3d 915, 921–22 (9th Cir. 2004)).  In *Alisal*, an entity

22   sought intervention four years into the litigation to "contest a possible award of damages" when

23   partial summary judgment and a one-day bench trial was set for the following week.  370 F.3d at

24

ORDER GRANTING SHOALWATER BAY TRIBE'S MOTION FOR LIMITED INTERVENTION - 4

1    921–22.  This litigation, on the other hand, is relatively new and the Tribe seeks intervention to

2    determine whether the case should be dismissed under Federal Rules of Civil Procedure 19 and

3    12(b)(7), an issue which logically should be decided before delving into the merits of Plaintiff's

4    claims.  Additionally, as discussed in the Court's order suspending the dispositive briefing

5    schedule, Plaintiff need not have moved for summary judgment on August 12, 2022, because it

6    could have stipulated to a continuance or participated in a scheduling conference as requested by

7    the Tribe.  (*See* Dkt. No. 81 at 5.)  Therefore, the fact that Plaintiff moved for summary judgment

8    before the Court suspended the briefing schedule does not alter the Court's analysis.

9          Plaintiff also fails to establish prejudice.  Plaintiff argues "[a]llowing the Tribe to inject

10   new issues into this case would prejudice [Plaintiff] by delaying the adjudication of its rights in

11   this action."  (Dkt. No. 78 at 15) (citing *Smith v. Marsh*, 194 F.3d 1045, 1051 9th Cir. 1999).  In

12   *Smith*, the court held the plaintiffs would be prejudiced by allowing intervenors to inject new

13   issues into the litigation after "many substantive and procedural issues had already been settled."

14   194 F.3d at 1051.  This case is clearly distinguishable as it is in early stages of litigation, and

15   thus, delay alone does not unduly prejudice Plaintiff.

16         Finally, Plaintiff argues, "the Tribe's failure to explain the reason for its lengthy delay in

17   moving to intervene weighs against a finding of timeliness."  (Dkt. No. 78 at 15–16.)  However,

18   the Tribe explained it moved to intervene one month after Plaintiff filed its Amended Complaint

19   because "the Tribe could not have known the content of the [Amended Complaint] until

20   [Plaintiff] filed it" and "the filing of the [Amended Complaint] would have mooted any motion

21   to dismiss the initial Complaint."  (Dkt. No. 73 at 5.)  The Court finds the Tribe's rational

22   reasonable and its motion to intervene timely.

23

24

ORDER GRANTING SHOALWATER BAY TRIBE'S MOTION FOR LIMITED INTERVENTION - 5

2.  <u>Common Facts and Law</u>

The existence of a common question of fact is liberally construed.  *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108–09 (9th Cir. 2002) *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2022).  Common questions of fact clearly exist in this case given that the Tribe argues it is an indispensable party to litigation that implicates its interests in gaming compacts with the State of Washington to which it is a party.  Moreover, Plaintiff does not rebut the Tribe's assertions that its motion to dismiss shares common questions of law and fact to Plaintiff's claims.  (*See generally* Dkt. No. 78.)

3.  <u>Other Factors</u>

Because the Tribe has established the requirements for permissive intervention, the Court may allow intervention if it so chooses.  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  Where an intervenor has met the explicit requirements under Rule 24(b), "the court may also consider other factors in the exercise of its discretion, including 'the nature and extent of the intervenors' interest' and 'whether the intervenors' interests are adequately represented by other parties.'" *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (quoting *Spangler v. Pasadena City Bd. of Educ.,* 552 F.2d 1326, 1329 (9th Cir. 1977)).

As discussed, Plaintiff fails to show intervention will cause undue prejudice or delay.  *See supra* Part III.A.1.  Instead, Plaintiff argues intervention should be denied because the Tribe's motion to dismiss is without merit.  Plaintiff contends, "[b]ecause the Tribe has moved to intervene solely to move to dismiss this action on the ground that it is an indispensable party, and because it is not an indispensable party, this court should deny its motion for limited

1  intervention" to conserve judicial resources.  (Dkt. No. 78 at 8–9) (citing *West Flagler*

2  *Associates v. Haaland*, 573 F. Supp. 3d 260 (D.D.C. 2021)).  Plaintiff's argument is unavailing

3  because it does not provide Ninth Circuit authority supporting its contention that the Court

4  should skip over the Tribe's motion to intervene and deny its motion to dismiss without full

5  briefing.  Therefore, the Court will allow intervention and consider the Tribe's motion to dismiss

6  on the merits.

7          Plaintiff further argues the Court should deny intervention because the Tribe's interests

8  are adequately represented by federal and state Defendants.  Intervention as a matter of right

9  under Rule 24(a) requires a proposed intervenor's interests be inadequately represented by

10  existing parties.  Fed. R. Civ. P. 24(a)(2).  However, inadequate representation is not required

11  under Rule 24(b); instead, a court *may* consider whether a proposed intervenor's interests are

12  adequately represented in deciding whether to grant permissive intervention.  *See Perry*, 587

13  F.3d at 955.  Because the Court will consider whether the Tribe's interests are adequately

14  represented by the existing Defendants in its analysis of the motion to dismiss under Rule 19, it

15  chooses not to do so here.  *See Dine Citizens Against Ruining Our Environment v. Bureau of*

16  *Indian Affairs*, 932 F.3d 843, 853–54 (9th Cir. 2019) (holding the federal government did not

17  adequately represent a Navajo Nation corporation in an environmental suit under the

18  Administrative Procedures Act for the purposes of Rule 19).  Hence, the Court finds no

19  compelling reason to deny the Tribe limited intervention in this case.

20                    **IV      CONCLUSION**

21          Accordingly, and having considered Shoalwater Bay's motion, the briefing of the parties,

22  and the remainder of the record, the Court finds and ORDERS that Shoalwater Bay's Motion to

23  Intervene is GRANTED.

24

ORDER GRANTING SHOALWATER BAY TRIBE'S MOTION FOR LIMITED INTERVENTION - 7

1.  Shoalwater Bay Tribe shall file its Motion to Dismiss (Dkt. No.68-1) no later than October 3, 2022.

2.  Pursuant to Local Civil Rule 7(d)(3), Plaintiff and Defendants shall submit their responses by October 24, 2022 and Shoalwater Bay Tribe shall submit its reply by October 28, 2022.

3.  The briefing schedule (Dkt. No. 63) remains STAYED.  The Court amends its prior order (Dkt. No. 81 at 8) and does not require the parties to meet and confer to set deadlines for dispositive motions for submission 10 days after the Court's order on the Tribe's Motion for Limited Intervention.  The Court orders the parties to meet and confer to set deadlines for dispositive motions and submit a joint motion to the Court no later than 10 days after the Court's decision on the Tribe's Motion to Dismiss.

Dated this 29th day of September, 2022.

David G. Estudillo
United States District Judge

1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

MAVERICK GAMING LLC,

Plaintiff,

v.

UNITED STATES OF AMERICA et al.,

Defendants.

CASE NO. 3:22-cv-05325-DGE

ORDER GRANTING MOTION
FOR RELIEF FROM SUMMARY
JUDGMENT DEADLINES

12

13

14

15

16

## I      INTRODUCTION

17

This matter comes before the Court on Intervenor Shoalwater Bay Tribe's Motion for

18

Relief from Summary Judgment Deadlines.  (Dkt. No. 69.)  Shoalwater Bay Tribe ("the Tribe")

19

simultaneously filed a Motion for Limited Intervention (Dkt. No. 68) and proposed Motion to

20

Dismiss.  (Dkt. No. 68-1.)  In its Motion for Relief from Summary Judgment Deadlines, the

21

Tribe asks the Court to suspend the current briefing schedule (Dkt. No. 63) until the Court has

22

ruled on the Tribe's Motion for Limited Intervention, and if granted, the Tribe's Motion to

23

24

ORDER GRANTING MOTION FOR RELIEF FROM SUMMARY JUDGMENT DEADLINES - 1

**ER72**

1    Dismiss.  (Dkt. No. 69 at 12.)  The Washington State Defendants ("State Defendants")[1] join the

2    Tribe's motion to temporarily suspend the summary judgment deadlines.  (Dkt. No. 72.)

3    However, Plaintiff Maverick Gaming LLC ("Maverick") opposes the Tribe's motion.  (Dkt. No.

4    71.)  Having reviewed the motion, the responses, and the relevant portions of the record, the

5    Court GRANTS the Tribe and State Defendants' motion.[2]

6    **II**      **BACKGROUND**

7         This litigation concerns compacts between twenty-nine federally recognized tribes

8    ("Washington Tribes") and the state of Washington entered under the Indian Gaming Regulatory

9    Act ("IGRA"), 25 U.S.C. §§ 2701-2721, and the Revised Code of Washington § 9.46.360 ("the

10    Compacts").  (Dkt. No. 66 at 3.)  The Compacts permit Washington Tribes to offer most forms

11    of "casino-style gaming (known as 'class III' gaming under the IGRA)," most of which are

12    legally prohibited for other non-tribal entities.  (*Id.*)  Recent amendments to several of these

13    Compacts ("the Compact Amendments") also allow multiple Washington Tribes to offer sports

14    betting at their casinos, although it remains illegal for other casinos throughout the state.  (*Id.*)

15         On January 11, 2022, Maverick filed a Complaint against the United States as well as

16    associated federal and Washington state officials, alleging the Compacts and Compact

17    Amendments create a "gaming monopoly," in violation of the IGRA, the Constitution's

18    guarantee of equal protection, and the Constitution's anti-commandeering doctrine.  (*See* Dkt.

19    Nos. 1 at 22–28; 71 at 7.)  Maverick initiated the lawsuit in the United States District Court for

---

[1] On August 10, 2022, Defendants Steve Conway, Robert Ferguson, Tina Griffin, Jeff Holy, Jay Inslee, Shelley Kloba, Sarah Lawson, Alicia Levy, Julia Patterson, Kristine Reeves, Bud Sizemore, and Brandon Vick ("State Defendants") filed a Notice of Joinder in which they stated their intention to join the Tribe's Motion for Relief from Summary Judgment Deadlines.  (Dkt. No. 72.)

[2] The Tribe requests oral argument on this matter.  (Dkt. No. 73 at 1.)  The Court believes the Tribe's motion can be determined without oral argument.  *See* LCR 7(b)(4).

ORDER GRANTING MOTION FOR RELIEF FROM SUMMARY JUDGMENT DEADLINES - 2

1   the District of Columbia; however, on April 28, 2022, the court transferred the action to the

2   Western District of Washington.  Once transferred, this Court issued an order about initial

3   scheduling dates.  (Dkt. No. 57.)

4           On June 21, 2022, the parties submitted a stipulated motion, asking the Court to vacate its

5   initial order and instead impose a briefing schedule on dispositive cross-motions.  (Dkt. No. 60 at

6   1.)  The parties agreed factual discovery was unnecessary.  (*Id.*)  The Court granted the motion

7   and adopted the deadlines agreed to by the parties.  (Dkt. No. 63.)  In accordance with the new

8   briefing schedule, Maverick filed an unopposed First Amended Complaint on July 1, 2022.  (*See*

9   Dkt. Nos. 64; 66.)

10          On July 29, 2022, the Tribe informed Maverick it would move to intervene and dismiss

11  the action based on the Tribe's sovereign immunity.  The Tribe informed Maverick it would seek

12  relief from the briefing schedule deadlines and request a stay pending the Court's ruling on its

13  motions.  (Dkt. Nos. 73 at 5–6; 74 at 2.)  Maverick relayed its intent to oppose all three motions.

14  (Dkt. No. 74 at 2.)  The Tribe again contacted Maverick on August 1, 2022, asking Maverick to

15  reconsider its opposition to the Tribe's motion for relief from deadlines given that its Motion for

16  Summary Judgment was due August 12, 2022, the same day the Tribe's motion was ripe for

17  consideration.  (Dkt. Nos. 73 at 6; 74 at 2.)  The Tribe proposed a telephonic conference with the

18  Court under Local Civil Rule 7(i), to stay the case before August 12, 2022.  (Dkt. No. 74 at 2.)

19  Maverick rejected the Tribe's proposed telephonic conference and continued to oppose a stay.

20  (*Id.*)

21

22

23

24

ORDER GRANTING MOTION FOR RELIEF FROM SUMMARY JUDGMENT DEADLINES - 3

**III      DISCUSSION**

**A.  Legal Standards for Modifying Case Deadlines**

The Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings; however, "[a] district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  In exercising its discretion to stay a pending proceeding, the Court must consider the following competing interests: (1) "possible damage which may result from the granting of a stay," (2) "hardship or inequity which a party may suffer in being required to go forward," and (3) "orderly course of justice measured in terms of the simplifying or complicating of issues[.]"  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109–10 (9th Cir. 2005) (internal citations omitted).

Moreover, a district court may modify the case schedule and enlarge deadlines for good cause.  *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); Fed. R. Civ. P. 6(b) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . if a request is made, before the original time or its extension expire.").

**B.  Motion for Relief from Summary Judgment Deadlines**

The Tribe asks the Court to suspend the Summary Judgment Deadlines, set forth in the Court's Order of June 28, 2022, until the Court has deliberated and ruled on the Tribe's Motion for Limited Intervention (Dkt. No. 68), and if the Motion for Limited Intervention is granted, the Tribe's Motion to Dismiss (Dkt. No. 68-1).  (Dkt. No. 69 at 12.)  In short, the Tribe argues it is an indispensable party that cannot be joined because of sovereign immunity, and therefore, the

1  case should be dismissed under Federal Rules of Civil Procedure 12(b)(7) and 19.  (Dkt. No. 69

2  at 7.)

3         1.  Maverick Fails to show Undue Prejudice

4         Maverick argues it will suffer prejudice if the Court disrupts the agreed-upon briefing

5  schedule and "Maverick's settled expectations."[3]  (Dkt. No. 71 at 9.)  Specifically, Maverick

6  identifies two sources of prejudice: (1) Defendants will have longer to prepare their dispositive

7  motions given Maverick has already filed its Motion for Summary Judgment and (2) extending

8  the suit will prolong Maverick's alleged competitive injury caused by the Compacts.  (*Id.* at 9–

9  10.)

10        These arguments are unavailing.  As the Tribe rightly points out, Maverick could have

11 avoided the prejudice of which it now complains by stipulating to the Tribe's motion or

12 participating in a telephonic conference with the Court.  (Dkt. No. 73 at 6.)  Had Maverick done

13 so, it need not have filed its Motion for Summary Judgment on August 12, 2022.  Maverick

14 cannot now claim a circumstance it permitted to occur has caused undue prejudice.  Maverick's

15 argument that delay will prolong its competitive injury assumes its allegations are meritorious,

16

17 [3] One of Maverick's primary arguments is the Tribe's Motion for Limited Intervention is
   untimely.  Federal Rule of Civil Procedure 24 requires an intervention motion to be timely.  *See*

18 Fed. R. Civ. P. 24(a), (b).  Indeed, under permissive intervention, "the court must consider
   whether the intervention will unduly delay . . . the adjudication of the original parties' rights."

19 Fed. R. Civ. P. 24(b)(3).  In this Order, the Court does not decide whether the Tribe's Motion for
   Limited Intervention fulfills the timeliness requirement.  Yet Maverick fails to establish in its

20 opposition to the Tribe's Motion for Relief from Summary Judgment Deadlines that the Tribe's
   intervention motion is so untimely to not warrant a stay of proceedings to give the matter full

21 consideration.  As the Tribe asserts, its Motion for Limited Intervention was made around one
   month after Maverick filed its First Amended Complaint.  Further, the case cited by Maverick in

22 support of its timeliness argument presents a substantially greater delay.  (*See* Dkt. No. 71 at 9–
   10) (citing *Eastman Chem. Co. v. Nestle Waters Mgmt. & Tech.*, 2014 WL 1316772, at *7

23 (S.D.N.Y. Apr. 1, 2014)).  In *Eastman*, the court denied the defendants request to amend its
   answer to add a third counterclaim because it would require substantial new factual discovery.

24 The circumstances are not analogous to this case.

1   which is yet to be determined.  Although the Court acknowledges the parties' interest in swiftly

2   resolving litigation (*see* Dkt. No. 71 at 10 (collecting cases)), the proposed stay will not

3   indefinitely postpone the proceedings.  Since the parties agree this case does not require factual

4   discovery, the litigation is unlikely to stretch beyond comparable matters.

5        2.   Hardship or Inequity Faced by the Tribe

6        Related to the second consideration—the hardship or inequity the Tribe would suffer if

7   compelled to move forward—Maverick argues the Tribe would face no adverse consequence

8   given that its suit does not seek relief from the Tribe.  (*See* Dkt. No. 71 at 12.)  But, even if the

9   Tribe is not currently a named defendant, it may be affected by the outcome given this suit could

10  nullify the Washington Tribe's Compacts.  Maverick concedes this interest although it contests

11  the Tribe qualifies as an indispensable party.  (*Id.* at 14.)  Despite its status as a party, the Tribe

12  seeks the opportunity to decide whether to waive sovereign immunity and intervene should the

13  Court deny its motion to dismiss.  (Dkt. No. 73 at 8.)  This opportunity may be denied if forced

14  to proceed according to the briefing schedule.  On balance, the hardship faced by the Tribe if

15  compelled to move forward outweighs the potential prejudice to Maverick if the deadlines are

16  stayed.

17       3.   A Stay Permits Orderly Consideration of the Issues

18       As for the third factor, whether the Tribe is an indispensable party and entitled to

19  sovereign immunity is a threshold inquiry that should be addressed before the parties' summary

20  judgment motions to conserve judicial and litigant resources.  *See, e.g.*, *Dine Citizens Against*

21  *Ruining Our Env't et al. v. United States Bureau of Indian Affairs et al.*, 3:16-cv-08077-SPL (D.

22  Ariz. Oct. 28, 2019) (Dkt. No. 49 at 2) (staying case scheduling deadlines pending resolution of

23  the Navajo Transitional Energy Company LLC's motion to dismiss).

24

ORDER GRANTING MOTION FOR RELIEF FROM SUMMARY JUDGMENT DEADLINES - 6

1    Maverick argues the Tribe's Motion for Limited Intervention and Motion to Dismiss do

2    not present threshold issues because they are not jurisdictional—the question whether the Tribe

3    is an indispensable party under Rule 19 is a matter of equity.  However, whether equity demands

4    granting the Tribe's intervention is an issue that should be considered fully before making any

5    decisions on the merits of the underlying litigation.  Moreover, notwithstanding the equity versus

6    jurisdictional distinction, the Tribe's Motion to Dismiss invokes tribal sovereign immunity and

7    district courts have stayed discovery and further proceedings where immunity is raised.  *See*

8    *Zabeti v. Arkin*, 2014 WL 1764358, at *3 (D. Nev. 2014) (citing *Wood v. McEwen*, 644 F.2d 797,

9    801 (9th Cir. 1981)).

10    Maverick contends orderly consideration is not served by a stay because the Tribe raises

11    meritless issues; specifically, the Tribe does not satisfy the standard required for an indispensable

12    party.  (Dkt. No. 71 at 13–15.)  The Court does not find Maverick's arguments on the merits of

13    the Tribe's Motion to Dismiss compelling at this point, given the Court has yet to consider the

14    full briefing and decide the Tribe's motions.  By modifying the agreed-upon briefing schedule,

15    the Court avoids engaging in piecemeal consideration of these issues.  The Court therefore finds

16    good cause to modify the briefing schedule set forth in its June 28, 2022 Order (Dkt. No. 63).

17    **IV        CONCLUSION**

18    Accordingly, and having considered Intervenor Shoalwater Bay Tribe's motion, the

19    briefing of the parties, and the remainder of the record, the Court finds and ORDERS that

20    Shoalwater Bay Tribe's Motion for Relief from Summary Judgment Deadlines (Dkt. No. 69) is

21    GRANTED.

22    1.  The briefing schedule (Dkt. No. 63) is STAYED.

23

24

ORDER GRANTING MOTION FOR RELIEF FROM SUMMARY JUDGMENT DEADLINES - 7

2.  The parties shall meet and confer to set deadlines for dispositive motions and submit

a joint motion to the Court no later than 10 days after the Court's decision on the

Tribe's Motion for Limited Intervention.


Dated this 22nd day of August, 2022.

David G. Estudillo
United States District Judge

ORDER GRANTING MOTION FOR RELIEF FROM SUMMARY JUDGMENT DEADLINES - 8

**ER79**



# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, DC 20240

## SEP 1 0 2021

The Honorable Charlene Nelson
Chairman, Shoalwater Bay Indian Tribe
 of the Shoalwater Bay Indian Reservation
P.O. Box 130
Tokeland, Washington 98590

Dear Chairman Nelson:

On August 24, 2021, the Shoalwater Bay Indian Tribe of the Shoalwater Bay Indian Reservation (Tribe) and the State of Washington (State) submitted the Third Amendment to the Tribal-State Compact for Class III Gaming between the Shoalwater Bay Indian Tribe of the Shoalwater Bay Indian Reservation (Amendment), providing for the regulation of class III gaming activities by the Tribe. The Amendment authorizes the Tribe to operate sports wagering at the Tribe's class III gaming facility, updates the Compact to reflect this change in various sections, and incorporates Appendix S, Sports Wagering.

We completed our review of the Amendment and conclude that it does not violate the Indian Gaming Regulatory Act (IGRA), any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands, or the trust obligations of the United States to Indians. 25 U.S.C. § 2710(d)(8)(B). Therefore, pursuant to my delegated authority and Section 11 of IGRA, I approve the Amendment. 25 U.S.C. § 2710(d)(8)(A). The Amendment takes effect when the notice of this approval is published in the Federal Register. 25 U.S.C. § 2710(d)(3)(B).

A similar letter is being sent to the Honorable Jay Inslee, Governor, State of Washington.

Sincerely,

Bryan Newland
Assistant Secretary – Indian Affairs

Enclosure

The Tribe's share of the Start-Up Costs fee will be invoiced by April 15, 2023, with payment due to the State Gaming Agency no later than May 30, 2023.

IN WITNESS WHEREOF, the Shoalwater Bay Indian Tribe and the State of Washington have executed this Third Amendment to the Compact.

SHOALWATER BAY INDIAN TRIBE

BY: _____
CHARLENE NELSON
Chairman

DATED: _6 -21- 2021_

STATE OF WASHINGTON

BY: _____
JAY INSLEE
Governor

DATED: _7/6/2021_

By: _____
Bryan Newland
Assistant Secretary - Indian Affairs

Date:_____ SEP  1 0  2021

4



## United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, DC 20240

**SEP 1 0 2021**

The Honorable Jay Inslee
Governor of Washington
Olympia, Washington 98504

Dear Governor Inslee:

On August 24, 2021, the Shoalwater Bay Indian Tribe of the Shoalwater Bay Indian Reservation
(Tribe) and the State of Washington (State) submitted the Third Amendment to the Tribal-State
Compact for Class III Gaming between the Shoalwater Indian Tribe of the Shoalwater Bay
Indian Reservation (Tribe) and the State of Washington (Amendment), providing for the
regulation of class III gaming activities by the Tribe. The Amendment authorizes the Tribe to
operate sports wagering at the Tribe's class III gaming facility, updates the Compact to reflect
this change in various sections, and incorporates Appendix S, Sports Wagering.

We completed our review of the Amendment and conclude that it does not violate the Indian
Gaming Regulatory Act (IGRA), any other provision of Federal law that does not relate to
jurisdiction over gaming on Indian lands, or the trust obligations of the United States to Indians.
25 U.S.C. § 2710(d)(8)(B). Therefore, pursuant to my delegated authority and Section 11 of
IGRA, I approve the Amendment. 25 U.S.C. § 2710(d)(8)(A). The Amendment takes effect
when the notice of this approval is published in the Federal Register. 25 U.S.C. § 2710(d)(3)(B).

A similar letter is being sent to the Honorable Charlene Nelson, Chairman, Shoalwater Bay
Indian Tribe of the Shoalwater Bay Indian Reservation.

Sincerely,

Bryan Newland
Assistant Secretary – Indian Affairs

Enclosure

The Tribe's share of the Start-Up Costs fee will be invoiced by April 15, 2023, with payment due to the State Gaming Agency no later than May 30, 2023.

IN WITNESS WHEREOF, the Shoalwater Bay Indian Tribe and the State of Washington have executed this Third Amendment to the Compact.

SHOALWATER BAY INDIAN TRIBE

BY: _____
CHARLENE NELSON
Chairman

DATED: 6-21-2021

STATE OF WASHINGTON

BY: _____
JAY INSLEE
Governor

DATED: 7/6/2021

By: _____
Bryan Newland
Assistant Secretary - Indian Affairs

Date: SEP 1 0 2021

4

THE HONORABLE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MAVERICK GAMING LLC, | No. 22-cv-05325 DGE |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | |
| UNITED STATES OF AMERICA, | |
| UNITED STATES DEPARTMENT OF THE INTERIOR, | |
| DEB HAALAND, in her official capacity as Secretary of the Interior, | |
| BRYAN NEWLAND, in his official capacity as Assistant Secretary – Indian Affairs, | |
| JAY INSLEE, in his official capacity as the Governor of Washington, | |
| ROBERT FERGUSON, in his official capacity as the Attorney General of Washington, | |
| ALICIA LEVY, in her official capacity as Chair of the Washington State Gambling Commission, | |
| JULIA PATTERSON, in her official capacity as Vice-Chair of the Washington State Gambling Commission, | |
| BUD SIZEMORE, in his official capacity as Commissioner of the Washington State Gambling Commission, | |

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

1

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA 98020
(425) 967-3550

1  KRISTINE REEVES, in her official capacity
2  as Commissioner of the Washington State
   Gambling Commission,

3  SARAH LAWSON, in her official capacity as
4  Commissioner of the Washington State
   Gambling Commission,

5  STEVE CONWAY, in his official capacity as
6  ex officio member of the Washington State
   Gambling Commission,

7  JEFF HOLY, in his official capacity as ex
8  officio member of the Washington State
   Gambling Commission,

9  SHELLEY KLOBA, in her official capacity as
   ex officio member of the Washington State
10 Gambling Commission,

11 BRANDON VICK, in his official capacity as
   ex officio member of the Washington State
12 Gambling Commission,

13 TINA GRIFFIN, in her official capacity as
   Director of the Washington State Gambling
14 Commission,

15         Defendants.

16
17      Plaintiff Maverick Gaming LLC, alleges as follows:

18                  **PRELIMINARY STATEMENT**

19      1.      Maverick Gaming LLC ("Maverick") owns and operates 18 cardrooms in the State

20 of Washington.  Maverick also owns casinos in Colorado and Nevada, which offer a wide variety

21 of games, including roulette, craps, sports betting, and dealer-assisted electronic table games.

