No. 23-35136

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

MAVERICK GAMING LLC,
*Plaintiff/Appellant*,

v.

UNITED STATES OF AMERICA, et al.,
*Defendants/Appellees,*

SHOALWATER BAY TRIBE,
*Intervenor-Defendant/Appellee.*

Appeal from the United States District Court
for the Western District of Washington
No. 3:22-cv-05325-DGE (Hon. David G. Estudillo)

**FEDERAL APPELLEES' ANSWERING BRIEF**

TODD S. KIM
*Assistant Attorney General*

Of Counsel:                                REBECCA M. ROSS
                                          AMBER BLAHA
JODY H. SCHWARZ                            *Attorneys*
*Senior Attorney*                         Environment and Natural Resources Division
U.S. Department of the Interior            U.S. Department of Justice
                                          Post Office Box 7415
                                          Washington, D.C. 20044
                                          (202) 598-5568
                                          Amber.blaha@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ........................................................................... 1

STATEMENT OF JURISDICTION................................................... 2

STATEMENT OF THE ISSUE......................................................... 3

PERTINENT STATUTES AND REGULATIONS ................................ 4

STATEMENT OF THE CASE........................................................... 4

      A.     The Indian Gaming Regulatory Act ...................................... 4

      B.     The Compact between the Shoalwater Bay Indian Tribe
            and the State of Washington..................................................... 6

      C.     Federal Rule of Civil Procedure 19...................................... 7

      D.     This Court's precedent regarding dismissal for failure to
            join a required and indispensable party.................................. 8

      E.     Procedural history................................................................. 12

SUMMARY OF ARGUMENT .......................................................... 17

STANDARD OF REVIEW ............................................................... 20

ARGUMENT .................................................................................. 20

I.     The district court appropriately dismissed Count One based on
       controlling circuit precedent. ...................................................... 20

      A.     The trust relationship is not the basis for the federal
            government's adequate representation of tribal interests.................... 24

      B.     Maverick mischaracterizes the Federal Defendants'
            interests in this suit. .............................................................. 29

C.      Complete relief cannot be provided as to Count One
        unless the improper relief is struck. .....................................................32

II.     The Federal Defendants do not represent the Tribe's interests
        for Counts Two and Three. ...............................................................35

III.    The Tribe did not waive its immunity by filing for limited
        intervention. .....................................................................................36

CONCLUSION .....................................................................................39

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*Alto v. Black*, 738 F.3d 1111 (9th Cir. 2013) ........................................ 27, 32, 33, 34

*American Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015 (9th Cir. 2002) ...........34

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) .............................................27

*Arizona v. Navajo Nation*, 143 S. Ct. 1804 (2023) ..................................... 25, 26, 27

*Artichoke Joe's California Grand Casino v. Norton*,
    353 F.3d 712 (9th Cir. 2003) ................................................................................4

*Backcountry Against Dumps v. Bureau of Indian Affairs*,
    No. 21-55869, 2022 WL 15523095 (9th Cir. Oct. 27, 2022) .............................12

*Bodi v. Shingle Springs Band of Miwok Indians*,
    832 F.3d 1011 (9th Cir. 2016) .............................................................................37

*Conner v. Burford*, 848 F.2d 1441 (9th Cir. 1988) .................................................23

*Deschutes River Alliance v. Portland Gen. Elec. Co.*,
    1 F.4th 1153 (9th Cir. 2021) ........................................................................ 12, 23

*Diné Citizens Against Ruining Our Environment v. Bureau of Indian Affairs*,
    932 F.3d 843 (9th Cir. 2019) .................... 1, 2, 8, 9, 10, 11, 18, 20, 21, 22, 23, 24

*Grondal v. United States*, 37 F.4th 610 (9th Cir. 2022) ............................. 36, 37, 38

*Harger v. Dep't of Labor*, 569 F.3d 898 (9th Cir. 2009) ........................................33

*Jamul Action Committee v. Simermeyer*, 974 F.3d 984 (9th Cir. 2020) ................12

*Klamath & Modoc Tribes v. Maison*, 338 F.2d 620 (9th Cir. 1964) ......................34

*Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*,
    48 F.4th 934 (9th Cir. 2022) ..................................... 11, 12, 17, 18, 21, 22, 23, 26

*Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin*
  *v. United States*, 259 F. Supp. 2d 783 (W.D. Wis. 2003)....................................28

*Lapides v. Board of Regents of University Sys. of Georgia*,
  535 U.S. 613 (2002)..........................................................................38

*Lomayaktewa v. Hathaway*, 520 F.2d 1324 (9th Cir. 1975).....................................34

*Lyon v. Gila River Indian Cmty.*, 626 F.3d 1059 (9th Cir. 2010)..................... 20, 35

*Makah Indian Tribe v. Verity*, 910 F.2d 555 (9th Cir. 1990) .......................... 20, 35

*Manygoats v. Kleppe*, 558 F.2d 556 (10th Cir. 1977) ...........................................11

*Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782 (2014) ......................................5

*Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*
  *of Oklahoma*, 498 U.S. 505 (1991).........................................................35

*Pan American Co. v. Sycuan Band of Mission Indians*,
  884 F.2d 416 (9th Cir. 1989) ...............................................................38

*Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546 (10th Cir. 1997)...............................32

*Pueblo of Santa Ana v. Kelly*, 932 F. Supp. 1284 (D.N.M. 1996)...........................28

*Quinault Indian Nation v. Pearson for Est. of Comenout*,
  868 F.3d 1093 (9th Cir. 2017) ......................................................... 37, 38

*Rincon Band of Mission Indians v. Escondido Mut. Water Co.*,
  459 F.2d 1082 (9th Cir. 1972) ...............................................................26

*Rosales v. Dutschke*, 787 Fed. Appx. 406 (9th Cir. 2019) ......................................12

*Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978)........................................ 35, 36

*Seminole Nation v. United States*, 316 U.S. 286 (1942)..........................................25

*Shoshone-Bannock Tribes v. Reno*, 56 F.3d 1476 (D.C. Cir. 1995).......................25

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) ................ 24, 27

*United States v. Jicarilla Apache Nation*, 564 U.S. 162 (2011) ................ 25, 26, 27

*United States v. Oregon*, 657 F.2d 1009 (9th Cir. 1981) ......................................... 38

*United States v. Texas*, 143 S. Ct. 1964 (2023) ...................................................... 33

*Vizenor v. Babbitt*, 927 F. Supp. 1193 (D. Minn. 1996) ......................................... 28

*Washington v. Daley*, 173 F.3d 1158 (9th Cir. 1999) ....................................... 26, 27

*West Flagler Assoc., Ltd. v. Haaland*, 71 F.4th 1059 (D.C. Cir. 2023) ........... 29, 31

*White v. Univ. of Cal.*, 765 F.3d 1010 (9th Cir. 2014) ........................................... 22

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100 (1969) ........................ 33

## Statutes

Indian Gaming Regulatory Act (IGRA), 25 U.S.C. § 2701-21
§ 2702 ..................................................................................................................... 4

§ 2703(8) ................................................................................................................ 4

§ 2710(d)(1)(C) ...................................................................................................... 5

§ 2710(d)(3) ........................................................................................................... 5

§ 2710(d)(8) ................................................................................................ 5, 28, 31

Judicial Procedure Act, 28 U.S.C. §§ 175, 1291 *et seq*., 2401
28 U.S.C. § 175 ................................................................................................... 26

