NO. 23-35136

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

MAVERICK GAMING LLC,

Appellant,

v.

UNITED STATES OF AMERICA, et al.,

Appellees,

SHOALWATER BAY TRIBE

Intervenor-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
No. 3:22-CV-05325-DGE
The Honorable David G. Estudillo
United States District Court Judge

# STATE DEFENDANTS-APPELLEES' SUPPLEMENTAL EXCERPTS OF RECORD

ROBERT W. FERGUSON
Attorney General of Washington
KRISTIN BENESKI
TERA HEINTZ
WILLIAM MCGINTY
BRIAN ROWE

*Counsel for State Defendants-Appellees*

StateSER-002

# INDEX

| Document | D. Ct. ECF No. | StateSER Pages |
|---|---|---|
| Declaration of Eric Persson in Support of Plaintiff's Motion for Summary Judgment | 76 | 4–6 |
| Declaration of Jonathan Chavez in Support of Plaintiff's Motion for Summary Judgment | 77 | 7–8 |
| Exhibit A to Declaration of Jonathan Chavez in Support of Plaintiff's Motion for Summary Judgment | 77-1 | 9–29 |
| Administrative Record 0000001-21 | 67-1 | 30-50 |
| Motion For Leave to File First Amended Complaint and to Drop the Washington State Defendants | 35 | 51-67 |
| State Defendants' Response to Plaintiff's Motion for Leave to File First Amended Complaint | 42 | 68-93 |
| Shoalwater Bay Tribe's Motion for Limited Intervention | 68 | 94-113 |
| Federal Defendants' Response to Shoalwater Bay Indian Tribe's Motion to Dismiss | 94 | 114-121 |
| U.S. District Court Docket | | 122-141 |

1

THE HONORABLE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MAVERICK GAMING LLC,

        Plaintiff,

v.

UNITED STATES OF AMERICA, et al.,

        Defendants.

No. 22-cv-05325 DGE

**DECLARATION OF ERIC PERSSON IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

    I, Eric Persson, declare under penalty of perjury that the following is true and correct:

    1.    I am the Chief Executive Officer of Maverick Gaming LLC ("Maverick"), the plaintiff in this case.

    2.    Maverick is a Washington limited liability company with a residence at 12530 NE 144th Street, Kirkland, WA 98034.

    3.    Maverick owns and operates 18 cardrooms in Washington. Those cardrooms do not offer casino-style games like roulette, craps, sports betting, and dealer-assisted electronic table games because Washington law does not allow Maverick to offer those types of games.

    4.    Maverick seeks to expand its gaming offerings in Washington to include additional games such as roulette, craps, sports betting, and dealer-assisted electronic table games.

1

DECLARATION OF ERIC PERSSON
(3:22-cv-05325 DGE)

State SER-004

5.    Maverick has identified economically viable opportunities to expand its Washington operations if doing so were legally permitted.

6.    Maverick is able, ready, and prepared to expand its gaming operations in Washington to include roulette, craps, sports betting, dealer-assisted electronic table games, and other casino-style games.  Maverick would offer these games if Washington law allowed it to do so.

7.    Maverick has access to the capital needed to finance casino-style gaming operations in Washington and to purchase the necessary facilities and equipment.

8.    Maverick has also conducted market analysis, identified suitable locations, contracted with vendors and business partners who could service the Washington market, and studied Washington's gaming laws.

9.    Maverick has the necessary background and experience in casino-style gaming activities to offer such activities in the Washington market.

10.    Maverick competes with other casinos, including tribal casinos in Washington, to offer the best and most attractive selection of games allowed by law.

11.    Because Indian tribes in Washington can offer casino-style gaming—including roulette, craps, sports betting, and dealer-assisted electronic table games, among other games—but Maverick cannot legally do so, Maverick incurs increased expenses and lost revenue.

12.    Specifically, because tribal casinos in Washington can offer a broader selection of games to their patrons, Maverick incurs increased advertising expense, increased promotional expenses, and increased entertainment expenses.  Maverick also loses revenue from customers who would frequent Maverick's cardrooms if they offered casino-style gaming activities, but who instead frequent tribal casinos.  Maverick also suffers a loss of goodwill by failing to offer the

2

DECLARATION OF ERIC PERSSON
(3:22-cv-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA 98020
(425) 967-3550

State SER-005

same set of products as its tribal competitors.

13.     Maverick has commissioned third parties to conduct studies assessing its commercial casino revenue opportunities in Washington, and these studies concluded that Maverick could earn significant revenue in the Washington market were it not for Washington's prohibition of most forms of casino-style gaming.

14.     Tribal casinos' gaming activities in Washington alter competitive conditions in a way that is unfavorable to Maverick.  Maverick would be able to increase the revenue from its cardrooms in Washington if it could offer casino-style games, or if tribal gaming facilities could *not* offer casino-style games, because either outcome would allow Maverick to compete more effectively with tribal gaming facilities.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 12, 2022.

Eric Persson

DECLARATION OF ERIC PERSSON
(3:22-cv-05325 DGE)

3

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA 98020
(425) 967-3550
State SER-006

THE HONORABLE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MAVERICK GAMING LLC,

    Plaintiff,

v.

UNITED STATES OF AMERICA, et al.,

    Defendants.

No. 22-cv-05325 DGE

**DECLARATION OF JONATHAN CHAVEZ IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

I, Jonathan Chavez, declare under penalty of perjury that the following is true and correct:

1.    I currently serve as Co-Founder and Chief Analytics Officer at SocialSphere, Inc., a market research firm based out of Cambridge, MA, and as a Senior Associate Research Analyst at Spectrum Gaming Group.

2.    I make this Declaration in support of Plaintiffs' Motion for Summary Judgment.

3.    Attached as **Exhibit A** to this Declaration is a true and correct copy of my August 3, 2022 expert report titled, "Impacts of Online Sports Wagering on Maverick Gaming Facilities in the State of Washington."

1

DECLARATION OF JONATHAN CHAVEZ
(3:22-cv-05325 DGE)

Brennan Legal, PLLC
P.O. Box 1384
144 Railroad Ave. S., Ste. 308
Edmonds, WA 98020
(425) 967-3550

State SER-007

1    I declare under penalty of perjury that the foregoing is true and correct.

2    Executed on August 12, 2022.

3

4                                                              Jonathan Chavez

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

2

DECLARATION OF JONATHAN CHAVEZ
(3:22-cv-05325 DGE)

State SER-008

# EXHIBIT A

# EXPERT REPORT OF JONATHAN CHAVEZ:

## Impacts of Online Sports Wagering on Maverick Gaming Facilities in the State of Washington

Prepared for Maverick Gaming
August 3, 2022

StateSER-010

# Contents

**Qualifications** ........................................................................ **3**

**Methodology** ......................................................................... **5**

    **Survey Design Considerations** ................................................ **5**

    **Survey Details and Implementation** ...................................... **5**

**Survey Results and Conclusion** ............................................. **7**

**Appendix I: Resume of Jonathan Chavez** ............................. **12**

**Appendix II: Material Used** .................................................. **14**

**Appendix III: Full Survey** .................................................... **15**

**Appendix IV: Summary of Statistical Assessment** ................ **20**

StateSER-011

# 1. Qualifications

My name is Jonathan Chavez, and I currently serve as Co-Founder and Chief Analytics Officer at SocialSphere, Inc., a market research firm based out of Cambridge, MA, and as a Senior Associate Research Analyst at Spectrum Gaming Group.

I hold an A.B. in Social Studies with Honors in Field from Harvard College, where my coursework focused on statistics, econometrics, and public opinion research. I did extensive coursework in public opinion methodologies, and my thesis focused on understanding trends in public opinion research. Since 2005, I have worked professionally in market research, focusing on lotteries and gaming. In that time, I have conducted research on behalf of 10 state lotteries, and have conducted market assessments for casinos, thoroughbred racing entities, including the National Thoroughbred Racing Association, and jurisdictions implementing sports betting, including New Hampshire and Washington, DC.

During that time, I have led more than 100 qualitative and quantitative studies into player habits and attitudes within the lottery and gaming industry. Those studies have been used for various purposes, including assessing the viability of new games and products, making sales projections, and segmenting players based on attitudes towards gaming and other behavioral factors. A key component of my work within the lottery and gaming industry has been developing methodologies for assessing reported gambling spending levels in market research and correlating those figures to real-world spending data.

In addition to my work in the lottery and gaming industries, I am the primary market researcher for clients across various sectors. I have served as the lead market researcher for the Marine Corps Recruiting Command since 2011, working with their advertising agency to assess trends in recruiting. On behalf of Marine Corps Recruiting Command and J. Walter Thompson, in 2012, I led the research effort awarded the Gold Jay Chait Award for Strategic Excellence in Research Innovation.

I have implemented qualitative research designs, including in-depth interviews, ethnographies, online tracking studies, focus groups, and town halls. I have implemented quantitative studies that have included in-person interviewing, telephone-based interviewing, and online surveys using proprietary databases, opt-in panels, and address-based sampling methodologies. When designing the methodology for a project, my primary goal is to implement a research design that minimizes the potential sources for error, assures the broadest possible coverage of respondents, is replicable, and meets industry standards for transparency of methods. In addition, much of my work uses surveys and other market research to make business and financial projections on behalf of clients. I have worked in the business planning process with dozens of clients.

My resume is attached hereto as Appendix I. Because my work is usually done on behalf of clients who use my data and opinions for proprietary market purposes, I have not publicly authored articles in the last ten years. In 2021, I served as an expert witness in Case No. 1:21-cv-02192-DLF in the United States Circuit Court for the District of Columbia. In that case, I served as an expert witness on issues similar to the current case being litigated.

The list of materials that I have considered is contained in Appendix II.

Maverick Gaming ("Client") retained me to assess the current impact of the implementation of sports betting in the state of Washington on its properties in the state. This assessment involved two parts – an assessment of the current shift in behavior that has occurred among players and the potential shifts in behavior that would occur if Maverick Gaming were able to offer sports betting and Class III gaming at its properties.

My compensation for this report and the fielding of the survey underlying the report is a fixed fee of $28,000.

StateSER-012

My compensation does not depend on my conclusions or the outcome of this case.

In addition to this compensation, my agreement with Maverick Gaming stipulates that I will be paid for the following, if necessary:

i.      In-person presentation ($2,500 per travel/on-site day, plus travel expenses billed at cost),

ii.     Preparation for deposition ($350 per hour),

iii.    Deposition ($350 per hour),

iv.     General consultation ($350 per hour), and

v.      Serving as an expert witness at trial (in-court hourly rate of $450 per hour, plus travel expenses billed at cost).

I understand that I am obligated to provide my independent expert assessment even though I am being engaged by counsel in this matter.

My analysis and conclusions are based on the information available to me at present. I reserve the right to update my opinions and analysis as appropriate if additional information or materials become available or should other experts present opinions or testimony. I also reserve the right to create and use demonstrative exhibits to assist me should I ever be required to present testimony. All of my opinions and conclusions throughout this report are rendered to a reasonable degree of professional certainty.

StateSER-013

## 2. Methodology

### Survey Design Considerations

I, Jonathan Chavez, was responsible for designing a survey of Maverick Gaming customers that occurred between July 22 and August 2, 2022. The objective of this study was to assess the current and potential future impacts of current gaming laws in Washington on Maverick Gaming's properties, with a specific focus on sports betting[1] and Class III gaming. In designing this research, the following major factors were the primary consideration in research design, implementation, and analysis:

- Defining the survey audience and ensuring that the audience surveyed accurately represented Maverick Gaming's player base;

- Designing the survey to clearly test whether or not the implementation of sports betting has impacted Maverick Gaming;

- Using methodologies that are repeatable and acceptable, conforming to relevant industry standards, particularly those defined by the American Association of Public Opinion Researchers;

- Reducing sources of sampling;

- Reducing sources of question bias by designing neutral, non-biased questions and;

- Analyzing the data using industry-standard statistical procedures.

### Survey Details and Implementation

I was contracted to design the sampling procedure and questions for an in-person-to-online and online study of Maverick Gaming's customers in the state of Washington. My independent recommendation for conducting this study is that the methodology chosen provided the best possible coverage of Maverick Gaming's player base. There are a few rationales for that assessment. I have participated regularly in sports betting, poker, and other forms of casino-based gaming recreationally for over 15 years. My specific knowledge of these fields was part of my methodological recommendations.

Maverick Gaming has 16 properties in the state of Washington that were included as part of this survey. Additionally, Maverick Gaming has a loyalty club, which includes a database of players' names, loyalty numbers, and the telephone numbers, addresses, and email addresses for a subset of players. In conversations with executives at Maverick Gaming, including Aaron Huang, Vice President of Operations for Maverick Gaming's properties in Washington, I determined that the loyalty club's database encompassed the vast majority of players and that tracked play from players in the database accounted for over 85% of Maverick Gaming's revenue in Washington. As such, I determined that using the database as a primary method of sampling Maverick Gaming's players would methodologically comport with industry best practices.

In addition to using the database to field the study, I determined that supplementing the survey sample with in-person respondents would yield a potentially more robust and statistically valid sample. Working with Mr. Huang and Mark Juliano, Maverick Gaming's Vice President of Marketing, I created unique survey links for each property, and Maverick Gaming then embedded those links into Q.R. codes that were posted at multiple locations in each property, with a focus on high traffic areas such as entrances, cashier cages, and restrooms. The signs invited individuals to complete a short survey, and upon completion, they could enter their name, Play Maverick Loyalty number, and either their phone number or email address to receive $20 in match play and a chance to win $200. I included the incentivization component to ensure that individuals completing the survey provided personal information about themselves. I wanted to be sure that I had a mechanism to control for players only responding to the

---

[1] For this report, "sports betting" should be understood to refer to non-parimutuel sports betting.

StateSER-014

survey once. A primary concern for non-probability-based sampling is ensuring that individuals are not completing the survey multiple times and biasing the results.

In the survey, we included basic demographic questions about age and gender. I asked Mr. Huang to review the responses to those questions to ensure that the data matched customer data. He assured me that the sample drawn was reflective of the age, gender and gameplay patterns of players at Maverick Gaming properties in Washington.

I left the survey open for more than a week to ensure that the base of players surveyed was not biased by the time of day, day of the week, or other factors. Additionally, I wanted to design a sampling procedure that would be least intrusive to players. Players could complete the survey at their convenience, and they did not have to interrupt their gambling.

The survey's questions were designed to ensure that the sample was unbiased and reflective of the overall player base to understand the likely adoption of any expansion in sports betting and shifts in behavior. My previous experience with asking players about shifts in spending has shown that asking about percentages of a shift in spending is more accurate than asking about shifts in the dollar amount spent.

Most players do not accurately assess their current gambling spending in raw dollar terms. They will often, for a variety of reasons, underestimate their spending and losses. However, players are much better at understanding the share of wallets they devote to each type of gambling spending. In constructing sales models in the gambling space, I have found that asking about the percentage of spending yields more accurate results than asking about the amount spent.

The survey was completed online and has been included as Appendix III to this report. The survey was programmed on the Confirmit survey platform and took respondents an average of 6.5 minutes to complete. The survey data was then downloaded to SPSS for analysis.

It is always the case in surveys like this that ambiguity can exist for individual responses. Respondents can incorrectly understand a question at times. To analyze the survey results, I have, in each instance, interpreted ambiguous data in the most conservative way possible, meaning that if there is ambiguity regarding what a response might mean, I have assumed that the response will default to no change in spending or behavior shifts that would impact Maverick Gaming. In other words, any potential revenue loss extrapolations from the survey results rely only on clear, unambiguous responses that indicate that respondents:

- Have already shifted their spending away from Maverick Gaming properties;

- Would potentially increase their spending or shift their spending back to Maverick Gaming properties if Maverick Gaming offered sports betting and/or Class III gaming, and;

- The shift in spending comes from the proportion of money that players previously spent at Maverick Gaming properties (in the case of current shifts away from Maverick Gaming) or from money not currently being spent at Maverick Gaming properties in the case of potential shifts towards Maverick Gaming properties).

The methodology used is meant to understand whether or not a loss of revenue is likely, and what degree of statistical certainty there is that revenue loss would occur.

StateSER-015

# 3. Survey Results and Conclusion

A total of 627 Maverick Gaming players completed the survey. The first step in my analysis was assessing the samples to ensure that they reflected the generally known composition of the players at Maverick Gaming Properties. The sample for the survey had the following demographics:

**Gender**

      Male..........................................................................68%
      Female ....................................................................32%

**Age**

      Under 35 .................................................................32%
      35-55 .......................................................................39%
      Over 55 ...................................................................29%

**Maverick Gaming Properties Visit and Betting Frequency[2]**

      Multiple times per week...............................................39%
      About once a week....................................................18%
      Less than once a week, but
      At least a few times per month...................................16%
      Less than once a month.............................................13%
      Don't know .................................................................3%

When conducting a mixed methodology survey (sampling through a player database and sampling via in-person recruitment), it is important to assess each methodology separately to ensure that the samples reflect similar populations. The database sample and the in-person sample were demographically similar. On each question throughout the survey, we observed *no statistically significant differences* between the 289 surveys completed via in-property Q.R. codes and 338 completed via the Play Maverick loyalty club. As such, I feel comfortable reporting the samples as a single dataset.

Next, my analysis focused on assessing the current impact that the implementation of sports betting has had on Maverick Gaming and the potential impact of allowing Maverick Gaming to accept sports wagers and Class III gaming wagers. To conduct this analysis, I have used a statistical analysis that focuses on the set of survey responses that unambiguously indicate the behavior that would be indicative of each of the categories below. The survey was constructed to quantify the percent of Maverick Gaming's customers who fall into each of these three categories.

- **Current Sports Bettors, Lost Maverick Gaming Revenue:** Players who have already engaged in legal sports betting at a tribal property in Washington **and** who would have placed a sports bet at a Maverick property instead of at a tribal property if sports betting were available at a Maverick property **and** who say that at least some of the money they have spent on sports betting in Washington at a tribal property comes from the money they previous bet at Maverick properties.

- **Would Bet on Sports at a Maverick Gaming Property, New Revenue**: Players who indicate that they would definitely bet on sports if available at Maverick Gaming **and** who indicate that at least

---

[2] Respondents were first shown a list of Maverick Gaming properties and asked, "In the last year, which of the following Washington casinos or cardrooms have you visited and placed a bet or gambled, if any?" For the list of casinos that they selected, they were then asked, "How often do you visit any of the following and gamble?"

StateSER-016

some of that spending would come from money they are not currently spending at Maverick properties.

- **Would Bet on Class III Gaming at a Maverick Gaming Property, New Revenue**: Players who indicate that they definitely would bet on Class III gaming if available at Maverick Gaming **and** who indicate that at least some of that spending would come from money they are not currently spending at Maverick properties.

To construct the category of **Current Sports Bettors, Lost Maverick Gaming Revenue**, the following responses were used. Respondents had to fit all of the following criteria in order to qualify:

| Question | Answer Choices | Qualifying Answer(s) |
|---|---|---|
| Sports betting was legalized in Washington in 2020, and in 2021 the first retail sports book opened in Washington. While betting on thoroughbred racing was legal prior to this, betting on sports like football, baseball, and basketball became legal in Washington in September 2021. All the currently legal sports books in Washington are located at tribal casinos. Since the first legal sports books opened in Washington in September of 2021, have you placed at least one sports bet in-person at a sportsbook located in the state of Washington? | Yes .................................................................... 1<br>No....................................................................... 2<br>Don't know ....................................................... 3 | Yes |
| Thinking about all the times you have placed a sports bet at a casino in Washington, has there ever been an occasion where you specifically went to a casino to place a sports bet – and would not have visited that casino if sports betting was not available? | Yes .................................................................... 1<br>No....................................................................... 2<br>Don't know ....................................................... 3 | Yes |
| Thinking back to the times that you visited a casino in Washington and placed a sports bet, if **[Maverick Gaming property/properties]³** offered sports betting, would you have ever visited one of these properties to place that sports bet **instead** of the casino where you placed the bet, or would you still have always gone to the casino where you placed that sports bet? | I definitely would have visited **[Maverick Gaming property/properties]** to place a sports bet instead of the casino where I bet ........................................ 1<br>I probably would have visited **[Maverick Gaming property/properties]** to place a sports bet instead of the casino where I bet ........................................ 2<br>I probably would not have visited **[Maverick Gaming property/properties]** to place a sports bet instead of the casino where I bet ........................................ 3<br>I definitely would not have visited **[Maverick Gaming property/properties]** to place a sports bet instead of the casino where I bet ........................................ 4<br>Don't know ....................................................... 5 | I definitely would have visited **[Maverick Gaming property/properties]** to place a sports bet instead of the casino where I bet |
| When you think about the money you have used to place a sports bet at a casino in Washington, how much of that money came from the following sources? Please make sure your responses add up to 100% | Money you are currently wagering at **[Maverick Gaming property/properties]**........ 1<br>Money you are currently wagering elsewhere, such as at other casinos or playing the Lottery. ................................................................ 2<br>Money you are currently betting on sports elsewhere, including at other casinos, in other states, at offshore casinos or through some other means.............. 3 | Money you are currently wagering at **[Maverick Gaming property/properties]** is greater than 0% |

---

³ In a previous question, respondents were asked, "In the last year, which of the following Washington casinos or cardrooms have you visited and placed a bet or gambled, if any? Please select all that apply." – and shown a list of Maverick Gaming properties. In this question, the properties that they had visited and bet or gambled at were shown.

| | Money you are not currently spending on wagering...................................................... 4 | |

When analyzing survey responses, I found that 63 customers out of the 627 surveyed fell into the category of **Current Sports Bettors, Lost Maverick Gaming Revenue**, or 10% of Maverick's customers.

To arrive at that, I found that:

- 23% of Maverick Gaming's players indicate that yes, they have placed at least one sports bet in-person at a sports book in Washington since September 2021;

**And**

- 61% of those players, or 14% of Maverick Gaming's total player base, indicate that they specifically went to a casino to place a sports bet that they would not have visited otherwise;

**And**

- 76% of those players, or 11% of Maverick Gaming's total player base, indicate that they definitely would have visited a Maverick Gaming property instead of the location they visited when they previously participated in sports betting if sports betting were available at Maverick Gaming properties;

**And**

- 90% of those players, or 10% of Maverick Gaming's total player base, indicate that at least some of the money they spent on sports wagering came from the money they were previously spending wagering at Maverick Gaming properties.

As I will show later in the report, 10% represents a statistically meaningful percentage of Maverick Gaming's players. It is large enough to allow the null hypothesis of no lost revenue to be rejected.

To construct the category of **Would Bet on Sports at a Maverick Gaming Property, New Revenue**: the following responses were used. Respondents had to fit all of the following criteria in order to qualify:

| Question | Answer Choices | Qualifying Answer(s) |
|---|---|---|
| Earlier in this survey, you indicated that you have gambled at **[Maverick Gaming property/properties]**. If any or all of those properties made sports betting available on-site - assuming that they offered bets similar to other sports books currently operating in Washington - would you wager on sports betting at any of these properties or not? | Yes, I definitely would ........................................ 1<br>I probably would ................................................. 2<br>I probably would not ............................................ 3<br>I definitely would not ........................................... 4<br>Don't know ......................................................... 5 | Yes, I definitely would |
| If you did place a sports bet at **[PROPERTIES FROM Q2]**, how much of the money would come from each of the following sources of spending? Please make sure your responses add up to 100%. | Money you are currently wagering at **[Maverick Gaming property/properties]**....... 1<br>Money you are currently wagering elsewhere, such as at other casinos or playing the Lottery. ..................................................................... 2<br>Money you are currently betting on sports elsewhere, including at other casinos, in other states, at offshore casinos or through some other means ............. 3<br>Money you are not currently spending on wagering...................................................... 4 | Money you are currently wagering at **[Maverick Gaming property/properties]** is less than 100% |

9

StateSER-018

When analyzing survey responses, I found that 172 customers out of the 627 surveyed fell into the category of **Would Bet on Sports at a Maverick Gaming Property, New Revenue,** or 28% of Maverick's customers.

To arrive at that, I found that:

- 33% of Maverick Gaming's total player base indicates that they definitely would wager on sports betting at Maverick Gaming property if sports betting were available;

**And**

- 82% of those players, or 28% of Maverick Gaming's total player base, indicate that at least some of the money they spent on sports wagering would come from money they were not previously spending wagering at Maverick Gaming properties.

As I will show later in the report, 28% represents a statistically meaningful percentage of Maverick Gaming's players. It is large enough to allow the null hypothesis of no lost revenue to be rejected.

To construct the category of **Would Bet on Class III Gaming at a Maverick Gaming Property, New Revenue**: the following responses were used. Respondents had to fit all of the following criteria in order to qualify:

| Question | Answer Choices | Qualifying Answer(s) |
|---|---|---|
| Earlier in this survey, you indicated that you have gambled at **[Maverick Gaming property/properties]**. If any or all of those properties let you bet on casino games they don't currently offer, like craps and roulette, would you visit any of those properties in order to gamble on those games? | Yes, I definitely would ....................................... 1<br>I probably would .................................................. 2<br>I probably would not ............................................ 3<br>I definitely would not .......................................... 4<br>Don't know ........................................................... 5 | Yes, I definitely would |
| If you did place a wager on games like craps or roulette at **[PROPERTIES FROM Q2]**, how much of the money would come from each of the following sources of spending? Please make sure your responses add up to 100%. | Money you are currently wagering at **[Maverick Gaming property/properties]**....... 1<br>Money you are currently wagering elsewhere, such as at other casinos or playing the Lottery. ........................................................................ 2<br>Money you are currently betting on sports elsewhere,<br>including at other casinos, in other states, at offshore<br>casinos or through some other means ............. 3<br>Money you are not currently spending on wagering ................................................................ 4 | Money you are currently wagering at **[Maverick Gaming property/properties]** is less than 100% |

When analyzing survey responses, I found that 169 customers out of the 627 surveyed fell into the category of **Would Bet on Sports at a Maverick Gaming Property, New Revenue,** or 27% of Maverick's customers.

To arrive at that, I found that:

- 38% of Maverick Gaming's total player base indicates that they definitely would wager on sports betting at Maverick Gaming property if sports betting were available;

**And**

- 71% of those players, or 27% of Maverick Gaming's total player base, indicate that at least some of the money they spent on Class III gaming would come from money they were not previously spending wagering at Maverick Gaming properties.

These responses were chosen as the universe because they represent the smallest possible universe of respondents who could fit into each universe. There is no interpretative ambiguity in their responses. For

10

the purposes of reasonable business planning and making financial projections, a broader universe would be used; however, the purpose of this analysis is to evaluate the null hypothesis,[4] meaning is there any way to interpret the survey results to say that no shift has occurred or would occur.

The results of this analysis showed that the null hypothesis could be rejected: Through any reasonable statistical analysis, the percent of players in each universe of bettors tested who would shift is statistically significant at the 95% confidence interval.

In each universe, the sample is served by a hypergeometric distribution,[5] for which I formed a normal approximation. Using this normal approximation, I calculated both the odds of $x$ or more doing harm (one-tailed), and the odds of $x-hn$ difference or more doing harm (two-tailed)[6], both given baseline $h$. $h$ has been set at 5%, as a reasonable calculation of fielding error. The assumed universe of players is based on discussions with Mr. Huang.

Every universe shows that a statistically significant number of players would follow the patterns described above and either have already shifted spending away from Maverick Gaming's properties or would increase their spending at Maverick Gaming properties if Class III gaming were authorized. Put simply: at the 95% confidence interval, I can say Maverick Gaming has already lost revenue as a result of sports betting being legalized and only giving tribal properties access to it, and Maverick Gaming would gain revenue if it were allowed to have sports betting at their properties or Class III wagering. The survey results tabulated below support these conclusions. Those results are summarized below, and full statistical results are included in **Appendix IV.**

| Category | Percent of Maverick Gaming Customers Who Fall Into Each Category | Sample Size | P Two-Tailed |
|---|---|---|---|
| Current Sports Bettors, Lost Maverick Gaming Revenue | 10% | 627 | 6.38801E-09 |
| Would Bet on Sports at a Maverick Gaming Property, New Revenue | 28% | 627 | 0 |
| Would Bet on Class III Gaming at a Maverick Gaming Property, New Revenue | 27% | 627 | 0 |

Taken as a whole, the results of the survey and an analysis of the data show Maverick Gaming has already lost revenue as a result of not having access to sports betting, and that access to sports betting and Class III gaming would result in incremental gaming revenue for Maverick Gaming.

---

[4] In statistics, the null hypothesis is that chance alone is responsible for the results.

[5] In a hypergeometric distribution, selections are made from two groups without replacing members of the groups. It assists in statistical quality control.

[6] One-tailed significance assumes that all error is one direction away from the mean, above or below. Two-tailed tests variance in both directions from the mean and is the standard used in most statistical tests.

StateSER-020

**Appendix I: Resume of Jonathan Chavez**

**JONATHAN CHAVEZ**
**PROFESSIONAL EXPERIENCE**

**SocialSphere, Inc.**

<u>Co-Founder and Chief Analytics Officer, Cambridge, MA</u>            January 2011 – Present
- Serves as the primary client council for ongoing strategic engagements with C-level contacts at The United States Marine Corps, J. Walter Thompson, The White House Office of Public Engagement, Bridgewater Associates, The Office of the Chairman of Joint Chiefs of Staff, Thomas H. Lee Partners, the Walton Family Foundation, The National Thoroughbred Racing Association, and others.
- Serves as the lead of the firm's lottery and gaming client practice, working with numerous state lotteries and gaming entities to develop customer marketing strategies and economic models.
- Works with these organizations to implement strategies that combine the use of social and digital media, mobile technology, and qualitative and quantitative research. Strategies focus on streamlining internal communications systems and architectures and aiding in external communications planning.
- Leads a team of developers to further improve key technology assets by adapting software designed to improve internal workflows to function as client-facing products. Development focuses on the incorporation of real-time translation, messaging, and monitoring into tracking software and collaboration platforms in desktop and mobile environments.

