No. 23-35136

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

MAVERICK GAMING LLC,

*Plaintiff-Appellant*,

v.

UNITED STATES OF AMERICA, *et. al*.,

*Defendant-Appellee*,

SHOALWATER BAY TRIBE,

*Intervenor-Defendant-Appellee*.

_____

On appeal from the United States District Court, Western District of Washington
Case No. 3:22-cv-05325-DGE

The Honorable David G. Estudillo

_____

**SHOALWATER BAY TRIBE'S ANSWERING BRIEF**

_____

| | |
|---|---|
| Lael Echo-Hawk | Scott Crowell |
| MTHIRTYSIX, PLLC | CROWELL LAW OFFICE |
| 700 Pennsylvania Avenue SE | TRIBAL ADVOCACY GROUP LLP |
| The Yard-2nd Floor | 1487 W. State Route 89A, Ste. 8 |
| Washington, D.C. 20003 | Sedona, AZ 86336 |
| Telephone: (206) 271-0106 | Telephone:  (425) 802-5369 |
| Email: Lael@MThirtySixPLLC.com | Email:  scottcrowell@clotag.net |

# **TABLE OF CONTENTS**

I.     INTRODUCTION…………………………………………………………...1

II.    JURISDICTIONAL STATEMENT…………………………………………2

III.   STATEMENT OF THE ISSUES……………………………………………2

IV. STATEMENT OF THE CASE…………………………………………………..3

    A. Background……………………………………………………………3

        1.     Statutory Context: The Tribal-State Gaming Compact………..3

             a.     Federal Law: The Indian Gaming Regulatory Act……...3

             b.     State Law:  Statutory Structure for Negotiation and Ratification of Tribal-State Gaming Compacts…………5

        2.     Historical Context:  Limited Intervenor Shoalwater Bay Indian Tribe's Adversarial Relationship with the Federal and State Defendants……………………………………………………..6

    B. Procedural History………………………………………………………12

V.     SUMMARY OF ARGUMENT……………………………………………14

VI.   LEGAL STANDARDS……………………………………………………16

VII.  ARGUMENT………………………………………………………………19

i

A. The Federal Defendants Are Not Able to Adequately Represent the Tribe's Protectable Interests…………………………………………………….20

    1. The Federal Defendants Are Incapable of Adequately Representing the Tribe's Interests on Counts II and III, Which Are Not Claims Against the United States, But Against the State…………………22

    2. The Federal and State Defendants Cannot Be Expected to Assert an Important Legal Argument that the Tribe Would Raise: Namely, Invalidation of the Tribe's Compact Would Not Invalidate the Tribe's Right to Offer Class III Gaming…………………………23

    3. The District Court Correctly Applied *Dine Citizens* and *Klamath Irrigation* to the Specific Facts and Circumstances of Maverick's Claims………………………………………………………………30

B. Maverick's Unreasonable Invitation for the Federal Courts to Enjoin the State From Enforcing its Criminal Laws Regarding Gambling Should Be Rejected……………………………………………………………39

C. The Tribe Did Not Waive Its Sovereign Immunity from Suit By Seeking Limited Intervention in the District Court………………………………44

D. All Other Aspects of Rule 19 Have Been Satisfied by the Tribe…………48

    1. The Tribe is a Required or Necessary Party under Rule 19(a)…….48

2. All Four Factors Considered under Rule 19(b) Weigh in the Tribe's Favor……………………………………………………..51

3. The Narrow Public Rights Exception Does Not Apply Where the Claims Threaten an Absent Party Tribe's Legal Entitlement and Sovereignty……………………………………………………54

VIII. CONCLUSION……………………………………………………57

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aguayo v. Jewell*,
   827 F.3d 1213 (9th Cir. 2016) ...............................................................49

*Alto v. Black*,
   738 F.3d 1111 (9th Cir. 2013) .....................................................20, 26

*American Greyhound Racing, Inc. v. Hull*,
   305 F.3d 1022 (9th Cir. 2002) ...................................21, 48, 50, 52, 56

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003) ...............................................................36

*Arce v. Douglas*,
   793 F.3d 968 (9th Cir. 2015) ...............................................................41

*Artichoke Joe's California Grand Casino v. Norton*,
   353 F.3d 712 (9th Cir. 2003) .....................................................20, 33

*Backcountry Against Dumps v. United States Bureau of Indian Affairs*,
   2022 WL 15523095 (9th Cir. 2022) .....................................32, 44, 45

*Barr v. Am. Ass'n of Political Consultants, Inc.*,
   140 S. Ct. 2335 (2020)...........................................................................41

*Bd. of Regents of Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc.*,
   653 F.3d 448 (7th Cir. 2011) ..........................................................46, 47

*Behrens v. Donnelly*,
   236 F.R.D. 509 (D. Hawaii 2006)..........................................................19

*Berger v. North Carolina State Conference of the NAACP*,
   142 S. Ct. 2191 (2022)............................................................................37

*Bodi v. Shingle Springs* Band,
   832 F.3d 1011 (9th Cir. 2016) ...............................................................46

*Bond v. United States*,
   564 U.S. 211 (2011)................................................................................56

*Bordenkircher v. Hayes*,
   434 U.S. 357 (1978)................................................................................40

*Cachil Dehe Band of Wintun Indians of the Colusa Indian Community v.*
   *California*,
   547 F.3d 962 (9th Cir. 2008) ...........................................................17, 19

*Califano v. Westcott*,
   443 U.S. 76 (1979)..................................................................................41

*California v. Cabazon Band of Mission Indians*,
   480 U.S. 202 (1987)..................................................................................3

*Callahan v. Brookdale Senior Living Communities, Inc.*,
   42 F.4th 1013 (9th Cir. 2022) ...............................................37

*Chicken Ranch Rancheria of Me-wuk Indians v. California*,
   42 F.4th 1024 (9th Cir. 2022) ............................................3, 5

*Citizens Against Casino Gambling in Erie Cnty. v. Kempthorne*,
   471 F. Supp. 2d 295 (W.D.N.Y. 2007)................................34

*Comenout v. Whitener*,
   2015 WL 917631 (W.D. Wash. 2015)..................................53

*Confed. Tribes of Chehalis Indian Reservation v. Washington*,
   96 F.3d 334 (9th Cir. 1996) ...................................................7

*Confederated Tribes of the Chehalis Indian Reservation v. Lujan*,
   928 F.2d 1496 (9th Cir. 1991) .......................................17, 50

*Conner v. Burford*,
   848 F.2d 1441 (9th Cir. 1988) .............................................54

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*,
   276 F.3d 1150 (9th Cir. 2002) .....................................*passim*

*Deschutes River All. V. Portland Gen. Elec. Co.*,
   1 F.4th 1153 (9th Cir. 2021) ................................................18

*Dine Citizens Against Ruining Our Environment v. Bureau of Indian Affairs*,
   932 F.3d 843 (9th Cir, 2020) ........................................................................*passim*

*E.E.O.C. v. Peabody Western Coal Co.*,
   400 F.3d 774 (9th Cir. 2005) ...............................................................17

*Enterprise Management Consultants, Inc. v. United States ex rel. Hodel*,
   883 F.2d 890 (10th Cir. 1989) ..............................................................53

*Harris v. Lake of the Torches Resort*,
   2015 WL 1014778 (Wisc. App. March 10, 2015) ..............................................45

*Heath v. Alabama*,
   474 U.S. 82 (1985)..............................................................................40

*Idaho v. Shoshone-Bannock Tribes*,
   465 F.3d 1095 (9th Cir. 2006) .....................................................48, 56

*In re Greektown Holdings*,
   *LLC*, 917 F.3d 451 (6th Cir. 2019) *abrogated on other grounds*, 143 S. Ct. 1689
   (2023)..............................................................................................47

*Jamul Action Comm. v. Simermeyer*,
   974 F.3d 984 (9th Cir. 2020) .....................................................17, 32

*Kennedy v. United States Dept. of the Interior*,
   282 F.R.D. 588 (E.D. Cal. 2012) ...........................................................55

*Kescoli v. Babbitt*,
   101 F.3d 1304 (9th Cir. 1996) ................................................................18, 51, 54

*Kickapoo Tribe of Indians of Kickapoo Reservation in Kan. v. Babbitt*,
   43 F.3d 1491 (D.C. Cir. 1995) ...........................................................................48

*Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*,
   523 U.S. 751 (1998).............................................................................................44

*Klamath Irrigation Dist. v. United States Bureau of Reclamation*,
   48 F.4th 934 (9th Cir. 2022) ......................................................................*passim*

*Knox v. U.S. Dep't of Interior*,
   759 F. Supp. 2d 1223 (D. Idaho 2010) ..............................................................34

*Lapides v. Bd. of Regents of Univ. Sys. of Ga.*,
   535 U.S. 613 (2002)......................................................................................46, 47

*League of Educ. Voters v. State*,
   176 Wash.2d 808 (2013).....................................................................................41

*Makah Indian Tribe v. Verity*,
   910 F.2d 555 (9th Cir. 1990) .......................................................................17, 55

*McDonald v. Means*,
   309 F.3d 530 (9th Cir. 2002) .............................................................................35

