No. 23-35136

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

MAVERICK GAMING LLC,

*Plaintiff – Appellant*,

v.

UNITED STATES OF AMERICA, *et al.*,

*Defendants – Appellee*s,

SHOALWATER BAY TRIBE,

*Intervenor – Defendant – Appellee.*

On Appeal from the United States District Court for the
Western District of Washington
Case No. 3:22-cv-05325-DGE
Hon. David G. Estudillo

_____

**BRIEF OF NON-PARTY COMPACTING TRIBES AS AMICI CURIAE IN
SUPPORT OF INTERVENOR – DEFENDANT – APPELLEE AND IN
SUPPORT OF AFFIRMANCE**

_____

Cory J. Albright
Reed C. Bienvenu
KANJI & KATZEN, P.L.L.C.
811 1st Avenue
Suite 630
Seattle, WA 98104
Telephone: (206) 344-8100
Email: calbright@kanjkatzen.com

*Co-Counsel for the Confederated Tribes of
the Chehalis Reservation, Muckleshoot
Indian Tribe, Swinomish Indian Tribal
Community & the Tulalip Tribes*

Keith M. Harper
Leonard R. Powell
Allison M. Tjemsland
JENNER & BLOCK LLP
1099 New York Ave. NW
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Email: kharper@jenner.com

*Counsel for the Suquamish Tribe*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

I.     INTERESTS OF AMICI CURIAE ................................................1

II.    INTRODUCTION ...................................................................3

III.   BACKGROUND ....................................................................5

       A.    The Indian Gaming Regulatory Act .......................................5

       B.    Tribal Gaming in Washington ...............................................5

       C.    Sports Wagering in Washington ............................................8

       D.    Maverick's Complaint ........................................................8

IV.   ARGUMENT .......................................................................10

       A.    THE TRIBES ARE REQUIRED PARTIES........................10

             1.    Maverick's Suit Targets the Tribes' Protected Interests...........10

             2.    The Analysis Is No Different for Maverick's Third Claim. ........................................................................12

             3.    No Existing Party Adequately Represents the Tribes. ..............14

                 a.    Federal Defendants Do Not Share the Tribes' Sovereign Interests. .......................................15

                 b.    Federal Defendants' and the Tribes' Interests Could Fully Diverge. .......................................16

                 c.    Maverick's Second and Third Claims Do Not Involve Federal Defendants...........................20

                 d.    Maverick's Counterarguments Are Wrong. ....................21

                     i.    Maverick Fails to Distinguish *Diné Citizens*. ..............................................21

                     ii.   Maverick's Other Counterarguments Fail...........22

       B.    THE TRIBES CANNOT BE JOINED................................24

i

C.    DISMISSAL IS REQUIRED UNDER RULE 19(b). ........................25

    1.    The Rule 19(b) Factors Compel Dismissal. .............................26

    2.    The Public-Rights Exception Does Not Apply. ........................29

CONCLUSION .......................................................................................31

# TABLE OF AUTHORITIES

## CASES

*Alto v. Black*, 738 F.3d 1111 (9th Cir. 2013)............................................................23

*Amador County v. Salazar*, 640 F.3d 373 (D.C. Cir. 2011) ....................................22

*American Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015 (9th Cir. 2002) ............................................................. 3, 5, 11, 12, 19, 24, 26, 28, 29, 30

*Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d 712 (9th Cir. 2003) ..........................................................................................8, 19, 25, 27

*Bodi v. Shingle Springs Band of Miwok Indians*, 832 F.3d 1011 (9th Cir. 2016) ....................................................................................................25

*Bond v. United States*, 564 U.S. 211 (2011) ............................................................30

*Bryant v. Technical Research Co.*, 654 F.2d 1337 (9th Cir. 1981) ........................20

*Cheyenne River Sioux Tribe v. South Dakota*, 3 F.3d 273 (8th Cir. 1993) ....................................................................................................................9

*Chicken Ranch Rancheria of Me-Wuk Indians v. California*, 42 F.4th 1024 (9th Cir. 2022)..................................................................................7

*Citizens Against Casino Gambling in Erie County v. Kempthorne*, 471 F. Supp. 2d 295 (W.D.N.Y. 2007)........................................................25

*City of Cleveland v. Ohio*, 508 F.3d 827 (6th Cir. 2007) ........................................17

*Connecticut v. United States Department of Interior*, 344 F. Supp. 3d 279 (D.D.C. 2018) ...................................................................... 17-18

*Daniels-Hall v. National Educational Ass'n*, 629 F.3d 992 (9th Cir. 2010) ....................................................................................................................6

*Dawavendewa v. Salt River Project Agric. Improvement & Power District*, 276 F.3d 1150 (9th Cir. 2002)......................................10, 11, 12, 26, 28

*Department of Fish & Game v. Federal Subsistence Board*, 62 F.4th 1177 (9th Cir. 2023)........................................................................ 12-13

*Deschutes River Alliance v. Portland General Electric Co.*, 323 F. Supp. 3d 1171 (D. Or. 2018) ...............................................................25

*Diné Citizens Against Ruining Our Environment v. BIA*, 932 F.3d 843 (9th Cir. 2019)..................................... 4, 15, 16, 17, 20, 25, 28, 29, 31

*Estom Yumeka Maidu Tribe of the Enterprise Rancheria of California v. California*, 163 F. Supp. 3d 769 (E.D. Cal. 2016).............................9

*Friends of Amador County v. Salazar*, 554 F. App'x 562 (9th Cir. 2014) ..................................................................3, 11, 18, 26, 29, 30

*In re Indian Gaming Related Cases*, No. C 97-4693, 2000 WL 1257265 (N.D. Cal. Aug. 22, 2000)......................................................................19

*Jamul Action Committee v. Simermeyer*, 974 F.3d 984 (9th Cir. 2020), *cert. denied*, 142 S. Ct. 83 (2021)......................................................11

*Klamath Irrigation District v. United States Bureau of Reclamation*, 48 F.4th 934 (9th Cir. 2022), *petition for cert. filed*, 91 U.S.L.W. 3304 (U.S. May 15, 2023) (No. 22-1116) ......................................17, 23, 26

*Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 327 F. Supp. 2d 995 (W.D. Wis. 2004), *aff'd on other grounds*, 422 F.3d 490 (7th Cir. 2005) ....................................................................25

*Lomayaktewa v. Hathaway*, 520 F.2d 1324 (9th Cir. 1975).....................10

*Maine v. Wheeler*, No. 14-CV-00264, 2018 WL 6304402 (D. Me. Dec. 3, 2018) ...................................................................................................18

*Makah Indian Tribe v. Verity*, 910 F.2d 555 (9th Cir. 1990) ..................27

*Manybeads v. United States*, 209 F.3d 1164 (9th Cir. 2000)....................11

*Manygoats v. Kleppe*, 558 F.2d 556 (10th Cir. 1977) ..............................17

*Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130 (1982) ........................30

*Michigan v. Bay Mills Indian Community*, 572 U.S. 782 (2014) ...............8

*Quinn v. Robinson*, 783 F.2d 776 (9th Cir. 1986) ...................................13

*Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008) ............... 28-29

*School District of City of Pontiac v. Secretary of United States Department of Education*, 584 F.3d 253 (6th Cir. 2009) (en banc) ................27

*Sessions v. Morales-Santana*, 582 U.S. 47 (2017) ..................................13

*Shermoen v. United States*, 982 F.2d 1312 (9th Cir. 1992) ........................23, 29, 30

*Southwest Center for Biological Diversity v. Babbitt*, 150 F.3d 1152 (9th Cir. 1998) (per curiam)................................................................18

*Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151 (9th Cir. 2015) ........................................................................................5