22 Maverick seeks to expand its gaming offerings in Washington to include additional games such as

23 roulette, craps, sports betting, and dealer-assisted electronic table games, but it is unable to do so

24 because Washington allows only Indian tribes to offer these forms of gaming within the State.

25
26
                                    2
FIRST AMENDED COMPLAINT                              **Brennan Legal, PLLC**
(3:22-cv-05325 DGE)                                      P.O. Box 1384
                                                   144 Railroad Ave. S., Ste. 308
                                                     Edmonds, WA  98020
                                                       (425) 967-3550

**ER85**

2.    Purporting to act pursuant to the Indian Gaming Regulatory Act ("IGRA" or "the Act")—a federal statute regulating gaming on Indian lands—Washington entered into compacts (the "Compacts") with 29 Indian tribes (the "Tribes").  The Compacts grant the Tribes the exclusive right to offer most forms of casino-style gaming (known as "class III" gaming under IGRA).  In 2020, Washington passed a new law giving federally recognized Indian tribes the exclusive right to offer sports betting, which had previously been omitted from the list of class III games that Indian tribes could offer.  Washington has since amended its compacts with 18 Indian tribes (the "Compact Amendments") to permit them to offer sports betting at tribal casinos.

3.    At the same time, Washington's criminal laws prohibit any non-tribal entities, such as Maverick, from offering most forms of class III gaming in Washington, including roulette, craps, and sports betting.  The U.S. Secretary of the Interior approved this discriminatory tribal gaming monopoly by allowing the Compacts and recent Compact Amendments to go into effect.

4.    With a monopoly over most forms of casino-style gaming, the Tribes have established expansive casino operations in Washington.  This class III gaming monopoly has been extremely profitable for the Tribes.  In 2017, even before they were permitted to offer sports betting, the Tribes' net receipts from class III gaming totaled approximately $2.56 billion.  But the monopoly prevents non-tribal entities from competing on an equal footing with the Tribes.

5.    Washington's tribal monopoly is inconsistent with IGRA and federal criminal statutes, which prohibit class III gaming activity by tribal casinos on Indian lands unless a State permits the same activity by non-tribal entities.  The tribal monopoly also violates the Constitution's guarantee of equal protection of the laws by irrationally and impermissibly discriminating on the basis of race and ancestry.  Neither a State nor the federal government may give Indian tribes the exclusive right to engage in commercial activities that have no relation to

3

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

uniquely tribal interests.  And IGRA itself violates the Tenth Amendment by mandating that States enter into negotiations with Indian tribes over class III gaming compacts.

6.    Maverick brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–706; IGRA; 42 U.S.C. § 1983; the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; and the United States Constitution to challenge the validity of Washington's tribal gaming monopoly and the Compacts and Compact Amendments that purport to authorize it.  For the reasons stated herein, and as set forth in greater detail below, Maverick prays that this Court: (1) declare that the Compacts and Compact Amendments violate federal law, and are therefore void; (2) vacate and set aside the Secretary of the Interior's approvals of the Compacts and Compact Amendments; (3) enjoin the state Defendants from continuing to administer the Compacts and Compact Amendments; (4) declare that the enforcement of Washington's criminal gaming laws against Maverick violates the Constitution's guarantee of equal protection, and enjoin the same; (5) enjoin the execution of new compacts granting tribal class III gaming monopolies; and (6) award nominal damages.

**PARTIES**

7.    Plaintiff Maverick Gaming LLC, is a Washington limited liability company with a residence at 12530 NE 114th Street, Kirkland, WA 98034.  Maverick owns and operates 18 cardrooms in Washington and owns several hotel/casinos in Nevada and Colorado.  Maverick's casinos in Nevada and Colorado offer a variety of games, including roulette, craps, sports betting, and dealer-assisted electronic table games.  Maverick seeks to expand its gaming offerings in Washington to include the same forms of gaming that its casinos have successfully provided in Nevada and Colorado, but it is unable to proceed because of Washington's criminal prohibitions of most forms of class III gaming.

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

4

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

8.      Defendant the United States of America is sued as a party to a claim seeking declaratory and injunctive decrees against federal officers.  *See* 5 U.S.C. § 702.  The U.S. Attorney's Office for the Western District of Washington is located at 555 700 Stewart Street, Suite 5220, Seattle WA 98101.

9.      Defendant the U.S. Department of the Interior is an executive department of the United States.  The U.S. Department of the Interior is headquartered at 1849 C Street, NW, Washington, DC 20240.

10.     Defendant Deb Haaland is the U.S. Secretary of the Interior and the official charged with approving tribal-state class III gaming compacts under IGRA.  25 U.S.C. § 2710(d)(3)(B), (8)(A)–(D).  Secretary Haaland maintains an office at 1849 C Street, NW, Washington, DC 20240.  Maverick is suing the Secretary in her official capacity.

11.     Defendant Bryan Newland is the U.S. Assistant Secretary – Indian Affairs.  The Assistant Secretary has been delegated the Secretary of the Interior's authority under IGRA to approve tribal-state class III gaming compacts.  Assistant Secretary Newland maintains an office at 1849 C Street, NW, Washington, DC 20240.  Maverick is suing the Assistant Secretary in his official capacity.

12.     For ease of reference, Maverick refers to the Secretary of the Interior and the Assistant Secretary – Indian Affairs collectively as "the Secretary of the Interior" or "the Secretary."

13.     Defendant Jay Inslee is the Governor of Washington.  The Governor is authorized by state statute to review and execute tribal-state class III gaming compacts on behalf of the State once approved by the Washington State Gambling Commission. Wash. Rev. Code § 9.46.360(6).  The Governor of Washington executed each of the tribal-state class III gaming Compacts and

5

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

Compact Amendments at issue in this case. The Governor is also authorized by statute to request that Washington's Attorney General initiate criminal investigations and proceedings. *Id.* § 43.10.090. Governor Inslee maintains an official address at Office of the Governor, P.O. Box 40002, Olympia, WA 98504. Maverick is suing the Governor in his official capacity.

14.   Defendant Robert Ferguson is the Attorney General of Washington. The Attorney General is authorized by state statute to investigate, direct the prosecution of, and prosecute violations of state criminal laws. Wash. Rev. Code § 43.10.090. The Attorney General's office is located in Olympia, Washington. Attorney General Ferguson maintains an official address at 1125 Washington Street, SE, P.O. Box 40100, Olympia, WA 98504. Maverick is suing the Attorney General in his official capacity.

15.   Defendant Alicia Levy is the Chair of the Washington State Gambling Commission (the "Commission"). The Commission is charged by state statute with implementing Washington's gaming policies. Among other things, the Commission: (1) makes licensing decisions under Washington's gaming laws; (2) serves as a law-enforcement agency for the enforcement of Washington's gaming laws; (3) appoints a director charged with negotiating tribal-state gaming compacts and transmitting such compacts to the Commission; (4) reviews tribal-state compacts and votes on whether to return a compact to the director for further negotiation or to forward it to the Governor; and (5) is empowered to enforce the provisions of any tribal-state compact. Wash. Rev. Code §§ 9.46.070, 9.46.075, 9.46.080, 9.46.140, 9.46.210, 9.46.360. The Commission is headquartered in Lacey, Washington. Chair Levy maintains an official address at P.O. Box 42400, Olympia, WA 98504. Maverick is suing Ms. Levy in her official capacity.

6

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

16.     Defendant Julia Patterson is the Vice-Chair of the Washington State Gambling Commission.  Vice-Chair Patterson maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Ms. Patterson in her official capacity.

17.     Defendant Bud Sizemore is a Commissioner of the Washington State Gambling Commission.  Commissioner Sizemore maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Mr. Sizemore in his official capacity.

18.     Defendant Kristine Reeves is a Commissioner of the Washington State Gambling Commission.  Commissioner Reeves maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Ms. Reeves in her official capacity.

19.     Defendant Sarah Lawson is a Commissioner of the Washington State Gambling Commission.  Commissioner Lawson maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Ms. Lawson in her official capacity.

20.     Defendant Steve Conway is an ex officio member of the Washington State Gambling Commission.  The ex officio members of the Commission are "deemed voting members of the gambling commission for the sole purpose of voting on proposed [tribal-state] compacts." Wash. Rev. Code § 9.46.360(4), (6).  Mr. Conway maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Mr. Conway in his official capacity.

21.     Defendant Jeff Holy is an ex officio member of the Washington State Gambling Commission.  Mr. Holy maintains an official address at P.O. Box 42400, Olympia, WA 98504. Maverick is suing Mr. Holy in his official capacity.

22.     Defendant Shelley Kloba is an ex officio member of the Washington State Gambling Commission.  Ms. Kloba maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Ms. Kloba in her official capacity.

7

FIRST AMENDED COMPLAINT
(3:22-ev-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

**ER90**

23.     Defendant Brandon Vick is an ex officio member of the Washington State Gambling Commission.  Mr. Vick maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Mr. Vick in his official capacity.

24.     Defendant Tina Griffin is the Director of the Washington State Gambling Commission.  The Director is appointed by the Commission and is tasked with carrying out the powers and duties of the Commission, issuing rules and regulations adopted by the Commission, supervising Commission employees, negotiating tribal-state gaming compacts, and transmitting proposed compacts to the Commission for a vote.  Wash. Rev. Code §§ 9.46.080, 9.46.360.  Ms. Griffin maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Ms. Griffin in her official capacity.

## JURISDICTION AND VENUE

25.     This action arises under the APA, IGRA, 42 U.S.C. § 1983, the Declaratory Judgment Act, and the U.S. Constitution.  This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question), 5 U.S.C. §§ 701–706 (review of agency action), and 28 U.S.C. § 1346(a)(2) (nominal damages).

26.     Venue is proper in this Court as to the federal Defendants under 28 U.S.C. § 1391(e)(1) because this is an action against officers and agencies of the United States, the state defendants reside in this district, a substantial part of the events giving rise to the claims in this lawsuit occurred in this district, and no real property is involved in the action.

27.     Venue is proper in this Court as to the state Defendants under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims in this lawsuit occurred in this district.

8

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

**FACTUAL ALLEGATIONS**

**I.     The Indian Gaming Regulatory Act**

    **A.     Background**

28.     The Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.*, provides a comprehensive scheme for regulating gaming on Indian lands.

29.     Congress enacted IGRA in 1988 in response to the Supreme Court's decision in *California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987), which held that California could not regulate gaming on Indian lands within the State.

30.     IGRA established, for the first time, a federal framework governing gaming on "Indian lands"—defined principally as land "within the limits of any Indian reservation."  25 U.S.C. § 2703(4)(A).

31.     IGRA divides gaming activities into three classes—class I, class II, and class III—and imposes a different regulatory framework for each.

32.     Class I gaming encompasses low-stakes "social games" and "traditional forms of Indian gaming."  25 U.S.C. § 2703(6).

33.     Class II gaming covers bingo and lotto games, as well as non-banked card games that are either "explicitly authorized" by state law, or "not explicitly prohibited" and legally "played at any location in the State."  25 U.S.C. § 2703(7)(A)(i)–(ii).  Non-banked card games are card games where players play against one another, rather than against the house.  *Id.* § 2703(7)(B).

34.     Class III gaming—the type of gaming at issue here—is the most highly regulated under IGRA.  It encompasses "all forms of gaming that are not class I gaming or class II gaming," including casino games (*e.g.*, craps and roulette), banked card games (*e.g.*, blackjack), pari-mutuel

9

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

wagering (*e.g.*, wagering on horse races), lotteries, and sports betting.   25 U.S.C. § 2703(8); 25 C.F.R. § 502.4.

35.   IGRA allows tribes to conduct a particular class III gaming activity on Indian lands "only if" that activity: (1) is authorized by a federally approved tribal ordinance meeting certain statutory conditions; (2) is "located in a State that permits such gaming for any purpose by any person, organization, or entity"; and (3) is "conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State . . . that is in effect."   25 U.S.C. § 2710(d)(1)(A)–(C).

36.   "Failure to comply with any one of the three conditions" renders class III gaming on Indian lands illegal under IGRA and "subject to applicable criminal statutes," including the Johnson Act, 15 U.S.C. § 1175 (prohibiting gambling devices in Indian country); the Organized Crime Control Act, 18 U.S.C. § 1955 (prohibiting illegal gambling businesses); and IGRA, 18 U.S.C. § 1166 (incorporating state-law gaming prohibitions into federal law and applying them on Indian lands). *See Amador Cnty. v. Salazar*, 640 F.3d 373, 376–77 (D.C. Cir. 2011).

37.   IGRA's second and third requirements—that the class III gaming activity be located in a State that "permits such gaming" and conducted pursuant to a valid tribal-state compact—are central to this case.

**B.     IGRA's State-Permission Requirement**

38.   Congress designed IGRA's second condition of class III gaming—the state-permission requirement—to guarantee parity between tribal and non-tribal gaming, thereby "foster[ing] a consistency and uniformity in the manner in which laws regulating the conduct of gaming activities are applied."   S. Rep. No. 100-446, at 6 (1988).

39.   The state-permission requirement precludes tribal class III gaming monopolies by mandating that each form of class III gaming must remain illegal on Indian lands unless the State

10

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

"permits" the same activity for non-tribal entities. 25 U.S.C. § 2710(d)(1)(B). A State's purported authorization of class III gaming by Indian tribes alone does not suffice because a State cannot unilaterally "permit[]" class III gaming that federal law makes illegal without a valid tribal-state compact. The state-permission requirement thus reflects Congress's express finding that Indian tribes should be able to conduct a "gaming activity" on Indian lands only if the same activity "is conducted within a State." *Id.* § 2701(5).

40.     By the same token, the state-permission requirement prevents States from creating non-tribal class III gaming monopolies: If a State "permits" a form of class III gaming for non-tribal entities, IGRA gives Indian tribes within the State the right to negotiate a tribal-state compact authorizing the same form of class III gaming on Indian lands. 25 U.S.C. § 2710(d)(1)(B). IGRA thus "provides that tribes are entitled to engage in all forms of Class III gaming that a state permits for other citizens." *Keweenaw Bay Indian Cmty. v. United States*, 136 F.3d 469, 473 (6th Cir. 1998).

41.     IGRA's state-permission requirement, and the parity and uniformity principles it embodies, are fundamental features of the statutory scheme.

42.     Class II gaming has a materially identical state-permission requirement: Tribes cannot engage in class II gaming on Indian lands unless "such Indian gaming is located *within a State that permits such gaming*." 25 U.S.C. § 2710(b)(1)(A) (emphasis added).

43.     Class II non-banked card games likewise are prohibited on Indian lands unless the games are expressly authorized elsewhere in the State or are not expressly prohibited and "played at any location in the State." 25 U.S.C. § 2703(7)(A)(ii)(II).

44.     IGRA also waives application of the Johnson Act—a federal criminal statute prohibiting the possession of gambling devices in Indian country, 15 U.S.C. § 1175—only if the

11

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

gambling devices are authorized under a tribal-state compact in "a State *in which gambling devices are legal*." 25 U.S.C. § 2710(d)(6)(A) (emphasis added).

45.   Congress omitted the state-permission requirement only with respect to class I gaming, and only because Congress left such gaming "within the exclusive jurisdiction of the Indian tribes." 25 U.S.C. § 2710(a)(1).

**C.   IGRA's Compacting Process**

46.   IGRA requires as a further condition of class III gaming on Indian lands that the gaming at issue be "conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State . . . that is in effect." 25 U.S.C. § 2710(d)(1)(C).

47.   To initiate the compacting process, IGRA provides that "[a]ny Indian tribe having jurisdiction over the Indian lands upon which a class III gaming activity is being conducted, or is to be conducted, shall request the State in which such lands are located to enter into negotiations for the purpose of entering into a Tribal-State compact governing the conduct of gaming activities." 25 U.S.C. § 2710(d)(3)(A).  "Upon receiving such a request, the State shall negotiate with the Indian tribe in good faith to enter into such a compact." *Id.*

48.   As Congress recognized, conditioning class III gaming on preexisting state-law permission for non-tribal entities to offer the same games allows States and tribes to "make use of existing State regulatory systems" in their "negotiated compacts." S. Rep. No. 100-446, at 13–14 (1988).

49.   A tribal-state class III gaming compact thus may include, among other things, provisions addressing "the application of the criminal and civil laws and regulations of the . . . State that are directly related to, and necessary for, the licensing and regulation of" the class III gaming activity under negotiation. 25 U.S.C. § 2710(d)(3)(C)(i).

12

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

50.    IGRA's compact condition imposes two requirements: (1) the tribe must enter "a compact with the state"; and (2) "[t]he Secretary of the Interior must approve any such compact before it may become effective." *Colo. River Indian Tribes v. Nat'l Indian Gaming Comm'n*, 466 F.3d 134, 136 (D.C. Cir. 2006).

51.    To satisfy the first requirement, the State must have authority to enter into the compact. *See Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1556 (10th Cir. 1997).

52.    To satisfy the second requirement, the Secretary of the Interior must approve the compact and provide "notice of approval" in the Federal Register. 25 U.S.C. § 2710(d)(3)(B).

53.    The Secretary may either approve or disapprove the proposed compact within 45 days of its submission. 25 U.S.C. § 2710(d)(8)(C).

54.    If the Secretary does not approve or disapprove the compact within 45 days, the compact is "considered to have been approved by the Secretary, but only to the extent the compact is consistent with the provisions of this chapter." 25 U.S.C. § 2710(d)(8)(C).

55.    The Secretary must disapprove a compact if it violates: (1) any provision of IGRA, (2) "any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands," or (3) "the trust obligations of the United States to Indians." 25 U.S.C. § 2710(d)(8)(B); *see also Amador Cnty.*, 640 F.3d at 381 ("The Secretary must . . . disapprove a compact if it would violate any of [IGRA's] three limitations . . . .").

## II.    Washington Has Long Authorized Tribal Class III Gaming Monopolies

56.    Since the early 1990s, despite IGRA's prohibition of class III tribal gaming monopolies, Washington has authorized Indian tribes—and only Indian tribes—to engage in most forms of class III gaming, while subjecting non-tribal entities to criminal sanctions for the same activities. Most recently, Washington has expanded that tribal monopoly to include sports betting.

13

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

ER96

**A.    Limited Non-Tribal Gaming In Washington**

57.    It is illegal to offer most forms of gaming in Washington.  Washington makes it a crime to engage in "professional gambling," *see, e.g.*, Wash. Rev. Code § 9.46.222, which Washington defines to include: (1) unless acting as a player or in a manner authorized by law, "engag[ing] in conduct which materially aids any form of gambling activity"; (2) unless acting in a manner authorized by law, "pay[ing] a fee to participate in a card game, contest of chance, lottery, or other gambling activity"; (3) unless acting as a player or in a manner authorized by law, "knowingly accept[ing] or receiv[ing] money or other property pursuant to an agreement or understanding with any other person whereby he or she participates or is to participate in the proceeds of gambling activity"; (4) "engag[ing] in bookmaking"; (5) "conduct[ing] a lottery"; or (6) offering wagering on greyhound races, *id.* § 9.46.0269(1).

58.    Washington defines "gambling" as "staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence, upon an agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome."  Wash. Rev. Code § 9.46.0237.

59.    Washington law specifies three degrees of illegal "professional gambling." Depending on the scale of the gaming operation, a person offering unauthorized gaming may be guilty of a gross misdemeanor, Wash. Rev. Code § 9.46.222(3), a class C felony, *id.* § 9.46.221(3), or a class B felony, *id.* § 9.46.220(3).

60.    Because Washington's definition of "professional gambling" excepts from its definition activities "authorized by this chapter," Wash. Rev. Code § 9.46.0269(1)(a)–(c), a business may offer gaming only if that form of gaming is expressly authorized by Washington law. *See also Illegal Activities*, Wash. State Gambling Comm'n, *available at*

14

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

ER97

https://www.wsgc.wa.gov/regulation-enforcement/illegal-activities ("Gambling in Washington is illegal unless the activity is specifically authorized by state law.").

61.   Washington permits non-tribal entities to offer only limited types of gaming, such as raffles, bingo, card games, amusement games, pull-tabs, punchboards, sports pool boards, and fundraising events.  Wash. Rev. Code §§ 9.46.0305–.0361.

62.   None of these statutory exceptions authorizes non-tribal entities to engage in the full range of casino-style gaming in Washington.

63.   As a result, it is a crime in Washington for non-tribal entities to offer the vast majority of class III games, including roulette, craps, and sports betting.

64.   The Washington State Gambling Commission warns on its website, "Gambling in Washington is illegal unless the activity is specifically authorized by state law. . . .  Conducting illegal gambling activities may result in criminal charges being filed against you, your organization and/or its officers, and forfeiture of all property or money associated with the illegal gambling." *Illegal Activities*, Wash. State Gambling Comm'n, *available at* https://www.wsgc.wa.gov/regulation-enforcement/illegal-activities.

65.   The Washington State Gambling Commission also provides a form for people to "submit a tip regarding illegal [gambling] activities occurring in Washington," and the form includes a field for "[b]usiness [n]ame." *Illegal Activities*, Wash. State Gambling Comm'n, *available at* https://www.wsgc.wa.gov/regulation-enforcement/illegal-activities; *Submit a Tip*, Wash. State Gambling Comm'n, *available at* https://www.wsgc.wa.gov/regulation-enforcement/submit-tip.  The Washington State Gambling Commission routinely prosecutes enforcement actions against unlawful gambling operations. *See Administrative Orders*, Wash.

15

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

State     Gambling     Comm'n,     *available     at*     https://www.wsgc.wa.gov/regulation-enforcement/administrative-orders (collecting administrative orders).

### B.     Washington's Tribal Gaming Monopoly

66.     In contrast to its broad criminal prohibition of class III casino-style gaming among non-tribal entities, since the early 1990s Washington has authorized Indian tribes located within the State to conduct a wide range of class III games.

67.     In 1992 Washington codified its process for negotiating tribal-state class III gaming compacts pursuant to IGRA.  Wash. Rev. Code § 9.46.360.

68.     The director of the Washington State Gambling Commission (or the director's designee) "shall negotiate compacts for class III gaming on behalf of the state with federally recognized Indian tribes in the state of Washington."  Wash. Rev. Code § 9.46.360(2).

69.     On reaching a tentative agreement with an Indian tribe on a proposed compact, "the director shall immediately transmit a copy of the proposed compact to all voting and ex officio members of the gambling commission" and to the two standing committees designated by the Washington House of Representatives and Senate, each of which shall "forward its respective comments to the gambling commission."  Wash. Rev. Code § 9.46.360(3), (5).  The four ex officio members of the gambling commission are voting members of the gambling commission for the sole purpose of voting on proposed tribal-state compacts.  *Id.* § 9.46.360(4).

70.     Within 45 days of receiving a proposed compact from the director, the gambling commission, including the four ex officio members, "shall vote on whether to return the proposed compact to the director with instructions for further negotiation or to forward the proposed compact to the governor for review and final execution."  Wash. Rev. Code § 9.46.360(6).

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

ER99

71.     The gambling commission "is authorized and empowered to enforce the provisions of any compact between a federally recognized Indian tribe and the state of Washington." Wash. Rev. Code § 9.46.360(9).

72.     In its first tribal-state compact (executed with the Tulalip Tribes of Washington on August 2, 1991), Washington authorized the Tulalip Tribes of Washington to conduct a wide range of class III games that are illegal for non-tribal entities to offer, including roulette and craps. *See* Tribal-State Compact for Class III Gaming Between the Tulalip Tribes of Washington and the State of Washington at 4–5 (Aug. 2, 1991) (hereinafter "Tulalip Compact"), *available at* https://www.wsgc.wa.gov/sites/default/files/public/searchable-compacts/tulalip/A-1991%20Compact%20%28s%29.pdf.

73.     Since 1991, Washington has entered into analogous compacts with "[a]ll 29 federally recognized tribes in Washington," giving the Tribes the exclusive right to offer certain class III games such as craps and roulette. Gaming Compacts, Washington State Gambling Comm'n, *available at* https://www.wsgc.wa.gov/tribal-gaming/gaming-compacts (last visited July 1, 2022).

74.     On March 25, 2020, Washington passed a new law, S.H.B. No. 2638, giving Indian tribes in the state a monopoly over sports betting. *See* 2020 Wash. Legis. Serv. ch. 127. It remains a crime for non-tribal entities to offer sports betting. *See* Wash. Rev. Code §§ 9.46.220–.222.

75.     The law states:

> It has long been the policy of this state to prohibit all forms and means of gambling except where carefully and specifically authorized and regulated. The legislature intends to further this policy by authorizing sports wagering on a very limited basis by restricting it to tribal casinos in the state of Washington.

2020 Wash. Legis. Serv. ch. 127, § 1.

17

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

76.     The new act states that "[u]pon the request of a federally recognized Indian tribe or tribes in the state of Washington, the tribe's class III gaming compact may be amended . . . to authorize the tribe to conduct and operate sports wagering on its Indian lands . . . .  Sports wagering conducted pursuant to the gaming compact is a gambling activity authorized by this chapter." Wash. Rev. Code § 9.46.0364(1).  The statute makes clear that "[s]ports wagering conducted pursuant to the provisions of a class III gaming compact entered into by a tribe and the state pursuant to [Wash. Rev. Code § 9.46.360] is authorized bookmaking and is not subject to civil or criminal penalties pursuant to [Wash. Rev. Code § 9.46.225]." *Id.* § 9.46.0364(2).

77.     On July 6, 2021, Governor Jay Inslee and 15 of the 29 federally recognized Indian tribes in Washington executed Compact Amendments to each of the Tribes' respective compacts to permit the Tribes to offer sports betting at their gaming facilities. *See, e.g.*, Third Amendment to the Tribal State Compact for Class III Gaming Between Confederated Tribes of the Colville Reservation and the State of Washington (July 6, 2021), *available at* https://www.wsgc.wa.gov/sites/default/files/public/tribal/Compacts/Colville%28D%29/2021-0706%20Colville_Amendment_3_%26_Appendix_S%28s%29.pdf.

78.     These Tribes are: the Confederated Tribes of the Colville Reservation; the Cowlitz Indian Tribe; the Jamestown S'Klallam Tribe; the Kalispel Tribe; the Lummi Nation; the Muckleshoot Indian Tribe; the Puyallup Tribe of Indians; the Shoalwater Bay Indian Tribe; the Snoqualmie Indian Tribe; the Spokane Tribe; the Squaxin Island Tribe; the Stillaguamish Tribe of Indians; the Suquamish Tribe; the Swinomish Indian Tribal Community; and the Tulalip Tribes of Washington.