28 U.S.C. § 1291 ................................................................................................... 3

28 U.S.C. § 1295(a)(2) .......................................................................................... 3

28 U.S.C. § 1331 ................................................................................................... 2

v

28 U.S.C. § 2401(a) ............................................................................29

Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq*.
  § 701 *et seq*. ...............................................................................2

  § 702 ..........................................................................................33

  § 706(2) ......................................................................................33

## Rules & Regulations

Fed. R. of App. Proc.
  § 4(a)(1)(B) .................................................................................3

Fed. R. Civ. P. 19
  § 19.......................................................................................... 7, 20

  § 19(a)(1).....................................................................................7

  § 19(b) .........................................................................................8

Fed. R. of Civ. P. 12(b)(7) ...............................................................20

67 Fed. Reg. 68,152-02 (Nov. 8, 2002) .............................................6

86 Fed. Reg. 51373-01 (Sept. 15, 2021) ...........................................6

## Other Authorities

Answering Brief for Federal Appellees,
  *West Flagler Associates, Ltd. v. Haaland*, Nos. 22-5022, 21-5265,
  2022 WL 4977318 (D.C. Cir. Oct. 3, 2022) .......................... 29, 31, 32

Brief of United States as Amicus Curiae, *Diné Citizens*,
  2018 WL 948523 (9th Cir. Feb. 16, 2018) ................................. 23, 32

Department of the Interior Departmental Manual,
  Part 209, Ch. 8 (available at:
  https://www.doi.gov/sites/doi.gov/files/elips/documents/209-dm-8.pdf) .............6

Washington Gambling Commission Summary
  Of Gaming Compacts and Amendments, (available at:
  https://wsgc.wa.gov/tribal-gaming/gaming-compacts)..........................................7

# INTRODUCTION

Maverick Gaming LLC ("Maverick"), which owns and operates 22 cardrooms in the State of Washington as well as several other properties in Nevada and Colorado, brings this suit to prohibit all tribal gaming in the State of Washington. In its claim against the United States, Maverick alleges that the Secretary of the Interior's approval of eighteen sports-wagering amendments to tribal-state gaming compacts ("Compact Amendments") violates the Indian Gaming Regulatory Act, other federal statutes, and the equal-protection guarantee of the U.S. Constitution. Maverick asks the court to set aside the Secretary's approvals, and to declare that the Tribes' sports-wagering operations are illegal and that the Compact Amendments are invalid and not in effect. Maverick seeks broader relief against State of Washington officials, asking the court to effectively prohibit all casino-style gaming under all existing tribal-state gaming compacts and enjoin the State officials from enforcing State gaming laws against Maverick.

Because granting Maverick's requested relief would imperil tribal gaming operations and other tribal sovereign interests, the district court granted the Shoalwater Bay Indian Tribe's motion to dismiss for failure to join a required party. The district court relied on precedent from this Court, including *Diné Citizens Against Ruining Our Environment v. Bureau of Indian Affairs*, 932 F.3d 843 (9th Cir. 2019), *cert. denied*, 141 S. Ct. 161 (2020), holding that a challenge to

final federal agency action was properly dismissed under Federal Rule of Civil Procedure 19 where an absent tribe had a legally protected interest in the subject of the challenge and could not be joined because of sovereign immunity. The *Diné Citizens* court reached this conclusion—over the federal government's objection—notwithstanding that dismissal in those circumstances "arguably produce[s] an anomalous result in that no one, except a Tribe, could seek review" of agency action affecting that tribe's existing rights. *Id.* at 860-61 (internal quotation marks omitted).

Although Federal Defendants continue to adhere to the position that the United States is the only required defendant to a claim challenging final agency action, the analysis for the Administrative Procedure Act claim in this case is materially indistinguishable from *Diné Citizens*. Accordingly, and consistent with its position below, Federal Defendants maintain that affirmance as to Count One is compelled by circuit precedent. Federal Defendants take no position on the outcome of the Rule 19 analysis for Maverick's claims against the State Defendants.

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over Plaintiff's claim against the Federal Defendants under 28 U.S.C. § 1331 because it arises under a federal statute, the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq*.

However, Plaintiff's claim seeks relief beyond that authorized by the APA, and the Federal Defendants dispute the district court's jurisdiction over those portions of the claim. *See* Section I.C. The Federal Defendants also dispute that the district court had jurisdiction under 28 U.S.C. § 1346(a)(2). *See* Opening Br. at 3-4.

The district court's judgment was final because it disposed of all claims against all defendants. ER-4. This Court has jurisdiction under 28 U.S.C. § 1291.[1]

The judgment was entered on February 21, 2023. ER-4. Plaintiffs filed their notice of appeal on February 22, 2023, one day later. ER-176-78. The appeal is timely under Federal Rule of Appellate Procedure 4(a)(1)(B).

## STATEMENT OF THE ISSUE

Whether the district court correctly held that circuit precedent requires dismissal of Maverick's claim challenging federal agency action under the APA (Count One) because the Shoalwater Bay Indian Tribe is a required party under Federal Rule of Civil Procedure 19 that cannot be joined to this case and without whom the claim could not proceed.

---

[1] 28 U.S.C. § 1295(a)(2) provides the Court of Appeals for the Federal Circuit exclusive jurisdiction over appeals from district court decisions "based, in whole or in part, on section 1346" of title 28 of the U.S. Code. Maverick cites section 1346 as a basis for the district court's jurisdiction. Opening Br. at 3-4. Because the district court did not base its jurisdiction on section 1346, and lacked jurisdiction under that provision in any event, section 1295(a)(2) does not apply.

## PERTINENT STATUTES AND REGULATIONS

All applicable statutes and regulations are contained in Plaintiff's Opening Brief.

## STATEMENT OF THE CASE

### A.    The Indian Gaming Regulatory Act

The Indian Gaming Regulatory Act (IGRA), 25 U.S.C. § 2701-21, establishes a framework for regulating gaming activity on Indian lands. *See* 25 U.S.C. § 2702(3). The Act provides "a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments" and "shield[s] [tribal gaming] from organized crime and other corrupting influences to ensure that the Indian tribe is the primary beneficiary of the gaming operation." 25 U.S.C. § 2702(1), (2). IGRA seeks "to balance the competing sovereign interests of the federal government, state governments, and Indian tribes, by giving each a role in the regulatory scheme." *Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d 712, 715 (9th Cir. 2003) (citation omitted).

IGRA divides gaming into three classes. Class III gaming, the most closely regulated and the kind involved here, includes casino games, slot machines, and sports wagering. *See* 25 U.S.C. § 2703(8). Subject to an exception not relevant here, a tribe may conduct such gaming on Indian lands only pursuant to, and in

compliance with, a compact it has negotiated with the surrounding state, which must be submitted to the Secretary for approval. *See id.* § 2710(d)(1)(C). A compact typically prescribes rules for gaming operations, addresses law enforcement authority between the tribe and the state, and provides remedies for breach of the agreement's terms. *See id.* § 2710(d)(3)(C); *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 785 (2014).

IGRA provides no role for the federal government in the compact negotiation process between tribes and states. The Secretary of the Interior's authority is limited to approving, or for limited reasons, disapproving a compact entered into between a tribe and a state. 25 U.S.C. § 2710(d)(8)(A)-(B). "The Secretary may disapprove a compact [] only if such compact violates-- (i) any provision of this chapter, (ii) any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands, or (iii) the trust obligations of the United States to Indians." *Id.* § 2710(d)(8)(B). If the Secretary does not approve or disapprove a compact within 45 days of submission to the Secretary for approval, the compact is "considered to have been approved" by operation of law, "but only to the extent the compact is consistent with" IGRA. *Id.* § 2710(d)(8)(C). Compacts approved or approved by operation of law become effective after the Secretary publishes notice in the Federal Register. *Id.* §§ 2710(d)(3)(B), (d)(8)(D).