<u>Co-Founder and Director of Analytics, Cambridge, MA</u>        November 2008 – December 2010
- Conceived of SocialSphere's ORBIT™ Methodology and developed the algorithms that drive SocialSphere's ORBIT™ Report and Platform. Reports and Platform are currently the company's highest grossing business unit as measured by both EBITA and profit margin.
- Built SocialSphere's analytics department from a single member to a team of six. In the processes, implemented workflow plans defined analytic perspective, and managed vendor relationships. Department profitability exceeded board expectations in eight of nine quarters.
- Managed, analyzed, and served as the primary contact on the two largest public opinion research projects conducted by The United States Marine Corps in its recent history. One project focused on understanding how the USMC could communicate more efficiently with the families of Marines, which led to the development of a completely new multi-channel (email, phone, SMS, MMS, Twitter, internal social network, etc.) messaging system that relied on self-correction methods to improve responsiveness metrics. The second project, conducted on behalf of Marine Corps Recruiting Command, focused on the impact of the Millennial generation and their changing demographics on USMC assessments. The research laid the groundwork for all upcoming United States Marine Corps advertising from FY2012-FY2022.

<u>Co-Founder and Senior Analyst, Cambridge, MA</u>            January 2007 – November 2008
- Worked on SocialSphere's political campaign work during the 2008 election cycle. Clients included a Presidential campaign (Primary and General election), three Senate Races, four House of Representative Races, a Governor's Race, and work with Harvard's Institute of Politics. Work included qualitative and quantitative research, media tracking, model design for the selection of exit poll locations during the New Hampshire Primary, and primary and caucus delegate count modeling.
- Served as an on-site advisor for a major Private Equity Firm during the evaluation of the purchase of a state Lottery. Led the team that included firm members and an outside management consultant to build the valuation model used during the purchase process.

**Spectrum Gaming Group**

<u>Senior Associate Research Analyst</u>                        September 2021 – Present

- Retained on a contract basis to provide independent survey research services.

**Prime Group, LLC.**

Analyst, Concord, MA                                                  August 2005 – December 2006
- Conducted all aspects of opinion research and marketing consulting, including: research and questionnaire design, data analysis and presentation, brand and reputation research, focus group preparation, product testing, and extensive experience in secondary research, in particular market trends and news content analysis. Clients served came from both private and public sectors with a focus on marketing and public relations. Worked on cases from research design through client implementation of recommendations.

## EDUCATION

**Harvard University**, Cambridge, MA
Degree: A.B. in Social Studies with Honors in Field, June 2005

Coursework
- Thesis work focused on a quantitative assessment of the role of nationalist sentiments in liberal Western democracies. The research delved into the literary and cultural origins of far-right and far-left wing movements and the building of a model that effectively predicted the impacts of the systematic process whereby civic nationalism bifurcates the role of founding documents into their role as the country's legal framework and their role as the nation's "the creation myth" - which in turn drives the evolution of extreme positions into the mainstream over time. The thesis included significant economic modeling, opinion research methodologies and statistics.

## ADDITIONAL SKILLS AND INTERESTS

Skills
- Computer Skills: Proficient in both Windows and Mac environments with extensive experience in the Microsoft Office Suite, with particular expertise in Excel modeling including use of VBA. Proficient in PASW/SPSS including multivariate regression analysis, factor analysis, CHAID, and Answer Tree. Familiar with CATI programming, Qualtrics programming, MySQL, R, SAS, Stata, multiple social media tracking platforms (Radian6, Buzzlogic, Buzzmetrics, Cymphony, Visible Technologies), web analytics platforms (Google Analytics and Omniture) and syndicated research.

Personal Interests
- Basketball and Golf Statistics: Developed original and advanced metrics for analyzing roster construction in the NBA with a particular focus on using Black-Scholes based analysis to predict the variable value of a dollar over time in the NBA due to salary cap restrictions. Metrics have been discussed with NBA GM's to develop long-term free agent plans. In Golf, developed course and hole databases in order to use past performance to accurately predict upcoming Major Tournaments. The database uses likely scenarios (club use and likely outcomes) to run simulations on future courses to predict players who are likely to succeed on a given course given likely weather conditions. The methodology has significantly outperformed both expert predictions and Las Vegas gambling lines for Major Tournaments since 2007, returning positive ROIs over in 10 out of 12 years.

StateSER-022

**Appendix II: Material Used**

I, Jonathan Chavez, have used, reviewed and/or considered the following resources in overseeing this survey and preparing this report:

- Survey data file, full results

StateSER-023

**Appendix III: Full Survey**

Thank you for taking some time to complete this survey. It should take you no more than 5-to-7 minutes to complete. The survey will be about your current wagering activity. By completing the survey and providing your Maverick Loyalty Number and a phone number or email address, you will receive $20 in Match Play and be entered into a $200 cash drawing. The rules for the drawing can be found here **[link]**.

1.    Do you agree to participate in this survey?

Yes ................................................................................ 1
No........................................................... **[TERMINATE]**

2.    In the last year, which of the following Washington casinos or cardrooms have you visited and placed a bet or gambled, if any? Please select all that apply.

**Caribbean Cardroom ....................................................1**
**Casino Caribbean Kirkland ...........................................2**
**Casino Caribbean Yakima .............................................3**
**Coyote Bob's Roadhouse Casino Kennewick ..........4**
**Crazy Moose Casino Mountlake Terrace ...................5**
**Crazy Moose Casino Pasco ...........................................6**
**Great American Casino Everett ....................................7**
**Great American Casino Lakewood ...............................8**
**Great American Casino Tukwila ...................................9**
**Macau Casino Lakewood ...........................................10**
**Macau Casino Tukwila ................................................11**
**Red Dragon Casino Mountlake Terrace ...................12**
**Roman Casino .............................................................13**
**Royal Casino Everett ..................................................14**
**Silver Dollar Casino Mill Creek .................................15**
**Silver Dollar Casino SeaTac ......................................16**
**Silver Dollar Casino Renton.......................................17**
**Wizards Casino ...........................................................18**
**None of the above .............................. 19 [TERMINATE]**

3.    How often do you visit any of the following casinos **and gamble [PROPERTIES FROM Q2]**?

Multiple times per week....................................................1
About once a week.............................................................2
Less than once a week but at least a
few times per month .........................................................3
About once a month ..........................................................4
Less than once a month.....................................................5
Don't know ........................................................................6

4.    What is your average bet size when you gamble at **[PROPERTIES FROM Q2]?** If you only play poker, please just list the stakes you play for. **Min =0 max = 10,000**

15

StateSER-024

5.  On your visits to **[PROPERTIES FROM Q2]** over the past year, on average, how long do you gamble? **MIN=0 HRS 0 MIN MAX = 24 HRS 59 MIN**

    __hrs

    __min

6.  Sports betting was legalized in Washington in 2020, and in 2021 the first retail sports book opened in Washington.

    While betting on thoroughbred racing was legal prior to this, betting on sports like football, baseball, and basketball became legal in Washington in September 2021.

    All the currently legal sports books in Washington are located at tribal casinos.

    Since the first legal sports books opened in Washington in September of 2021, have you placed at least one sports bet in-person at a sportsbook located in the state of Washington?

    Yes ................................................................................. 1
    No.................................................................................... 2
    Don't know ..................................................................... 3

**[IF NO IN Q6, ASK Q7]**

7.  How interested or uninterested are you in placing an in-person sports bet at a sportsbook located in Washington at some point in the future?

    Very interested .............................................................. 1
    Somewhat interested ...................................................... 2
    Not very interested ........................................................ 3
    Not at all interested ....................................................... 4
    Don't know ..................................................................... 5

**[IF YES IN Q6, ASK Q8]**

8.  Thinking about all the times you have placed a sports bet at a casino in Washington, has there ever been an occasion where you specifically went to a casino to place a sports bet – and would not have visited that casino if sports betting was not available?

    Yes ................................................................................. 1
    No.................................................................................... 2
    Don't know ..................................................................... 3

StateSER-025

**[IF YES IN Q8, ASK Q9]**

9.    Thinking back to the times that you visited a casino in Washington and placed a sports bet, if **[PROPERTIES FROM Q2]** offered sports betting, would you have ever visited one of these properties to place that sports bet **instead** of the casino where you placed the bet, or would you still have always gone to the casino where you placed that sports bet?

I definitely would have visited **[PROPERTIES FROM Q2]**
to place a sports bet instead of the casino where I bet ... 1
I probably would have visited **[PROPERTIES FROM Q2]**
to place a sports bet instead of the casino where I bet ... 2
I probably would not have visited **[PROPERTIES FROM Q2]**
to place a sports bet instead of the casino where I bet ... 3
I definitely would not have visited **[PROPERTIES FROM Q2]**
to place a sports bet instead of the casino where I bet ... 4
Don't know .................................................................... 5

10.    Have you ever visited a casino that is less conveniently located than **[PROPERTIES FROM Q2]** to bet on casino games those properties don't offer, such as craps and roulette?

Yes .............................................................................. 1
No................................................................................ 2
Don't know .................................................................... 3

**[IF YES IN Q6, ASK Q11]**

11.    When you think about the money you have used to place a sports bet at a casino in Washington, how much of that money came from the following sources? Please make sure your responses add up to 100%

Money you are currently wagering at
**[PROPERTIES FROM Q2]** ............................................ 1
Money you are currently wagering elsewhere,
such as at other casinos or playing the Lottery. ............ 2
Money you are currently betting on sports elsewhere,
including at other casinos, in other states, at offshore
casinos or through some other means............................ 3
Money you are not currently spending on wagering ....... 4

17

StateSER-026

12.     Earlier in this survey, you indicated that you have gambled at **[PROPERTIES FROM Q2]**. If any or all of those properties made sports betting available on-site - assuming that they offered bets similar to other sports books currently operating in Washington -  would you wager on sports betting at any of these properties or not?

Yes, I definitely would ...................................................... 1
I probably would ............................................................... 2
I probably would not ......................................................... 3
I definitely would not......................................................... 4
Don't know ....................................................................... 5

13.     Earlier in this survey, you indicated that you have gambled at **[PROPERTIES FROM Q2]**. If any or all of those properties let you bet on casino games they don't currently offer, like craps and roulette, would you visit any of those properties in order to gamble on those games?

Yes, I definitely would ...................................................... 1
I probably would ............................................................... 2
I probably would not ......................................................... 3
I definitely would not......................................................... 4
Don't know ....................................................................... 5

**[IF YES DEFINITELY OR I PROBABLY WOULD IN Q12, ASK Q14 AND Q15]**

14.     If you did visit **[PROPERTIES FROM Q2]** and placed a sports bet, would you:

Visit the property and only place a sports bet – I
would not participate in any other form of
gambling on those trips.................................................... 1
Visit the property and place other wagers....................... 2
Don't know ....................................................................... 3

15.     If you did place a sports bet at **[PROPERTIES FROM Q2]**, how much of the money would come from each of the following sources of spending? Please make sure your responses add up to 100%.

Money you are currently wagering at
**[PROPERTIES FROM Q2]** ............................................. 1
Money you are currently wagering elsewhere,
such as at other casinos or playing the Lottery. ............. 2
Money you are currently betting on sports elsewhere,
including at other casinos, in other states, at offshore
casinos or through some other means............................. 3
Money you are not currently spending on wagering ....... 4

16. If you did place a bet on games like craps or roulette at **[PROPERTIES FROM Q2]**, how much of the money would come from each of the following sources of spending? Please make sure your responses add up to 100%.

Money you are currently wagering at
**[PROPERTIES FROM Q2]** ............................................. 1
Money you are currently wagering elsewhere,
such as at other casinos or playing the Lottery. ............. 2
Money you are currently betting on sports elsewhere,
including at other casinos, in other states, at offshore
casinos or through some other means ........................... 3
Money you are not currently spending on wagering ....... 4

These last questions are for demographic purposes only.

17. What is your age? **MIN=18 MAX =99**

18. What is your gender?
- 

Male.................................................................................. 1
Female .............................................................................. 2

Thank you for participating in this survey. In order to be eligible for the drawing of **$200 and to receive $20 in Match Play,** please enter your:

Maverick Loyalty Number_____
Phone Number_____
Email Address_____

To receive the $20 in Match Play and to be entered into the $200 drawing, you must enter both your Maverick Loyalty Number and Email Address. If you do not have a Maverick Loyalty number, please enter your phone number and or/email address, and you will be sent a link to sign up for a Maverick Loyalty account in order to claim your $20 in Match Play.

StateSER-028

### Appendix IV: Summary of Statistical Assessment

| Location | Category | Sample Size | Assumed Universe | Fielding Error Assumption | Mean Hyper Geometric Approximation | Var. HyperGeometric Approx. | Test Z | P_One-Tailed | P_Two-Tailed |
|---|---|---|---|---|---|---|---|---|---|
| Current Sports Bettors, Lost Maverick Gaming Revenue | 63 | 627 | 270,000 | 0.05 | 31.35 | 29.71344847 | 5.80626944 | 3.19401E-09 | 6.38801E-09 |
| Would Bet on Sports at a Maverick Gaming Property, New Revenue | 172 | 627 | 270,000 | 0.05 | 31.35 | 29.71344847 | 25.80258442 | 0 | 0 |
| Would Bet on Class III Gaming at a Maverick Gaming Property, New Revenue | 168 | 627 | 270,000 | 0.05 | 31.35 | 29.71344847 | 25.06877469 | 0 | 0 |

StateSER-029



# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, DC 20240

JAN 1 4 2021

The Honorable Philip Harju
Chairman, Cowlitz Indian Tribe
P.O. Box 2547
Longview, Washington 98632

Dear Chairman Harju:

On November 22, 2020, the Cowlitz Indian Tribe (Tribe) and the State of Washington submitted the Second Amendment to the Tribal-State Compact for Class III Gaming between the Cowlitz Indian Tribe and the State of Washington (Compact), providing for the regulation of class III gaming activities by the Tribe.

We completed our review of the Compact and conclude that it does not violate the Indian Gaming Regulatory Act (IGRA), any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands, or the trust obligations of the United States to Indians. 25 U.S.C. § 2710(d)(8)(B). Therefore, pursuant to my delegated authority and Section 11 of IGRA, I have approved the Compact. 25 U.S.C. § 2710(d)(8)(A). The Compact takes effect when the notice of this approval is published in the *Federal Register*. 25 U.S.C. § 2710(d)(3)(B).

A similar letter is being sent to the Honorable Jay Inslee, Governor of Washington.

Sincerely,

Tara Sweeney
Assistant Secretary – Indian Affairs

Enclosure

SECOND AMENDMENT TO THE TRIBAL-STATE COMPACT
FOR CLASS III GAMING BETWEEN
THE COWLITZ INDIAN TRIBE AND THE STATE OF WASIDNGTON

WHEREAS, on June 16, 2014, the State of Washington ("State") and the Cowlitz Indian Tribe ("Tribe") executed a Class III Gaming Compact ("Original Compact"), pursuant to the Indian Gaming Regulatory Act of 1988 ("IGRA"), P.L. 100-407, codified at 25 U.S.C. Section 2701 et, seq. and 18 U.S.C. Sections 1166-1668; and

WHEREAS, on April 8, 2015, the State and the Tribe executed the First Amendment to the Tribal-State Compact for Class III Gaming between the Cowlitz Indian Tribe and the State of Washington ("First Amendment"); and

WHEREAS,     Original Compact and the First Amendment have both been approved by the Secretary of the Interior and are in full force and effect (hereinafter referred to collectively as the "Compact"); and

WHEREAS, the State and Tribe subsequently conducted additional negotiations in accordance with the provisions of IGRA and the terms of the Compact; and

WHEREAS, the State and Tribe have agreed to certain changes to the Compact, including certain provisions found within Appendix X2, that the parties believe will benefit the Tribe and the State, will be fair and protect the members of the Tribe and the other citizens of the State, and are consistent with the objectives of IGRA.

NOW, THEREFORE, the Compact shall be, and is hereby amended as follows:

1. Amend Compact Section III (G)(2) to read as follows:
   (2)  A committee consisting of two representatives of the Tribe; a representative of Clark County; a representative of Clark County Fire & Rescue; and a representative of the State Gaming Agency shall be established. The makeup of this committee may be altered by mutual agreement of the Tribe and State Gaming Agency, if necessary.

2. Amend Compact Section III(H) to read as follows:
   H.     Forms of Payment
          All payment for wagers made in authorized forms of Class III Gaming conducted by the Tribe on its Tribal Lands, including the purchase of chips for use in wagering, shall be made by cash, cash equivalent, credit card or personal check.

1

StateSER-031

Maverick_v_DOI_0000002

Cash payments for wagers made through near-field communication (NFC)

devices. EMV or smn1t cards, or similar secure payment technologies may be utilized upon agreement between the Tribe and the State Gaming Agency and

documented in a Memorandum of Understanding. The Tribal Gaming Operation shall prohibit patrons from using public assistance electronic benefits cards for the purpose of participating in any of the activities authorized by this Compact.

3. Amend Compact Section X(A)(2) to read as follows:

    (2)    Jurisdictional Forms

    Following investigation and arrest, formal charges will be brought in the appropriate venue. Criminal prosecution of non-Indians will be through the proper State or Federal Courts. Criminal prosecution of Indians will be through the Cowlitz Tribal Court, or State or Federal Courts.

4. Amend Compact Section X(B)(2) to read as follows:

    (2)    Tribal Jurisdiction

    Civil disputes arising from the conduct of Gaming under the Gaming Code may be heard in the Cowlitz Tribal Court or appropriate administrative forum as established by the Gaming Code.

5. Amend Compact Section X(D) to read as follows:

    D.    Limited Application of State Law

    For the purposes of 18 U.S.C. § 1166 (d) and enforcing the provisions of this Compact, and of protecting the public health, safety and welfare, and to the extent not inconsistent with other provisions of this Compact, RCW 9.46.0245;
9.46.0269; 9.46.071; 9.46.072; 9.46.075; 9.46.140; 9.46.155; 9.46.160; 9.46.170; 9.46.180; 9.46.185; 9.46.190; 9.46.195; 9.46.196; 9.46.1961; 9.46.1962; 9.46.198; 9.46.210 (3) & (4); 9.46.212; 9.46.215; 9.46.217; 9.46.220; 9.46.221; 9.46.222; 9.46.225; 9.46.228; 9.46.231; 9.46.235; 9.46.240; 9.46.360; 9.46.36001;
9.46.410; 10.97.030; 67.16; 67.70; 74.08.580; 9A.56; 9A.60; 9A.82;
9A.83.020; 9.35.010; 9.35.020; as now or hereinafter amended, shall be applicable and incorporated herein as part of this Compact and the Tribe consents to this transfer of jurisdiction to the State with respect to Gaming on Tribal Lands.

6. The Compact is hereby amended to add Appendix E - Limitations on Wagers, Credit, Facilities; Increasing Problem Gaming Resources and Contributions, in the form

attached hereto, in its entirety.

StateSER-032

Maverick_v_DOI_0000003

7. The Compact is hereby amended to add Appendix W - Rules Governing Wide Area Progressives, in the form attached hereto, in its entirety.

IN WITNESS WHEREOF, the Cowlitz Indian Tribe and the State of Washington

have executed this Second Amendment to the Compact.

COWLITZ INDIAN TRIBE

BY: _____
PHILIP HARJU
Chairman

DATED: 10/25/20

STATE OF WASHINGTON

BY: _____
JAY INSLEE
Governor

DATED: 11/17/20

By _____
Tara Sweeney
Assistant Secretary- Indian Affairs

Date: 1/14/21

3

StateSER-033

Maverick_v_DOI_0000004

**COWLITZ INDIAN TRIBE**
and the
**STATE OF WASHINGTON**
**CLASS III GAMING COMPACT**

**APPENDIX E**
**LIMITATIONS ON WAGERS, CREDIT, FACILITIES;**
**INCREASING PROBLEM GAMING RESOURCES AND CONTRIBUTIONS**

## Table of Contents

1. Introduction ........................................................................................ 1
2. High Limit Room ................................................................................ 1
3. High Limit Pits .................................................................................. 1
4. Extension of Credit ............................................................................ 2
5. Wagering Limits – Player Terminals ................................................. 3
6. Facility Limits – Gaming Stations and Player Terminals ................. 3
7. Contributions. .................................................................................... 5
8. Problem, Pathological, and Responsible Gambling Programs ........... 7
9. Moratorium ........................................................................................ 8

i

StateSER-034

Maverick_v_DOI_0000005

1. Introduction

This Appendix contains the concessions, limitations, and agreement of the Tribe and State with respect to the subject matter addressed herein. However, Compact provisions that are not addressed in this Appendix remain in full force and effect, unless and until they are subsequently amended pursuant to the processes set forth in the Compact.

All terms not defined herein shall have the same definitions as in the Tribe's Compact and its amendments and appendices.

2. High Limit Room

2.1. "High Limit Room" means a clearly identified area of the Gaming Facility separated by a permanent, physical barrier or a separate room in the Gaming Facility with an entrance no more than twelve (12) feet high and sixteen (16) feet wide with wager limits higher than those provided in Section III(K) of the Compact, subject to the requirements and limitations of this Appendix. "Permanent, physical barrier" includes a partial wall, fence or similar separation. Stanchions or similar movble barriers are not considered a permanent, physical barrier.

2.2. The Gaming Operation may offer wager limits in the High Limit Room up to one thousand dollars ($1,000) and may offer wager limits at "Restricted Access Tables" in the High Limit Room not to exceed five thousand dollars ($5,000).

Restricted Access Tables shall be limited to customers pre-screened by the Gaming Operation. The pre-screening qualifications and screening process, and how often the Gaming Operation will review qualifications after the initial pre-screen, will be set forth in a Memorandum of Understanding agreed upon by the State Gaming Agency and the Tribe.

2.3. No customers may participate in Gaming at Gaming Stations in the High Limit Room if they are known to the Gaming Operation to have a history of problem gambling, barred for self-exclusion, or identified as demonstrating significant characteristics associated with problem gambling.

2.4. The Gaming Operation must follow the requirements of Title 31 U.S.C.

3. High Limit Pits

3.1. "High Limit Pit" means a designated Pit in the Gaming Facility separated by a movable or non-movable barrier, such as stanchions or partial wall, and is

Cowlitz Indian Tribe
Class III Gaming Compact
Appendix E- Limitations on Wagers, Credit, Facilities; Increasing Problem Gaming Resources and Contributions

1

StateSER-035

Maverick_v_DOI_0000006

prominently labeled with signage designating the area as a High Limit Pit with wager limits higher than those provided in Section III(K) of the Compact, subject to the requirements and limitations of this Appendix.

3.2. The Gaming Operation may offer Gaming Station wager limits not to exceed one thousand dollars ($1,000) in the Gaming Facility's High Limit Pits.

3.3. No customers may participate in Gaming in a High Limit Pit if they are known to the Gaming Operation to have a history of problem gambling, barred for self-exclusion, or identified as demonstrating significant characteristics associated with problem gambling.

3.4. The Gaming Operation must follow the requirements of Title 31 (money laundering).

4. Extension of Credit

4.1. Notwithstanding Section III (H) of the Compact, the Gaming Operation may extend credit to qualified patrons who meet the criteria set forth in a Memorandum of Understanding ("MOU"), as may be amended from time to time, between the State Gaming Agency and the Tribe. At a minimum, the MOU criteria must specify:

4.1.1. All patrons requesting credit are required to submit a complete tribal credit application and be provided problem gambling information;

4.1.2. The minimum and maximum amount any patron can request;

4.1.3. The process for review and verification of the credit application. The review process shall include, at a minimum, proof of identity, obtaining a credit report, gaming report unless this is the first casino credit for the patron (from Central Credit Inc. or similar provider that provides information on the patron's prior casino credit), and bank verification of accounts;

4.1.4. When a patron's credit application will be reviewed after initial application and preapproval;

Cowlitz Indian Tribe
Class III Gaming Compact
Appendix. E. Limitations on Wagers, Credit, Facilities; Increasing Problem Gaming Resources and Contributions

2

StateSER-036

Maverick_v_DOI_0000007

4.1.5.  How each patron's credit application information is kept confidential and secure from unauthorized access, including who is authorized to access the credit application information;

4.1.6.  Information about patrons requesting credit are not shared or used for marketing or promotional purposes with entities outside the Gaming Operation;

4.1.7.  How the preapproval amount is determined to be consistent with their credit report the pre approval amount is documented, and the patron is notified;

4.1.8.  The pre approval is granted by an employee that is independent of the patron; and

4.1.9.  The repayment and debt collection requirements and notification includes:

    4.1.9.1.  Repayment timeframes not to exceed ninety (90) days from the day of extension of credit.

    4.1.9.2.  Any late payment fees, penalties, interest charges, or similar fees or charges, settlement process and reports, and prohibition of further credit extension with an unpaid balance.

    4.1.9.3.  Following applicable federal debt collection laws.

4.2.  The Tribal Gaming Agency shall forward to the State Gaming Agency a copy of approved procedures, and any changes to those procedures for review and concurrence prior to implementation per Section IX of the Compact.

5.e  Wagering Limits -- Player Terminals.

Section 3.2.1(b) of Appendix X2 is amended as to read as follows:e

All Scratch Tickets in a particular Game Set shall be of the same purchase price, which shall not exceed $5.00, with the exception that up to 15 percent of the Player Terminals in operation may have purchase prices of up to $30.00 per Ticket. A single Ticket may offer an opportunity to enter another Game Set;

6.e  Facility Limits -- Gaming Stations and Player Terminals.

Cowlitz Indian Tribe
Class III Gaming Compact
Appendix E- Limitations on Wagers, Credit, Facilities; Increasing Problem Gaming Resources and Contributions

3

StateSER-037

Maverick_v_DOI_0000008

6.1.    Section III (J) of the Compact is amended to read as follows:

The maximum number of Class III Gaming Stations within the Gaming Facilities combined shall not exceed a total of one hundred twenty-five (125) Gaming Stations.

(1) At the option of the Tribe, one (1) additional Gaming Station ("the nonprofit

station") for every twenty-five (25) Gaming Stations in operation may be allowed in a Gaming Facility. The proceeds from all nonprofit stations shall be dedicated to support nonprofit and charitable organizations and their activities located within Clark County or the State of Washington. For purposes of determining "proceeds" from a nonprofit station only, proceeds shall mean the pro rata net profit of the nonprofit station. The Tribal Gaming Code shall require regulations to be adopted concerning the types of bona fide nonprofit and charitable organizations or types of projects of such organizations that shall be supported by a nonprofit station.

(2) The Tribe is required to obtain transfers of a Class III

Gaming Station authorization from another tribe which has entered into a compact with the State for the use of Class III Gaming Stations, as defined in this Compact for any Class III Gaming Stations, except for nonprofit stations, beyond sixty (60) in total for all gaming facilities. The transfer of Class III        Gaming Station authorization from another tribe shall be effectuated through the use of a "Class III Gaming Station Transfer Agreement" substantially in the form appended hereto as Appendix D of this Compact.

(3) No more than thirty (30) of the maximum number of one-hundred twenty five

(125) Gaming Stations authorized above may be operated with wager limits greater than $500 in the High Limit Room and High Limit Pit area combined; however, the combined number of Gaming Stations with wager limits greater than $500 in operation in the High Limit Room and High Limit Pits cannot exceed 25% of the total Gaming Stations in operation within a Gaming Facility.

6.2.    Section 12.2.1 of Appendix X2 is amended to read as follows:

Subject to Section 12.4 below, the Tribe may operate no more than 3,000 Player Terminals per facility ("Facility Limit"), and no more than a combined

Cowlitz Indian Tribe
Class m Gaming Compact
Appendix E- Limitations on Wagers, Credit, Facilities; Increasing Problem Gaming Resources and Contributions

4

StateSER-038

Maverick_v_DOI_0000009

Player Terminal total ("Total Operating Ceiling") of 3,000 Player Terminals in its Gaming Facilities. It is also agreed that upon the effective date of this Appendix, the Total Operating Ceiling for the Muckleshoot Tribe, Tulalip Tribes, and Puyallup Tribe shall be 3,500 for each of those three tribes until the third anniversary of the effective date of this Appendix, at which time it shall increase to 4,000 for each of those same three tribes. It is further agreed that the Tribe shall not be entitled as a matter of right to an increase in its Total Operating Ceiling based on the fact that the Muckleshoot Tribe, the Tulalip Tribes, and the Puyallup Tribe are entitled under this Appendix to operate up to the separate, higher Total Operating Ceiling(s) established specifically for them in this Appendix.

Except in Sections 14.2 and 14.4, as used in section 14, the term "net win" shall mean the total amount of Tribal Lottery System revenue after prizes or winnings have been paid out (i.e., the difference between the amount wagered or played

7. Contributions, and the amounts paid to winners),

In order to provide for impacts to local community services that may arise as a result of the Gaming authorized under the Compact and this Appendix E, the Tribe agrees to begin accruing funds at the new rates upon the effective date of this Appendix and make payments as specified below.