*McShan v. Sherrill*,

    283 F.2d 462 (9th Cir. 1960) ...............................................................19

*Michigan v. Bay Mills Indian Cmty.*,

    572 U.S. 782 (2014) ...........................................................................44

*MM&A Productions v. Yavapai Apache Nation*,

    234 Ariz. 60 (Ariz. App. 2014) .........................................................45

*National Licorice Co. v. N.L.R.B.*,

    309 U.S. 350 (1940) ...........................................................................54

*Newtok Village v. Patrick*,

    21 F.4th 608 (9th Cir. 2021) ..............................................................44

*Northern Alaska Envtl. Ctr. v. Hodel*,

    803 F.2d 466 (9th Cir. 1986) .............................................................19

*Pettigrew v. Oklahoma ex rel. Okla. Dep't of Pub. Safety*,

    722 F.3d 1209 (10th Cir. 2013) .........................................................47

*Pit River Home and Agr. Co-op Ass'n v United States*,

    30 F.3d 1088 (9th Cir. 1994) .............................................................50

*Quileute  Indian Tribe v. Babbitt*,

    18 F.3d 1456 (9th Cir. 1994) .............................................................53

*Republic of Philippines v. Pimental*,

    553 U.S. 853 (2008) ......................................................................17

*Safe Air v. Meyer*,

    373 F.3d 1035 (9th Cir. 2004) ......................................................19

*Salt River Project Agric. Improvement & Power Dist. v. Lee*,

    672 F.3d 1176 (9th Cir. 2012) ................................................17, 26

*Santa Clara Pueblo v. Martinez*,

    436 U.S. 49 (1978) ........................................................................44

*Seminole Nation of Okla. v. Norton*,

    206 F.R.D. 1 (D.D.C. 2001) ..........................................................35

*Seminole Tribe v. Florida*,

    517 U.S. 44 (1996) ................................................................4, 5, 27

*Sessions v. Morales-Santana*,

    137 S. Ct. 1678 (2017) ..................................................................41

*Shermoen v. United States*,

    982 F.2d 1312 (9th Cir. 1992) ................................................18, 54

*Southwest Ctr. for Biological Diversity v. Babbitt*,

150 F.3d 1152 (9th Cir. 1998) ......................................................26, 28

*Spokane Tribe v. Washington State,*

  28 F.3d 991 (9th Cir. 1994) ....................................................................5

*TrafficSchool.com, Inc. v. Edriver Inc.,*

  653 F.3d 820 (9th Cir. 2011) ...............................................................16

*Trbovich v. Mine Workers,*

  404 U.S. 528 (1972)..............................................................................37

*Tulalip Tribes of Wash. v. Washington,*

  783 F.3d 1151 (9th Cir. 2015) ...............................................................3

*Union Pacific Railroad Co.v. Runyon,*

  320 F.R.D. 245 (D. Oregon 2017) .......................................................54

*United States v. Alpine Land & Reservoir Co.,*

  431 F.2d 763 (9th Cir. 1970) ...............................................................35

*United States v. Bowen,*

  172 F.3d 682 (9th Cir. 1999) ...............................................................17

*United States v. City of Los Angeles,*

  288 F.3d 391 (9th Cir. 2002) ...............................................................36

*United States v. Confederated Tribes of the Colville Reservation,*

  205 F.3d 1352 (9th Cir. 1999) ........................................................5, 11

*United States v. Oregon*,

    657 F.2d 1009 (9th Cir. 1981) ............................................................46

*United States v. Shoalwater Bay Indian Tribe*,

    205 F.3d 1353 (9th Cir. 1999) ...............................................................7

*United States v. Spokane Tribe*,

139 F.3d 1297 (9th Cir. 1998) ...............................................7, 11, 27, 28, 29

*United States v. USF&G*,

    309 U.S. 506 (1940) ............................................................................45

*Victim Rts. L. Ctr. v. Rosenfelt*,

    988 F.3d 556 (1st Cir. 2021) ...............................................................36

*W. Flagler Assocs. v. Haaland*,

    573 F. Supp. 3d 260 (D.D.C. 2021) ...................................................21

*W. Flagler Assocs. v. Haaland*,

    71 F.4th 1059 (D.C. Cir. June 30, 2023) ............................................21

*W. Watersheds Project v. Abbey*,

    719 F.3d 1035 (9th Cir. 2013) ............................................................30

*W. Watersheds Project v. Haaland*,

    22 F.4th 828 (9th Cir. 2022) ...............................................................37

*Ward v. Apple, Inc.*,

   791 F.3d 1041 (9th Cir. 2015) ............................................................18

*White v. Univ. of Cal.*,

   765 F.3d 1010 (9th Cir. 2014) ...........................................17, 53, 54

*Wichita & Affiliated Tribes v. Hodel*,

   788 F.2d 763 (D.C. Cir.1986) ............................................................47

*Yakama Indian Nation v. Locke*,

   176 F.3d 467 (9th Cir. 1999) ..............................................................5

**Statutes**

18 U.S.C. § 1166 ...................................................................................4

18 U.S.C. §1955 ...................................................................................4

25 U.S.C. § 2702(1) .........................................................................3, 56

25 U.S.C. § 2705(a)...............................................................................4

25 U.S.C. § 2710(a)...............................................................................4

25 U.S.C. § 2710(d)(3)(A) ....................................................................4

25 U.S.C. § 2710(d)(7)(A)(ii) ..............................................................4

25 U.S.C. 2710(d)(8)(B)(iii) ..............................................................38

25 U.S.C. § 2713 ...........................................................................................4

Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721 ("IGRA") .............*passim*

Laws of 2020, Chapter 127 § 1 ....................................................................6

R.C.W. § 9.46.360 .........................................................................................5

Wash. Rev. Code § 9.46.222 ........................................................................41

**Other Authorities**

67 Fed. Reg. 68152 (2002) ............................................................................9

72 Fed. Reg. 30392 (2007) ............................................................................9

80 Fed. Reg. 31918 (2015) ............................................................................9

86 Fed. Reg. 51373 (2021) ............................................................................9

88 Fed. Reg. No. 8, 2112, 2114 (2023) ........................................................6

Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure: Civil 3d*. § 1359 at 68 (2004) .............................................................19

xiv

**Rules**

Fed. R. Civ. P.

12(b)(7) ....................................................................................14, 20, 45

19 ................................................................................................*passim*

19(a) ..........................................................................................*passim*

19(a)(1)(B)(ii) ....................................................................................50

19(b) ..........................................................................................*passim*

24 ................................................................................34, 35, 36, 37

24(a)(2) ..............................................................................................36

**Constitutional Provisions**

H. Com. & Gaming 2638, 66th Leg., Reg. Sess. (Wash. 2020)..............................41

House Bill Report H.B. 2638,
https://lawfilesext.leg.wa.gov/biennium/2019-
20/Pdf/Bill%20Reports/House/2638%20HBR%20APP%2020.pdf?q=202205190
85734 ..................................................................................................11

Wash. Const. Art. II, Sec. 24.............................................................41, 42

## I.    INTRODUCTION

Plaintiff/Appellant Maverick Gaming LLC ("Maverick") seeks to halt gaming authorized under tribal-state compacts between the State of Washington ("State") and twenty-nine Indian tribes ("Washington Tribes") entered into under the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721 ("IGRA"). The Washington Tribes are the true target of Maverick's lawsuit, as the requested relief is intended to shutter tribally-owned and operated casinos across the State, and to deprive the Washington Tribes of critical sources of funding for essential governmental services. Yet, Maverick has not brought this action against any of the Washington Tribes, each of which possesses Indian lands within the boundaries of the State.  Instead, Maverick sues the United States, various federal officials (collectively, "Federal Defendants"), and various officials of the State (collectively, "State Defendants").

There is a reason for the Washington Tribes' absence from Maverick's corrected First Amended Complaint, ER-84-123[1] ("FAC"): the Washington Tribes are immune from suit.  Maverick cannot sue the Washington Tribes directly seeking a declaration that their gaming is illegal.  So, Maverick attempts to circumvent the Washington Tribes' immunity by suing the Federal Defendants and the State

---

[1] The Tribe refers to Appellant's Excerpts of Record as "ER." Because there are three Appellee Response Briefs, for clarity, the Tribe refers to its Excerpts of Record as "TribeSER."

Defendants instead. This type of gamesmanship is precisely the circumstance that Rule 19 of the Federal Rules of Civil Procedure prevents – having a suit proceed in the absence of a necessary and required party.

The stated purpose of Maverick's lawsuit is to stop the Washington Tribes' class III gaming operations. Limited Intervenor/Appellee, the Shoalwater Bay Indian Tribe ("Tribe") has not waived its sovereign immunity from the lawsuit. As the Tribe is a required party that cannot be joined to the lawsuit, the lawsuit cannot in equity and good conscience proceed in the Tribe's absence. Accordingly, the district court was correct in dismissing Maverick's lawsuit.

## II. JURISDICTIONAL STATEMENT

The Tribe does not dispute Maverick's Jurisdictional Statement in its Opening Brief ("OB") at 3-4.

## III. STATEMENT OF THE ISSUES

1. Whether the district court properly exercised its discretion in finding that the Tribe is a required party under Rule 19(a) in this action that seeks a declaration that all tribal gaming activities and all tribal gaming compacts in Washington are illegal.

2. Whether, accepting that the Tribe is a required party in this case and cannot be joined, the district court properly exercised its discretion in finding that this action cannot proceed in equity and good conscience

under Rule 19(b) given that Maverick seeks to invalidate all tribal gaming and tribal gaming compacts in Washington.

## IV. STATEMENT OF THE CASE

### A. Background

#### 1. Statutory Context: The Tribal-State Gaming Compact

"In Washington, the process for entering into tribal gaming compacts is governed by both federal and state law." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1153 (9th Cir. 2015).

#### a. Federal Law: The Indian Gaming Regulatory Act

In 1987, the Supreme Court ruled that due to "traditional notions of Indian sovereignty and the congressional goal of Indian self-government," states may not regulate tribal gaming on tribal land absent congressional authorization. *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 216, 221–22 (1987). The following year, Congress enacted IGRA with the purpose of creating a regulatory framework for Indian gaming that would allow for "gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments." 25 U.S.C. § 2702(1).

Consistent with its purpose, IGRA broadly protects Indian tribes' rights to conduct and regulate gaming activities within a three-tier framework. *See e.g., Chicken Ranch Rancheria of Me-wuk Indians v. California*, 42 F.4th 1024, 1032 (9th

Cir. 2022). Class I gaming (traditional games) and Class II gaming (bingo and non-banked card games) are regulated principally by tribes. 25 U.S.C. § 2710(a). But Class III gaming (including casino games and sports betting) is regulated differently, because IGRA provides an opportunity for states to be involved in the regulatory oversight and in the establishment of policy parameters for tribal gaming by negotiating compacts that will "govern[] the conduct of [Class III] gaming activities" on Indian land. 25 U.S.C. § 2710(d)(3)(A).

Congress vested the National Indian Gaming Commission ("NIGC") and the Department of Justice ("DOJ") with authority to take action against illegal gaming on Indian lands. 25 U.S.C. §§ 2705(a) and 2713; 18 U.S.C. §§ 1166 and 1955. Congress vested the federal courts with jurisdiction over an action by a state against a tribe for breach of a gaming compact. 25 U.S.C. § 2710(d)(7)(A)(ii).

The Tribe takes issue with Maverick's characterization of IGRA (OB at 5-8). In theory, a tribe may sue a state and seek IGRA's remedies if the state fails to negotiate a tribal gaming compact in good faith (OB at 8). In practice, however, state Eleventh Amendment immunity usually forecloses such suits. *See Seminole Tribe v. Florida*, 517 U.S. 44 (1996) (Tribes cannot pursue IGRA's remedial provisions against un-consenting states; IGRA's abrogation of state Eleventh Amendment immunity is unconstitutional). Washington State has routinely asserted Eleventh Amendment immunity to defeat lawsuits brought by tribes under IGRA. *See e.g.*,

*Yakama Indian Nation v. Locke*, 176 F.3d 467 (9th Cir. 1999); *Spokane Tribe v. Washington State*, 28 F.3d 991 (9th Cir. 1994); *United States v. Confederated Tribes of the Colville Reservation*, 205 F.3d 1352(table), 1999 WL 1269335 (9th Cir. 1999) (unpublished decision). The ramifications of *Seminole Tribe* were at the core of the decade-long adversarial relationship among the Tribe, the Federal Defendants and the State Defendants in the 1990s, which as discussed below at Sections IV(A)(2) and VII(A)(2), is significant to the Rule 19 analysis in this appeal.

### b.    State Law:  Statutory Structure for Negotiation and Ratification of Tribal-State Gaming Compacts

Congress provided states an opportunity to have a role in the regulation of tribal gaming, if they "engage in compact negotiations in good faith."  *Chicken Ranch*, 42 F.4th at 1032.  To capture this opportunity, Washington state law directs the State's Gambling Commission to "negotiate compacts for class III gaming on behalf of the state with federally recognized Indian tribes in the state of Washington."  R.C.W. § 9.46.360.  .

The State's approach to embracing the opportunities allowed by IGRA was most recently exemplified by the Washington legislature's approval of sports wagering in Indian country pursuant to the Washington Tribes' IGRA compacts, which the legislature passed over Maverick's objection. The legislature found:

> It has long been the policy of this state to prohibit all forms and means of gambling except where carefully and specifically authorized and regulated. The legislature intends to further this policy by authorizing

sports wagering on a very limited basis by restricting it to tribal casinos in the state of Washington. Tribes have more than twenty years' experience with, and a proven track record of, successfully operating and regulating gaming facilities in accordance with tribal gaming compacts. Tribal casinos can operate sports wagering pursuant to these tribal gaming compacts, offering the benefits of the same highly regulated environment to sports wagering.