*United States v. AT&T Co.*, 642 F.2d 1285 (D.C. Cir. 1980)................................17

*United States v. Confederated Tribes of Colville Reservation*, 205 F.3d 1352, 1999 WL 1269335 (9th Cir. 1999) (unpublished table decision) ....................................................................................19

*United States v. Egan Marine Corp.*, 843 F.3d 674 (7th Cir. 2016) ......................17

*United States v. Santa Ynez Band of Chumash Mission Indians of Santa Ynez Reservation*, 983 F. Supp. 1317 (C.D. Cal. 1997) ....................................19

*United States v. Spokane Tribe of Indians*, 139 F.3d 1297 (9th Cir. 1998) ......................................................................................19

*Water Wheel Camp Recreational Area, Inc. v. LaRance*, 642 F.3d 802 (9th Cir. 2011)................................................................30

*West Flagler Associates, Ltd. v. Haaland*, 71 F.4th 1059 (D.C. Cir. 2023) ........................................................................................8

*White v. University of California*, 765 F.3d 1010 (9th Cir. 2014)............................17

*Wichita & Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765 (D.C. Cir. 1986) ................................................................27, 29

*Wilbur v. Locke*, 423 F.3d 1101 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010).............11, 28

## CONSTITUTIONAL PROVISIONS AND STATUTES

Wash. Const. art. II, § 24 ................................................................13, 14

v

25 U.S.C. § 2702(1) ...........................................................................6

25 U.S.C. § 2702(2) ...........................................................................5

25 U.S.C. § 2703(4) ...........................................................................5

25 U.S.C. § 2710(b)(2)(A) ...................................................................5

25 U.S.C. § 2710(b)(2)(B) ...................................................................5

25 U.S.C. § 2710(d)(1)(A)(ii) ..............................................................5

25 U.S.C. § 2710(d)(8)(B)(i) .......................................................22, 23

25 U.S.C. § 2710(d)(8)(B)(ii) ......................................................22, 23

2020 Wash. Sess. Laws ch. 127, § 1 ................................................13

Wash. Rev. Code § 9.46.010.............................................................13

Wash. Rev. Code § 9.46.0364.............................................................8

## OTHER AUTHORITIES

*2021: ACS 1-Year Estimates Subject Tables, Employment Status*, U.S.
   Census Bureau, https://bit.ly/3fRwb5e (last visited Sept. 7, 2023).....................7

Will Campbell, *ilani to Add 14-Story Hotel, Enlarge Gaming Space*,
   The Columbian (Oct. 3, 2020), https://bit.ly/3CFHwP6 .....................................7

*Casino Locations*, Wash. State Gambling Comm'n,
   https://bit.ly/3SAlAdz (last visited Sept. 7, 2023)................................................6

Complaint, *Diné Citizens Against Ruining Our Environment v. BIA*,
   No. 16-cv-08077 (D. Ariz. Apr. 20, 2016), 2016 WL 1614184........................21

*The Economic & Community Benefits of Tribes in Washington*, Wash.
   Indian Gaming Ass'n (May 2022), https://bit.ly/3RGO8Ri.............................6, 7

Fed. R. App. P. 29(a)(2) ...................................................................2

Fed. R. App. P. 29(a)(4)(E) ..............................................................2

Fed. R. Civ. P. 19(a)(1)(B)(ii).........................................................12

Fed. R. Evid. 201(b)(2) .....................................................................6

*Gaming Compacts*, Wash. State Gambling Comm'n, https://bit.ly/3MdcgKr (last visited Sept. 7, 2023) .................................................8

*Gambling Industry Overview 2022*, Wash. State Gambling Comm'n (2022), https://bit.ly/3RKErkO ..............................................................................6

Third Amendment to the Tribal-State Compact for Class III Gaming between Shoalwater and the State of Washington (Sept. 4, 2022), https://bit.ly/45r3MI8................................................................................................8

Steve Powell, *New Casino, Hall, Marina Add to Economic Power of Tulalip*, Marysville Globe (July 4, 2019), https://bit.ly/3SVxy1o ................... 6-7

## I. INTERESTS OF AMICI CURIAE

Amici Curiae are 22 federally recognized sovereign Indian tribes who have signed gaming compacts with the State of Washington ("State"). Like Limited-Intervenor/Appellee Shoalwater Bay Indian Tribe ("Shoalwater"), the Amici Tribes are required parties to this case that cannot be joined due to their sovereign immunity.

Pursuant to class III gaming compacts with the State, for over three decades the Amici Tribes have operated casinos on their Indian lands and/or leased all or a portion of their allocation of video lottery terminals to tribes that operate casinos. These casinos provide essential funding for the Amici Tribes' governmental operations and are a major source of employment for tribal members. The Amici Tribes' interests are directly implicated by this suit because Plaintiff Maverick Gaming LLC ("Maverick") expressly challenges the legality of the Amici Tribes' gaming activities and seeks to void their gaming compacts. If successful, these claims would cripple the Amici Tribes' governments and economies, decimating their budgets for education, healthcare, public safety, and other critical services upon which tribal members and neighboring non-tribal communities depend.

The Amici Tribes—which include the Confederated Tribes of the Chehalis Reservation, the Muckleshoot Indian Tribe, the Suquamish Tribe, the Swinomish Indian Tribal Community, the Tulalip Tribes, the Confederated Tribes of the Colville Reservation, Confederated Tribes and Bands of the Yakama Nation, Cowlitz Indian

Tribe, Hoh Indian Tribe, Jamestown S'Klallam Tribe, Kalispel Tribe of Indians, Makah Tribe, Nisqually Indian Tribe, Nooksack Indian Tribe, Port Gamble S'Klallam Tribe, Puyallup Tribe of Indians, Quinault Indian Nation, Samish Indian Nation, Skokomish Indian Tribe, Spokane Tribe, Squaxin Island Tribe, and Stillaguamish Tribe of Indians—submit this brief to urge affirmance of the district court's dismissal of Maverick's complaint.[1]

---

[1] All parties to this appeal have consented to the filing of this amicus brief. Fed. R. App. P. 29(a)(2). No party's counsel authored this brief in whole or in part, nor did any party or party's counsel contribute money that was intended to fund preparing or submitting the brief. Fed. R. App. P. 29(a)(4)(E). No person—other than the amici curiae, their members, or their counsel—contributed money that was intended to fund preparing or submitting this brief. *Id.*

## II.    INTRODUCTION

The real parties in interest in this litigation are the twenty-nine federally recognized Indian tribes in Washington, including Shoalwater (collectively, "the Tribes"), whose gaming compacts Maverick seeks to "void" and whose gaming activities Maverick seeks to have declared in violation of federal civil and criminal laws.  ER-123; Maverick Br. 13-14.  As the district court recognized, Maverick's claims seek to "eviscerate the Tribe[s'] very ability to govern [themselves], sustain [themselves] financially, and make decisions about [their] own gaming operations." ER-13 (quotation marks omitted).  Yet Maverick did not sue the Tribes.  Rather, recognizing that the Tribes' sovereign immunity would bar suit, Maverick tried to circumvent that immunity by proceeding in their absence.  Federal Rule of Civil Procedure 19 ("Rule 19") is designed to prevent such gamesmanship.  Indeed, this Court has uniformly dismissed cases seeking to terminate tribal gaming compacts in the absence of the tribes.  *See Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1023-25 (9th Cir. 2002); *Friends of Amador Cnty. v. Salazar*, 554 F. App'x 562, 564-66 (9th Cir. 2014).