79.     On September 1, 2021, the Secretary approved the compact amendments for the Spokane Tribe, the Cowlitz Indian Tribe, the Suquamish Tribe, the Snoqualmie Indian Tribe, the

18

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

Stillaguamish Tribe of Indians, the Squaxin Island Tribe, the Lummi Nation, the Puyallup Tribe of Indians, and the Tulalip Tribes of Washington.  *See* 86 Fed. Reg. 49,046, 49,046–47, 49,049–54 (Sept. 1, 2021).  On September 15, 2021, the Secretary approved the compact amendments for the Muckleshoot Indian Tribe, the Confederated Tribes of the Colville Reservation, the Shoalwater Bay Indian Tribe, and the Kalispel Tribe.  *See* 86 Fed. Reg. 51,370, 51,370, 51,373–74 (Sept. 15, 2021).  On October 22, 2021, the Secretary approved the compact amendment for the Swinomish Indian Tribal Community.  *See* 86 Fed. Reg. 58,685 (Oct. 22, 2021).  On December 28, 2021, the Secretary approved the compact amendment for the Jamestown S'Klallam Tribe.  *See* 86 Fed. Reg. 73,800 (Dec. 28, 2021).

80.    On September 19, 2021, a sixteenth tribe, the Port Gamble S'Klallam Tribe, amended its compact to permit it to offer sports betting.  Memorandum of Incorporation of Most Favored Nation Amendments to the Tribal/State Compact Between the Port Gamble S'Klallam Tribe and the State of Washington (Sept. 19, 2021), *available at* https://www.wsgc.wa.gov/sites/default/files/public/tribal/Compacts/Port_Gamble%28X%29/Port_Gamble_Sports_Wagering_MOI_FINAL%28signed%29.pdf.    Because Washington had amended compacts with other tribes to permit sports betting, the Port Gamble S'Klallam Tribe exercised its right under its compact's most-favored nation section to unilaterally amend its compact to permit sports betting as well. *Id.* at 1.  On December 28, 2021, the Secretary approved the Port Gamble S'Klallam Tribe's Memorandum of Incorporation.  *See* 86 Fed. Reg. 73,800 (Dec. 28, 2021).

81.    On February 28, 2022, Washington executed a sports-betting compact amendment with a seventeenth tribe, the Sauk-Suiattle Indian Tribe, which the Secretary approved on June 14, 2022.  *See* 87 Fed. Reg. 35,992, 35,992 (June 14, 2022).

19

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

82.   The sports-betting amendments have therefore been approved by the Secretary pursuant to IGRA, and that approval purports to authorize Washington's tribal sports-betting monopoly.  *See* 25 U.S.C. § 2710(d)(3)(B), (8)(A).

83.   On May 18, 2022, Washington executed a sports-betting compact with an eighteenth tribe, the Nisqually Indian Tribe, which the Secretary has not yet acted on.

84.   Because the terms of each sports-betting amendment are materially identical, the compact amendment between Washington and the Confederated Tribes of the Colville Reservation is used for reference throughout this complaint.  *See* Third Amendment to the Tribal-State Compact for Class III Gaming Between Confederated Tribes of the Colville Reservation and the State of Washington (July 6, 2021) (hereinafter "Colville Compact Amendment"), *available at* https://www.wsgc.wa.gov/sites/default/files/public/tribal/Compacts/Colville%28D%29/2021-0706%20Colville_Amendment_3_%26_Appendix_S%28s%29.pdf.

85.   The Compact Amendments add "Sports Wagering" to the list of class III gaming activities that the Tribes are permitted to offer, subject to a new Appendix S prescribing certain conditions.  Colville Compact Amendment at 2.

86.   The Compact Amendments require each of the Tribes to contribute their share of a "Start-Up Costs fee," which "includes the actual costs incurred by the State Gaming Agency for negotiations, rule development, regulatory program development, training, and similar activities necessary to implement Sports Wagering."  Colville Compact Amendment at 3.

87.   The Compact Amendments also provide that the Tribes' sports-betting net win will be included in the Tribes' total net gaming revenues, of which the Tribes are required to pay 0.13% to Washington for "problem gambling education, awareness, and treatment in the State of Washington."  Colville Compact Amendment, Appendix S, § 8.1; First Amendment to the

20

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

**ER103**

1  Tribal/State Compact for Class III Gaming Between the Confederated Tribes of the Colville

2  Reservation and the State of Washington, Appendix X2, §§ 14.4, 14.6 (Mar. 30, 2007), *available*

3  *at*  https://www.wsgc.wa.gov/sites/default/files/public/searchable-compacts/colville/D-

4  2007%20Amendment%201%20%28App%20X2%29%20%28s%29.pdf.

5      **C.    The Tribes' Class III Gaming Operations**

6      88.    The Tribes currently operate 29 casinos on Indian lands in Washington.  *See* Casino

7  Locations, Washington State Gambling Comm'n, *available at* https://www.wsgc.wa.gov/tribal-

8  gaming/casino-locations.  Of these 29 casinos, 23 are governed by compacts that Washington and

9  the Tribes have amended to permit sports betting.  *Id.*; Gaming Compacts, Washington State

10 Gambling Comm'n, *available at* https://www.wsgc.wa.gov/tribal-gaming/gaming-compacts.

11     89.    These casinos offer a range of class III games that are illegal for non-tribal entities

12 to offer in Washington, including roulette, craps, and sports betting (among other games).

13     90.    In 2019, the Tribes' net receipts from class III gaming were approximately $2.93

14 billion.  Tribal Community Contributions at 11–12, Washington State Gambling Commission

15 (May                12,                2022),                *available                at*

16 https://wsgc.wa.gov/sites/default/files/public/05_2022_Tribal_Contributions.pdf?_ga=2.6962690

17 3.68622135.1656545003-700351475.1656545003.  The Tribes' net receipts were approximately

18 $2.75 billion in 2018 and approximately $2.56 billion in 2017.  *See id.*

19     91.    There are no non-tribal casinos in Washington that offer the full range of class III

20 games that Washington permits tribal casinos to offer.

21     92.    No non-tribal casinos in Washington offer roulette, craps, or sports betting.

22

23

24

25

26

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

**III.    Washington's Tribal Gaming Monopoly Violates Federal Law**

    **A.    The Federal Defendants' Approval Of Washington's Sports-Wagering Compact Amendments Violated Federal Law**

93.    The Secretary of the Interior's decision to approve the Compact Amendments was not in accordance with IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, or the equal-protection component of the Fifth Amendment's Due Process Clause, U.S. Const. amend. V, or the Tenth Amendment, *id.* amend. X.

94.    IGRA requires the Secretary of the Interior to disapprove any tribal-state class III gaming compact that violates: (1) any provision of IGRA, (2) "any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands," or (3) "the trust obligations of the United States to Indians." 25 U.S.C. § 2710(d)(8)(B); *see also Amador Cnty.*, 640 F.3d at 383.

95.    The Secretary of the Interior was obligated to disapprove the Compact Amendments for three independent reasons.

96.    *First*, the Secretary of the Interior was obligated to disapprove the Compact Amendments because they purport to authorize tribal class III gaming that violates IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166.

97.    IGRA provides that class III gaming on Indian lands is lawful "only if," among other things, the class III gaming activity is "located in a State that permits such gaming for any purpose by any person, organization, or entity" and is conducted in conformance with a tribal-state compact "that is in effect." 25 U.S.C. § 2710(d)(1)(B)–(C).

98.    Failure to comply with either condition renders class III gaming on Indian lands illegal under IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166. *See Pueblo of Santa Ana*, 104 F.3d at 1552.

22

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA 98020
(425) 967-3550

99.     IGRA's state-permission requirement prohibits tribal class III gaming monopolies by ensuring that each class III gaming activity remains illegal on Indian lands unless a State "permits" the same class III gaming activity by non-tribal entities.

100.     IGRA's state-permission requirement has not been satisfied in Washington for sports betting because the State criminally prohibits such gaming by any non-tribal entities. *Compare* Wash. Rev. Code § 9.46.0364, *with id.* §§ 9.46.220–.222.

101.     Washington's grant of a right to only "a federally recognized Indian tribe or tribes in the state of Washington" to "operate sports wagering on its Indian lands," Wash. Rev. Code § 9.46.0364, violates IGRA's state-permission requirement because Washington prohibits any non-tribal entities from offering sports betting, and thereby does not "permit[] such gaming for any purpose by any person, organization, or entity" as IGRA requires, 25 U.S.C. § 2710(d)(1)(B).

102.     Neither the Compact Amendments nor any other state law can unilaterally "permit"—that is, authorize or legalize—sports betting solely on Indian lands because IGRA makes clear that such authorization can occur only through IGRA's statutory compacting process.

103.     Because Washington has not "permit[ted]" sports betting within the meaning of IGRA, 25 U.S.C. § 2710(d)(1)(B), sports betting remains illegal on Indian lands in Washington under IGRA and applicable federal criminal statutes.  *See* 25 U.S.C. § 2710(d)(1); 15 U.S.C. § 1175; 18 U.S.C. § 1955; 18 U.S.C. § 1166.

104.     Because the Compact Amendments purport to authorize the Tribes to offer class III gaming in Washington that federal law prohibits, the Compact Amendments violate federal law and are void.

23

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

105.   Because the Compact Amendments violate federal law, the Governor of Washington had no authority to "enter[] into" them within the meaning of IGRA.  25 U.S.C. § 2710(d)(1)(C).

106.   Because the Compact Amendments violate federal law and were not validly entered into, the Secretary was obligated to disapprove the Compact Amendments.  25 U.S.C. § 2710(d)(8)(B)(i).

107.   By instead approving the Compact Amendments and purporting to authorize illegal tribal class III gaming, the Secretary violated IGRA.  *See* 15 U.S.C. § 1175; 18 U.S.C. § 1955; 18 U.S.C. § 1166.

108.   *Second*, the Secretary also was required to disapprove the Compact Amendments under IGRA because they violate the Constitution's guarantee of equal protection.

109.   The Constitution's guarantee of equal protection mandates the equal treatment of people of all races and ancestries without discrimination or preference.  *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989).

110.   The Compact Amendments discriminate on the basis of race and ancestry, in violation of equal-protection principles, by granting monopolies to Washington Indian tribes over sports betting.

111.   By executing the Compact Amendments, Washington has purported to grant the Tribes a right to offer sports betting, an activity that Washington permits only tribal entities to offer.  *See* Wash. Rev. Code § 9.46.0364.

112.   At the same time, Washington criminally prohibits any entities other than those affiliated with Washington Indian tribes from offering sports betting in Washington.  Wash. Rev. Code §§ 9.46.220–.222.

24

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

113.    The Compact Amendments' grant of sports-betting monopolies to Washington Indian tribes is a racial and ancestral classification, as membership in a Washington Indian tribe depends on lineal descent from historical tribal rolls and often also a minimum blood quantum.

114.    The Compact Amendments' race-based preference for Indian tribal sports betting is subject to strict scrutiny.  *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995).

115.    The Compact Amendments' race-based preference does not fall within the narrow exception outlined in *Morton v. Mancari*, 417 U.S. 535 (1974), because Congress has not authorized and could not authorize a State to grant Indian tribes a monopoly over a commercial activity that is unrelated to uniquely Indian interests, *see Williams v. Babbitt*, 115 F.3d 657, 665 (9th Cir. 1997).

116.    The Compact Amendments' race-based preference for Indian tribal sports betting cannot survive strict scrutiny or even rational-basis review because it is unrelated to the furtherance of Congress's trust obligation to Indian tribes.

117.    Thus, the Compact Amendments' race-based preference for Indian tribal sports betting violates the Constitution's guarantee of equal protection.

118.    Because the Compact Amendments violate equal protection, the Governor of Washington lacked authority to "enter[] into" them within the meaning of IGRA.  25 U.S.C. § 2710(d)(1)(C).

119.    Because the Compact Amendments violate equal protection and were not validly entered into, the Secretary was required to disapprove the Compact Amendments.  25 U.S.C. § 2710(d)(8)(B)(ii).

120.    By instead approving the Compact Amendments and purporting to authorize a violation of equal protection, the Secretary violated IGRA.

25

FIRST AMENDED COMPLAINT
(3:22-ev-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

121.     In addition to violating IGRA, the Secretary's approval independently violated the equal-protection component of the Fifth Amendment's Due Process Clause because it blessed and facilitated Washington's unconstitutional race-based preference for Indian tribal sports betting.

122.     *Third*, the Secretary also was required to disapprove the Compact Amendments because the process by which they were executed violated the Tenth Amendment.

123.     "The legislative powers granted to Congress are sizable, but they are not unlimited." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1476 (2018). "[C]onspicuously absent from the list of powers given to Congress is the power to issue direct orders to the governments of the States." *Id.*

124.     IGRA's state-negotiation mandate issues a "direct order" to the States: IGRA directs that upon receiving a request from an Indian tribe to negotiate a class III gaming compact, "the State *shall* negotiate with the Indian tribe in good faith to enter into such a compact." 25 U.S.C. § 2710(d)(3)(A) (emphasis added).  That sort of "direct order" violates the Constitution's anti-commandeering principle, and renders the process for entering into the Compact Amendments unlawful. *See Murphy*, 138 S. Ct. at 1476.

125.     This state-negotiation mandate is not severable from the remainder of the Act.  An unconstitutional provision is not severable when "the statute created in its absence is legislation that Congress would not have enacted." *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987). The compacting process is IGRA's centerpiece, and the state-negotiation mandate is what ensures that process takes place.  Congress would not have enacted IGRA without this central requirement.

126.     Because the Compact Amendments violated the Tenth Amendment and were not validly entered into, the Secretary was required to disapprove the Compact Amendments.  25 U.S.C. § 2710(d)(8)(B)(ii).

26

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

127.   By instead approving the Compact Amendments and purporting to authorize a violation of the Tenth Amendment, the Secretary violated IGRA.

128.   In addition, because the state-negotiation mandate is not severable from the remainder of the Act, none of IGRA's provisions can stand, and the Secretary lacked any authority to approve the Compact Amendments.

**B.   The State Defendants' Execution And Administration Of Washington's Tribal-State Class III Gaming Compacts Violates Federal Law**

129.   The Compact Amendments giving the Tribes a monopoly over sports betting violate IGRA, federal criminal gaming statutes, the Constitution's guarantee of equal protection, and the Tenth Amendment.

130.   All of Washington's tribal-state Compacts—not just the recent Compact Amendments concerning sports betting—violate the Constitution's guarantee of equal protection because they give the Tribes a monopoly over many class III games, such as (but not limited to) roulette and craps, that non-tribal entities are criminally prohibited from offering. *See, e.g.*, Tulalip Compact at 4–5.

131.   All of the tribal-state Compacts also violate the Tenth Amendment because the process for entering into them was undertaken in violation of the Constitution's anti-commandeering principle.

132.   The Governor of Washington executed the Compacts and Compact Amendments, rendering them approved as a matter of state law.

133.   The members of the Washington State Gambling Commission continue to administer the Compacts and Compact Amendments.

134.   The Defendants' actions executing and administering the unlawful Compacts and Compact Amendments violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166,

27

FIRST AMENDED COMPLAINT
(3:22-ev-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

and aid and abet violations of the same, 18 U.S.C. § 2, by purporting to authorize and by facilitating tribal class III gaming that these federal statutes prohibit.

135.    The Defendants' actions executing and administering the unlawful Compacts and Compact Amendments violate the Constitution's guarantee of equal protection by purporting to authorize and by facilitating Washington's race-based preference for tribal gaming.

136.    The Defendants' actions executing and administering the unlawful Compacts and Compact Amendments violate the Tenth Amendment by continuing to administer agreements that were not lawfully entered into.

**C.    Washington's Criminal Prohibition Of Types Of Class III Gaming That It Permits Only Indian Tribes To Offer Violates Federal Law**

137.    Washington criminally prohibits most forms of class III gaming, including (but not limited to) roulette, craps, and sports betting.  *See* Wash. Rev. Code §§ 9.46.220–.222; *id.* §§ 9.46.0305–.0361.

138.    In the Compacts and Compact Amendments, however, Washington has purported to exempt the Tribes from the application of its criminal prohibitions on these forms of class III gaming.  *See* Wash. Rev. Code §§ 9.46.360, 9.46.225; *see also id.* § 9.46.0364(2).

139.    Because the application of Washington's criminal class III gaming prohibitions turns on the race and ancestry of the offender, Washington's continued enforcement of its class III gaming prohibitions against non-tribal entities violates the Constitution's guarantee of equal protection.

140.    The Attorney General of Washington is authorized by state statute to investigate, direct the prosecution of, and prosecute violations of state criminal laws.  Wash. Rev. Code § 43.10.090.  The Governor of Washington is authorized to request that the Attorney General initiate criminal investigations and proceedings.  *Id.*  The members of the Washington State

28

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

Gambling Commission are charged with investigating and enforcing Washington's criminal gaming laws.  Wash. Rev. Code §§ 9.46.140, 9.46.210(3).

**IV.    Maverick's Injuries Caused By Washington's Tribal Gaming Monopoly**

141.    Maverick currently owns and operates 18 cardrooms in Washington.  Maverick also owns casinos in Nevada and Colorado, which offer a range of class III gaming, including roulette, craps, sports betting, and dealer-assisted electronic table games.

142.    Sports betting in the United States has seen extraordinary growth over the past several years.[1]  The American Gaming Association reported that sports betting generated more than $1.5 billion in revenue in 2020, which represented a nearly 69% year-over-year growth rate.[2]  Revenue from sports betting will continue to rise as consumer demand grows around the country.[3]

143.    With sports betting becoming increasingly popular, Maverick would like to offer that form of gaming to the patrons of its Washington cardrooms.  Maverick would also like to offer in Washington the kinds of class III games that its Nevada and Colorado casinos offer, including, but not limited to, roulette, craps, and dealer-assisted electronic table games.[4]  It would be

---

[1] *See, e.g.*, David Purdum, *Sports Betting's Growth in U.S. 'Extraordinary'*, ESPN (May 14, 2020), https://www.espn.com/chalk/story/_/id/29174799/sports-betting-growth-us-extraordinary ("More than $20 billion has been bet with U.S. sportsbooks since the Supreme Court struck down the Professional and Amateur Sports Protection Act of 1992 on May 14, 2018.").

[2] *See Commercial Gaming Revenue Tracker: 2020 Fourth Quarter*, Am. Gaming Ass'n, https://www.americangaming.org/wp-content/uploads/2021/02/Q4-Email-PDF.pdf (last visited July 1, 2022).

[3] *See id.*

[4] This Complaint often lists roulette, craps, and sports betting as examples of the types of class III games that Maverick wants to offer in Washington.  In doing so, Maverick does not provide an exhaustive list of the class III games it wishes to offer but rather a few illustrative examples.  In

29

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

**ER112**

economically viable and profitable for Maverick to offer games like roulette, craps, sports betting, and dealer-assisted electronic table games in Washington and Maverick seeks to do so, but Maverick is unable to proceed because of Washington's criminal prohibition of most forms of class III gaming unless conducted at an authorized tribal gaming facility.  *See* Wash. Rev. Code §§ 9.46.0364, 9.46.0368, 9.46.220–.222.

144.    Because the Tribes can offer these games (including roulette, craps, sports betting, and dealer-assisted electronic table games), but Maverick cannot, Maverick suffers competitive injury with tribal casinos.  That injury includes increased advertising expenses, increased promotional expenses, and increased entertainment expenses that Maverick must undertake in order to compete with tribal casinos.  It also includes lost revenue from customers who would frequent Maverick's cardrooms if they offered the class III games that they are currently prohibited from offering, but who instead frequent tribal casinos.  Maverick also suffers a loss of goodwill by failing to offer the same set of products as its tribal competitors.

145.    The Supreme Court "routinely recognizes probable economic injury resulting from [governmental actions] that alter competitive conditions as sufficient to satisfy the [Article III 'injury-in-fact' requirement] . . . .  It follows logically that any . . . petitioner who is likely to suffer economic injury as a result of [governmental action] that changes market conditions satisfies this part of the standing test."  *Clinton v. City of N.Y.*, 524 U.S. 417, 432–33 (1998) (alterations in original) (quoting 3 K. Davis & R. Pierce, Administrative Law Treatise 13–14 (3d ed. 1994)).

146.    Maverick competes with other casinos, including tribal casinos, to offer the best and most attractive selection of games allowed by law.

---

this action, Maverick seeks to vindicate its right to offer the full suite of class III games that Washington currently permits only Indian tribes to offer.

30

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

147.   But for Washington's tribal gaming monopoly, Maverick is able, ready, and prepared to expand its gaming offerings in Washington to include a wide variety of class III games, including (but not limited to) roulette, craps, sports betting, and dealer-assisted electronic table games.

148.   Maverick has access to the capital needed to offer a wide variety of class III games in Washington, including roulette, craps, and sports betting, and to finance any additional facilities or purchase any necessary equipment.

149.   As a company that predominantly operates in Washington, Maverick is familiar with the requirements of Washington's gaming laws and regulations.

150.   Maverick would earn significant additional revenue if it could offer games such as craps, roulette, and sports betting, and it would also earn additional revenue if tribal casinos could *not* offer such games exclusively.

151.   Maverick's successful class III gaming operations in Colorado and Nevada demonstrate that it has the necessary background and experience to offer additional class III games like roulette, craps, and sports betting in Washington.

152.   Maverick is unable to take advantage of the commercial opportunities it has identified because Washington criminally prohibits most class III games if offered by non-tribal entities.

153.   Due to the threat of enforcement of Washington's criminal laws, which prohibit most forms of class III gaming, Maverick is unable to offer the same forms of class III gaming as the Tribes.  As a result, Maverick cannot establish or acquire gaming operations in Washington that can effectively compete with the Tribes' operations.

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

154.    The Defendants' unlawful execution, approval, and administration of the Compacts and Compact Amendments also alters competitive conditions in a way that is unfavorable to Maverick.

155.    The Secretary's unlawful approval of the Compacts and the Compact Amendments has facilitated and continues to facilitate the Tribes' unlawful class III gaming activities.  Those activities harm Maverick by making it more difficult for Maverick to grow its successful gaming offerings in Washington because Maverick cannot compete on an equal footing with the Tribes' much broader gaming offerings.

156.    The Secretary's unlawful approval of the Compacts and the Compact Amendments has resulted in the deprivation of Maverick's substantive rights under constitutional equal-protection principles and IGRA to compete on equal terms with the Tribes to offer class III gaming in Washington free from discrimination on the basis of race and ancestry.

157.    If Washington did not limit most forms of class III gaming to tribal casinos, Maverick would offer a wide range of class III games (including roulette, craps, and sports betting) at its Washington cardrooms and increase its commercial casino revenue, and it would no longer suffer the violation of its equal-protection rights.

158.    If Washington applied its prohibition of most forms of class III gaming to the Tribes and non-tribal entities alike, many patrons of Washington's tribal casinos would instead frequent Maverick's Washington cardrooms, increasing Maverick's commercial casino revenue.

159.    This discrimination, on its own, is a cognizable injury in fact.  As the Supreme Court has explained, discrimination that results in an "inability to compete on an equal footing" itself is an injury in fact. *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993).

32

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

160.    Enjoining Washington from enforcing its tribal class III gaming monopoly would either permit Maverick to expand its operations in Washington or would increase the number of patrons at Maverick's existing Washington cardrooms.

161.    Washington's tribal class III gaming monopoly exists only because the Secretary unlawfully approved the Compacts and Compact Amendments.

162.    If the Secretary had disapproved the Compacts and Compact Amendments, Washington would not be able to enforce its tribal class III gaming monopoly.

163.    Vacating the Secretary's approval would make Washington's tribal class III gaming monopoly unlawful, allowing Maverick to increase its commercial casino revenue either by expanding its gaming offerings in Washington or by benefitting from increased patronage at its Washington cardrooms due to the elimination of the Tribes' competitive advantage.

## COUNT ONE:

### The Administrative Procedure Act
### (Not in Accordance with Law – IGRA, Equal Protection, and the Tenth Amendment)

164.    Maverick incorporates all preceding paragraphs by reference.

165.    The Department of the Interior and the Secretary of the Interior are "agencies" under the APA.  5 U.S.C. § 551(1).

166.    The APA prohibits agency actions that are "not in accordance with law."  5 U.S.C. § 706(2)(A).

167.    Federal law obligated the Secretary of the Interior to disapprove Washington's sports-betting Compact Amendments.

168.    *First*, the Secretary of the Interior was obligated to disapprove the Compact Amendments because they purport to authorize tribal class III gaming that violates IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166.

33

FIRST AMENDED COMPLAINT
(3:22-ev-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

169.     *Second*, the Secretary also was required to disapprove the Compact Amendments under IGRA and the equal-protection component of the Fifth Amendment's Due Process Clause because they violate the Constitution's guarantee of equal protection.

170.     *Third*, the Secretary also was required to disapprove the Compact Amendments because the process by which they were executed violated the Tenth Amendment.

171.     The Secretary's approval of the Compact Amendments constitutes "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

172.     Maverick has suffered a legal wrong or has been adversely affected or aggrieved by the Secretary's approval of the Compact Amendments. 5 U.S.C. § 702.

173.     The Secretary's approval of the Compact Amendments has resulted in the deprivation of Maverick's substantive rights under equal-protection principles and IGRA to compete on equal terms with the Tribes to offer sports betting in Washington free from discrimination on the basis of race or ancestry.

174.     It would be economically viable for Maverick to offer sports betting in Washington and Maverick seeks to do so, but Maverick cannot offer sports betting because of Washington's tribal sports-betting monopoly.

175.     The Secretary's approval of the Compact Amendments also has facilitated and continues to facilitate the Tribes' unlawful sports-betting offerings. Those activities harm Maverick by making it more difficult for Maverick to effectively compete with the Tribes' much broader gaming offerings.

176.     Maverick therefore is entitled to an order: (1) declaring that the Compact Amendments violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, the

34

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

Constitution's guarantee of equal protection, and the Tenth Amendment, and therefore were not validly entered into and are not in effect; (2) declaring that the Secretary's approval of the Compact Amendments violated IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, the Constitution's guarantee of equal protection, and the Tenth Amendment; (3) setting aside and vacating the Secretary's approval of the Compact Amendments; (4) declaring that the Tribes' sports-betting activities violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166; and (5) awarding nominal damages, reasonable costs (including attorneys' fees), and any other relief this Court deems just and proper.

## COUNT TWO:

### 42 U.S.C. § 1983, Equity, Declaratory Judgment Act
### (Violation of IGRA, Equal Protection, and the Tenth Amendment)

177.    Maverick incorporates all preceding paragraphs by reference.

178.    42 U.S.C. § 1983 provides private parties a cause of action for declaratory and injunctive relief against any person who, under color of state law, deprives them of rights guaranteed by the U.S. Constitution or a federal statute.

179.    Courts of equity likewise provide private parties a cause of action to seek declaratory and injunctive relief against state officials that violate federal law. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015); *Ex parte Young*, 209 U.S. 123, 127 (1908).