**B.      The Compact between the Shoalwater Bay Indian Tribe
and the State of Washington**

The Shoalwater Bay Indian Tribe of the Shoalwater Bay Indian Reservation

(Tribe) entered into a gaming compact with the State of Washington in 2002, and

the Department of the Interior published notice of approval of the Compact in

November of that year. 67 Fed. Reg. 68,152-02 (Nov. 8, 2002). The Tribe and

State of Washington have negotiated three amendments to that Compact. Of

relevance here, the Tribe submitted a fully executed Third Amendment to the

Tribal-State Compact for Class III Gaming between the Shoalwater Bay Indian

Tribe and the State of Washington ("Compact Amendment") to the Secretary on

August 24, 2021. ER-80. The Compact Amendment adds a new appendix to the

Compact that addresses sports wagering. *Id.* On September 10, 2021, before the

expiration of the 45-day review period, the Secretary's delegee, Assistant

Secretary-Indian Affairs Bryan Newland, approved the Compact Amendment. *Id.*;

*see also* Department of the Interior Departmental Manual, Part 209, Ch. 8

(available at: https://www.doi.gov/sites/doi.gov/files/elips/documents/209-dm-

8.pdf) (delegating authority to Assistant Secretary-Indian Affairs). Notice of this

approval was published in the Federal Register on September 15, 2021. 86 Fed.

Reg. 51373-01 (Sept. 15, 2021).

The State of Washington has entered into compacts with all 29 federally

recognized tribes in that state, and approximately nineteen other Washington tribes

have negotiated compact amendments that address sports wagering on Indian lands. *See* ER-100-03; Washington Gambling Commission Summary of Gaming Compacts and Amendments, (available at https://wsgc.wa.gov/tribal-gaming/gaming-compacts).

### C.    Federal Rule of Civil Procedure 19

Federal Rule of Civil Procedure 19 provides that a nonparty to a lawsuit is "required to be joined if feasible" when one of two criteria is met:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

When joinder of a required nonparty is not feasible—as, for example, when the nonparty is protected from suit by sovereign immunity—"the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed," *i.e.*, whether the nonparty is

"indispensable" to the action. Fed. R. Civ. P. 19(b). In making the indispensability determination, courts consider four factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
> > (A) protective provisions in the judgment;
> >
> > (B) shaping the relief; or
> >
> > (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.*

### D.    This Court's precedent regarding dismissal for failure to join a required and indispensable party

This appeal, at least with respect to the dismissal of Count One, ultimately turns on this Court's recent precedent regarding Rule 19. Four years ago, in *Diné Citizens*, this Court addressed how Rule 19 applies when an absent tribe, which cannot be joined without consent, has a legally protected interest that would be impaired by a successful APA lawsuit to set aside federal agency action. At issue in *Diné Citizens* was a lawsuit brought by groups concerned about the environmental and public health consequences of a coal mine located on tribal land

within the Navajo Reservation and owned by an arm of the Navajo Nation. 932

F.3d at 847-48. The plaintiffs challenged the federal agencies' approval of a lease

between the Tribe and its operating partner, granting of certain rights of way, and

issuance of a mining permit, claiming that the agencies had failed to adequately

perform analyses required by the National Environmental Policy Act and

Endangered Species Act. *Id.* at 849-50. The absent tribal entity intervened for the

limited purpose of filing a motion to dismiss, arguing that it was a required party

under Rule 19(a) that could not be joined because it was shielded by tribal

sovereign immunity, and that equity and good conscience demanded that the

lawsuit be dismissed in its absence. *Id.* at 850.

The United States opposed dismissal of the claims, notwithstanding that it

would benefit from dismissal as the named defendant in the case, urging that the

federal government is the only required and indispensable defendant in an APA

challenge to a federal agency's compliance with federal statutes through a final

agency action. *Id.* This Court disagreed. Specifically, this Court held that the

absent tribal entity was a required party to the litigation under Rule 19(a), even

though plaintiffs' challenge was solely to the federal agencies' compliance with

federal statutes, because a judgment for the plaintiffs would impair the tribal

entity's interest in the existing lease, rights-of-way, and permit. *Id.* at 852-53. In

other words, "the litigation could affect already-negotiated lease agreements and

expected jobs and revenue"—interests that the tribal entity already possessed, not merely interests that the tribal entity could one day seek to obtain. *Id.* at 853.

The Court also rejected the United States' argument that the absent tribal entity need not be joined because the federal government could adequately represent its interest in seeing the federal agency action upheld, noting that while the federal defendants "have an interest in defending their own analyses," they "do not share an interest in the *outcome* of the approvals—the continued operation of" the tribe's mine and associated power plant. *Id.* at 855. The Court also noted that the Navajo Nation's interest in being able to operate a mine and power plant to support its population was not merely pecuniary but "sovereign" in nature. *Id.*

After concluding that the absent tribal entity could not be joined without consent, the Court turned to Rule 19(b)'s indispensability analysis and concluded that the district court did not err in dismissing the lawsuit. *Id.* at 857-58. In so doing, the Court acknowledged that two of Rule 19(b)'s four listed factors arguably weighed against dismissal, including the fact that the plaintiff groups "would have no alternate forum in which to sue Federal defendants for their alleged procedural violations" if the case were dismissed. *Id.* at 858. Nevertheless, the Court concluded that "[e]ven assuming that no alternate remedy exists," dismissal would be proper because "the tribal interest in immunity overcomes the

10

lack of an alternative remedy or forum for the plaintiffs." *Id.* (quotation marks and citation omitted).

Finally, the Court declined to apply the "public rights" exception to traditional joinder rules to allow the lawsuit to go forward. *Id.* at 858-61. It recognized that, in doing so, it was deviating from the law of the Tenth Circuit, which has not dismissed challenges in comparable circumstances in part to avoid producing the "anomalous result" that "[n]o one, except [a] Tribe, could seek review of . . . significant federal action relating to leases or agreements for development of natural resources on [that tribe's] lands," unless the tribe voluntarily waives its sovereign immunity. *Id.* at 860-61 (quoting *Manygoats v. Kleppe*, 558 F.2d 556, 559 (10th Cir. 1977)). The Court nevertheless declared that anomaly a problem "for Congress to address, should it see fit." *Id.*

Relying on *Diné Citizens*, this Court has subsequently uniformly affirmed the dismissal of APA claims against the federal government for failure to join a required Indian tribe. In *Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, this Court affirmed the dismissal of APA claims against the Bureau of Reclamation because an adverse decision could imperil tribal reserved water and fishing rights. 48 F.4th 934, 944-45 (9th Cir. 2022), *petition for cert. filed*, No. 22-1116, 2023 WL 3479609 (U.S. May 15, 2023). The Court found that the federal government's and the Tribes' interests, "though overlapping, are not so aligned as to make

11

Reclamation an adequate representative of the Tribes." 48 F.4th at 944. And the Court held that the balancing of equities favored dismissal, in part because the plaintiffs' claims and the Tribes' interests "are mutually exclusive." *Id.* at 948. *See also Backcountry Against Dumps v. Bureau of Indian Affairs*, No. 21-55869, 2022 WL 15523095 (9th Cir. Oct. 27, 2022) (affirming dismissal of suit challenging lease approval because the tribe (the lessor) could not be joined); *Rosales v. Dutschke*, 787 Fed. Appx. 406 (9th Cir. 2019) (affirming dismissal of claims implicating tribal authority over land on which casino was built). *Cf. Jamul Action Committee v. Simermeyer*, 974 F.3d 984 (9th Cir. 2020) (affirming dismissal of claims against both tribal and federal officials where challenges implicate the trust status of tribal land and the Tribe's sovereign status and seek to enjoin construction of casino). This Court has recently reached a similar conclusion about claims against non-federal parties. *See, e.g.*, *Deschutes River Alliance v. Portland Gen. Elec. Co.*, 1 F.4th 1153, 1163 (9th Cir. 2021) (relying on *Diné Citizens* to dismiss Clean Water Act citizen suit against private-tribal hydroelectric project where relief would risk adversely affecting Tribe's interest as co-owner and co-operator).