7.1. Section 14.6.1 of Appendix X2, is amended to read as follows:

In Sections 14.2 and 14.4, the term shall mean the total amount of Class III gaming revenue after prizes or "net win" winnings have been paid out (ie., the difference between the amount wagered or played and the amounts paid to winners)

7.2. Section 14.4 of Appendix X2, as previously amended, is amended to read as follows:

Problem Gambling. Two tenths of one percent (0.2%) of the net win derived from all Class III gaming activities, determined on an annual basis, shall be dedicated to problem gambling education, awareness, and treatment for all citizens in the State of Washington. Contributions shall be made to governmental or charitable and/or non-profit organizations,

Cowlitz Indian Tribe
Class m Gaming Compact
Appendix B- Limitations on Wagers, Credit, Facilities; Increasing Problem Gaming Resources and Contributions

5

which may include the Health Care Authority's Division of Behavioral Health and Recovery of successor agency, with expertise in providing counseling intervention, treatment, research, or other services of problem gambling. The 0.2% percent of net win shall be paid annually, commencing with the conclusion of the Tribe's first full fiscal year following the date upon which this Appendix becomes effective, and shall be paid annually within one    year of the close of the Tribe's fiscal year.

7.3.    Section 14.2 of Appendix X2 is amended to read as follows:

Charitable Donations. One-half of one percent (0.5%) of the Net Win derived from all Class III Gaming activities, determined on an annual basis using the Tribe's fiscal year, shall be donated to non-tribal bonafide non-profit and charitable organization registered with the Secretary of State to provide services in the State of Washington.

7.4.    Compact Section III G (1) and Appendix X2 Section 14.1 is amended to read as follows: Section III G (1) The Tribe recognizes that activities directly and indirectly associated with the operation of its Gaming Facilities may impact local law enforcement agencies, emergency services, and other services and place an

increased burden on them. The Tribe hereby agrees to establish an Impact Mitigation Fund for purposes of providing assistance to impacted non-tribal law enforcement, emergency services, and/or service agencies, including those agencies responsible for traffic and transportation, and water and sanitary sewer. These funds will be distributed based upon evidence of such impacts as demonstrated by each jurisdiction or as otherwise agreed pursuant to Section G (5) below. The Tribe agrees to withhold and disburse up to three fourths of one percent (0.75%) of the Net Win from the Gaming Stations, except as otherwise excluded under the provisions of this Compact, for the Impact Mitigation Fund. Except as provided in Appendix X2, Section 14.1, no Tribal Lottery System gaming device revenues, proceeds from a nonprofit station as authorized under Section III. J, Class II gaming revenues, or non-gaming revenues, such as, but not limited to, food, beverage, wholesale or retail sales, (0.75%) shall be included, with the the three fourths of this section.

Cowlitz Indian Tribe
Class III Gaming Compact
Appendix E - Limitations on Wagers, Credit, Facilities; Increasing Problem Gaming Resources and Contributions

6

StateSER-040

Maverick_v_DOI_0000011

14.1 Impact Costs. Up to three fourths of one percent (0.75%) of the netwin derived from Tribal Lottery System activities, determined on an annual basis using the Tribe's fiscal year, shall be added to any amounts payable and distributable from other Class III activities under the Compact in order to meet community impacts, to the extent such Compact amounts are insufficient to meet actual and demonstrated impact costs.

8.e    Problem, Pathological, and Responsible Gambling Programse

8.1.    The Tribe recognizes that Gaming activities can lead to compulsive behavior thate

has the same negative consequences as other behavioral addictions. The Tribe agrees to establish an education and awareness program for casino patrons. The program may be independent or developed as an adjunct to the program with which the State currently works. On an annual basis, the Tribe will provide information about its education, awareness, and treatment program services in its community impacts and contributions report under Section 14.7 of Appendix X2 which includes how funding was spent and how the community benefited from the program. The Tribe and State Gaming Agency agree to work together in good faith to share information related to problem gambling best practices and to meet promptly on the request of either party to discuss issues related to problem gambling.

8.2.    The Tribe and State Gaming Agency recognize the importance of responsible gambling as part of the shared responsibility to protect the health, welfare, and safety of the citizens of the Tribe and of the State. As part of that responsibility, the Tribe agrees to:

8.2.1.    Create and maintain a responsible gambling policy that addresses at least the following areas:

8.2.1.1.    Annual training and education for all Gaming Employees, with ae separate training for management, to cover such topics as how to identify problem gamblers, how to provide assistance when asked, underage prevention, and unattended children;

8.2.1.2.    Self-exclusion, to cover such topics as the receipt of marketing materials and access into the facility; self-restriction, to cover such topics as setting limits on spending, time, and check cashing limits(which could be done through the player tracking systems); and

Cowlitz Indian Tribe

Class III Gaming Compact
Appendix E - Limitations on Wagers, Credit, Facilities; Increasing Problem Gaming Resources and Contributions

7

StateSER-041

Maverick_v_DOI_0000012

8.2.2.  Resources, to include such topics as posting hot line numbers, signage, educational brochures and materials on how to seek treatment.

8.2.3.  Within 5 years, or as soon as feasible thereafter, include in the Tribe's education and awareness program an interactive responsible gambling application or program for players; such gambling application or program may be separate and need not be integrated into the authorized Class III Gaming Activities and other Gaming Activities.

9.e  Moratorium

The Tribe agrees to seek no additional amendments to this Appendix with respect to thee subject matter of increased wager limits and per facility limits prior to May 1, 2022, or six (6) months after the Problem Gambling Legislative Task Force Final Report is finalized, whichever is later (the "Moratorium"), except in the following circumstances:

9.1.  Federal or State law, whether by statute rule, regulation or other action that impacts Washington State, is amended to increase any limitations above those included in this Appendix;

9.2.  A State or Federal Court within the State of Washington or a Federal Court interpreting the laws of the State of Washington issues a final and unappealable decision permitting increased limitations above those included in this Appendix; or

9.3.  Any other tribe located in the State of Washington obtains through a Compact amendment, approved by the Secretary of the Interior, materially different concessions, limitations, and agreements than those outlined in this Appendix. The State and Tribe agree to incorporate into this Compact all provisions of the other tribe's amendment and such agreement will be documented in a Memorandum of Incorporation.

StateSER-042

Maverick_v_DOI_0000013

**COWLITZ INDIAN TRIBE**
**and the**
**STATE OF WASHINGTON**
**CLASS III GAMING COMPACT**

**APPENDIX W**
**Rules Governing Wide Area Progressives**

## Table of Contents

STATEMENT OF CONDITIONS AND LIMITATIONS ................................................ 1
1.. INTRODUCTION ...................................................................................................... 1
1.1 Definitions.................................................................................................................. 1
1.2 Intent ......................................................................................................................... 2
2.. REQUIREMENTS...................................................................................................... 2
2.1 General Requirements................................................................................................ 2
2.2 Submission Process.................................................................................................... 3
3.. TESTING AND APPROVAL ..................................................................................... 4
3.1. Independent Gaming Test Laboratory ....................................................................... 4
3.2 General Testing Requirements.................................................................................... 5
3.3 Materials Provided to Gaming Test Laboratory ........................................................ 5
3.4 Approval by the State Gaming Agency ...................................................................... 5
3.5 Installation.................................................................................................................. 6
3.6 WAP Operator Certification ...................................................................................... 6
3.7 Payment of Fees ......................................................................................................... 6
4.. INSPECTIONS........................................................................................................... 6
5.. PARTICIPATION IN ANOTHER APPROVED WAP .............................................. 7
5.1 Requirements for participation in another approved WAP: ....................................... 7

StateSER-043

Maverick_v_DOI_0000014

# CLASS III GAMING COMPACT
## APPENDIX W
### Rules Governing Wide Area Progressives

## STATEMENT OF CONDITIONS AND LIMITATIONSe

The Cowlitz Indian Tribe (Tribe) and the State of Washington (State) believe that conducting Class III gaming under the terms, limitations, and conditions set forth below will benefit the Tribe and the State, will be fair and protect the members of the Tribe and the other citizens of the State, and is consistent with the objectives of the federal Indian Gaming Regulatory Act. The parties have agreed upon conditions of the terms provisions, and limitations contained in this Appendix W.

This Appendix contains interdependent conditions and consequences that must be accepted as a whole in order to operate or participate in a Wide Area Progressive (WAP). As a result, authorization to operate or participate in a WAP requires the Tribe to operate and participate in accordance with all of the requirements of both this Appendix and the subsequent memorandum of understanding agreed to under subsection 2.2.3.

## 1 INTRODUCTION

### 1.1 Definitions

Any capitalized term used but not defined herein shall have the same meaning as in the Compact.

"Component" means hardware, software, and any integral parts or combination thereof necessary to operate the WAP.

"Fair" means the odds of winning prizes being equal to other devices connected to the same WAP within accepted statistical industry standards as verified by an approved Gaming Test Laboratory.

"Participant Tribe" means a tribal government within the State that has been accepted to join in a specific approved WAP.

"Progressive Prize" means a prize that increases by a predetermined amount based on play on a Class III Tribal Lottery System (TLS).

"Wide Area Progressive" or "WAP" means a jackpot sharing system between multiple participating jurisdictions and/or governments within and outside the State.

Cowlitz Indian Tribe
Class III Gaming Compact
Appendix W - Rules Governing Wide Area Progressives

StateSER-044

Maverick_v_DOI_0000015

"WAP Controller" means a component at each participating jurisdiction's and/or government's gaming facility that accumulates Progressive Prizes and provides Progressive Prize information to display for players.

"WAP Operator" means the licensed manufacturer or gaming service supplier that maintains the WAP central system which communicates with individual WAP Controllers.

Intent

1.2 The intent of the parties is to allow the Tribe to use a WAP where players are entered into a pool for a Progressive Prize without the insertion of additional consideration.

1.2.1   The WAP must be Fair, secure, and audiable.

1.2.2   The WAP does not constitute a mechanical gambling or lottery device activated

by the insertion of a coin or by the insertion of any object purchased by any person taking a chance by gambling in respect to the device.

1.2.3   The WAP does not constitute an electronic or mechanical device or video terminal which allows for individual play against such device or terminal.

## 2.    REQUIREMENTS

General Requirements

2.1 The basic requirements for a WAP authorized under Section IV-Class III Gaming Activities of the Compact are as follows:

2.1.1   Any WAP Controller utilized by the Tribe may operate only in conjunction with the TLS and may not offer a game where the player may play against the device.

2.1.2   The restrictions on the use and operation of the TLS as governed by Appendix X and Appendix X2, including prohibiting individual play against such devices or terminals, are not changed by this Appendix.

2.1.3   The WAP will be Fair for players in the State.

2.1.4   The rules of play will be posted for the customer.

2.1.5   The WAP will conform with 25 U.S.C. § 2710 (d)(1)(A), (B), and (C).

2.1.6   The WAP will allow the State Gaming Agency to remotely view the Tribe's reports and activity in real time as specifically provided for in a full submission.

2.1.7   The Tribe will make available for review agreements and contracts regarding WAP participation in accordance with Compact Section X, B Access to Records.

Cowlitz Indian Tribe                     2
Class III Gaming Compact
Appendix W - Rules Governing Wide Area Progressives

StateSER-045

Maverick_v_DOI_0000016

2.1.8 Employees and/or representatives of a WAP Operator must meet the applicable licensing and certification requirements in accordance with Compact Section V Licensing and Registration Requirements and VI Tribal Licensing and State Registration.

2.1.9 Each specific type of WAP approved will conform to the standards documented in a Memorandum of Understanding after a full submission has been approved, and the Tribe shall not begin operation of said WAP until the testing and certificatione requirements referred to in Section 3 of this Appendix are met.

2.1.10 The Tribe will notify the State Gaming Agency of its participationdn a specific type of WAP and will follow the requirements in an approved Memorandum of Understanding for the specific type of WAP in order to participate in that WAP.

2.2 Submission Processe

2.2.1 Each full submission made must meet the requirements contained in the Compact, Appendix X, Appendix X2, and this Appendix, and shall set the technical standards and Internal Controls for the operation of that type of WAP. Except for the TLS as governed by Appendix X or X2, the Tribe and the State Gaming Agency shall enter into a separate Memorandum of Understanding for each specific type of WAP the Tribe wishes to operate.

2.2.2 A "full submission," as that term is used in this Appendix, shall include a detailed description of technical standards and other information that includes at least the following:

2.2.2.1. How the system operates with the TLS, including connections to the system and other jurisdictions, probability, and summary of game rules which must be posted for the customer in any format;

2.2.2.2. WAP illustrations, schematics, block diagrams, circuit analyses, program object and source codes, and hexadecimal dumps which means the compiled computer program represented in base 16 format;

2.2.2.3. Technical and operation manuals including operation, interface,e Progressive Prize verification, and random number generator standards;

2.2.2.4. System hardware specifications including all key Components including the WAP Controller;

2.2.2.5. Base software which means the software platform upon which games are loaded;

2.2.2.6. Game software for one or more games, including game set size ande point of overlap;

2.2.2.7. System security including encryption, firewalls, key controls, and surveillance;

Cowlitz Indiun Tribe         3
Class III Gaming Compuct
Appendix W - Rules Governing Wide Area Progressives

StateSER-046

Maverick_v_DOI_0000017

2.2.2.8. Odds for winning the Progressive Prize, the base Progressive Prize amount, the reset Progressive Prize amount, the incremental increases of the Progressive Prize, and any secondary pool increment(s);

2.2.2.9. Accounting system requirements and reports which must include at least a progressive balancing report and report of unusual events such as critical memory clears, changes to Progressive Prizes, offline equipment, multiple site prizes, and related reports;

2.2.2.10. Reports which must include at least a progressive summary, aggregate, and payoff and any adjustments made by the WAP Operator on Progressive Prize pools;

2.2.2.11. Procedures for handling simultaneous Progressive Prize winners in multiple locations or jurisdictions;

2.2.2.12. Procedures to make changes or adjustments to or be removed from the WAP, including notice requirements to the Participant Tribes and players;

2.2.2.13. Procedures for accepting additional Participant Tribes or participating jurisdictions and/or governments into the WAP;

2.2.2.14. Procedures to handle system malfunctions and reporting those malfunctions to participating jurisdictions and/or governments;

2.2.2.15. Player dispute procedures;

2.2.2.16. Procedures, including a time frame, for Gaming Operations staff or WAP Operator to provide notice to the Tribal Gaming Agency and State Gaming Agency of WAP non-compliance;

2.2.2.17. Capability and process to allow the State Gaming Agency to remotely view the Tribe's WAP to review reports and activity real time; and

2.2.2.18. Any agreement, written specifications, or limitations required of a WAP Operator by any other state or tribal government and affecting a WAP.

2.2.3 The Tribe may present to the State Gaming Agency, at any time, a WAP full submission it believes satisfies the requirements of the Compact and this Appendix. Within ninety (90) days of the Tribe's providing a complete, full submission for its proposed WAP to the State Gaming Agency, the Tribe and the State Gaming Agency will execute a Memorandum of Understanding as required by Section 2.1.9.

## 3.c TESTING AND APPROVAL

3.1 Independent Gaming Test Laboratory

3.1.1 Designation. The Tribe shall select one or more gaming test laboratories (hereinafter "Gaming Test Laboratory") to perform the testing required in this Appendix. The selection of a Gaming Test Laboratory will be done according to Appendix X2, Section 10.1.

Cowlitz Indian Tribe 4
Class III Gaming Compact
Appendix W - Rules Governing Wide Area Progressives

StateSER-047

Maverick_v_DOI_0000018

3.1.2   Gaming Test Laboratory Duty of Loyalty. The Tribe shall inform the Gaming Test Laboratory, in writing, that irrespective of the source of payment of its fees, the Gaming Test Laboratory's duty of loyalty and reporting requirements rune equally to the State Gaming Agency and the Tribe.

3.2     General Testing Requirements

The general purpose of testing the WAP and related Components is to determine the compliance of the WAP with the Memorandum of Understanding agreed to by the Tribe and the State Gaming Agency. Prior to operation of the WAP, the WAP and related Components shall be tested by a licensed Gaming Test Laboratory, to verify:

3.2.1   Compliance with the applicable requirements of the Compact, Appendix X, Appendix X2, and this Appendix; and

3.2.2   The WAP is Fair for both the players and the participating gaming facilities; and

3.2.3   Compliance with the Memorandum of Understanding and currently accepted gaming test industry standards with respect to multi-jurisdictional WAPs.

3.3     Materials Provided to Gaming Test Laboratorye

3.3.1   The Tribe shall provide or require that the WAP Operator provide to the Gaming Test Laboratory a copy of the executed Memorandum of Understanding, and any other information requested by the Gaming Test Laboratory. The Tribe shall make all such materials available to the State Gaming Agency upon request;

3.3.2   If requested by the Gaming Test Laboratory, the Tribe shall require the WAP Operator to transport not more than two (2) working models of the WAP associated player terminals, and any required system elements to a location designated by the Gaming Test Laboratory for testing, examination or analysis. Neither the State nor the Gaming Test Laboratory shall be liable for any costs associated with the transportation, testing, examination, or analysis, including any damage to the Components of the WAP. If requested by the Gaming Test Laboratory, the Tribe shall require the WAP Operator to provide specialized equipment or the services of an independent technical expert to assist with the testing, examination and analysis. The Gaming Test Laboratory will notify the State Gaming Agency of the request and need for the request;

3.4

Approval by the State Gaming Agency

Upon receiving the certification, technical standards tested, and results of testing from the Gaming Test Laboratory, the State Gaming Agency shall either approve or disapprove the WAP or Component thereof, based on the criteria contained in this Appendix and the Memorandum of Understanding. The Tribe or WAP Operator may request a temporary suspension of the State Gaming Agency's review of the WAP or Component for a mutually agreed upon time period through a written request to the State Gaming Agency Director.

Cowlitz Indian Tribe                                    5
Class III Gaming Compact
Appendix W - Rules Governing Wide Area Progressives

StateSER-048

Maverick_v_DOI_0000019

During the State Gaming Agency approval process, the Gaming Test Laboratory will meet with the State Gaming Agency and respective Tribal Gaming Agency to inform regulatory staff of the certification process and technical standards tested and provide training so that these personnel have an understanding of the WAP, can create a regulatory program, and can better respond to questions and complaints.

### 3.5 Installation

3.5.1 No WAP may be offered for play unless:

3.5.1.1 Such WAP is approved as provided in this Appendix; and

3.5.1.2 The WAP prototype thereof has been tested and certified by the Gaming Test Laboratory as meeting the requirements and e Memorandum of Understanding specified by this Appendix.

3.5.2 The State Gaming Agency and Tribal Gaming Agency will meet to confer on WAP initial implementation and Internal Controls changes to prepare for WAP operation. Initial Internal Controls and any subsequent changes are to be completed in conformance with Compact Section XI Standards of Operation.

### 3.6 WAP Operator Certification

Before any Component of a WAP may be placed into operation, the Tribe shall first have obtained a written certification from the WAP Operator that, upon installation, each such Component:

3.6.1 Conforms to the specifications of the WAP as certified by the Gaming Test Laboratory; and

3.6.2 Operates and plays in accordance with the applicable requirements of the Compact, Appendix X, Appendix X2, this Appendix, and the Memorandum of Understanding

### 3.7 Payment of Fees

3.7.1 The Gaming Test Laboratory shall not accept a WAP submission from a WAP Operator without first receiving an executed Memorandum of Understanding from the Tribe. All Gaming Test Laboratory fees related to a WAP submission shall be the responsibility of the WAP Operator.

3.7.2 All State Gaming Agency testing fees related to a WAP submission shall be the responsibility of the WAP Operator.

### 4. INSPECTIONSe

4.1 The Tribe shall allow the State Gaming Agency to inspect any Components of a WAP for

the purposes of confirming that such Component is operating in accordance with the requirements of the Compact, Appendix X, Appendix X2, this Appendix, and the

Cowlitz Indian Tribe        6
Class III Gaming Compact
Appendix W - Rules Governing Wide Area Progressives

StateSER-049

Maverick_v_DOI_0000020

Memorandum of Understanding and that such Component is identical to that tested by a Gaming Test Laboratory. Inspections shall be pursuant to the Compact.

4.2 The WAP Operator shall allow the Tribal Gaming Agency and State Gaming Agency to inspect any Components of a WAP for the purposes of confirming that such Component is operating in accordance with the requirements of the Compact, Appendix X, Appendix X2, this Appendix, and the Memorandum of Understanding and that such Component is identical to that tested by a Gaming Test Laboratory.

4.3 When the Tribal Gaming Agency or State Gaming Agency determine there is a failure to comply with the Memorandum of Understanding, either will immediately suspend a WAP's operation.

4.4 Reinstatement of a WAP's operation shall occur once the Tribal Gaming Agency and State Gaming Agency agree that a suspended WAP complies with the Memorandum of Understanding as determined by follow-up testing by the Gaming Test Laboratory.

4.5 If after an investigation the Tribal Gaming Agency or State Gaming Agency believe the WAP is not operating in a Fair manner, either may request a mathematical review by an independent third party. The WAP Operator will pay the cost of this review.

5. PARTICIPATION IN ANOTHER APPROVED WAP

The Tribe may participate in more than one approved WAP. When the Tribe elects to participate in a WAP that has already been approved by the State Gaming Agency, Sections 1-4 of this Appendix do not apply except as required by Section 5.1.3 below.

5.1 Requirements for participation in another approved WAP:

5.1.1. When participating in a WAP that has already been approved by the State Gaming Agency, the Tribe must follow the requirements in the Memorandum of Understanding related to that WAP.

5.1.2. The Tribe will notify the State Gaming Agency of its participation in or withdrawal from another WAP and will make any and all copies of its participation agreements available for review.

5.1.3. When the Tribe participates in an already approved WAP, the Tribe will follow the requirements listed in Sections 1, 2.1, 3.5, 3.6, 4, and 5 of this Appendix.

Cowlitz Indian Tribe 7
Class III Gaming Compact
Appendix W -Rules Governing Wide Area Progressives

StateSER-050

Maverick_v_DOI_0000021

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MAVERICK GAMING LLC,

12530 NE 144th Street,
Kirkland, WA 98034

        Plaintiff,

   v.

THE UNITED STATES OF AMERICA,

555 4th Street, NW, Washington, DC 20001,

UNITED STATES DEPARTMENT OF THE
INTERIOR,

1849 C Street, NW, Washington, DC 20240,

DEB HAALAND, in her official capacity as
Secretary of the Interior,

1849 C Street, NW, Washington, DC 20240,

BRYAN NEWLAND, in his official capacity
as Assistant Secretary – Indian Affairs,

1849 C Street, NW, Washington, DC 20240,

JAY INSLEE, in his official capacity as the
Governor of Washington,

Office of the Governor, P.O. Box 40002,
Olympia, WA 98504,

ROBERT FERGUSON, in his official capacity
as the Attorney General of Washington,

1125 Washington Street, SE, P.O. Box 40100,
Olympia, WA 98504,

BUD SIZEMORE, in his official capacity as
Chair of the Washington State Gambling
Commission,

P.O. Box 42400, Olympia, WA 98504,

Civil Action No. 1:22-cv-00068-FYP

StateSER-051

JULIA PATTERSON, in her official capacity
as Vice-Chair of the Washington State
Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

ALICIA LEVY, in her official capacity as
Commissioner of the Washington State
Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

KRISTINE REEVES, in her official capacity
as Commissioner of the Washington State
Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

SARAH LAWSON, in her official capacity as
Commissioner of the Washington State
Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

STEVE CONWAY, in his official capacity as
ex officio member of the Washington State
Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

JEFF HOLY, in his official capacity as ex
officio member of the Washington State
Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

SHELLEY KLOBA, in her official capacity as
ex officio member of the Washington State
Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

BRANDON VICK, in his official capacity as
ex officio member of the Washington State
Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

StateSER-052

| TINA GRIFFIN, in her official capacity as Interim Director of the Washington State Gambling Commission,<br><br>P.O. Box 42400, Olympia, WA 98504,<br><br>           Defendants. |
| --- |

## **MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**
## <u>**AND TO DROP THE WASHINGTON STATE DEFENDANTS**</u>

Plaintiff Maverick Gaming LLC ("Maverick"), by and through its undersigned counsel, hereby respectfully moves, pursuant to Rules 15(a)(2) and 21 of the Federal Rules of Civil Procedure, for leave to file its First Amended Complaint and to drop the Washington State defendants from this action. The points of law and authority supporting this motion are set forth in the accompanying memorandum.

Dated: March 10, 2022

Respectfully submitted,

/s/ *Theodore B. Olson*

THEODORE B. OLSON
   D.C. Bar No. 367456
MATTHEW D. MCGILL
   D.C. Bar No. 481430
LOCHLAN F. SHELFER
   D.C. Bar No. 1029799
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Phone: 202.955.8668
Email: tolson@gibsondunn.com

*Counsel for Maverick Gaming LLC*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MAVERICK GAMING LLC,

12530 NE 144th Street,
Kirkland, WA 98034

       Plaintiff,

  v.

THE UNITED STATES OF AMERICA,

555 4th Street, NW, Washington, DC 20001,

UNITED STATES DEPARTMENT OF THE
INTERIOR,

1849 C Street, NW, Washington, DC 20240,

DEB HAALAND, in her official capacity as
Secretary of the Interior,

1849 C Street, NW, Washington, DC 20240,

BRYAN NEWLAND, in his official capacity
as Assistant Secretary – Indian Affairs,

1849 C Street, NW, Washington, DC 20240,

JAY INSLEE, in his official capacity as the
Governor of Washington,

Office of the Governor, P.O. Box 40002,
Olympia, WA 98504,

ROBERT FERGUSON, in his official capacity
as the Attorney General of Washington,

1125 Washington Street, SE, P.O. Box 40100,
Olympia, WA 98504,

BUD SIZEMORE, in his official capacity as
Chair of the Washington State Gambling
Commission,

P.O. Box 42400, Olympia, WA 98504,

Civil Action No. 1:22-cv-00068-FYP

JULIA PATTERSON, in her official capacity as Vice-Chair of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

ALICIA LEVY, in her official capacity as Commissioner of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

KRISTINE REEVES, in her official capacity as Commissioner of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

SARAH LAWSON, in her official capacity as Commissioner of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

STEVE CONWAY, in his official capacity as ex officio member of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

JEFF HOLY, in his official capacity as ex officio member of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

SHELLEY KLOBA, in her official capacity as ex officio member of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

BRANDON VICK, in his official capacity as ex officio member of the Washington State Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

TINA GRIFFIN, in her official capacity as
Interim Director of the Washington State
Gambling Commission,

P.O. Box 42400, Olympia, WA 98504,

                Defendants.

## MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE
## TO FILE FIRST AMENDED COMPLAINT AND TO DROP
## <u>THE WASHINGTON STATE DEFENDANTS</u>

**TABLE OF CONTENTS**

BACKGROUND ...................................................................................................... 1

ARGUMENT .......................................................................................................... 2

    I.     Maverick Is Entitled To Amend Its Complaint As Of Right. ............................... 3

    II.    In The Alternative, This Court Should Grant Maverick Leave To Amend Its Complaint........................................................................................................ 5

    III.   This Court Should Drop The State Defendants From This Action....................... 7

CONCLUSION........................................................................................................ 8

StateSER-057

# TABLE OF AUTHORITIES

**CASES**

*Atchinson v. District of Columbia*,
    73 F.3d 418 (D.C. Cir. 1996) .................................................................................5

*Borda v. Exec. Off. for U.S. Att'y*,
    125 F. Supp. 3d 196 (D.D.C. 2015) ......................................................................3

\**Crane v. Carr*,
    814 F.2d 758 (D.C. Cir. 1987) .............................................................................7

\**Hayes v. Buttigieg*,
    2021 WL 6619326 (D.D.C. May 3, 2021) ............................................................3

*James V. Hurson Assocs., Inc. v. Glickman*,
    229 F.3d 277 (D.C. Cir. 2000) .............................................................................4

*Jenkins v. Kerry*,
    928 F. Supp. 2d 122 (D.D.C. 2013) ......................................................................3

\**Levinson v. Wilmer Cutler Pickering Hale & Dorr LLP*,
    999 F. Supp. 2d 226 (D.D.C. 2013) ......................................................................5

\**Villery v. District of Columbia*,
    277 F.R.D. 218 (D.D.C. 2011) ............................................................................3

**STATUTES**

28 U.S.C.
    § 1404(a) ...............................................................................................................2
    § 1406 ....................................................................................................................2
    § 1631 ....................................................................................................................2

**RULES**

Fed. R. Civ. P. 15(a) ...................................................................................................2

Fed. R. Civ. P. 15(a)(1) ...............................................................................................4

Fed. R. Civ. P. 15(a)(1)(A) .........................................................................................4

\*Fed. R. Civ. P. 15(a)(1)(B) ..............................................................................1, 3, 4, 5

\*Fed. R. Civ. P. 15(a)(2) ..........................................................................................1, 5

\*Fed. R. Civ. P. 21 ...................................................................................................1, 7

StateSER-058

On February 24, 2022, the Washington State defendants ("State Defendants") moved to transfer this case to the Western District of Washington. The State Defendants argue that this Court lacks personal jurisdiction over them and that transferring the case would serve the interests of convenience and justice. *See* Dkt. 30-1. To eliminate any possible concerns, streamline the issues before this Court, and promote judicial efficiency, Plaintiff Maverick Gaming LLC ("Maverick") is amending its complaint to drop the State Defendants and Counts Two and Three. Maverick's First Amended Complaint limits its challenge in this action to Count One of the initial complaint, which requests relief against the federal defendants alone. Because defendants have not yet filed an answer or a Rule 12 motion, Maverick is entitled to amend its complaint as of right. *See* Fed. R. Civ. P. 15(a)(1)(B). But because there is a split of authority in this district on whether a plaintiff may amend his complaint as of right pursuant to Rule 15(a)(1)(B) *before* a defendant files an answer or Rule 12 motion, Maverick therefore moves, in the alternative, for leave to file its First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). Finally, because its First Amended Complaint would eliminate all claims against the State Defendants, Maverick respectfully requests that this Court drop the State Defendants from this action pursuant to Federal Rule of Civil Procedure 21. Maverick has conferred with the defendants pursuant to D.D.C. Local Rule 7(m). The State Defendants oppose this request. The federal defendants take no position.