Laws of 2020, Chapter 127 § 1.[2]

> ### 2.      Historical Context:   Limited Intervenor Shoalwater Bay Indian Tribe's Adversarial Relationship with the Federal and State Defendants

The Tribe is a federally recognized Indian tribe, 88 Fed. Reg. No. 8, 2112, 2114 (2023), located in rural western Washington State.  The Shoalwater Bay people descend from the Lower Chinook and Lower Chehalis peoples, who for centuries populated the villages that dotted the State's coastal waterways. Despite severe

---

[2] Maverick's assertion that the State's gaming and compacting laws, and the Department of the Interior's ("DOI") approval of the Washington Tribes' compacts (OB at 8-11), give the Washington Tribes a "monopoly" is incorrect. Unlike some compacts between tribes and other states that expressly grant tribes exclusivity in offering certain types of Class III games in exchange for significant revenue-sharing payments, nothing in the compacts at issue precludes the State from authorizing new forms of gaming for non-Indian entities such as Maverick's commercial card rooms. At bottom, Maverick is upset that the State legislature has not authorized social card rooms to engage in sports betting. The Tribe understands that Maverick believes Washington state law should be different, and that Maverick's true quarrel is with the Washington legislature and not with the Federal or State Defendants, but nothing in the compacts at issue provides the Washington Tribes with any rights to a monopoly.

population loss and cultural displacement that European settlement brought to the region, the Tribe steadfastly resisted outside pressure to relinquish its lands. *Confed. Tribes of Chehalis Indian Reservation v. Washington*, 96 F.3d 334, 338 (9th Cir. 1996). Ultimately, the federal government relented, and in 1866, President Andrew Johnson set aside the Shoalwater Bay Indian Reservation (the "Reservation") within the Tribe's ancestral lands. *Id.*

In the 1990s, seeking a source of employment and revenue to fund crucial tribal government operations, the Tribe exercised its rights under IGRA and approached the State to negotiate a gaming compact. The State, however, insisted that the gambling machines the Tribe sought to operate were illegal, and refused to waive its Eleventh Amendment immunity or otherwise consent to IGRA's negotiation/mediation remedial process. *See United States v. Spokane Tribe*, 139 F.3d 1297, 1298 (9th Cir. 1998). After years of unsuccessful negotiations, in 1998, the Tribe opened a gaming facility on the Reservation, over the objections of the State and without a compact. Specifically, the Tribe installed 108 gambling devices containing random number generators ("RNGs"), which determined the outcome. *See United States v. Shoalwater Bay Indian Tribe*, 205 F.3d 1353 (table), 1999 WL 1269343 at *1 n.3 (9th Cir. 1999) (unpublished decision).

DOJ inserted itself in the dispute on the side of the State; filed an *in rem* action against the 108 machines; deployed federal officers*;* and halted the Tribe's

gaming operation by seizing and carrying away the gaming machines from tribal property. 2-TribeSER-203, 2-TribeSER-204-208. The gaming operation was the Tribe's most significant source of employment and the primary source of discretionary revenue to provide desperately needed governmental services, and the seizure resulted in the loss of sixty much-needed reservation jobs. *Id.*

Shortly after the seizure of the Tribe's gaming machines by the United States marshals, the Tribe installed a different type of gaming machine with a pre-determined win/loss percentage resembling the compacted class III games in operation today within the State. That development resulted in further enforcement action, but instead of the United States marshals raiding the Reservation and seizing machines, the NIGC, in 1999, issued a Notice of Violation, NOV-99-10, and an Order of Closure, OC-99-10. 2-TribeSER-203 and 2-SER-209-21. In the Tribe's subsequent administrative appeal to DOI's Office of Hearings and Appeals, Docket No. NIGC 99-2, the Tribe was successful in securing an Order enjoining the NIGC from taking further enforcement action until the United States demonstrated that it was seeking to provide an effective remedy for the Tribe's injuries resulting from the State's refusal to negotiate a gaming compact. 2-TribeSER-203 and 2-TribeSER-209-214. While that injunction was in effect, the Tribe and the State successfully

reached agreement on the Tribe's gaming compact, which became effective on November 8, 2002. 67 Fed. Reg. 68152.[3]

Despite the coordinated and parallel efforts of both the United States and the State to prevent the Tribe from conducting gaming, the Tribe's gaming operation closed only for the few weeks between the seizure of the 108 gambling devices with RNGs and the installation of the machines without RNGs. The history demonstrates that, far from representing the interests of the Tribe, for most of the history with respect to the Tribe's gaming, the State and the federal government have been hostile to the Tribe's interests.

The initial compact between the Tribe and the State started a new era of improved relationships between the Tribe, the State and the United States, resolving years of contentious and often-confrontational disputes over gaming on the Tribe's Indian lands. Despite the history of adversity, in arms-length negotiations the Tribe and the State have subsequently reached agreement on three amendments to the compact, all approved by DOI, in 2007, 72 Fed. Reg. 30392; in 2015, 80 Fed. Reg. 31918; and most recently in 2021, 86 Fed. Reg. 51373. The third amendment in 2021, authorizing sports wagering, is the focus of Maverick's FAC, but notably, the

---

[3] The complete texts of the Compact and the several amendments thereto are available for public viewing at the official web page of the Office of Indian Gaming within DOI. www.bia.gov/as-ia/oig.

FAC seeks also to invalidate the initial compact and the three amendments thereto in their entirety.

Today, the Tribe operates a small gaming facility and the Tribe has forged a constructive, albeit cautious and arms-length, regulatory relationship between the Shoalwater Bay Tribal Gaming Commission and the Washington State Gambling Commission. The casino provides an anchor for the Tribe's economy and the economies of the surrounding rural communities. Willapa Bay Enterprises, the tribally-owned entity which operates the casino along with a restaurant, a small lodge and other businesses, employs 120 people, approximately 30% of whom are either tribal members, their spouses or direct family members. 2-TribeSER-202. The casino purchases goods and services from local vendors, and creates a gathering place for the Tribe and the surrounding community. Importantly, the gaming facility is a source of pride for the Tribe and self-esteem for the Tribe's members. 2-TribeSER-202-203.

The improved relationships forged since 2002 between the Washington Tribes' respective gaming agencies and the Washington State Gambling Commission were a key factor in the Washington legislature's decision to authorize sports betting at tribal casinos:

> The state has a history of acting conservatively in terms of expanding gambling. Tribal gaming is a structured regulatory environment and there are significant internal controls. Because tribes are located throughout the state, there will be access for consumers to sports betting

> no matter where they live. It is best to start slowly by authorizing sports wagering at existing tribal facilities, without adding mobile sports betting, and then to evaluate how it works.

House Bill Report H.B. 2638[4] at 6.

These facts were brought to the district court's attention (2-TribeSER-201-250) in the context of the Tribe's motions for limited intervention and to dismiss, as they highlight that the compact, in effect as amended, is the vehicle that allowed for the improved relationships between the Tribe, the State and the United States. Two other Washington Tribes, the Confederated Colville Tribes and the Spokane Tribe, endured similar adversity with the State, but ultimately were successful in their legal efforts to prevent the State and the United States from shuttering their gaming operations, and were also ultimately successful in negotiating compacts with the State, ending a decade of acrimony. *Spokane Tribe*, 139 F.3d at 1298; *Confederated Tribes of the Colville Reservation,* 1999 WL 1269335 at *1. These facts reveal the hostile environment which Maverick's requested relief will recreate between the three respective governments (tribal/state/federal), if granted. Notably, Maverick does not discuss or acknowledge this history in its Opening Brief, even though, as discussed below at Section VII(A)(2), it is a significant aspect of the Tribe's Rule 19 motion and of the district court's analysis in granting the motion.

---

[4] https://lawfilesext.leg.wa.gov/biennium/2019-20/Pdf/Bill%20Reports/House/2638%20HBR%20APP%2020.pdf?q=20220519085734.

**B. Procedural History.**

The Tribe timely[5] filed its Motion for Limited Intervention on August 3, 2022, 2-TribeSER-146-165, twenty-eight days after Maverick filed its FAC. On September 29, 2022, the district court granted the Tribe's Motion and directed the Tribe to file its Motion to Dismiss. 2022 WL 4547082. On October 3, 2022, the Tribe filed its Motion to Dismiss, ER-29-63. On February 21, 2023, the district court granted the Tribe's Motion to Dismiss, 2023 WL 2138477, and entered Final Judgment, ER-5-20. On February 22, 2023, Maverick timely filed its Notice of Appeal, ER-176-178.

The Tribe agrees with Maverick's concession that counts II and III are only directed at the State Defendants and not the Federal Defendants, and Maverick's concession that Counts II and III are not APA claims (OB at 13-14). These concessions are significant in the context of the Rule 19 analysis, discussed below at Section VII(A)(1).

---

[5] The district court found that the Tribe's Motion for Limited Intervention was timely, 2022 WL 4547082 at *2-3, and that any prejudice to Maverick, having already filed its motion for summary judgment, was self-inflicted. *Id.* at *3. Maverick criticizes the timing of the Tribe's Motion (OB at 15 and n.5, 67-68), but does not assert in this appeal that the district court erred in finding that the Tribe's Motion was timely, and therefore the argument is waived. If Maverick is contending that the Tribe's Motion is not timely, the Tribe contends that the reasons set forth by the district court, *id*. at *3-5, are correct and that the finding of timeliness was not an abuse of discretion.

The Tribe takes exception to Maverick's description of Count III: "Unlike the first two claims, this claim did not ask the court to declare the compacts, the sports-betting amendments, or the tribes' class III gaming activities unlawful" (OB at 14). As discussed below at Section VII(B), this self-serving and false description of Count III is a poorly veiled attempt to suggest that relief can be granted on Count III without impacting the Tribe's interests. Nothing in Count III suggests or supports Maverick's characterization. In its complaint, Maverick does not distinguish between the Counts with respect to the remedies it seeks in its prayer for relief, which certainly does ask the Court to declare that the compacts are void and that the Washington Tribes' activities are unlawful. Specifically, Maverick's FAC seeks, *inter alia*:

(1) a declaration that the Tribe's compact and its amendments (and all such compacts and amendments between the State and the Washington Tribes) are "void, were not validly entered into, and are not in effect." ER-123 prayer for relief at ¶ 207(1);

(2) a declaration that the "Tribes' class III gaming activities violate IGRA." ER-123, prayer for relief at ¶ 207(4); and

(3) an order "enjoining the continued administration of the compacts and compact Amendments by the members of the Washington State Gambling Commission." ER-123, prayer for relief at ¶ 207(6).

Moreover, the first paragraph of Count III incorporates all previous allegations. ER-121, ¶ 192. On the face of the FAC (ER-84-126), all three Counts seek to invalidate the Tribe's compact and declare the Tribe's gaming activities to be illegal.

The Tribe also takes exception to Maverick's assertions (OB at 37-38, 52, 54 and 68). that no discovery was anticipated if the case was allowed to proceed on the merits. After Maverick initially stipulated that its case was resolvable without discovery, it violated that stipulation and filed an expert report and a lay witness declaration. 1-TribeSER-79-104. The State Defendants thereafter promptly notified Maverick of their intent to pursue discovery regarding the expert report and lay witness declaration, and to submit rebuttal evidence.

## V.     SUMMARY OF ARGUMENT

The Tribe met its burden in establishing each step of the well-established legal standards regarding Rule 19, set forth in Section VI, below, to determine whether the totality of the circumstances compels the dismissal of Maverick's lawsuit. Because the Tribe is immune from suit and therefore cannot be joined involuntarily, and because the Tribe is a necessary, indispensable party under Rule 19, the district court correctly dismissed the entire case per Rule 12(b)(7).

In its Opening Brief, Maverick advances three primary arguments as to why the district court erred in dismissing Maverick's lawsuit per Rule 19: (1) the Federal Defendants will adequately represent the Tribe's interests; (2) relief can be narrowed to allow the Tribe's  gaming compact with the State to remain intact by simply allowing Maverick to offer sports betting, craps and roulette (and arguably other new forms of gaming), essentially enjoining the State from enforcing its criminal laws

against Maverick; and (3) the Tribe waived its sovereign immunity by seeking limited intervention, and therefore, the litigation can proceed with the Tribe as a party defendant. All three arguments are unavailing and as to each, Maverick fails to explain how the district court's findings, with which Maverick disagrees are illogical, implausible or without support in the record such that they constitute an abuse of discretion.