Maverick's attempts to avoid this Court's clear and controlling Rule 19 precedent fail.  Federal Defendants are not adequate representatives of the Tribes because they do not share the Tribes' "sovereign interests" in their gaming compacts and casinos, which are a critical source of funding for tribal governments and

3

essential services for tribal communities. *Diné Citizens Against Ruining Our Env't v. BIA*, 932 F.3d 843, 855 (9th Cir. 2019). Instead, Federal Defendants' "overriding interest" is in complying with their own obligations under federal law, *id.*, which could diverge from the Tribes' interests, as has previously occurred in gaming disputes in Washington, *see* Shoalwater Br. 7-9. Federal Defendants themselves assert that they "have no obligation" to represent the interests of the Tribes in this case, Fed. Br. 18, and also that they "do not represent the Tribe[s'] interests" as to Maverick's second and third claims because they are not parties to those claims, *id.* 36.

Moreover, the district court properly exercised its discretion when it determined that Maverick's claims—which directly threaten "tribal revenue and contracts, [as well as] tribal and non-tribal employment and other businesses"— could not in equity and good conscience proceed in the Tribes' absence. ER-18–19. That ruling was correct and consistent with a "wall" of Ninth Circuit authority dismissing cases where, as here, required parties cannot be joined due to sovereign immunity. ER-19.

For these reasons and those set forth below, the Amici Tribes urge this Court to affirm.

## III.    BACKGROUND

### A.    The Indian Gaming Regulatory Act

Tribal interests are paramount in IGRA's statutory scheme.  IGRA's primary purpose is to "promot[e] tribal economic development, self-sufficiency, and strong tribal governments" by creating a legal framework for tribes to offer and regulate gaming activities on their Indian lands.  *Am. Greyhound Racing*, 305 F.3d at 1018 (quoting 25 U.S.C. § 2702(1)).  Indian lands include all lands within a tribe's reservation as well as certain lands held in trust or restricted fee status.  25 U.S.C. § 2703(4).  IGRA specifies that the net revenues from tribal gaming may be used only for certain purposes, including: "(i) to fund tribal government operations or programs; (ii) to provide for the general welfare of the Indian tribe and its members; [or] (iii) to promote tribal economic development."  25 U.S.C. § 2710(b)(2)(B), (d)(1)(A)(ii).  And tribes must have the "sole proprietary interest" in any gaming activity.  25 U.S.C. § 2710(b)(2)(A), (d)(1)(A)(ii).  These requirements "ensure that the Indian tribe is the primary beneficiary of the gaming operation."  25 U.S.C. § 2702(2).

### B.    Tribal Gaming in Washington

Thirty-two years ago, the State and the Tulalip Tribes negotiated and executed the first state-tribal gaming compact in Washington.  *See Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1153 (9th Cir. 2015).  Today, all twenty-nine federally recognized Indian tribes in Washington have class III gaming compacts pursuant to

which they operate casinos or, if they do not have their own casinos, lease their allocation of video lottery terminals to other tribes. *Casino Locations*, Wash. State Gambling Comm'n, https://bit.ly/3SAlAdz (last visited Sept. 7, 2023).[2]

The gaming compacts are the foundation of the Tribes' successful gaming operations—in Fiscal Year 2021, the Tribes' net gambling receipts (gross wagering receipts minus prizes paid) amounted to $2.297 billion (before paying their employees and other operating costs). *Gambling Industry Overview 2022*, Wash. State Gambling Comm'n, 2 (2022), https://bit.ly/3RKErkO (last visited Sept. 7, 2023). In turn, these revenues enable tribal governments to invest in their communities, build their economies, and provide essential services—including programs for health and wellness, education and child development, public safety, environmental protection and conservation, and cultural preservation. *See The Economic & Community Benefits of Tribes in Washington*, Wash. Indian Gaming Ass'n, 4-23 (May 2022), https://bit.ly/3RGO8Ri ("WIGA Report"). This is precisely what Congress intended. 25 U.S.C. § 2702(1).

In reliance on the rights secured by their gaming compacts, the Tribes have invested hundreds of millions of dollars in their gaming facilities and associated business enterprises. *See, e.g.*, Steve Powell, *New Casino, Hall, Marina Add to*

---

[2] Amici Tribes respectfully request that the Court take judicial notice of the documents posted on government websites cited in this brief. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010); Fed. R. Evid. 201(b)(2).

*Economic Power of Tulalip*, Marysville Globe (July 4, 2019), https://bit.ly/3SVxy1o (discussing construction of $125 million tribal casino); Will Campbell, *ilani to Add 14-Story Hotel, Enlarge Gaming Space*, The Columbian (Oct. 3, 2020), https://bit.ly/3CFHwP6 (discussing $30 million expansion of tribal casino and hotel).

Tribal casinos provide employment to over 14,000 tribal members and non-members across Washington. WIGA Report at 12 (2020 data). At least eleven tribal casinos are located in "distressed" counties where the unemployment rate is at least 7.2%. TribeSER-45 n.2. This employment lifeline for tribal citizens is essential: while the overall state unemployment rate is 5.9%, it is approximately 9.3% for the Native American population. *2021: ACS 1-Year Estimates Subject Tables, Employment Status*, U.S. Census Bureau, https://bit.ly/3fRwb5e (last visited Sept. 7, 2023).

In sum, over the past thirty years, the Tribes have developed substantial vested interests in their gaming compacts and operations, and gaming revenues have become the "lifeblood" upon which the Tribes rely to fund tribal governments and provide essential services to tribal communities. *Chicken Ranch Rancheria of Me-Wuk Indians v. California*, 42 F.4th 1024, 1032 (9th Cir. 2022). Indeed, for some tribes, gaming may be the only viable means to raise government revenues. *See*

7

*Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 809-13 (2014) (Sotomayor, J., concurring).

## C. Sports Wagering in Washington

In 2020, the Washington Legislature enacted legislation enabling the State and the Tribes to negotiate compact amendments authorizing on-premise sports wagering at tribal gaming facilities. Wash. Rev. Code § 9.46.0364. Twenty tribes have since negotiated sports wagering compact amendments. *See Gaming Compacts*, Wash. State Gambling Comm'n, https://bit.ly/3MdcgKr; *see also, e.g.*, ER-80 (approval of the Shoalwater amendment). These amendments do not address, let alone limit, sports wagering outside of Indian lands. *See, e.g.*, Third Amendment to the Tribal-State Compact for Class III Gaming between Shoalwater and the State of Washington (Sept. 4, 2022), https://bit.ly/45r3MI8.

## D. Maverick's Complaint

Maverick's amended complaint advances three core legal arguments—a statutory argument, an equal protection argument, and an anti-commandeering argument—all of which are meritless. ER-86–87; ER-105–10. Maverick itself acknowledges that its statutory and equal protection arguments are "foreclosed" by this Court's decision in *Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d 712 (9th Cir. 2003). TribeSER-126, 133; *see also W. Flagler Assocs., Ltd. v. Haaland*, 71 F.4th 1059, 1070 (D.C. Cir. 2023) (rejecting equal protection challenge

8

to tribal exclusivity over sports wagering). And courts have likewise rejected anti-commandeering challenges against IGRA. *E.g.*, *Cheyenne River Sioux Tribe v. South Dakota*, 3 F.3d 273, 281 (8th Cir. 1993); *Estom Yumeka Maidu Tribe of the Enter. Rancheria of Cal. v. California*, 163 F. Supp. 3d 769, 777-80 (E.D. Cal. 2016).