180.    The Declaratory Judgment Act provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

181.    The Defendants' actions executing and administering the unlawful Compacts and Compact Amendments violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166,

35

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

**ER118**

and aid and abet violations of the same, 18 U.S.C. § 2, by purporting to authorize and by facilitating tribal class III gaming that these federal statutes prohibit.

182.   The Defendants' actions executing and administering the unlawful Compacts and Compact Amendments violate the Constitution's guarantee of equal protection by purporting to authorize and by facilitating Washington's race-based preference for tribal gaming.

183.   The Defendants' actions executing and administering the unlawful Compacts and Compact Amendments violate the Tenth Amendment by continuing to administer agreements that were not lawfully entered into.

184.   The Defendants' unlawful actions executing and administering the Compacts and Compact Amendments have directly, personally, and substantially injured Maverick.

185.   The Defendants' actions have deprived and continue to deprive Maverick of its substantive rights under the Constitution's guarantee of equal protection and IGRA to compete on equal terms with the Tribes to offer class III gaming in Washington free from discrimination on the basis of race or ancestry.

186.   As detailed above, but for Washington's tribal monopoly, Maverick is able, ready, and prepared to expand its class III gaming offerings in Washington to include games such as roulette, craps, and sports betting.

187.   The Defendants' actions also have facilitated and continue to facilitate the Tribes' unlawful class III gaming activities.  Those activities harm Maverick by making it more difficult for Maverick to compete with the Tribes' much broader gaming offerings in Washington. Declaring that the Compacts and Compact Amendments are illegal and void and enjoining Defendants from enforcing them would eliminate the Tribes' class III gaming monopoly, prohibit the Tribes from offering class III gaming that Washington does not permit non-tribal entities to

36

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

offer, and redress Maverick's injuries by ensuring that it can compete with the Tribes on equal footing.

188.    These injuries give rise to a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

189.    Maverick therefore seeks a declaration: (1) that the Compacts and Compact Amendments violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, the Constitution's guarantee of equal protection, and the Tenth Amendment, and therefore were not validly entered into and are not in effect; (2) that the Governor's execution of the Compacts and Compact Amendments violated IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, the Constitution's guarantee of equal protection, and the Tenth Amendment, and the Compacts and Compact Amendments are therefore void; (3) that the continued administration of the Compacts and Compact Amendments by the members of the Washington State Gambling Commission violates IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, the Constitution's guarantee of equal protection, and the Tenth Amendment; and (4) that the Tribes' class III gaming activities violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166.

190.    Maverick also seeks an injunction: (1) prohibiting the members of the Washington State Gambling Commission from continuing to administer the Compacts and Compact Amendments; and (2) prohibiting the Governor from entering into any new class III gaming compacts with the Tribes granting them exclusive rights to engage in any form of class III gaming.

191.    Maverick also seeks an award of nominal damages, reasonable costs (including attorneys' fees), and any other relief this Court deems just and proper.

37

FIRST AMENDED COMPLAINT
(3:22-ev-05325 DGE)

**COUNT THREE:**

**42 U.S.C. § 1983, Equity, Declaratory Judgment Act
(Violation of Equal Protection)**

192.    Maverick incorporates all preceding paragraphs by reference.

193.    42 U.S.C. § 1983 provides private parties a cause of action for declaratory and injunctive relief against any person who, under color of state law, deprives them of rights guaranteed by the U.S. Constitution or a federal statute.

194.    Courts of equity likewise provide private parties a cause of action to seek declaratory and injunctive relief against state officials that violate federal law. *See Armstrong*, 575 U.S. at 326; *Ex parte Young*, 209 U.S. at 127.

195.    The Declaratory Judgment Act provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

196.    The Constitution's guarantee of equal protection mandates the equal treatment of people of all races and ancestries without discrimination or preference.

197.    Washington criminally prohibits most forms of class III gaming, including roulette, craps, and sports betting. *See* Wash. Rev. Code §§ 9.46.220–.222; *id.* §§ 9.46.0305–.0361.

198.    In the Compacts and Compact Amendments, however, Washington has purported to exempt the Tribes from the application of its criminal prohibitions on these forms of class III gaming. *See* Wash. Rev. Code §§ 9.46.360, 9.46.225; *see also id.* § 9.46.0364(2).

199.    Because the application of Washington's criminal class III gaming prohibitions turns on the race and ancestry of the offender, Washington's continued enforcement of its class III

38

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

gaming prohibitions against non-tribal entities violates the Constitution's guarantee of equal protection.

200.   The Defendants' potential enforcement of Washington's racially discriminatory criminal gaming laws has directly, personally, and substantially injured Maverick.

201.   The Defendants' discriminatory application and enforcement of Washington's criminal laws prohibiting these forms of class III gaming deprives Maverick of its right under the Constitution's guarantee of equal protection to compete on equal terms with the Tribes to offer class III gaming in Washington free from discrimination on the basis of race or ancestry.

202.   As detailed above, but for Washington's tribal monopoly, Maverick is able, ready, and prepared to expand its gaming offerings in Washington to include games such as roulette, craps, and sports betting.

203.   Due to the threat of enforcement of Washington's criminal laws, which prohibit most forms of class III gaming, Maverick is unable to offer the same forms of class III gaming as the Tribes.  As a result, Maverick cannot establish or acquire gaming operations in Washington that can effectively compete with the Tribes' operations.

204.   These injuries give rise to a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

205.   Maverick therefore seeks a declaration that the Defendants' continued enforcement of Washington's criminal laws prohibiting class III gaming—including roulette, craps, and sports betting—violates the Constitution's guarantee of equal protection, and an injunction prohibiting the Defendants from enforcing those laws against Maverick.

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

206.    Maverick also seeks an award of nominal damages, reasonable costs (including attorneys' fees), and any other relief this Court deems just and proper.

### PRAYER FOR RELIEF

207.    Maverick demands a judgment against the Defendants as follows:

1.    Declaring that the Compacts and Compact Amendments violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, the Constitution's guarantee of equal protection, and the Tenth Amendment, and therefore are void, were not validly entered into, and are not in effect;

2.    Declaring that the Secretary of the Interior's approval of the Compacts and Compact Amendments; the Governor's execution of the Compacts and Compact Amendments; and the continued administration of the Compacts and Compact Amendments by the members of the Washington State Gambling Commission violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, the Constitution's guarantee of equal protection, and the Tenth Amendment;

3.    Declaring that the continued enforcement of Washington's criminal laws prohibiting class III gaming against Maverick violates the Constitution's guarantee of equal protection;

4.    Declaring that the Tribes' class III gaming activities violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166;

5.    Vacating and setting aside the Secretary of the Interior's approval of the Compacts and Compact Amendments;

6.    Enjoining the continued administration of the Compacts and Compact Amendments by the members of the Washington State Gambling Commission;

40

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

7.      Enjoining the Governor, the Attorney General, and the members of the Washington State Gambling Commission from enforcing against Maverick Washington's criminal laws prohibiting class III gaming;

8.      Issuing all process necessary and appropriate to postpone further administration of the Compacts and Compact Amendments and prevent enforcement against Maverick of Washington's criminal laws prohibiting class III gaming pending the conclusion of this case;

9.      Awarding Maverick its reasonable costs, including attorneys' fees, incurred in bringing this action;

10.     Awarding Maverick nominal damages; and

11.     Granting such other and further relief as this Court deems just and proper.

41

FIRST AMENDED COMPLAINT
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

1    DATED July 5, 2022.

2

3                                    **BRENNAN LEGAL, PLLC**

4                                    By: *s/ Thomas M. Brennan*
                                     Thomas M. Brennan, WSBA No. 30662
5                                    P.O. Box 1384
                                     144 Railroad Ave. S., Suite 308
6                                    Edmonds, WA  98020
                                     Phone: (425) 967-3550
7                                    Email: tom@brennanlegalpllc.com

8                                    **GIBSON, DUNN & CRUTCHER LLP**

9                                    By: *s/ Theodore B. Olson*
                                     By: *s/ Matthew D. McGill*
10                                   By: *s/ Lochlan F. Shelfer*
                                     Theodore B. Olson, D.C. Bar No. 367456
11                                   Matthew D. McGill, D.C. Bar No. 481430
                                     Lochlan F. Shelfer, D.C. Bar No. 1029799
12                                   1050 Connecticut Avenue, N.W., Suite 900
                                     Washington, D.C.  20036-5303
13                                   Phone: (202) 955-8668
                                     Email: tolson@gibsondunn.com
14                                   Email: mmcgill@gibsondunn.com
                                     Email: lshelfer@gibsondunn.com
15

16                                   *Attorneys for Plaintiff Maverick Gaming LLC*

17

18

19

20

21

22

23

24

25

26

                                     42

FIRST AMENDED COMPLAINT                              Brennan Legal, PLLC
(3:22-cv-05325 DGE)                                        P.O. Box 1384
                                                     144 Railroad Ave. S., Ste. 308
                                                        Edmonds, WA  98020
                                                           (425) 967-3550

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on this date I caused the foregoing document to be electronically filed

3

with the Clerk of the Court using the CM/ECF system which sends notification of the filing to all

4

counsel of record.

5

DATED July 5, 2022.

6

7

*/s/ Thomas M. Brennan*
Thomas M. Brennan

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

43

FIRST AMENDED COMPLAINT
(3:22-ev-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

**ER126**

THE HONORABLE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MAVERICK GAMING LLC, | No. 22-cv-05325 DGE |
| Plaintiff, | **STIPULATED MOTION AND PROPOSED ORDER FOR RELIEF FROM DEADLINES AND FOR BRIEFING SCHEDULE ON DISPOSITIVE CROSS-MOTIONS** |
| v. | |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | NOTE ON MOTION CALENDAR:  June 21, 2022 |

Pursuant to LCR 7(d)(1), LCR 7(k), and LCR 10(g), the parties submit this stipulated motion and proposed order for a briefing schedule on dispositive cross-motions and for relief from discovery-related deadlines.

On May 16, 2022, this Court entered an Order Regarding Initial Disclosures, Joint Status Report, Discovery, Depositions, and Early Settlement.  *See* Dkt. # 57.  That order requires the parties both to conduct a Fed. R. Civ. P. 26 conference by August 1, 2022 and to submit a joint status report by August 15, 2022.  It also requires the parties to exchange Fed. R. Civ. P. 26 initial disclosures by August 8, 2022.

The parties in this case jointly request relief from the aforementioned deadlines and request that the Court enter a briefing schedule related to dispositive motions that might expedite consideration of this case.

1

Plaintiff Maverick Gaming LLC (Maverick) represents that it has brought this action challenging the legality of (1) the federal defendants' approval of recent sports-wagering amendments to the State of Washington's class III gaming compacts with federally recognized Indian tribes; (2) the state defendants' execution and administration of Washington's class III state-tribal gaming compacts; and (3) the state defendants' enforcement of Washington's criminal class III gaming prohibitions.  *See* Dkt. # 1.  Defendants have not yet answered or responded to Maverick's operative complaint and reserve all rights to respond and assert affirmative defenses.

The parties have conferred and have agreed that Plaintiff's complaint (Dkt. # 1) presents questions of law that appear to be resolvable through dispositive motions (e.g., motions to dismiss or for summary judgment) without the need for factual discovery.  The parties do not expect that discovery or an evidentiary hearing will be necessary.  Accordingly, in the interest of efficiency, uniform deadlines, and conserving the time and resources of counsel and the Court, the parties respectfully request that the Court enter the following schedule:

1. Plaintiff shall have up to and including July 1, 2022 to file any First Amended Complaint.

2. Defendants shall be relieved of any obligation to serve and file any answers to Plaintiff's operative complaint, unless there are claims that remain pending after the Court has ruled on all dispositive motions, in which case Defendants shall have 20 days after the Court has resolved all dispositive motions to answer Plaintiff's operative complaint.

3. The Federal Defendants shall have up to and including July 15, 2022 to file the administrative record.

4. Plaintiff shall have up to and including August 12, 2022 to file any dispositive motion that shall not exceed 30 pages.

5. Defendants shall have up to and including September 12, 2022 to file any dispositive motions and to file any responses to Plaintiff's dispositive motion.  The Federal

2

STIPULATED MOTION AND PROPOSED ORDER FOR RELIEF FROM
DEADLINES AND FOR BRIEFING SCHEDULE ON DISPOSITIVE CROSS-
MOTIONS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

Defendants[1] and the State Defendants[2] shall be permitted to file one combined brief each, not to exceed 30 pages, in support of their dispositive motions and responding to Plaintiff's dispositive motion.

6.  Plaintiff shall have up to and including October 12, 2022 to file any response to Defendants' dispositive motions and to file any reply in support of its dispositive motion.  Plaintiff shall be permitted to file one combined brief, not to exceed 40 pages, replying to Defendants' responses to its dispositive motion and responding to Defendants' dispositive motions.

7.  Defendants shall have up to and including November 2, 2022 to file any replies in support of their dispositive motions.  The Federal Defendants and the State Defendants shall be permitted to file one brief each, not to exceed 15 pages, replying to Plaintiff's responses to their dispositive motions.

8.  The parties are relieved of any obligation to meet and confer under Fed. R. Civ. P. 26(f), to file initial disclosures under Fed. R. Civ. P. 26(a)(1), and to file a combined joint status report and discovery plan under Fed. R. Civ. P. 26(f), unless otherwise ordered by the Court.

The parties recognize that the page limits indicated above exceed the default length for briefs specified in LCR 7(e)(3). However, as contemplated by LCR 7(k), the parties submit that the proposed enlarged page limits are consistent with the goal of promoting efficiency, because

---

[1] The Federal Defendants are the United States of America, United States Department of the Interior, Deb Haaland in her official capacity as Secretary of the Interior, and Bryan Newland in his official capacity as Assistant Secretary – Indian Affairs.

[2] The State Defendants are Jay Inslee in his official capacity as the Governor of Washington, Robert Ferguson in his official capacity as the Attorney General of Washington, Bud Sizemore in his official capacity as Chair of the Washington State Gambling Commission, Julia Patterson in her official capacity as Vice-Chair of the Washington State Gambling Commission, Alicia Levy in her official capacity as Commissioner of the Washington State Gambling Commission, Kristine Reeves in her official capacity as Commissioner of the Washington State Gambling Commission, Sarah Lawson in her official capacity as Commissioner of the Washington State Gambling Commission, Steve Conway in his official capacity as ex officio member of the Washington State Gambling Commission, Jeff Holy in his official capacity as ex officio member of the Washington State Gambling Commission, Shelley Kloba in her official capacity as ex officio member of the Washington State Gambling Commission, Brandon Vick in his official capacity as ex officio member of the Washington State Gambling Commission, and Tina Griffin in her official capacity as Interim Director of the Washington State Gambling Commission.

3

STIPULATED MOTION AND PROPOSED ORDER FOR RELIEF FROM DEADLINES AND FOR BRIEFING SCHEDULE ON DISPOSITIVE CROSS-MOTIONS
(3:22-cv-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

the parties will be filing combined motions/responses/replies on a four-brief schedule instead of separate briefs on a six-brief schedule, and also because Plaintiff will be responding and replying to two briefs instead of one.  The parties also request oral argument on the dispositive motions.  The parties preserve all arguments and defenses; no party waives any argument or defense by entering into and filing this joint motion, except as expressly stated above.

A proposed order is appended to this stipulated motion pursuant to LCR 10(g).


DATED June 21, 2022.

Presented by:


**BRENNAN LEGAL, PLLC**


By: *s/ Thomas M. Brennan*

Thomas M. Brennan, WSBA No. 30662
P.O. Box 1384
144 Railroad Ave. S., Suite 308
Edmonds, WA  98020
Phone: (425) 967-3550
Email: tom@brennanlegalpllc.com


**GIBSON, DUNN & CRUTCHER LLP**


By: *s/ Theodore B. Olson*
By: *s/ Matthew D. McGill*
By: *s/ Lochlan F. Shelfer*

Theodore B. Olson, D.C. Bar No. 367456
Matthew D. McGill, D.C. Bar No. 481430
Lochlan F. Shelfer, D.C. Bar No. 1029799
1050 Connecticut Avenue, N.W., Suite 900
Washington, D.C.  20036-5303
Phone: (202) 955-8668
Email: tolson@gibsondunn.com
Email: mmcgill@gibsondunn.com
Email: lshelfer@gibsondunn.com

*Attorneys for Plaintiff Maverick Gaming LLC*

STIPULATED MOTION AND PROPOSED ORDER FOR RELIEF FROM
DEADLINES AND FOR BRIEFING SCHEDULE ON DISPOSITIVE CROSS-
MOTIONS
(3:22-cv-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

1    ROBERT W. FERGUSON
     Attorney General of Washington
2

3    *s/ Kristin Beneski*
     KRISTIN BENESKI, WSBA No. 45478
4    First Assistant Attorney General
     BRIAN H. ROWE, WSBA No. 56817
5    WILLIAM MCGINTY, WSBA No. 41868
     Assistant Attorneys General
6    800 Fifth Avenue, Suite 2000
     Seattle, WA 98104-3188
7    (206) 464-7744
8    kristin.beneski@atg.wa.gov
     brian.rowe@atg.wa.gov
9    william.mcginty@atg.wa.gov

10   TERA HEINTZ, WSBA No. 54921
11   Deputy Solicitor General
     1125 Washington Street SE
12   Olympia, WA 98504-0100
     (360) 753-6200
13   tera.heintz@atg.wa.gov

14   *Attorneys for State Defendants*
15

16   TODD KIM
     Assistant Attorney General
17   Environment and Natural Resources Division

18   *s/ Hillary K. Hoffman*
19   HILLARY K. HOFFMAN, MN # 0402027
     Trial Attorney
20   REBECCA M. ROSS, AZ # 028041
     Trial Attorney
21   Indian Resources Section
22   Environment and Natural Resources Division
     United States Department of Justice
23   P.O. Box 7611, Washington, D.C. 20044
     (202)-598-3147
24   hillary.hoffman@usdoj.gov
     rebecca.ross@usdoj.gov
25

26   *Attorneys for Federal Defendants*

5
STIPULATED MOTION AND PROPOSED ORDER FOR RELIEF FROM
DEADLINES AND FOR BRIEFING SCHEDULE ON DISPOSITIVE CROSS-
MOTIONS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

1

## <u>ORDER</u>

2

It is so ordered.

3

Dated this 28th day of June 2022.

4

5

6

7

David G. Estudillo
United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STIPULATED MOTION AND PROPOSED ORDER FOR RELIEF FROM
DEADLINES AND FOR BRIEFING SCHEDULE ON DISPOSITIVE CROSS-
MOTIONS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on this date I caused the foregoing document to be electronically filed

3

with the Clerk of the Court using the CM/ECF system which sends notification of the filing to all

4

counsel of record.

5

6

DATED June 21, 2022.

7

*/s/ Thomas M. Brennan*
Thomas M. Brennan

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

7

STIPULATED MOTION AND PROPOSED ORDER FOR RELIEF FROM
DEADLINES AND FOR BRIEFING SCHEDULE ON DISPOSITIVE CROSS-
MOTIONS
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

**ER133**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MAVERICK GAMING LLC,

2926 Montessouri Street,
Las Vegas, NV 89117,

                Plaintiff,

    v.

THE UNITED STATES OF AMERICA,

555 4th Street, NW, Washington, DC 20001,

UNITED STATES DEPARTMENT OF THE
INTERIOR,

1849 C Street, NW, Washington, DC 20240,

DEB HAALAND, in her official capacity as
Secretary of the Interior,

1849 C Street, NW, Washington, DC 20240,

BRYAN NEWLAND, in his official capacity
as Assistant Secretary – Indian Affairs,

1849 C Street, NW, Washington, DC 20240,

JAY INSLEE, in his official capacity as the
Governor of Washington,

Office of the Governor, P.O. Box 40002,
Olympia, WA 98504,

ROBERT FERGUSON, in his official capacity
as the Attorney General of Washington,

1125 Washington Street, SE, P.O. Box 40100,
Olympia, WA 98504,

BUD SIZEMORE, in his official capacity as
Chair of the Washington State Gambling
Commission,

P.O. Box 42400, Olympia, WA 98504,

Civil Action No. 1:22-cv-00068

ER134

JULIA PATTERSON, in her official capacity as Vice-Chair of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

ALICIA LEVY, in her official capacity as Commissioner of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

KRISTINE REEVES, in her official capacity as Commissioner of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

SARAH LAWSON, in her official capacity as Commissioner of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

STEVE CONWAY, in his official capacity as ex officio member of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

JEFF HOLY, in his official capacity as ex officio member of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

SHELLEY KLOBA, in her official capacity as ex officio member of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

BRANDON VICK, in his official capacity as ex officio member of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

ER135

TINA GRIFFIN, in her official capacity as
Interim Director of the Washington State
Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

                    Defendants.

# **COMPLAINT**

Plaintiff Maverick Gaming LLC, alleges as follows:

## **PRELIMINARY STATEMENT**

1.      Maverick Gaming LLC ("Maverick") owns and operates 19 cardrooms in the State

of Washington.  Maverick also owns casinos in Colorado and Nevada, which offer a wide variety

of games, including roulette, craps, sports betting, and dealer-assisted electronic table games.

Maverick seeks to expand its gaming offerings in Washington to include additional games such as

roulette, craps, sports betting, and dealer-assisted electronic table games, but it is unable to do so

because Washington allows only Indian tribes to offer these forms of gaming within the State.

2.      Purporting to act pursuant to the Indian Gaming Regulatory Act ("IGRA" or "the

Act")—a federal statute regulating gaming on Indian lands—Washington entered into compacts

(the "Compacts") with 29 Indian tribes (the "Tribes").  The Compacts grant the Tribes the

exclusive right to offer most forms of casino-style gaming (known as "class III" gaming under

IGRA).  In 2020, Washington passed a new law giving federally recognized Indian tribes the

exclusive right to offer sports betting, which had previously been omitted from the list of class III

games that Indian tribes could offer.  In 2021, Washington amended its compacts with 16 Indian

tribes (the "Compact Amendments") to permit them to offer sports betting at tribal casinos.

3.      At the same time, Washington's criminal laws prohibit any non-tribal entities, such

as Maverick, from offering most forms of class III gaming in Washington, including roulette,

3

craps, and sports betting.  The U.S. Secretary of the Interior approved this discriminatory tribal gaming monopoly by allowing the Compacts and recent Compact Amendments to go into effect.

4.      With a monopoly over most forms of casino-style gaming, the Tribes have established expansive casino operations in Washington.  This class III gaming monopoly has been extremely profitable for the Tribes.  In 2017, even before they were permitted to offer sports betting, the Tribes' net receipts from class III gaming totaled approximately $2.56 billion.  But the monopoly prevents non-tribal entities from competing on an equal footing with the Tribes.

5.      Washington's tribal monopoly is inconsistent with IGRA and federal criminal statutes, which prohibit class III gaming activity by tribal casinos on Indian lands unless a State permits the same activity by non-tribal entities.  The tribal monopoly also violates the Constitution's guarantee of equal protection of the laws by irrationally and impermissibly discriminating on the basis of race and ancestry.  Neither a State nor the federal government may give Indian tribes the exclusive right to engage in commercial activities that have no relation to uniquely tribal interests.  And IGRA itself violates the Tenth Amendment by mandating that States enter into negotiations with Indian tribes over class III gaming compacts.

6.      Maverick brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–706; IGRA; 42 U.S.C. § 1983; the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; and the United States Constitution to challenge the validity of Washington's tribal gaming monopoly and the Compacts and Compact Amendments that purport to authorize it.  For the reasons stated herein, and as set forth in greater detail below, Maverick prays that this Court: (1) declare that the Compacts and Compact Amendments violate federal law, and are therefore void; (2) vacate and set aside the Secretary of the Interior's approvals of the Compacts and Compact Amendments; (3) enjoin the state Defendants from continuing to administer the

Compacts and Compact Amendments; (4) declare that the enforcement of Washington's criminal gaming laws against Maverick violates the Constitution's guarantee of equal protection, and enjoin the same; (5) enjoin the execution of new compacts granting tribal class III gaming monopolies; and (6) award nominal damages.

## PARTIES

7.     Plaintiff Maverick Gaming LLC, is a Nevada limited liability company with a residence at 2926 Montessouri Street, Las Vegas, NV 89117.  Maverick Gaming owns and operates 19 cardrooms in Washington and owns several hotel/casinos in Nevada and Colorado. Maverick's casinos in Nevada and Colorado offer a variety of games, including roulette, craps, sports betting, and dealer-assisted electronic table games.  Maverick seeks to expand its gaming offerings in Washington to include the same forms of gaming that its casinos have successfully provided in Nevada and Colorado, but it is unable to proceed because of Washington's criminal prohibitions of most forms of class III gaming.

8.     Defendant the United States of America is sued as a party to a claim seeking declaratory and injunctive decrees against federal officers.  *See* 5 U.S.C. § 702.  The U.S. Attorney's Office for the District of Columbia is located at 555 4th Street, NW, Washington, DC 20001.

9.     Defendant the U.S. Department of the Interior is an executive department of the United States.  The U.S. Department of the Interior is headquartered at 1849 C Street, NW, Washington, DC 20240.

10.     Defendant Deb Haaland is the U.S. Secretary of the Interior and the official charged with approving tribal-state class III gaming compacts under IGRA.  25 U.S.C. § 2710(d)(3)(B),

(8)(A)–(D).  Secretary Haaland maintains an office at 1849 C Street, NW, Washington, DC 20240.

Maverick is suing the Secretary in her official capacity.

11.     Defendant Bryan Newland is the U.S. Assistant Secretary – Indian Affairs.  The

Assistant Secretary has been delegated the Secretary of the Interior's authority under IGRA to

approve tribal-state class III gaming compacts.  Assistant Secretary Newland maintains an office

at 1849 C Street, NW, Washington, DC 20240.  Maverick is suing the Assistant Secretary in his

official capacity.

12.     For ease of reference, Maverick refers to the Secretary of the Interior and the

Assistant Secretary – Indian Affairs collectively as "the Secretary of the Interior" or "the

Secretary."

13.     Defendant Jay Inslee is the Governor of Washington.  The Governor is authorized

by state statute to review and execute tribal-state class III gaming compacts on behalf of the State

once approved by the Washington State Gambling Commission.  Wash. Rev. Code § 9.46.360(6).

The Governor of Washington executed each of the tribal-state class III gaming Compacts and

Compact Amendments at issue in this case.  The Governor is also authorized by statute to request

that Washington's Attorney General initiate criminal investigations and proceedings.  *Id.*

§ 43.10.090.  Governor Inslee maintains an official address at Office of the Governor, P.O. Box

40002, Olympia, WA 98504.  Maverick is suing the Governor in his official capacity.