### E.    Procedural history

Maverick filed this suit in January 2022 in the U.S. District Court for the District of Columbia against Federal and State officials. ER-188. Count One is brought against the Federal Defendants under the Administrative Procedure Act

and alleges that the Secretary's approval of eighteen Compact Amendments violated IGRA, various federal criminal laws, the equal-protection component of the Fifth Amendment's Due Process Clause, and the Tenth Amendment. ER-117. Count One requests: (1) a declaration that the Compact Amendments violate the specified laws and were thus not validly entered into and are not in effect; (2) a declaration that the Secretary's approval of the Compact Amendments violated the specified laws; (3) setting aside and vacating the Secretary's approval of the Compact Amendments; (4) a declaration that the Tribe's sport-betting activities violate IGRA; and (5) an award of nominal damages, attorneys' fees, and costs. ER-117-18.

Counts Two and Three are brought against Washington State officials under 42 U.S.C. § 1983, equity, and the Declaratory Judgment Act. Count Two alleges that the State Defendants' actions executing and administering both the Compacts and Compact Amendments violate IGRA, federal criminal laws, the equal-protection guarantee, and the Tenth Amendment. ER-118-19. Count Two seeks declaratory relief that the Compacts and Compact Amendments, as well as their execution and administration, are illegal and invalid, and that the Tribes' class III gaming activities violate IGRA. ER-120. Maverick also seeks an injunction prohibiting the administration of the Compacts and Compact Amendments and prohibiting the Governor from entering into any new class III gaming compacts

13

with the Tribes granting them exclusive rights to engage in any form of class III gaming. ER-120.

Count Three alleges that Washington's laws criminally prohibit most forms of class III gaming, but that the Compacts and Compact Amendments exempt the Tribes from the application of these laws in violation of the Constitution's equal-protection guarantee. ER-121-22. Maverick seeks a declaration that the State Defendants' continued enforcement of Washington law violates the equal-protection guarantee, an injunction prohibiting the State Defendants from enforcing those laws against Maverick, and nominal damages. ER-122-23.

In February 2022, the State Defendants moved to transfer venue because the D.C. district court lacked personal jurisdiction over them, and in the interests of convenience and justice. ER-190 (Doc. No. 30). Maverick then sought to amend its complaint to drop the State Defendants from this action, ER-191 (Doc. No. 35), which the State Defendants opposed on the basis that the State Defendants would be a required party. ER-191 (Doc. No. 37). On April 28, 2023, the D.C. District Court granted the State's motion and transferred the case to the Western District of Washington. ER-192. Shortly thereafter, Maverick withdrew its motion to file the amended complaint that would have dropped the State Defendants. ER-193. On July 1, 2022, Maverick filed an amended complaint that retains the claims against the State Defendants. ER-84.

On August 3, 2022, before any substantive briefing had occurred in the case, the Shoalwater Bay Tribe moved for limited intervention for purposes of moving to dismiss under Rules 12(b)(7) and 19. FedSER-3-22. On September 29, 2022, the district court granted the Tribe's motion to intervene. ER-196.

The Tribe moved to dismiss the case, ER-29-63, with seventeen Washington tribes filing an amicus brief in support of the Tribe's motion. ER-196. The Federal Defendants filed a response to the motion that noted the general position of the United States that in most contexts it is the only required and indispensable defendant for a claim challenging final agency action under the APA, but recognizing that the Ninth Circuit's holding in *Diné Citizens* controls in this case and supports dismissal. ER-21-28. The State Defendants supported the Tribe's motion to dismiss. ER-197.

On February 21, 2023, the district court granted the Tribe's motion to dismiss Maverick's claims. ER-5-20. Relying on *Diné Citizens* and other Ninth Circuit law, the district court agreed that the Tribe is a required party under Rule 19(a) because the Tribe has a legally protected interest in its gaming compacts, its gaming operations, and the resulting economic benefits, and the outcome of the case could impair that interest if the Tribe was not a party. ER-10-11. The district rejected Maverick's assertion that the Tribe is adequately represented by the United States, determining that the Tribe's and the United States' interests "clearly

diverge under *Diné* and its progeny." ER-11-12. The court reasoned that even though the United States and the Tribe maintained the same litigation position, their interests are different because the federal government seeks to defend its own analyses but does not have an interest in the outcome of that decision. ER-13. In contrast, Maverick's claims threaten the Tribe's sovereign interests by eliminating class III gaming and "the Tribe's 'very ability to govern itself, sustain itself financially, and make decisions about its own' gaming operation." ER-13. The court also found that the Tribe presented "actual, not hypothetical or unknown conflicts with the United States," citing the federal government's past actions to halt the Tribe's gaming operations in the absence of a compact with Washington that permits class III gaming, and the potential for changes in federal policy or personnel. ER-15.

After concluding that the Tribe is a necessary party, the district court determined that the Tribe had not waived its sovereign immunity and could not be joined in this litigation. The court first rejected Maverick's argument that the Tribe's limited intervention waived immunity, noting that this procedure was accepted in the Ninth Circuit. ER-16-17. Turning to the four factors in Rule 19(b), the district court determined that "the prejudice to Shoalwater would be substantial" if Maverick were to prevail in invalidating the tribal compacts. ER-17. On the second factor, the district court held that Maverick's request for a

declaratory judgment that the Compacts are "unconstitutional and therefore void" and that "the Tribes' class III gaming activities violate IGRA" cannot be tailored to lessen the prejudice to Shoalwater Bay or other absent tribes. ER-17-18. Third, the court determined that it could not tailor an adequate remedy, in part because Maverick's request to enjoin enforcement of Washington's gaming laws exceeds the court's authority and thus could not remedy Maverick's purported harm. ER-18. The court acknowledged that the fourth factor weighs in Maverick's favor, as there is no alternative judicial forum in which Maverick could seek the relief it requested. ER-19. But the district court held that the "wall of circuit authority" requiring dismissal when a required tribe cannot be joined outweighed this factor. ER-19 (quoting *Klamath*, 48 F.4th at 947).

The court also rejected Maverick's argument that the public-rights exception applied. ER-19. The court expressed skepticism that the litigation was brought in the public interest, noting Maverick's acknowledged motivation is to increase its commercial revenue. ER-20. This appeal followed.

## SUMMARY OF ARGUMENT

1. Under this Court's precedent, dismissal of an APA challenge to final agency action is proper where granting the requested relief would impair an absent tribe's existing legally protected interest. This Court has applied that rule even where dismissal would deprive the plaintiff of a forum for raising an APA

challenge. And it has endorsed that rule even while acknowledging that the effect of the rule may be to foreclose review of particular federal actions, absent a tribe's voluntary consent to suit.