## BACKGROUND

On January 11, 2022, Maverick filed its initial complaint in this case. The initial complaint brought three counts: Count One alleged that the Secretary of the Interior violated the Administrative Procedure Act ("APA") by approving tribal-state gaming compact amendments that give Indian tribes a monopoly over sports betting because those amendments violate the Indian Gaming Regulatory Act ("IGRA") and related federal statutes, the U.S. Constitution's guarantee

1

of equal protection, and the anticommandeering principle of the Tenth Amendment. Dkt. 1, at 34–35 (Compl. ¶¶ 161–73). Count Two challenged the State Defendants' execution and administration of the tribal-state compacts and compact amendments. *Id.* at 36–38 (Compl. ¶¶ 174–88). Count Three challenged the State Defendants' racially discriminatory enforcement of the State's criminal prohibitions against most forms of class III gaming. *Id.* at 38–40 (Compl. ¶¶ 189–203).

On February 24, 2022, the State Defendants moved to transfer this case to the Western District of Washington. *See* Dkt. 30-1. The State Defendants argue that this Court should transfer the case under 28 U.S.C. §§ 1631 and 1406 on the ground that this Court lacks personal jurisdiction over them. *See* Dkt. 30-1, at 12–20. Alternatively, they argue that this Court should transfer the case pursuant to 28 U.S.C. § 1404(a) on the grounds of convenience and the interest of justice. *See* Dkt. 30-1, at 20–27.

## ARGUMENT

The State Defendants' motion to transfer would require the parties to litigate—and this Court to decide—questions of jurisdiction and venue that are ancillary to the core legal questions in this case. To avoid this unnecessary expenditure of resources and simplify the issues before this Court, Maverick is amending its complaint to drop the State Defendants and to limit its challenge in this action to Count One, which challenges the Secretary of the Interior's approval of tribal-state compact amendments that give Indian tribes a monopoly over sports betting in Washington. *See* Fed. R. Civ. P. 15(a). These changes would moot many of the arguments in the State Defendants' transfer motion, saving the parties and this Court the expense of litigating and deciding that motion.

2

Maverick accordingly is filing its First Amended Complaint and requesting this Court to drop the State Defendants from this action.[1]

## I. Maverick Is Entitled To Amend Its Complaint As Of Right.

Rule 15(a)(1)(B) provides that "[a] party may amend its pleading once as a matter of course within . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier" "if the pleading is one to which a responsive pleading is required." Fed. R. Civ. P. 15(a)(1)(B). Because a defendant is required to file an answer in response to a complaint, Rule 15(a)(1)(B) permits Maverick to amend its original complaint once as a matter of right any time before 21 days after service of an answer or Rule 12 motion. *See Hayes v. Buttigieg*, 2021 WL 6619326, at *1 (D.D.C. May 3, 2021) (alteration in original) (quoting *Villery v. District of Columbia*, 277 F.R.D. 218, 219 (D.D.C. 2011)) (noting that Rule 15(a)(1)(B) gives a plaintiff "an absolute right to amend its complaint . . . at any time from the moment the complaint is filed until [twenty-one] days after the earlier of the filing of a responsive pleading or a motion under Rule 12(b), (e), or (f)").

Because no defendant has filed an answer or a Rule 12 motion, the 21-day clock has not yet started and Maverick is entitled to amend its complaint to drop all claims against the State Defendants as of right.

Maverick notes, however, that some judges in this district have held that Rule 15(a)(1)(B) permits a plaintiff to amend its complaint as a matter of right only *after* an answer or Rule 12 motion has been filed. *See Borda v. Exec. Off. for U.S. Att'y*, 125 F. Supp. 3d 196, 198–99 (D.D.C. 2015) (noting the "split of authority on [this] issue"); *Jenkins v. Kerry*, 928 F. Supp. 2d 122, 136

---

[1] Maverick has attached its First Amendment Complaint as Exhibit 1 to this motion and has attached a redline comparison of the initial complaint and the First Amended Complaint as Exhibit 2.

StateSER-061

(D.D.C. 2013) (holding that a plaintiff was not entitled to amend her complaint as of right under Rule 15(a)(1)(B) before the defendants filed their motion to dismiss).

The authorities recognizing that Rule 15(a)(1)(B) permits a plaintiff to amend his complaint any time before the filing of an answer or Rule 12 motion are correct. A previous version of Rule 15 "guarantee[d] a plaintiff an absolute right to amend its complaint once at any time before the defendant has filed a responsive pleading." *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 282–83 (D.C. Cir. 2000). But this rule had a different effect depending on the means a defendant used to attack the pleading: service of a responsive pleading immediately terminated the right to amend, but service of a *motion* attacking the pleading did not. Fed. R. Civ. P. 15(a)(1) advisory committee's note to 2009 amendment.

To eliminate this differential treatment, Rule 15(a)(1) was amended in 2009 to (1) provide that the right to amend as a matter of course terminates 21 days after the service of a Rule 12 motion, whereas such motions previously did not affect the right; and (2) provide that the right to amend as a matter of course also terminates 21 days after the service of a responsive pleading, whereas service of a responsive pleading previously terminated the right *immediately*. *Id.* The 2009 amendment also extended from 20 to 21 days "the period to amend a pleading to which no responsive pleading is allowed." *Id.*

There is no indication that the 2009 amendment to Rule 15(a)(1) eliminated a plaintiff's traditional right to amend his complaint at any time before the filing of a required responsive pleading. Instead, Rule 15(a)(1), properly construed, sets two different deadlines by which a party may amend a pleading as of right, depending on whether it is one that requires a responsive pleading. If no responsive pleading is required, a party has 21 days after serving his pleading to amend it as of right. Fed. R. Civ. P. 15(a)(1)(A). But if a pleading requires a responsive pleading

4

(as Maverick's complaint does), a party may amend it as of right any time before 21 days after service of a responsive pleading or Rule 12 motion. Fed. R. Civ. P. 15(a)(1)(B). Maverick is thus entitled to amend its complaint as a matter of right and drop the claims against the State Defendants.

## II. In The Alternative, This Court Should Grant Maverick Leave To Amend Its Complaint.

Should the Court determine that Maverick requires leave to amend its complaint, this Court should grant leave. Rule 15(a)(2) instructs that "[t]he court should freely" allow amendment "when justice so requires." In considering whether to grant a motion for leave to amend a complaint, a court considers: "(1) undue delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4) bad faith; and (5) whether the plaintiff has previously amended the complaint." *Levinson v. Wilmer Cutler Pickering Hale & Dorr LLP*, 999 F. Supp. 2d 226, 227 (D.D.C. 2013). "[A] district court should grant leave to amend a complaint" in the absence of any such factors. *Atchinson v. District of Columbia*, 73 F.3d 418, 425 (D.C. Cir. 1996). Because none of these factors are present, and because Maverick's proposed amendments to its complaint would simplify the issues before this Court and resolve many of the concerns in the State Defendants' transfer motion, this Court should grant Maverick leave to amend its complaint.

Maverick has not delayed in moving to amend its complaint, but has promptly done so within the time period for responding to the State Defendants' transfer motion. Nor has Maverick previously amended its complaint. And no party will be prejudiced by Maverick's amended complaint. First, Maverick's amended complaint *removes* all claims against the State Defendants and drops them from the action. Far from prejudicing them, Maverick's amended complaint benefits the State Defendants by voluntarily dismissing them from this litigation. Second, Maverick's amended complaint will not prejudice the federal defendants because they would have

StateSER-063

to answer Maverick's APA claim against them regardless of whether the claims against the State defendants remain in this litigation.

Maverick's proposed amendments also are neither futile nor made in bad faith. On the contrary, Maverick is proposing to drop the two counts against the State Defendants in a good-faith effort to resolve any possible concerns raised by the State Defendants in their transfer motion and to avoid unnecessary litigation. Maverick's First Amended Complaint would no longer challenge the State Defendants' execution or administration of the tribal-state gaming compacts or their enforcement of Washington's criminal prohibition of most forms of class III gaming. Instead, the First Amended Complaint would argue only that the U.S. Secretary of the Interior's approval of tribal-state compact amendments giving Indian tribes a monopoly over sports betting violates federal statutory and constitutional law.

The State Defendants note that Counts Two and Three "likely involve only the State Defendants," and that any necessary witnesses and proof on these claims are likely to be located in Washington State. Dkt. 30-1, at 26. Maverick's First Amended Complaint obviates these concerns by removing those counts and limiting its challenge to the actions of the federal defendants in the District of Columbia.

Additionally, Maverick's removal of the State Defendants from its First Amended Complaint moots their argument that this Court lacks personal jurisdiction over them. *See* Dkt. 30-1, at 12–20. Because Maverick's amended complaint would resolve the State Defendants' concerns and avoid unnecessary litigation over jurisdiction and venue by focusing on the actions committed by federal officials in this district, the Court should grant Maverick leave to amend its complaint.

StateSER-064

## III. This Court Should Drop The State Defendants From This Action.

For the same reasons that this Court should permit Maverick to amend its complaint (if it determines that leave is required), it should also drop the State Defendants from this action. Rule 21 of the Federal Rules of Civil Procedure provides: "On motion or on its own, the court may at any time, on just terms, add or drop a party." Because the only claim remaining in Maverick's First Amended Complaint is its APA challenge to the Secretary of the Interior's approval of Washington's tribal-state sports-betting compact amendments, it would be just to drop the State Defendants from this challenge to federal agency action. *See Crane v. Carr*, 814 F.2d 758, 761 (D.C. Cir. 1987) (opinion of Ruth Bader Ginsburg, J.) (noting that "defendants are appropriately dropped from the party lineup" because the plaintiff "is pursuing no relief against them"). Dropping the State Defendants would not prejudice them. Indeed, they argue that this Court has no personal jurisdiction over them, Dkt. 30-1, at 13–17, so they cannot simultaneously claim that dismissing them from this action would prejudice them. As explained above, the federal defendants would not be prejudiced either because they will have to answer Maverick's APA claim against them whether or not the State Defendants remain in this case.

Therefore, Maverick asks that this Court drop the following defendants from this action:

- Jay Inslee, in his official capacity as the Governor of Washington;

- Robert Ferguson, in his official capacity as the Attorney General of Washington;

- Bud Sizemore, in his official capacity as Chair of the Washington State Gambling Commission;

- Julia Patterson, in her official capacity as Vice-Chair of the Washington State Gambling Commission;

- Alicia Levy, in her official capacity as Commissioner of the Washington State Gambling Commission;

StateSER-065

- Kristine Reeves, in her official capacity as Commissioner of the Washington State Gambling Commission;

- Sarah Lawson, in her official capacity as Commissioner of the Washington State Gambling Commission;

- Steve Conway, in his official capacity as ex officio member of the Washington State Gambling Commission;

- Jeff Holy, in his official capacity as ex officio member of the Washington State Gambling Commission;

- Shelley Kloba, in her official capacity as ex officio member of the Washington State Gambling Commission;

- Brandon Vick, in his official capacity as ex officio member of the Washington State Gambling Commission; and

- Tina Griffin, in her official capacity as Interim Director of the Washington State Gambling Commission.

## CONCLUSION

For these reasons, Maverick respectfully requests that this Court grant it leave to file its

First Amended Complaint and drop the State Defendants from this action.[2]

---

[2] After Maverick filed its complaint on January 11, 2022, it converted from a Nevada limited liability company to a Washington limited liability company. Maverick has also revised the complaint to reflect that change.

StateSER-066

Dated:  March 10, 2022                    Respectfully submitted,


                                          /s/ *Theodore B. Olson*

                                          THEODORE B. OLSON
                                              D.C. Bar No. 367456
                                          MATTHEW D. MCGILL
                                              D.C. Bar No. 481430
                                          LOCHLAN F. SHELFER
                                              D.C. Bar No. 1029799
                                          GIBSON, DUNN & CRUTCHER LLP
                                          1050 Connecticut Avenue, N.W.
                                          Washington, D.C. 20036
                                          Phone:  202.955.8668
                                          Email:  tolson@gibsondunn.com

StateSER-067

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MAVERICK GAMING, LLC,

           Plaintiff,

  v.

UNITED STATES OF AMERICA,
UNITED STATES DEPARTMENT OF
THE INTERIOR, DEB HAALAND,
BRYAN NEWLAND, JAY INSLEE,
ROBERT FERGUSON, BUD
SIZEMORE, JULIA PATTERSON,
ALICIA LEVY, KRISTINE REEVES,
SARAH LAWSON, STEVE CONWAY,
JEFF HOLY, SHELLEY KLOBA,
BRANDON VICK, and TINA GRIFFIN,

           Defendants.

Civil Action NO. 1:22-cv-00068-FYP

## STATE DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO

## FILE FIRST AMENDED COMPLAINT

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-068

**TABLE OF CONTENTS**

I.    INTRODUCTION ...........................................................................................1

II.   LEGAL BACKGROUND AND PROCEDURAL HISTORY .......................2

      A.  IGRA and Washington Law .......................................................2

      B.  This Lawsuit ................................................................................3

III.  LEGAL STANDARD..................................................................................5

IV.   ARGUMENT ...............................................................................................7

      A.  Washington State Is a Required Party under Rule 19(a)............7

      B.  Washington State Cannot Be Joined as a Party.........................10

      C.  This Suit Cannot Proceed in Washington State's Absence......12

V.    CONCLUSION...........................................................................................18

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-069

## TABLE OF AUTHORITIES

## <u>Cases</u>

*Akiachak Native Cmty. v. U.S. Dep't of Interior*,
  584 F. Supp. 2d 1 (D.D.C. 2008) .......................................................................16

*Cerebral Palsy Ass'n of Nassau County, Inc. v. Cochran*,
  No. 20-cv-3718 (EGS), 2021 WL 1037865 (D.D.C. Feb. 10, 2021)...............9, 13

*Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Washington*,
  699 F.2d 1274 (D.C. Cir. 1983) ..........................................................................13

*De Csepel v. Republic of Hungary*,
  27 F.4th 736, 2022 WL 678076 (D.C. Cir. March 8, 2022) ................................13

*Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*,
  932 F.3d 843 (9th Cir. 2019)................................................................................9

*Foman v. Davis*,
  371 U.S. 178 (1962) .............................................................................................6

*Gensetix, Inc. v. Bd. of Regents of Univ. of Tex. Sys.*,
  966 F.3d 1316 (Fed. Cir. 2020) ..........................................................................13

*James Madison Ltd. by Hecht v. Ludwig*,
  82 F.3d 1085 (D.C. Cir. 1996) ..............................................................................6

*Kickapoo Tribe of Indians of Kickapoo Rsrv. in Kansas v. Babbitt*,
  43 F.3d 1491 (D.C. Cir. 1995) ......................................................................passim

*Lewis v. Government of District of Columbia*,
  324 F.R.D. 296 (D.D.C. 2018) ..............................................................................6

*M.K. v. Tenet*,
  216 F.R.D. 133 (D.D.C. 2002) ..............................................................................6

*Micomonaco v. State of Washington*,
  45 F.3d 316 (9th Cir. 1995)................................................................................10

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-070

*Naartex Consulting Corp. v. Watt*,
722 F.2d 779 (D.C. Cir. 1983) .......................................................11, 18

*Pueblo of Sandia v. Babbitt*,
47 F. Supp. 2d 49 (D.D.C. 1999) ....................................................8, 13, 17

*Republic of Philippines v. Pimentel*,
553 U.S. 851 (2008) ...........................................................6, 10, 13, 18

*Seminole Tribe of Florida v. Florida*,
517 U.S. 44 (1996) ................................................................10

*Sierra Club v. Hodel*,
848 F.2d 1068 (10th Cir. 1988), *overruled on other grounds by*
*Vill. of Los Ranchos De Albuquerque v. Marsh*,
956 F.2d 970 (10th Cir. 1992) ......................................................9

*Stand Up for California! v. U.S. Dep't of Interior*,
204 F. Supp. 3d 212 (D.D.C. 2016), *aff'd*, 879 F.3d 1177 (D.C. Cir. 2018)
..........................................................................passim

*United States v. Spokane Tribe of Indians*,
139 F.3d 1297 (9th Cir. 1998) ......................................................2

*West Flagler Assocs. v. Haaland*,
No. 21-cv-2192 (DLF), 2021 WL 5492996 (D.D.C. Nov. 22, 2021) .................14

*Wichita & Affiliated Tribes of Oklahoma v. Hodel*,
788 F.2d 765 (D.C. Cir. 1986) ..........................................6, 8, 11, 13

## Statutes

Indian Gaming Regulatory Act (IGRA),
25 U.S.C. § 2701 *et seq.* ...........................................................2, 7, 8

25 U.S.C. § 2710(d)(3)(A) ...........................................................5

25 U.S.C. § 2710(d)(8)(A)-(B) .......................................................2

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-071

Administrative Procedure Act,
  42 U.S.C. § 1983 ....................................................................................4

Wash. Rev. Code § 9.46.0364...............................................................1, 5, 10, 17

Wash. Rev. Code § 9.46.220...............................................................................5

Wash. Rev. Code § 9.46.222...............................................................................5

Wash. Rev. Code § 9.46.360...............................................................................3

Wash. Rev. Code § 9.46.360(2)...........................................................................5

## Other Authorities

Engrossed Substitute H.B. 2638, 66th Leg. Reg. Sess. (Wash. 2020) ......................3

Session Law available at:
  https://lawfilesext.leg.wa.gov/biennium/2019-20/Pdf/Bills/
  Session%20Laws/House/2638-S.SL.pdf?q=20220322174944..............................3

Wash. State Gambling Comm'n, Gaming Compacts,
  https://www.wsgc.wa.gov/tribal-gaming/gaming-compacts (last visited
  Mar. 22, 2022) ...................................................................................3

## Rules

Fed. R. Civ. P. 4(d)(5)......................................................................................11

Fed. R. Civ. P. 15(a)(2)......................................................................................6

Fed. R. Civ. P. 19 ......................................................................................2, 6, 19

Fed. R. Civ. P. 19(a)...............................................................................7, 8, 10, 11

Fed. R. Civ. P. 19(a)(1)(B)(i)................................................................................7

Fed. R. Civ. P. 19(a)(2).......................................................................................6

Fed. R. Civ. P. 19(b) .................................................................................6, 12, 15, 18

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-072

Fed. R. Civ. P. 19(b)(3)...........................................................................18

## <u>Constitutional Provisions</u>

U.S. Const. amend. X..............................................................................5, 7

U.S. Const. amend. XI ....................................................................2, 7, 10, 11

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

v

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-073

# I.    INTRODUCTION

Maverick Gaming, LLC seeks to litigate issues that are centrally focused on class III gaming within Washington State and the State's negotiation and entry into tribal-state gaming compacts with federally recognized tribes within Washington. Maverick initially filed suit against a dozen Washington public officials, along with several federal defendants, challenging Washington State laws and tribal gaming compacts as violating the Constitution and the Indian Gaming Regulatory Act (IGRA). But when faced with a valid motion to transfer the case to Washington due to Maverick's choice to file suit in a forum lacking personal jurisdiction over the State Defendants, Maverick responded by seeking to drop the State Defendants from this case—albeit while continuing to challenge the legality of Washington State's gaming laws and practices, and its tribal-state gaming compacts. Maverick's proposed amended complaint, for example, continues to allege, among other things, that "Wash. Rev. Code § 9.46.0364 violates IGRA's state-permission requirement" and that Washington's Governor "lacked authority" to enter into the challenged compacts because they allegedly violate IGRA and the Equal Protection Clause. ECF No. 35-1 (Prop. Am. Compl.) ¶¶ 83, 100. Maverick now seeks to litigate these Washington-centric issues without participation from the State or any state official who could adequately represent the State's unique interests in defending its own laws, policy choices, economic interests, and relationships with tribes in Washington.

Maverick's procedural maneuvers cannot save its suit from transfer or dismissal. If this Court were to accept Maverick's proposed amended complaint dropping all Washington State defendants from this case, it would also have to dismiss the amended complaint for failure to join Washington State as an indispensable party under controlling Circuit law. The D.C. Circuit's decision in *Kickapoo Tribe of Indians of Kickapoo Reservation in Kansas v. Babbitt*, 43 F.3d 1491,

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-074

1495 (D.C. Cir. 1995), squarely addresses this issue and requires dismissal of a complaint challenging a state's tribal gaming compacts under Rule 19 if the state cannot be joined as a party due to sovereign immunity. As in *Kickapoo*, Maverick does not and cannot join Washington State here because the State is immune from suit under the Eleventh Amendment and because this Court lacks personal jurisdiction over the State and its officials. Because there is no existing party who can adequately represent Washington's interests, and litigating in its absence would unavoidably prejudice the State, if Maverick's complaint is amended as proposed, this action should be dismissed under Rule 19.

## II.   LEGAL BACKGROUND AND PROCEDURAL HISTORY

### A.   IGRA and Washington Law

The Indian Gaming Regulatory Act (IGRA), 25 U.S.C. § 2701 *et seq.*, as passed by Congress in 1988, "sets up a complex procedure for states and Indian tribes to work out their differences concerning gambling on Indian reservations." *United States v. Spokane Tribe of Indians*, 139 F.3d 1297, 1298 (9th Cir. 1998). "The first step in that process is for tribes wishing to conduct commercial gaming to negotiate compacts with the states within whose borders their reservations are located." *Id.* "Under IGRA, class III activities must be authorized by a tribal ordinance approved by the National Indian Gaming Commission, permitted by the state for some person or organization, and covered by a tribal-state compact." *Id.* at 1299. The tribal–state compact is "pivotal to the IGRA provisions governing class III gaming. Without a compact in place, a tribe may not engage in class III gaming." *Id.* IGRA provides no role for the federal government in negotiating compacts between Indian tribes and states. The Secretary of the Interior merely holds authority to disapprove such tribal gaming compacts based on a narrow and exclusive set of statutory factors. 25 U.S.C. § 2710(d)(8)(A)-(B).

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-075

In 1992, shortly after the enactment of IGRA, Washington State codified its process for negotiating class III gaming compacts with Indian tribes. Wash. Rev. Code § 9.46.360. Class III gaming includes several kinds of casino games and sports betting. Under Washington State's statutory process, the director of the Washington State Gambling Commission "shall negotiate compacts for class III gaming on behalf of the state with federally recognized Indian tribes in the state of Washington." *Id.* Once a tentative compact has been reached, the director shares it with members of the Gambling Commission and solicits comment from committees designated by the state legislature. *Id.* Within forty-five days after receiving a tentative compact, the members of the Gambling Commission vote on whether to return the compact to the director for further negotiation or to forward it to the governor for review and execution. *Id.* Since 1991, Washington State has entered into gaming compacts with all 29 federally recognized tribes in Washington.[1]

In 2020, Washington State enacted Engrossed Substitute House Bill 2638 (ESHB 2638),[2] which allows for the amendment of tribal gaming compacts to authorize sports betting as an additional type of class III gaming. In 2021, 16 of the 29 tribes amended their compacts in accordance with ESHB 2638 to authorize sports betting, and the Interior Secretary approved the compact amendments. Under ESHB 2638, sports wagering is prohibited under Washington State law unless a gaming compact authorizes it. *See id.* § 1.

**B.      This Lawsuit**

Maverick filed its original complaint on January 11, 2022. Its original complaint named four federal defendants and twelve individual state defendants, including the Washington State

---

[1] *See* Wash. State Gambling Comm'n, Gaming Compacts, https://www.wsgc.wa.gov/tribal-gaming/gaming-compacts (last visited Mar. 22, 2022).
[2] Session Law available at: https://lawfilesext.leg.wa.gov/biennium/2019-20/Pdf/Bills/Session%20Laws/House/2638-S.SL.pdf?q=20220322174944.

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-076

Attorney General, the Governor, and ten members of the Washington State Gambling Commission. Maverick asserted claims under the Administrative Procedure Act, 42 U.S.C. § 1983, "Equity," and the Declaratory Judgment Act, based on allegations that Washington state law and Washington's tribal gaming compacts violated IGRA, Equal Protection, and the Tenth Amendment.

On February 24, 2022, the State Defendants, joined by the Federal Defendants, filed a motion to transfer this case to the U.S. District Court for the Western District of Washington. ECF No. 30. The motion was grounded in part on the lack of personal jurisdiction over the State Defendants in the District of Columbia. On March 10, 2022, Maverick simultaneously opposed the transfer of this case and moved for leave to file an amended complaint that would drop the State Defendants as parties and eliminate Maverick's non-APA claims, arguing that the personal-jurisdiction basis for transfer would be moot if leave to amend were granted.

Though couched as an APA claim, Maverick's amended complaint continues to centrally focus on challenges to Washington State laws, practices and its tribal gaming compact. The amended complaint challenges Washington State's criminal prohibitions on gambling. *See* Prop. Am. Compl. ¶¶ 44–50. It challenges Washington State's policy choices regarding the scope of class III gaming conducted under tribal-state gaming compacts, and the process for negotiating tribal-state gaming compacts under Washington law. *Id.* ¶¶ 51–56. It also challenges the compacts and compact amendments themselves, which Maverick mischaracterizes as a "monopoly." *Id.* ¶¶ 57–58, .62–63, 66–70. Maverick further alleges that Governor Inslee "had no authority" or "lacked authority" to enter into the compact amendments on behalf of Washington State. *Id.* ¶¶ 87, 100.

Maverick's allegations concerning the Federal Defendants are limited to their approval of various compact amendments. *Id.* ¶ 75. Maverick alleges their approval was illegal because the

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-077

compact amendments—duly adopted under Washington State law, and to which the State itself is a party—violate IGRA, Equal Protection, and the Tenth Amendment. First, Maverick claims the compact amendments violate IGRA because Washington State has allegedly granted Indian tribes a "monopoly" over sports betting and "criminally prohibits such gaming by any non-tribal entities." *Id.* ¶¶ 78–89 (citing Wash. Rev. Code §§ 9.46.0364, 9.46.220–.222). Second, Maverick claims the compact amendments violate the constitutional principle of Equal Protection because Washington State has "purported to grant the Tribes a right to offer sports betting" while "criminally prohibit[ing] any entities other than those affiliated with Washington Indian tribes from offering sports betting in Washington." *Id.* ¶¶ 90–103 (citing Wash. Rev. Code §§ 9.46.0364, 9.46.220–.222). Third, Maverick claims the compact amendments violate the anti-commandeering principle under the Tenth Amendment "and were not validly entered into" because of the language IGRA uses in providing for negotiation of tribal-state gaming compacts: "the State shall negotiate with the Indian tribe . . . ." *Id.* ¶¶ 104–110 (citing 25 U.S.C. § 2710(d)(3)(A)). Notably, Washington State law contains a nearly identical provision for the negotiation of tribal-state gaming compacts: "The gambling commission . . . shall negotiate compacts for class III gaming on behalf of the state with federally recognized Indian tribes in the state of Washington." Wash. Rev. Code § 9.46.360(2).

Maverick's challenges to Washington State's gambling laws and compact amendments form the sole basis of its APA claim: that the Federal Defendants' approval of Washington's tribal gaming compacts was "not in accordance with law." Prop. Am. Compl. ¶ 124–135.

## III.   LEGAL STANDARD

"The court should freely give leave [to amend] when justice so requires."

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-078

Fed. R. Civ. P. 15(a)(2).[3] Typically, a court should grant leave to amend "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). But if a complaint would not survive a motion to dismiss, amendment is futile and leave to amend should be denied. *See M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C. 2002); *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996). The futility rule applies with equal force where a complaint, as amended, would be subject to dismissal under Rule 19. *Lewis v. Government of District of Columbia*, 324 F.R.D. 296, 305 (D.D.C. 2018).

Rule 19 sets out the criteria for dismissing an action for failure to join a required party. Fed. R. Civ. P. 19; *see also Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008). The inquiry is divided into three parts. First, the court must determine whether an absent party is "required" under Rule 19(a). Second, if so, the court must determine if it can feasibly join the party. Fed. R. Civ. P. 19(a)(2). Third, if the party cannot be joined, then the court determines "whether, in equity and good conscience the action should proceed among the existing parties or should be dismissed" with reference to four non-exclusive factors. Fed. R. Civ. P. 19(b). "[T]he determination whether to proceed will turn upon factors that are case specific." *Pimentel*, 553 U.S. at 862–63. The Court has an independent duty to dismiss a case *sua sponte* under Rule 19 if justice

---

[3] Both Maverick and the State Defendants recognize the "split of authority" on the question of whether Maverick may amend as of right at this stage. Mot. at 3–4. The Court need not decide this issue, because the outcome is the same either way: if Maverick amends either by right or by leave, its complaint is subject to dismissal under Rule 19(b). Alternatively, the Court may transfer the case without deciding the Rule 19 issue. *See* ECF Nos. 30-1 and 41.

STATE DEFENDANTS' RESPONSE TO MOTION FOR LEAVE TO FILE AMENDED COMPLAINT NO. 1:22-CV-00068-FYP

6

ATTORNEY GENERAL OF WASHINGTON Complex Litigation Division 800 Fifth Avenue, Suite 2000 Seattle, WA 98104-3188 (206) 464-7744

StateSER-079

requires it. *Wichita & Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765, 772 n. 6 (D.C. Cir. 1986).