The Tribe demonstrates in Section VII(A), below, that the Federal Defendants are unable to adequately represent the Tribe's protectable interests because (1) counts II and III are not claims against the United States, but against the State; (2) the Federal and State Defendants cannot be expected to assert an important legal argument that the Tribe would raise: namely, that invalidation of the Tribe's Compact would not equate to invalidation of the Tribe's right to offer class III gaming. The Tribe further demonstrates the district court correctly applied *Dine Citizens Against Ruining Our Environment v. Bureau of Indian Affairs*, 932 F.3d 843 (9th Cir, 2020) and *Klamath Irrigation Dist. v. United States Bureau of Reclamation*, 48 F.4th 934 (9th Cir. 2022) (cert. pet. pending) to the specific facts and circumstances of Maverick's claims.

It is spurious for Maverick to contend that the case can proceed by disregarding its prayer for declaratory relief on all three of Maverick's claims that the tribal-state compacts are void, and that the Washington Tribes' gaming activities

are illegal. In Section VII(B), the Tribe demonstrates Maverick simply cannot secure relief that would allow Maverick to proceed with gaming activities in violation of Washington state law. The relief which Maverick seeks on all three claims threatens the Tribe's ability to operate its gaming facility and to fund essential governmental services.

The Tribe did not waive its sovereign immunity by seeking limited intervention in the district court. In Section VII(C), the Tribe demonstrates that Maverick's contention to the contrary defies the established precedent of this Court.

In Section VII(D), the Tribe demonstrates below that all other aspects of Rule 19 have been satisfied, including that (1) the Tribe is a required or necessary party under Rule 19(a); (2) all four factors considered under Rule 19(b) weigh in the Tribe's favor; and (3) the narrow public rights exception does not apply where the claims threaten an absent party tribe's legal entitlement and sovereignty.

## VI. LEGAL STANDARDS

The district court's dismissal under Rule 19 is reviewed for abuse of discretion. *Klamath Irrigation*, 48 F.4th at 943. Thus, this Court should affirm unless the district court's findings were "illogical, implausible or without support in the record." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011). Underlying legal questions, such as "issues of tribal sovereign immunity," are

reviewed de novo. *Id.; Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 991 (9th Cir. 2020).

Rule 19 provides a three-step process for determining whether a court should dismiss an action for failure to join an indispensable party. *E.E.O.C. v. Peabody Western Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005)[6]; *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999); *see also Pimental*, 553 U.S. at 855-57; *accord, Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) (describes same process as a two-step process).

First, Rule 19 asks whether the absent party is "necessary (i.e., required to be joined if feasible) under Rule 19(a)." *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012); *White v. Univ. of Cal.*, 765 F.3d 1010, 1026 (9th Cir. 2014); *Confederated Tribes of the Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991). To make such a determination, a court "must consider whether 'complete relief' can be accorded among the existing parties, and whether the absent party has a 'legally protected

---

[6] When Rule 19 was amended in 2007, the word 'necessary' was replaced by the word 'required' and the word 'indispensable' was removed. The changes were intended to be 'stylistic only' and "the substance and operation of the Rule both pre- and post-2007 are unchanged." *Republic of Philippines v. Pimental*, 553 U.S. 853, 855-56 (2008); *Cachil Dehe Band of Wintun Indians of the Colusa Indian Community v. California*, 547 F.3d 962, 969 n.6 (9th Cir. 2008).

interest' in the subject of the suit." *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992); *Ward v. Apple, Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015).

Second, the court must consider "whether joinder of [the absent] party is feasible." *Klamath Irrigation*, 48 F.4th at 943. Joinder of an Indian tribe may not be feasible if the tribe cannot be joined due to its sovereign immunity. *Id.* at 947.

Third, if joinder is not feasible, the court must then determine whether that party is "indispensable." *Shermoen*, 982 F.2d at 1317. To make such a determination, the court must consider whether, in "equity and good conscience," it should allow the action to proceed in party's absence. *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1161 (9th Cir. 2002) (citing Fed. R. Civ. P. 19(b)). The court balances four factors: (1) the prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum. *Id.* at 1161–62; *Kescoli v. Babbitt*, 101 F.3d 1304, 1310 (9th Cir. 1996). "The balancing of equitable factors under Rule 19(b) almost always favors dismissal when a tribe cannot be joined due to tribal sovereign immunity." *Klamath Irrigation*, 48 F.4th at 947 (quoting *Deschutes River All. V. Portland Gen. Elec. Co.*, 1 F.4th 1153, 1163 (9th Cir. 2021)).

There is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a). The determination is heavily influenced by the facts and circumstances of each case. *Cachil Dehe Band*, 547 F.3d at 970; *Northern Alaska Envtl. Ctr. v. Hodel*, 803 F.2d 466, 468 (9th Cir. 1986). To determine whether Rule 19 requires the joinder of additional parties, the court may consider evidence outside the pleadings. *Safe Air v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960); *Behrens v. Donnelly*, 236 F.R.D. 509, 512 (D. Hawaii 2006) (citing Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure: Civil 3d*. § 1359 at 68 (2004)).[7]

## VII.  ARGUMENT

The Tribe met its burden on each step of the well-established legal standards regarding Rule 19, set forth in Section VI, above, to determine whether the totality of the circumstances applicable to the Tribe compels the dismissal of Maverick's lawsuit. Because the Tribe is immune and therefore cannot be joined involuntarily,

---

[7] The Tribe takes issue with Maverick's characterization in its Statement of Issues, repeated throughout its Opening Brief, that the Tribe contends and the district court opines that every case brought under the Administrative Procedure Act ("APA") involving an Indian tribe must be dismissed pursuant to Rule 19 (e.g., OB at 2-3, 46, 59). That is not the Tribe's contention, and it is not the basis upon which the district court dismissed Maverick's lawsuit. Indeed, the Tribe argued and presented evidence (2-TribeSER-201-250), which the district court found persuasive in concluding that the specific facts and circumstances of this case, where Maverick seeks to wholly invalidate gaming under IGRA in Washington State, require the complaint to be dismissed per Rule 19.

and because the Tribe is a necessary, indispensable party under Rule 19, the district court correctly dismissed the entire case per Rule 12(b)(7).

### A. The Federal Defendants Are Not Able to Adequately Represent the Tribe's Protectable Interests.

In evaluating whether an existing party adequately represents the interests of an absent party, courts consider "whether the interest of a present party to the suit are such that it will undoubtedly make all of the absent party's arguments; whether the party is capable of and willing to make such arguments; and whether the absent party would offer any necessary element to the proceedings that the present parties would neglect." *Dine Citizens*, 932 F.3d at 852 (quoting *Alto v. Black*, 738 F.3d 1111, 1127 (9th Cir. 2013)). In evaluating these considerations, it is not enough that the absent party and the existing party both currently wish to prevail in the suit. As this Court has explained, an absent party is required (i) where the interests of the existing and intervening defendants "might [later] diverge," or (ii) where, in cases involving absent tribal parties, no existing party shares the absent tribe's "sovereign interest in ensuring that [a tribal business] continue[s] to operate and provide profits to the [Tribe]." *Dine Citizens*, 932 F.3d at 855; *See also Klamath Irrigation*, 48 F.4th at 944 (citing *Dine Citizens* with approval).

No party other than the Tribe itself can be expected to defend the Tribe's interests in this matter. Maverick concedes that the State Defendants cannot adequately represent the protectable interests of the Tribe (OB at 29, citing *Artichoke*

*Joe's California Grand Casino v. Norton*, 353 F.3d 712, 719, n.10 (9th Cir. 2003) [8].

*See also American Greyhound v. Hull,* 305 F.3d 1022, 1023 n.5 (9th Cir. 2002) ("the State and the tribes have often been adversaries in disputes over gaming, and the State owes no trust duty to the tribes" . . . "Governor's and the tribes' interests under the compacts are potentially adverse"). Hence, Maverick's sole contention is that the Federal Defendants adequately represent the Tribe's interests in this litigation.[9] But as demonstrated below, for each Count, the Federal Defendants are not adequate representatives of the Tribe.

The Federal Defendants are incapable of adequately representing the Tribe's interests on Counts II and III, which are not claims against the United States, and

---

[8] Moreover, Maverick throughout its Opening Brief only contends that the Federal Defendants are able to adequately represent the Tribe's interests. At no point in its Opening Brief does Maverick contend that the State Defendants are able to adequately represent the Tribe's interests.

[9] Maverick cites *W. Flagler Assocs. v. Haaland*, 573 F. Supp. 3d 260, 270–71 (D.D.C. 2021) for the broad proposition that "federal courts have uniformly held that the federal government adequately represents an Indian tribe when it shares the Tribe's position that an IGRA compact is consistent with federal law," and cites that the district court was "aff'd in relevant part on other grounds." (OB at 28-29). That is blatantly wrong. The Appeals Court for the D.C. Circuit reversed and vacated the decision of the district court in its entirety. 71 F.4th 1059 (D.C. Cir. June 30, 2023). In doing so, the unanimous D.C. Circuit reasoned that it need not reach the question of whether the district court erred in denying the Tribe's motion to intervene for the limited purpose of seeking dismissal per Rule 19 because the Appeals Court decision that the compact is valid and in effect protects the Tribe's interests, and accordingly, moots the Rule 19 question. 71 F.4th at 1071-72.

because the Federal and State Defendants cannot be expected to assert an important legal argument that the Tribe would raise: namely, that invalidation of the Tribe's compacts would not equate to invalidating the Tribe's right to offer Class III gaming on its Indian lands. But the Tribe and the district court do not "overread" *Dine Citizens* and *Klamath Irrigation*; rather, the Tribe demonstrates and the district court opines that applying the analysis in *Dine Citizens* and *Klamath Irrigation* to the facts and circumstances here provides a concrete and compelling case for dismissal per Rule 19. Moreover, nowhere in its Opening Brief does Maverick demonstrate that the district court's order dismissing the case constitutes an abuse of discretion.

### 1. The Federal Defendants Are Incapable of Adequately Representing the Tribe's Interests on Counts II and III, Which Are Not Claims Against the United States, But Against the State.

The crux of Maverick's position is that the United States adequately represents the interests of the Tribe in Maverick's APA claim. But the APA claim is not the only claim raised by Maverick. Count II ("violation of IGRA, Equal Protection, and the Tenth Amendment") and Count III ("violation of Equal Protection") are made only against the State Defendants (OB at 13-14). Maverick concedes that the State Defendants cannot adequately represent the interests of the Tribe (OB at 29). Because the United States is not even a defendant with respect to Counts II and III, the Federal Defendants cannot possibly adequately represent the Tribe's interests as to those Counts. And Maverick cites no authority for the notion

22

that a defendant is able to adequately represent an absent party when the specific claim is against a separate defendant altogether. After a thorough review of the case law, the Tribe has found no support for this proposition. That is not surprising. If the Federal Defendants presented no arguments on Counts II and III – since these claims are not against them – they would be no worse off. In such circumstances, it is illogical that the Federal Defendants, with so little at stake in the specific claims, can adequately represent the interests of absent parties – the Washington Tribes – who have everything to lose in this litigation. Moreover, the case law on which Maverick relies for the proposition that the Federal Defendants can adequately represent the Tribe's interests all involve APA claims. But Counts II and III are not APA claims at all. There simply is no authority to refute the common-sense logic that the Federal Defendants are not willing or able to adequately represent the absent Tribe on non-APA claims not directed at the Federal Defendants.