Peddling these shopworn theories, Maverick asserts three causes of action, ER-116–23, and requests a wide array of remedies that are specifically directed at the Tribes and would eliminate the legal underpinning for their class III gaming. Maverick's complaint seeks a judgment "[d]eclaring that the Compacts and Compact Amendments violate [federal law] … and therefore are void, were not validly entered into, and are not in effect." ER-123. It further attacks the validity of the compacts by contesting State Defendants' authority to execute them, and asks the Court to enjoin State Defendants from continuing to administer them and from entering new compacts. ER-123–24. And it seeks a declaration that the Tribes' gaming activities pursuant to those compacts violate federal civil and criminal laws. ER-123.

Despite putting the Tribes in its crosshairs, Maverick did not name the Tribes as defendants. The District Court correctly recognized that this is not permitted by Rule 19 and dismissed all of Maverick's claims. ER-5–20.

## IV.    ARGUMENT

## A.    THE TRIBES ARE REQUIRED PARTIES.

The Tribes are required parties to this case under Rule 19(a).  Maverick's suit directly targets their protected interests, and no existing party adequately represents those interests.

### 1.    Maverick's Suit Targets the Tribes' Protected Interests.

Maverick concedes that Shoalwater "has a legitimate interest in the legality of its tribal-state gaming compact" for purposes of Rule 19(a)(1), Maverick Br. 26, and does not dispute the district court's finding that Shoalwater's legally protected interests could be harmed by Maverick's claims.  ER-9–11.  That is for good reason. Maverick's complaint directly attacks the legality of the Tribes' compacts and gaming activities.  *Supra* Section III.D.  In so doing, Maverick places this case squarely within two well-established Rule 19 doctrines.

*First*, it is a "fundamental principle" that parties to a contract are required, and indeed indispensable, to "litigation seeking to decimate that contract." *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002); *see also Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside … a contract, all parties who may be affected by the determination of the action are indispensable.").  This Court has thus

10

consistently dismissed lawsuits that challenge the validity of a contract where an Indian tribe is a party to the contract and cannot be joined. *See, e.g.*, *Wilbur v. Locke*, 423 F.3d 1101, 1111-14 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010); *Dawavendewa*, 276 F.3d at 1153; *Manybeads v. United States*, 209 F.3d 1164, 1166 (9th Cir. 2000).  The rule is the same when, as here, the contracts at issue are gaming compacts. *See Am. Greyhound Racing*, 305 F.3d at 1023-25; *Friends of Amador Cnty.*, 554 F. App'x at 564-66.

*Second*, a tribe is a required party when claims "would have 'retroactive effects' on rights already enjoyed by a tribe." *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 997 (9th Cir. 2020) (quoting *Diné Citizens*, 932 F.3d at 853), *cert. denied*, 142 S. Ct. 83 (2021).  The Tribes' longstanding interests in their gaming operations, and their compacts that enable those operations, cannot be overstated. For over thirty years, the Tribes' casinos have provided essential revenues to tribal governments and vital employment on tribal lands. *Supra* Section III.B.  And the Tribes have made tremendous investments in their gaming operations, ancillary businesses, and critical governmental services in reliance on the rights secured by their gaming compacts. *Id.*  Maverick's claims, if permitted to proceed in the Tribes' absence, could thus "have far-reaching retroactive effects on the [Tribes'] existing sovereign and proprietary interests." *Jamul Action Comm.*, 974 F.3d at 997. Moreover, as this Court has recognized, Maverick's request for a "judgment that [the

Tribe's gaming] operations are illegal" would also affect the Tribes' legally protected interests as a practical matter because "enforcement authorities may consider themselves compelled to act against the [T]ribes." *Am. Greyhound Racing*, 305 F.3d at 1024.

Maverick's claims could also subject State Defendants "to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Rule 19(a)(1)(B)(ii). If Maverick prevailed in enjoining State Defendants' ongoing administration of the compacts, for instance, the Tribes would not be bound by that judgment and could seek enforcement of the compacts against State Defendants in a separate action. The State thus could find itself trapped between conflicting court orders. *See Dawavendewa*, 276 F.3d at 1157-59 (defendant subject to substantial risk of inconsistent obligations from a ruling on a tribal contract in the tribe's absence).

### 2. The Analysis Is No Different for Maverick's Third Claim.

Despite conceding that its first two claims challenge the Tribes' legally protected interests, Maverick contends that its third claim does not. Maverick Br. 47-48. This is incorrect.[3] Maverick's third claim asserts that Washington law

---

[3] Maverick has waived this argument. Below, "Maverick d[id] not directly dispute Shoalwater has a legally protected interest that could be impaired by the instant litigation." ER-11. Maverick now argues otherwise as to its third claim, but this Court should hold Maverick to its waiver. *See, e.g.*, *Dep't of Fish & Game v. Fed.*

violates equal protection principles because it "exempt[s] the Tribes from the application of its criminal prohibitions on [certain] forms of class III gaming." ER-121. If the exemption was eliminated and those general prohibitions applied to the Tribes, the Tribes' interests in their gaming activities and compacts would be harmed in just the same ways as under Maverick's first and second claims.

Maverick instead proposes that the Court could invalidate Washington's background criminal prohibition on most forms of Class III gaming. Maverick Br. 48. But that is not a proper remedy for Maverick's claim. The relief that can be granted for a purported equal protection violation is "governed by the legislature's intent, as revealed by the statute at hand." *Sessions v. Morales-Santana*, 582 U.S. 47, 73 (2017). As the district court detailed, the Washington legislature clearly stated that its preference is to broadly prohibit Class III gaming within the State. ER-18–19; Wash. Rev. Code § 9.46.010; 2020 Wash. Sess. Laws ch. 127, § 1. Indeed, that preference is also the choice of the Washington citizenry, who adopted by constitutional amendment a default rule that gaming is prohibited unless a *super*majority vote of the Washington legislature authorizes the new forms of gaming. *See* Wash. Const. art. II, § 24; State Br. 3-4.

---

*Subsistence Bd.*, 62 F.4th 1177, 1183 (9th Cir. 2023); *Quinn v. Robinson*, 783 F.2d 776, 814-15 (9th Cir. 1986).

Maverick's proposed remedy would be inappropriate for another reason: the Tribes do not have an unfettered exemption from the State's gaming laws. Rather, each Tribe's gaming activities are restricted solely to its own Indian lands, and such activities are strictly governed and regulated in accordance with the terms of the gaming compacts. Maverick's requested relief, in contrast, would put Maverick in the privileged position of being able to offer class III gaming at its twenty-two facilities throughout the state, without any restrictions or regulatory oversight whatsoever. As State Defendants explain, such extraordinary, sweeping, and *unequal* relief is an improper remedy for an equal protection claim. State Br. 44-45.

Finally, enjoining enforcement of the *statutory* criminal prohibition on class III gaming would not even redress Maverick's purported injury. If that relief were granted, the aforementioned *state constitutional* prohibition would still apply to Maverick. Wash. Const. art. II, § 24. Accordingly, the only available remedy that could cure Maverick's purported equal protection injury would be to eliminate the *exception* to the State's background prohibition on gaming. Thus, the harm to the Tribes' interests from Maverick's third claim cannot be avoided.

### 3. No Existing Party Adequately Represents the Tribes.

To evaluate whether an existing party adequately represents the interests of an absent tribe, this Court considers (1) "whether the interests of a present party to the suit are such that it will undoubtedly make all of the [tribe's] arguments"; (2)

"whether the party is capable of and willing to make such arguments"; and (3) "whether the [tribe] would offer any necessary element to the proceedings that the present parties would neglect." *Diné Citizens*, 932 F.3d at 852 (quoting *Alto v. Black*, 738 F.3d 1111, 1127-28 (9th Cir. 2013)). These considerations compel dismissal where no existing party shares an absent tribe's "sovereign interest," or where the interests of the existing parties and the tribe "might [later] diverge." *Id.* at 855-56.