14.     Defendant Robert Ferguson is the Attorney General of Washington.  The Attorney

General is authorized by state statute to investigate, direct the prosecution of, and prosecute

violations of state criminal laws.  Wash. Rev. Code § 43.10.090.  The Attorney General's office is

located in Olympia, Washington.  Attorney General Ferguson maintains an official address at 1125

Washington Street, SE, P.O. Box 40100, Olympia, WA 98504.  Maverick is suing the Attorney General in his official capacity.

15.     Defendant Bud Sizemore is the Chair of the Washington State Gambling Commission (the "Commission").  The Commission is charged by state statute with implementing Washington's gaming policies.   Among other things, the Commission: (1) makes licensing decisions under Washington's gaming laws; (2) serves as a law-enforcement agency for the enforcement of Washington's gaming laws; (3) appoints a director charged with negotiating tribal-state gaming compacts and transmitting such compacts to the Commission; (4) reviews tribal-state compacts and votes on whether to return a compact to the director for further negotiation or to forward it to the Governor; and (5) is empowered to enforce the provisions of any tribal-state compact.  Wash. Rev. Code §§ 9.46.070, 9.46.075, 9.46.080, 9.46.140, 9.46.210, 9.46.360.  The Commission is headquartered in Lacey, Washington.  Chair Sizemore maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Mr. Sizemore in his official capacity.

16.     Defendant Julia Patterson is the Vice-Chair of the Washington State Gambling Commission.  Vice-Chair Patterson maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Ms. Patterson in her official capacity.

17.     Defendant Alicia Levy is a Commissioner of the Washington State Gambling Commission.  Commissioner Levy maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Ms. Levy in her official capacity.

18.     Defendant Kristine Reeves is a Commissioner of the Washington State Gambling Commission.  Commissioner Reeves maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Ms. Reeves in her official capacity.

ER140

19.     Defendant Sarah Lawson is a Commissioner of the Washington State Gambling Commission.  Commissioner Lawson maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Ms. Lawson in her official capacity.

20.     Defendant Steve Conway is an ex officio member of the Washington State Gambling Commission.  The ex officio members of the Commission are "deemed voting members of the gambling commission for the sole purpose of voting on proposed [tribal-state] compacts." Wash. Rev. Code § 9.46.360(4), (6).  Mr. Conway maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Mr. Conway in his official capacity.

21.     Defendant Jeff Holy is an ex officio member of the Washington State Gambling Commission.  Mr. Holy maintains an official address at P.O. Box 42400, Olympia, WA 98504. Maverick is suing Mr. Holy in his official capacity.

22.     Defendant Shelley Kloba is an ex officio member of the Washington State Gambling Commission.  Ms. Kloba maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Ms. Kloba in her official capacity.

23.     Defendant Brandon Vick is an ex officio member of the Washington State Gambling Commission.  Mr. Vick maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Mr. Vick in his official capacity.

24.     Defendant Tina Griffin is the Interim Director of the Washington State Gambling Commission.  The Director is appointed by the Commission and is tasked with carrying out the powers and duties of the Commission, issuing rules and regulations adopted by the Commission, supervising Commission employees, negotiating tribal-state gaming compacts, and transmitting proposed compacts to the Commission for a vote.  Wash. Rev. Code §§ 9.46.080, 9.46.360.  Ms.

ER141

Griffin maintains an official address at P.O. Box 42400, Olympia, WA 98504.  Maverick is suing Ms. Griffin in her official capacity.

## JURISDICTION AND VENUE

25.     This action arises under the APA, IGRA, 42 U.S.C. § 1983, the Declaratory Judgment Act, and the U.S. Constitution.  This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question), 5 U.S.C. §§ 701–706 (review of agency action), and 28 U.S.C. § 1346(a)(2) (nominal damages).

26.     Venue is proper in this Court as to the federal Defendants under 28 U.S.C. § 1391(e)(1) because this is an action against officers and agencies of the United States, a substantial part of the events giving rise to the claims in this lawsuit occurred in this district, and no real property is involved in the action.  Venue is also proper under Section 1391(e)(1) because the federal Defendants perform their official duties in this district and therefore reside in this district.  *See Reuben H. Donnelley Corp. v. FTC*, 580 F.2d 264, 266 n.3 (7th Cir. 1978).

27.     Venue is proper in this Court as to the state Defendants under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims in this lawsuit occurred in this district.

## FACTUAL ALLEGATIONS

### I.     The Indian Gaming Regulatory Act

#### A.     Background

28.     The Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.*, provides a comprehensive scheme for regulating gaming on Indian lands.

ER142

29.     Congress enacted IGRA in 1988 in response to the Supreme Court's decision in *California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987), which held that California could not regulate gaming on Indian lands within the State.

30.     IGRA established, for the first time, a federal framework governing gaming on "Indian lands"—defined principally as land "within the limits of any Indian reservation."  25 U.S.C. § 2703(4)(A).

31.     IGRA divides gaming activities into three classes—class I, class II, and class III—and imposes a different regulatory framework for each.

32.     Class I gaming encompasses low-stakes "social games" and "traditional forms of Indian gaming."  25 U.S.C. § 2703(6).

33.     Class II gaming covers bingo and lotto games, as well as non-banked card games that are either "explicitly authorized" by state law, or "not explicitly prohibited" and legally "played at any location in the State."  25 U.S.C. § 2703(7)(A)(i)–(ii).  Non-banked card games are card games where players play against one another, rather than against the house. *Id.* § 2703(7)(B).

34.     Class III gaming—the type of gaming at issue here—is the most highly regulated under IGRA.  It encompasses "all forms of gaming that are not class I gaming or class II gaming," including casino games (*e.g.*, craps and roulette), banked card games (*e.g.*, blackjack), pari-mutuel wagering (*e.g.*, wagering on horse races), lotteries, and sports betting.  25 U.S.C. § 2703(8); 25 C.F.R. § 502.4.

35.     IGRA allows tribes to conduct a particular class III gaming activity on Indian lands "only if" that activity: (1) is authorized by a federally approved tribal ordinance meeting certain statutory conditions; (2) is "located in a State that permits such gaming for any purpose by any

person, organization, or entity"; and (3) is "conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State . . . that is in effect."  25 U.S.C. § 2710(d)(1)(A)–(C).

36.     "Failure to comply with any one of the three conditions" renders class III gaming on Indian lands illegal under IGRA and "subject to applicable criminal statutes," including the Johnson Act, 15 U.S.C. § 1175 (prohibiting gambling devices in Indian country); the Organized Crime Control Act, 18 U.S.C. § 1955 (prohibiting illegal gambling businesses); and IGRA, 18 U.S.C. § 1166 (incorporating state-law gaming prohibitions into federal law and applying them on Indian lands).  *See Amador Cnty. v. Salazar*, 640 F.3d 373, 376–77 (D.C. Cir. 2011).

37.     IGRA's second and third requirements—that the class III gaming activity be located in a State that "permits such gaming" and conducted pursuant to a valid tribal-state compact—are central to this case.

**B.     IGRA's State-Permission Requirement**

38.     Congress designed IGRA's second condition of class III gaming—the state-permission requirement—to guarantee parity between tribal and non-tribal gaming, thereby "foster[ing] a consistency and uniformity in the manner in which laws regulating the conduct of gaming activities are applied."  S. Rep. No. 100-446, at 6 (1988).

39.     The state-permission requirement precludes tribal class III gaming monopolies by mandating that each form of class III gaming must remain illegal on Indian lands unless the State "permits" the same activity for non-tribal entities.  25 U.S.C. § 2710(d)(1)(B).  A State's purported authorization of class III gaming by Indian tribes alone does not suffice because a State cannot unilaterally "permit[]" class III gaming that federal law makes illegal without a valid tribal-state compact.  The state-permission requirement thus reflects Congress's express finding that Indian

11

**ER144**

tribes should be able to conduct a "gaming activity" on Indian lands only if the same activity "is conducted within a State." *Id.* § 2701(5).

40.     By the same token, the state-permission requirement prevents States from creating non-tribal class III gaming monopolies: If a State "permits" a form of class III gaming for non-tribal entities, IGRA gives Indian tribes within the State the right to negotiate a tribal-state compact authorizing the same form of class III gaming on Indian lands.  25 U.S.C. § 2710(d)(1)(B).  IGRA thus "provides that tribes are entitled to engage in all forms of Class III gaming that a state permits for other citizens." *Keweenaw Bay Indian Cmty. v. United States*, 136 F.3d 469, 473 (6th Cir. 1998).

41.     IGRA's state-permission requirement, and the parity and uniformity principles it embodies, are fundamental features of the statutory scheme.

42.     Class II gaming has a materially identical state-permission requirement:  Tribes cannot engage in class II gaming on Indian lands unless "such Indian gaming is located *within a State that permits such gaming*."  25 U.S.C. § 2710(b)(1)(A) (emphasis added).

43.     Class II non-banked card games likewise are prohibited on Indian lands unless the games are expressly authorized elsewhere in the State or are not expressly prohibited and "played at any location in the State."  25 U.S.C. § 2703(7)(A)(ii)(II).

44.     IGRA also waives application of the Johnson Act—a federal criminal statute prohibiting the possession of gambling devices in Indian country, 15 U.S.C. § 1175—only if the gambling devices are authorized under a tribal-state compact in "a State *in which gambling devices are legal*."  25 U.S.C. § 2710(d)(6)(A) (emphasis added).

ER145

45.     Congress omitted the state-permission requirement only with respect to class I gaming, and only because Congress left such gaming "within the exclusive jurisdiction of the Indian tribes." 25 U.S.C. § 2710(a)(1).

## C.     IGRA's Compacting Process

46.     IGRA requires as a further condition of class III gaming on Indian lands that the gaming at issue be "conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State . . . that is in effect." 25 U.S.C. § 2710(d)(1)(C).

47.     To initiate the compacting process, IGRA provides that "[a]ny Indian tribe having jurisdiction over the Indian lands upon which a class III gaming activity is being conducted, or is to be conducted, shall request the State in which such lands are located to enter into negotiations for the purpose of entering into a Tribal-State compact governing the conduct of gaming activities." 25 U.S.C. § 2710(d)(3)(A).  "Upon receiving such a request, the State shall negotiate with the Indian tribe in good faith to enter into such a compact." *Id.*

48.     As Congress recognized, conditioning class III gaming on preexisting state-law permission for non-tribal entities to offer the same games allows States and tribes to "make use of existing State regulatory systems" in their "negotiated compacts." S. Rep. No. 100-446, at 13–14 (1988).

49.     A tribal-state class III gaming compact thus may include, among other things, provisions addressing "the application of the criminal and civil laws and regulations of the . . . State that are directly related to, and necessary for, the licensing and regulation of" the class III gaming activity under negotiation.  25 U.S.C. § 2710(d)(3)(C)(i).

50.     IGRA's compact condition imposes two requirements: (1) the tribe must enter "a compact with the state"; and (2) "[t]he Secretary of the Interior must approve any such compact

ER146

before it may become effective." *Colo. River Indian Tribes v. Nat'l Indian Gaming Comm'n*, 466 F.3d 134, 136 (D.C. Cir. 2006).

51.     To satisfy the first requirement, the State must have authority to enter into the compact. *See Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1556 (10th Cir. 1997).

52.     To satisfy the second requirement, the Secretary of the Interior must approve the compact and provide "notice of approval" in the Federal Register.  25 U.S.C. § 2710(d)(3)(B).

53.     The Secretary may either approve or disapprove the proposed compact within 45 days of its submission.  25 U.S.C. § 2710(d)(8)(C).

54.     If the Secretary does not approve or disapprove the compact within 45 days, the compact is "considered to have been approved by the Secretary, but only to the extent the compact is consistent with the provisions of this chapter."  25 U.S.C. § 2710(d)(8)(C).

55.     The Secretary must disapprove a compact if it violates: (1) any provision of IGRA, (2) "any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands," or (3) "the trust obligations of the United States to Indians."  25 U.S.C. § 2710(d)(8)(B); *see also Amador Cnty.*, 640 F.3d at 381 ("The Secretary must . . . disapprove a compact if it would violate any of [IGRA's] three limitations . . . .").

## II.     Washington Has Long Authorized Tribal Class III Gaming Monopolies

56.     Since the early 1990s, despite IGRA's prohibition of class III tribal gaming monopolies, Washington has authorized Indian tribes—and only Indian tribes—to engage in most forms of class III gaming, while subjecting non-tribal entities to criminal sanctions for the same activities.  Most recently, Washington has expanded that tribal monopoly to include sports betting.

A.      **Limited Non-Tribal Gaming In Washington**

57.      It is illegal to offer most forms of gaming in Washington.  Washington makes it a crime to engage in "professional gambling," *see, e.g.*, Wash. Rev. Code § 9.46.222, which Washington defines to include: (1) unless acting as a player or in a manner authorized by law, "engag[ing] in conduct which materially aids any form of gambling activity"; (2) unless acting in a manner authorized by law, "pay[ing] a fee to participate in a card game, contest of chance, lottery, or other gambling activity"; (3) unless acting as a player or in a manner authorized by law, "knowingly accept[ing] or receiv[ing] money or other property pursuant to an agreement or understanding with any other person whereby he or she participates or is to participate in the proceeds of gambling activity"; (4) "engag[ing] in bookmaking"; (5) "conduct[ing] a lottery"; or (6) offering wagering on greyhound races, *id.* § 9.46.0269(1).

58.      Washington defines "gambling" as "staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence, upon an agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome."  Wash. Rev. Code § 9.46.0237.

59.      Washington law specifies three degrees of illegal "professional gambling." Depending on the scale of the gaming operation, a person offering unauthorized gaming may be guilty of a gross misdemeanor, Wash. Rev. Code § 9.46.222(3), a class C felony, *id.* § 9.46.221(3), or a class B felony, *id.* § 9.46.220(3).

60.      Because Washington's definition of "professional gambling" excepts from its definition activities "authorized by this chapter," Wash. Rev. Code § 9.46.0269(1)(a)–(c), a business may offer gaming only if that form of gaming is expressly authorized by Washington law. *See also Illegal Activities*, Wash. State Gambling Comm'n, *available at*

**ER148**

https://www.wsgc.wa.gov/regulation-enforcement/illegal-activities ("Gambling in Washington is illegal unless the activity is specifically authorized by state law.").

61.     Washington permits non-tribal entities to offer only limited types of gaming, such as raffles, bingo, card games, amusement games, pull-tabs, punchboards, sports pool boards, and fundraising events.  Wash. Rev. Code §§ 9.46.0305–.0361.

62.     None of these statutory exceptions authorizes non-tribal entities to engage in the full range of casino-style gaming in Washington.

63.     As a result, it is a crime in Washington for non-tribal entities to offer the vast majority of class III games, including roulette, craps, and sports betting.

64.     The Washington State Gambling Commission warns on its website, "Gambling in Washington is illegal unless the activity is specifically authorized by state law. . . .  Conducting illegal gambling activities may result in criminal charges being filed against you, your organization and/or its officers, and forfeiture of all property or money associated with the illegal gambling." *Illegal Activities*, Wash. State Gambling Comm'n, *available at* https://www.wsgc.wa.gov/regulation-enforcement/illegal-activities.

65.     The Washington State Gambling Commission also provides a form for people to "submit a tip regarding illegal [gambling] activities occurring in Washington," and the form includes a field for "[b]usiness [n]ame." *Illegal Activities*, Wash. State Gambling Comm'n, *available at* https://www.wsgc.wa.gov/regulation-enforcement/illegal-activities; *Submit a Tip*, Wash. State Gambling Comm'n, *available at* https://www.wsgc.wa.gov/regulation-enforcement/submit-tip.  The Washington State Gambling Commission routinely prosecutes enforcement actions against unlawful gambling operations.  *See Administrative Orders*, Wash.

State Gambling Comm'n, *available at* https://www.wsgc.wa.gov/regulation-enforcement/administrative-orders (collecting administrative orders).

## B. Washington's Tribal Gaming Monopoly

66. In contrast to its broad criminal prohibition of class III casino-style gaming among non-tribal entities, since the early 1990s Washington has authorized Indian tribes located within the State to conduct a wide range of class III games.

67. In 1992 Washington codified its process for negotiating tribal-state class III gaming compacts pursuant to IGRA. Wash. Rev. Code § 9.46.360.

68. The director of the Washington State Gambling Commission (or the director's designee) "shall negotiate compacts for class III gaming on behalf of the state with federally recognized Indian tribes in the state of Washington." Wash. Rev. Code § 9.46.360(2).

69. On reaching a tentative agreement with an Indian tribe on a proposed compact, "the director shall immediately transmit a copy of the proposed compact to all voting and ex officio members of the gambling commission" and to the two standing committees designated by the Washington House of Representatives and Senate, each of which shall "forward its respective comments to the gambling commission." Wash. Rev. Code § 9.46.360(3), (5). The four ex officio members of the gambling commission are voting members of the gambling commission for the sole purpose of voting on proposed tribal-state compacts. *Id.* § 9.46.360(4).

70. Within 45 days of receiving a proposed compact from the director, the gambling commission, including the four ex officio members, "shall vote on whether to return the proposed compact to the director with instructions for further negotiation or to forward the proposed compact to the governor for review and final execution." Wash. Rev. Code § 9.46.360(6).

71.     The gambling commission "is authorized and empowered to enforce the provisions of any compact between a federally recognized Indian tribe and the state of Washington."  Wash. Rev. Code § 9.46.360(9).

72.     In its first tribal-state compact (executed with the Tulalip Tribes of Washington on August 2, 1991), Washington authorized the Tulalip Tribes of Washington to conduct a wide range of class III games that are illegal for non-tribal entities to offer, including roulette and craps.  *See* Tribal-State Compact for Class III Gaming Between the Tulalip Tribes of Washington and the State of Washington at 4–5 (Aug. 2, 1991) (hereinafter "Tulalip Compact"), *available at* https://www.wsgc.wa.gov/sites/default/files/public/searchable-compacts/tulalip/A-1991%20Compact%20%28s%29.pdf.

73.     Since 1991, Washington has entered into analogous compacts with "[a]ll 29 federally recognized tribes in Washington," giving the Tribes the exclusive right to offer certain class III games such as craps and roulette.  Gaming Compacts, Washington State Gambling Comm'n, *available at* https://www.wsgc.wa.gov/tribal-gaming/gaming-compacts (last visited Jan. 11, 2022).

74.     On March 25, 2020, Washington passed a new law, S.H.B. No. 2638, giving Indian tribes in the state a monopoly over sports betting.  *See* 2020 Wash. Legis. Serv. ch. 127.  It remains a crime for non-tribal entities to offer sports betting.  *See* Wash. Rev. Code §§ 9.46.220–.222.

75.     The law states:

It has long been the policy of this state to prohibit all forms and means of gambling except where carefully and specifically authorized and regulated.  The legislature intends to further this policy by authorizing sports wagering on a very limited basis by restricting it to tribal casinos in the state of Washington.

2020 Wash. Legis. Serv. ch. 127, § 1.

76.     The new act states that "[u]pon the request of a federally recognized Indian tribe or tribes in the state of Washington, the tribe's class III gaming compact may be amended . . . to authorize the tribe to conduct and operate sports wagering on its Indian lands. . . .  Sports wagering conducted pursuant to the gaming compact is a gambling activity authorized by this chapter." Wash. Rev. Code § 9.46.0364(1).  The statute makes clear that "[s]ports wagering conducted pursuant to the provisions of a class III gaming compact entered into by a tribe and the state pursuant to [Wash. Rev. Code § 9.46.360] is authorized bookmaking and is not subject to civil or criminal penalties pursuant to [Wash. Rev. Code § 9.46.225]." *Id.* § 9.46.0364(2).

77.     On July 6, 2021, Governor Inslee and 15 of the 29 federally recognized Indian tribes in Washington executed Compact Amendments to each of the Tribes' respective compacts to permit the Tribes to offer sports betting at their gaming facilities.  *See, e.g.*, Third Amendment to the Tribal State Compact for Class III Gaming Between Confederated Tribes of the Colville Reservation and the State of Washington (July 6, 2021), *available at* https://www.wsgc.wa.gov/sites/default/files/public/tribal/Compacts/Colville%28D%29/2021-0706%20Colville_Amendment_3_%26_Appendix_S%28s%29.pdf.

78.     These Tribes are: the Confederated Tribes of the Colville Reservation; the Cowlitz Indian Tribe; the Jamestown S'Klallam Tribe; the Kalispel Tribe; the Lummi Nation; the Muckleshoot Indian Tribe; the Puyallup Tribe of Indians; the Shoalwater Bay Indian Tribe; the Snoqualmie Indian Tribe; the Spokane Tribe; the Squaxin Island Tribe; the Stillaguamish Tribe of Indians; the Suquamish Tribe; the Swinomish Indian Tribal Community; and the Tulalip Tribes of Washington.

79.     On September 1, 2021, the Secretary approved the compact amendments for the Spokane Tribe, the Cowlitz Indian Tribe, the Suquamish Tribe, the Snoqualmie Indian Tribe, the

19

Stillaguamish Tribe of Indians, the Squaxin Island Tribe, the Lummi Nation, the Puyallup Tribe of Indians, and the Tulalip Tribes of Washington. *See* 86 Fed. Reg. 49,046, 49,046–47, 49,049–54 (Sept. 1, 2021). On September 15, 2021, the Secretary approved the compact amendments for the Muckleshoot Indian Tribe, the Confederated Tribes of the Colville Reservation, the Shoalwater Bay Indian Tribe, and the Kalispel Tribe. *See* 86 Fed. Reg. 51,370, 51,370, 51,373–74 (Sept. 15, 2021). On October 22, 2021, the Secretary approved the compact amendment for the Swinomish Indian Tribal Community. *See* 86 Fed. Reg. 58,685 (Oct. 22, 2021). On December 28, 2021, the Secretary approved the compact amendment for the Jamestown S'Klallam Tribe. *See* 86 Fed. Reg. 73,800 (Dec. 28, 2021).

80.     The sports-betting amendments have therefore been approved by the Secretary pursuant to IGRA, and that approval purports to authorize Washington's tribal sports-betting monopoly. *See* 25 U.S.C. § 2710(d)(3)(B), (8)(A).

81.     On September 19, 2021, a sixteenth tribe, the Port Gamble S'Klallam Tribe, amended its compact to permit it to offer sports betting. Memorandum of Incorporation of Most Favored Nation Amendments to the Tribal/State Compact Between the Port Gamble S'Klallam Tribe and the State of Washington (Sept. 19, 2021), *available at* https://www.wsgc.wa.gov/sites/default/files/public/tribal/Compacts/Port_Gamble%28X%29/Port _Gamble_Sports_Wagering_MOI_FINAL%28signed%29.pdf. Because Washington had amended compacts with other tribes to permit sports betting, the Port Gamble S'Klallam Tribe exercised its right under its compact's most-favored nation section to unilaterally amend its compact to permit sports betting as well. *Id.* at 1. On December 28, 2021, the Secretary approved the Port Gamble S'Klallam Tribe's Memorandum of Incorporation. *See* 86 Fed. Reg. 73,800 (Dec. 28, 2021).

82.     Because the terms of each sports-betting amendment are materially identical, the compact amendment between Washington and the Confederated Tribes of the Colville Reservation is used for reference throughout this complaint.  *See* Third Amendment to the Tribal-State Compact for Class III Gaming Between Confederated Tribes of the Colville Reservation and the State of Washington (July 6, 2021) (hereinafter "Colville Compact Amendment"), *available at* https://www.wsgc.wa.gov/sites/default/files/public/tribal/Compacts/Colville%28D%29/2021-0706%20Colville_Amendment_3_%26_Appendix_S%28s%29.pdf.

83.     The Compact Amendments add "Sports Wagering" to the list of class III gaming activities that the Tribes are permitted to offer, subject to a new Appendix S prescribing certain conditions.  Colville Compact Amendment at 2.

84.     The Compact Amendments require each of the Tribes to contribute their share of a "Start-Up Costs fee," which "includes the actual costs incurred by the State Gaming Agency for negotiations, rule development, regulatory program development, training, and similar activities necessary to implement Sports Wagering."  Colville Compact Amendment at 3.

85.     The Compact Amendments also provide that the Tribes' sports-betting net win will be included in the Tribes' total net gaming revenues, of which the Tribes are required to pay 0.13% to Washington for "problem gambling education, awareness, and treatment in the State of Washington."  Colville Compact Amendment, Appendix S, § 8.1; First Amendment to the Tribal/State Compact for Class III Gaming Between the Confederated Tribes of the Colville Reservation and the State of Washington, Appendix X2, §§ 14.4, 14.6 (Mar. 30, 2007), *available at*        https://www.wsgc.wa.gov/sites/default/files/public/searchable-compacts/colville/D-2007%20Amendment%201%20%28App%20X2%29%20%28s%29.pdf.

ER154

C.      **The Tribes' Class III Gaming Operations**

86.     The Tribes currently operate 29 casinos on Indian lands in Washington.  *See* Casino Locations, Washington State Gambling Comm'n, *available at* https://www.wsgc.wa.gov/tribal-gaming/casino-locations.  Of these 29 casinos, 22 are governed by compacts that Washington and the Tribes have amended to permit sports betting.  *Id.*; Gaming Compacts, Washington State Gambling Comm'n, *available at* https://www.wsgc.wa.gov/tribal-gaming/gaming-compacts.

87.     These casinos offer a range of class III games that are illegal for non-tribal entities to offer in Washington, including roulette, craps, and sports betting (among other games).

88.     In 2017, the Tribes' net receipts from class III gaming were approximately $2.56 billion.  Tribal Community Contributions at 14, Washington State Gambling Commission (Sept. 12, 2019), *available at* https://wsgc.wa.gov/sites/default/files/19%20Sept%2012%20-%20Tribal%20Contributions.pdf?_ga=2.85132313.104568771.1636491701-808950696.1634221088.  The Tribes' net receipts were approximately $2.42 billion in 2016 and approximately $1.98 billion in 2015.  *See id.* at 14–15.

89.     There are no non-tribal casinos in Washington that offer the full range of class III games that Washington permits tribal casinos to offer.

90.     No non-tribal casinos in Washington offer roulette, craps, or sports betting.

III.    **Washington's Tribal Gaming Monopoly Violates Federal Law**

A.      **The Federal Defendants' Approval Of Washington's Sports-Wagering Compact Amendments Violated Federal Law**

91.     The Secretary of the Interior's decision to approve the Compact Amendments was not in accordance with IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, or the equal-protection component of the Fifth Amendment's Due Process Clause, U.S. Const. amend. V, or the Tenth Amendment, *id.* amend. X.

92. IGRA requires the Secretary of the Interior to disapprove any tribal-state class III gaming compact that violates: (1) any provision of IGRA, (2) "any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands," or (3) "the trust obligations of the United States to Indians." 25 U.S.C. § 2710(d)(8)(B); *see also Amador Cnty.*, 640 F.3d at 383.