The United States argued against application of such a rule in *Diné Citizens*, and it continues to disagree with that rule. But that disagreement does not change that *Diné Citizens* is the law of this circuit, and subsequently has been followed by this Court in APA challenges to federal agency action. *E.g.*, *Klamath Irrigation Dist.*, 48 F.4th at 944-45. Thus, unless this Court revisits *Diné Citizens*, affirmance of the dismissal of Count One is required.

However, if the Court were to reverse the district court as to the dismissal of Count One, three aspects of Maverick's argument should nonetheless be rejected. First, Maverick asserts that the federal government's trust responsibility makes it an adequate representative of the Tribe. This is incorrect. Although there is a trust relationship between the United States and Indian tribes, the Federal Defendants have no obligation to represent the interests of the Tribe, a separate sovereign, in this litigation. In the federal government's view (and contra *Diné Citizens*), it can adequately represent the Tribe's interest in seeing the Secretary's approval of the Compact Amendment upheld, even if the stakes of an adverse decision are different for the federal government and the Tribe. But this conclusion turns on the

18

fact that the government is presumed to appropriately defend its own action, not on the special relationship of the United States with Indian tribes.

Second, Maverick's "adequate representation" argument overstates the Federal Defendants' interests in this case. Maverick claims that the Federal Defendants share the Tribe's interest in defending the legality of the Compacts and Compact Amendments. The federal interest in this litigation is defined by the scope of the APA claim, and thus extends only to establishing that the Secretary's approval of the Compact Amendments complied with the applicable law. Federal Defendants do not adequately represent tribal interests as to the legality of the Compacts, nor do they necessarily have the same interests as the Tribe in defending certain aspects of the Compact Amendments.

Third, "complete relief" cannot be provided as to Count One because Maverick seeks relief that exceeds the ordinary APA remedy—holding unlawful the challenged agency action—and directly implicates the interests of non-parties. Specifically, Maverick asks the district court to declare that the Tribes' gaming activities are illegal and that the Compact Amendments violate federal law and are invalid. If this Court reverses the district court's dismissal of Count One, it should clarify that, to the extent Maverick is entitled to any relief whatsoever, such relief is limited to relief against the Secretary's approval of the Compact Amendments.

2.      The federal government takes no position on the outcome of the Rule 19 analysis for Counts Two and Three. But to the extent that Maverick suggests that Federal Defendants can represent tribal interests with respect to these counts, this is incorrect. Since the federal government is not a party to these claims, adequate representation of the Tribe's interests must be found elsewhere.

3.      The Tribe did not waive its sovereign immunity by intervening in this suit for the limited purpose of moving to dismiss under Federal Rules of Civil Procedure 12(b)(7) and 19. Waivers of tribal immunity must be unequivocally expressed by Congress or the tribe itself. There is no such waiver here.

## STANDARD OF REVIEW

This Court reviews a district court's decision to dismiss for failure to join a required party for abuse of discretion but reviews its underlying legal conclusions *de novo*. *Diné Citizens*, 932 F.3d at 851.

## ARGUMENT

### I.      The district court appropriately dismissed Count One based on controlling circuit precedent.

Count One is framed as an APA challenge to the Secretary's approval of the Compact Amendments.[2] *See* ER-116-18; *but see infra* Section I.C. (describing how

---

[2] Required-party status under Rule 19 must be assessed on a claim-by-claim basis. *See*, *e.g.*, *Lyon v. Gila River Indian Cmty.*, 626 F.3d 1059, 1068 (9th Cir. 2010) ("Of course, the United States may be necessary as to some claims and not others."); *Makah Indian Tribe v. Verity*, 910 F.2d 555, 559 (9th Cir. 1990) (absent tribes necessary for some claims but not others).

relief sought in Count One exceeds that permitted by the APA). As discussed above, this Court has determined several times that an absent tribe is a required party under Rule 19(a) to an APA challenge to government action if a judgment declaring the challenged federal approval unlawful would impair the tribe's sovereign interest flowing from that approval. *See Diné Citizens*, 932 F.3d at 852-53; *Klamath Irrigation Dist.*, 48 F.4th at 943-45. This case fits squarely within that precedent since a ruling setting aside the Secretary's approval of the Compact Amendments would prevent the Shoalwater Bay Indian Tribe from exercising its rights under the Compact Amendment it negotiated with the State of Washington. Specifically, a ruling setting aside the Secretary's approval would prevent the Tribe from lawfully offering sports wagering on Indian lands, with the resulting loss of employment, revenue, economic development opportunities, and associated self-sufficiency for the Tribe.

Maverick concedes that the Tribe "has a legitimate interest in the legality of its tribal-state gaming compact," but asserts that the Tribe is not required under Rule 19(a) because "the federal defendants will vigorously defend [the Tribe's] interest." Opening Br. at 26-39. But this Court's precedent requires more than overlapping—or even closely aligned—interests among the federal government and an absent tribe. In *Diné Citizens*, the Court considered and rejected the view that the United States could adequately represent the absent tribes' interest in the

APA claim, holding instead that, to be an adequate representative, the federal government must share an interest not only in seeing the challenged agency action upheld, but also in the ultimate "outcome" or consequence of upholding that action. 932 F.3d at 855. And in *Klamath Irrigation District*, this Court acknowledged that the federal government and tribes "share an interest in the ultimate outcome of this case" but that "such alignment on the ultimate outcome is insufficient for us to hold that the government is an adequate representative of the tribes." 48 F.4th at 945. Applying this precedent here, Interior has a strong interest in defending the Secretary's approval of the Compact Amendment, but does not share the same interest as the Tribe in the Tribe's ability to operate gaming in accordance with the Compact Amendment. Under *Diné Citizens* and *Klamath Irrigation*, Interior is not an adequate representative of the Tribe for purposes of Maverick's APA claim.

Turning to the Rule 19(b) analysis, this Court has observed that there is "'wall of circuit authority' in favor of dismissing actions in which a necessary party cannot be joined due to tribal sovereign immunity." *See Diné Citizens*, 932 F.3d at 857 (quoting *White v. Univ. of Cal.*, 765 F.3d 1010, 1028 (9th Cir. 2014)). Indeed, "virtually all the cases to consider the question appear to dismiss under Rule 19, regardless of whether [an alternative] remedy is available, if the absent parties are Indian tribes invested with sovereign immunity." *Id.* (cleaned up); *see*

*also Deschutes River Alliance*, 1 F.4th at 1163; *Klamath Irrigation Dist.*, 48 F.4th at 947. Nothing in Count One distinguishes it from this line of circuit authority.

To be clear, the federal government continues to have concerns about the Court's constriction of the APA cause of action under *Diné Citizens*. As the United States argued to this Court in that case, holding that non-federal entities are necessary for an APA action to proceed undermines Congress' decision to waive the United States' sovereign immunity for suits brought under the APA and could "sound[] the death knell for any judicial review of executive decisionmaking." Brief of United States as Amicus Curiae, *Diné Citizens*, 2018 WL 948523 (9th Cir. Feb. 16, 2018) at *10, *17 (quoting *Conner v. Burford*, 848 F.2d 1441, 1460 (9th Cir. 1988)). This Court heard the United States' concern, acknowledged the problem, but nevertheless decided that it did not change the Court's analysis. *See Diné Citizens*, 932 F.3d at 860-61. That conclusion is the law of this circuit, unless the Court revisits or narrows *Diné Citizens*. Until such time, dismissal of Count One is the appropriate outcome here.