## IV.     ARGUMENT

Because Maverick continues to predicate its APA claim on challenges to the validity of Washington State law under IGRA, the Equal Protection Clause, and the Tenth Amendment, Washington State is a required party to Maverick's proposed amended complaint under Rule 19(a). Further, because Washington State is immune from suit under the Eleventh Amendment, and also because this Court lacks personal jurisdiction over Washington State, it is not possible to join Washington State as a party to this action. Finally, actions challenging state gaming compacts may not proceed in equity and good conscience under established Circuit precedent without Washington's involvement because the State's interests would be unavoidably prejudiced, and no party to the proposed amended complaint is capable of adequately representing Washington's unique interests in defending its laws, its economic and sovereign interests, and its relationships with tribes. Because Maverick's proposed amended complaint is subject to dismissal under Rule 19, leave to amend should be denied. Alternatively, the complaint, if amended, should be dismissed.

### A.     Washington State Is a Required Party under Rule 19(a)

A party is "required" under Rule 19(a) where, *inter alia*, "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may as a practical matter impair or impede that person's ability to protect the interest[.]" Fed. R. Civ. P. 19(a)(1)(B)(i). Here, Washington State easily meets this part of the test because its interests are central to this case: Maverick seeks to invalidate Washington's compacts and laws—not by implication, but by directly challenging those laws and compacts. In other words,

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-080

not only are Washington's interests "relat[ed] to" the subject matter of this action, they are directly at issue. Washington has an interest in protecting the economic benefits and job opportunities for Washington residents that arise from the gaming compacts. Moreover, as a practical matter, Washington State's interest in continuing to work with tribes to provide for legal tribal gaming enterprises, as contemplated by IGRA, is at stake—and its ability to protect that interest will be seriously impaired if this case is adjudicated in Washington's absence. Washington State is, therefore, a required party under Rule 19(a).

The decision in *Kickapoo* directly addressed whether a state is a required party under Rule 19(a) in a suit challenging whether gambling is permitted within a state pursuant to IGRA, and the D.C. Circuit unequivocally held that it is. 43 F.3d at 1495 ("[T]he State of Kansas has an interest in the validity of a compact to which it is a party . . . ."). District courts have recognized the same. *See, e.g.*, *Stand Up for California! v. U.S. Dep't of Interior*, 204 F. Supp. 3d 212, 253 (D.D.C. 2016), *aff'd*, 879 F.3d 1177 (D.C. Cir. 2018) ("California's interests would be directly affected by the relief sought by the plaintiffs, who ask this Court to make determinations about the propriety and continuing viability of Governor action significantly affecting the State's statutory obligations, relationship with its citizens and federally-recognized Indian tribes, and fiscal interests with respect to regulating Indian gaming within its borders under the IGRA."); *Pueblo of Sandia v. Babbitt*, 47 F. Supp. 2d 49, 54 (D.D.C. 1999) ("[T]he State has a legitimate interest in the regulation of gaming within its territorial limits, including the Indian reservations, and in the state resources that must be spent in conjunction with the permissible regulation of Indian gaming pursuant to the compacts.").

These holdings in the IGRA context are consistent with authority in other contexts recognizing that where federal agency action is challenged, and the challenge implicates the

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-081

interests of another government, the other government is a required party under Rule 19(a). *Wichita*, 788 F.2d 765 (D.C. Cir. 1986) (holding that an Indian tribe was a required party in APA challenge to decision of the Bureau of Indian Affairs); *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 855 (9th Cir. 2019) (holding that corporate arms of an Indian tribe were required parties in APA challenge seeking to overturn approval of mining operations engaged in by the tribe); *Sierra Club v. Hodel*, 848 F.2d 1068, 1077 (10th Cir. 1988), *overruled on other grounds by Vill. of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992) (holding that county government was a required party in APA challenge to approval of improvement of dirt road where the county maintained the road); *Cerebral Palsy Ass'n of Nassau County, Inc. v. Cochran*, No. 20-cv-3718 (EGS), 2021 WL 1037865 (D.D.C. Feb. 10, 2021) (State of New York was a required party in APA challenge to approval of Medicaid waiver submitted by State of New York).

Like in the above cited cases, Washington State is a required party here. Maverick seeks to invalidate gaming compacts and compact amendments that Washington State negotiated with 29 federally recognized Indian Tribes. Maverick's argument for their invalidity is that Washington State's gaming statutes violate federal law by authorizing the State to negotiate compacts allowing certain types of class III gaming only on Indian lands. Prop. Amend. Compl*. at ¶¶ 84, 93-99. Maverick argues that because these state statutes allegedly violate IGRA and the Constitution, Governor Inslee "had no authority" or "lacked authority" to sign the compacts on behalf of Washington State. *Id.* at ¶¶ 87, 100. Washington State has obvious interests under Rule 19(a) in the regulation of gambling within its territory. *See Kickapoo*, 43 F.3d at 1495*. And the State also has obvious interests in the continued validity of its laws and the authority of its Governor. *See Stand Up for California!*, 204 F. Supp. 3d at 253. It further has a recognized interest in preserving

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-082

its relationships with federally recognized tribes in Washington, as well as an economic interest in the continuation of its gaming compacts with tribes. *Id.* at 253. As such, Washington State clearly has interests that may be impaired as a practical matter in this litigation.

Washington State also has an interest in the types of gaming offered within the state, and an interest in ensuring that such gaming is conducted in compliance with IGRA and other state and federal laws. *See*, *e.g.*, Wash. Rev. Code § 9.46.0364. Maverick seeks to bar the Interior Secretary from ever approving compacts on the terms established by Washington law. Washington State therefore has interests that may be impeded as a practical matter as a result of this litigation, and it is a required party under Rule 19(a).

## B.  Washington State Cannot Be Joined as a Party

Washington State cannot be joined in this litigation for two reasons. First, Washington State is immune from suit under the Eleventh Amendment's preservation of state sovereign immunity. Second, this Court lacks personal jurisdiction over Washington State and over any state officials who may be capable of representing its interests. Therefore, joinder of Washington State in this action is not feasible.

It is well established that states are immune from suit in federal court absent a waiver of sovereign immunity under the Eleventh Amendment. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *see also Micomonaco v. State of Washington*, 45 F.3d 316, 320 n. 2 (9th Cir. 1995) (holding Washington State has not waived its sovereign immunity from suit in federal court). A court cannot feasibly join a required party where that party has sovereign immunity from suit. *See Pimentel*, 553 U.S. at 867 ("[W]here sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign."); *Kickapoo*, 43 F.3d at 1495–96

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-083

(recognizing State of Kansas's sovereign immunity in suit challenging tribal gaming compact entered into by Kansas Governor); *Stand Up for California!*, 204 F. Supp. 3d at 252 ("California cannot be joined in the lawsuit. As a state sovereign, it is immune from suit under the Eleventh Amendment . . ."); *see also Wichita*, 788 F.2d at 774 (holding that Indian tribe asserting sovereign immunity against a cross-claim "could not have been made a party against their will"). Washington State, too, is immune from suit under the Eleventh Amendment. It is not feasible, therefore, to join the State as a party to this litigation.

Equally significant, joinder is not feasible where, as here, the Court lacks personal jurisdiction over the party. *See* Fed. R. Civ. P. 19(a) ("A person *who is subject to service of process* . . . must be joined as a party . . .") (emphasis added);[4] *see also Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788-89 (D.C. Cir. 1983) (upholding dismissal under Rule 19(b) where district court lacked personal jurisdiction over defendants, and those same defendants were indispensable parties). As argued in the State Defendants' pending Motion to Transfer Venue, this Court lacks personal jurisdiction over the State Defendants because there are insufficient contacts with the District of Columbia to establish such jurisdiction. ECF No. 30-1 at 12–17. The same is equally true of Washington State itself. This case's only connection to the District of Columbia is the final federal approval of compacts negotiated, amended, and signed within and on behalf of Washington State, which alone is insufficient to establish jurisdiction under D.C.'s long-arm statute. *Id.* Maverick did not argue in favor of personal jurisdiction in its opposition to the State Defendants' Motion to Transfer Venue; instead, Maverick effectively conceded lack of personal jurisdiction by attempting instead to drop the State Defendants from this lawsuit. *See* ECF No. 37

---

[4] Waiving service of a summons does not waive any objection to personal jurisdiction or to venue. Fed. R. Civ. P. 4(d)(5).

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-084

at 10-12. This Court lacks personal jurisdiction over the State, just as it lacks personal jurisdiction over the State Defendants.

In sum, due to both sovereign immunity and lack of personal jurisdiction, it is not feasible to join Washington State as a party to this action.

## C.     This Suit Cannot Proceed in Washington State's Absence

At the final stage of the inquiry, the Court must consider whether it can proceed in the required party's absence; if not, the party is considered "indispensable" and the action must be dismissed. Fed. R. Civ. P. 19(b); *see also* advisory committee's note to 2007 amendment ("indispensable" describes the "conclusion that an action should be dismissed [under Rule 19(b) for inability to join a Rule 19(a) party"). Here, Washington State is an indispensable party. Because Washington would be prejudiced if the case proceeds in its absence (and the absence of any state officials who may be able to adequately represent its interests), and because Washington cannot be compelled to waive its sovereign immunity to avoid that prejudice, Rule 19(b) would require dismissal of this action if Maverick were to amend its complaint as proposed.

Rule 19(b) lists four non-exclusive factors for courts to weigh in deciding whether to dismiss a case where it is not feasible to join a required party. Paraphrased, they are:

1.  The extent to which a judgment rendered in the required party's absence might prejudice the required party or existing parties;

2.  The extent to which any prejudice can be lessened or avoided;

3.  Whether a judgment rendered in the required party's absence would be adequate; and

4.  Whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-085

District courts generally have discretion to determine "which factors to weigh and how heavily to emphasize certain considerations." *Kickapoo*, 43 F.3d at 1496 (citing *Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Washington*, 699 F.2d 1274, 1277 (D.C. Cir. 1983)). But, where an action threatens to prejudice an absent party immune from suit, "there is very little room for balancing of other factors." *Wichita*, 788 F.2d at 777 n. 13; *see also Kickapoo*, 43 F.3d at 1496. In that scenario, a district court is "confronted with a more circumscribed inquiry." *Kickapoo*, 43 F.3d at 1497. Thus, dismissal may be appropriate even where the plaintiff would have no adequate remedy because any prejudice to the plaintiff "is outweighed by prejudice to the absent entities invoking sovereign immunity." *Pimentel*, 553 U.S. at 872.

Courts considering whether a party is indispensable generally begin by examining the extent of the prejudice caused to the required party who is immune from suit. *See, e.g.*, *Stand Up for California!*, 204 F. Supp. 3d at 253–54. As a general rule, if no existing party can adequately represent the required sovereign's interest, dismissal is required. *See id.*; *Pueblo of Sandia v. Babbitt*, 47 F. Supp. 2d 49, 53–56 (D.D.C. 1999) (dismissing action where state was a required party and no existing party to the action could adequately represent state's interest); *see also Cerebral Palsy Ass'n*, 2021 WL 1037865, at *6 (ruling that state was an indispensable party and dismissing action because state's interests "may diverge" from those of existing parties to the action "given state specific interests"). Conversely, where existing parties *do* adequately represent the absent sovereign's interests, dismissal is generally not required. *See De Csepel v. Republic of Hungary*, 27 F.4th 736, 2022 WL 678076 at *8 (D.C. Cir. March 8, 2022) (holding Republic of Hungary was required, but not indispensable, because existing parties to the action—particularly a state-owned company that was "fully able" to "step into [Hungary's] shoes"—could adequately

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-086

represent the absent sovereign's interests); *Gensetix, Inc. v. Bd. of Regents of Univ. of Tex. Sys.*, 966 F.3d 1316, 1325–27 (Fed. Cir. 2020) (holding that dismissal was not required under Rule 19(b) where state's interests could be adequately represented by an existing party, a licensee of a state university with an "identical interest in the validity of the patents-in-suit"); *West Flagler Assocs. v. Haaland*, No. 21-cv-2192 (DLF), 2021 WL 5492996 (D.D.C. Nov. 22, 2021) (finding that Seminole Tribe was required, but not indispensable, in challenge to IGRA compact where both federal and state governments were defending the compact at issue).

As framed by Maverick's proposed amended complaint, no party shares the interest of Washington State in the continued validity of its statutory law, nor its interest in the compact terms the State negotiated with tribes. The courts in *Kickapoo* and *Stand Up for California!* each recognized the unique interests of states in cases challenging tribal-state gaming compacts and the unavoidable prejudice that would ensue in litigating such cases in their absence. For example, in *Kickapoo*, the D.C. Circuit Court of Appeals held that it was an abuse of discretion not to dismiss a case under Rule 19(b) where a tribe brought an APA claim to force the Interior Secretary to approve an IGRA compact negotiated and signed by the Governor of Kansas. *Kickapoo*, 43 F.3d at 1500. There, after the compact was forwarded to the Secretary for approval, the Kansas Supreme Court held that the Governor of Kansas could negotiate such a compact, but lacked statutory authority to sign the compact and thus bind the state to its terms. *Id.* at 1494. The Interior Secretary, defending its action not to approve the compact, moved to dismiss the Tribe's complaint under Rule 19(b) for failure to join the State as an indispensable party. *Id.* The district court held that the State of Kansas was a required party, but not an indispensable one, and refused to dismiss the case. *Id.* The D.C. Circuit reversed, holding that the State of Kansas was an indispensable party, not as a mere formality, but because the litigation implicated Kansas's "contractual rights" under the

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-087

tribal gaming compacts as well as its "fiscal interests" in connection with those compacts. The Court further held that "Kansas' immunity from the Tribe's lawsuit coupled with the district court's assessment of the first two Rule 19(b) factors [prejudice to the state and the ability to avoid such prejudice] indicate that the district court should have dismissed the lawsuit" without consideration of the other Rule 19(b) factors. *Id.* at 1500.

Similarly, in *Stand Up for California!*, the district court dismissed a complaint for failure to join the State of California as an indispensable party in a challenge to the Interior Secretary's acceptance of the California Governor's concurrence in a decision to place a particular site into trust for the purposes of Indian gaming under IGRA. 204 F. Supp. 3d at 254. The court held that "California unquestionably has an interest in its Governor's authority, under its own law, to comply with federal law, as well as in the continuing validity . . . of its Governor's concurrence, pursuant to which gaming will be permitted on the [trust] site." *Id.* at 253. Because California enjoyed sovereign immunity, and it could not be joined to the lawsuit, the court examined whether the litigation could proceed in equity and good conscience and found that it could not. *Id.* Following *Kickapoo*, 43 F.3d at 1498, the court held that, "[s]ince California would be unavoidably prejudiced by a judgment rendered in its absence related to the Governor's concurrence, these claims are appropriately dismissed without consideration of any additional factors." *Stand Up for California!*, 204 F. Supp. 3d at 253-54. The Court reasoned that "California's interests would be directly affected by the relief sought by the plaintiffs, who ask this Court to make determinations about the propriety and continuing viability of Governor action significantly affecting the State's statutory obligations, relationship with its citizens and federally-recognized Indian tribes, and fiscal interests with respect to regulating Indian gaming within its borders under the IGRA." *Id.* at 253. It further held that the Interior Secretary "absolutely cannot represent the interests of

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-088

California or its Governor," again quoting *Kickapoo*, 43 F.3d at 1499, because "the Secretary is not in a position to champion the State's position in view of his or her trust obligations to the Tribe." *Stand Up for California!*, 204 F. Supp. 3d at 254 (internal quotation marks and punctuation omitted). The court likewise held that "the Secretary cannot represent California's legal and financial interests in the outcome of the plaintiffs' claims because the Secretary does not share these interests." *Id*. Finally, the court rejected the plaintiffs' argument that California's interests were not directly implicated in claims brought solely against federal defendants, an argument the court found "defies logic" because the State and its Governor have an "immutable interest" in defending the continuing validity of the State's compacts, laws, and practices. *Id*.

As amended, Maverick's complaint suffers from the same defects as the complaints in *Kickapoo* and *Stand Up for California!*, and would be subject to dismissal on the same basis. Maverick contends that Governor Inslee lacked legal authority to enter into the compacts Maverick challenges. Prop. Am. Compl. ¶¶ 87, 100. And the central premise of Maverick's APA claim is that Washington State statutes violate federal law. *Id*. at ¶¶ 83, 93–99. Like Kansas and California, Washington has a unique interest in the faithful execution of its laws, the authority of its Governor, and the validity of compacts that it negotiated and entered into. It also has a unique interest in preserving its relationships with tribes and the economic benefits the gaming compacts provide to the State. As described above, these interests are not co-extensive with the interests of the Interior Secretary in accepting these compacts for two key reasons. First, Washington's interests are concomitant with Washington's sovereignty and its interest in governing within its borders, which is not an interest that the federal government can share or adequately represent. Second, the Interior Secretary has a trust relationship with Indian tribes that the State of Washington does not have. *See Stand Up for California!*, 204 F. Supp. 3d at 254. Indeed, courts often recognize the potential

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-089

for divergent interests between federal and state officials in cases involving tribal issues for this very reason. *See, e.g.*, *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 584 F. Supp. 1, 7 (D.D.C. 2008) (finding the Interior Secretary did not adequately represent Alaska's interests).

Washington State also has an interest that the federal government does not share in preserving to the maximum extent the State's ability to make future policy choices. The Interior Secretary may argue that a compact Washington State negotiated is lawful, for example, but may be satisfied with rationales that constrain future choices by the State. Or, since Maverick's claims depend on the interpretation of Washington law (*see* Prop. Am. Compl. at ¶¶ 82–89), the Secretary may advance an interpretation of the law that conflicts with the State's interpretation. Washington has an interest not shared by the Secretary in what its own laws mean and in how Washington's Legislature may be able to legislate in the future. These interests are substantial and demand Washington's treatment in this case as an indispensable party. *See Stand Up for California!*, 204 F. Supp. 3d at 254 ("[T]he Secretary cannot represent California's legal and financial interests in the outcome of the plaintiffs' claims because the Secretary does not share these interests . . . .").

Further, no existing party shares Washington State's specific interests in the regulation of non-tribal gaming and the government-to-government relationship it has with the tribes conducting class III gaming within its borders. *See Pueblo of Sandia*, 47 F. Supp. 2d at 53–54 (state had an interest in the regulation of gaming within its territorial limits such that "a finding that the State is not an indispensable party to this action would in practical terms constitute an intrusion on the State's rights under the Tenth and Eleventh Amendments."). Maverick specifically challenges Washington's statutory authorization of compacts that provide for class III gaming on Indian lands (specifically sports wagering under Wash. Rev. Code § 9.46.0364). *See* Prop. Am. Compl. ¶¶ 82–87, 93–99. Washington State has unique interests in the manner in which gambling is

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-090

conducted within the State and in the terms of its gaming compacts with Tribes. These interests are not shared by the federal government because they are uniquely sovereign interests of the State. *See Pueblo of Sandia*, 47 F. Supp. 2d at 53-54. Because proceeding with this case in Washington's absence has the potential to injure Washington's interests, and the State cannot be compelled to defend an action in federal court against its will, this case must be dismissed. *See Pimentel*, 553 U.S. at 867.

To the extent that such prejudice to Washington State could be reduced or eliminated by joining certain Washington State officials (as Maverick attempted to do in its original complaint), dismissal here is still required. As the State Defendants argued in their Motion to Transfer—an argument that was never rebutted—the District of Columbia lacks personal jurisdiction over Washington State officials in connection with this case. ECF No. 30-1 at 12–17. Lack of personal jurisdiction over a required party is grounds for dismissal, especially where the party is subject to suit in another forum. *See* Fed. R. Civ. P. 19(b)(3) ("whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder" is a factor relevant to indispensability); *Naartex Consulting Corp.*, 722 F.2d at 788–89. If Maverick wanted to argue that joining Washington State officials would reduce the prejudice to Washington State in failing to join the State itself as a party, it could always re-file its lawsuit in the Western District of Washington, where State officials are subject to service of process, and make such arguments there.

In sum, Washington State is an indispensable party to Maverick's proposed amended complaint because the State has vital and unique interests that will be affected by this lawsuit, and no existing party is capable of representing those interests. Because Washington is immune from suit in federal court under the Eleventh Amendment, and the prejudice to Washington in litigating

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-091

in its absence cannot be avoided, Maverick's amended complaint would be subject to dismissal under Rule 19(b).

## V.    CONCLUSION

This Court should deny Maverick leave to amend its complaint, because as amended the complaint would not survive a motion to dismiss pursuant to Rule 19. Amendment would be futile, and so leave to amend should be denied. Alternatively, if Maverick's complaint is amended as proposed, this Court should dismiss the amended complaint under Rule 19.

DATED this 24th day of March, 2022.

                    ROBERT W. FERGUSON
                    Attorney General of Washington

                    *s/ Kristin Beneski*
                    KRISTIN BENESKI, WSBA No. 45478
                    First Assistant Attorney General
                    BRIAN H. ROWE, WSBA No. 56817
                    Assistant Attorney General
                    800 Fifth Avenue, Suite 2000
                    Seattle, WA 98104-3188
                    (206) 464-7744
                    kristin.beneski@atg.wa.gov
                    brian.rowe@atg.wa.gov
                    TERA HEINTZ, WSBA No. 54921
                    Deputy Solicitor General
                    1125 Washington Street SE
                    Olympia, WA 98504-0100
                    (360) 753-6200
                    tera.heintz@atg.wa.gov

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-092

# CERTIFICATE OF SERVICE

I certify, under penalty of perjury under the law of the District of Columbia, that the

foregoing was electronically filed in the United States District Court for the District of Columbia

and electronically served on the following parties:

Theodore B. Olson, DCBA No.
Matthew D. McGill, DCBA 481430
Lochlan F. Shelfer, DCBA No. 1029799
Gibson, Dunn & Cruther LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955 – 8668
tolson@gibsondunn.com

Daron T. Carreiro
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611
(202) 305-1117
daron.carreiro@usdoj.gov

DATED this 24th day of March 2022.

ROBERT W. FERGUSON
Attorney General of Washington

s/ Kristin Beneski
KRISTIN BENESKI, WSBA No. 45478
First Assistant Attorney General

STATE DEFENDANTS' RESPONSE TO
MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT
NO. 1:22-CV-00068-FYP

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

StateSER-093

1    **HONORABLE DAVID G. ESTUDILLO**

2

3

4

5

6

7

8

9

10

11                    **UNITED STATES DISTRICT COURT**
                     **WESTERN DISTRICT OF WASHINGTON**
12                              **AT TACOMA**

13

14

15   MAVERICK GAMING LLC,                      Case No.: 22-cv-05325-DGE

16              Plaintiff,
                                              **SHOALWATER BAY TRIBE'S MOTION**
17   v.                                       **FOR LIMITED INTERVENTION**

18                                            **Note on Motion Calendar: August 19, 2022**
     UNITED STATES OF AMERICA, et al.,
19                                            **ORAL ARGUMENT REQUESTED**

20              Defendants.

21

22

23

24

25

26

27

28

---

Motion For Limited Intervention                Crowell Law Office-Tribal Advocacy Group
Case No. 22-cv-05325-DGE                        1487 W. State Route 89A, Ste. 8, Sedona AZ, 86336
                                                Tel: (425) 802-5369            StateSER-094

## **TABLE OF CONTENTS**

I. BACKGROUND AND CONTEXT .......................................................................2

   A.  Statutory and Historical Context. ...............................................................2

   B.  B. The Instant Suit ....................................................................................3

II. ARGUMENT ...............................................................................................3

   A.  The Tribe Should Be Granted Permissive Intervention...........................5

   B.  The Tribe Is Entitled to Intervene as of Right ........................................7

     i.  Timeliness ............................................................................................8

     ii.  Significant Protectable Interest .............................................................8

     iii. Impairment ..........................................................................................9

     iv. Adequate Representation.....................................................................10

       a. State Defendants and Federal Defendants Will Not Make the Tribe's Arguments........10

       b. The Tribe Will Offer Necessary Elements that the Federal Defendants and the State Defendants Will Neglect....................................................................11

III. CONCLUSION ........................................................................................12

Motion for Limited Intervention
Case No.: 22-cv-05325-DGE

Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Ste. 8, Sedona, AZ, 86599
Tel: (425) 802-5369

State SER 095

# TABLE OF AUTHORITIES

**Cases**

*Aguayo v. Jewell*,
   827 F.3d 1213 (9th Cir. 2016) ...................................................................................9

*American Greyhound Racing, Inc. v. Hull*,
   305 F.3d 1015 (9th Cir. 2002) ............................................................................6, 12

*Backcountry Against Dumps v. U.S. Bureau of Indian Affairs*,
   2021 WL 2433942 (S.D. Cal. 2021) ..........................................................................4

*California v. Cabazon Band of Mission Indians*,
   480 U.S. 202 (1987) .................................................................................................11

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
   647 F.3d 893 (9th Cir. 2011) ..........................................................................6, 8, 10

*Confed. Tribes of Chehalis Indian Reservation v. Lujan*,
   928 F.2d 1496 (9th Cir. 1991) ...................................................................................4

*Dawavendewa v. Salt River Project Agr. & Power Dist.*,
   276 F.3d 1150 (9th Cir. 2002) ..............................................................................7, 9

*Diné Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*,
   932 F.3d 843 (9th Cir. 2019) .............................................................................4, 11

*Enter. Mgmt. Consultants, Inc. v. United States*,
   883 F.2d 890 (10th Cir. 1989) ...................................................................................7

*Friends of Amador County*,
   554 Fed. Appx. 562 (9th Cir. 2014) .........................................................................11

*Kickapoo Tribe of Indians of Kickapoo Reservation in Kan. v. Babbitt*,
   43 F.3d 1491 (D.C. Cir. 1995) ...................................................................................9

*Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*,
   523 U.S. 751 (1998) ...................................................................................................4

Motion for Limited Intervention
Case No.: 22-cv-05325-DGE

Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Ste. 8, Sedona AZ, 86336
Tel: (425) 802-5369

State SER 096

*Kootenai Tribe of Idaho v. Veneman*,
  313 F.3d 1094 (9th Cir. 2004) .................................................................6

*Low v. Altus Fin. S.A.*,
  44 F. App'x 282 (9th Cir. 2002) .............................................................6

*McClendon v. United States*,
  885 F.2d 627 (9th Cir. 1989) ..................................................................7

*MGM Global Resorts Dev. LLC v. Dept. of the Interior*,
  2020 WL 5545496 (D. D.C. 2020) ...................................................7, 11

*Michigan v. Bay Mills Indian Cmty.*,
  572 U.S. 782 (2014) ............................................................................3, 4

*No Casino in Plymouth v. Nat'l Indian Gaming Comm'n*,
  2022 WL 1489498 (E.D. Cal. 2022) ....................................................4, 6

*Nooksack Indian Tribe v. Zinke*,
  321 F.R.D. 377 (W.D. Wash. 2017) ........................................................6

*Nw. Forest Res. Council v. Glickman*,
  82 F.3d 825 (9th Cir. 1996) ....................................................................5

*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*,
  960 F.3d 603 (9th Cir. 2020) ...............................................................7, 9

*Okla. Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla.*,
   498 U.S. 505 (1991) ...............................................................................3

*Pit River Home & Agric. Coop. Ass'n v. United States*,
  30 F.3d 1088 (9th Cir. 1994) ..................................................................7

*Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States*,
  921 F.2d 924 (9th Cir. 1990) ..................................................................8

 *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*,
  327 F. Supp. 2d 995 (W.D. Wis. 2004) ...................................................5

*Shermeon v. United States*,
  982 F.2d 1312 (9th Cir. 1992) ..............................................................10

iii

Motion for Limited Intervention
Case No.: 22-cv-05325-DGE

Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Ste. 8, Sedona AZ, 86336
Tel: (425) 802-5369

State SER-097

1    *United States v. City of Los Angeles*,
2      288 F.3d 391 (9th Cir. 2002) ............................................................5, 8
3    *United States v. Oregon*,
4      745 F.2d 550 (9th Cir. 1984) ...............................................................6
5    *United States v. Spokane Tribe*,
6      139 F.3d 1297 (9th Cir. 1998) ......................................................11, 12
7    *United States v. Wheeler*,
8      435 U.S. 313 (1978) .............................................................................3
9    *W. Watersheds Project v. Haaland*,
10      22 F. 4th 828 (9th Cir. 2022) ..............................................6, 7, 9, 10
11    *Wash. State Bldg. & Constr. Trades Council, AFL-CIO v. Spellman*,
12      684 F.2d 627 (9th Cir. 1982) ...............................................................5
13    *White v. Univ. of Cal.*,
14      765 F.3d 1010 (9th Cir. 2014) ...........................................................10
15    *Wilderness Soc'y v. U.S. Forest Serv.*,
16      630 F.3d 1173 (9th Cir. 2011) .............................................................6
17    *Zych v. Wrecked Vessel Believed to Be the Lady of Elgin*,
18      960 F.2d 665 (7th Cir. 1992) ...............................................................5

**Statutes**

25 U.S.C. § 2710(d)(3)(A) ...........................................................................3

Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701–2721 ..............2

Wash. Rev. Code § 9.46.360 ..........................................................................2

**Rules**

Fed. R. Civ. P. 19(a)(1)(A) ...........................................................................10

Fed. R. Civ. P. 12(b)(7) ..........................................................................passim

Fed. R. Civ. P. 19 ...................................................................................passim

Fed. R. Civ. P. 24 ....................................................................................5, 6

iv

Motion for Limited Intervention
Case No.: 22-cv-05325-DGE

Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Ste. 8, Sedona, AZ, 86336
Tel: (425) 802-5369

State SER-098

Fed. R. Civ. P. 24(a) ........................................................................................1, 7, 10, 12

Fed. R. Civ. P. 24(b) ...........................................................................................1, 5, 7, 12

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 3 .................................................................................................3

Motion for Limited Intervention
Case No.: 22-cv-05325-DGE

Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Ste. 8, Sedona AZ, 86336
Tel: (425) 802-5369

In this action, Plaintiff Maverick Gaming LLC ("Maverick") seeks to halt the gaming activities of proposed limited intervenor, the Shoalwater Bay Indian Tribe of the Shoalwater Bay Indian Reservation ("Shoalwater Bay Tribe" or "Tribe") on its tribal lands, to deprive the Tribe of its rights under federal law, and to invalidate its gaming compact (together with its amendments, the "Compact") with the State of Washington (the "State")—all without even naming the Tribe as a defendant. Instead, Maverick sues the United States, various Federal officials (collectively "Federal Defendants"), and various officials of the State of Washington ("State Defendants"). With its substantial rights at stake, the Tribe is a necessary party to this action, and the Tribe now specially appears and moves for permissive intervention under Fed. R. Civ. P. 24(b) for the limited purpose of moving to dismiss under Rules 12(b)(7) and 19. In the alternative, the Tribe moves to intervene as of right under Rule 24(a) for the same limited purpose.[1] The Tribe attaches as Exhibit A, the [Proposed] Motion to Dismiss, which the Tribe intends to file with this Court immediately if this Court grants the Tribe limited intervenor status.