> **2. The Federal and State Defendants Cannot Be Expected to Assert an Important Legal Argument that the Tribe Would Raise: Namely, Invalidation of the Tribe's Compact Would Not Invalidate the Tribe's Right to Offer Class III Gaming.**

The specific context of the past adverse relationship between the Tribe and the State and Federal Defendants over gaming on the Tribe's Indian lands provides distinct and sufficient grounds to establish that the Tribe's and Federal Defendants' interests are not sufficiently aligned such that the Federal Defendants could adequately represent the Tribe. The district court acknowledged that the Tribe's

distinct history is demonstrative that the Tribe's and the Federal Defendants' respective interests in the outcome of the litigation are not sufficiently aligned. As the district court observed. "Shoalwater also attests to prior tensions with the State and federal government over permitting casino gaming on tribal lands" 2023 WL 2138477 at *5. Furthermore, as the district court continued, "it was IGRA that the United States looked to for authority to shutter the Tribe's gaming operation, highlighting the United States' view that its overriding obligation to ensure compliance with federal law supersedes its general trust responsibility to the Tribe." *Id.* The district court pointed out that "the United States expressly details this conflict in its brief by noting that IGRA balances efforts to promote tribal self-sufficiency with "a regulatory and supervisory role for the states and the federal government to prevent the infiltration of organized crime and other corrupting influences.'" *Id.* Crucially, the district court properly noted an important distinction, namely, that though the federal government maintains an interest in defending its own analysis that formed the basis of its decision to approve the sports-betting compact amendments, it does not share an interest in the *outcome* of the continued approval of the sports-betting compact amendments—the continued operation of sports betting at tribal casinos—which the Tribe asserts is a matter of sovereign

authority, noting "[t]he Tribe maintains that its inherent authority to govern gaming activities on its Indian lands predates IGRA and colonization under *Cabazon*". *Id.*

Maverick's Opening Brief tries to skirt the non-alignment of interests by asserting that the Tribe's prior legal position during that time of adversity was "wrong" (OB at 20). Regardless of whether Maverick's analysis is correct (and it is not, as discussed below), it is not germane to the Rule 19 analysis. Maverick repeatedly states (OB at 3, 18-20, 30, 36, 45, 52, 60 and 68) that the dispositive inquiry is whether the named parties will undoubtedly raise all of the absent Tribe's arguments. By challenging the correctness of the Tribe's legal position during the years of adversity, Maverick necessarily concedes both that (1) the Tribe would raise legal arguments regarding the merits of the claims that the State and Federal Defendants would not; and (2) the Tribe's interests in the outcome of the litigation are not aligned with either the State or the United States. Those two concessions are fatal to Maverick's analysis.

Maverick attempts to dismiss the well-documented decade of adversity between the Tribe and the Federal and State Defendants by asserting "The Tribe's suggestion that it could continue to offer class III games even without a valid compact is . . . wrong as a matter of law." OB at 20. Maverick contends unequivocally that for a tribe to engage in Class III gaming, the tribe must have a compact in effect, and that it is a federal crime to operate Class III games on Indian

lands without a compact in effect (OB at 7 and n.2). Moreover, while conceding that a decision of this Court would not be binding on the absent Tribe, Maverick feigns credulity that the absent Tribe would have an "obdurate desire to violate federal law" and would "flout" such a court decision (OB at 35). As discussed below, the correctness of the Tribe's legal argument is not the proper question in the context of Rule 19. The question under even the narrow[10] standard advocated by Maverick is whether the Tribe would raise an argument in the litigation that the named State and Federal Defendants would not.

Perhaps Maverick would have some traction if it established that the articulated legal argument at issue was spurious or so lacking of merit that it was nothing but a bogus façade to force Rule 19 dismissal. *See Salt River Project,* 672

---

[10] Maverick cites to *Southwest Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152 (9th Cir. 1998) and *Alto v. Black*,738 F.3d 1111 (9th Cir. 2013) for support of its narrow view of Rule 19 (OB at 35-36) requiring a showing of an actual conflict or the articulation of an argument that will not be made by the named defendants. But, this Court in *Dine Citizens* "applied the lessons learned from these cases" and distinguished them in refining its Rule 19 analysis to also require an inquiry as to the parties' alignment of interests in the *outcome* of the litigation, 932 F.3d at 855, discussed in Section VII(A)(3), below. This Court distinguished *Alto* because the tribe "had specifically granted BIA final decision-making authority over tribal membership issues, making it more plausible that the government would represent the tribe's interest—or that the government's interest and the tribe's interest had become one and the same." *Id.* at 856. Here, the Tribe has made no delegation of its sovereign interests to the United States to support a similar conclusion.

F.3d at 1180 (Court looked to whether the absent party would make "any *reasonable* argument that the tribe would make if it were a part"). Here, the merits of the Tribe's argument are evidenced by the administrative law judge's injunction of the NIGC's closure order on the basis of that argument. 2-TribeSER-209-214. The Tribe's argument is also supported in this Court's decision vacating and reversing an injunction issued in an action brought by the United States against the Spokane Tribe on the basis of the argument, explaining:

> None of the circumstances that might justify enforcing IGRA according to its terms appears to be present here. We are left, then, with a tribe that believes it has followed IGRA faithfully and has no legal recourse against a state that allegedly hasn't bargained in good faith. Congress did not intentionally create this situation and would not have countenanced it had it known then what we know now. ***Under the circumstances, IGRA's provisions governing class III gaming may not be enforced against the Tribe.***

*Spokane Tribe*, 139 F.3d at 1302 (emphasis added). This Court in *Spokane Tribe* went on to implore the parties on remand to avoid requiring this Court to subsequently engage in severance analysis of IGRA in the wake of the revelation in *Seminole Tribe v. Florida* 517 U.S. 44 (1996), that Congress' abrogation of state Eleventh Amendment immunity in IGRA was unconstitutional. *Spokane Tribe,* 139 F.3d at 1302-03. This Court implored the parties to moot the issue on remand by the State reaching agreement on a compact or the United States otherwise providing a remedy allowing the Tribe to proceed without a compact. *Id.* That advice was heeded. The Tribe (as well as the Spokane Tribe and the Confederated Colville

Tribes) operated full class III gaming operations in the absence of compacts without further interference from the United States, during which time they each successfully negotiated compacts with the State. Those compacts mooted the longstanding legal disputes. Despite Maverick's unsubstantiated assertion that the Tribe is "wrong," *Spokane Tribe* remains as the law of the Ninth Circuit: enforcement of IGRA's prohibitory and criminal provisions against a tribe for lack of a compact is improper where the tribe has done everything that IGRA requires the tribe to do in pursuing such a compact.

Maverick contends that the argument would be made in subsequent litigation, not in this case (OB at 34-36). The argument is relevant to both subsequent litigation and this instant litigation. That the argument would be made in subsequent litigation, as discussed below, demonstrates that the Federal Defendants do not share the Tribe's interests in the *outcome* of the litigation, because the Federal Defendants' commitments to IGRA's enforcement provisions differ from the Tribe's interests in protecting the ability of its gaming business to remain in operation[11]. In the context of this case, if the court were to invalidate the compacts, the argument would then

---

[11] Notably, Maverick relies on *Southwest Center* that for the proposition that the argument the absent party would make must be in the context of the instant case (OB at 34), but that position was repudiated by the Court in *Dine Citizens* in requiring that the absent tribes and federal defendants must also be aligned in the *outcome* of the litigation. *See* footnote 10, above.

be germane to Maverick's request for a declaration that the "Tribes' class III gaming activities violate IGRA." ER-123 at ¶ 207(4). That question, whether non-compacted gaming violates IGRA, is precisely the question that this Circuit was prepared to address if the Washington Tribes and the State had not reached compact agreements upon remand. *Spokane Tribe*, 139 F.3d at 1302-03. Moreover, the argument is germane to Maverick's request for an order "enjoining the continued administration of the compacts and compact Amendments by the members of the Washington State Gambling Commission." ER-123, prayer for relief at ¶ 207(6). The propriety such of an injunction, and the weighing of equities required as a necessary element for injunctive relief, *W. Watersheds Project v. Abbey*, 719 F.3d 1035, 1054 (9th Cir. 2013), wherein the State would have no role in ensuring the honesty and integrity of gaming activity, would be materially different in circumstances where the games could continue in operation despite the declaration Maverick seeks from the district court. Moreover, as this Court pointed out in *Dine Citizens*, events could occur during the pendency of the instant litigation wherein the position of the Federal Defendants could change, such that there would no longer be an alignment of interests between the Tribe and the Federal Defendants. 932 F.3d at 850 and 855.

To be clear, the Tribe is not asking this Court to resolve the legal questions identified in *Spokane Tribe* – those questions are not before the appellate panel. The Tribe provides this analysis to demonstrate that the legal argument is viable and

relevant to the merits of Maverick's claims both in subsequent litigation and in the context of the instant litigation. It is an argument that neither the Federal Defendants nor the State Defendants can be expected, or are capable and willing, to make, which even under Maverick's narrow view of Rule 19, requires dismissal.

### 3. The District Court Correctly Applied *Dine Citizens* and *Klamath Irrigation* to the Specific Facts and Circumstances of Maverick's Claims.

The district court provided extensive analysis, applying *Dine Citizens* and *Klamath Irrigation* as controlling precedent to the specific facts and circumstances presented here, and properly exercised its discretion to find that dismissal per Rule 19 was proper. 2023 WL 2138477 at **2-6.

As reaffirmed in *Klamath Irrigation*, 48 F.4th at 947, *Dine Citizens* is the controlling case in the Ninth Circuit regarding when the United States cannot adequately represent the interests of absent tribes. In *Dine Citizens*, the Ninth Circuit held that federal defendants are unable to adequately represent an absent tribe where their obligations to follow relevant laws are in tension with tribal interests. 932 F.3d. at 855. In *Dine Citizens*, the absent tribal entity of the Navajo Nation intervened in an APA action challenging the federal government's approvals, pursuant to federal laws requiring review of the potential environmental impacts of a tribal coal mine, and a power plant that relied on that coal mine. The Navajo Nation's entity sought intervention for the limited purpose of filing a motion to dismiss pursuant to Rule

19. *Id.* at 850. Finding the tribal entity to be a required party, this Court turned to whether another party could adequately represent the absent tribal entity's interests, and concluded that neither the United States nor the tribal entity's business partners could do so. This Court reasoned that while federal defendants "have an interest in defending their own analyses," they "do not share an interest in the *outcome* of the approvals—the continued operation of" the tribe's mine and associated powerplant. *Id.*at 855. Moreover, the court found that the tribal entity's business partner did not share the Nation's "sovereign interest in controlling its own resources, and in the continued operation of the Mine and Power Plant and the financial support that such operation provides," which interest "is tied to [the Nation's] very ability to govern itself, sustain itself financially, and make decisions about its own natural resources." *Id.* at 856.

Similarly, in *Klamath Irrigation,* the absent tribal entities, the Klamath Tribes and the Hoopa Valley Tribe, intervened in an APA action challenging the federal Bureau of Reclamation's decisions to maintain specific lake levels and instream flows to comply with the Endangered Species Act ("ESA"), and to safeguard the federal reserved water and fishing rights of the (absent) tribes. 48 F.4th at 939. Applying *Dine Citizens*, this Court reasoned that "[t]he Tribes' primary interest is in ensuring the continued fulfillment of their reserved water and fishing rights, while Reclamation's primary interest is in defending its Amended Proposed Action taken

pursuant to the ESA and APA. While Reclamation and the Tribes share an interest in the ultimate outcome of this case, our precedent underscores that such alignment on the *ultimate outcome* is insufficient for us to hold that the government is an adequate representative of the tribes." *Id.*at 944-45 (emphasis added). *See also Jamul Action Comm.,* 974 F.3d at 997-98 (applying *Dine Citizens*); *Backcountry Against Dumps v. United States Bureau of Indian Affairs*, 2022 WL 15523095 at **1-2 (9th Cir. 2022).