Maverick concedes that State Defendants are not adequate representatives. Maverick Br. 29; ER-11. This Court's precedent makes plain that Federal Defendants do not adequately represent the Tribes' interests either.

### a.  Federal Defendants Do Not Share the Tribes' Sovereign Interests.

Federal Defendants cannot represent the Tribes' interests in this case for a simple reason: Federal Defendants do not share the Tribes' interests. As explained above, the Tribes have a "sovereign interest in ensuring that [their gaming establishments] continue to operate and provide profits," as well as a sovereign interest in their gaming compacts and amendments. *Diné Citizens*, 932 F.3d at 855; *supra* Section IV.A.1. Critically, these sovereign interests are exclusive to the Tribes. The federal government has no pecuniary interest in the Tribes' gaming operations. Nor does it have its own stake in the Tribes' compacts, since it is not a party to, or beneficiary of, those agreements. Federal Defendants agree that they do not share the Tribes' interests in their compacts. Fed. Br. 19, 29-32.

This case is thus the same as *Diné Citizens*. There, this Court ruled that federal agencies and officials were inadequate representatives of the Navajo Nation in an environmental suit challenging the operation of a Navajo coal mine and a related power plant. *Diné Citizens*, 932 F.3d at 847-50. That was so because the federal defendants did "not share the Navajo Nation's sovereign interest in controlling its own resources, and in the continued operation of the Mine and Power Plant and the financial support that such operation provides." *Id.* at 856.

Maverick's attack on the legality of the Tribes' compacts and gaming activities would likewise vitiate the Tribes' unique sovereign interests by eliminating their "very ability to govern [and] sustain" themselves "financially, and make decisions about [their] own" gaming operations. *Diné Citizens*, 932 F.3d at 856. Federal Defendants do not share the Tribes' sovereign interests in controlling their own gaming operations and the essential revenues that those gaming operations provide to tribal governments, making Federal Defendants inadequate representatives of the Tribes in this suit.

**b.      Federal Defendants' and the Tribes' Interests Could Fully Diverge.**

Federal Defendants also cannot adequately represent the Tribes because of the substantial risk that their respective interests could fully diverge as this case proceeds. "Although Federal Defendants have an interest in defending their decisions," they "do not share an interest in the outcome of the [compact] approvals."

16

*Diné Citizens*, 932 F.3d at 855. Rather, "their overriding interest … must be in complying with" federal law—here, IGRA and the Constitution. *Id.*; *see also Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, 48 F.4th 934, 944-45 (9th Cir. 2022) (same), *petition for cert. filed*, 91 U.S.L.W. 3304 (U.S. May 15, 2023) (No. 22-1116). That distinction matters because Federal Defendants' view of what the law requires could change over time. If, for instance, this case proceeded on the merits and the district court issued a "holding that [federal law] required something other than what Federal Defendants have interpreted [it] to require," that ruling could "change Federal Defendants' planned actions," including whether to continue to defend their actions on appeal. *Diné Citizens*, 932 F.3d at 855; *see also, e.g.*, *White v. Univ. of Cal.*, 765 F.3d 1010, 1027 (9th Cir. 2014) (existing defendants did not adequately represent tribes where existing defendants' actions might change in response to court decision); *Manygoats v. Kleppe*, 558 F.2d 556, 558 (10th Cir. 1977) (Secretary of the Interior could not adequately represent absent tribe because "[t]he Secretary must act in accord with the obligations imposed by [law]").[4] Federal Defendants also could alter their litigation position because of a change in internal policy or change in federal leadership. *See, e.g.*, *Connecticut v. U.S. Dep't of*

---

[4] It is not uncommon for the federal government to reverse its position on appeal in response to an adverse district court decision. *See, e.g.*, *United States v. AT&T Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980); *City of Cleveland v. Ohio*, 508 F.3d 827, 837 (6th Cir. 2007); *United States v. Egan Marine Corp.*, 843 F.3d 674, 679 (7th Cir. 2016).

*Interior*, 344 F. Supp. 3d 279, 292-93 (D.D.C. 2018) (recounting that Interior Department "repeatedly informed" tribes that it supported compact amendments before changing its position); *Maine v. Wheeler*, No. 14-CV-00264, 2018 WL 6304402, at *1-2 (D. Me. Dec. 3, 2018) (allowing EPA to not defend its prior disapproval of state water quality standards). There is thus no assurance that Federal Defendants will maintain their current litigation position; only the Tribes themselves are guaranteed to protect their own interests.

Indeed, the federal and tribal interests have already diverged. Federal Defendants, for instance, did not raise a Rule 19 defense and would have proceeded with briefing on the merits if Shoalwater Bay had not intervened. That "indicate[s] divergent interests between the Tribe and the government." *Friends of Amador Cnty.*, 554 F. App'x at 564.[5] Moreover, if the case were to proceed, Federal Defendants could not fully address certain Maverick arguments, including that statutory classifications based on tribal status violate equal protection unless they "affect uniquely Indian interests." TribeSER-127 (quotation marks omitted). While

---

[5] Relying on *Southwest Center for Biological Diversity v. Babbitt*, 150 F.3d 1152 (9th Cir. 1998) (per curiam), Maverick says the Ninth Circuit has rejected this argument. Maverick Br. 37. But in *Southwest Center*, the federal government's refusal to raise the Rule 19 argument was the only concrete divergence that the tribe identified. *See* 150 F.3d at 1154. *Friends of Amador County* subsequently made clear that the federal government's decision not to "move for its own dismissal under Rule 19" is a proper basis for dismissal when, as here, it is one of several factors that "indicate divergent interests between the Tribe and the government." 554 F. App'x at 564.

Maverick is wrong that equal protection requires such a showing in this case, *see Artichoke Joe's*, 353 F.3d at 735, only the absent Tribes can fully and effectively explain their "unique" interests.

History confirms the substantial possibility that Federal Defendants' interests could diverge from, and even be adverse to, the Tribes' interests. As Shoalwater recounts, when the federal government believed (wrongly) in the 1990s and early 2000s that Shoalwater's gaming operation did not comply with IGRA, the federal government actively worked to halt the operation. *See* Shoalwater Br. 7-9. And that is just one example. The United States and Indian tribes, including Amici Tribes, have frequently been at odds over the legality of tribal gaming. *See, e.g.*, *United States v. Spokane Tribe of Indians*, 139 F.3d 1297, 1298 (9th Cir. 1998); *United States v. Confederated Tribes of Colville Rsrv.*, 205 F.3d 1352, 1999 WL 1269335, at *1 (9th Cir. 1999) (unpublished table decision); *In re Indian Gaming Related Cases*, No. C 97-4693, 2000 WL 1257265, at *1 (N.D. Cal. Aug. 22, 2000); *United States v. Santa Ynez Band of Chumash Mission Indians of Santa Ynez Reservation*, 983 F. Supp. 1317, 1318 (C.D. Cal. 1997). This case is thus like *American Greyhound Racing, Inc. v. Hull*, where this Court held that Arizona was an inadequate representative of absent tribes in a challenge to tribal-state gaming compacts because "the State and the tribes ha[d] often been adversaries in disputes over gaming." 305 F.3d at 1023 n.5. Because the federal government has previously

19

sought to shut down tribal gaming, including some of the Tribes', it "cannot be counted on" to vigorously defend against this suit that seeks precisely that relief. *Diné Citizens*, 932 F.3d at 855.