93. The Secretary of the Interior was obligated to disapprove the Compact Amendments for three independent reasons.

94. *First*, the Secretary of the Interior was obligated to disapprove the Compact Amendments because they purport to authorize tribal class III gaming that violates IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166.

95. IGRA provides that class III gaming on Indian lands is lawful "only if," among other things, the class III gaming activity is "located in a State that permits such gaming for any purpose by any person, organization, or entity" and is conducted in conformance with a tribal-state compact "that is in effect." 25 U.S.C. § 2710(d)(1)(B)–(C).

96. Failure to comply with either condition renders class III gaming on Indian lands illegal under IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166. *See Pueblo of Santa Ana*, 104 F.3d at 1552.

97. IGRA's state-permission requirement prohibits tribal class III gaming monopolies by ensuring that each class III gaming activity remains illegal on Indian lands unless a State "permits" the same class III gaming activity by non-tribal entities.

98. IGRA's state-permission requirement has not been satisfied in Washington for sports betting because the State criminally prohibits such gaming by any non-tribal entities. *Compare* Wash. Rev. Code § 9.46.0364, *with id.* §§ 9.46.220–.222.

99.     Washington's grant of a right to only "a federally recognized Indian tribe or tribes in the state of Washington" to "operate sports wagering on its Indian lands," Wash. Rev. Code § 9.46.0364, violates IGRA's state-permission requirement because Washington prohibits any non-tribal entities from offering sports betting, and thereby does not "permit[] such gaming for any purpose by any person, organization, or entity" as IGRA requires, 25 U.S.C. § 2710(d)(1)(B).

100.    Neither the Compact Amendments nor any other state law can unilaterally "permit"—that is, authorize or legalize—sports betting solely on Indian lands because IGRA makes clear that such authorization can occur only through IGRA's statutory compacting process.

101.    Because Washington has not "permit[ted]" sports betting within the meaning of IGRA, 25 U.S.C. § 2710(d)(1)(B), sports betting remains illegal on Indian lands in Washington under IGRA and applicable federal criminal statutes.  *See* 25 U.S.C. § 2710(d)(1); 15 U.S.C. § 1175; 18 U.S.C. § 1955; 18 U.S.C. § 1166.

102.    Because the Compact Amendments purport to authorize the Tribes to offer class III gaming in Washington that federal law prohibits, the Compact Amendments violate federal law and are void.

103.    Because the Compact Amendments violate federal law, the Governor of Washington had no authority to "enter[] into" them within the meaning of IGRA.  25 U.S.C. § 2710(d)(1)(C).

104.    Because the Compact Amendments violate federal law and were not validly entered into, the Secretary was obligated to disapprove the Compact Amendments.   25 U.S.C. § 2710(d)(8)(B)(i).

ER157

105.    By instead approving the Compact Amendments and purporting to authorize illegal tribal class III gaming, the Secretary violated IGRA.  *See* 15 U.S.C. § 1175; 18 U.S.C. § 1955; 18 U.S.C. § 1166.

106.    *Second*, the Secretary also was required to disapprove the Compact Amendments under IGRA because they violate the Constitution's guarantee of equal protection.

107.    The Constitution's guarantee of equal protection mandates the equal treatment of people of all races and ancestries without discrimination or preference.  *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989).

108.    The Compact Amendments discriminate on the basis of race and ancestry, in violation of equal-protection principles, by granting monopolies to Washington Indian tribes over sports betting.

109.    By executing the Compact Amendments, Washington has purported to grant the Tribes a right to offer sports betting, an activity that Washington permits only tribal entities to offer.  *See* Wash. Rev. Code § 9.46.0364.

110.    At the same time, Washington criminally prohibits any entities other than those affiliated with Washington Indian tribes from offering sports betting in Washington.  Wash. Rev. Code §§ 9.46.220–.222.

111.    The Compact Amendments' grant of sports-betting monopolies to Washington Indian tribes is a racial and ancestral classification, as membership in a Washington Indian tribe depends on lineal descent from historical tribal rolls and often also a minimum blood quantum.

112.    The Compact Amendments' race-based preference for Indian tribal sports betting is subject to strict scrutiny.  *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995).

113. The Compact Amendments' race-based preference does not fall within the narrow exception outlined in *Morton v. Mancari*, 417 U.S. 535 (1974), because Congress has not authorized and could not authorize a State to grant Indian tribes a monopoly over a commercial activity that is unrelated to uniquely Indian interests, *see Williams v. Babbitt*, 115 F.3d 657, 665 (9th Cir. 1997).

114. The Compact Amendments' race-based preference for Indian tribal sports betting cannot survive strict scrutiny or even rational-basis review because it is unrelated to the furtherance of Congress's trust obligation to Indian tribes.

115. Thus, the Compact Amendments' race-based preference for Indian tribal sports betting violates the Constitution's guarantee of equal protection.

116. Because the Compact Amendments violate equal protection, the Governor of Washington lacked authority to "enter[] into" them within the meaning of IGRA. 25 U.S.C. § 2710(d)(1)(C).

117. Because the Compact Amendments violate equal protection and were not validly entered into, the Secretary was required to disapprove the Compact Amendments. 25 U.S.C. § 2710(d)(8)(B)(ii).

118. By instead approving the Compact Amendments and purporting to authorize a violation of equal protection, the Secretary violated IGRA.

119. In addition to violating IGRA, the Secretary's approval independently violated the equal-protection component of the Fifth Amendment's Due Process Clause because it blessed and facilitated Washington's unconstitutional race-based preference for Indian tribal sports betting.

120. *Third*, the Secretary also was required to disapprove the Compact Amendments because the process by which they were executed violated the Tenth Amendment.

121.     "The legislative powers granted to Congress are sizable, but they are not unlimited."  *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1476 (2018).  "[C]onspicuously absent from the list of powers given to Congress is the power to issue direct orders to the governments of the States."  *Id.*

122.     IGRA's state-negotiation mandate issues a "direct order" to the States: IGRA directs that upon receiving a request from an Indian tribe to negotiate a class III gaming compact, "the State *shall* negotiate with the Indian tribe in good faith to enter into such a compact."  25 U.S.C. § 2710(d)(3)(A) (emphasis added).  That sort of "direct order" violates the Constitution's anti-commandeering principle, and renders the process for entering into the Compact Amendments unlawful.  *See Murphy*, 138 S. Ct. at 1476.

123.     This state-negotiation mandate is not severable from the remainder of the Act.  An unconstitutional provision is not severable when "the statute created in its absence is legislation that Congress would not have enacted."  *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987).  The compacting process is IGRA's centerpiece, and the state-negotiation mandate is what ensures that process takes place.  Congress would not have enacted IGRA without this central requirement.

124.     Because the Compact Amendments violated the Tenth Amendment and were not validly entered into, the Secretary was required to disapprove the Compact Amendments.  25 U.S.C. § 2710(d)(8)(B)(ii).

125.     By instead approving the Compact Amendments and purporting to authorize a violation of the Tenth Amendment, the Secretary violated IGRA.

126.     In addition, because the state-negotiation mandate is not severable from the remainder of the Act, none of IGRA's provisions can stand, and the Secretary lacked any authority to approve the Compact Amendments.

ER160

**B.      The State Defendants' Execution And Administration Of Washington's Tribal-State Class III Gaming Compacts Violates Federal Law**

127.    The 2021 Compact Amendments giving the Tribes a monopoly over sports betting violate IGRA, federal criminal gaming statutes, the Constitution's guarantee of equal protection, and the Tenth Amendment.

128.    All of Washington's tribal-state Compacts—not just the recent Compact Amendments concerning sports betting—violate the Constitution's guarantee of equal protection because they give the Tribes a monopoly over many class III games, such as (but not limited to) roulette and craps, that non-tribal entities are criminally prohibited from offering. *See, e.g.*, Tulalip Compact at 4–5.

129.    All of the tribal-state Compacts also violate the Tenth Amendment because the process for entering into them was undertaken in violation of the Constitution's anti-commandeering principle.

130.    The Governor of Washington executed the Compacts and Compact Amendments, rendering them approved as a matter of state law.

131.    The members of the Washington State Gambling Commission continue to administer the Compacts and Compact Amendments.

132.    The Defendants' actions executing and administering the unlawful Compacts and Compact Amendments violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166, and aid and abet violations of the same, 18 U.S.C. § 2, by purporting to authorize and by facilitating tribal class III gaming that these federal statutes prohibit.

133.    The Defendants' actions executing and administering the unlawful Compacts and Compact Amendments violate the Constitution's guarantee of equal protection by purporting to authorize and by facilitating Washington's race-based preference for tribal gaming.

134.     The Defendants' actions executing and administering the unlawful Compacts and Compact Amendments violate the Tenth Amendment by continuing to administer agreements that were not lawfully entered into.

**C.     Washington's Criminal Prohibition Of Types Of Class III Gaming That It Permits Only Indian Tribes To Offer Violates Federal Law**

135.     Washington criminally prohibits most forms of class III gaming, including (but not limited to) roulette, craps, and sports betting.  *See* Wash. Rev. Code §§ 9.46.220–.222; *id.* §§ 9.46.0305–.0361.

136.     In the Compacts and Compact Amendments, however, Washington has purported to exempt the Tribes from the application of its criminal prohibitions on these forms of class III gaming.  *See* Wash. Rev. Code §§ 9.46.360, 9.46.225; *see also id.* § 9.46.0364(2).

137.     Because the application of Washington's criminal class III gaming prohibitions turns on the race and ancestry of the offender, Washington's continued enforcement of its class III gaming prohibitions against non-tribal entities violates the Constitution's guarantee of equal protection.

138.     The Attorney General of Washington is authorized by state statute to investigate, direct the prosecution of, and prosecute violations of state criminal laws.  Wash. Rev. Code § 43.10.090.  The Governor of Washington is authorized to request that the Attorney General initiate criminal investigations and proceedings.  *Id.*  The members of the Washington State Gambling Commission are charged with investigating and enforcing Washington's criminal gaming laws.  Wash. Rev. Code §§ 9.46.140, 9.46.210(3).

## IV.   Maverick's Injuries Caused By Washington's Tribal Gaming Monopoly

139.   Maverick currently owns and operates 19 cardrooms in Washington.  Maverick also owns casinos in Nevada and Colorado, which offer a range of class III gaming, including roulette, craps, sports betting, and dealer-assisted electronic table games.

140.   Sports betting in the United States has seen extraordinary growth over the past several years.[1]  The American Gaming Association reported that sports betting generated more than $1.5 billion in revenue in 2020, which represented a nearly 69% year-over-year growth rate.[2]  Revenue from sports betting will continue to rise as consumer demand grows around the country.[3]

141.   With sports betting becoming increasingly popular, Maverick would like to offer that form of gaming to the patrons of its Washington cardrooms.  Maverick would also like to offer in Washington the kinds of class III games that its Nevada and Colorado casinos offer, including, but not limited to, roulette, craps, and dealer-assisted electronic table games.[4]  It would be economically viable and profitable for Maverick to offer games like roulette, craps, sports betting, and dealer-assisted electronic table games in Washington and Maverick seeks to do so, but

---

[1]   *See, e.g.*, David Purdum, *Sports Betting's Growth in U.S. 'Extraordinary'*, ESPN (May 14, 2020),   https://www.espn.com/chalk/story/_/id/29174799/sports-betting-growth-us-extraordinary ("More than $20 billion has been bet with U.S. sportsbooks since the Supreme Court struck down the Professional and Amateur Sports Protection Act of 1992 on May 14, 2018.").

[2]   *See Commercial Gaming Revenue Tracker: 2020 Fourth Quarter*, Am. Gaming Ass'n, https://www.americangaming.org/wp-content/uploads/2021/02/Q4-Email-PDF.pdf   (last visited Jan. 11, 2022).

[3]   *See id.*

[4]   This Complaint often lists roulette, craps, and sports betting as examples of the types of class III games that Maverick wants to offer in Washington.  In doing so, Maverick does not provide an exhaustive list of the class III games it wishes to offer but rather a few illustrative examples. In this action, Maverick seeks to vindicate its right to offer the full suite of class III games that Washington currently permits only Indian tribes to offer.

Maverick is unable to proceed because of Washington's criminal prohibition of most forms of class III gaming unless conducted at an authorized tribal gaming facility.  *See* Wash. Rev. Code §§ 9.46.0364, 9.46.0368, 9.46.220–.222.

142.    Because the Tribes can offer these games (including roulette, craps, sports betting, and dealer-assisted electronic table games), but Maverick cannot, Maverick suffers competitive injury with tribal casinos.  That injury includes increased advertising expenses, increased promotional expenses, and increased entertainment expenses that Maverick must undertake in order to compete with tribal casinos.  It also includes lost revenue from customers who would frequent Maverick's cardrooms if they offered the class III games that they are currently prohibited from offering, but who instead frequent tribal casinos.  Maverick also suffers a loss of goodwill by failing to offer the same set of products as its tribal competitors.

143.    The Supreme Court "routinely recognizes probable economic injury resulting from [governmental actions] that alter competitive conditions as sufficient to satisfy the [Article III 'injury-in-fact' requirement] . . . .  It follows logically that any . . . petitioner who is likely to suffer economic injury as a result of [governmental action] that changes market conditions satisfies this part of the standing test."  *Clinton v. City of N.Y.*, 524 U.S. 417, 432–33 (1998) (alterations in original) (quoting 3 K. Davis & R. Pierce, Administrative Law Treatise 13–14 (3d ed. 1994)).

144.    Maverick competes with other casinos, including tribal casinos, to offer the best and most attractive selection of games allowed by law.

145.    But for Washington's tribal gaming monopoly, Maverick is able, ready, and prepared to expand its gaming offerings in Washington to include a wide variety of class III games, including (but not limited to) roulette, craps, sports betting, and dealer-assisted electronic table games.

146.    Maverick has access to the capital needed to offer a wide variety of class III games in Washington, including roulette, craps, and sports betting, and to finance any additional facilities or purchase any necessary equipment.

147.    As a company that predominantly operates in Washington, Maverick is familiar with the requirements of Washington's gaming laws and regulations.

148.    Maverick would earn significant additional revenue if it could offer games such as craps, roulette, and sports betting, and it would also earn additional revenue if tribal casinos could *not* offer such games exclusively.

149.    Maverick's successful class III gaming operations in Colorado and Nevada demonstrate that it has the necessary background and experience to offer additional class III games like roulette, craps, and sports betting in Washington.

150.    Maverick is unable to take advantage of the commercial opportunities it has identified because Washington criminally prohibits most class III games if offered by non-tribal entities.

151.    Due to the threat of enforcement of Washington's criminal laws, which prohibit most forms of class III gaming, Maverick is unable to offer the same forms of class III gaming as the Tribes.  As a result, Maverick cannot establish or acquire gaming operations in Washington that can effectively compete with the Tribes' operations.

152.    The Defendants' unlawful execution, approval, and administration of the Compacts and Compact Amendments also alters competitive conditions in a way that is unfavorable to Maverick.

153.    The Secretary's approval of the Compacts and the Compact Amendments has facilitated and continues to facilitate the Tribes' unlawful class III gaming activities.  Those

ER165

activities harm Maverick by making it more difficult for Maverick to grow its successful gaming offerings in Washington because Maverick cannot compete on an equal footing with the Tribes' much broader gaming offerings.

154.    The Secretary's approval of the Compacts and the Compact Amendments has resulted in the deprivation of Maverick's substantive rights under constitutional equal-protection principles and IGRA to compete on equal terms with the Tribes to offer class III gaming in Washington free from discrimination on the basis of race and ancestry.

155.    If Washington did not limit most forms of class III gaming to tribal casinos, Maverick would offer a wide range of class III games (including roulette, craps, and sports betting) at its Washington cardrooms and increase its commercial casino revenue, and it would no longer suffer the violation of its equal-protection rights.

156.    If Washington applied its prohibition of most forms of class III gaming to the Tribes and non-tribal entities alike, many patrons of Washington's tribal casinos would instead frequent Maverick's Washington cardrooms, increasing Maverick's commercial casino revenue.

157.    Enjoining Washington from enforcing its tribal class III gaming monopoly would either permit Maverick to expand its operations in Washington or would increase the number of patrons at Maverick's existing Washington cardrooms.

158.    Washington's tribal class III gaming monopoly exists only because the Secretary approved the Compacts and Compact Amendments.

159.    If the Secretary had disapproved the Compacts and Compact Amendments, Washington would not be able to enforce its tribal class III gaming monopoly.

160.    Vacating the Secretary's approval would make Washington's tribal class III gaming monopoly unlawful, allowing Maverick to increase its commercial casino revenue either by

ER166

expanding its gaming offerings in Washington or by benefitting from increased patronage at its Washington cardrooms due to the elimination of the Tribes' competitive advantage.

## COUNT ONE:

**The Administrative Procedure Act**
**(Not in Accordance with Law – IGRA, Equal Protection, and the Tenth Amendment)**

161.    Maverick incorporates all preceding paragraphs by reference.

162.    The Department of the Interior and the Secretary of the Interior are "agencies" under the APA.  5 U.S.C. § 551(1).

163.    The APA prohibits agency actions that are "not in accordance with law."  5 U.S.C. § 706(2)(A).

164.    Federal law obligated the Secretary of the Interior to disapprove Washington's sports-wagering Compact Amendments.

165.    *First*, the Secretary of the Interior was obligated to disapprove the Compact Amendments because they purport to authorize tribal class III gaming that violates IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166.

166.    *Second*, the Secretary also was required to disapprove the Compact Amendments under IGRA and the equal-protection component of the Fifth Amendment's Due Process Clause because they violate the Constitution's guarantee of equal protection.

167.    *Third*, the Secretary also was required to disapprove the Compact Amendments because the process by which they were executed violated the Tenth Amendment.

168.    The Secretary's approval of the Compacts constitutes "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.

ER167

169.    Maverick has suffered a legal wrong or has been adversely affected or aggrieved by the Secretary's approval of the Compact Amendments.  5 U.S.C. § 702.

170.    The Secretary's approval of the Compact Amendments has resulted in the deprivation of Maverick's substantive rights under equal-protection principles and IGRA to compete on equal terms with the Tribes to offer sports betting in Washington free from discrimination on the basis of race and ancestry.

171.    It would be economically viable for Maverick to offer sports betting in Washington and Maverick seeks to do so, but Maverick cannot offer sports betting because of Washington's tribal sports-betting monopoly.

172.    The Secretary's approval of the Compact Amendments also has facilitated and continues to facilitate the Tribes' unlawful sports-betting offerings.  Those activities harm Maverick by making it more difficult for Maverick to effectively compete with the Tribes' much broader gaming offerings.

173.    Maverick therefore is entitled to an order: (1) declaring that the Compact Amendments violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, the Constitution's guarantee of equal protection, and the Tenth Amendment, and therefore were not validly entered into and are not in effect; (2) declaring that the Secretary's approval of the Compact Amendments violated IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, the Constitution's guarantee of equal protection, and the Tenth Amendment; (3) setting aside and vacating the Secretary's approval of the Compact Amendments; (4) declaring that the Tribes' sports-betting activities violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166; and (5) awarding nominal damages.

ER168

**COUNT TWO:**

**42 U.S.C. § 1983, Equity, Declaratory Judgment Act
(Violation of IGRA, Equal Protection, and the Tenth Amendment)**

174.    Maverick incorporates all preceding paragraphs by reference.

175.    42 U.S.C. § 1983 provides private parties a cause of action for declaratory and injunctive relief against any person who, under color of state law, deprives them of rights guaranteed by the U.S. Constitution or a federal statute.

176.    Courts of equity likewise provide private parties a cause of action to seek declaratory and injunctive relief against state officials that violate federal law.  *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015); *Ex parte Young*, 209 U.S. 123, 127 (1908).

177.    The Declaratory Judgment Act provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

178.    The Defendants' actions executing and administering the unlawful Compacts and Compact Amendments violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166, and aid and abet violations of the same, 18 U.S.C. § 2, by purporting to authorize and by facilitating tribal class III gaming that these federal statutes prohibit.

179.    The Defendants' actions executing and administering the unlawful Compacts and Compact Amendments violate the Constitution's guarantee of equal protection by purporting to authorize and by facilitating Washington's race-based preference for tribal gaming.

180.    The Defendants' actions executing and administering the unlawful Compacts and Compact Amendments violate the Tenth Amendment by continuing to administer agreements that were not lawfully entered into.

181.    The Defendants' unlawful actions executing and administering the Compacts and Compact Amendments have directly, personally, and substantially injured Maverick.

182.    The Defendants' actions have deprived and continue to deprive Maverick of its substantive rights under the Constitution's guarantee of equal protection and IGRA to compete on equal terms with the Tribes to offer class III gaming in Washington free from discrimination on the basis of race and ancestry.

183.    As detailed above, but for Washington's tribal monopoly, Maverick is able, ready, and prepared to expand its class III gaming offerings in Washington to include games such as roulette, craps, and sports betting.

184.    The Defendants' actions also have facilitated and continue to facilitate the Tribes' unlawful class III gaming activities.  Those activities harm Maverick by making it more difficult for Maverick to compete with the Tribes' much broader gaming offerings in Washington. Declaring that the Compacts and Compact Amendments are illegal and void and enjoining Defendants from enforcing them would eliminate the Tribes' class III gaming monopoly, prohibit the Tribes from offering class III gaming that Washington does not permit non-tribal entities to offer, and redress Maverick's injuries by ensuring that it can compete with the Tribes on equal footing.

185.    These injuries give rise to a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

186.    Maverick therefore seeks a declaration: (1) that the Compacts and Compact Amendments violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, the Constitution's guarantee of equal protection, and the Tenth Amendment, and therefore were not

validly entered into and are not in effect; (2) that the Governor's execution of the Compacts and Compact Amendments violated IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, the Constitution's guarantee of equal protection, and the Tenth Amendment, and the Compacts and Compact Amendments are therefore void; (3) that the continued administration of the Compacts and Compact Amendments by the members of the Washington State Gambling Commission violates IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, the Constitution's guarantee of equal protection, and the Tenth Amendment; and (4) that the Tribes' class III gaming activities violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166.

187.   Maverick also seeks an injunction: (1) prohibiting the members of the Washington State Gambling Commission from continuing to administer the Compacts and Compact Amendments; and (2) prohibiting the Governor from entering into any new class III gaming compacts with the Tribes granting them exclusive rights to engage in any form of class III gaming.

188.   Maverick also seeks an award of nominal damages.

### COUNT THREE:

**42 U.S.C. § 1983, Equity, Declaratory Judgment Act**
**(Violation of Equal Protection)**

189.   Maverick incorporates all preceding paragraphs by reference.

190.   42 U.S.C. § 1983 provides private parties a cause of action for declaratory and injunctive relief against any person who, under color of state law, deprives them of rights guaranteed by the U.S. Constitution or a federal statute.

191.   Courts of equity likewise provide private parties a cause of action to seek declaratory and injunctive relief against state officials that violate federal law. *See Armstrong*, 575 U.S. at 326; *Ex parte Young*, 209 U.S. at 127.

192.     The Declaratory Judgment Act provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

193.     The Constitution's guarantee of equal protection mandates the equal treatment of people of all races and ancestries without discrimination or preference.

194.     Washington criminally prohibits most forms of class III gaming, including roulette, craps, and sports betting.  *See* Wash. Rev. Code §§ 9.46.220–.222; *id.* §§ 9.46.0305–.0361.

195.     In the Compacts and Compact Amendments, however, Washington has purported to exempt the Tribes from the application of its criminal prohibitions on these forms of class III gaming.  *See* Wash. Rev. Code §§ 9.46.360, 9.46.225; *see also id.* § 9.46.0364(2).

196.     Because the application of Washington's criminal class III gaming prohibitions turns on the race and ancestry of the offender, Washington's continued enforcement of its class III gaming prohibitions against non-tribal entities violates the Constitution's guarantee of equal protection.

197.     The Defendants' potential enforcement of Washington's racially discriminatory criminal gaming laws has directly, personally, and substantially injured Maverick.

198.     The Defendants' discriminatory application and enforcement of Washington's criminal laws prohibiting these forms of class III gaming deprives Maverick of its right under the Constitution's guarantee of equal protection to compete on equal terms with the Tribes to offer class III gaming in Washington free from discrimination on the basis of race and ancestry.

199.   As detailed above, but for Washington's tribal monopoly, Maverick is able, ready, and prepared to expand its gaming offerings in Washington to include games such as roulette, craps, and sports betting.

200.   Due to the threat of enforcement of Washington's criminal laws, which prohibit most forms of class III gaming, Maverick is unable to offer the same forms of class III gaming as the Tribes.  As a result, Maverick cannot establish or acquire gaming operations in Washington that can effectively compete with the Tribes' operations.

201.   These injuries give rise to a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

202.   Maverick therefore seeks a declaration that the Defendants' continued enforcement of Washington's criminal laws prohibiting class III gaming—including roulette, craps, and sports betting—violates the Constitution's guarantee of equal protection, and an injunction prohibiting the Defendants from enforcing those laws against Maverick.

203.   Maverick also seeks an award of nominal damages.

## PRAYER FOR RELIEF

204.   Maverick demands a judgment against the Defendants as follows:

a.   Declaring that the Compacts and Compact Amendments violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, the Constitution's guarantee of equal protection, and the Tenth Amendment, and therefore are void, were not validly entered into, and are not in effect;

b.   Declaring that the Secretary of the Interior's approval of the Compacts and Compact Amendments; the Governor's execution of the Compacts and Compact

ER173

Amendments; and the continued administration of the Compacts and Compact Amendments by the members of the Washington State Gambling Commission violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, 18 U.S.C. § 1166, the Constitution's guarantee of equal protection, and the Tenth Amendment;

     c.     Declaring that the continued enforcement of Washington's criminal laws prohibiting class III gaming against Maverick violates the Constitution's guarantee of equal protection;

     d.     Declaring that the Tribes' class III gaming activities violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166;

     e.     Vacating and setting aside the Secretary of the Interior's approval of the Compacts and Compact Amendments;

     f.     Enjoining the continued administration of the Compacts and Compact Amendments by the members of the Washington State Gambling Commission;

     g.     Enjoining the Governor, the Attorney General, and the members of the Washington State Gambling Commission from enforcing against Maverick Washington's criminal laws prohibiting class III gaming;

     h.     Issuing all process necessary and appropriate to postpone further administration of the Compacts and Compact Amendments and prevent enforcement against Maverick of Washington's criminal laws prohibiting class III gaming pending the conclusion of this case;

     i.     Awarding Maverick its reasonable costs, including attorneys' fees, incurred in bringing this action;

     j.     Awarding Maverick nominal damages; and

k.      Granting such other and further relief as this Court deems just and proper.