Three aspects of Maverick's arguments merit further discussion. First, Maverick erroneously suggests that the trust relationship between the United States and Indian tribes obligates the federal government to defend the Tribe's interests in this litigation, thus ensuring "adequate representation" under Rule 19(a). Second, Maverick's "adequate representation" argument mischaracterizes the Federal

Defendants' interests in this litigation, which are limited to the defense of the Secretary's approval of the Compact Amendments. Finally, Maverick asserts that "complete relief" can be granted without the Tribe's presence, but fails to grapple with the fact that some elements of Count One's requested relief directly implicate non-party tribes and exceed that permitted by the APA. Each issue is addressed in turn.

### A. The trust relationship is not the basis for the federal government's adequate representation of tribal interests.

As noted above, the federal government is of the view that, absent a specific conflict of interest, its shared interest with tribes in seeing agency action upheld adequately protects an absent tribe's interest in the resolution of an APA claim. *But see Diné Citizens*, 932 F.3d at 855. But Maverick misstates, at least in part, the rationale for this conclusion. It invokes the federal government's trust responsibility, claiming that this special relationship between the United States and tribes makes Federal Defendants an adequate representative of the Tribe in this litigation. Opening Br. at 27-29. And Maverick goes further, implying that the Federal Defendants are "charged by law with representing the interests of the absentee." *Id.* at 32 (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 401 (9th Cir. 2002)); *id.* at 18 (asserting "the government has a duty to represent the interests of an absentee"). This assertion is inaccurate. The federal government

has no trust duty or other legal obligation to represent the Tribe's interests in litigation.

To be sure, there is a general trust relationship between the United States and Indian tribes pursuant to which the federal government "has charged itself with moral obligations of the highest responsibility and trust." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 176 (2011) (citing *Seminole Nation v. United States*, 316 U.S. 286, 296-97 (1942)). But the Federal Government owes enforceable duties to a tribe "only to the extent it expressly accepts those responsibilities" in a treaty, statute, or regulation. *Arizona v. Navajo Nation*, 143 S. Ct. 1804, 1813 (2023) (citations omitted). No treaty, statute, or regulation requires Federal Defendants to represent tribal interests in this litigation. *See, e.g.*, *Shoshone-Bannock Tribes v. Reno*, 56 F.3d 1476, 1481-82 (D.C. Cir. 1995) (Attorney General's decision whether to assert tribal claims in litigation is discretionary).

Here (and in most APA cases in which an absent tribe raises Rule 19 concerns), the federal and tribal interests in defending the agency action are aligned, and in defending its own action, the government acts in the tribe's interests as well. But the federal government "has its own independent interest in the implementation of federal Indian policy" and a "sovereign interest in the execution of federal law." *Jicarilla Apache Nation*, 564 U.S. at 165, 181-82. These interests are conceptually distinct from those of the tribes, notwithstanding their

25

functional overlap in many circumstances. *Id.* And in this suit, the federal government is defending its own action, not bringing claims on behalf of a tribe. *Cf.* 28 U.S.C. § 175; *Rincon Band of Mission Indians v. Escondido Mut. Water Co.*, 459 F.2d 1082, 1084-85 (9th Cir. 1972) (Attorney General is authorized, but not required, to provide legal representation for tribe's water claims). The general trust relationship provides no basis for finding that the federal government can adequately represent tribal interests in this case. Rather, it is the functional overlap between the federal government's interest in seeing its own action upheld and the tribe's interest in seeing that action upheld that—in the United States' view, although not under *Diné*—makes the federal government an adequate representative of the tribe's interest in APA litigation.

The cases on which Maverick relies reference the trust relationship among other aligned interests between the federal government and a tribe, and do not hold that the trust relationship is a sufficient basis for finding adequate representation under Rule 19(a)—a proposition that this Court recently rejected. *See Klamath Irrigation Dist.*, 48 F.4th at 945 ("our case law has firmly rejected the notion that a trustee-trustor relationship alone is sufficient to create adequate representation"). Nor do they reflect more recent Supreme Court pronouncements on the trust responsibility. For example, in *Washington v. Daley*, 173 F.3d 1158 (9th Cir. 1999), this Court principally relied on the alignment of interests between the

federal defendants and the tribes to find adequate representation. *Id.* at 1168. The Court, in so doing, observed that the federal government has a trust responsibility to tribes and reasoned, without citation, that "[t]his responsibility obligates the Secretary to protect the Tribes' interests in this matter." *Id.* But since that 1999 decision, the Supreme Court has clarified that "the Government assumes Indian trust responsibilities only to the extent it expressly accepts those responsibilities by statute." *Jicarilla Apache Nation*, 564 U.S. at 177; *see also Navajo Nation*, 143 S. Ct. at 1813 (the Federal Government owes enforceable duties to a tribe "only to the extent it expressly accepts those responsibilities" in a treaty, statute, or regulation). The *Daley* court did not analyze whether the United States had done so. *See also Alto v. Black*, 738 F.3d 1111, 1128 (9th Cir. 2013) (citing *Daley* but not evaluating whether any statute created a trust obligation to represent tribal interests).

Nor do the intervention cases cited by Maverick support any legal obligation here. *City of Los Angeles*, 288 F.3d 391, simply cited this Court's earlier precedent for the general proposition that a governmental body could represent absent interests if charged by law with doing so, but did not find such representation to exist. And *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003), stands for the unremarkable proposition that a state government will be presumed to represent the interests of its citizenry where they share the same interest in defending state action, such that all beneficiaries of a state program need not be permitted to

intervene. Nothing in that case suggests that the federal government has an obligation to represent tribal interests here.

Maverick states that "IGRA itself turns the trust obligation into a statutory mandate by requiring the Secretary to disapprove any compact that "violates … the trust obligations of the United States to Indians." Opening Br. at 33 (quoting 25 U.S.C. § 2710(d)(8)(B)(iii)); *see also id.* at 42. But this provision simply provides the standards for the Secretary's review of compacts.[3] It imposes no obligation on the federal government to advance a tribe's position in litigation.

Thus, if this Court were to find that the Federal Defendants adequately represent the Tribe's interests as to Count One, it should do because the federal and tribal interests in defending the Secretary's approval of the Compact Amendments are aligned.[4] The trust responsibility is not a basis for finding adequate representation of tribal interests.

---

[3] Several district courts have held that IGRA "does not create a fiduciary duty; it is a regulatory scheme that balances the competing interests of the states, the federal government and Indian tribes." *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin v. United States*, 259 F. Supp. 2d 783, 790 (W.D. Wis. 2003). *See also Vizenor v. Babbitt*, 927 F. Supp. 1193, 1201 (D. Minn. 1996) ("no fiduciary duty created by [IGRA's] elaborate regulatory scheme"); *Pueblo of Santa Ana v. Kelly*, 932 F. Supp. 1284, 1297 (D.N.M. 1996) (IGRA "does not in itself . . . impose duties upon the United States such as those applicable to private trustees").

[4] As described in Section II, the Federal Defendants are not parties to Counts Two and Three and thus cannot adequately represent tribal interests in these claims.

**B.    Maverick mischaracterizes the Federal Defendants'
           interests in this suit.**

Maverick's argument that the Federal Defendants adequately represent the

Tribe's interests suffers from another defect—it repeatedly conflates the Federal

Defendants' admitted interest in defending the Secretary's ***approval of the***

***Compact Amendments*** with the defense of the ***Compacts*** or the ***Compact***

***Amendments*** themselves.[5] *See, e.g.*, Opening Br. at 26 (acknowledging that the

Tribe has a "legitimate interest in the legality of its tribal-state gaming compact"

but asserting that "the federal defendants will vigorously defend that interest").