For avoidance of doubt, by intervening in this action for the limited purpose of moving to dismiss under Rules 12(b)(7) and 19, the Tribe does not waive, and reserves in full, its sovereign immunity. Nothing herein shall be construed as a waiver, in whole or in part, of the Tribe's immunity, or as the Tribe's consent to be sued, and the legal counsel for the Tribe, undersigned, lack authority to waive the Tribe's immunity or consent to the jurisdiction of this Court.

---

[1] The Federal Defendants take no position on the Tribe's motion for limited intervention. The State Defendants consent to permissive intervention under Rule 24(b) and take no position on the Tribe's intervention under Rule 24(a). Maverick opposes the Tribe's motion for limited intervention.

1

Motion for Limited Intervention
Case No.: 22-cv-05325-DGE

Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Ste. 8, Sedona, AZ 86336
Tel: (425) 802-5369

## I.   BACKGROUND AND CONTEXT

### A.  Statutory and Historical Context.

At issue in this litigation is the Tribe's Compact, and those compacts entered by the twenty-eight other federally recognized tribes in Washington , entered into pursuant to the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701–2721, and pursuant to Washington State law.  Wash. Rev. Code § 9.46.360.  The background and intent in the passage of those statutes are more fully set forth in the Tribe's [Proposed] Motion to Dismiss, Exhibit A hereto at 2-4.

Proposed intervenor Shoalwater Bay Tribe is compelled to seek limited intervention because its Compact is one of the agreements that Maverick's Complaint seeks to "void". The Shoalwater Bay Tribe is a small rural tribe. Its government relies heavily on the gaming facility's revenues, and the tribal community relies on the facility as a major source of local employment. Both risk being destroyed if Maverick, which is owned by one of the Tribe's own members, succeeds in this litigation. The Compact and the amendments thereto, which Maverick seeks to destroy, brought an end to a decade of acrimonious dispute between the Tribe and both the Federal and State Defendants, including litigation resulting in the United States efforts to shutter the Tribe's gaming facility. Accordingly, the Tribe is compelled to seek limited intervention to protect its interests from Maverick's claims. The history of the Tribe and its relationship with the State Defendants and Federal Defendants is more fully set forth in the Tribe's [Proposed] Motion to Dismiss, Exhibit A hereto at 5-9, and the supporting Declaration of Chairperson Charlene Nelson, Exhibit B, thereto.

2

Motion for Limited Intervention
Case No.: 22-cv-05325-DGE

Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Ste. 8, Sedona AZ, 86336
Tel: (425) 802-5369

State SER 101

### B.     The Instant Suit

On July 1, 2022, Maverick filed a First Amended Complaint ("FAC"), Dkt. 66, in this Court, making a sweeping request for declaratory and injunctive relief to prohibit Class III gaming on Shoalwater Bay Indian lands.  More specifically, Maverick's FAC seeks, inter alia:

(1) a declaration that the Tribe's Compact (and all such Compacts and amendments between the State and twenty-nine federally recognized Indian tribes) are "void, were not validly entered into, and are not in effect." FAC, Dkt. 66 at 40, prayer for relief at ¶ 207 (1);

(2) a declaration that the "Tribes' class III gaming activities violate IGRA." FAC, Dkt. 66 at 40, prayer for relief at ¶ 207 (4); and

(3) an order "enjoining the continued administration of the Compacts and Compact Amendments by the members of the Washington State Gambling Commission." FAC, Dkt. 66 at 40, prayer for relief at ¶ 207 (6).

Despite seeking relief against the Tribe, and despite the fact that federal law expressly recognizes the Tribe's direct interest in its Compact, *see* 25 U.S.C. § 2710(d)(3)(A), Maverick did not name the Tribe—or any other Indian tribe—as a defendant.  Thus, to protect its substantial interests in this matter, the Tribe now moves for leave to intervene under Rule 24 for the purpose of moving to dismiss under Rule 12(b)(7) and Rule 19.  As the Tribe explains in the appended proposed motion, *see* Exhibit A at 10-24, because the Tribe is a required party, and because the Tribe is protected by sovereign immunity and cannot be joined, this action must be dismissed.

### II.     ARGUMENT

Indian tribes are "domestic dependent nations" that exercise "inherent sovereign authority." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) (quoting *Okla. Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla.*, 498 U.S. 505, 509 (1991)).  "Thus, unless and 'until Congress acts, the tribes retain' their historical sovereign authority." *Id.* (quoting *United States v. Wheeler*, 435 U.S. 313, 323 (1978)); *see also* U.S. Const. art. I, § 8, cl. 3 (authorizing Congress to "regulate Commerce . . . with the Indian Tribes"); *see also Bay Mills Indian Cmty*,

Motion for Limited Intervention
Case No.: 22-cv-05325-DGE

Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Ste. 8, Sedona, AZ, 86336
Tel: (425) 802-5369

State SER 102

572 U.S. at 789 (sovereign immunity extends to bar suit whether on or off-reservation, whether or not the action concerns commercial activity). As such, "[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998).

Maverick seeks sweeping relief against the Tribe that would cripple the Tribe's economy, jeopardize government services, and deprive the Tribe of its Compact rights. But Maverick cannot sue the Tribe due to sovereign immunity. *Bay Mills Indian Cmty.*, 572 U.S at 788–89. To sidestep this bar, Maverick seeks to proceed against other entities to indirectly obtain the relief that it cannot obtain directly.

The Federal Rules of Civil Procedure forbid this sleight of hand. Under Rules 12(b)(7) and 19, when an absent party like the Tribe is both "required" and "indispensable" to the action and cannot be joined due to sovereign immunity, the action must be dismissed. *E.g.*, *Diné Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, 932 F.3d 843, 850 (9th Cir. 2019); *Confed. Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498-1500 (9th Cir. 1991)[2]. Rule 24 provides non-party tribes with the means to intervene for the limited purpose of asserting that argument. *Diné Citizens*, 932 F.3d at 847-48 (upholding dismissal of action for inability to join immune tribal party, where tribal party had "intervened in the action for the limited purpose of moving to dismiss" under Rule 19); *No Casino in Plymouth v. Nat'l Indian Gaming Comm'n*, 2022 WL 1489498 at *9-10 (E.D. Cal. 2022) (appeal pending); *Backcountry Against Dumps v. U.S. Bureau of Indian Affairs*, 2021 WL 2433942 at *2-3 (S.D. Cal. 2021) (appeal pending); *MGM*

---

[2] Many of the cases cited in support of the Tribe's Motion were issued prior to 2007. When Rule 19 was amended in 2007, the word 'necessary' was replaced by the word 'required' and the word 'indispensable' was removed. The changes were intended to be 'stylistic only' and "the substance and operation of the Rule both pre- and post-2007 are unchanged." *Republic of Philippines v. Pimental*, 553 U.S. 853, 855-56; *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 969 n.6 (9th Cir. 2008).

4

Motion for Limited Intervention
Case No.: 22-cv-05325-DGE

Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Ste. 8, Sedona AZ, 86336
Tel: (425) 802-5369

State SER 103

*Global Resorts Dev. LLC v. Dept. of the Interior*, 2020 WL 5545496 (D. D.C. 2020). Limited intervention is also appropriate because it preserves the sovereign immunity that the Tribe seeks to vindicate through its Rule 19 motion. *See Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 327 F. Supp. 2d 995, 1000 (W.D. Wis. 2004) (entities that have sovereign immunity may intervene for a limited purpose, such as moving to dismiss the lawsuit for failure to join an indispensable party, without waiving their sovereign immunity), *aff'd*, 422 F.3d 490 (7th Cir. 2005); *Zych v. Wrecked Vessel Believed to Be the Lady of Elgin*, 960 F.2d 665, 667-68 (7th Cir. 1992) (intervention by a state for limited purpose of moving to dismiss suit for lack of jurisdiction did not result in a waiver of its immunity).

## A. The Tribe Should Be Granted Permissive Intervention

Under Rule 24(b), permissive intervention should be granted where (i) the applicant's motion is timely; and (ii) "the applicant's claim or defense, and the main action, have a question of law or a question of fact in common."[3] *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002) (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996)). Courts must afford these two requirements a "liberal construction in favor of applicants for intervention." *Wash. State Bldg. & Constr. Trades Council, AFL-CIO v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982). The Tribe easily satisfies both requirements.

The Tribe's intervention motion is timely. To determine whether a Rule 24 motion is timely, courts evaluate three factors: "(1) the stage of the proceeding at which the applicant seeks

---

[3] The Tribe does not need to demonstrate an independent basis for jurisdiction. Rule 24(b)'s independent-jurisdiction requirement prevents intervenors from destroying or unduly enlarging federal jurisdiction over state-law claims. *Freedom from Religion Found. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011). Thus, the requirement "does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." *Id.* (emphasis added). This is a federal-question case. FAC, Dkt. 66 at ¶ 25. Because the Tribe is intervening for the limited purpose of moving for joinder and dismissal—not to bring new claims—the independent-jurisdiction requirement does not apply. *Freedom from Religion Found.*, 644 F.3d at 844.

Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Ste. 8, Sedona AZ, 86336
Tel: (425) 802-5369

to intervene; (2) the prejudice to other parties; and (3) the reason for and length of delay." *W. Watersheds Project v. Haaland*, 22 F. 4th 828, 836 (9th Cir. 2022). All three factors favor intervention here. The Tribe has intervened at the earliest possible stage of the proceeding—less than a month after Maverick filed its FAC, Dkt. 66, on July 5, 2022. By contrast, courts regularly hold that intervention motions are timely even years after a complaint is filed. *See, e.g.*, *Low v. Altus Fin. S.A.*, 44 F. App'x 282, 284 (9th Cir. 2002) (three years); *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) (fourteen years); *No Casino in Plymouth*, 2022 WL 1489498 at *9-10 (four years). And because no party has responded to that complaint, no party could possibly be prejudiced by intervention. *See, e.g.*, *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).

The Tribe's proposed defense and the main action share common questions of fact and law. The factual commonality between the Tribe's defense and Maverick's complaint could not be any closer. The Tribe's interest in this litigation "arises from the same set of facts as Plaintiff's claims." *Nooksack Indian Tribe v. Zinke*, 321 F.R.D. 377, 383 (W.D. Wash. 2017) (emphasis added). The Tribe, its Compact, and its gaming operations are all named and described in Maverick's FAC. Dkt. 66 at ¶¶ 78, 79, 88. Moreover, the Tribe is "assert[ing] an interest in" the very same Compact that Maverick seeks to "void," and the very same gaming operations that Maverick intends to stop by bringing this lawsuit. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2004), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011); FAC, Dkt. 66 at ¶ 207(1), (4). This is more than sufficient to create Rule 24 factual commonality. *See, e.g.*, *Kootenai Tribe of Idaho*, 313 F.3d at 1110–11. Moreover, the analogous federal case law regarding Rule 19 is clear that where a lawsuit seeks to invalidate a contract, the parties to that contract are required and indispensable parties. *See* e.g., *American Greyhound*

6

Motion for Limited Intervention
Case No.: 22-cv-05325-DGE

Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Ste. 8, Sedona, AZ, 86336
Tel: (425) 802-5369

State SER 105

*Racing, Inc. v. Hull*, 305 F.3d 1015,1022-23 (9th Cir. 2002) (tribes had "substantial" interest sufficient for Rule 19 purposes in renewal of their compacts)*; McClendon v. United States*, 885 F.2d 627, 633 (9th Cir. 1989) (non-party tribe in action seeking to enforce lease agreement it signed); *Enter. Mgmt. Consultants, Inc. v. United States*, 883 F.2d 890, 893 (10th Cir. 1989) (non-party tribe in action seeking to invalidate its contracts); *Dawavendewa v. Salt River Project Agr. & Power Dist.*, 276 F.3d 1150, 1156-57 (9th Cir. 2002) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or contract, all parties who may be affected by the determination of the action are indispensable."). It follows that such non-party tribes satisfy the commonality requirements of Rule 24(b).

The Tribe's defense also shares legal commonality with Maverick's claims. An intervening defendant establishes Rule 24(b) commonality when its defense is "directly responsive" to a plaintiff's claim. *Id.* at 1110. Here, the Tribe's proposed request for Rule 12(b)(7) and Rule 19 dismissal is a complete bar to all of Maverick's claims. Because the Tribe is a required and indispensable party, and its sovereign immunity deprives this court of subject-matter jurisdiction, it squarely prohibits the relief which Maverick seeks. *See Pit River Home & Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1100-03 (9th Cir. 1994).

**B. The Tribe Is Entitled to Intervene as of Right**

Even if permissive intervention is not warranted, the Tribe is entitled to intervene as of right under Rule 24(a). Under Rule 24(a), "a nonparty is entitled to intervention as of right when it (i) timely moves to intervene; (ii) has a significantly protectable interest related to the subject of the action; (iii) may have that interest impaired by the disposition of the action; and (iv) will not be adequately represented by existing parties." *W. Watersheds Project*, 22 F. 4th at 835 (quoting *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020)).

7

Motion for Limited Intervention
Case No.: 22-cv-05325-DGE

Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Ste. 8, Sedona, AZ, 86336
Tel: (425) 802-5369

State SER-106

The rule, again, "is construed broadly, in favor of the applicants for intervention." *Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States*, 921 F.2d 924, 926 (9th Cir. 1990). The Tribe satisfies each of the four requirements for intervention as of right under Rule 24(a) and is entitled to intervene for the limited purpose of dismissing this action under Rules 12(b)(7) and 19.

### i. Timeliness

First, this motion is timely. As explained above, the Tribe has intervened at the earliest possible stage of the proceedings. Because no response to the complaint has been filed, no party would be prejudiced by the Tribe's limited intervention in this matter. *See, e.g.*, *Citizens for Balanced Use*, 647 F.3d at 897.

### ii. Significant Protectable Interest

Second, Rule 24(a) intervenors must have an interest that is "significantly protectable," meaning that it is "protectable under some law" and that there is a "relationship between [the applicant's] legally protected interest and the plaintiff's claims." *City of Los Angeles*, 288 F.3d at 398. The Tribe's interests in this matter could not be more clear and protectible. The Tribe has federal rights to conduct Class III gaming on its own lands, rights to its Compact, which federal law expressly recognizes, and the right to sovereign immunity as a domestic dependent nation. As discussed above, where the complaint seeks to invalidate a contract with a non-party, or impair a contracting non-party's interest in the contract, those protectable interests warrant dismissal under Rule 19. It follows that such non-parties to contracts at issue have significant protectable interests that warrant intervention under Rule 24(a).

Nor could the "relationship between [those] legally protected interest[s] and the plaintiff's claims" be any more direct: Maverick brought this action to infringe all of the Tribe's interests in

8

Motion for Limited Intervention
Case No.: 22-cv-05325-DGE

Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Ste. 8, Sedona AZ, 86336
Tel: (425) 802-5369

StateSER-107

this matter. Maverick's own prayer for relief seeks to "void" the Tribe's Compact, to declare its gaming activities are "illegal" and to "enjoin" the administration of the Compact FAC, Dkt. 66 at 40, prayer for relief ¶¶ 207 (1), (4) and (6).

### iii. Impairment

Third, all of the Tribe's interests would clearly be "impaired by the disposition of the action" in Maverick's favor. *W. Watersheds Project*, 22 F.4th at 835 (quoting *Oakland Bulk & Oversized Terminal*, 960 F.3d at 620). Nullification of the Tribe's Compact would directly impair the Tribe's rights in its Compact. Clearly, a sovereign "has an interest in the validity of a compact to which it is a party, and this interest would be directly affected by . . . relief" that purports to affect the validity of the compact. *Kickapoo Tribe of Indians of Kickapoo Reservation in Kan. v. Babbitt*, 43 F.3d 1491, 1495 (D.C. Cir. 1995).

Voiding the Tribe's Compact could also deprive the Tribe of the legal basis for Class III gaming, threatening to leave the Tribe to once again face the risks of its gaming equipment being seized or the NIGC issuing a closure order, which would leave the Tribe without the means to support core governmental functions.

Finally, Maverick's efforts to make an "'end run' around tribal sovereign immunity" would impair the Tribe's immunity. *Aguayo v. Jewell*, 827 F.3d 1213, 1222 (9th Cir. 2016). It is well established that plaintiffs cannot "circumvent the barrier of sovereign immunity by merely substituting" other parties or officials "in lieu of the Indian tribe." *Dawavendewa* 276 F.3d at 1160. That is because sovereign immunity protects a tribe's ability to "govern [its] reservation," and suits that indirectly attack a Tribe's "ability to negotiate contracts" go to the heart of that core sovereign right. *Id.* at 1157.

Motion for Limited Intervention
Case No.: 22-cv-05325-DGE

Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Ste. 8, Sedona AZ, 86336
Tel: (425) 802-5369

State SER 108

### iv.    *Adequate Representation*

Finally, the Tribe is not adequately represented by the other parties in the case. At the Rule 24 stage, "[t]he burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *W. Watersheds Project*, 22 F.4th at 840 (emphasis added) (quoting *Citizens for Balanced Use*, 647 F.3d at 898). In evaluating whether this "minimal" threshold is met, courts consider "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id.* (emphasis added) (quoting *Citizens for Balanced Use*, 647 F.3d at 898). [4] These factors are satisfied here.

### a.    State Defendants and Federal Defendants Will Not Make the Tribe's Arguments

The first and second factors are satisfied here because no defendant has moved under Rule 12(b)(7) or 19 for failure to join the Tribe, or otherwise raised the Tribe's sovereign immunity. No defendant has indicated in filings, during the April 28, 2022 status conference, or in the scheduling order, that it would make such a motion. And in the process of conferring with the parties in advance of filing this motion, none of the parties—not the United States, not the State, and certainly not Maverick—stated they would raise this Rule 19 issue if the Tribe did not. That

---

[4] These factors apply to determine inadequacy of representation in both the Rule 24 and Rule 19 context. *See Shermeon v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992) ("In assessing an absent party's necessity under Fed.R.Civ.P. 19(a), the question whether that party is adequately represented parallels the question whether a party's interests are so inadequately represented by existing parties as to permit intervention of right under Fed.R.Civ.P. 24(a)."). However, the Rule 24 standard is more liberal standard, as it imposes only a "minimal" burden on a party seeking intervention to show that representation of its interests 'may be' inadequate, *see W. Watersheds*, 22 F.4th at 840-41 (quoting *Citizens for Balanced Use*, 647 F.3d at 898), while Rule 19 requires a court to "determine whether the absent party has a 'legally protected interest' in the subject of the action and, if so, whether the party's absence will 'impair or impede' that interest," *White v. Univ. of Cal.*, 765 F.3d 1010, 1026 (9th Cir. 2014) (quoting Fed. R. Civ. P. 19(a)(1)(A)).

Motion for Limited Intervention
Case No.: 22-cv-05325-DGE

Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Ste. 8, Sedona AZ, 86336
Tel: (425) 802-5369

State SER 109

factor itself demonstrates that their interests diverge from the Tribes. *Friends of Amador County*, 554 Fed. Appx. 562, 564 (9th Cir. 2014). Nor has any defendant raised the argument that constitutional defects in IGRA cannot deprive Tribes of their sovereign rights to govern gaming as established in *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 216, 221–22 (1987). *See United States v. Spokane Tribe*, 139 F.3d 1297 (9th Cir. 1998) (vacating injunction of tribal gaming and remanding for further proceedings in light of Supreme Court holding a portion of IGRA unconstitutional).

### b. The Tribe Will Offer Necessary Elements that the Federal Defendants and the State Defendants Will Neglect.

The third factor is satisfied here because of real or potential conflicts of interest between the Tribe and the parties with respect to issues in the case. Of course, Maverick seeks to shut down Class III gaming on the Tribe's reservation, and thus can be expected to actively oppose the Tribe's interests in this matter. Further, the other named Defendants in this case cannot be counted upon to represent the Tribe.

The Federal Defendants do not adequately represent the Tribe. *Dine Citizens*, 932 F.3d at 847-48, informs that this Court should determine adequacy of representation by looking to the relative position between the parties and the non-parties if the plaintiffs' requested relief is granted. (Although *Dine Citizens* was a Rule 19 case, its analysis of inadequate representation is properly applied in the Rule 24 context, *see supra* at n.*, but should be applied in light of Rule 24's lenience in favor of intervention.)

The United States and its officers' "overriding obligation" is to comply with federal law. *Diné Citizens*, 932 F.3d at 855. "This interest differs in a meaningful sense from" the Tribe's sovereign interest in ensuring that its gaming operations "continue to operate and provide profits to" the tribal government. *Id.*; *accord, e.g.*, *MGM Global Resorts Dev.*, 2020 WL 5545496, at *5.

Motion for Limited Intervention
Case No.: 22-cv-05325-DGE

Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Ste. 8, Sedona AZ 86336
Tel: (425) 802-5369

State SER 110

Those interests can and do diverge—just as they did when the Federal Defendants took action to stop the Tribe from conducting Class III gaming activities on its tribal lands, as more fully discussed in Exhibit A at 5-9. Past experience thus shows that granting the relief that Maverick seeks would create conflict between the Tribe and the Federal Defendants.  For example, the United States may take enforcement action to stop the Tribe's gaming following a court order granting such relief, while the Tribe would resist such an effort. *See Spokane Tribe*, 139 F.3d  at 1297 Accordingly, the Federal Defendants are not able to adequately represent the interests of the Tribe.

Finally, it is black letter law in the Ninth Circuit that a State cannot represent a Tribe's interest in a dispute over tribal gaming.  *American Greyhound Racing, Inc.*, 305 F.3d at 1023, n.5, is the controlling case in the Ninth Circuit on the inadequacy of the State to represent the interest of absent tribes – and although decided in the Rule 19 context, its reasoning is even more compelling here, under the more-lenient Rule 24 inadequate representation test.  In *Greyhound Racing*, a commercial racetrack filed a lawsuit against then-Arizona Governor Hull seeking to invalidate the gaming compacts Arizona had reached with several tribes. The Court noted "the State and the tribes have often been adversaries in disputes over gaming, and the State owes no trust duty to the tribes" and noted the "Governor's and the tribes' interests under the compacts are potentially adverse," *Id.* Those circumstances are also present here, and so the State Defendants are not able to adequately represent the interests of the Tribe.

## III.    CONCLUSION

For the foregoing reasons, the Tribe respectfully requests to intervene under Rule 24(b) or Rule 24(a) for the limited purpose of moving to dismiss pursuant to Rules 19 and 12.

Respectfully submitted this 3rd day of August, 2022.

12

Motion for Limited Intervention
Case No.: 22-cv-05325-DGE

Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Ste. 8, Sedona AZ, 86336
Tel: (425) 802-5369

State SER 111

1

2

3        *s/ Scott Crowell*

         SCOTT CROWELL (WSBA No. 18868)
4        CROWELL LAW OFFICES-TRIBAL
         ADVOCACY GROUP
5        1487 W. State Route 89A, Suite 8
         Sedona, AZ 86336
6        Telephone: (425) 802-5369
         Fax: (509) 290-6953
7        Email: scottcrowell@hotmail.com

8
         LAEL ECHO-HAWK (WSBA No. 34525)
9        MThirtySix, PLLC
         700 Pennsylvania Avenue SE
10       The Yard – 2nd Floor
         Washington, D.C. 20003
11       Telephone: (206) 271-0106
         Email: Lael@MThirtySixPLLC.com
12

13

14       *Attorneys for Limited Intervenors*
         *Shoalwater Bay Tribe*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

Motion for Limited Intervention                 Crowell Law Office-Tribal Advocacy Group
Case No.: 22-cv-05325-DGE                        1487 W. State Route 89A, Ste. 8, Sedona AZ, 86336
                                                 Tel: (425) 802-5369

State SER 112

1

2

3

**CERTIFICATE OF SERVICE**

 

I hereby certify that on August 3, 2022, I filed the foregoing MOTION FOR LIMITED INTERVENTION with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record in this matter.

DATED: August 3, 2022

 

 

<div style="margin-left:40%">

*s/ Scott Crowell*
SCOTT CROWELL (WSBA No. 18868)
CROWELL LAW OFFICES-TRIBAL
ADVOCACY GROUP
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Telephone: (425) 802-5369
Fax: (509) 290-6953
Email: scottcrowell@hotmail.com

</div>

Motion for Limited Intervention
Case No.: 22-cv-05325-DGE

Crowell Law Office-Tribal Advocacy Group
1487 W. State Route 89A, Ste. 8, Sedona AZ, 86336
Tel: (425) 802-5369

State SER 113

THE HONORABLE DAVID G. ESTUDILLO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON

MAVERICK GAMING LLC,

Plaintiff,

v.

UNITED STATES OF AMERICA, et al.,

Defendants.

**Case No. 3:22-CV-05325-DGE**

**Federal Defendants' Response to Shoalwater Bay Indian Tribe's Motion to Dismiss**

Federal Defendants the United States of America et al. ("Federal Defendants") hereby respond to the Shoalwater Bay Indian Tribe of the Shoalwater Bay Indian Reservation's ("Tribe") motion to dismiss (ECF No. 85).

## INTRODUCTION

In this suit, Maverick Gaming LLC ("Plaintiff") asks the Court, *inter alia*, to declare that the Secretary of the Interior's ("Secretary") approval, pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-21 ("IGRA"), of eighteen (18) amendments to tribal-state gaming compacts entered into by eighteen federally recognized Indian tribes and the State of Washington ("State"), violates IGRA, other federal statutes, and the United States Constitution, and further asks the Court to declare as "void" such amendments so as to render them not in effect.  ECF 66

-1-

Federal Defendants' Response to
Shoalwater Bay Indian Tribe's
Motion to Dismiss

(3:22-CV-5325-DGE)

U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
(202) 616-3148

StateSER-114

at 40-41.[1]  Relevant here, Plaintiff's suit includes a challenge to the September 10, 2021 approval of the tribal-state gaming compact amendment entered into between the Tribe and the State.  *See* ECF No. 67-9.

On August 3, 2022, the Tribe moved for limited intervention in this case, ECF No. 68, for the purpose of seeking dismissal of this suit in its entirety pursuant to Fed. R. Civ. P. 19 ("Rule 19").  On September 29, 2022, the Court granted the motion, ECF No. 84, and the Tribe subsequently filed its motion to dismiss on October 3, 2022, ECF No. 85.  The general position of the United States is that in most contexts it is the only required and indispensable party in litigation challenging final agency action under the Administrative Procedure Act, 5 U.S.C. § 704 ("APA").  The United States, however, acknowledges that the Ninth Circuit's opinion in *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843 (2019), *cert denied*, 141 S. Ct. 161 (2020) ("*Dine Citizens*"), controls in this case and supports dismissal pursuant to Rule 19.  *See also Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, 48 F. 4th 934, (9th Cir. 2022) ("*Klamath*"); *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984 (9th Cir. 2020), *cert denied*, 142 S. Ct. 83 (2021) ("*Jamul Action Comm.*").

## BACKGROUND

IGRA "creates a framework for regulating gaming activity on Indian lands."  *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 785 (2014).  In enacting IGRA, Congress sought to establish a system that would balance the competing interests of two sovereigns: tribal and state governments.  On the one hand, IGRA aims "to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency,

---

[1] Plaintiff's First Amended Complaint, including the Prayer for Relief, refers to the Tribe's and other Indian tribes' "compacts."  *See, e.g.*, ECF No. 66 at 3; *id.* at 40.  Federal Defendants contend that Plaintiff is not entitled to any relief whatsoever in this suit.  Further, to the extent Plaintiff challenges compacts or compact amendments that were approved more than six years ago, those claims are barred by the applicable statute of limitations.  *See, e.g.*, *Wind River Mining Corp. v. United States*, 946 F.2d 710 (9th Cir. 1991).  Federal Defendants reserve the right to raise all affirmative defenses, including statute of limitations, in subsequent briefing should the Court proceed to the merits in this case.