Maverick asserts that the district court is "overreading" *Dine Citizens* and *Klamath Irrigation* (OB at 19), and contends that "unlike here, the circumstances in *Dine Citizens* gave concrete reasons to doubt that the government would adequately represent tribal interests" (OB at 40). Further, Maverick attempts to distinguish the *Dine Citizens* and *Klamath Irrigation* cases on the grounds that they "required the government to prioritize environmental interests over tribal interests in the event of a conflict" (OB at 41). Maverick offers a narrow construction of *Dine Citizens* and *Klamath Irrigation* that is wrong.

Maverick's attempt to distinguish these cases fails. The parallels of the facts and circumstances in *Dine Citizens* and *Klamath Irrigation* with those here are unmistakable. In all three cases, the tribes have governmental business and resource interests at stake: the mining operation and minerals at issue in *Dine Citizens*, the tribal fisheries and water rights at issue in *Klamath Irrigation*, and the gaming

operation and governmental revenue at issue in the instant litigation, all of which provide revenues vital to each tribe's governance. In all three cases, the relief requested would undermine each tribe's unique sovereign interests by eviscerating each tribe's "very ability to govern itself, sustain itself financially, and make decisions about its own" business. *Dine Citizens*, 932 F.3d at 856. In all three cases, the United States' interests in the outcome, - the obligations to enforce federal environmental laws in *Dine Citizens* and *Klamath Irrigation*, and the obligation to enforce IGRA (including its criminal provisions) in the instant litigation -, are in tension with the interests of the tribes.

Maverick cites three cases (OB at 29-30), one from this Court, a district court decision from within this Circuit and a district court decision from outside of this Circuit, all predating *Dine Citizens* and *Klamath Irrigation*, for the proposition that the Federal Defendants are capable of adequately representing the interests of absent tribes in litigation challenging tribal-state gaming compacts. The first case is *Artichoke Joe's,* 353 F.3d at 712, a case Maverick contends was wrongly decided (1-TribeSER-126, 129-130, 132-133, 138, 1-TribeSER-13) and in which this Court "d[id] not address the [Rule 19] issue" presented there because it was "raised only in an amicus brief." 353 F.3d at 719 n.10. Maverick also cites to the district court decision in the same case, 216 F.Supp.2d 1084 (E.D. Cal. 2002), but the district court noted that the tribal organization that submitted an amicus curiae brief raising Rule

19 "failed to demonstrate how a conflict might actually arise," and that the case "does not even remotely bear on the United States enforcement power." *Id.* at 1119-20. Here, by contrast, the Tribe has amply demonstrated a concrete history of conflict between its interests and those of the federal government (2-TribeSER-201-250). The second case, *Knox v. U.S. Dep't of Interior*, 759 F. Supp. 2d 1223 (D. Idaho 2010), is a district court decision decided prior to *Dine Citizens*, and because it stands at odds with *Dine Citizens* and *Klamath Irrigation*, it cannot be followed. This Court never had the opportunity to review the correctness of the *Knox* ruling, as the plaintiffs voluntarily dismissed their own complaint. *See* 1-TribeSER-73, n.2. The third case, *Citizens Against Casino Gambling in Erie Cnty. v. Kempthorne*, 471 F. Supp. 2d 295 (W.D.N.Y. 2007), similarly is unpersuasive because the court specifically found that the Seneca Nation had "point[ed] to no conflict of interest" with the United States. *Id.* at 316. Moreover, the case "did not question the validity of or seek to nullify the [Nation's gaming] Compact;" rather, it challenged DOI's determination that certain lands were eligible for gaming. *Id.* at 302, 317. To the extent that *Erie County* is at odds with *Dine Citizens*, the latter controls.

Maverick cites three additional cases (OB at 34), all involving Rule 24 intervention rather than Rule 19 dismissal, wherein the court found the facts and circumstances supported a finding that existing parties adequately represented the interests of the absent tribes. These cases are inapposite, because as discussed below,

the standards for Rule 24 intervention and Rule 19 dismissal differ. Moreover, even setting those different standards aside, these cases are distinguishable. First, Maverick cites *McDonald v. Means*, 309 F.3d 530, 541 (9th Cir. 2002), but that case found that a named defendant, a judge of the tribal court, not the United States, could adequately represent the interests of the absent tribe. *Id.* Second, Maverick cites *United States v. Alpine Land & Reservoir Co.*, 431 F.2d 763, 765 (9th Cir. 1970), but there the court found that the tribe's asserted interests in water rights to the Truckee River were too tenuous and tangential for the absent tribe to have standing in a quiet title action involving diversion of water away from Pyramid Lake. *Id.* Third, Maverick cites *Seminole Nation of Okla. v. Norton*, 206 F.R.D. 1, 9–10 (D.D.C. 2001), but there the federally recognized tribe was the plaintiff in an action against DOI for rejecting proposed amendments to the tribe's constitution. *Id.* The purported intervenors were the Freedmen, a group of non-Indians. *Id.*

These three cases, together with the three gaming compact cases discussed previously, merely support the proposition with which the Tribe agrees: as set forth in Section VI above, adequacy of representation turns on the facts and circumstances of the particular case, and there is no blanket rule for or against adequacy of representation, whether it be in the context of Rule 24 intervention or Rule 19 dismissal.

Despite the clear direction provided by *Dine Citizens* and *Klamath Irrigation*, Maverick contrives an argument that there are "three overlapping presumptions" that direct this Court to find the Federal Defendants will adequately represent the Tribe's interests (OB at 31-34). First, Maverick cites *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003), for the proposition that if the intervening party has "the same ultimate objective," there is presumptively adequate representation by the existing defendants. (OB at 31). Second, Maverick cites *Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 561 (1st Cir. 2021), for the proposition that a governmental party "will defend adequately" its action (OB at 31-32). Third, Maverick cites *United States v. City of Los Angeles*, 288 F.3d 391, 401 (9th Cir. 2002), for the proposition that a government defendant will provide adequate representation if it is "charged by law with representing the interests" of the absent party. (OB at 32-33). None of the three cases involve federally recognized Indian tribes. None of the three of the cases are Rule 19 cases; they are all Rule 24 intervention cases. Despite Maverick's footnote (OB at 32, n.9) suggesting that the analysis regarding Rule 19 and Rule 24 is the same, it is not. Rule 24 expressly states that "mandatory" intervention is not required if "existing parties adequately represent that interest" of the party seeking intervention. Fed.R.Civ.P.24(a)(2). Rule 19 has no similar provision. Rather, Rule 19 mandates a court to assess whether "in equity and good conscious, the case can

proceed among the existing parties". Fed.R.Civ.P.19(b).[12] The analysis regarding the two rules is not the same. Moreover, as this Court acknowledged in *Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013, 1021 n.5 (9th Cir. 2022), the Supreme Court has recently called all of these articulated presumptions in the context of Rule 24 into doubt. *Berger v. North Carolina State Conference of the NAACP*, 142 S. Ct. 2191, 2204-05. (2022). Further, to the extent Maverick is seeking to apply a Rule 24 analysis on adequacy of representation, rather than Rule 19 analysis, then the Tribe's burden in establishing inadequate representation "should be treated as minimal." *Id.* (citing *Trbovich v. Mine Workers*, 404 U.S. 528, 538, n.10 (1972)); *See also W. Watersheds Project v. Haaland*, 22 F.4th 828, 841 (9th Cir. 2022) ("Although Plaintiffs dismiss these arguments as 'meritless,' the relevant standard (for Rule 24) requires merely that an existing party cannot or will not 'make any *reasonable* argument' that the intervenor would make if it were a party"). In addition, none of the three cases concluded that a district court abused its discretion in allowing intervention. The "overlapping presumptions" argument is a poorly veiled attempt to direct this Court away from *Dine Citizens* and *Klamath Irrigation*,

---

[12] Notably, Maverick's appeal is from the district court's granting of the Tribe's Rule 19 Motion to Dismiss. Maverick does not appeal or find error in the district court's granting of the Tribe's Rule 24 Motion for Limited Intervention. Accordingly, Maverick has waived the issue.

which represent the governing analysis in the context of Rule 19 wherein the moving party is a federally recognized Indian tribe. If there are such presumptions (there are not), the Tribe overcomes those presumptions by demonstrating the tension between the Federal Defendants' trust responsibility to the Tribes and the Federal Defendants' obligation to enforce IGRA's criminal provisions on behalf of the Federal Defendants' constituency, the People of the United States.

Maverick seeks to distinguish *Dine Citizens* and *Klamath Irrigation* because DOI approved the Washington Tribes' compacts under IGRA, which provides for disapproval if the compact violates "the trust obligations of the United States to Indians." (OB at 45) (citing 25 U.S.C. 2710(d)(8)(B)(iii)). This final grasp to distinguish the cases lacks merit. First, the Ninth Circuit "has firmly rejected the notion that a trustee-trustor relationship alone is sufficient to create adequate representation." *Klamath Irrigation*, 48 F. 4th at 945 (citing *Dine Citizens*, 932 F.3d at 855). Second, DOI's approval of the Washington Tribes' compacts says nothing about its position in this litigation. The district court answers this argument persuasively, finding that the circumstances here are even more concrete and compelling than those in *Dine Citizens* and *Klamath Irrigation*, and further finding that the United States would be faced with similar statutory obligations that conflict with the Tribe's interests: "[T] the Court finds that Shoalwater *presents actual, not hypothetical or unknown conflicts* with the United States. As Amici note, *it is*

38

*precisely because the United States is obligated to uphold federal law that a conflict might arise.*" 2023 WL 2138477 at *6 (emphasis added) (citing to 1-TribeSER-54-55). Maverick has not shown that the district court's analysis and determination were an abuse of discretion. The district court noted that "there is a documented history of the federal government acting as an adverse party to Shoalwater in the absence of a tribal compact with Washington that permits Class III gaming." *Id.* (citing to 2-TribeSER-204-208). Maverick makes no effort to address, much less refute, the fact that the Federal Defendants' obligation to enforce IGRA's prohibitory and criminal provisions is at odds with the Tribe's interests in the very gaming which Maverick seeks to eliminate.

### B. Maverick's Unreasonable Invitation for the Federal Courts to Enjoin the State From Enforcing its Criminal Laws Regarding Gambling Should Be Rejected.

In Maverick's attempt to avoid affirmance, it asks this Court to ignore the sweeping relief Maverick seeks in its FAC, including *inter alia,* a declaration that the Washington Tribes' compacts and their amendments are "void, were not validly entered into, and are not in effect," and a declaration that the "Tribes' class III gaming activities violate IGRA." ER-123, ¶ 207. Specifically, Maverick asks this Court to consider only Count III and fashion relief that allows Maverick to offer sports betting, craps and roulette (OB at 47-48, 54-55). That is, Maverick argues that the district court could enjoin the State Defendants in such a manner as to allow

Maverick to offer all class III games throughout Washington on lands that are not "Indian lands," and to force the State Defendants to refrain from enforcing state law prohibiting such games. Maverick alleges that the Washington Tribes' compacts, which were negotiated by the State Defendants and approved by the Federal Defendants, are applied in a discriminatory manner. Yet, Maverick now asserts that dismissal per Rule 19 can be avoided by tailoring relief that precludes the State from exercising one of the most fundamental and inherent police powers of state sovereigns: the power to create its criminal laws and exercise prosecutorial discretion regarding the enforcement of those criminal laws. *See Heath v. Alabama*, 474 U.S. 82, 93 (1985); *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Maverick cites no authority for its novel argument that this Court can simply strike down all state laws that restrict Maverick's gaming activities throughout Washington.