> **c.** **Maverick's Second and Third Claims Do Not Involve Federal Defendants.**

Federal Defendants cannot adequately represent the Tribes in this case for still another reason: Federal Defendants are not parties to Maverick's second and third claims. Maverick directs these claims solely against State Defendants, asserting that their execution and administration of the compacts is unlawful, ER-118–20, and that state law impermissibly allows the Tribes to offer certain games that non-tribal entities are not permitted to offer, ER-121–23. Federal Defendants are not involved in the activities giving rise to these claims, have no direct self-interest at stake, and of course have no obligations to enforce the laws of Washington or to defend against the claims. *See Bryant v. Tech. Rsch. Co.*, 654 F.2d 1337, 1343 (9th Cir. 1981) (non-party to claims against third party defendants lacked "recognizable legal interest" in such claims). Nor could Federal Defendants fully defend these claims even if they tried. If the district court dismissed Maverick's single claim against Federal Defendants, for example, they would be unable to defend against the second and third claims because they would no longer even be parties to the case. And if the district court issued an adverse ruling on Maverick's second two claims, Federal Defendants, as non-parties to them, may lack standing to appeal. *See, e.g., id.* ("A

20

party may only appeal to protect its own interests, not those of any other party.") (quotation marks omitted). Federal Defendants agree that they "do not represent the Tribe's interests as to Counts Two and Three." Fed. Br. 36. In short, no party represents the Tribes' interests as to Maverick's second and third claims.

### d. Maverick's Counterarguments Are Wrong.

#### i. *Maverick Fails to Distinguish* Diné Citizens.

Maverick provides no reason to deviate from *Diné Citizens*. It claims the United States' loyalties were split because some plaintiffs in *Diné Citizens* were "tribal organizations." Maverick Br. 40-41. This is untrue. Tribes were not on both sides of the dispute. Rather, one of the plaintiff non-profit *environmental organizations* happened to have Native American *members*. Compl. ¶ 16, *Diné Citizens Against Ruining Our Environment v. BIA*, No. 16-cv-08077 (D. Ariz. Apr. 20, 2016), 2016 WL 1614184. The Court in *Diné Citizens* never suggested that the United States' trust obligation was somehow compromised as a result. And even if it had, Maverick's logic would compel dismissal in *this* suit, which pits a Shoalwater member (Maverick's CEO) against the Shoalwater Tribe.

It also does not matter that *Diné Citizens* was an environmental case. Maverick insists that IGRA differs from environmental statutes because it requires the United States to act in the Tribes' interests and codifies the trust obligation as a "statutory mandate." Maverick Br. 33, 42-43, 45-46. Just the opposite: IGRA

requires the Secretary to *disapprove* compacts that do not comply with federal law, even if they serve tribal interests. 25 U.S.C. § 2710(d)(8)(B)(i)-(ii); *Amador County v. Salazar*, 640 F.3d 373, 381 (D.C. Cir. 2011). The district court thus observed, correctly, that under IGRA the United States' "overriding obligation to ensure compliance with federal law supersedes its general trust responsibility." ER-14 (quoting Dkt. 97 at 9-10). *Diné Citizens* is on all fours.

### ii. *Maverick's Other Counterarguments Fail.*

Maverick's other counterarguments also fall flat. Maverick manufactures a supposed set of "three overlapping presumptions" that no case has ever articulated. Maverick Br. 31. Maverick concedes these are different from the actual factors that "courts typically consider … to assess adequacy [of representation]." *Id.* at 36. *That* test Maverick does not mention until twelve pages into its argument, a telling sign.

Maverick's fabricated presumptions wither under scrutiny. First, Maverick claims a presumption of adequacy when an existing party and an absent party have the same objective. Maverick Br. 31. But *Klamath Irrigation District* specifically rejected that argument, explaining that "alignment on the ultimate outcome is insufficient … to hold that the government is an adequate representative of the tribes." 48 F.4th at 945. Second, Maverick asserts a presumption of adequacy when the government acts on behalf of a constituency it represents. Maverick Br. 31-32. IGRA, however, requires the federal government to neutrally assess whether the

compacts violate federal law, not to serve as a representative of the Tribes. 25 U.S.C. § 2710(d)(8)(B)(i)-(ii). Third, Maverick maintains there is a presumption of adequacy because of the federal trust responsibility. Maverick Br. 32-33. Yet this Circuit "has firmly rejected the notion that a trustee-trustor relationship alone is sufficient to create adequate representation." *Klamath Irrigation*, 48 F.4th at 945; *see also* Fed. Br. 24-28.

Maverick fares no better when it turns to the factors that actually govern the adequate representation inquiry. Maverick Br. 36-38. Maverick says the Tribes have offered no argument that Federal Defendants would decline to raise. In fact, they have. *Supra* Section IV.A.3.b; *see also* Fed. Br. 31 (federal government's defense would not include "issues of state law" or matters "outside the purview of IGRA"). Furthermore, Rule 19 does not require an absent party to foresee how a case will evolve and know exactly which arguments the named parties will raise. Rather, Rule 19 asks if the interests are so closely aligned that the named parties "will *undoubtedly* make all of the absent party's arguments." *Alto v. Black*, 738 F.3d 1111, 1127 (9th Cir. 2013) (emphasis added) (quotation marks omitted). Here, the Tribes have shown that "this case presents a *potential* conflict of interest for the United States." *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992) (emphasis added). That is enough.

Maverick also errs when it claims that the Tribes have "no interest in conducting illegal gambling." Maverick Br. 35. That argument puts the cart before the horse by assuming that Maverick is right on the merits (and by ignoring controlling law to the contrary). This Court has "rejected this kind of circularity in determining whether a party is necessary." *Am. Greyhound Racing*, 305 F.3d at 1024.

Finally, Maverick's reliance on *Alto v. Black* is misplaced. Maverick Br. 38-39. As *Diné Citizens* explained, *Alto* was an unusual case where "the tribe had specifically granted BIA final [decision-making] authority over tribal membership issues, making it more plausible that the government would represent the tribe's interest—or that the government's interest and the tribe's interest had become one and the same." *Diné Citizens*, 932 F.3d at 855. There is nothing comparable here.

## B.    THE TRIBES CANNOT BE JOINED.

Since the Tribes are required parties, the next question is whether they can be joined to the suit. Clearly not because the Tribes' sovereign immunity prevents joinder. ER-15–17.

Maverick argues that Shoalwater's limited intervention waived its immunity. Maverick Br. 66-68. Shoalwater, however, was explicit when it moved to intervene that it "d[id] not waive, and fully reserve[d], its sovereign immunity." ER-39. The district court, in turn, granted limited intervention on Shoalwater's terms. ER-64–

71.  The district court was right to do so.  This Court has recognized that limited intervention is a proper method for raising a Rule 19 defense.  *Diné Citizens*, 932 F.3d at 847-48, 850; *Klamath Irrigation*, 48 F.4th at 938.  In fact, limited intervention is the only way that a tribe can be certain its Rule 19 argument will be considered where, as here, the existing parties refuse to raise it.  *See Artichoke Joe's*, 353 F.3d at 719 n.10; *Deschutes River All. v. Portland Gen. Elec. Co.*, 323 F. Supp. 3d 1171, 1176-77 (D. Or. 2018).  Such limited intervention does not waive sovereign immunity.  *E.g.*, *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 327 F. Supp. 2d 995, 1000 (W.D. Wis. 2004) (collecting cases), *aff'd on other grounds*, 422 F.3d 490 (7th Cir. 2005); *Citizens Against Casino Gambling in Erie Cnty. v. Kempthorne*, 471 F. Supp. 2d 295, 312 (W.D.N.Y. 2007) (same); *cf. also Bodi v. Shingle Springs Band of Miwok Indians*, 832 F.3d 1011, 1018 (9th Cir. 2016).