Dated:  January 11, 2022                          Respectfully submitted,




                                      /s/ *Theodore B. Olson*

                                      THEODORE B. OLSON
                                         D.C. Bar No. 367456
                                      MATTHEW D. MCGILL
                                         D.C. Bar No. 481430
                                      LOCHLAN F. SHELFER
                                         D.C. Bar No. 1029799
                                      GIBSON, DUNN & CRUTCHER LLP
                                      1050 Connecticut Avenue, N.W.
                                      Washington, D.C. 20036
                                      Phone:  202.955.8668
                                      Email:  tolson@gibsondunn.com

THE HONORABLE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MAVERICK GAMING LLC,

      Plaintiff,

      v.

UNITED STATES OF AMERICA, et al.,

      Defendants.

No. 22-cv-05325 DGE

**NOTICE OF APPEAL**

      Notice is hereby given that Plaintiff Maverick Gaming LLC appeals to the United States Court of Appeals for the Ninth Circuit from the Order Granting Limited Intervenor Shoalwater Bay Tribe's Motion to Dismiss entered February 21, 2023 (ECF No. 98), and the Judgment entered February 21, 2023 (ECF No. 99), which dismissed Maverick's claims without prejudice; and from any and all of the Court's rulings adverse to Maverick incorporated in, antecedent to, or ancillary to the Order and the Judgment.

NOTICE OF APPEAL
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

1

2      DATED February 22, 2023.

3                                    **BRENNAN LEGAL, PLLC**

4

5                                    By: *s/ Thomas M. Brennan*

6                                    Thomas M. Brennan, WSBA No. 30662
                                     P.O. Box 1384
7                                    144 Railroad Ave. S., Suite 308
                                     Edmonds, WA  98020
8                                    Phone: (425) 967-3550
                                     Email: tom@brennanlegalpllc.com
9

10                                   **GIBSON, DUNN & CRUTCHER LLP**

11                                   By: *s/ Theodore B. Olson*
                                     By: *s/ Matthew D. McGill*
12                                   By: *s/ Lochlan F. Shelfer*

13                                   Theodore B. Olson, D.C. Bar No. 367456
                                     Matthew D. McGill, D.C. Bar No. 481430
14                                   Lochlan F. Shelfer, D.C. Bar No. 1029799
                                     1050 Connecticut Avenue, N.W., Suite 900
15                                   Washington, D.C.  20036-5303
                                     Phone: (202) 955-8668
16                                   Email: tolson@gibsondunn.com
                                     Email: mmcgill@gibsondunn.com
17                                   Email: lshelfer@gibsondunn.com

18                                   *Attorneys for Plaintiff Maverick Gaming LLC*

19

20

21

22

23

24

25

26

                                          2

NOTICE OF APPEAL                                          **Brennan Legal, PLLC**
(3:22-cv-05325 DGE)                                       P.O. Box 1384
                                                          144 Railroad Ave. S., Ste. 308
                                                          Edmonds, WA  98020
                                                          (425) 967-3550

**ER177**

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on this date I caused the foregoing document to be electronically filed

3   with the Clerk of the Court using the CM/ECF system which sends notification of the filing to all

4   counsel of record.

5          DATED February 22, 2023.

                                    */s/ Thomas M. Brennan*
6                                   Thomas M. Brennan

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

3

NOTICE OF APPEAL
(3:22-cv-05325 DGE)

**Brennan Legal, PLLC**
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA  98020
(425) 967-3550

**ER178**

Query    Reports ▾    Utilities ▾    Help    Log Out

APPEAL,CLOSED,TRANSIN

# U.S. District Court
# United States District Court for the Western District of Washington (Tacoma)
# CIVIL DOCKET FOR CASE #: 3:22-cv-05325-DGE

Maverick Gaming LLC v. United States of America et al
Assigned to: U.S. District Judge David G Estudillo
Case in other court:  District of Columbia, 1:22-cv-00068
                                  9th Circuit Court of Appeals, 23-35136
Cause: 05:702 Administrative Procedure Act

Date Filed: 05/09/2022
Date Terminated: 02/21/2023
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Maverick Gaming LLC**                          represented by   **Lochlan F Shelfer**
                                                                                  GIBSON DUNN & CRUTCHER (DC)
                                                                                  1050 CONNECTICUT AVE NW
                                                                                  WASHINGTON, DC 20036-5303
                                                                                  202-955-8558
                                                                                  Fax: 443-824-2122
                                                                                  Email: lshelfer@gibsondunn.com
                                                                                  *LEAD ATTORNEY*
                                                                                  *PRO HAC VICE*
                                                                                  *ATTORNEY TO BE NOTICED*

                                                                                  **Matthew D McGill**
                                                                                  GIBSON DUNN & CRUTCHER (DC)
                                                                                  1050 CONNECTICUT AVE NW
                                                                                  WASHINGTON, DC 20036-5303
                                                                                  202-955-8500
                                                                                  Fax: 202-467-0539
                                                                                  Email: mmcgill@gibsondunn.com
                                                                                  *LEAD ATTORNEY*
                                                                                  *PRO HAC VICE*
                                                                                  *ATTORNEY TO BE NOTICED*

                                                                                  **Theodore B Olson**
                                                                                  GIBSON DUNN & CRUTCHER (DC)
                                                                                  1050 CONNECTICUT AVE NW
                                                                                  WASHINGTON, DC 20036-5303
                                                                                  202-955-8500
                                                                                  Email: tolson@gibsondunn.com
                                                                                  *LEAD ATTORNEY*
                                                                                  *PRO HAC VICE*
                                                                                  *ATTORNEY TO BE NOTICED*

                                                                                  **Thomas Matthew Brennan**
                                                                                  BRENNAN LEGAL PLLC
                                                                                  P.O. BOX 1384
                                                                                  EDMONDS, WA 98026

**ER179**

425-967-3550
Email: tom@brennanlegalpllc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**United States of America**                    represented by  **Daron T Carreiro**
US DEPARTMENT OF JUSTICE (ENRD -
BOX 7611)
ENVIRONMENTAL AND NATURAL
RESOURCES DIVISION
PO BOX 7611
BEN FRANKLIN STATION
WASHINGTON, DC 20044-7611
202-305-1117
Email: daron.carreiro@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hillary K Hoffman**
US DEPARTMENT OF JUSTICE (ENRD -
BOX 7611)
ENVIRONMENTAL AND NATURAL
RESOURCES DIVISION
PO BOX 7611
BEN FRANKLIN STATION
WASHINGTON, DC 20044-7611
202-598-3147
Email: hillary.hoffman@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Rebecca M Ross**
US DEPARTMENT OF JUSTICE (ENRD -
BOX 7611)
ENVIRONMENTAL AND NATURAL
RESOURCES DIVISION
PO BOX 7611
BEN FRANKLIN STATION
WASHINGTON, DC 20044-7611
202-616-3148
Fax: 202-305-0275
Email: rebecca.ross@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States Department of the Interior**    represented by  **Daron T Carreiro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hillary K Hoffman**

**ER180**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca M Ross**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Deb Haaland**                                    represented by **Daron T Carreiro**
*in her official capacity as Secretary of the*                    (See above for address)
*Interior*                                                          *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                  **Hillary K Hoffman**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Rebecca M Ross**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

**Defendant**

**Bryan Newland**                                  represented by **Daron T Carreiro**
*in his official capacity as Assistant*                           (See above for address)
*Secretary Indian Affairs*                                        *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                  **Hillary K Hoffman**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Rebecca M Ross**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

**Defendant**

**Jay Inslee**                                     represented by **Brian Hunt Rowe**
*in his official capacity as the Governor of*                     ATTORNEY GENERAL'S OFFICE
*Washington*                                                       (SEATTLE)
                                                                    800 FIFTH AVENUE
                                                                    STE 2000
                                                                    SEATTLE, WA 98104
                                                                    206-389-3888
                                                                    Email: brian.rowe@atg.wa.gov
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                  **Kristin Beneski**
                                                  ATTORNEY GENERAL'S OFFICE (SEA-
                                                  FIFTH AVE)
                                                  800 5TH AVE
                                                  STE 2000

**ER181**

SEATTLE, WA 98104-3188
206-464-7459
Email: kristin.beneski@atg.wa.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tera M Heintz**
ATTORNEY GENERAL'S OFFICE
(40100-OLY)
PO BOX 40100
1125 WASHINGTON ST SE
OLYMPIA, WA 98504-0100
360-664-3027
Email: Tera.Heintz@atg.wa.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William McGinty**
ATTORNEY GENERAL'S OFFICE
(40111-OLY)
7141 CLEANWATER DRIVE SW
PO BOX 40111
OLYMPIA, WA 98504-0111
360-709-6470
Fax: 360-586-6659
Email: william.mcginty@atg.wa.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Robert Ferguson**
*in his official capacity as the Attorney
General of Washington*

represented by **Brian Hunt Rowe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristin Beneski**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tera M Heintz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William McGinty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Alicia Levy**
*in her official capacity as Chair of the
Washington State Gambling Commission*

represented by **Brian Hunt Rowe**
(See above for address)
*LEAD ATTORNEY*

ER182

*ATTORNEY TO BE NOTICED*

**Kristin Beneski**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tera M Heintz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William McGinty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Julia Patterson**
*in her official capacity as Vice-Chair of the Washington State Gambling Commission*

represented by **Brian Hunt Rowe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristin Beneski**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tera M Heintz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William McGinty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bud Sizemore**
*in his official capacity as Commissioner of the Washington State Gambling Commission*

represented by **Brian Hunt Rowe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristin Beneski**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tera M Heintz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ER183**

**William McGinty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kristine Reeves**                    represented by    **Brian Hunt Rowe**
*in her official capacity as Commissioner of*            (See above for address)
*the Washington State Gambling Commission*               *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Kristin Beneski**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Tera M Heintz**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **William McGinty**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Sarah Lawson**                       represented by    **Brian Hunt Rowe**
*in her official capacity as Commissioner of*            (See above for address)
*the Washington State Gambling Commission*               *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Kristin Beneski**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Tera M Heintz**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **William McGinty**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Steve Conway**                       represented by    **Brian Hunt Rowe**
*in his official capacity as ex officio member*          (See above for address)
*of the Washington State Gambling*                       *LEAD ATTORNEY*
*Commission*                                             *ATTORNEY TO BE NOTICED*

**ER184**

**Kristin Beneski**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tera M Heintz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William McGinty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jeff Holy**
*in his official capacity as ex officio member of the Washington State Gambling Commission*

represented by **Brian Hunt Rowe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristin Beneski**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tera M Heintz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William McGinty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Shelley Kloba**
*in her official capacity as ex officio member of the Washington State Gambling Commission*

represented by **Brian Hunt Rowe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristin Beneski**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tera M Heintz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William McGinty**
(See above for address)

**ER185**

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Brandon Vick**
*in his official capacity as ex officio member of the Washington State Gambling Commission*

represented by **Brian Hunt Rowe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristin Beneski**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tera M Heintz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William McGinty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Tina Griffin**
*in her official capacity as Director of the Washington State Gambling Commission*

represented by **Brian Hunt Rowe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristin Beneski**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tera M Heintz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor**

**Shoalwater Bay Tribe**

represented by **Scott D Crowell**
LAW OFFICE OF SCOTT D CROWELL
1487 W. STATE ROUTE 89A
SUITE 8
SEDONA, AZ 86336
425-802-5369
Fax: 509-290-6953
Email: scottcrowell@hotmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Suquamish Tribe**                     represented by **Keith M Harper**
JENNER & BLOCK (DC)
1099 NEW YORK AVE NW
STE 900
WASHINGTON, DC 20001
202-639-6000
Email: kharper@jenner.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leonard R Powell**
JENNER & BLOCK (DC)
1099 NEW YORK AVE NW
STE 900
WASHINGTON, DC 20001
202-639-6000
Email: LeonardPowell@jenner.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy Woolsey**
OFFICE OF RESERVATION ATTORNEY
(SUQUAMISH)
PO BOX 498
SUQUAMISH, WA 98392
360-394-8493
Email: twoolsey@suquamish.nsn.us
*ATTORNEY TO BE NOTICED*

**<u>Amicus</u>**

**Confederated Tribes of the Chehalis
Reservation**

**<u>Amicus</u>**

**Hoh Indian Tribe**

**<u>Amicus</u>**

**Kalispel Tribe of Indians**

**<u>Amicus</u>**

**Makah Indian Tribe**

**<u>Amicus</u>**

**Nisqually Indian Tribe**

**<u>Amicus</u>**

**Nooksack Indian Tribe**

**<u>Amicus</u>**

**Port Gamble S'Klallam Tribe**

**Amicus**

**Puyallup Tribe of Indians**

**Amicus**

**Quinault Tribe**

**Amicus**

**Samish Indian Nation**

**Amicus**

**Skokomish Indian Tribe**

**Amicus**

**Spokane Tribe**

**Amicus**

**Squaxin Tribe**

**Amicus**

**Swinomish Indian Tribal Community**

**Amicus**

**Tulalip Tribes**

**Amicus**

**Confederated Tribes and Bands of the Yakama Nation**

| Date Filed | # | Docket Text |
|---|---|---|
| 01/11/2022 | 1 | COMPLAINT against All Defendants ( Filing fee $ 402 receipt number ADCDC-8972495) filed by MAVERICK GAMING LLC. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons, # 8 Summons, # 9 Summons, # 10 Summons, # 11 Summons, # 12 Summons, # 13 Summons, # 14 Summons, # 15 Summons, # 16 Summons, # 17 Summons)(Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 01/11/2022) |
| 01/11/2022 | 2 | NOTICE of Appearance by Theodore B. Olson on behalf of All Plaintiffs (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 01/11/2022) |
| 01/11/2022 | 3 | NOTICE of Appearance by Matthew D. McGill on behalf of All Plaintiffs (McGill, Matthew) [Transferred from dcd on 5/9/2022.] (Entered: 01/11/2022) |
| 01/11/2022 | 4 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by MAVERICK GAMING LLC (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 01/11/2022) |
| 01/11/2022 | | Case Assigned to Judge Florence Y. Pan. (zsb) [Transferred from dcd on 5/9/2022.] (Entered: 01/11/2022) |
| 01/11/2022 | 5 | CIVIL COVER SHEET by MAVERICK GAMING LLC re 1 Complaint, filed by MAVERICK GAMING LLC. Related document: 1 Complaint, filed by MAVERICK |

| | | |
|---|---|---|
| | | GAMING LLC.(Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 01/11/2022) |
| 01/11/2022 | 6 | STANDING ORDER: The parties are hereby ORDERED to comply with the directives set forth in the attached Standing Order. See document for details. Signed by Judge Florence Y. Pan on 1/11/2022. (lcsw) [Transferred from dcd on 5/9/2022.] (Entered: 01/11/2022) |
| 01/19/2022 | 7 | SUMMONS (16) Issued Electronically as to All Defendants and U.S. Attorney General (Attachment: # 1 Notice and Consent)(zsb) [Transferred from dcd on 5/9/2022.] (Entered: 01/19/2022) |
| 02/04/2022 | 8 | WAIVER OF SERVICE. JAY INSLEE waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/04/2022) |
| 02/04/2022 | 9 | WAIVER OF SERVICE. ROBERT FERGUSON waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/04/2022) |
| 02/04/2022 | 10 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 01/24/22. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/04/2022) |
| 02/04/2022 | 11 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 1/26/2022. Answer due for ALL FEDERAL DEFENDANTS by 3/27/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/04/2022) |
| 02/04/2022 | 12 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. UNITED STATES DEPARTMENT OF THE INTERIOR served on 1/21/2022 (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/04/2022) |
| 02/04/2022 | 13 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. DEB HAALAND served on 1/21/2022 (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/04/2022) |
| 02/04/2022 | 14 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. BRYAN NEWLAND served on 1/21/2022 (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/04/2022) |
| 02/11/2022 | 15 | WAIVER OF SERVICE. BUD SIZEMORE waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
| 02/11/2022 | 16 | WAIVER OF SERVICE. JULIA PATTERSON waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
| 02/11/2022 | 17 | WAIVER OF SERVICE. ALICIA LEVY waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
| 02/11/2022 | 18 | WAIVER OF SERVICE. KRISTINE REEVES waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
| 02/11/2022 | 19 | WAIVER OF SERVICE. SARAH LAWSON waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
| 02/11/2022 | 20 | WAIVER OF SERVICE. STEVE CONWAY waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
| 02/11/2022 | 21 | WAIVER OF SERVICE. JEFF HOLY waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |

ER189

| | | |
|---|---|---|
| 02/11/2022 | 22 | WAIVER OF SERVICE. SHELLEY KLOBA waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
| 02/11/2022 | 23 | WAIVER OF SERVICE. BRANDON VICK waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
| 02/11/2022 | 24 | WAIVER OF SERVICE. TINA GRIFFIN waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
| 02/11/2022 | 25 | NOTICE of Appearance by Kristin Beneski on behalf of STEVE CONWAY, ROBERT FERGUSON, TINA GRIFFIN, JEFF HOLY, JAY INSLEE, SHELLEY KLOBA, SARAH LAWSON, ALICIA LEVY, JULIA PATTERSON, KRISTINE REEVES, BUD SIZEMORE, BRANDON VICK (Beneski, Kristin) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
| 02/11/2022 | 26 | NOTICE of Appearance by Hillary Hoffman on behalf of DEB HAALAND, BRYAN NEWLAND, UNITED STATES DEPARTMENT OF THE INTERIOR, UNITED STATES OF AMERICA (Hoffman, Hillary) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
| 02/11/2022 | 27 | NOTICE of Appearance by Daron Tate Carreiro on behalf of DEB HAALAND, BRYAN NEWLAND, UNITED STATES DEPARTMENT OF THE INTERIOR, UNITED STATES OF AMERICA (Carreiro, Daron) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
| 02/18/2022 | 28 | MOTION for Limited Admission *of Brian H. Rowe* by ROBERT FERGUSON. (Beneski, Kristin) [Transferred from dcd on 5/9/2022.] (Entered: 02/18/2022) |
| 02/18/2022 | 29 | MOTION for Limited Admission *of Tera Heintz* by ROBERT FERGUSON. (Beneski, Kristin) [Transferred from dcd on 5/9/2022.] (Entered: 02/18/2022) |
| 02/22/2022 | | MINUTE ORDER denying 28 MOTION for Limited Admission of Brian H. Rowe under Local Civil Rule 83.2(d). Defendant is directed to proceed in accordance with LCvR 83.2(f), which applies to attorneys employed by a state. Signed by Judge Florence Y. Pan on 2/22/2022. (lcsw) [Transferred from dcd on 5/9/2022.] (Entered: 02/22/2022) |
| 02/22/2022 | | MINUTE ORDER denying 29 MOTION for Limited Admission of Tera Heintz under Local Civil Rule 83.2(d). Defendant is directed to proceed in accordance with LCvR 83.2(f), which applies to attorneys employed by a state. Signed by Judge Florence Y. Pan on 2/22/2022. (lcsw) [Transferred from dcd on 5/9/2022.] (Entered: 02/22/2022) |
| 02/24/2022 | 30 | MOTION to Transfer Case by STEVE CONWAY, ROBERT FERGUSON, TINA GRIFFIN, JEFF HOLY, JAY INSLEE, SHELLEY KLOBA, SARAH LAWSON, ALICIA LEVY, JULIA PATTERSON, KRISTINE REEVES, BUD SIZEMORE, BRANDON VICK. (Attachments: # 1 Memorandum in Support of Motion to Transfer, # 2 Declaration of Brian H. Rowe ISO Mtn Transfer, # 3 Exhibit Exhibit A to Declaration of Brian H. Rowe)(Beneski, Kristin) [Transferred from dcd on 5/9/2022.] (Entered: 02/24/2022) |
| 02/24/2022 | 31 | MOTION to Stay by STEVE CONWAY, ROBERT FERGUSON, TINA GRIFFIN, JEFF HOLY, JAY INSLEE, SHELLEY KLOBA, SARAH LAWSON, ALICIA LEVY, JULIA PATTERSON, KRISTINE REEVES, BUD SIZEMORE, BRANDON VICK. (Attachments: # 1 Memorandum in Support of Motion to Stay)(Beneski, Kristin) [Transferred from dcd on 5/9/2022.] (Entered: 02/24/2022) |
| 03/02/2022 | 32 | NOTICE of Appearance by Brian Hunt Rowe on behalf of STEVE CONWAY, ROBERT FERGUSON, TINA GRIFFIN, JEFF HOLY, JAY INSLEE, SHELLEY KLOBA, SARAH LAWSON, ALICIA LEVY, JULIA PATTERSON, KRISTINE REEVES, BUD |

| | | |
|---|---|---|
| | | SIZEMORE, BRANDON VICK (Rowe, Brian) [Transferred from dcd on 5/9/2022.] (Entered: 03/02/2022) |
| 03/10/2022 | 33 | NOTICE of Change of Address by Theodore B. Olson (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 03/10/2022) |
| 03/10/2022 | 34 | ENTERED IN ERROR.....AMENDED COMPLAINT against All Defendants filed by MAVERICK GAMING LLC. (Attachments: # 1 Redline Comparison of Original and Amended Complaint)(Olson, Theodore) Modified on 3/11/2022 (zjf). [Transferred from dcd on 5/9/2022.] (Entered: 03/10/2022) |
| 03/10/2022 | 35 | MOTION for Leave to File *First Amended Complaint*, MOTION to Dismiss *Washington State Defendants* by MAVERICK GAMING LLC. (Attachments: # 1 Exhibit First Amended Complaint, # 2 Exhibit Redline Comparison of Original and Amended Complaint)(Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 03/10/2022) |
| 03/10/2022 | 36 | NOTICE of Proposed Order by MAVERICK GAMING LLC re 35 MOTION for Leave to File *First Amended Complaint* MOTION to Dismiss *Washington State Defendants* (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 03/10/2022) |
| 03/10/2022 | 37 | Memorandum in opposition to re 30 MOTION to Transfer Case filed by MAVERICK GAMING LLC. (Attachments: # 1 Text of Proposed Order)(Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 03/10/2022) |
| 03/11/2022 | | NOTICE OF CORRECTED DOCKET ENTRY: Document No. re 34 Amended Complaint was entered in error and refiled as DE# 35 .(zjf) [Transferred from dcd on 5/9/2022.] (Entered: 03/11/2022) |
| 03/15/2022 | 38 | REPLY to opposition to motion re 31 MOTION to Stay filed by STEVE CONWAY, ROBERT FERGUSON, TINA GRIFFIN, JEFF HOLY, JAY INSLEE, SHELLEY KLOBA, SARAH LAWSON, ALICIA LEVY, JULIA PATTERSON, KRISTINE REEVES, BUD SIZEMORE, BRANDON VICK. (Attachments: # 1 Text of Proposed Order Proposed Order on Mtn Stay)(Rowe, Brian) [Transferred from dcd on 5/9/2022.] (Entered: 03/15/2022) |
| 03/16/2022 | 39 | ORDER granting 31 Motion to Stay. Signed by Judge Florence Y. Pan on 3/16/2022. (lcsw) [Transferred from dcd on 5/9/2022.] (Entered: 03/16/2022) |
| 03/17/2022 | 40 | NOTICE of Appearance by Tera M. Heintz on behalf of STEVE CONWAY, ROBERT FERGUSON, TINA GRIFFIN, JEFF HOLY, JAY INSLEE, SHELLEY KLOBA, SARAH LAWSON, ALICIA LEVY, JULIA PATTERSON, KRISTINE REEVES, BUD SIZEMORE, BRANDON VICK (Heintz, Tera) [Transferred from dcd on 5/9/2022.] (Entered: 03/17/2022) |
| 03/17/2022 | 41 | REPLY to opposition re 30 MOTION to Transfer Case , filed by STEVE CONWAY, ROBERT FERGUSON, TINA GRIFFIN, JEFF HOLY, JAY INSLEE, SHELLEY KLOBA, SARAH LAWSON, ALICIA LEVY, JULIA PATTERSON, KRISTINE REEVES, BUD SIZEMORE, BRANDON VICK. (Rowe, Brian) [Transferred from dcd on 5/9/2022.] (Entered: 03/17/2022) |
| 03/24/2022 | 42 | RESPONSE re 35 MOTION for Leave to File *First Amended Complaint* MOTION to Dismiss *Washington State Defendants* filed by STEVE CONWAY, ROBERT FERGUSON, TINA GRIFFIN, JEFF HOLY, JAY INSLEE, SHELLEY KLOBA, SARAH LAWSON, ALICIA LEVY, JULIA PATTERSON, KRISTINE REEVES, BUD SIZEMORE, BRANDON VICK. (Attachments: # 1 Text of Proposed Order on Motion to file Amended Complaint)(Beneski, Kristin) [Transferred from dcd on 5/9/2022.] (Entered: 03/24/2022) |

| 03/31/2022 | 43 | REPLY to opposition to motion re 35 MOTION for Leave to File *First Amended Complaint* MOTION to Dismiss *Washington State Defendants* filed by MAVERICK GAMING LLC. (Attachments: # 1 Exhibit Exhibit A)(Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 03/31/2022) |
|---|---|---|
| 04/01/2022 | | NOTICE OF HEARING: Motions Hearing set for 4/28/2022 at 2:00 PM via Zoom videoconference before Judge Florence Y. Pan. (zacr) [Transferred from dcd on 5/9/2022.] (Entered: 04/01/2022) |
| 04/21/2022 | 44 | NOTICE of Appearance by Rebecca M. Ross on behalf of DEB HAALAND, BRYAN NEWLAND, UNITED STATES DEPARTMENT OF THE INTERIOR, UNITED STATES OF AMERICA (Ross, Rebecca) [Transferred from dcd on 5/9/2022.] (Entered: 04/21/2022) |
| 04/26/2022 | 45 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Lochlan F. Shelfer, Filing fee $ 100, receipt number ADCDC-9197058. Fee Status: Fee Paid. by MAVERICK GAMING LLC. (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(McGill, Matthew) [Transferred from dcd on 5/9/2022.] (Entered: 04/26/2022) |
| 04/27/2022 | | MINUTE ORDER granting 45 MOTION for Leave to Appear Pro Hac Vice. It is hereby ORDERED that Lochlan F. Shelfer is admitted pro hac vice in this matter as counsel for Plaintiff Maverick Gaming LLC. **Counsel should register for e-filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Florence Y. Pan on 4/27/2022. (lcsw) [Transferred from dcd on 5/9/2022.] (Entered: 04/27/2022) |
| 04/28/2022 | 46 | NOTICE of Appearance by Lochlan Francis Shelfer on behalf of MAVERICK GAMING LLC (zjf) [Transferred from dcd on 5/9/2022.] (Entered: 04/28/2022) |
| 04/28/2022 | | Minute Entry for proceedings held before Judge Florence Y. Pan: Motion Hearing held via video on 4/28/2022 re 30 MOTION to Transfer Case and 35 MOTION for Leave to File *First Amended Complaint*. Oral arguments heard. 30 Motion to Transfer Case is GRANTED. This case will be transferred to the Western District of Washington. 35 MOTION for Leave to File *First Amended Complaint* will be addressed by the transferee court. Transfer due by 5/8/2022. (Court Reporter Nancy Meyer.) (zacr) [Transferred from dcd on 5/9/2022.] (Entered: 04/28/2022) |
| 05/09/2022 | 47 | Case transferred in from District of District of Columbia, Case Number 1:22-cv-00068. (Entered: 05/09/2022) |
| 05/09/2022 | | U.S. District Judge David G. Estudillo added. (AMD) (Entered: 05/09/2022) |
| 05/09/2022 | 48 | LETTER from Clerk to counsel re receipt of case from the District of Columbia and advising of WAWD case number and judge assignment; and information regarding future notice and LCR 83.1(d)(1) which requires association with local counsel and instructions for Admission Pro Hac Vice. (AMD) (Entered: 05/09/2022) |
| 05/12/2022 | 49 | NOTICE of Appearance by attorney Thomas Matthew Brennan on behalf of Plaintiff Maverick Gaming LLC. (Brennan, Thomas) (Entered: 05/12/2022) |
| 05/12/2022 | 50 | CORPORATE DISCLOSURE STATEMENT indicating no Corporate Parents and/or Affiliates. Filed pursuant to Fed.R.Civ.P 7.1. Filed by Maverick Gaming LLC (Brennan, Thomas) (Entered: 05/12/2022) |
| 05/13/2022 | 51 | APPLICATION OF ATTORNEY Lochlan F. Shelfer FOR LEAVE TO APPEAR PRO HAC VICE for Plaintiff Maverick Gaming LLC (Fee Paid) Receipt No. AWAWDC-7552730 (Brennan, Thomas) (Entered: 05/13/2022) |