Maverick's suit seeks to invalidate both the Compacts and Compact Amendments,

ER-120, thus preventing all class III tribal gaming in Washington, but its claims

attacking the Compacts are in Count Two against the State Defendants. Count

One—the APA claim against the Federal Defendants—only concerns the

---

[5] As noted in Maverick's brief (at 30), the federal government took the position in
the D.C. Circuit that an Indian tribe is generally not a required party to an APA
claim challenging the Secretary's approval of a gaming compact, in part because
the federal government can adequately represent the absent tribe's interest in that
case. *See* Answering Brief for Federal Appellees, *West Flagler Associates, Ltd. v.
Haaland*, Nos. 22-5022, 21-5265, 2022 WL 4977318 (D.C. Cir. Oct. 3, 2022), at
*16-24. This is because the federal government shares the tribe's interest in
upholding the Secretary's approval of the compact and, absent a specific conflict of
interest or a request for relief directly against the tribe, the government's advocacy
protects the tribe's interest in the action. The D.C. Circuit did not reach the
adequate representation question because it affirmed the denial of the Seminole
Tribe's motion to intervene on "practical" grounds, concluding that the Court's
judgment on the merits for the federal government protected the Tribe's interests.
*West Flagler Assocs., Ltd. v. Haaland*, 71 F.4th 1059, 1071 (D.C. Cir. 2023).

Secretary's approval of the Compact Amendments.[6] ER-34-35. As a result, the federal government's role in this case is to defend the Secretary's approval of the Compact Amendments, not the legality of the Compacts.

Maverick's adequate representation argument fails to recognize this distinction, and instead conflates the Rule 19(a) analysis for its three claims. Consequently, the misrepresentation of federal interests as encompassing the defense of the Compacts themselves undergirds the majority of Maverick's adequate representation argument.[7] The Court should disregard Maverick's assertions that the federal government will adequately represent the Tribe's interests in the validity of its Compact. The Federal Defendants do not represent those interests in this suit.

---

[6] In any event, a challenge to the Secretary's approval of the Compacts, or any amendments approved more than six years ago, would be time-barred. *See* 28 U.S.C. § 2401(a).

[7] *E.g.*, Opening Br. at 29 ("challenges to tribal-state gaming compacts under IGRA just like this one" go forward "where the federal government defends the legality of a tribal-state compact under IGRA"); *id.* at 37 ("[t]he Tribe has not identified a single argument in defense of the compacts that it would raise and the federal defendants would not…."); *see also id.* ("the federal defendants are also fully capable of and willing to vigorously defend the legality of the compacts…."); *id.* at 42-43 (asserting that Federal Defendants and the Tribe "both believe the compacts do not violate IGRA or any other provision of federal law and should continue in effect"); *id.* at 45 (Federal Defendants "believe that Washington's compacts are lawful" and "there is no reason to doubt that the federal government will 'make all the same arguments that the Tribe[] would make' to defend the compacts").

Even as to the Compact Amendments, the Federal Defendants' role in this suit does not include defending all aspects of those agreements on their merits. Rather, the Government defends the Secretary's decision to approve the Compact Amendments in light of IGRA's statutory standards, which provide her discretionary authority to disapprove a compact "only if such compact violates" IGRA, other "federal law that does not relate to jurisdiction over gaming on Indian lands," or "the trust obligations of the United States to Indians." 25 U.S.C. § 2710(d)(8)(B). While this defense may—and likely will—include explaining why the Secretary was not required to disapprove the Compact Amendments, that does not mean that the federal government is bound to defend the legality of the Compact Amendments in all respects. *See, e.g.*, *West Flagler Assocs.*, 71 F.4th at 1065 (agreeing with Secretary that some aspects of gaming compact "fall[] outside the scope of the Secretary's review). For example, to the extent that Maverick's claim turns on issues of state law, *see* ER-97-101, ER-117, or matters in the Compact Amendments that are outside the purview of IGRA, those subjects would fall outside the scope of the Secretary's approval. *See, e.g.*, *West Flagler Assocs.*, 71 F.4th at 1068 (the Secretarial approval process "exists so that the Secretary may ensure that a compact does not violate certain federal laws, and her approval is a prerequisite for the compact to have legal effect: nothing more, nothing less."); *cf.*

*Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1557 (10th Cir. 1997) (Secretary is not expected to resolve state law issues in the 45-day period).

Federal Defendants' interest in this suit is the defense of the Secretary's approval of the Compact Amendments. For its claims addressing other matters, Maverick must find "adequate representation" of tribal interests elsewhere.

### C. Complete relief cannot be provided as to Count One unless the improper relief is struck.

Maverick asserts that the Tribe's joinder is not required to accord complete relief because "complete relief—that is, relief limited to that available in an APA cause of action, which is affirmation, reversal, or remand of the agency action— can be provided between the parties." Opening Br. at 49 (quoting *Alto*, 738 F.3d at 1127). The United States advanced a similar argument in *Diné Citizens*, and more recently, in *West Flagler*.[8] *See* Brief of United States, *Diné Citizens*, 2018 WL 948523, at *11; Answering Brief, *West Flagler Assocs.,* 2022 WL 4977318, at *16-24. But the problem here is that Maverick's APA claim does not comport with its own description of what relief should be available. Instead, it seeks relief that directly implicates the interests of non-parties. If the Court were to reverse the district court's dismissal of Count One, it should clarify that to the extent Maverick

---

[8] Unlike this case, plaintiffs in *West Flagler* did not seek any relief running against the Tribe. *See* Answering Brief, *West Flagler Assocs.*, 2022 WL 4977318, at *7.

is entitled to any relief at all, such relief is limited to holding unlawful the Secretary's approval of the Compact Amendments.

To elaborate, the APA authorizes suits against the United States to "hold unlawful and set aside agency action." 5 U.S.C. §§ 702, 706(2). It does not authorize any relief against non-federal entities. *Id.* But Count One seeks relief directed against eighteen non-party Tribes by requesting a declaration "that the Tribes' sports-betting activities violate IGRA, 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166…." ER-118. Maverick also requests an order declaring that the Compact Amendments themselves violate IGRA and various other statutory and constitutional provisions, and were therefore not validly entered into by the State and Tribes.[9] ER-117-18. As Maverick effectively concedes (Opening Br. at 49), this requested relief exceeds that allowed by the APA. *See Alto*, 738 F.3d at 1127. It also exceeds the power of the court, which generally lacks authority to provide relief directly against non-parties. *See, e.g.*, *United States v. Texas*, 143 S. Ct. 1964, 1980 (2023) (Gorsuch, J., concurring) (federal courts provide "party-specific relief" and "[i]f the court's remedial order affects nonparties, it does so only incidentally"); *see also Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S.

---

[9] Count One has other defects as well. For example, it seeks "nominal damages," but the APA waives federal sovereign immunity only for actions "seeking relief other than money damages." 5 U.S.C. § 702; *Harger v. Dep't of Labor*, 569 F.3d 898, 904 (9th Cir. 2009). If Count One is reinstated, Federal Defendants reserve their rights to raise these and other defenses to the claim.

100, 110 (1969) ("a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant"); *Klamath & Modoc Tribes v. Maison*, 338 F.2d 620, 623 (9th Cir. 1964) (reversing declaration of rights of non-party tribal members).