-2-

Federal Defendants' Response to
Shoalwater Bay Indian Tribe's
Motion to Dismiss

(3:22-CV-5325-DGE)

U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
(202) 616-3148

and strong tribal governments."  25 U.S.C. § 2702(1); *Confederated Tribes of the Grand Ronde*
*Cmty. of Or. v. Jewell*, 830 F.3d 552, 557 (D.C. Cir. 2016) ("[T]he whole point of the IGRA is to
'provide a statutory basis for the operation of gaming by Indian tribes as means of promoting
tribal economic development, self-sufficiency, and strong tribal governments.'") (quoting
*Diamond Game Enters., Inc. v. Reno*, 230 F.3d 365, 366-67 (D.C. Cir. 2000)).  On the other
hand, the statute contemplates a regulatory and supervisory role for the states and the federal
government to prevent the infiltration of "organized crime and other corrupting influences."  25
U.S.C. § 2702(2).

IGRA divides gaming into three classes.  *See Seminole Tribe of Fla. v. Florida*, 517 U.S.
44, 48 (1996).  The third of these—Class III gaming—is implicated here and includes "casino
games" such as blackjack, roulette and slot machines.  *See Bay Mills Indian Cmty.*, 572 U.S. at
785.  Class III gaming can occur on Indian lands only if "conducted in conformance with" an
approved tribal-state compact "entered into by the Indian tribe and the State," 25 U.S.C.
§ 2710(d)(1)(C), or pursuant to procedures issued by the Secretary, *id.* at § 2710(d)(7).  "The
rationale for the compact system is that 'there is no adequate Federal regulatory system in place
for Class III gaming, nor do tribes have such systems for the regulation of Class III gaming
currently in place,' and thus 'a logical choice is to make use of existing State regulatory systems'
through a negotiated compact."  *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1549 (10th Cir.
1997) (quoting S. Rep. No. 100-446, at 13-14, reprinted in 1988 U.S.C.C.A.N. 3071, 3083-84).

IGRA provides no role for the federal government in the compact negotiation process
between tribes and states.  The Secretary's authority is limited to approving or, for limited
reasons, disapproving a compact entered into between a state and a tribe.  25 U.S.C.
§ 2710(d)(8)(A)-(B).  Congress also directed, however, that "[i]f the Secretary does not approve
or disapprove a compact . . . before the date that is 45 days after the date on which the compact is
submitted to the Secretary for approval, the compact shall be considered to have been approved
by the Secretary, but only to the extent the compact is consistent with the provisions of [IGRA]."

-3-

Federal Defendants' Response to
Shoalwater Bay Indian Tribe's
Motion to Dismiss

(3:22-CV-5325-DGE)

U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
(202) 616-3148

*Id.* § 2710(d)(8)(C).  Compacts approved by the Secretary, or deemed approved by operation of IGRA when the Secretary does not act, become effective after the Secretary publishes notice in the Federal Register.  *See id.* § 2710(d)(3)(B), (d)(8)(D).

Relevant here, the Tribe submitted to the Secretary the fully executed Third Amendment to the Tribal State Compact for Class III Gaming Between the Shoalwater Bay Indian Tribe and the State of Washington ("Compact Amendment"), which Interior received on August 24, 2021. ECF No. 67-6.  The receipt of this submission triggered the Secretary's 45-day review period under IGRA, in which the Secretary could either approve, disapprove, or take no action on the Compact Amendment.  On September 10, 2021, before the expiration of the 45-day review period, the Secretary's delegee, Assistant Secretary–Indian Affairs Bryan Newland, approved the Compact Amendment.  ECF No. 67-9.  Notice of this approval was published in the Federal Register on September 15, 2021.  ECF No. 67-10.

On October 3, 2022, the Tribe moved to dismiss this case.  ECF No. 85.  Citing to *Dine Citizens*, *Jamul Action Comm.*, *Klamath*, and other authority, the Tribe argues it is a required party under Rule 19(a), ECF No. 85 at 22-24, that cannot be joined due to its sovereign immunity, *id.* at 24-25.  The Tribe further argues that the Court should not proceed in its absence under Rule 19(b), and thus this suit should be dismissed in its entirety.  *Id.* at 25-33.  Among other factors, the Tribe points to Plaintiff's effort to use this suit as a means to "void" not only the Compact Amendment, but the entirety of the Tribe's tribal-state compact, to prevent the Tribe from offering any gaming at all.  *Id.* at 22-24.  The Tribe states that Plaintiff's "sweeping" request for relief "would cripple the Tribe's economy, jeopardize government services, and deprive the Tribe of its compact rights."  *Id.* at 25.  The Tribe further contends that "[a]ny relief in Maverick's favor thrusts the Tribe into uncharted legal waters that threaten to terminate its sovereign rights and to destroy the tribal economy."  *Id.* at 25-26.

-4-

Federal Defendants' Response to
Shoalwater Bay Indian Tribe's
Motion to Dismiss

(3:22-CV-5325-DGE)

U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
(202) 616-3148

### THE NINTH CIRCUIT'S *DINE CITIZENS* OPINION

In *Dine Citizens*, plaintiff Dine Citizens Against Ruining Our Environment brought claims under the APA challenging Interior's approval of lease amendments, based on alleged violations of the National Environmental Policy Act and the Endangered Species Act.  *Dine Citizens*, 932 F.3d at 847.  The Plaintiffs challenged, *inter alia*, the Bureau of Indian Affairs' approval of a lease amendment the Navajo Nation had entered into governing coal-mining operations on the Navajo Reservation.

The Navajo Transitional Energy Company, a corporation wholly owned by the Navajo Nation that owned the mine in question, moved to dismiss the action under Rule 19 and Fed. R. Civ. P. 12(b)(7), arguing "that it was a required party but that it could not be joined due to tribal sovereign immunity, and that the lawsuit could not proceed without it."  *Id.* at 847-48.  The federal government opposed the motion, taking the position that the United States is generally the only required and indispensable defendant in such APA challenges.  *Id.* at 850.  However, the district court disagreed and granted the motion, concluding that (1) "the 'relief Plaintiffs seek could directly affect the Navajo Nation . . . by disrupting its "interests in [its] lease agreements and the ability to obtain the bargained-for royalties and jobs;"'" and (2) the United States did not adequately represent Navajo's interests due to Navajo's greater interests in the outcome of the litigation and potential divergence of interest between the Navajo and the United States.  *Id.*

Dine Citizens appealed, and the federal government filed an *amicus* brief in which it again took the position that the United States is generally the only indispensable defendant in such APA litigation.  *Id.* at 858 n.8.  On July 29, 2019, the Ninth Circuit affirmed the district court, rejecting the federal government's argument that the United States is generally the only required and indispensable defendant in such APA challenges to federal agency action.  *Id.* at 858-61.

Federal Defendants' Response to
Shoalwater Bay Indian Tribe's
Motion to Dismiss

(3:22-CV-5325-DGE)

U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
(202) 616-3148

StateSER-118

## UNITED STATES' STATEMENT OF POSITION

The Ninth Circuit's ruling in *Dine Citizens* is controlling authority in this case under the current state of the law in the Ninth Circuit and therefore supports the granting of the Tribe's motion to dismiss.  *See United States v. Gomez-Lopez*, 62 F.3d 304, 306 (9th Cir. 1995); *see also Klamath*, 48 F.4th at 943-48 (Indian tribes required parties and case could not proceed in their absence); *Jamul Action Comm.*, 974 F.3d at 996-98 (Indian tribe required and indispensable party in suit challenging "the trust status of its land and . . . its status as a federally recognized tribe"); *Deschutes River All. v. Portland Gen. Elec. Co.*, 1 F.4th 1153, 1163 (9th Cir. 2021) (holding that, under Rule 19, "[t]he Tribe's sovereign immunity requires dismissal of this suit, in which [plaintiff] challenges the operation of a large hydroelectric project co-owned and co-operated by the Tribe, and located partly on the Tribe's reservation").

This challenge has the potential to impair the Tribe's sovereign interest in protecting its "sovereign rights" and its "tribal economy."  ECF No. 85 at 25-26.  And under *Dine Citizens* and other Ninth Circuit precedent, the Tribe appears to satisfy the other criteria for granting dismissal under Rule 19.  *See Klamath*, 48 F.4th at 943-48; *Jamul Action Comm.*, 974 F.3d at 996-98; *Dine Citizens*, 932 F.3d at 855-56.  The United States therefore does not dispute that the Tribe's motion to dismiss, ECF No. 85, should be granted under the current state of the law in the Ninth Circuit.  For the reasons stated in the government's *amicus* brief filed in *Dine Citizens*, the United States disagrees with the ruling in *Dine Citizens* and reserves the right to assert in future proceedings that the United States is generally the only required and indispensable defendant in APA litigation challenging federal agency action.

DATED: October 24, 2022.

Respectfully submitted,
TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

-6-

Federal Defendants' Response to
Shoalwater Bay Indian Tribe's
Motion to Dismiss

(3:22-CV-5325-DGE)

U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
(202) 616-3148

/s/ _Rebecca M. Ross_

JODY H. SCHWARZ                     HILLARY K. HOFFMAN, Trial Attorney
Senior Attorney                    REBECCA M. ROSS, Senior Attorney
U.S. Department of the Interior    Indian Resources Section
Office of the Solicitor            Environment and Natural Resources Division
Division of Indian Affairs         United States Department of Justice

                                   _Attorneys for the United States_

-7-

Federal Defendants' Response to              U.S. Department of Justice
Shoalwater Bay Indian Tribe's               P.O. Box 7611
Motion to Dismiss                           Washington, DC 20044
                                            (202) 616-3148
(3:22-CV-5325-DGE)

StateSER-120

# CERTIFICATE OF SERVICE

I, Rebecca M. Ross, hereby certify that on October 24, 2022, I caused the foregoing FEDERAL DEFENDANTS' RESPONSE TO SHOALWATER BAY INDIAN TRIBE'S MOTION TO DISMISS to be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ *Rebecca M. Ross*
REBECCA M. ROSS, Senior Attorney
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice

Federal Defendants' Response to
Shoalwater Bay Indian Tribe's
Motion to Dismiss

(3:22-CV-5325-DGE)

U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
(202) 616-3148

**Query**   **Reports**   **Utilities**   **Help**   **Log Out**

CLOSED,APPEAL,TRANSIN

# U.S. District Court
# United States District Court for the Western District of Washington (Tacoma)
# CIVIL DOCKET FOR CASE #: 3:22-cv-05325-DGE

Maverick Gaming LLC v. United States of America et al
Assigned to: U.S. District Judge David G Estudillo
Case in other court: District of Columbia, 1:22-cv-00068
                  9th Circuit Court of Appeals, 23-35136
Cause: 05:702 Administrative Procedure Act

Date Filed: 05/09/2022
Date Terminated: 02/21/2023
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Maverick Gaming LLC**

        represented by  **Lochlan F Shelfer**
GIBSON DUNN & CRUTCHER (DC)
1050 CONNECTICUT AVE NW
WASHINGTON, DC 20036-5303
202-955-8558
Fax: 443-824-2122
Email: lshelfer@gibsondunn.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew D McGill**
GIBSON DUNN & CRUTCHER (DC)
1050 CONNECTICUT AVE NW
WASHINGTON, DC 20036-5303
202-955-8500
Fax: 202-467-0539
Email: mmcgill@gibsondunn.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Theodore B Olson**
GIBSON DUNN & CRUTCHER (DC)
1050 CONNECTICUT AVE NW
WASHINGTON, DC 20036-5303
202-955-8500
Email: tolson@gibsondunn.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas Matthew Brennan**
BRENNAN LEGAL PLLC
P.O. BOX 1384
EDMONDS, WA 98026

425-967-3550
Email: tom@brennanlegalpllc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**United States of America**                        represented by **Daron T Carreiro**
US DEPARTMENT OF JUSTICE (ENRD -
BOX 7611)
ENVIRONMENTAL AND NATURAL
RESOURCES DIVISION
PO BOX 7611
BEN FRANKLIN STATION
WASHINGTON, DC 20044-7611
202-305-1117
Email: daron.carreiro@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hillary K Hoffman**
US DEPARTMENT OF JUSTICE (ENRD -
BOX 7611)
ENVIRONMENTAL AND NATURAL
RESOURCES DIVISION
PO BOX 7611
BEN FRANKLIN STATION
WASHINGTON, DC 20044-7611
202-598-3147
Email: hillary.hoffman@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Rebecca M Ross**
US DEPARTMENT OF JUSTICE (ENRD -
BOX 7611)
ENVIRONMENTAL AND NATURAL
RESOURCES DIVISION
PO BOX 7611
BEN FRANKLIN STATION
WASHINGTON, DC 20044-7611
202-616-3148
Fax: 202-305-0275
Email: rebecca.ross@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States Department of the Interior**        represented by **Daron T Carreiro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hillary K Hoffman**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca M Ross**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Deb Haaland**
*in her official capacity as Secretary of the*
*Interior*

represented by **Daron T Carreiro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hillary K Hoffman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rebecca M Ross**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bryan Newland**
*in his official capacity as Assistant*
*Secretary Indian Affairs*

represented by **Daron T Carreiro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hillary K Hoffman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rebecca M Ross**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jay Inslee**
*in his official capacity as the Governor of*
*Washington*

represented by **Brian Hunt Rowe**
ATTORNEY GENERAL'S OFFICE
(SEATTLE)
800 FIFTH AVENUE
STE 2000
SEATTLE, WA 98104
206-389-3888
Email: brian.rowe@atg.wa.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristin Beneski**
ATTORNEY GENERAL'S OFFICE (SEA-
FIFTH AVE)
800 5TH AVE
STE 2000

SEATTLE, WA 98104-3188
206-464-7459
Email: kristin.beneski@atg.wa.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tera M Heintz**
ATTORNEY GENERAL'S OFFICE
(40100-OLY)
PO BOX 40100
1125 WASHINGTON ST SE
OLYMPIA, WA 98504-0100
360-664-3027
Fax: 360-664-2963
Email: tera.heintz@atg.wa.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William McGinty**
ATTORNEY GENERAL'S OFFICE
(40111-OLY)
7141 CLEANWATER DRIVE SW
PO BOX 40111
OLYMPIA, WA 98504-0111
360-709-6470
Fax: 360-586-6659
Email: william.mcginty@atg.wa.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Robert Ferguson**
*in his official capacity as the Attorney
General of Washington*

represented by **Brian Hunt Rowe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristin Beneski**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tera M Heintz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William McGinty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Alicia Levy**
*in her official capacity as Chair of the*

represented by **Brian Hunt Rowe**
(See above for address)

*Washington State Gambling Commission*

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristin Beneski**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tera M Heintz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William McGinty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Julia Patterson**
*in her official capacity as Vice-Chair of the*
*Washington State Gambling Commission*

represented by **Brian Hunt Rowe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristin Beneski**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tera M Heintz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William McGinty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bud Sizemore**
*in his official capacity as Commissioner of*
*the Washington State Gambling Commission*

represented by **Brian Hunt Rowe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristin Beneski**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tera M Heintz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William McGinty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kristine Reeves**
*in her official capacity as Commissioner of the Washington State Gambling Commission*

represented by **Brian Hunt Rowe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristin Beneski**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tera M Heintz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William McGinty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sarah Lawson**
*in her official capacity as Commissioner of the Washington State Gambling Commission*

represented by **Brian Hunt Rowe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristin Beneski**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tera M Heintz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William McGinty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Steve Conway**
*in his official capacity as ex officio member of the Washington State Gambling Commission*

represented by **Brian Hunt Rowe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

StateSER-127

**Kristin Beneski**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tera M Heintz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William McGinty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jeff Holy**
*in his official capacity as ex officio member of the Washington State Gambling Commission*

represented by **Brian Hunt Rowe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristin Beneski**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tera M Heintz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William McGinty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Shelley Kloba**
*in her official capacity as ex officio member of the Washington State Gambling Commission*

represented by **Brian Hunt Rowe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristin Beneski**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tera M Heintz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William McGinty**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Brandon Vick**
*in his official capacity as ex officio member of the Washington State Gambling Commission*

represented by **Brian Hunt Rowe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristin Beneski**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tera M Heintz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William McGinty**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Tina Griffin**
*in her official capacity as Director of the Washington State Gambling Commission*

represented by **Brian Hunt Rowe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristin Beneski**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tera M Heintz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor**

**Shoalwater Bay Tribe**

represented by **Scott D Crowell**
LAW OFFICE OF SCOTT D CROWELL
1487 W. STATE ROUTE 89A
SUITE 8
SEDONA, AZ 86336
425-802-5369
Fax: 509-290-6953
Email: scottcrowell@hotmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Suquamish Tribe**                    represented by  **Keith M Harper**
JENNER & BLOCK (DC)
1099 NEW YORK AVE NW
STE 900
WASHINGTON, DC 20001
202-639-6000
Email: kharper@jenner.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leonard R Powell**
JENNER & BLOCK (DC)
1099 NEW YORK AVE NW
STE 900
WASHINGTON, DC 20001
202-639-6000
Email: LeonardPowell@jenner.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy Woolsey**
OFFICE OF RESERVATION ATTORNEY
(SUQUAMISH)
PO BOX 498
SUQUAMISH, WA 98392
360-394-8493
Email: twoolsey@suquamish.nsn.us
*ATTORNEY TO BE NOTICED*

**Amicus**

**Confederated Tribes of the Chehalis
Reservation**

**Amicus**

**Hoh Indian Tribe**

**Amicus**

**Kalispel Tribe of Indians**

**Amicus**

**Makah Indian Tribe**

**Amicus**

**Nisqually Indian Tribe**

**Amicus**

**Nooksack Indian Tribe**

**Amicus**

**Port Gamble S'Klallam Tribe**

Amicus

**Puyallup Tribe of Indians**

Amicus

**Quinault Tribe**

Amicus

**Samish Indian Nation**

Amicus

**Skokomish Indian Tribe**

Amicus

**Spokane Tribe**

Amicus

**Squaxin Tribe**

Amicus

**Swinomish Indian Tribal Community**

Amicus

**Tulalip Tribes**

Amicus

**Confederated Tribes and Bands of the Yakama Nation**

| Date Filed | # | Docket Text |
|---|---|---|
| 01/11/2022 | 1 | COMPLAINT against All Defendants ( Filing fee $ 402 receipt number ADCDC-8972495) filed by MAVERICK GAMING LLC. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons, # 8 Summons, # 9 Summons, # 10 Summons, # 11 Summons, # 12 Summons, # 13 Summons, # 14 Summons, # 15 Summons, # 16 Summons, # 17 Summons)(Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 01/11/2022) |
| 01/11/2022 | 2 | NOTICE of Appearance by Theodore B. Olson on behalf of All Plaintiffs (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 01/11/2022) |
| 01/11/2022 | 3 | NOTICE of Appearance by Matthew D. McGill on behalf of All Plaintiffs (McGill, Matthew) [Transferred from dcd on 5/9/2022.] (Entered: 01/11/2022) |
| 01/11/2022 | 4 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by MAVERICK GAMING LLC (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 01/11/2022) |
| 01/11/2022 | | Case Assigned to Judge Florence Y. Pan. (zsb) [Transferred from dcd on 5/9/2022.] (Entered: 01/11/2022) |
| 01/11/2022 | 5 | CIVIL COVER SHEET by MAVERICK GAMING LLC re 1 Complaint, filed by MAVERICK GAMING LLC. Related document: 1 Complaint, filed by MAVERICK |

| | | |
|---|---|---|
| | | GAMING LLC.(Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 01/11/2022) |
| 01/11/2022 | 6 | STANDING ORDER: The parties are hereby ORDERED to comply with the directives set forth in the attached Standing Order. See document for details. Signed by Judge Florence Y. Pan on 1/11/2022. (lcsw) [Transferred from dcd on 5/9/2022.] (Entered: 01/11/2022) |
| 01/19/2022 | 7 | SUMMONS (16) Issued Electronically as to All Defendants and U.S. Attorney General (Attachment: # 1 Notice and Consent)(zsb) [Transferred from dcd on 5/9/2022.] (Entered: 01/19/2022) |
| 02/04/2022 | 8 | WAIVER OF SERVICE. JAY INSLEE waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/04/2022) |
| 02/04/2022 | 9 | WAIVER OF SERVICE. ROBERT FERGUSON waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/04/2022) |
| 02/04/2022 | 10 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 01/24/22. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/04/2022) |
| 02/04/2022 | 11 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 1/26/2022. Answer due for ALL FEDERAL DEFENDANTS by 3/27/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/04/2022) |
| 02/04/2022 | 12 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. UNITED STATES DEPARTMENT OF THE INTERIOR served on 1/21/2022 (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/04/2022) |
| 02/04/2022 | 13 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. DEB HAALAND served on 1/21/2022 (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/04/2022) |
| 02/04/2022 | 14 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. BRYAN NEWLAND served on 1/21/2022 (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/04/2022) |
| 02/11/2022 | 15 | WAIVER OF SERVICE. BUD SIZEMORE waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
| 02/11/2022 | 16 | WAIVER OF SERVICE. JULIA PATTERSON waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
| 02/11/2022 | 17 | WAIVER OF SERVICE. ALICIA LEVY waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
| 02/11/2022 | 18 | WAIVER OF SERVICE. KRISTINE REEVES waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
| 02/11/2022 | 19 | WAIVER OF SERVICE. SARAH LAWSON waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
| 02/11/2022 | 20 | WAIVER OF SERVICE. STEVE CONWAY waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
| 02/11/2022 | 21 | WAIVER OF SERVICE. JEFF HOLY waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |

| 02/11/2022 | 22 | WAIVER OF SERVICE. SHELLEY KLOBA waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
|---|---|---|
| 02/11/2022 | 23 | WAIVER OF SERVICE. BRANDON VICK waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
| 02/11/2022 | 24 | WAIVER OF SERVICE. TINA GRIFFIN waiver sent on 1/21/2022, answer due 3/22/2022. (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
| 02/11/2022 | 25 | NOTICE of Appearance by Kristin Beneski on behalf of STEVE CONWAY, ROBERT FERGUSON, TINA GRIFFIN, JEFF HOLY, JAY INSLEE, SHELLEY KLOBA, SARAH LAWSON, ALICIA LEVY, JULIA PATTERSON, KRISTINE REEVES, BUD SIZEMORE, BRANDON VICK (Beneski, Kristin) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
| 02/11/2022 | 26 | NOTICE of Appearance by Hillary Hoffman on behalf of DEB HAALAND, BRYAN NEWLAND, UNITED STATES DEPARTMENT OF THE INTERIOR, UNITED STATES OF AMERICA (Hoffman, Hillary) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
| 02/11/2022 | 27 | NOTICE of Appearance by Daron Tate Carreiro on behalf of DEB HAALAND, BRYAN NEWLAND, UNITED STATES DEPARTMENT OF THE INTERIOR, UNITED STATES OF AMERICA (Carreiro, Daron) [Transferred from dcd on 5/9/2022.] (Entered: 02/11/2022) |
| 02/18/2022 | 28 | MOTION for Limited Admission *of Brian H. Rowe* by ROBERT FERGUSON. (Beneski, Kristin) [Transferred from dcd on 5/9/2022.] (Entered: 02/18/2022) |
| 02/18/2022 | 29 | MOTION for Limited Admission *of Tera Heintz* by ROBERT FERGUSON. (Beneski, Kristin) [Transferred from dcd on 5/9/2022.] (Entered: 02/18/2022) |
| 02/22/2022 | | MINUTE ORDER denying 28 MOTION for Limited Admission of Brian H. Rowe under Local Civil Rule 83.2(d). Defendant is directed to proceed in accordance with LCvR 83.2(f), which applies to attorneys employed by a state. Signed by Judge Florence Y. Pan on 2/22/2022. (lcsw) [Transferred from dcd on 5/9/2022.] (Entered: 02/22/2022) |
| 02/22/2022 | | MINUTE ORDER denying 29 MOTION for Limited Admission of Tera Heintz under Local Civil Rule 83.2(d). Defendant is directed to proceed in accordance with LCvR 83.2(f), which applies to attorneys employed by a state. Signed by Judge Florence Y. Pan on 2/22/2022. (lcsw) [Transferred from dcd on 5/9/2022.] (Entered: 02/22/2022) |
| 02/24/2022 | 30 | MOTION to Transfer Case by STEVE CONWAY, ROBERT FERGUSON, TINA GRIFFIN, JEFF HOLY, JAY INSLEE, SHELLEY KLOBA, SARAH LAWSON, ALICIA LEVY, JULIA PATTERSON, KRISTINE REEVES, BUD SIZEMORE, BRANDON VICK. (Attachments: # 1 Memorandum in Support of Motion to Transfer, # 2 Declaration of Brian H. Rowe ISO Mtn Transfer, # 3 Exhibit Exhibit A to Declaration of Brian H. Rowe)(Beneski, Kristin) [Transferred from dcd on 5/9/2022.] (Entered: 02/24/2022) |
| 02/24/2022 | 31 | MOTION to Stay by STEVE CONWAY, ROBERT FERGUSON, TINA GRIFFIN, JEFF HOLY, JAY INSLEE, SHELLEY KLOBA, SARAH LAWSON, ALICIA LEVY, JULIA PATTERSON, KRISTINE REEVES, BUD SIZEMORE, BRANDON VICK. (Attachments: # 1 Memorandum in Support of Motion to Stay)(Beneski, Kristin) [Transferred from dcd on 5/9/2022.] (Entered: 02/24/2022) |
| 03/02/2022 | 32 | NOTICE of Appearance by Brian Hunt Rowe on behalf of STEVE CONWAY, ROBERT FERGUSON, TINA GRIFFIN, JEFF HOLY, JAY INSLEE, SHELLEY KLOBA, SARAH LAWSON, ALICIA LEVY, JULIA PATTERSON, KRISTINE REEVES, BUD |

| | | |
|---|---|---|
| | | SIZEMORE, BRANDON VICK (Rowe, Brian) [Transferred from dcd on 5/9/2022.] (Entered: 03/02/2022) |
| 03/10/2022 | 33 | NOTICE of Change of Address by Theodore B. Olson (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 03/10/2022) |
| 03/10/2022 | 34 | ENTERED IN ERROR.....AMENDED COMPLAINT against All Defendants filed by MAVERICK GAMING LLC. (Attachments: # 1 Redline Comparison of Original and Amended Complaint)(Olson, Theodore) Modified on 3/11/2022 (zjf). [Transferred from dcd on 5/9/2022.] (Entered: 03/10/2022) |
| 03/10/2022 | 35 | MOTION for Leave to File *First Amended Complaint*, MOTION to Dismiss *Washington State Defendants* by MAVERICK GAMING LLC. (Attachments: # 1 Exhibit First Amended Complaint, # 2 Exhibit Redline Comparison of Original and Amended Complaint)(Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 03/10/2022) |
| 03/10/2022 | 36 | NOTICE of Proposed Order by MAVERICK GAMING LLC re 35 MOTION for Leave to File *First Amended Complaint* MOTION to Dismiss *Washington State Defendants* (Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 03/10/2022) |
| 03/10/2022 | 37 | Memorandum in opposition to re 30 MOTION to Transfer Case filed by MAVERICK GAMING LLC. (Attachments: # 1 Text of Proposed Order)(Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 03/10/2022) |
| 03/11/2022 | | NOTICE OF CORRECTED DOCKET ENTRY: Document No. re 34 Amended Complaint was entered in error and refiled as DE# 35 .(zjf) [Transferred from dcd on 5/9/2022.] (Entered: 03/11/2022) |
| 03/15/2022 | 38 | REPLY to opposition to motion re 31 MOTION to Stay filed by STEVE CONWAY, ROBERT FERGUSON, TINA GRIFFIN, JEFF HOLY, JAY INSLEE, SHELLEY KLOBA, SARAH LAWSON, ALICIA LEVY, JULIA PATTERSON, KRISTINE REEVES, BUD SIZEMORE, BRANDON VICK. (Attachments: # 1 Text of Proposed Order Proposed Order on Mtn Stay)(Rowe, Brian) [Transferred from dcd on 5/9/2022.] (Entered: 03/15/2022) |
| 03/16/2022 | 39 | ORDER granting 31 Motion to Stay. Signed by Judge Florence Y. Pan on 3/16/2022. (lcsw) [Transferred from dcd on 5/9/2022.] (Entered: 03/16/2022) |
| 03/17/2022 | 40 | NOTICE of Appearance by Tera M. Heintz on behalf of STEVE CONWAY, ROBERT FERGUSON, TINA GRIFFIN, JEFF HOLY, JAY INSLEE, SHELLEY KLOBA, SARAH LAWSON, ALICIA LEVY, JULIA PATTERSON, KRISTINE REEVES, BUD SIZEMORE, BRANDON VICK (Heintz, Tera) [Transferred from dcd on 5/9/2022.] (Entered: 03/17/2022) |
| 03/17/2022 | 41 | REPLY to opposition re 30 MOTION to Transfer Case , filed by STEVE CONWAY, ROBERT FERGUSON, TINA GRIFFIN, JEFF HOLY, JAY INSLEE, SHELLEY KLOBA, SARAH LAWSON, ALICIA LEVY, JULIA PATTERSON, KRISTINE REEVES, BUD SIZEMORE, BRANDON VICK. (Rowe, Brian) [Transferred from dcd on 5/9/2022.] (Entered: 03/17/2022) |
| 03/24/2022 | 42 | RESPONSE re 35 MOTION for Leave to File *First Amended Complaint* MOTION to Dismiss *Washington State Defendants* filed by STEVE CONWAY, ROBERT FERGUSON, TINA GRIFFIN, JEFF HOLY, JAY INSLEE, SHELLEY KLOBA, SARAH LAWSON, ALICIA LEVY, JULIA PATTERSON, KRISTINE REEVES, BUD SIZEMORE, BRANDON VICK. (Attachments: # 1 Text of Proposed Order on Motion to file Amended Complaint)(Beneski, Kristin) [Transferred from dcd on 5/9/2022.] (Entered: 03/24/2022) |