For Maverick to prevail in obtaining such relief, this Court would have to determine that the State's criminal laws prohibiting most forms of Class III gaming are unconstitutional (*See* ER-122-123). As the Supreme Court has explained: "a court theoretically can cure that unequal treatment either by extending the benefits or burdens to the exempted class, or by nullifying the benefits or burdens for all. . . If the statute contains a severability clause, the Court typically severs the discriminatory exception or classification, and thereby extends the relevant statutory

benefits or burdens to those previously exempted, rather than nullifying the benefits or burdens for all." *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2354 (2020) (collecting cases); *accord, Califano v. Westcott*, 443 U.S. 76, 89-90 (1979) ("In light of the presumption of severability, the Court generally does the same even in the absence of a severability clause"); *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 (2017) ("The choice between these outcomes is governed by the legislature's intent, as revealed by the statute at hand"). A statute's severability is determined under state law. *Arce v. Douglas*, 793 F.3d 968, 989 (9th Cir. 2015). In Washington State, whether a law is severable depends on whether the constitutional and unconstitutional provisions are so connected that it could not be believed that the legislature would have passed one without the other. *League of Educ. Voters v. State*, 176 Wash.2d 808, 295 P.3d 743, 752 (2013). Washington's broader regulatory scheme criminalizes gambling. *See* Wash. Rev. Code § 9.46.222; *see also* Wash. Cost. art. II, sec. 24. In authorizing sports betting on a limited basis, the Washington legislature emphasized that "[i]t has long been the policy of this state to prohibit all forms and means of gambling except where carefully and specifically authorized and regulated. The legislature intends to further this policy by authorizing sports wagering on a very limited basis by restricting it to tribal casinos in the state of Washington." H. Com. & Gaming 2638, 66th Leg., Reg. Sess. (Wash. 2020).

The district court correctly rejected Maverick's invitation, noting that even if it accepted as correct that it could fashion relief that keeps the Washington Tribes' compacts intact, the relief Maverick seeks, effectively enjoining the State from exercising its police power to enforce its criminal laws against Maverick, is not relief available to Maverick, even if it were to prevail: "The Court agrees with Shoalwater that, assuming the Court determined the Washington law permitting sports betting at tribal operated casinos was unconstitutional, *the proper remedy would be to strike the provision, not extend intrusive injunctive relief*." 2023 WL 2138477 at *7 (emphasis added). The district court properly concluded: "The remedy Maverick seeks runs in contrast to this legislative intent to limit gambling and would run beyond this Court's jurisdiction. Thus, the relief the Court could provide to *Maverick* would not adequately remedy its injury because it *would still be precluded from operating sports betting or other Class III gambling operations*." *Id.* (emphasis added). Here, the Washington legislature enacted a law allowing Indian tribes to offer sports betting. That law provides a narrow exception to the general statutory burden that gambling in the State is illegal, with exceptions to be allowed only by a super-majority of the legislature and to be narrowly construed. Wash. Const. Art. II, Sec. 24. Assuming only for purposes of argument that the State's exception for Indian tribes is found invalid (and it is not), the proper remedy would be to strike the exception and extend the prohibition – i.e., the ban on sports betting – to all in the

State. The same is true for other Class III gaming that the Washington Tribes can conduct under their respective compacts, which other entities in the State cannot conduct on the same terms, for essentially the same reasons. The relief proposed by Maverick asks the Court to strike down the State's general prohibition on gambling, which would effectively legalize all gambling by any person or entity, directly contrary to the State Constitution's prohibition on all gaming not expressly permitted. Such relief goes well beyond the appropriate role of the district court.

Moreover, Maverick contradicts its own argument. Maverick contends that the district court was wrong in its analysis that the relief Maverick seeks (enjoining the State Defendants from exercising their police powers to enforce the State's criminal laws) is beyond the jurisdiction of the district court because Maverick "will be fully redressed if the court issues the 'ordinary' relief for such cases by 'vacat[ing]' those (DOI's compact) approvals" (OB at 55-56). Maverick further reasons that striking the State's statute authorizing sports betting in its entirety, without severance analysis, would be adequate because then the Washington Tribes, as well as Maverick, would be precluded from operating such sports betting (OB at 56). Maverick's own analysis proves the Tribe's point – the redress it seeks for Count III cannot be awarded in any way that removes the threat to the Tribe's protectable interests.

As this Court recently emphasized, "the question at this stage must be whether the litigation *threatens* to destroy an absent party's legal entitlements." *Backcountry Against Dumps*, 2022 WL 15523095, at *2 (emphasis in original) (quoting *Diné Citizens*, 932 F.3d at 860). Maverick certainly framed its FAC, including the relief it seeks on all three claims, in a manner that threatens to destroy the Tribe's legal entitlements. "A Plaintiff is the "master of his own complaint," *Newtok Village v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021), and Maverick's appeal is from the district court's dismissal of the FAC. Because the remedy here *could* (and indeed would) be invalidation of the Tribe's compact, that test is met, and this case must be dismissed.

### C. The Tribe Did Not Waive Its Sovereign Immunity from Suit By Seeking Limited Intervention in the District Court.

Indian tribes are "domestic dependent nations" that exercise "inherent sovereign authority*." Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) . "Thus, unless and 'until Congress acts, the tribes retain' their historical sovereign authority." *Id.* ; *see also Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 756 (1998). As "distinct, independent political communities" with sovereign powers that have never been extinguished, Indian tribes have long been recognized as possessing the common law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). As such, "[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has

authorized the suit or the tribe has waived its immunity." *Kiowa Tribe*, 523 U.S. at 754. Further, any purported waiver must be duly authorized as a matter of tribal law. The person or entity that allegedly waived the immunity must have the authority to waive that immunity. *United States v. USF&G*, 309 U.S. 506, 513 (1940); *MM&A Productions v. Yavapai Apache Nation*, 234 Ariz. 60, 316 P.3d 1248 (Ariz. App. 2014); *Harris v. Lake of the Torches Resort*, 2015 WL 1014778 (Wisc. App. March 10, 2015) (An attorney's attestations in court are insufficient to waive tribal immunity unless the attorney is duly authorized under tribal law to do so).

The Tribe has not waived its sovereign immunity with respect to this litigation. 2-TribeSER-202. The Tribe has not consented to this Court's jurisdiction to hear Maverick's claims. *Id.* No tribal officials, including the Tribe's attorneys in this litigation, are authorized under tribal law to waive the Tribe's sovereign immunity with respect to this litigation. *Id*. This Court has routinely accepted the approach taken by the Tribe – seeking limited intervention and, while preserving its immunity from suit, seeking dismissal per Rules 12(b)(7) and 19. *See Backcountry*, 2022 WL 15523095 at *1; *Klamath Irrigation*, 48 F.4th at 942: *Dine Citizens*, 932 F.3d at 850.

While acknowledging the precedent in the Ninth Circuit of approving the dismissal of cases per Rule 19 where the moving party sought limited intervention for the sole purpose of seeking dismissal per Rule 19, Maverick nevertheless

contends that by seeking intervention, the Tribe waived its immunity (OB at 66-68). The district court correctly rejected Maverick's argument: "Shoalwater has expressly indicated that it has not waived its sovereign immunity. 2-TribeSER-202. It is well established in this Circuit that tribes may intervene for the limited purpose of asserting they are required parties without waiving their sovereign immunity." 2023 WL 2138477 at *6. Maverick responds to the district court's analysis that the Ninth Circuit allows for Indian tribes to pursue such limited intervention without waiving immunity only by asserting that *Dine Citizens* and *Klamath Irrigation* "did not consider waiver" (OB at 67). That is not correct. This Court expressly found in both cases that the tribes seeking limited intervention did not waive their sovereign immunity. *Dine Citizens*, 932 F.3d at 856; *Klamath Irrigation*, 48 F.4th at 945-46. Moreover, *United States v. Oregon*, 657 F.2d 1009 (9th Cir. 1981), cited by Maverick (OB at 66-67), involved a case wherein the tribe sought full intervention on the merits, not limited intervention for the limited purpose of seeking dismissal per Rule 19.

All of the out-of-circuit cases cited by Maverick (OB at 66-67) are similarly distinguishable. In *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002) the State of Georgia affirmatively subjected itself to federal court jurisdiction by removing case to federal court. *Id.* at 619. Compare, *Bodi v. Shingle Springs Band*, 832 F.3d 1011, 1021-23 (9th Cir. 2016) wherein this Court, expressly

distinguishing *Lapides*, found that a tribe does not waive or abrogate its sovereign immunity from suit by removing an action to federal court. In *Pettigrew v. Oklahoma ex rel. Okla. Dep't of Pub. Safety*, 722 F.3d 1209 (10th Cir. 2013) the waiver of state Eleventh Amendment immunity was secured by contract, and not by seeking intervention. *Id*. at 1214-15. In *Bd. of Regents of Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 463 (7th Cir. 2011), the state waived immunity against counterclaims by initiating federal litigation on same subject. *Id.* at 463. In *Wichita & Affiliated Tribes v. Hodel*, 788 F.2d 763 (D.C. Cir.1986), Tribes sought to intervene on merits with one tribe filing its own claim. Id at 773.

*In re Greektown Holdings, LLC*, 917 F.3d 451, 464 (6th Cir. 2019) *abrogated on other grounds*, 143 S. Ct. 1689 (2023) does not support Maverick at all; rather it supports the Tribe's position that a waiver cannot be found wherein the purported waiver is made by an officer or agent of a Tribe lacking authority under tribal law to waive such immunity.

The district court did not abuse its discretion in ruling that the Tribe has not waived its sovereign immunity.

**D. All Other Aspects of Rule 19 Have Been Satisfied by the Tribe**

**1.  The Tribe is a Required or Necessary Party under Rule 19(a).**

The Tribe is a required or necessary party because the Tribe's protectable interests in continuing to offer gaming activities on its Indian lands are at stake, and Maverick cannot secure complete relief without joining the Tribe. The Tribe's interests in this matter could not be clearer.  The Tribe has a federal right to conduct Class III gaming on its Reservation, rights in its compact with the State that federal law expressly recognizes, and the sovereign right to immunity from unconsented suit. The relationship between those legally protected interests and Maverick's claims could not be any more direct:  Maverick brought this action to "void" the Tribe's compact in the Tribe's absence.  ER-123. "Clearly," a sovereign "has an interest in the validity of a compact to which it is a party, and this interest would be directly affected by . . . relief" that purports to affect the validity of the compact. *Kickapoo Tribe of Indians of Kickapoo Reservation in Kan. v. Babbitt*, 43 F.3d 1491, 1495 (D.C. Cir. 1995). The Ninth Circuit recognizes that IGRA compacts are agreements and are interpreted as contracts. *Idaho v. Shoshone-Bannock Tribes*, 465 F.3d 1095, 1098-99 (9th Cir. 2006); *see also Dawavendewa*, 276 F.3d at 1156-57 ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or contract, all parties who may be affected by the determination of the action are indispensable."); *American Greyhound*, 305 F.3d at

1022-23 (tribes had "substantial" interest sufficient for Rule 19 purposes in renewal of their compacts).

Maverick concedes that the "Tribe has a legitimate interest in the legality of its tribal-state gaming compact" (OB at 26). It is the Tribe, along with the twenty-eight other Washington Tribes, that are the real parties in interest in this litigation. It is the Tribe that will be devastated by the loss of employment and governmental revenue if Maverick succeeds. It is the Tribe that will be severely hampered from achieving Congress' purpose in enacting IGRA: tribal economic development, self-sufficiency and strengthened tribal governance through compacted gaming on its Indian lands. 25 U.S.C. § 2202(1).