Nor is Shoalwater the only tribe that matters.  None of the other Tribes have intervened in this case, and they are equally required parties under Rule 19.

## C.   DISMISSAL IS REQUIRED UNDER RULE 19(b).

Because the Tribes are required parties who cannot be joined, this case must be dismissed.  The Rule 19(b) factors compel that conclusion, and the public-rights exception does not apply.

**1.      The Rule 19(b) Factors Compel Dismissal.**

The district court correctly found that this action "should not proceed in equity or good conscience" in Shoalwater's absence, ER-19, which is consistent with the "'wall of circuit authority' requiring dismissal when a Native American tribe cannot be joined due to its … sovereign immunity." *Klamath Irrigation*, 48 F.4th at 947 (quoting *Deschutes River All. v. Portland Gen. Elec. Co.*, 1 F.4th 1153, 1163 (9th Cir. 2021)).   In doing so, it joined this Court in holding that Rule 19(b) requires dismissal of a third-party challenge to tribal gaming compacts when tribes are absent, *Am. Greyhound Racing*, 305 F.3d at 1024-25; *Friends of Amador Cnty.*, 554 F. App'x at 565-66, and hewed to the "fundamental principle" that all contracting parties are indispensable to an action seeking to invalidate the contract. *Dawavendewa*, 276 F.3d at 1157, 1161-63; *supra* Section IV.A.1.   Maverick's contrary arguments miss the mark.  Maverick Br. 51-60.

*(1) Prejudice.*  Maverick's prejudice arguments are meritless.  Maverick Br. 52-53.  The "prejudice test under Rule 19(b) is essentially the same as the [required party] inquiry under Rule 19(a)." *Dawavendewa*, 276 F.3d at 1162; *see also Am. Greyhound Racing*, 305 F.3d at 1024-25 (prejudice factor "largely duplicates" required party analysis).  And here, the Tribes are required parties. *Supra* Section IV.A.

**(2)** ***Extent to Which Prejudice Can Be Lessened or Avoided.*** Maverick is wrong that prejudice could be lessened or avoided by the Tribes' amicus participation. Maverick Br. 53-54. "If the opportunity to brief an issue as a non-party were enough to eliminate prejudice, non-joinder would never be a problem since the court could always allow the non-joinable party to file amicus briefs." *Wichita & Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765, 775 (D.C. Cir. 1986). This Court has likewise held that "[a]micus status is not sufficient" to lessen prejudice. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 560 (9th Cir. 1990) (citing *Hodel*, 788 F.2d at 775). Indeed, absent exceptional circumstances, this Circuit "do[es] not [even] address issues raised only in an amicus brief." *Artichoke Joe's*, 353 F.3d at 719 n.10.

Maverick's reliance on *School District of City of Pontiac v. Secretary of United States Department of Education*, 584 F.3d 253 (6th Cir. 2009) (en banc), is misplaced. Maverick Br. 54. That case never grappled with *Hodel*'s sound reasoning, nor could it overcome the clear law of this Circuit. *Makah*, 910 F.2d at 560 (following *Hodel*).

Maverick's remaining argument that relief for its third cause of action could be tailored to avoid prejudice by exempting Maverick from enforcement of Washington's criminal laws errs for the reasons discussed above. *Supra* Section IV.A.2; ER-18–19.

27

*(3) Adequacy.* On the third factor, Maverick's argument concerning the adequacy of a judgment disregards this Court's express rulings that prejudice to absent parties—here, the Tribes—makes a judgment not "adequate." *Wilbur*, 423 F.3d at 1114-15; *see also Am. Greyhound Racing*, 305 F.3d at 1025; *Dawavendewa*, 276 F.3d at 1162. Maverick's argument that *it* could obtain the relief that *it* seeks, is thus insufficient. Maverick Br. 55.

*(4) Alternative Remedies.* Finally, on the fourth factor, Maverick ignores that this Court has "regularly held that the tribal interest in immunity overcomes the lack of an alternative remedy or forum for the plaintiffs." *Am. Greyhound Racing*, 305 F.3d at 1025; *see also Diné Citizens*, 932 F.3d at 858 ("Even assuming that no alternate remedy exists … we would hold that dismissal is proper.").

Lacking any solid footing in the 19(b) factors, Maverick obfuscates the radical nature of its claims. Maverick contends that affirmance would establish a "*per se*" rule prohibiting any case involving an absent sovereign from proceeding. Maverick Br. 21, 59-60. Not so. What makes Maverick's claims impermissible under well-established Rule 19 doctrines is that they expressly and directly attack the legality of sovereign Indian tribes' gaming activities and compacts in their absence. Far from applying a *per se* rule, the district court applied a careful "case specific" analysis, just as Rule 19 requires. *Republic of Philippines v. Pimentel*, 553 U.S. 851, 862-63

(2008). Its determination that the clear equities in this case require dismissal was thus well within its discretion and was absolutely correct.

### 2. The Public-Rights Exception Does Not Apply.

Finally, the public-rights exception has no application here. Maverick Br. 60-66. This Circuit has already twice rejected attempts to apply the public-rights exception to tribal gaming compact challenges, and for good reason. *Am. Greyhound Racing*, 305 F.3d at 1025-27; *Friends of Amador Cnty.*, 554 F. App'x at 566. Such challenges do not "*incidentally* affect the gaming tribes in the course of enforcing some public right" but instead are "*aimed* at the tribes and their gaming." *Am. Greyhound Racing*, 305 F.3d at 1026. Moreover, they seek to vindicate the plaintiff's "interest … in freeing [itself] from the competition of Indian gaming," not public rights. *Id.* Maverick's challenge possesses both features.

Maverick says this case is different because it presents constitutional and administrative law claims. Maverick Br. 62, 65-66. But *American Greyhound Racing* involved state constitutional claims, 305 F.3d at 1021, 1026, and *Friends of Amador County* involved APA claims, 554 F. App'x at 565. *See also, e.g.*, *Shermoen*, 982 F.2d at 1316 (First and Fifth Amendment claims); *Diné Citizens*, 932 F.3d at 850 (APA claim); *Hodel*, 788 F.2d at 778 n.14 ("[R]eview otherwise available under the Administrative Procedure Act may be unavailable due to the impossibility of joining an indispensable party.").

Nor is Maverick correct that gaming compacts implicate the public-rights exception because "they do not confer private legal entitlements, but rather set the balance of public regulatory authority among sovereigns." Maverick Br. 63-66. *Friends of Amador County* made clear that gaming compacts confer "substantial legal entitlements" on tribes, and that "[t]his precludes application of the public rights exception." 554 F. App'x at 566. Moreover, in *Shermoen v. United States*, this Court explained that application of the public rights exception is "inappropriate" when litigation presents a "threat to [tribal] sovereignty." 982 F.2d at 1319. Regulatory authority, of course, is a core aspect of tribal sovereignty. *See, e.g.*, *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 137-41 (1982); *Water Wheel Camp Recreational Area, Inc. v. LaRance*, 642 F.3d 802, 808-09 (9th Cir. 2011) (citing *South Dakota v. Bourland*, 508 U.S. 679, 689 (1993)). Thus, the fact that gaming compacts establish, among other things, a "balance of regulatory authority among sovereigns," Maverick Br. 65, cuts *against* the public-rights exception in this context.

Finally, Maverick contends that its motivation to "increase its commercial … revenue" is irrelevant. ER-115; *see* Maverick Br. 62 n.13, 64-65. But this Court has expressly held that this motivation matters. *Am. Greyhound Racing*, 305 F.3d at 1026. *Bond v. United States*, 564 U.S. 211 (2011), is not to the contrary, Maverick Br. 64-65. That case had nothing to do with Rule 19, let alone the public-rights

30

exception.  But even if Maverick's motivation did not matter, it still would lose: as the district court correctly recognized, "the threat posed by the instant suit to Shoalwater's legal entitlements is sufficient such that the public rights exception should not apply."  ER-19; *see also Diné Citizens*, 932 F.3d at 858-59.