| | | |
|---|---|---|
| 05/13/2022 | 52 | APPLICATION OF ATTORNEY Matthew D. McGill FOR LEAVE TO APPEAR PRO HAC VICE for Plaintiff Maverick Gaming LLC (Fee Paid) Receipt No. AWAWDC-7552746 (Brennan, Thomas) (Entered: 05/13/2022) |
| 05/13/2022 | 53 | APPLICATION OF ATTORNEY Theodore B. Olson FOR LEAVE TO APPEAR PRO HAC VICE for Plaintiff Maverick Gaming LLC (Fee Paid) Receipt No. AWAWDC-7552749 (Brennan, Thomas) (Entered: 05/13/2022) |
| 05/13/2022 | 54 | ORDER re 52 Application for Leave to Appear Pro Hac Vice. The Court ADMITS Attorney Matthew D McGill for Plaintiff Maverick Gaming LLC by Clerk Ravi Subramanian. No document associated with this docket entry, text only. <br><br> *NOTE TO COUNSEL: Local counsel agrees to* **sign all filings** *and to be prepared to handle the matter, including the trial thereof, in the event the applicant is unable to be present on any date scheduled by the court, pursuant to LCR 83.1(d).* (JWC) (Entered: 05/13/2022) |
| 05/16/2022 | 55 | ORDER re 51 Application for Leave to Appear Pro Hac Vice. The Court ADMITS Attorney Lochlan F Shelfer for Maverick Gaming LLC by Clerk Ravi Subramanian. No document associated with this docket entry, text only. <br><br> *NOTE TO COUNSEL: Local counsel agrees to* **sign all filings** *and to be prepared to handle the matter, including the trial thereof, in the event the applicant is unable to be present on any date scheduled by the court, pursuant to LCR 83.1(d).* (JWC) (Entered: 05/16/2022) |
| 05/16/2022 | 56 | ORDER re 53 Application for Leave to Appear Pro Hac Vice. The Court ADMITS Attorney Theodore B Olson for Plaintiff Maverick Gaming LLC by Clerk Ravi Subramanian. No document associated with this docket entry, text only. <br><br> *NOTE TO COUNSEL: Local counsel agrees to* **sign all filings** *and to be prepared to handle the matter, including the trial thereof, in the event the applicant is unable to be present on any date scheduled by the court, pursuant to LCR 83.1(d).* (JWC) (Entered: 05/16/2022) |
| 05/16/2022 | 57 | ORDER REGARDING INITIAL DISCLOSURES, JOINT STATUS REPORT, DISCOVERY, DEPOSITIONS AND EARLY SETTLEMENT: FRCP 26(f) Conference Deadline is 8/1/2022, Initial Disclosure Deadline is 8/8/2022, Joint Status Report due by 8/15/2022, Status Conference set for 8/23/2022 at 9:30 AM via Zoom before U.S. District Judge David G. Estudillo. Signed by U.S. District Judge David G. Estudillo. (MGC) (Entered: 05/16/2022) |
| 05/19/2022 | 58 | NOTICE *of Withdrawal of Pending Motion* re 35 MOTION for Leave to File *First Amended Complaint* MOTION to Dismiss *Washington State Defendants* ; filed by Plaintiff Maverick Gaming LLC. (Brennan, Thomas) (Entered: 05/19/2022) |
| 06/21/2022 | 59 | NOTICE of Appearance by attorney William McGinty on behalf of Defendants Steve Conway, Robert Ferguson, Jeff Holy, Jay Inslee, Shelley Kloba, Sarah Lawson, Alicia Levy, Julia Patterson, Kristine Reeves, Bud Sizemore, Brandon Vick. (McGinty, William) (Entered: 06/21/2022) |
| 06/21/2022 | 60 | Stipulated MOTION *for Relief from Deadlines and Proposing Briefing Schedule*, filed by Plaintiff Maverick Gaming LLC. Noting Date 6/21/2022, (Brennan, Thomas) (Entered: 06/21/2022) |
| 06/27/2022 | 61 | NOTICE of Hearing on 60 Stipulated MOTION for Relief from Deadlines and Proposing Briefing Schedule: Motion Hearing set for 6/28/2022 at 1:30 PM via Zoom before U.S. |

| | | |
|---|---|---|
| | | District Judge David G. Estudillo. (MGC) (Entered: 06/27/2022) |
| 06/28/2022 | 62 | MINUTE ENTRY for proceedings held before U.S. District Judge David G. Estudillo-Dep Clerk: *Gretchen Craft*; Pla Counsel: *Lochlan Shelfer, Matthew McGill, Thomas Brennan*; Def Counsel: *Hillary Hoffman, Kristin Beneski, Tera Heintz*; CR: *Angela Nicolavo*; Time of Hearing: *1:30*; Courtroom: *Zoom*; **Motion Hearing** held on 6/28/2022 re 60 Stipulated MOTION for Relief from Deadlines and Proposing Briefing Schedule filed by Maverick Gaming LLC. Court GRANTS the parties motion as requested. Order will be entered. (MGC) (Entered: 06/28/2022) |
| 06/28/2022 | 63 | ORDER granting 60 Stipulated Motion for Relief from Deadlines: Amended Complaint due by 7/1/2022, Plaintiff's Dispositive motion due by 9/12/2022, Defendants' Dispositive motions due by 9/12/2022, FRCP 26(f) Conference Deadline is 8/1/2022, Initial Disclosure Deadline is 8/8/2022, Joint Status Report due by 8/15/2022, Administrative Record due by 7/15/2022 signed by U.S. District Judge David G. Estudillo.(ZMG) (Entered: 06/28/2022) |
| 07/01/2022 | 64 | Unopposed AMENDED COMPLAINT against All Defendants, filed by Maverick Gaming LLC.(Brennan, Thomas) (Entered: 07/01/2022) |
| 07/05/2022 | 65 | **Notice of Filing Deficiency** re 64 Amended Complaint. ***Action Required*** See attached letter for more information and instructions. (AMD) (Entered: 07/05/2022) |
| 07/05/2022 | 66 | Unopposed AMENDED COMPLAINT *Correcting Caption* against All Defendants, filed by Maverick Gaming LLC.(Brennan, Thomas) (Entered: 07/05/2022) |
| 07/15/2022 | 67 | NOTICE *of Filing of the Certified Administrative Record* ; filed by Defendants Deb Haaland, Bryan Newland, United States Department of the Interior, United States of America. (Attachments: # 1 Exhibit Maverick_v_DOI_0000001, # 2 Exhibit Maverick_v_DOI_0000022, # 3 Exhibit Maverick_v_DOI_0000024, # 4 Exhibit Maverick_v_DOI_0000047, # 5 Exhibit Maverick_v_DOI_0000073, # 6 Exhibit Maverick_v_DOI_0000103, # 7 Exhibit Maverick_v_DOI_0000131, # 8 Exhibit Maverick_v_DOI_0000135, # 9 Exhibit Maverick_v_DOI_0000139, # 10 Exhibit Maverick_v_DOI_0000143, # 11 Exhibit Maverick_v_DOI_0000144, # 12 Exhibit Maverick_v_DOI_0000145, # 13 Exhibit Maverick_v_DOI_0000146, # 14 Exhibit Maverick_v_DOI_0000149, # 15 Exhibit Maverick_v_DOI_0000152, # 16 Exhibit Maverick_v_DOI_0000176, # 17 Exhibit Maverick_v_DOI_0000178, # 18 Exhibit Maverick_v_DOI_0000179, # 19 Exhibit Maverick_v_DOI_0000205, # 20 Exhibit Maverick_v_DOI_0000206, # 21 Exhibit Maverick_v_DOI_0000209, # 22 Exhibit Maverick_v_DOI_0000245, # 23 Exhibit Maverick_v_DOI_0000273, # 24 Exhibit Maverick_v_DOI_0000351, # 25 Exhibit Maverick_v_DOI_0000378, # 26 Exhibit Maverick_v_DOI_0000406, # 27 Exhibit Maverick_v_DOI_0000641, # 28 Exhibit Maverick_v_DOI_0000643, # 29 Exhibit Maverick_v_DOI_0000645, # 30 Exhibit Maverick_v_DOI_0000646, # 31 Exhibit Maverick_v_DOI_0000647, # 32 Exhibit Maverick_v_DOI_0000649, # 33 Exhibit Maverick_v_DOI_0000650, # 34 Exhibit Maverick_v_DOI_0000651, # 35 Exhibit Maverick_v_DOI_0000703, # 36 Exhibit Maverick_v_DOI_0000704, # 37 Exhibit Maverick_v_DOI_0000705, # 38 Exhibit Maverick_v_DOI_0000706, # 39 Exhibit Maverick_v_DOI_0000707, # 40 Exhibit Maverick_v_DOI_0000708, # 41 Exhibit Maverick_v_DOI_0000709, # 42 Exhibit Maverick_v_DOI_0000710, # 43 Exhibit Maverick_v_DOI_0000711, # 44 Exhibit Maverick_v_DOI_0000712, # 45 Exhibit Maverick_v_DOI_0000713, # 46 Exhibit Maverick_v_DOI_0000714, # 47 Exhibit Maverick_v_DOI_0000715, # 48 Exhibit Maverick_v_DOI_0000716, # 49 Exhibit Maverick_v_DOI_0000717, # 50 Exhibit Maverick_v_DOI_0000718, # 51 Exhibit Maverick_v_DOI_0000719, # 52 Exhibit Maverick_v_DOI_0000723, # 53 Exhibit Maverick_v_DOI_0000750, # 54 Exhibit Maverick_v_DOI_0000751, # 55 Exhibit Maverick_v_DOI_0000783, # 56 Exhibit |

| | | |
|---|---|---|
| | | Maverick_v_DOI_0000787, # [57] Exhibit Maverick_v_DOI_0000788, # [58] Exhibit Maverick_v_DOI_0000789, # [59] Exhibit Maverick_v_DOI_0000790, # [60] Exhibit Maverick_v_DOI_0001047, # [61] Exhibit Maverick_v_DOI_0001048, # [62] Exhibit Maverick_v_DOI_0001075, # [63] Exhibit Maverick_v_DOI_0001076, # [64] Exhibit Maverick_v_DOI_0001077, # [65] Exhibit Maverick_v_DOI_0001078, # [66] Exhibit Maverick_v_DOI_0001107, # [67] Exhibit Maverick_v_DOI_0001108, # [68] Exhibit Maverick_v_DOI_0001111, # [69] Exhibit Maverick_v_DOI_0001159, # [70] Exhibit Maverick_v_DOI_0001160, # [71] Exhibit Maverick_v_DOI_0001161)(Ross, Rebecca) (Entered: 07/15/2022) |
| 08/03/2022 | 68 | MOTION to Intervene Attorney Scott D Crowell added to party Shoalwater Bay Tribe(pty:intv), filed by Intervenor Shoalwater Bay Tribe. Oral Argument Requested. (Attachments: # [1] Exhibit A-Proposed Motion to Dismiss, # [2] Exhibit B-Declaration of Charlene Nelson, # [3] Exhibit B-1 to Declaration of Charlene Nelson, # [4] Exhibit B-2 to Declaration of Charlene Nelson, # [5] Exhibit B-3 to Declaration of Charlene Nelson, # [6] Exhibit B-4 to Declaration of Charlene Nelson, # [7] Proposed Order Granting Motion for Limited Intervention) Noting Date 8/19/2022, (Crowell, Scott) (Entered: 08/03/2022) |
| 08/03/2022 | 69 | MOTION for Relief *From Summary Judgment Deadlines*, filed by Intervenor Shoalwater Bay Tribe. Oral Argument Requested. (Attachments: # [1] Proposed Order Granting Motion for Relief from Summary Judgment Deadlines) Noting Date 8/12/2022, (Crowell, Scott) (Entered: 08/03/2022) |
| 08/03/2022 | 70 | CORPORATE DISCLOSURE STATEMENT indicating no Corporate Parents and/or Affiliates. Filed pursuant to Fed.R.Civ.P 7.1. Filed by Shoalwater Bay Tribe (Crowell, Scott) (Entered: 08/03/2022) |
| 08/10/2022 | 71 | RESPONSE, by Plaintiff Maverick Gaming LLC, to [69] MOTION for Relief *From Summary Judgment Deadlines*. (Attachments: # [1] Proposed Order)(Brennan, Thomas) (Entered: 08/10/2022) |
| 08/10/2022 | 72 | NOTICE of Joinder JOINING [69] MOTION for Relief *From Summary Judgment Deadlines*, by Defendants Steve Conway, Robert Ferguson, Tina Griffin, Jeff Holy, Jay Inslee, Shelley Kloba, Sarah Lawson, Alicia Levy, Julia Patterson, Kristine Reeves, Bud Sizemore, Brandon Vick. (Rowe, Brian) (Entered: 08/10/2022) |
| 08/12/2022 | 73 | REPLY, filed by Intervenor Shoalwater Bay Tribe, TO RESPONSE to [69] MOTION for Relief *From Summary Judgment Deadlines* (Crowell, Scott) (Entered: 08/12/2022) |
| 08/12/2022 | 74 | DECLARATION of Scott Crowell in Support of Motion for Relief from Summary Judgment Deadlines filed by Intervenor Shoalwater Bay Tribe re [69] MOTION for Relief *From Summary Judgment Deadlines* (Attachments: # [1] Exhibit 1 to Declaration of Scott Crowell)(Crowell, Scott) (Entered: 08/12/2022) |
| 08/12/2022 | 75 | MOTION for Summary Judgment , filed by Plaintiff Maverick Gaming LLC. Oral Argument Requested. (Attachments: # [1] Proposed Order) Noting Date 11/4/2022, (Brennan, Thomas) (Entered: 08/12/2022) |
| 08/12/2022 | 76 | DECLARATION of Eric Persson re [75] MOTION for Summary Judgment by Plaintiff Maverick Gaming LLC (Brennan, Thomas) (Entered: 08/12/2022) |
| 08/12/2022 | 77 | DECLARATION of Jonathan Chavez re [75] MOTION for Summary Judgment by Plaintiff Maverick Gaming LLC (Attachments: # [1] Exhibit)(Brennan, Thomas) (Entered: 08/12/2022) |
| 08/15/2022 | 78 | RESPONSE, by Plaintiff Maverick Gaming LLC, to [68] MOTION to Intervene Attorney Scott D Crowell added to party Shoalwater Bay Tribe(pty:intv). (Attachments: # [1] Proposed Order)(Brennan, Thomas) (Entered: 08/15/2022) |

| | | |
|---|---|---|
| 08/19/2022 | 79 | REPLY, filed by Intervenor Shoalwater Bay Tribe, TO RESPONSE to 68 MOTION to Intervene Attorney Scott D Crowell added to party Shoalwater Bay Tribe(pty:intv) (Crowell, Scott) (Entered: 08/19/2022) |
| 08/19/2022 | 80 | DECLARATION of Scott Crowell in Support of Motion for Limited Intervention filed by Intervenor Shoalwater Bay Tribe re 68 MOTION to Intervene Attorney Scott D Crowell added to party Shoalwater Bay Tribe(pty:intv) (Attachments: # 1 Exhibit 1 to Declaration of Scott Crowell, # 2 Exhibit 2 to Declaration of Scott Crowell, # 3 Exhibit 3(A) to Declaration of Scott Crowell, # 4 Exhibit 3(B) to Declaration of Scott Crowell, # 5 Exhibit 3(C) to Declaration of Scott Crowell, # 6 Exhibit 3(D) to Declaration of Scott Crowell, # 7 Exhibit 3(E) to Declaration of Scott Crowell)(Crowell, Scott) (Entered: 08/19/2022) |
| 08/22/2022 | 81 | ORDER granting Intervenor Shoalwater Bay Tribe's 69 Motion for Relief from Summary Judgment Deadlines. The briefing schedule (Dkt. No. 63 ) is STAYED. The parties shall meet and confer to set deadlines for dispositive motions and submit a joint motion to the Court no later than 10 days after the Court's decision on the Tribe's Motion for Limited Intervention. Signed by U.S. District Judge David G. Estudillo.(MW) (Entered: 08/22/2022) |
| 09/12/2022 | 82 | NOTICE of Supplemental Authority re 68 MOTION to Intervene Attorney Scott D Crowell added to party Shoalwater Bay Tribe(pty:intv) by Intervenor Shoalwater Bay Tribe (Attachments: # 1 Exhibit 1)(Crowell, Scott) (Entered: 09/12/2022) |
| 09/19/2022 | 83 | RESPONSE ~~SUPPLEMENT~~ re 82 Notice of Supplemental Authority *filed by Shoalwater Bay Tribe* by Plaintiff Maverick Gaming LLC (Brennan, Thomas) Modified on 9/20/2022 (MW). (Entered: 09/19/2022) |
| 09/29/2022 | 84 | ORDER granting Shoalwater Bay Tribe's 68 Motion to Intervene. Shoalwater Bay Tribe shall file its Motion to Dismiss (Dkt. No. 68 -1) no later than 10/3/2022. Plaintiff and Defendants shall submit their responses by 10/24/2022 and Shoalwater Bay Tribe shall submit its reply by 10/28/2022. The briefing schedule (Dkt. No. 63 ) remains STAYED. The Court amends its prior order (Dkt. No. 81 at 8) and does not require the parties to meet and confer to set deadlines for dispositive motions for submission 10 days after the Court's order on the Tribe's Motion for Limited Intervention. The Court orders the parties to meet and confer to set deadlines for dispositive motions and submit a joint motion to the Court no later than 10 days after the Court's decision on the Tribe's Motion to Dismiss. Signed by U.S. District Judge David G Estudillo.(MW) (Entered: 09/29/2022) |
| 10/03/2022 | 85 | MOTION to Dismiss , filed by Intervenor Shoalwater Bay Tribe. Oral Argument Requested. Noting Date 10/28/2022, (Crowell, Scott) (Entered: 10/03/2022) |
| 10/03/2022 | 86 | DECLARATION of Charlene Nelson filed by Intervenor Shoalwater Bay Tribe re 85 MOTION to Dismiss (Attachments: # 1 Exhibit B-1, # 2 Exhibit B-2, # 3 Exhibit B-3, # 4 Exhibit B-4)(Crowell, Scott) (Entered: 10/03/2022) |
| 10/11/2022 | 87 | MOTION for Leave to File / *Non-Party Tribes' Consent Motion for Leave to File Amicus Curiae Brief in Support of Limited Intervenor Shoalwater Bay Tribe's Motion to Dismiss*, filed by ~~Intervenor Shoalwater Bay Tribe~~ Non-Party Tribes (the Suquamish Tribe). (Attachments: # 1 Attachment A - (Proposed) Amicus Curiae Brief, # 2 Attachment B - Proposed Order) Noting Date 10/11/2022, (Woolsey, Timothy) Modified on 10/12/2022 to update docket entry filer (KB). (Entered: 10/11/2022) |
| 10/12/2022 | 88 | APPLICATION OF ATTORNEY Keith M. Harper FOR LEAVE TO APPEAR PRO HAC VICE for Amicus the Suquamish Tribe (Fee Paid) Receipt No. AWAWDC-7735653 (Woolsey, Timothy) (Entered: 10/12/2022) |

| 10/12/2022 | 89 | APPLICATION OF ATTORNEY Leonard R. Powell FOR LEAVE TO APPEAR PRO HAC VICE for Amicus the Suquamish Tribe (Fee Paid) Receipt No. AWAWDC-7735654 (Woolsey, Timothy) (Entered: 10/12/2022) |
|---|---|---|
| 10/12/2022 | | NOTICE of Docket Text Modification re 87 MOTION for Leave to File / *Non-Party Tribes' Consent Motion for Leave to File Amicus Curiae Brief in Support of Limited Intervenor Shoalwater Bay Tribe's Motion to Dismiss* : Modified on 10/12/2022 to indicate that docket entry was filed by Amicus party added as the Suquamish Tribe, not Intervenor Shoalwater Bay Tribe. (KB) (Entered: 10/12/2022) |
| 10/12/2022 | | NOTE: Motion for Leave to File Amicus Brief 87 was filed incorrectly/improperly. Appearance of attorney Tim Woolsey is not proper, and notices of electronic filing will not be sent until corrected. Signatures must be in accordance with FRCP 11 and LCR 83.2(a) and must comply with ECF Filing Procedures. (MW) (Entered: 10/12/2022) |
| 10/13/2022 | 90 | NOTICE of Appearance by attorney Timothy Woolsey on behalf of Amicus Suquamish Tribe. (Woolsey, Timothy) (Entered: 10/13/2022) |
| 10/17/2022 | 91 | ORDER granting Amici Tribes' 87 Motion for Leave to File Amicus Curiae Brief. The amicus brief attached as Dkt. No. 87-1 is hereby deemed filed on the date of this order. Signed by U.S. District Judge David G Estudillo.(MW) (Main Document 91 replaced with updated signature date on 10/17/2022) (MW). (Entered: 10/17/2022) |
| 10/18/2022 | 92 | ORDER re 88 Application for Leave to Appear Pro Hac Vice. The Court ADMITS Attorney Keith M Harper for Amicus Suquamish Tribe by Clerk Ravi Subramanian. No document associated with this docket entry, text only. *NOTE TO COUNSEL: Local counsel agrees to* **sign all filings** *and to be prepared to handle the matter, including the trial thereof, in the event the applicant is unable to be present on any date scheduled by the court, pursuant to LCR 83.1(d).* (JWC) (Entered: 10/18/2022) |
| 10/18/2022 | 93 | ORDER re 89 Application for Leave to Appear Pro Hac Vice. The Court ADMITS Attorney Leonard R Powell for Amicus Suquamish Tribe by Clerk Ravi Subramanian. No document associated with this docket entry, text only. *NOTE TO COUNSEL: Local counsel agrees to* **sign all filings** *and to be prepared to handle the matter, including the trial thereof, in the event the applicant is unable to be present on any date scheduled by the court, pursuant to LCR 83.1(d).* (JWC) (Entered: 10/18/2022) |
| 10/24/2022 | 94 | RESPONSE, by Defendants Deb Haaland, Bryan Newland, United States Department of the Interior, United States of America, to 85 MOTION to Dismiss . (Ross, Rebecca) (Entered: 10/24/2022) |
| 10/24/2022 | 95 | RESPONSE, by Defendants Steve Conway, Robert Ferguson, Tina Griffin, Jeff Holy, Jay Inslee, Shelley Kloba, Sarah Lawson, Alicia Levy, Julia Patterson, Kristine Reeves, Bud Sizemore, Brandon Vick, to 85 MOTION to Dismiss . (Beneski, Kristin) (Entered: 10/24/2022) |
| 10/24/2022 | 96 | RESPONSE, by Plaintiff Maverick Gaming LLC, to 85 MOTION to Dismiss . (Brennan, Thomas) (Entered: 10/24/2022) |
| 10/28/2022 | 97 | REPLY, filed by Intervenor Shoalwater Bay Tribe, TO RESPONSE to 85 MOTION to Dismiss (Crowell, Scott) (Entered: 10/28/2022) |
| 02/21/2023 | 98 | ORDER granting Shoalwater's 85 Motion to Dismiss. Maverick's claims are dismissed without prejudice. Signed by U.S. District Judge David G Estudillo.(MW) (Entered: |

| | | |
|---|---|---|
| | | 02/21/2023) |
| 02/21/2023 | 99 | JUDGMENT BY COURT. Limited Intervenor Shoalwater Bay Indian Tribe of the Shoalwater Bay Indian Reservation's ("Shoalwater") motion to dismiss (Dkt. No. 85 ) is GRANTED and Maverick'sclaims are dismissed without prejudice. (MW) (Entered: 02/21/2023) |
| 02/22/2023 | 100 | NOTICE OF APPEAL to Ninth Circuit (23-35136) re 98 Order on Motion to Dismiss, 99 Judgment by Court by Plaintiff Maverick Gaming LLC. $505, receipt number AWAWDC-7900154 (cc: USCA) (Attachments: # 1 Representation Statement)(Brennan, Thomas) Modified on 2/24/2023 to add CCA # only (AMD). (Entered: 02/22/2023) |
| 02/23/2023 | 101 | TIME SCHEDULE ORDER/APPEAL NUMBER 23-35136 for 100 Notice of Appeal filed by Maverick Gaming LLC. (AMD) (Entered: 02/24/2023) |
| 03/06/2023 | 102 | NOTICE *Intent Not to Order Transcripts* ; filed by Plaintiff Maverick Gaming LLC. (Brennan, Thomas) (Entered: 03/06/2023) |
| 03/21/2023 | 103 | NOTICE *No Party Intends to Order Transcripts* ; filed by Plaintiff Maverick Gaming LLC. (Brennan, Thomas) (Entered: 03/21/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/12/2023 07:52:33 | | |
| **PACER Login:** | BMcCarty942 | **Client Code:** | 65556-00001 |
| **Description:** | Docket Report | **Search Criteria:** | 3:22-cv-05325-DGE |
| **Billable Pages:** | 19 | **Cost:** | 1.90 |