A proper APA action—one that seeks only to address the correctness of federal agency action—threatens no interests beyond the interest in seeing agency action upheld. In the United States' view, the agency can adequately represent this interest. But Maverick's claim is different. It seeks declarations that the eighteen Washington Tribes' gaming activities are illegal and that the Compact Amendments they entered into with the State are illegal and void. ER-117-18, ER-123. As drafted, Count One threatens tribal interests that are not represented by the Federal Defendants. *Cf. Alto*, 738 F.3d at 1126-27 (holding that tribes need not be present for adequate relief to be granted in an APA action, distinguishing such a case from those in which "the injury complained of was a result of the absent *tribe's* action" (emphasis in original)). If Maverick wishes to pursue relief that runs directly against the Tribes, that must be factored into the Rule 19 analysis. *See, e.g.*, *American Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1023-24 (9th Cir. 2002) (tribes were necessary parties to suit against state officials that sought to invalidate one aspect of gaming compact, and effectively sought a declaration that the tribes' gaming was illegal); *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325-

34

27 (9th Cir. 1975) (absent tribe required in an action seeking to cancel a tribal lease, not merely to set aside a federal approval of the lease). But such relief has no place in an APA claim. If Count One is allowed to proceed, the relief available should be limited to setting aside the Secretary's approval of the Compact Amendments.

## II.    The Federal Defendants do not represent the Tribe's interests for Counts Two and Three.

Each claim in Maverick's Amended Complaint is subject to its own Rule 19 analysis. *See Gila River Indian Cmty.*, 626 F.3d at 1068; *Makah*, 910 F.2d at 559. The federal government is not a party to Counts Two and Three, and takes no position on the outcome of the Rule 19 analysis for these claims. But most of Maverick's brief fails to conduct a claim-by-claim assessment, and instead speaks in general terms about "the case." *See, e.g.*, Opening Br. at 27 ("the federal government adequately represent the Tribe's interests ***in this case***") (emphasis added); *id.* at 31 ("in a case like this one" there is a presumption of adequate representation); *id.* at 34 ("there is an overwhelming presumption in this case that the federal government will adequately represent the absent tribe's interests"). In so doing, Maverick implies that Federal Defendants' presence for purposes of Count One means they can represent tribal interests with respect to Counts Two and Three. *See, e.g.*, *id.* at 2 ("…lawsuits implicating tribal interests generally may proceed where the federal government is a defendant…"); *id.* at 4 (describing issue

before the Court as whether the Tribe is a required party "in an action challenging its tribal-state IGRA gaming compact when the federal government is a party").

The Federal Defendants do not represent the Tribe's interests as to Counts Two and Three. The federal government is not party to these claims, nor does it have any other obligation to defend any tribal interests implicated therein. *See supra* Section I.A. Any suggestion otherwise should be rejected.

## III. The Tribe did not waive its immunity by filing for limited intervention.

The Tribe did not waive its immunity by intervening in this suit for the limited purposes of moving to dismiss under Federal Rules of Civil Procedure 12(b)(7) and 19. Suits against Indian tribes are barred by sovereign immunity "absent a clear waiver by the tribe or congressional abrogation." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 509 (1991); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). There is a strong presumption against waiver of tribal sovereign immunity—a waiver "cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo*, 436 U.S. at 58 (citation omitted); *see also Grondal v. United States*, 37 F.4th 610 (9th Cir. 2022).

That standard is not met here. Congress has not waived tribal immunity. Nor has the Tribe waived its own immunity. In fact, its motion for limited intervention expressly preserved it:

> For avoidance of doubt, by intervening in this action for the limited purpose of moving to dismiss under Rules 12(b)(7) and 19, the Tribe does not waive, and reserves in full, its sovereign immunity. Nothing herein shall be construed as a waiver, in whole or in part, of the Tribe's immunity, or as the Tribe's consent to be sued, and the legal counsel for the Tribe, undersigned, lack authority to waive the Tribe's immunity or consent to the jurisdiction of this Court.

FedSER-9; *see also* FedSER-24 (Declaration of Tribe's Chairwoman stating Tribal Council has not waived immunity or consented to court's jurisdiction).

This Court has rejected the proposition that a tribe's invocation of sovereign immunity for purposes of a motion to dismiss waives that defense to the underlying claims. *Bodi v. Shingle Springs Band of Miwok Indians*, 832 F.3d 1011, 1018 (9th Cir. 2016) (tribe's removal and immediate assertion of immunity does not waive sovereign immunity). As the Court stated in *Bodi*, "[i]t would defy logic to suggest that" by invoking the court's jurisdiction for the limited purpose of resolving the Tribe's immunity defense, "the Tribe clearly manifested its intent to waive the very immunity defense that it asserts." 832 F.3d at 1018. Instead, the scope of a tribal sovereign immunity waiver is restricted by "the nature and bounds of the dispute that the tribe put before the court." *Quinault Indian Nation v. Pearson for Est. of Comenout*, 868 F.3d 1093, 1097-98 (9th Cir. 2017); *see also Grondal*, 37 F.4th at 618. Here, the Shoalwater Bay Tribe intervened solely to raise the Rule 19 argument, and the waiver of its immunity in federal court is limited to that issue.

37

Indeed, were it otherwise, a tribe would have no means of protecting its rights under Rule 19 without waiving the very immunity it sought to protect.

Nor do the cases cited by Maverick support a broader waiver of the Tribe's immunity. *Lapides v. Board of Regents of University Sys. of Georgia* concerned whether a state waives immunity when it removes to federal court state-law claims "in respect to which the State has explicitly waived immunity from state-court proceedings." 535 U.S. 613, 617 (2002). The Court's reasoning turned on the fact that the state "invoke[d] federal jurisdiction, thereby contending that the 'Judicial Power of the United States' extends to the case at hand." *Id.* at 619. In contrast, the Tribe's limited intervention does not seek federal jurisdiction over tribal claims.

*United States v. Oregon* is also distinguishable, as the Tribe in that case had intervened for purposes of fully participating in litigation, and signed onto a consent decree that provided for ongoing federal court jurisdiction. 657 F.2d 1009, 1011, 1016 (9th Cir. 1981). The *Oregon* court found the Tribe waived immunity for a subsequent suit to enforce that decree. *Id.* In any event, this Court has recognized that *Oregon* tests the "outer limits" of the rule against implied waivers, *Pan American Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 420 (9th Cir. 1989), and has distinguished it in later cases. *See Grondal*, 37 F.4th at 618 (in *Oregon*, Tribe clearly consented to federal court jurisdiction over the merits); *Quinault Indian Nation*, 868 F.3d at 1097-98 (same). This Court should reject

Maverick's assertion that the Tribe can be joined to the suit because it waived its sovereign immunity.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be affirmed.

Respectfully submitted,

/s/ *Amber Blaha*
TODD KIM
*Assistant Attorney General*

REBECCA M. ROSS

Of Counsel:                                    AMBER BLAHA
                                              *Attorneys*
JODY H. SCHWARZ                                Environment and Natural Resources Division
*Senior Attorney*                              U.S. Department of Justice
U.S. Department of the Interior                Post Office Box 7415
                                              Washington, D.C. 20044
                                              (202) 598-5568
                                              Amber.blaha@usdoj.gov

September 1, 2023
90-6-16-01180

**Form 8.  Certificate of Compliance for Briefs**

**9th Cir. Case Number(s)**          23-35136

I am the attorney or self-represented party.

**This brief contains 9,189 words,** excluding the items exempted by Fed. R. App.

P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5)

and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P.

29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because
   [ ] it is a joint brief submitted by separately represented parties;
   [ ] a party or parties are filing a single brief in response to multiple briefs; or
   [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**    s/ *Amber Blaha*

**Date**          September 1, 2023

40