| 03/31/2022 | 43 | REPLY to opposition to motion re 35 MOTION for Leave to File *First Amended Complaint* MOTION to Dismiss *Washington State Defendants* filed by MAVERICK GAMING LLC. (Attachments: # 1 Exhibit Exhibit A)(Olson, Theodore) [Transferred from dcd on 5/9/2022.] (Entered: 03/31/2022) |
| 04/01/2022 | | NOTICE OF HEARING: Motions Hearing set for 4/28/2022 at 2:00 PM via Zoom videoconference before Judge Florence Y. Pan. (zacr) [Transferred from dcd on 5/9/2022.] (Entered: 04/01/2022) |
| 04/21/2022 | 44 | NOTICE of Appearance by Rebecca M. Ross on behalf of DEB HAALAND, BRYAN NEWLAND, UNITED STATES DEPARTMENT OF THE INTERIOR, UNITED STATES OF AMERICA (Ross, Rebecca) [Transferred from dcd on 5/9/2022.] (Entered: 04/21/2022) |
| 04/26/2022 | 45 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Lochlan F. Shelfer, Filing fee $ 100, receipt number ADCDC-9197058. Fee Status: Fee Paid. by MAVERICK GAMING LLC. (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(McGill, Matthew) [Transferred from dcd on 5/9/2022.] (Entered: 04/26/2022) |
| 04/27/2022 | | MINUTE ORDER granting 45 MOTION for Leave to Appear Pro Hac Vice. It is hereby ORDERED that Lochlan F. Shelfer is admitted pro hac vice in this matter as counsel for Plaintiff Maverick Gaming LLC. **Counsel should register for e-filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Florence Y. Pan on 4/27/2022. (lcsw) [Transferred from dcd on 5/9/2022.] (Entered: 04/27/2022) |
| 04/28/2022 | 46 | NOTICE of Appearance by Lochlan Francis Shelfer on behalf of MAVERICK GAMING LLC (zjf) [Transferred from dcd on 5/9/2022.] (Entered: 04/28/2022) |
| 04/28/2022 | | Minute Entry for proceedings held before Judge Florence Y. Pan: Motion Hearing held via video on 4/28/2022 re 30 MOTION to Transfer Case and 35 MOTION for Leave to File *First Amended Complaint*. Oral arguments heard. 30 Motion to Transfer Case is GRANTED. This case will be transferred to the Western District of Washington. 35 MOTION for Leave to File *First Amended Complaint* will be addressed by the transferee court. Transfer due by 5/8/2022. (Court Reporter Nancy Meyer.) (zacr) [Transferred from dcd on 5/9/2022.] (Entered: 04/28/2022) |
| 05/09/2022 | 47 | Case transferred in from District of District of Columbia, Case Number 1:22-cv-00068. (Entered: 05/09/2022) |
| 05/09/2022 | | U.S. District Judge David G. Estudillo added. (AMD) (Entered: 05/09/2022) |
| 05/09/2022 | 48 | LETTER from Clerk to counsel re receipt of case from the District of Columbia and advising of WAWD case number and judge assignment; and information regarding future notice and LCR 83.1(d)(1) which requires association with local counsel and instructions for Admission Pro Hac Vice. (AMD) (Entered: 05/09/2022) |
| 05/12/2022 | 49 | NOTICE of Appearance by attorney Thomas Matthew Brennan on behalf of Plaintiff Maverick Gaming LLC. (Brennan, Thomas) (Entered: 05/12/2022) |
| 05/12/2022 | 50 | CORPORATE DISCLOSURE STATEMENT indicating no Corporate Parents and/or Affiliates. Filed pursuant to Fed.R.Civ.P 7.1. Filed by Maverick Gaming LLC (Brennan, Thomas) (Entered: 05/12/2022) |
| 05/13/2022 | 51 | APPLICATION OF ATTORNEY Lochlan F. Shelfer FOR LEAVE TO APPEAR PRO HAC VICE for Plaintiff Maverick Gaming LLC (Fee Paid) Receipt No. AWAWDC-7552730 (Brennan, Thomas) (Entered: 05/13/2022) |

| 05/13/2022 | 52 | APPLICATION OF ATTORNEY Matthew D. McGill FOR LEAVE TO APPEAR PRO HAC VICE for Plaintiff Maverick Gaming LLC (Fee Paid) Receipt No. AWAWDC-7552746 (Brennan, Thomas) (Entered: 05/13/2022) |
|---|---|---|
| 05/13/2022 | 53 | APPLICATION OF ATTORNEY Theodore B. Olson FOR LEAVE TO APPEAR PRO HAC VICE for Plaintiff Maverick Gaming LLC (Fee Paid) Receipt No. AWAWDC-7552749 (Brennan, Thomas) (Entered: 05/13/2022) |
| 05/13/2022 | 54 | ORDER re 52 Application for Leave to Appear Pro Hac Vice. The Court ADMITS Attorney Matthew D McGill for Plaintiff Maverick Gaming LLC by Clerk Ravi Subramanian. No document associated with this docket entry, text only. |
| | | *NOTE TO COUNSEL: Local counsel agrees to **sign all filings** and to be prepared to handle the matter, including the trial thereof, in the event the applicant is unable to be present on any date scheduled by the court, pursuant to LCR 83.1(d).* (JWC) (Entered: 05/13/2022) |
| 05/16/2022 | 55 | ORDER re 51 Application for Leave to Appear Pro Hac Vice. The Court ADMITS Attorney Lochlan F Shelfer for Maverick Gaming LLC by Clerk Ravi Subramanian. No document associated with this docket entry, text only. |
| | | *NOTE TO COUNSEL: Local counsel agrees to **sign all filings** and to be prepared to handle the matter, including the trial thereof, in the event the applicant is unable to be present on any date scheduled by the court, pursuant to LCR 83.1(d).* (JWC) (Entered: 05/16/2022) |
| 05/16/2022 | 56 | ORDER re 53 Application for Leave to Appear Pro Hac Vice. The Court ADMITS Attorney Theodore B Olson for Plaintiff Maverick Gaming LLC by Clerk Ravi Subramanian. No document associated with this docket entry, text only. |
| | | *NOTE TO COUNSEL: Local counsel agrees to **sign all filings** and to be prepared to handle the matter, including the trial thereof, in the event the applicant is unable to be present on any date scheduled by the court, pursuant to LCR 83.1(d).* (JWC) (Entered: 05/16/2022) |
| 05/16/2022 | 57 | ORDER REGARDING INITIAL DISCLOSURES, JOINT STATUS REPORT, DISCOVERY, DEPOSITIONS AND EARLY SETTLEMENT: FRCP 26(f) Conference Deadline is 8/1/2022, Initial Disclosure Deadline is 8/8/2022, Joint Status Report due by 8/15/2022, Status Conference set for 8/23/2022 at 9:30 AM via Zoom before U.S. District Judge David G. Estudillo. Signed by U.S. District Judge David G. Estudillo. (MGC) (Entered: 05/16/2022) |
| 05/19/2022 | 58 | NOTICE *of Withdrawal of Pending Motion* re 35 MOTION for Leave to File *First Amended Complaint* MOTION to Dismiss *Washington State Defendants* ; filed by Plaintiff Maverick Gaming LLC. (Brennan, Thomas) (Entered: 05/19/2022) |
| 06/21/2022 | 59 | NOTICE of Appearance by attorney William McGinty on behalf of Defendants Steve Conway, Robert Ferguson, Jeff Holy, Jay Inslee, Shelley Kloba, Sarah Lawson, Alicia Levy, Julia Patterson, Kristine Reeves, Bud Sizemore, Brandon Vick. (McGinty, William) (Entered: 06/21/2022) |
| 06/21/2022 | 60 | Stipulated MOTION *for Relief from Deadlines and Proposing Briefing Schedule*, filed by Plaintiff Maverick Gaming LLC. Noting Date 6/21/2022, (Brennan, Thomas) (Entered: 06/21/2022) |
| 06/27/2022 | 61 | NOTICE of Hearing on 60 Stipulated MOTION for Relief from Deadlines and Proposing Briefing Schedule: Motion Hearing set for 6/28/2022 at 1:30 PM via Zoom before U.S. |

| | | District Judge David G. Estudillo. (MGC) (Entered: 06/27/2022) |
|---|---|---|
| 06/28/2022 | 62 | MINUTE ENTRY for proceedings held before U.S. District Judge David G. Estudillo-Dep Clerk: *Gretchen Craft*; Pla Counsel: *Lochlan Shelfer, Matthew McGill, Thomas Brennan*; Def Counsel: *Hillary Hoffman, Kristin Beneski, Tera Heintz*; CR: *Angela Nicolavo*; Time of Hearing: *1:30*; Courtroom: *Zoom*; **Motion Hearing** held on 6/28/2022 re 60 Stipulated MOTION for Relief from Deadlines and Proposing Briefing Schedule filed by Maverick Gaming LLC. Court GRANTS the parties motion as requested. Order will be entered. (MGC) (Entered: 06/28/2022) |
| 06/28/2022 | 63 | ORDER granting 60 Stipulated Motion for Relief from Deadlines: Amended Complaint due by 7/1/2022, Plaintiff's Dispositive motion due by 9/12/2022, Defendants' Dispositive motions due by 9/12/2022, FRCP 26(f) Conference Deadline is 8/1/2022, Initial Disclosure Deadline is 8/8/2022, Joint Status Report due by 8/15/2022, Administrative Record due by 7/15/2022 signed by U.S. District Judge David G. Estudillo.(ZMG) (Entered: 06/28/2022) |
| 07/01/2022 | 64 | Unopposed AMENDED COMPLAINT against All Defendants, filed by Maverick Gaming LLC.(Brennan, Thomas) (Entered: 07/01/2022) |
| 07/05/2022 | 65 | **Notice of Filing Deficiency** re 64 Amended Complaint. ***Action Required***<br>See attached letter for more information and instructions. (AMD) (Entered: 07/05/2022) |
| 07/05/2022 | 66 | Unopposed AMENDED COMPLAINT *Correcting Caption* against All Defendants, filed by Maverick Gaming LLC.(Brennan, Thomas) (Entered: 07/05/2022) |
| 07/15/2022 | 67 | NOTICE *of Filing of the Certified Administrative Record* ; filed by Defendants Deb Haaland, Bryan Newland, United States Department of the Interior, United States of America. (Attachments: # 1 Exhibit Maverick_v_DOI_0000001, # 2 Exhibit Maverick_v_DOI_0000022, # 3 Exhibit Maverick_v_DOI_0000024, # 4 Exhibit Maverick_v_DOI_0000047, # 5 Exhibit Maverick_v_DOI_0000073, # 6 Exhibit Maverick_v_DOI_0000103, # 7 Exhibit Maverick_v_DOI_0000131, # 8 Exhibit Maverick_v_DOI_0000135, # 9 Exhibit Maverick_v_DOI_0000139, # 10 Exhibit Maverick_v_DOI_0000143, # 11 Exhibit Maverick_v_DOI_0000144, # 12 Exhibit Maverick_v_DOI_0000145, # 13 Exhibit Maverick_v_DOI_0000146, # 14 Exhibit Maverick_v_DOI_0000149, # 15 Exhibit Maverick_v_DOI_0000152, # 16 Exhibit Maverick_v_DOI_0000176, # 17 Exhibit Maverick_v_DOI_0000178, # 18 Exhibit Maverick_v_DOI_0000179, # 19 Exhibit Maverick_v_DOI_0000205, # 20 Exhibit Maverick_v_DOI_0000206, # 21 Exhibit Maverick_v_DOI_0000209, # 22 Exhibit Maverick_v_DOI_0000245, # 23 Exhibit Maverick_v_DOI_0000273, # 24 Exhibit Maverick_v_DOI_0000351, # 25 Exhibit Maverick_v_DOI_0000378, # 26 Exhibit Maverick_v_DOI_0000406, # 27 Exhibit Maverick_v_DOI_0000641, # 28 Exhibit Maverick_v_DOI_0000643, # 29 Exhibit Maverick_v_DOI_0000645, # 30 Exhibit Maverick_v_DOI_0000646, # 31 Exhibit Maverick_v_DOI_0000647, # 32 Exhibit Maverick_v_DOI_0000649, # 33 Exhibit Maverick_v_DOI_0000650, # 34 Exhibit Maverick_v_DOI_0000651, # 35 Exhibit Maverick_v_DOI_0000703, # 36 Exhibit Maverick_v_DOI_0000704, # 37 Exhibit Maverick_v_DOI_0000705, # 38 Exhibit Maverick_v_DOI_0000706, # 39 Exhibit Maverick_v_DOI_0000707, # 40 Exhibit Maverick_v_DOI_0000708, # 41 Exhibit Maverick_v_DOI_0000709, # 42 Exhibit Maverick_v_DOI_0000710, # 43 Exhibit Maverick_v_DOI_0000711, # 44 Exhibit Maverick_v_DOI_0000712, # 45 Exhibit Maverick_v_DOI_0000713, # 46 Exhibit Maverick_v_DOI_0000714, # 47 Exhibit Maverick_v_DOI_0000715, # 48 Exhibit Maverick_v_DOI_0000716, # 49 Exhibit Maverick_v_DOI_0000717, # 50 Exhibit Maverick_v_DOI_0000718, # 51 Exhibit Maverick_v_DOI_0000719, # 52 Exhibit Maverick_v_DOI_0000723, # 53 Exhibit Maverick_v_DOI_0000750, # 54 Exhibit Maverick_v_DOI_0000751, # 55 Exhibit Maverick_v_DOI_0000783, # 56 Exhibit |

| | | |
|---|---|---|
| | | Maverick_v_DOI_0000787, # <u>57</u> Exhibit Maverick_v_DOI_0000788, # <u>58</u> Exhibit Maverick_v_DOI_0000789, # <u>59</u> Exhibit Maverick_v_DOI_0000790, # <u>60</u> Exhibit Maverick_v_DOI_0001047, # <u>61</u> Exhibit Maverick_v_DOI_0001048, # <u>62</u> Exhibit Maverick_v_DOI_0001075, # <u>63</u> Exhibit Maverick_v_DOI_0001076, # <u>64</u> Exhibit Maverick_v_DOI_0001077, # <u>65</u> Exhibit Maverick_v_DOI_0001078, # <u>66</u> Exhibit Maverick_v_DOI_0001107, # <u>67</u> Exhibit Maverick_v_DOI_0001108, # <u>68</u> Exhibit Maverick_v_DOI_0001111, # <u>69</u> Exhibit Maverick_v_DOI_0001159, # <u>70</u> Exhibit Maverick_v_DOI_0001160, # <u>71</u> Exhibit Maverick_v_DOI_0001161)(Ross, Rebecca) (Entered: 07/15/2022) |
| 08/03/2022 | <u>68</u> | MOTION to Intervene Attorney Scott D Crowell added to party Shoalwater Bay Tribe(pty:intv), filed by Intervenor Shoalwater Bay Tribe. Oral Argument Requested. (Attachments: # <u>1</u> Exhibit A-Proposed Motion to Dismiss, # <u>2</u> Exhibit B-Declaration of Charlene Nelson, # <u>3</u> Exhibit B-1 to Declaration of Charlene Nelson, # <u>4</u> Exhibit B-2 to Declaration of Charlene Nelson, # <u>5</u> Exhibit B-3 to Declaration of Charlene Nelson, # <u>6</u> Exhibit B-4 to Declaration of Charlene Nelson, # <u>7</u> Proposed Order Granting Motion for Limited Intervention) Noting Date 8/19/2022, (Crowell, Scott) (Entered: 08/03/2022) |
| 08/03/2022 | <u>69</u> | MOTION for Relief *From Summary Judgment Deadlines*, filed by Intervenor Shoalwater Bay Tribe. Oral Argument Requested. (Attachments: # <u>1</u> Proposed Order Granting Motion for Relief from Summary Judgment Deadlines) Noting Date 8/12/2022, (Crowell, Scott) (Entered: 08/03/2022) |
| 08/03/2022 | <u>70</u> | CORPORATE DISCLOSURE STATEMENT indicating no Corporate Parents and/or Affiliates. Filed pursuant to Fed.R.Civ.P 7.1. Filed by Shoalwater Bay Tribe (Crowell, Scott) (Entered: 08/03/2022) |
| 08/10/2022 | <u>71</u> | RESPONSE, by Plaintiff Maverick Gaming LLC, to <u>69</u> MOTION for Relief *From Summary Judgment Deadlines*. (Attachments: # <u>1</u> Proposed Order)(Brennan, Thomas) (Entered: 08/10/2022) |
| 08/10/2022 | <u>72</u> | NOTICE of Joinder JOINING <u>69</u> MOTION for Relief *From Summary Judgment Deadlines*, by Defendants Steve Conway, Robert Ferguson, Tina Griffin, Jeff Holy, Jay Inslee, Shelley Kloba, Sarah Lawson, Alicia Levy, Julia Patterson, Kristine Reeves, Bud Sizemore, Brandon Vick. (Rowe, Brian) (Entered: 08/10/2022) |
| 08/12/2022 | <u>73</u> | REPLY, filed by Intervenor Shoalwater Bay Tribe, TO RESPONSE to <u>69</u> MOTION for Relief *From Summary Judgment Deadlines* (Crowell, Scott) (Entered: 08/12/2022) |
| 08/12/2022 | <u>74</u> | DECLARATION of Scott Crowell in Support of Motion for Relief from Summary Judgment Deadlines filed by Intervenor Shoalwater Bay Tribe re <u>69</u> MOTION for Relief *From Summary Judgment Deadlines* (Attachments: # <u>1</u> Exhibit 1 to Declaration of Scott Crowell)(Crowell, Scott) (Entered: 08/12/2022) |
| 08/12/2022 | <u>75</u> | MOTION for Summary Judgment , filed by Plaintiff Maverick Gaming LLC. Oral Argument Requested. (Attachments: # <u>1</u> Proposed Order) Noting Date 11/4/2022, (Brennan, Thomas) (Entered: 08/12/2022) |
| 08/12/2022 | <u>76</u> | DECLARATION of Eric Persson re <u>75</u> MOTION for Summary Judgment by Plaintiff Maverick Gaming LLC (Brennan, Thomas) (Entered: 08/12/2022) |
| 08/12/2022 | <u>77</u> | DECLARATION of Jonathan Chavez re <u>75</u> MOTION for Summary Judgment by Plaintiff Maverick Gaming LLC (Attachments: # <u>1</u> Exhibit)(Brennan, Thomas) (Entered: 08/12/2022) |
| 08/15/2022 | <u>78</u> | RESPONSE, by Plaintiff Maverick Gaming LLC, to <u>68</u> MOTION to Intervene Attorney Scott D Crowell added to party Shoalwater Bay Tribe(pty:intv). (Attachments: # <u>1</u> Proposed Order)(Brennan, Thomas) (Entered: 08/15/2022) |

| | | |
|---|---|---|
| 08/19/2022 | 79 | REPLY, filed by Intervenor Shoalwater Bay Tribe, TO RESPONSE to 68 MOTION to Intervene Attorney Scott D Crowell added to party Shoalwater Bay Tribe(pty:intv) (Crowell, Scott) (Entered: 08/19/2022) |
| 08/19/2022 | 80 | DECLARATION of Scott Crowell in Support of Motion for Limited Intervention filed by Intervenor Shoalwater Bay Tribe re 68 MOTION to Intervene Attorney Scott D Crowell added to party Shoalwater Bay Tribe(pty:intv) (Attachments: # 1 Exhibit 1 to Declaration of Scott Crowell, # 2 Exhibit 2 to Declaration of Scott Crowell, # 3 Exhibit 3(A) to Declaration of Scott Crowell, # 4 Exhibit 3(B) to Declaration of Scott Crowell, # 5 Exhibit 3(C) to Declaration of Scott Crowell, # 6 Exhibit 3(D) to Declaration of Scott Crowell, # 7 Exhibit 3(E) to Declaration of Scott Crowell)(Crowell, Scott) (Entered: 08/19/2022) |
| 08/22/2022 | 81 | ORDER granting Intervenor Shoalwater Bay Tribe's 69 Motion for Relief from Summary Judgment Deadlines. The briefing schedule (Dkt. No. 63 ) is STAYED. The parties shall meet and confer to set deadlines for dispositive motions and submit a joint motion to the Court no later than 10 days after the Court's decision on the Tribe's Motion for Limited Intervention. Signed by U.S. District Judge David G. Estudillo.(MW) (Entered: 08/22/2022) |
| 09/12/2022 | 82 | NOTICE of Supplemental Authority re 68 MOTION to Intervene Attorney Scott D Crowell added to party Shoalwater Bay Tribe(pty:intv) by Intervenor Shoalwater Bay Tribe (Attachments: # 1 Exhibit 1)(Crowell, Scott) (Entered: 09/12/2022) |
| 09/19/2022 | 83 | RESPONSE ~~SUPPLEMENT~~ re 82 Notice of Supplemental Authority *filed by Shoalwater Bay Tribe* by Plaintiff Maverick Gaming LLC (Brennan, Thomas) Modified on 9/20/2022 (MW). (Entered: 09/19/2022) |
| 09/29/2022 | 84 | ORDER granting Shoalwater Bay Tribe's 68 Motion to Intervene. Shoalwater Bay Tribe shall file its Motion to Dismiss (Dkt. No. 68 -1) no later than 10/3/2022. Plaintiff and Defendants shall submit their responses by 10/24/2022 and Shoalwater Bay Tribe shall submit its reply by 10/28/2022. The briefing schedule (Dkt. No. 63 ) remains STAYED. The Court amends its prior order (Dkt. No. 81 at 8) and does not require the parties to meet and confer to set deadlines for dispositive motions for submission 10 days after the Court's order on the Tribe's Motion for Limited Intervention. The Court orders the parties to meet and confer to set deadlines for dispositive motions and submit a joint motion to the Court no later than 10 days after the Court's decision on the Tribe's Motion to Dismiss. Signed by U.S. District Judge David G Estudillo.(MW) (Entered: 09/29/2022) |
| 10/03/2022 | 85 | MOTION to Dismiss , filed by Intervenor Shoalwater Bay Tribe. Oral Argument Requested. Noting Date 10/28/2022, (Crowell, Scott) (Entered: 10/03/2022) |
| 10/03/2022 | 86 | DECLARATION of Charlene Nelson filed by Intervenor Shoalwater Bay Tribe re 85 MOTION to Dismiss (Attachments: # 1 Exhibit B-1, # 2 Exhibit B-2, # 3 Exhibit B-3, # 4 Exhibit B-4)(Crowell, Scott) (Entered: 10/03/2022) |
| 10/11/2022 | 87 | MOTION for Leave to File */ Non-Party Tribes' Consent Motion for Leave to File Amicus Curiae Brief in Support of Limited Intervenor Shoalwater Bay Tribe's Motion to Dismiss*, filed by ~~Intervenor Shoalwater Bay Tribe~~ Non-Party Tribes (the Suquamish Tribe). (Attachments: # 1 Attachment A - (Proposed) Amicus Curiae Brief, # 2 Attachment B - Proposed Order) Noting Date 10/11/2022, (Woolsey, Timothy) Modified on 10/12/2022 to update docket entry filer (KB). (Entered: 10/11/2022) |
| 10/12/2022 | 88 | APPLICATION OF ATTORNEY Keith M. Harper FOR LEAVE TO APPEAR PRO HAC VICE for Amicus the Suquamish Tribe (Fee Paid) Receipt No. AWAWDC-7735653 (Woolsey, Timothy) (Entered: 10/12/2022) |

| 10/12/2022 | 89 | APPLICATION OF ATTORNEY Leonard R. Powell FOR LEAVE TO APPEAR PRO HAC VICE for Amicus the Suquamish Tribe (Fee Paid) Receipt No. AWAWDC-7735654 (Woolsey, Timothy) (Entered: 10/12/2022) |
|---|---|---|
| 10/12/2022 | | NOTICE of Docket Text Modification re 87 MOTION for Leave to File / *Non-Party Tribes' Consent Motion for Leave to File Amicus Curiae Brief in Support of Limited Intervenor Shoalwater Bay Tribe's Motion to Dismiss* : Modified on 10/12/2022 to indicate that docket entry was filed by Amicus party added as the Suquamish Tribe, not Intervenor Shoalwater Bay Tribe. (KB) (Entered: 10/12/2022) |
| 10/12/2022 | | NOTE: Motion for Leave to File Amicus Brief 87 was filed incorrectly/improperly. Appearance of attorney Tim Woolsey is not proper, and notices of electronic filing will not be sent until corrected. Signatures must be in accordance with FRCP 11 and LCR 83.2(a) and must comply with ECF Filing Procedures. (MW) (Entered: 10/12/2022) |
| 10/13/2022 | 90 | NOTICE of Appearance by attorney Timothy Woolsey on behalf of Amicus Suquamish Tribe. (Woolsey, Timothy) (Entered: 10/13/2022) |
| 10/17/2022 | 91 | ORDER granting Amici Tribes' 87 Motion for Leave to File Amicus Curiae Brief. The amicus brief attached as Dkt. No. 87-1 is hereby deemed filed on the date of this order. Signed by U.S. District Judge David G Estudillo.(MW) (Main Document 91 replaced with updated signature date on 10/17/2022) (MW). (Entered: 10/17/2022) |
| 10/18/2022 | 92 | ORDER re 88 Application for Leave to Appear Pro Hac Vice. The Court ADMITS Attorney Keith M Harper for Amicus Suquamish Tribe by Clerk Ravi Subramanian. No document associated with this docket entry, text only. *NOTE TO COUNSEL: Local counsel agrees to **sign all filings** and to be prepared to handle the matter, including the trial thereof, in the event the applicant is unable to be present on any date scheduled by the court, pursuant to LCR 83.1(d).* (JWC) (Entered: 10/18/2022) |
| 10/18/2022 | 93 | ORDER re 89 Application for Leave to Appear Pro Hac Vice. The Court ADMITS Attorney Leonard R Powell for Amicus Suquamish Tribe by Clerk Ravi Subramanian. No document associated with this docket entry, text only. *NOTE TO COUNSEL: Local counsel agrees to **sign all filings** and to be prepared to handle the matter, including the trial thereof, in the event the applicant is unable to be present on any date scheduled by the court, pursuant to LCR 83.1(d).* (JWC) (Entered: 10/18/2022) |
| 10/24/2022 | 94 | RESPONSE, by Defendants Deb Haaland, Bryan Newland, United States Department of the Interior, United States of America, to 85 MOTION to Dismiss . (Ross, Rebecca) (Entered: 10/24/2022) |
| 10/24/2022 | 95 | RESPONSE, by Defendants Steve Conway, Robert Ferguson, Tina Griffin, Jeff Holy, Jay Inslee, Shelley Kloba, Sarah Lawson, Alicia Levy, Julia Patterson, Kristine Reeves, Bud Sizemore, Brandon Vick, to 85 MOTION to Dismiss . (Beneski, Kristin) (Entered: 10/24/2022) |
| 10/24/2022 | 96 | RESPONSE, by Plaintiff Maverick Gaming LLC, to 85 MOTION to Dismiss . (Brennan, Thomas) (Entered: 10/24/2022) |
| 10/28/2022 | 97 | REPLY, filed by Intervenor Shoalwater Bay Tribe, TO RESPONSE to 85 MOTION to Dismiss (Crowell, Scott) (Entered: 10/28/2022) |
| 02/21/2023 | 98 | ORDER granting Shoalwater's 85 Motion to Dismiss. Maverick's claims are dismissed without prejudice. Signed by U.S. District Judge David G Estudillo.(MW) (Entered: |

| | | 02/21/2023) |
|---|---|---|
| 02/21/2023 | 99 | JUDGMENT BY COURT. Limited Intervenor Shoalwater Bay Indian Tribe of the Shoalwater Bay Indian Reservation's ("Shoalwater") motion to dismiss (Dkt. No. 85 ) is GRANTED and Maverick'sclaims are dismissed without prejudice. (MW) (Entered: 02/21/2023) |
| 02/22/2023 | 100 | NOTICE OF APPEAL to Ninth Circuit (23-35136) re 98 Order on Motion to Dismiss, 99 Judgment by Court by Plaintiff Maverick Gaming LLC. $505, receipt number AWAWDC-7900154 (cc: USCA) (Attachments: # 1 Representation Statement)(Brennan, Thomas) Modified on 2/24/2023 to add CCA # only (AMD). (Entered: 02/22/2023) |
| 02/23/2023 | 101 | TIME SCHEDULE ORDER/APPEAL NUMBER 23-35136 for 100 Notice of Appeal filed by Maverick Gaming LLC. (AMD) (Entered: 02/24/2023) |
| 03/06/2023 | 102 | NOTICE *Intent Not to Order Transcripts* ; filed by Plaintiff Maverick Gaming LLC. (Brennan, Thomas) (Entered: 03/06/2023) |
| 03/21/2023 | 103 | NOTICE *No Party Intends to Order Transcripts* ; filed by Plaintiff Maverick Gaming LLC. (Brennan, Thomas) (Entered: 03/21/2023) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/01/2023 15:08:26 | | |
| **PACER Login:** | Allcomplexlit | **Client Code:** | 10977342 NMG |
| **Description:** | Docket Report | **Search Criteria:** | 3:22-cv-05325-DGE |
| **Billable Pages:** | 19 | **Cost:** | 1.90 |