Maverick's efforts to make an "'end run around tribal sovereign immunity" would impair the Tribe's immunity. *Aguayo v. Jewell*, 827 F.3d 1213, 1222 (9th Cir. 2016). It is well established that plaintiffs cannot "circumvent the barrier of sovereign immunity by merely substituting" other parties or officials "in lieu of the Indian tribe." *Dawavendewa,* 276 F.3d at 1160. That is because sovereign immunity protects a tribe's ability to "govern [its] reservation," and suits that indirectly attack a tribe's "ability to negotiate contracts" go to the heart of that core sovereign right. *Id.* at 1157.

Moreover, complete relief is not available where the absent party is a tribe that is a signatory to the agreement at issue because the judgment would not be

binding on the tribe, which could assert its rights under the agreement and/or under IGRA to continue the operation of Class III gaming activities.[13] *American Greyhound*, 305 F.3d at 1024 ("It is true that the tribes are not bound by this ruling under principles of res judicata or collateral estoppel because they are not parties, but their interests may well be affected *as a practical matter* by the judgment that its operations are illegal) (emphasis in original). ."); *Dawavendewa*, 276 F.3d at 1155-56 and 1161 (complete relief unavailable because judgment against federal government would not be binding on tribe); *Pit River Home and Agr. Co-op Ass'n v United States*, 30 F.3d 1088, 1099 (9th Cir. 1994) ("[E]ven if the Association obtained its requested relief in [a dispute over which a group of Indians are beneficial owners of a certain piece of property], it would not have complete relief, since judgment against the government would not bind the [other group of Indians], which could assert its right to possess the [property]."); *Chehalis*, 928 F.2d at 1498 (noting

---

[13] Maverick wrongly insinuates that the Tribe waived any argument that it could be subject to inconsistent obligations. Maverick includes a footnote (OB at 26, n.8) noting that "Rule 19(a)(1)(B) also states that a person is a required party if disposing of the action in their absence could 'leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.' Fed.R.Civ.P.19(a)(1)(B)(ii)." And it then wrongly asserts "[t]hat provision is not implicated here. Indeed, the Tribe did not invoke it below." That is false. The Tribe expressly asserted the argument in its Motion to Dismiss, ER-51-52.

that judgment against federal officials in an action challenging an agreement between the United States and the Quinault Nation would not bind the Nation).

### 2. All Four Factors Considered under Rule 19(b) Weigh in the Tribe's Favor.

To make the determination under Fed.R.Civ.P.19(b), the court asks whether it is "feasible to order that the absent party be joined", and balances four factors: (1) the prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum. *Dawavendewa*, 276 F.3d at 1161; *Kescoli*, 101 F.3d at 1310. Here, the first factor, prejudice to the Tribe, is overwhelming – Maverick seeks to "void" the Tribe's compact through which tribal opportunities and benefits from tribal governmental gaming directly flow. ER 123, ¶¶ 207(1), (4) and (6). The second and third factors regarding the adequacy and form of relief also weigh in favor of dismissal, and are discussed in Section VII(A)(2) and (B), above. Any relief in Maverick's favor thrusts the Tribe into uncharted legal waters that threaten to terminate its sovereign rights and to destroy its tribal economy. Regarding the fourth factor, Maverick may seek redress in available non-judicial forums, but there is no forum for a private party's legal challenge to the legality of a tribe's gaming operation. All four factors weigh heavily in favor of dismissal.

The district court correctly found the first three factors to weigh in favor of the Tribe. 2023 WL 2138477 at *7. Regarding the first factor, the district court found "the suit poses a substantial risk to Shoalwater's sovereign interest." *Id*. Regarding the second factor, the district court reasoned "Such relief cannot be tailored to lessen the prejudice faced by Shoalwater or other absent tribes—Maverick seeks nothing less than a wholesale revocation of the tribes' ability to operate casino gaming facilities." *Id*. Regarding the third factor, as discussed in greater detail above at Section VII(B), the district court reasoned "the relief the Court could provide to Maverick would not adequately remedy its injury because it would still be precluded from operating sports betting or other Class III gambling operations." *Id.* The district court found that the fourth factor, unavailability of a judicial forum, weighs in favor of Maverick, but cited to a "'wall of circuit authority' requiring dismissal when a Native American tribe cannot be joined due to its assertion of tribal sovereign immunity." *Id.* at *8.

A tribe's interest in sovereign immunity so greatly outweighs a plaintiff's interest in litigating its claims that there is "very little room for balancing of other factors" under Rule 19(b) in such cases. *American Greyhound*, 305 F.3d at 1025. Virtually all of the cases that have considered the issue have been dismissed under Rule 19, regardless of whether an alternative remedy is available, if the absent party is an Indian tribe possessing sovereign immunity. *Dine Citizens*, 932 F.3d at 857;

52

*Klamath Irrigation*, 48 4th at 947; *White*, 765 F.3d at 1028; *Dawavendewa*, 276 F.3d at 1152*; Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1460 (9th Cir. 1994) ("Plaintiff's interest in litigating a claim may be outweighed by a tribe's interest in maintaining its sovereign immunity."); *Enterprise Management Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890, 894 (10th Cir. 1989) ("[w]hen, as here, a necessary party under Rule 19(a) is immune from suit, there is very little room for balancing of other factors set out in Rule 19(b), because immunity may be viewed as one of those interests compelling by themselves"). Federal courts acknowledge that plaintiffs may be left with no adequate remedy upon dismissal for non-joinder, "[b]ut this result is a common consequence of sovereign immunity, and [the Tribe's] interest in maintaining [its] sovereign immunity outweighs the [Appellants'] interest in litigating their claims." *White*, 765 F.3d at 1028. Thus, although the Rule 19(b) factors must still be considered, the court's "discretion in balancing the equities ... is to a great degree circumscribed, and the scale is already heavily tipped in favor of dismissal." *Id*. *See also Comenout v. Whitener*, 2015 WL 917631 at *4 (W.D. Wash. 2015).

### 3. The Narrow Public Rights Exception Does Not Apply Where the Claims Threaten an Absent Party Tribe's Legal Entitlement and Sovereignty.

Maverick asserts that the district court erred in declining to apply Rule 19's public rights exception to allow this case to proceed and threaten the Tribe's protectable interests (OB at 60 -66). The federal courts recognize a public rights exception to the joinder rules when the lawsuit is narrowly restricted to the protection and enforcement of public rights. *National Licorice Co. v. N.L.R.B.*, 309 U.S. 350, 363 (1940). In order for the public rights exception to apply, (1) "the litigation must transcend the private interests of the litigants and seek to vindicate a public right," and (2) "although the litigation may adversely affect the absent parties' interests, the litigation must not destroy the legal entitlements of the absent parties." *White*, 765 F.3d at 1028; *Kescoli*, 101 F.3d at 1311; *Conner v. Burford*, 848 F.2d 1441, 1459 (9th Cir. 1988); *Union Pacific Railroad Co. v. Runyon*, 320 F.R.D. 245, 256-57 (D. Ore. 2017). Maverick satisfies neither of these criteria. First, it seeks to invalidate the Washington Tribes' compacts and to declare tribal gaming to be unlawful in order to advance its own private agenda for economic gain. Second, Maverick expressly asks the Court to destroy the Tribe's substantial legal entitlements. The public rights exception is generally precluded under these circumstances where the lawsuit seeks to extinguish a tribe's substantial legal entitlements. *See Shermoen*, 982 F.2d at 1319 ("Because of the threat to the absent tribes' legal entitlements, and

indeed to their sovereignty, posed by the present litigation, application of the public rights exception to the joinder rules would be inappropriate."); *see also Kennedy v. United States Dept. of the Interior*, 282 F.R.D. 588, 599 (E.D. Cal. 2012). The only case of which the Tribe is aware in which the public rights exception arguably prevented dismissal of claims involving absent tribes under Rule 19 is *Makah*, 910 F.2d at 559 n.6. There, the Ninth Circuit affirmed the district court's dismissal on Rule 19 grounds in most respects, but allowed Makah's claims seeking *future* compliance with administrative procedures—claims not at issue here—to be heard on remand. *Id.* Given the broad relief requested in Maverick's FAC, ER-123, the extremely narrow public rights exception is inapplicable to the circumstances here. *Id*. at 559 ("[T]he scope of the relief available to the Makah on their procedural claims is narrow").

The district court agreed: "[T]he Court is persuaded that the threat posed by the instant suit to Shoalwater's legal entitlements is sufficient such that the public rights exception should not apply." 2023 WL 2138477 at * 8 and n.2. Moreover, the district court noted it was "not convinced this litigation is brought in the public interest. Maverick specifically details in the complaint how invalidation of the tribal compacts would 'increas[e] Maverick's commercial revenue'" *Id.* at *8, (citing ER-115). Maverick fails to show that this determination was an abuse of discretion.

This Court has expressly refused to apply the public rights exception to a case—like this one—challenging the validity of tribal-state IGRA compacts. In *American Greyhound*, this Court reasoned that "the rights in issue between the plaintiffs in this case, the tribes and the state [tribal/state gaming compacts] are more private than public" 305 F.3d at 1026(OB at 64). That authority is directly on point and controlling here, and is consistent with this Court's general view that tribal-state compacts under IGRA are contracts between tribal and state sovereigns. *Shoshone-Bannock Tribes*, 465 F.3d at 1098-99. Maverick cites *Bond v. United States*, 564 U.S. 211, 222 (2011), holding that an individual has standing to challenge a criminal statute on Tenth Amendment grounds, but the standing question at issue in that case has nothing to do with Rule 19's public rights exception. Maverick also attempts to distinguish this case from *Dine Citizens* and *Klamath Irrigation* on the grounds that those cases involved private interests, while the IGRA compacts at issue here involve public policy (OB at 64-65), but that argument is foreclosed by *American Greyhound*. And as stated above, both *Dine Citizens* and *Klamath Irrigation* note that the tribal contractual interests at stake only underscore the tribes' indispensability because they impact the sovereign authority of the tribes. IGRA's declaration of policy is "to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments." 25 U.S.C. § 2702(1). The district court's

determination that the Tribe is indispensable in a suit that seeks to strip these rights is consistent with controlling authority. Moreover, although Maverick makes clear that it disagrees with the district court's decision not to apply the public rights exception, Maverick fails to articulate how such disagreement would justify a finding of abuse of discretion. The district court did not err in declining to apply the public rights exception.

## VIII. CONCLUSION

For the reasons set forth herein, and in the Response Briefs filed by the State and Federal Defendants, the district court's dismissal of Maverick's lawsuit should be affirmed.

Respectfully submitted this 1st day of September, 2023.

s/ *Scott D. Crowell*
SCOTT CROWELL
CROWELL LAW OFFICE-TRIBAL
ADVOCACY GROUP
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Telephone: (425) 802-5369
Fax: (509) 290-6953
Email: scottcrowell@hotmail.com

LAEL ECHO-HAWK
MThirtySix, PLLC
700 Pennsylvania Avenue SE
The Yard – 2nd Floor
Washington, D.C. 20003
Telephone: (206) 271-0106
Email: Lael@MThirtySixPLLC.com

*Attorneys for Appellee*
*Shoalwater Bay Tribe*

57

## **CERTIFICATE OF SERVICE**

I, Scott Crowell, hereby certify that on September 1, 2023, I filed the foregoing Shoalwater Bay Tribe's Answering Brief with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record in this matter.

DATED: September 1, 2023

s/ *Scott D. Crowell*
SCOTT CROWELL
CROWELL LAW OFFICE-TRIBAL
ADVOCACY GROUP
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Telephone: (425) 802-5369
Fax: (509) 290-6953
Email: scottcrowell@hotmail.com

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-35136

I am the attorney or self-represented party.

**This brief contains** | 13,999 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated | |.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | Scott D. Crowell | **Date** | September 1, 2023
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*