## CONCLUSION

The district court's judgment should be affirmed.

Dated: September 8, 2023                     Respectfully submitted,[6]

                                             */s/ Keith M. Harper*

                                             Keith M. Harper
                                             Leonard R. Powell
                                             Allison M. Tjemsland
                                             JENNER & BLOCK LLP
                                             1099 New York Avenue NW
                                             Suite 900
                                             Washington, DC 20001
                                             (202) 639-6000
                                             kharper@jenner.com
                                             leonardpowell@jenner.com
                                             atjemsland@jenner.com

                                             **Counsel for the Suquamish Tribe**

---

[6] Pursuant to Ninth Circuit Rule 25-5(e), the signatory attests that all listed *amici* concur in the filing's content.

31

Cory J. Albright
Reed C. Bienvenu
KANJI & KATZEN, P.L.L.C.
811 1st Avenue, Suite 630
Seattle, WA 98104
(206) 344-8100
calbright@kanjikatzen.com
rbienvenu@kanjikatzen.com

***Co-Counsel for the Confederated
Tribes of the Chehalis Reservation,
Muckleshoot Indian Tribe,
Swinomish Indian Tribal
Community, and the Tulalip Tribes***

Harold Chesnin
LEAD COUNSEL FOR THE TRIBE
420 Howanut Road
Oakville, WA 98568
(360) 529-7465
hchesnin@chehalistribe.org

***Counsel for the Confederated Tribes
of the Chehalis Reservation***

Robert L. Otsea, Jr.
Chief Counsel
OFFICE OF THE TRIBAL ATTORNEY
MUCKLESHOOT INDIAN TRIBE
39015 172nd Avenue SE
Auburn, WA 98092
(253) 876-3146
Rob.Otsea@muckleshoot.nsn.us

Deryl Brown-Archie
OFFICE OF THE TRIBAL ATTORNEY
MUCKLESHOOT INDIAN TRIBE
Muckleshoot Casino Office
2402 Auburn Way South
Auburn, WA 98002
(253) 929-1877
Deryl.Brown-
Archie@muckleshootcasino.com

***Counsel for Muckleshoot Indian Tribe***

Rachel Sage
OFFICE OF TRIBAL ATTORNEY
SWINOMISH INDIAN TRIBAL
COMMUNITY
11404 Moorage Way
La Conner, WA 98257
(360) 707-1501
rsage@swinomish.nsn.us

***Counsel for Swinomish Indian Tribal Community***

33

Lisa Koop Gunn
OFFICE OF THE RESERVATION
ATTORNEY
THE TULALIP TRIBES
6406 Marine Drive
Tulalip, WA 98271
(206) 683-5667
lkoop@tulaliptribes-nsn.gov

***Counsel for the Tulalip Tribes***

Shannon C. Thomas
Senior Staff Attorney
THE CONFEDERATED TRIBES OF THE
COLVILLE RESERVATION
P.O. Box 150
Nespelem, WA 99155
(888) 881-7684 ext. 2383
Shannon.Thomas.ORA@colvilletribe
s.com

***Counsel for The Confederated Tribes
of the Colville Reservation***

Edward Fleisher
FLEISHER LAW FIRM, PC
2834 Nisqually View Loop NE
Olympia, WA 98516
(360) 790-2036
fleisherlaw@hotmail.com

***Counsel for Cowlitz Indian Tribe***

Corin La Pointe-Aitchison
DORSAY & EASTON LLP
1737 NE Alberta, Suite 208
Portland, OR 97211-5890
(503) 790-9060
corin@dorsayindianlaw.com

***Counsel for Hoh Indian Tribe &
Samish Indian Nation***

Christine M. Masse
MILLER NASH LLP
605 5th Ave S, Ste 900
Seattle, WA 98104
(206) 624-8300
christine.masse@millernash.com

***Counsel for Jamestown S'Klallam
Tribe***

Lorraine A. Parlange
Aubrey A. Seffernick
KALISPEL TRIBE OF INDIANS LEGAL
OFFICE
934 S. Garfield Road
Airway Heights, WA 99001
(509) 789-7600
lparlange@kalispeltribe.com
aseffernick@kalispeltribe.com

***Counsel for Kalispel Tribe of Indians***

Beth Baldwin
ZIONTZ CHESTNUT
2101 Fourth Ave., Suite 1230
Seattle, WA  98121
(206) 448-1230
bbaldwin@ziontzchestnut.com

***Counsel for the Makah Tribe***

Nate J. Cushman
OFFICE OF THE TRIBAL ATTORNEY
NISQUALLY INDIAN TRIBE
4820 She-Nah-Num Drive SE
Olympia, WA 98513
(360) 456-5221
cushman.nate@nisqually-nsn.gov

***Counsel for Nisqually Indian Tribe***

Charles N. Hurt, Jr.
NOOKSACK INDIAN TRIBE
5047 Mt. Baker Highway
P.O. Box 63
Deming, WA 98244
(360) 592-4158
churt@nooksack-nsn.gov

***Counsel for Nooksack Indian Tribe***

Steven D. Moe
LEGAL DEPARTMENT
PORT GAMBLE S'KLALLAM TRIBE
31912 Little Boston Rd. NE
Kingston, WA 98346
(360) 297-6242
smoe@pgst.nsn.us

***Counsel for the Port Gamble
S'Klallam Tribe***

Robert L. Hunter, Jr.
PUYALLUP TRIBE OF INDIANS
3009 E. Portland Avenue
Tacoma, WA 98404
(253) 573-7873
robert.hunter@puyalluptribe-nsn.gov

***Counsel for Puyallup Tribe of
Indians***

Lori Bruner
QUINAULT INDIAN NATION
OFFICE OF THE ATTORNEY GENERAL
136 Cuitan Street
P.O. Box 613
Taholah, WA 98587
(360) 276-8215
lbruner@quinault.org

***Counsel for Quinault Indian Nation***

Earle David Lees, III
SKOKOMISH LEGAL DEPARTMENT
SKOKOMISH INDIAN TRIBE
N. 80 Tribal Center Road
Skokomish Nation, WA 98584
(360) 877-2100
elees@skokomish.org

***Counsel for the Skokomish Indian Tribe***

Scott Wheat
WHEAT LAW OFFICES
23215 West Long Lake Road
Ford, WA 99013
(509) 458-6521
scottwheat@me.com

***Counsel for Spokane Tribe***

Nathan Schreiner
SQUAXIN ISLAND LEGAL DEPARTMENT
3711 SE Old Olympic Hwy
Kamilche, WA 98584
(360) 432-1771
nschreiner@squaxin.us

***Counsel for Squaxin Island Tribe***

Edward J. Wurtz
General Counsel
STILLAGUAMISH TRIBE OF INDIANS
3322 236th St. NE
Arlington, WA 98223
(360) 572-3033
ewurtz@stillaguamish.com

***Counsel for Stillaguamish Tribe of Indians***

Marcus Shirzad
YAKAMA NATION OFFICE OF LEGAL
COUNSEL
P.O. Box 150 / 401 Fort Road
Toppenish, WA 98948
(509) 865-7268
marcus@yakamanation-olc.org

***Counsel for the Confederated Tribes
and Bands of the Yakama Nation***

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 23-35136

I am the attorney or self-represented party.

**This brief contains** 6,902 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [        ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Keith M. Harper **Date** September 8, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*