No. 23-35136

# In The United States Court Of Appeals For The Ninth Circuit

MAVERICK GAMING LLC,

*Plaintiff – Appellant*,

v.

UNITED STATES OF AMERICA, *et al.*,

*Defendants – Appellees*,

SHOALWATER BAY TRIBE,

*Intervenor – Defendant – Appellee.*

On Appeal From the United States District Court for the
Western District of Washington
Case No. 3:22-cv-05325-DGE

The Honorable David G. Estudillo

**REPLY BRIEF OF PLAINTIFF-APPELLANT
MAVERICK GAMING LLC**

THEODORE B. OLSON
MATTHEW D. MCGILL
LOCHLAN F. SHELFER
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Phone: 202.955.8668
Email: tolson@gibsondunn.com

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..............................................................ii

INTRODUCTION.........................................................................1

ARGUMENT...............................................................................3

I.    The Tribe Is Not A Required Party Under Rule 19(a)...................3

    A.    Disposing Of This Action In The Tribe's Absence Would
Not Impair The Tribe's Ability To Protect Its Interests.........3

        1.    The Federal Defendants Adequately
Represent The Tribe's Interests. ...........................3

        2.    One Of Maverick's Claims Does Not
Implicate The Tribe's Compact At All.................21

    B.    The Tribe's Joinder Is Not Required To Accord
Complete Relief......................................................23

II.    This Action Should Proceed In The Tribe's Absence Under
Rule 19(b).........................................................................24

    A.    All Four Rule 19(b) Factors Counsel Against Dismissal......25

    B.    The Public-Rights Exception Applies. ...................................28

III.    The Tribe Can Be Joined Because It Waived Its Tribal
Immunity By Intervening In This Suit..........................................33

CONCLUSION ...........................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alto v. Black*,
738 F.3d 1111 (9th Cir. 2013) ..................................................15, 23, 24

*Am. Greyhound Racing, Inc. v. Hull*,
305 F.3d 1015 (9th Cir. 2002) .......................................................29, 30

*Backcountry Against Dumps v. Bureau of Indian Affs.*,
2022 WL 15523095 (9th Cir. Oct. 27, 2022) .......................................33

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
140 S. Ct. 2335 (2020)..........................................................................22

*Bd. of Regents v. Phoenix Int'l Software, Inc.*,
653 F.3d 448 (7th Cir. 2011) ...............................................................35

*Berger v. N.C. State Conf. of the NAACP*,
142 S. Ct. 2191 (2022)..........................................................................12

*Bodi v. Shingle Springs Band of Miwok Indians*,
832 F.3d 1011 (9th Cir. 2016) ..............................................................34

*Callahan v. Brookdale Senior Living Cmtys., Inc.*,
42 F.4th 1013 (9th Cir. 2022)...............................................................12

*Chicken Ranch Rancheria of Me-Wuk Indians v. California*,
42 F.4th 1024 (9th Cir. 2022)..................................................................7

*Conner v. Burford*,
848 F.2d 1441 (9th Cir. 1988) .......................................................28, 32

*Danielson v. Inslee*,
945 F.3d 1096 (9th Cir. 2019) ..............................................................16

*De Csepel v. Republic of Hungary*,
27 F.4th 736 (D.C. Cir. 2022).......................................................18, 25

*Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*,
  932 F.3d 843 (9th Cir. 2019) ..........................................1, 12, 13, 14, 33

*E. Bay Sanctuary Covenant v. Biden*,
  993 F.3d 640 (9th Cir. 2021) ......................................................................23

*Hein v. Capitan Grande Band of Diegueno Mission Indians*,
  201 F.3d 1256 (9th Cir. 2000) ...................................................................8

*Issa v. Sch. Dist. of Lancaster*,
  847 F.3d 121 (3d Cir. 2017) ......................................................................5

*Jamul Action Comm. v. Simermeyer*,
  974 F.3d 984 (9th Cir. 2020) ...................................................................14

*Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*,
  48 F.4th 934 (9th Cir. 2022) ...........................................1, 12, 14, 33, 34

*Lapides v. Bd. of Regents*,
  535 U.S. 613 (2002) ...........................................................................33, 35

*Makah Indian Tribe v. Verity*,
  910 F.2d 555 (9th Cir. 1990) ................................................4, 26, 28, 29

*McGirt v. Oklahoma*,
  140 S. Ct. 2452 (2020) ..............................................................................17

*Nanko Shipping, USA v. Alcoa, Inc.*,
  850 F.3d 461 (D.C. Cir. 2017) ................................................................28

*Nat'l Licorice Co. v. NLRB*,
  309 U.S. 350 (1940) ............................................................................31, 32

*NFIB v. Sebelius*,
  567 U.S. 519 (2012) ...................................................................................18

*Oklahoma v. U.S. Dep't of the Interior*,
  640 F. Supp. 3d 1110 (W.D. Okla. 2022) ..............................................17

iii

*Ramah Navajo Sch. Bd., Inc. v. Babbitt*,
  87 F.3d 1338 (D.C. Cir. 1996)...............................................................16

*Sac & Fox Nation of Mo. v. Norton*,
  240 F.3d 1250 (10th Cir. 2001) ............................................................16

*Shermoen v. United States*,
  982 F.2d 1312 (9th Cir. 1992) ...................................................11, 29, 30

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)................................................................................30

*Stern v. Marshall*,
  564 U.S. 462 (2011)................................................................................29

*Sw. Ctr. for Biological Diversity v. Babbitt*,
  150 F.3d 1152 (9th Cir. 1998) .........................................................5, 16

*United States v. 1020 Elec. Gambling Machs.*,
  38 F. Supp. 2d 1219 (E.D. Wash. 1999)................................................9

*United States v. Dupas*,
  417 F.3d 1064 (9th Cir. 2005) ............................................................17

*United States v. Oregon*,
  657 F.2d 1009 (9th Cir. 1981) ......................................................33, 34

*United States v. Spokane Tribe of Indians*,
  139 F.3d 1297 (9th Cir. 1998) ...........................................................8, 9

*Washington v. Daley*,
  173 F.3d 1158 (9th Cir. 1999) .....................................................3, 5, 16

*Wichita & Affiliated Tribes of Okla. v. Hodel*,
  788 F.2d 765 (D.C. Cir. 1986)..............................................................26

## Statutes

15 U.S.C. § 1175(a)......................................................................................7

18 U.S.C. § 1166(c)(2) ................................................................................7

25 U.S.C. § 2710(d)(1)(C) ...................................................................7

25 U.S.C. § 2710(d)(6) ........................................................................7

25 U.S.C. § 2710(d)(8)(B) .................................................................15

25 U.S.C. § 2710(d)(8)(B)(ii)............................................................20

25 U.S.C. § 2710(d)(8)(B)(iii)......................................................14, 20

**Rules**

Fed. R. Civ. P. 19(a).........................................................................11

Fed. R. Civ. P. 19(a)(1)(A) ..............................................................23

Fed. R. Civ. P. 19(b)(2)(B) ...........................................................6, 22

Fed. R. Civ. P. 24(a).........................................................................11

**Other Authorities**

7 Wright & Miller, Fed. Practice & Proc. § 1604 (3d ed.).......................19

**INTRODUCTION**

The Administrative Procedure Act ("APA") establishes the right to judicial review of illegal and unconstitutional federal governmental action and waives federal sovereign immunity to ensure the vindication of that right. The Shoalwater Bay Tribe ("Tribe"), however, asks this Court to adopt an extreme interpretation of Rule 19 that would radically transform APA litigation, foreclosing judicial review of all manner of federal agency action. On every legal issue presented in this case, the Tribe and the federal government are fully aligned. Yet, under the Tribe's theory, that is not sufficient. According to the Tribe, any sovereign—Tribe, State, or foreign country—has the power to insulate federal agency action from judicial review. That is not the law.

The Tribe largely relies on *Dine Citizens Against Ruining Our Environment v. Bureau of Indian Affairs*, 932 F.3d 843 (9th Cir. 2019), and *Klamath Irrigation District v. U.S. Bureau of Reclamation*, 48 F.4th 934 (9th Cir. 2022). The Tribe asks this Court to expand those cases—both of which involve the unique interplay between Indian interests and the federal government's duties under environmental statutes—into blanket rules that hand sovereigns the power to veto judicial review of illegal

governmental actions. But this lawsuit is fundamentally different from those cases. Here, the federal defendants do not have any competing interests under the relevant statute—to the contrary, the relevant provisions of IGRA all push the federal defendants *toward* a position in sync with the Tribe. Unsurprisingly, the Tribe is unable to identify a single merits argument it would advance in this litigation that the federal defendants would not. They are in perfect harmony.

Extending *Dine Citizens* and *Klamath* to this new context would put the Court squarely at odds with the rule in other Circuits, with other cases decided by this Court, and with the longstanding position of the United States. Additionally, the consequences of this expansion would be severe and unworkable. Anytime federal agency action benefits a sovereign—whether an Indian tribe, a State, or a foreign nation or instrumentality—that sovereign will be able to force dismissal. That means sovereign entities will be able to wield Rule 19 as a sword, shutting down judicial review of all manner of APA claims—constitutional, statutory, or administrative.

The Court should reject the Tribe's attempt to short-circuit this litigation and remand for the district court to consider Maverick's constitutional, statutory, and administrative claims.

## ARGUMENT

### I. The Tribe Is Not A Required Party Under Rule 19(a).

#### A. Disposing Of This Action In The Tribe's Absence Would Not Impair The Tribe's Ability To Protect Its Interests.

##### 1. The Federal Defendants Adequately Represent The Tribe's Interests.

**a.** The Tribe is not a required party under Rule 19(a) because "'[t]he United States can adequately represent an Indian tribe unless there exists a conflict of interest between the United States and the tribe,'" and here the Tribe cannot "demonstrate how such a conflict might actually arise in the context of this case." *Washington v. Daley*, 173 F.3d 1158, 1167–68 (9th Cir. 1999); Opening.Br.27–31.

Indeed, although many cases have considered APA challenges to IGRA compacts like this one, *see* Opening.Br.28–30 (citing cases), the Tribe cannot point to a single IGRA challenge where the federal government and the absent tribe were making the same arguments, yet the absent tribe was held to be a required party.

3

The federal government agrees that "the United States is the only required defendant to a claim challenging final agency action." U.S.Br.2; *see also* U.S.Br.23 ("[H]olding that non-federal entities are necessary for an APA action to proceed undermines Congress' decision to waive the United States' sovereign immunity for suits brought under the APA and could sound the death knell for any judicial review of executive decisionmaking.") (cleaned up). As the United States recently explained to the Supreme Court, "where, as here, the government defends its action on the legal and factual grounds on which that action was based, the government's defense ordinarily will 'as a practical matter' sufficiently 'protect' an 'interest relating to the subject of the [suit].'" U.S. Br. 23, *Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, 2023 WL 6367584, No. 22-1116 (U.S. Sept. 27, 2023).

The Tribe and the district court below took the stunning position that a conflict exists here because, if the compacts were invalidated, then the United States' interest in upholding federal law would conflict with the Tribe's desire to violate that law by offering class III gaming without a valid compact. *See* ER-14. But Rule 19 is concerned only with "legally protected interest[s]." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558

(9th Cir. 1990). The Tribe has no cognizable "'interest in continuing practices' that violate" federal law. *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017).

On appeal, the Tribe has wisely abandoned that position. The Tribe now points to a different argument that it claims it would make and the United States would not: that tribes *can* lawfully offer class III gaming even without a compact. Tribe.Br.23. That argument fails twice over. First, it is irrelevant because it would arise only in a future enforcement action, not in this case. Second, it is manifestly wrong.

*First*, the argument is irrelevant because the Tribe does not demonstrate any conflict "in the context of *this case*." *Daley*, 173 F.3d at 1168 (emphasis added). The only relevant interest for Rule 19 is the "interest in the adjudication of the underlying merits of [the] suit." *Sw. Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1154 (9th Cir. 1998) (per curiam). The merits of this case focus on whether the Secretary of the Interior validly approved the compacts at issue. That question has nothing to do with the Tribe's insistence that—in the future and outside the context of this case—it will continue to offer class III gaming even if a court invalidates the compacts. The Tribe therefore has not shown any

5

conflict in the context of this case. Rather, it has simply asserted that it may have defenses against future enforcement actions that may (or may not) arise after a judgment in Maverick's favor. That is not sufficient to demonstrate a conflict with the United States in the context of this case, where the Tribe and the federal defendants are aligned on every issue presented.[1]

The state defendants, meanwhile, suggest that the Tribe might offer discovery that no other party would offer. Washington.Br.34–35. Not so: as the parties have stipulated, this case "presents questions of law that appear to be resolvable through dispositive motions . . . without the need for factual discovery." ER-128. The state defendants note that Maverick "filed an expert report" with its summary-judgment motion, Washington.Br.35, but those materials simply establish standing; they do not necessitate any discovery, let alone discovery that only the Tribe could conduct.

---

[1] The Tribe argues that there is a conflict in this litigation because one of the forms of relief that Maverick has requested is a declaration that the Tribe's gaming activities are unlawful. Tribe.Br.29. But even if that were relevant—which it is not—the solution under Rule 19 is simply to "shap[e] the relief" to avoid any prejudice to the Tribe. Fed. R. Civ. P. 19(b)(2)(B).

6

*Second*, the Tribe's position fails for the additional reason that—as the Tribe itself concedes—only "reasonable" arguments can demonstrate inadequacy of representation. Tribe.Br.26–27. There is nothing reasonable about the Tribe's frivolous argument that tribes can lawfully offer Class III gaming absent a compact. The text of IGRA is clear: "Class III gaming activities shall be lawful on Indian lands *only if* such activities are . . . conducted in conformance with a Tribal-State compact . . . that is in effect." 25 U.S.C. § 2710(d)(1)(C) (emphasis added). Absent a compact, numerous criminal statutes unambiguously prohibit offering Class III gaming on Indian lands. *See, e.g.*, 15 U.S.C. § 1175(a); 18 U.S.C. § 1166(c)(2); 25 U.S.C. § 2710(d)(6); *see also* Opening.Br.50. This Court has recognized this principle: "Class III gaming is permitted on Indian lands only if, *inter alia*, a tribe and the state enter a tribal-state compact that the Secretary of the Interior then approves." *Chicken Ranch Rancheria of Me-Wuk Indians v. California*, 42 F.4th 1024, 1032 (9th Cir. 2022). That is why the United States "enforce[d]" federal law against the Tribe when it attempted to illegally offer gambling operations without a compact in the 1990s. Tribe.Br.7–9.

7

The Tribe nevertheless maintains that its argument is not frivolous, pointing to *United States v. Spokane Tribe of Indians*, 139 F.3d 1297 (9th Cir. 1998). Tribe.Br.27–28. But the Tribe misreads that case. *Spokane Tribe* held only that the United States could not seek an injunction against a Tribe offering illegal gambling under IGRA "when [a] state[] refuse[s] to negotiate" with the Tribe. 139 F.3d at 1302. That holding involves only the circumstances under which the United States may enforce IGRA via injunction, which is a completely separate question from whether the Tribe possesses the "right to offer Class III gaming" absent a compact. Tribe.Br.23 (heading altered). This distinction is clear from *Spokane Tribe*'s reiteration of the legal rule: "[w]ithout a compact in place, *a tribe may not engage in class III gaming*." 139 F.3d at 1299 (emphasis added).

Moreover, this Court has explained that *Spokane Tribe*'s limitation on seeking an injunction does not apply where the "considerations at issue" in *Spokane Tribe*—namely, a State refusing to negotiate—are absent. *Hein v. Capitan Grande Band of Diegueno Mission Indians*, 201 F.3d 1256, 1260 n.8 (9th Cir. 2000). And in any event, *Spokane Tribe* itself acknowledged that the federal government could still enforce

8

federal law against illegal tribal gambling operations by seeking "fines, imprisonment and confiscation of gambling devices." 139 F.3d at 1302 n.7; *see also United States v. 1020 Elec. Gambling Machs.*, 38 F. Supp. 2d 1219, 1223 (E.D. Wash. 1999) (*Spokane Tribe* does not apply when the federal government "is seeking forfeiture"). *Spokane Tribe* is no help to the Tribe's argument.

In short, the only tribal interest that is actually implicated in this case is the validity of the Tribe's compact and the amendments thereto. None of the defendants provides any explanation for how the United States' representation would be inadequate on this issue. In fact, the Tribe still fails to identify any merits argument it would raise in *this* case that the federal defendants would not.

Instead, the Tribe argues that, even if the federal defendants are adequate representatives for count I (Maverick's APA claim), they are inadequate representatives for counts II and III (the claims against the state defendants). But count II advances the same legal arguments as count I, *see* ER-116–20, and, as explained further below, count III does not implicate tribal interests at all because it does not challenge any tribal compacts, *see infra* at 21–23; Opening.Br.47–48.

The state defendants, for their part, conjecture that there might be a conflict in the future because of "a change in administrations." Washington.Br.29. But no defendant gives any reason to think that a new administration would change the United States' longstanding position. The United States has always maintained its current legal position, across administrations of both political parties. *See, e.g.*, U.S. Br. in Opposition at 7–21, *Artichoke Joe's v. Norton*, 2004 WL 1791354, No. 03-1602 (U.S. Aug. 2, 2004). And in any event, the state defendants provide no authority for the proposition that a hypothetical change in presidential administrations at some time in the future could possibly be enough to render the federal government an inadequate representative now—a proposition that, if true, would mean the federal government could *never* be an adequate representative.

In sum, the Tribe cannot show an actual conflict with the federal defendants that is likely to arise in the context of this case, and it thus is not a required party under Rule 19(a).

**b.** Next, as Maverick demonstrated in its Opening Brief, this Court has recognized that there is a presumption of adequate representation when: (1) the parties have the same ultimate objective; (2) the

10

government is defending its own action; or (3) the government is charged by law with representing the absentee's interests. *See* Opening.Br.31–39. The Tribe's attempts to evade these overlapping presumptions—all of which underscore the federal government's adequacy here—fail.

*First*, the Tribe argues that these presumptions apply under Rule 24 but not Rule 19. Tribe.Br.36–37. That is a nonstarter: "In assessing an absent party's necessity under Fed. R. Civ. P. 19(a), the question whether that party is adequately represented parallels the question whether a party's interests are so inadequately represented by existing parties as to permit intervention of right under Fed. R. Civ. P. 24(a)." *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992); Opening.Br.32 n.9. The Tribe's contention that Rule 19 "has no" adequate-representation provision (Tribe.Br.36) misunderstands the rule and flatly contradicts the bevy of caselaw holding that a party is not "required" under Rule 19(a) if an existing party adequately represents its interests. *See, e.g.*, Opening.Br.27–31 (collecting cases). In fact, the Rule 19 standard is *harder* for the Tribe to satisfy than the Rule 24 standard, as the Tribe itself argued below. *See* Dkt. 68 at 10 n.4 (arguing in intervention motion that "the Rule 24 standard is more liberal" than Rule 19).

11

*Second*, the Tribe asserts that "the Supreme Court has recently called all of these articulated presumptions in the context of Rule 24 into doubt." Tribe.Br.37 (citing *Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191 (2022)). But the Supreme Court in *Berger* expressly made clear that it was *not* abrogating any of the presumptions applicable in this case, instead stating: "[T]o resolve this case we need not decide whether a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government or in any other circumstance." 142 S. Ct. at 2204. The Tribe also cites this Court's decision in *Callahan v. Brookdale Senior Living Communities, Inc.*, Tribe.Br.37, but there, too, the court "offer[ed] no opinion as to whether [the 'same ultimate objective' presumption] remains good law." 42 F.4th 1013, 1021 n.5 (9th Cir. 2022).

**c.** Ultimately, the Tribe's chief contention is that *Dine Citizens Against Ruining Our Environment v. Bureau of Indian Affairs*, 932 F.3d 843 (9th Cir. 2019), and *Klamath Irrigation District v. U.S. Bureau of Reclamation*, 48 F.4th 934 (9th Cir. 2022), worked a doctrinal sea change. According to the Tribe, those two cases swept away this Court's numerous decisions holding that the United States is an adequate

representative, and at the same time handed Indian tribes a newfound power to preclude judicial review of any federal agency action that implicates tribal interests. Tribe.Br.33–34. That is a drastic overreading of those cases. Opening.Br.39–47.

As even the Tribe is forced to concede, *Dine Citizens* and *Klamath* stand only for the proposition that "federal defendants are unable to adequately represent an absent tribe where their obligations to follow relevant laws are in tension with tribal interests" in a particular case. Tribe.Br.30. As Maverick explained in its Opening Brief, there is no such tension here. Both the Tribe and the United States believe that the compacts comport with federal law. Opening.Br.42–43.

The state defendants accuse Maverick of arguing that *Dine Citizens* and *Klamath* are "applicable only in environmental cases." Washington.Br.31. That is not Maverick's argument. Rather, Maverick's position is that the federal government in those cases had competing statutory obligations that were in tension with the Tribe's interests. In *Dine Citizens*, the federal government had an "overriding interest . . . in complying with environmental laws such as NEPA and the ESA." 932 F.3d at 855; *see also Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 997 (9th Cir.

2020) (characterizing *Dine Citizens* as a case where the federal defendants' "obligations to follow relevant environmental laws were in tension with tribal interests"). Likewise, in *Klamath*, the federal government's "primary interest" was in "defending its interpretations of its obligations under the" Endangered Species Act, not in protecting tribal "reserved water and fishing rights." 48 F.4th at 944–45.

IGRA, by contrast, *requires* the Secretary to assess whether a compact comports with "the trust obligations of the United States to Indians"—and to disapprove any compact that violates those obligations. 25 U.S.C. § 2710(d)(8)(B)(iii). Thus, when the Secretary defends the legality of an IGRA tribal-state compact that the Secretary has already approved, the government's position is "'necessarily coincidental with the interest of the Tribe.'" *Dine Citizens*, 932 F.3d at 855. Maverick's argument does not depend on the fact that the competing statutory obligations in *Dine Citizens* and *Klamath* were *environmental* in nature. Instead, Maverick's argument is that here, unlike in those cases, all of the federal defendants' statutory obligations are in harmony with the Tribe's interest in offering class III gaming pursuant to the compact that the federal defendants approved.

14

Indeed, the state defendants concede that "the Secretary of the Interior only has authority to disapprove compacts entered into by Indian tribes and states based on a narrow and exclusive set of statutory factors." Washington.Br.28. On each one of those three factors—compliance with IGRA, compliance with other federal law, and compliance with the federal government's trust obligation to Indian tribes, *see* 25 U.S.C. § 2710(d)(8)(B)—the Tribe and the federal defendants are completely aligned. *See* ER-80. Because there is no tension in this case, *Dine Citizens* and *Klamath* are inapposite.

Extending *Dine Citizens* and *Klamath* outside of their contexts to this case would effectively establish a *per se* rule that lawsuits implicating tribal (or any other sovereign) interests must be dismissed *even when* the federal government's interest on every issue is fully aligned. Such a ruling would be inconsistent with this Court's numerous cases holding that the federal government generally can protect the interests of absent Indian tribes in an APA challenge to federal agency action. *See, e.g.*, *Alto v. Black*, 738 F.3d 1111, 1127–29 (9th Cir. 2013); *Daley*, 173 F.3d at 1167–69; *Sw. Ctr. for Biological Diversity*, 150 F.3d at 1153–54. This Court is "required to *reconcile* prior precedents," *Danielson v. Inslee*, 945 F.3d

15

1096, 1099 (9th Cir. 2019) (emphasis added), not expand certain precedents to eliminate others.

The Tribe denies that its position would create a categorical rule that any APA case involving an Indian tribe would need to be dismissed under Rule 19. Tribe.Br.19 n.7. But the Tribe never gives any indication of what sort of case would escape its desired rule. The answer is that, if this action—in which the United States and the absent Tribe are in perfect accord—must be dismissed, then there is no APA claim involving an Indian tribe that could proceed to judicial review over the tribe's objection.

Such a ruling would also deepen a conflict with cases from other circuits holding that the United States is generally an adequate representative in APA challenges to federal agency action. *See, e.g.*, *Sac & Fox Nation of Mo. v. Norton*, 240 F.3d 1250, 1258–59 (10th Cir. 2001); *Ramah Navajo Sch. Bd., Inc. v. Babbitt*, 87 F.3d 1338, 1350–52 (D.C. Cir. 1996). As the federal government points out, *Dine Citizens* and *Klamath* already deviate from the law of other circuits. U.S.Br.11. This Court has a "preference for avoiding circuit splits," *United States v. Dupas*, 417 F.3d 1064,

16

1072 (9th Cir. 2005), and it should minimize the conflict with other courts by declining to extend those cases to this new context.

A ruling allowing tribes to veto judicial review would also have staggering real-world implications. For example, in the wake of the Supreme Court's decision in *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020), the State of Oklahoma sought declaratory judgment under the APA, arguing that it retained jurisdiction to regulate surface coal mining and reclamation operations within Indian reservations. *Oklahoma v. U.S. Dep't of the Interior*, 640 F. Supp. 3d 1110, 1114 (W.D. Okla. 2022). Yet if the Tribe's interpretation of Rule 19 were accepted, an absent tribe could prevent a federal court from ever deciding such an important question of federal-state jurisdiction by asserting its interests in the litigation, even if the federal government adequately protects those interests.

This immunization of governmental action from judicial review would not be limited to actions that implicate tribal interests. States could invoke their sovereign immunity to obtain dismissals of challenges to federal action in which they have an interest, such as joint federal-state programs. Thus, the state *amici* who supported the Affordable Care Act's Medicaid expansion—which the Supreme Court held

unconstitutional, *NFIB v. Sebelius*, 567 U.S. 519, 575–85 (2012)—could have obtained dismissal of the plaintiffs' meritorious challenge out of the gate by asserting that their interest in the receipt of expanded Medicaid funding was inadequately represented under Rule 19.

Foreign states and their instrumentalities would also be able to deploy the Tribe's interpretation of Rule 19 to prevent litigants from having their day in court. An instrumentality of Hungary, for example, recently raised a Rule 19 objection to "a family's decades-long effort to recover a valuable art collection that the World War II-era Hungarian government and its Nazi collaborators seized during their wholesale plunder of Jewish property during the Holocaust." *De Csepel v. Republic of Hungary*, 27 F.4th 736, 739 (D.C. Cir. 2022). The D.C. Circuit rejected the Rule 19 argument because it found that, "[a]t bottom, both Hungary and the remaining defendants seek the same result," so Hungary's interests were adequately represented. *Id.* at 748. But under the Tribe's view of Rule 19, such cases would have to be dismissed.

Rule 19 is meant to protect absent parties from the prejudice flowing from their absence; it is not meant to confer a veto power over a broad array of cases where a party's interests are already well-defended. The

goal "is to avoid dismissal whenever possible." 7 Wright & Miller, Fed. Practice & Proc. § 1604 (3d ed.). This Court should reject the Tribe's attempt to weaponize Rule 19.

**d.** The federal defendants agree that they are adequate representatives for count I, and further take the position that *Dine Citizens* and *Klamath* were wrongly decided. U.S.Br.24–32. Yet they take the curious position that the two cases should be extended outside of their narrow context and should apply as a blanket rule in all cases involving an Indian tribe. But the conflict between those cases on the one hand and the position of the United States and other courts across the country on the other calls for *narrowly* construing them—not reading them for all they could possibly be worth. This Court should be skeptical of the United States' position that cases it believes were wrongly decided should nevertheless be expanded in a way that would effectively immunize the United States from suit in a wide array of APA cases.

Next, the federal defendants agree that their "shared interest with tribes in seeing agency action upheld adequately protects an absent tribe's interest in the resolution of an APA claim," but contend that the trust relationship between the federal government and Indian tribes is

19

not the basis for that conclusion.  U.S.Br.24–28.  The federal defendants acknowledge the existence of "a general trust relationship," but argue that they "ow[e] enforceable duties to a tribe" only when a treaty, statute, or regulation says so.  U.S.Br.25.  But *IGRA itself* requires the Secretary to disapprove any compact that "violates . . . the trust obligations of the United States to Indians."  25 U.S.C. § 2710(d)(8)(B)(iii).  The federal defendants note that "this provision simply provides the standards for the Secretary's review of compacts," U.S.Br.28, but that is precisely the issue in this case—IGRA itself aligns the federal defendants' interests with the Tribe's.

The federal defendants also argue that their interest is limited to approving the compact amendments and defending the Secretary's application of "IGRA's statutory standards" to those amendments.  U.S.Br.29–32.  These distinctions make no difference here.  Maverick is challenging the validity of the compacts and compact amendments on the ground that they violate IGRA's statutory standards, which require the Secretary to disapprove a compact or amendment if it violates any "provision of Federal law" or "the trust obligations of the United States to Indians."  25 U.S.C. § 2710(d)(8)(B)(ii)–(iii).  Maverick is not relying on "state law" or

20

requirements "outside the purview of IGRA." U.S.Br.31. Rather, Maverick's argument is that the compacts and amendments violate *IGRA* and *the U.S. Constitution*, grounds that statutorily required the Secretary to disapprove the compact amendments. ER-116–23. The federal defendants' interests in defending the Secretary's approvals thus fully encompass any defenses to Maverick's claims in this case.[2]

### 2. One Of Maverick's Claims Does Not Implicate The Tribe's Compact At All.

Maverick's third claim does not ask for any relief that would affect the Tribe's compact. That claim asks only for "a declaration that the Defendants' continued enforcement of Washington's criminal laws" against Maverick is unconstitutional and for "an injunction prohibiting the Defendants from enforcing those laws against Maverick." ER-122; Opening.Br.47–48. Thus, even apart from the adequate-representation question, count III can proceed without the Tribe.

Neither of the Tribe's responses is persuasive.

---

[2] Even if this Court disagreed, this argument would implicate only count II, because count I is already limited to challenging the Secretary's approval of the compact amendments and count III does not implicate tribal interests at all. *See* ER-116–18; Opening.Br.47–48.

21

*First*, the Tribe contends that the complaint "does not distinguish between the Counts with respect to the remedies it seeks in its prayer for relief." Tribe.Br.13. But the prayer simply lists *all* the relief that Maverick is seeking. ER-123. The third claim, meanwhile, specifically requests relief that would allow Maverick to offer class III games *in addition to* the Tribe. ER-121. But even if the Tribe were right, that would not make a difference because Rule 19 specifically encourages courts to "shap[e] the relief" to avoid any prejudice. Fed. R. Civ. P. 19(b)(2)(B).

*Second*, the Tribe argues that severability principles counsel in favor of striking the compacts rather than enjoining the enforcement of Washington's criminal laws against Maverick. Tribe.Br.39–44. But severability analysis in equal-protection cases provides courts with extensive discretion to shape the relief, given that the cases "can raise complex questions about whether it is appropriate to extend benefits or burdens." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2354 (2020) (plurality); Opening.Br.56–57. More fundamentally, the Tribe's reliance on this merits issue is premature. Whether or not Maverick can ultimately obtain the relief it seeks, the Rule 19 question before the court is

22

whether *the relief Maverick seeks* in its third claim implicates tribal interests.  Because it does not, that claim can proceed without the Tribe.

## B.    The Tribe's Joinder Is Not Required To Accord Complete Relief.

A party can also be necessary if "in [their] absence, the court cannot accord complete relief among existing parties," Fed. R. Civ. P. 19(a)(1)(A), but that rule does not apply in this case.  Complete relief means relief that is "'meaningful . . . *as between the parties*.'"  *Alto*, 738 F.3d at 1126.  For an APA claim, that means "reversal or remand of the agency action."  *Id.* at 1127.  That bread-and-butter APA relief is available here, and would provide complete relief as between Maverick and the defendants.  Opening.Br.48–50.

The Tribe asserts that Maverick cannot obtain complete relief in its absence because "the judgment would not be binding on the tribe, which could assert its rights under the agreement and/or under IGRA to continue the operation of Class III gaming activities."  Tribe.Br.49–50.  That argument fails twice over.

*First*, the Tribe misconceives the nature of APA relief: when agency action is vacated, it is vacated across the board.  *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 681 (9th Cir. 2021); Opening.Br.49.

Unlike in a typical contract case—where an absent party may still have rights under a contract—relief in this case (vacating the Secretary's approval of the compact amendments) would mean that there is no compact authorizing sports betting.

*Second*, no matter how the Tribe might react to a decision vacating the Secretary's approval of the compact amendments, vacatur would be meaningful relief *as between Maverick and the federal defendants*— which is where Rule 19 looks to determine whether "complete relief" is available. *Alto*, 738 F.3d at 1126.

## II. This Action Should Proceed In The Tribe's Absence Under Rule 19(b).

Even if this Court were to conclude that the Tribe is a "required" party under Rule 19(a), "equity and good conscience" would still mean that the suit should proceed under Rule 19(b). The Tribe's contrary position would again require a *per se* rule preventing *any* suit that implicates tribal interests from proceeding—even suits raising important public-law questions of constitutional, statutory, and administrative law. Rule 19 does not compel that perverse and dangerous result.

24

### A.  All Four Rule 19(b) Factors Counsel Against Dismissal.

Each of the four Rule 19(b) factors—prejudice, the ability to lessen prejudice, adequacy of a judgment, and availability of an alternative forum—cuts in favor of allowing this suit to proceed.  Opening.Br.51–60. The Tribe fails to demonstrate otherwise.

*(1) Prejudice.*  The Tribe contends that it is prejudiced because "Maverick seeks to 'void' the Tribe's compact through which tribal opportunities and benefits from tribal governmental gaming directly flow." Tribe.Br.51.  At the outset, as noted above, Maverick's third claim does not implicate the Tribe's compact at all, so there is no prejudice with regard to claim III.  *See supra* at 21–23.

For claims I and II, the Tribe commits the same error as the district court by framing its prejudice in terms of how *the result* in this case could affect it rather than how *its absence* from the case could do so.  But "[t]he first Rule 19(b) factor asks whether a party might suffer prejudice not simply from an adverse result, but specifically from the decision being 'rendered in [its] absence.'"  *De Csepel*, 27 F.4th at 748.  Because the federal government adequately represents the Tribe's interests, as explained at length above, *see supra* at 3–23, the Tribe's absence from this

suit will not prejudice it. And even if this Court were to conclude that the federal government's representation would not be *fully* adequate, any divergence of interests between the federal government and the Tribe would be minimal—so any prejudice would likewise be minimal.

### (2) *Extent to which prejudice could be lessened or avoided.*
To the extent that any prejudice exists at all, the district court could easily avoid that prejudice by allowing the Tribe to participate as an *amicus*, as 22 other nonparty tribes have done. *See* Opening.Br.53–54. The Tribe offers no response to this argument.

The nonparty *amici* tribes, meanwhile, erroneously suggest that "[t]his Court has . . . held that '[a]micus status is not sufficient' to lessen prejudice." Amicus.Br.27. But both cases that *amici* cite involved circumstances where the federal government was not a "proper representative because potential intertribal conflicts meant the United States could not represent all of them." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 560 (9th Cir. 1990); *see also Wichita & Affiliated Tribes of Okla. v. Hodel*, 788 F.2d 765, 775 (D.C. Cir. 1986). Such a conflict does not exist here. And in any event, even if *amicus* status were insufficient to cure the greater prejudice inherent in those circumstances, it would not follow

that *amicus* status is insufficient to cure any minimal prejudice that might exist here.

    ***(3) Adequacy of judgment.*** For the same reasons that "complete" relief is available, *see supra* at 23–24, a judgment for Maverick in this case would also necessarily be "adequate." Opening.Br.55–57. The Tribe's only response is to refer back to its arguments about (1) whether a judgment on Maverick's claim against the federal defendants would bind the Tribe or prevent it from offering class III gaming and (2) whether a judgment on Maverick's third claim against the state defendants would entitle Maverick to an injunction against enforcement of Washington's criminal laws. Tribe.Br.51. But as explained above, the first argument ignores the nature of APA relief and the fact that vacatur would afford Maverick complete relief as between Maverick and the defendants, and the second argument turns on contested merits issues that are not before this Court. *See supra* at 23–24.

    ***(4) Lack of alternative remedies.*** Confirming the breadth of its legal theory, the Tribe contends that "there is no forum for a private party's legal challenge to the legality of a tribe's gaming operation." Tribe.Br.51. That position should give this Court pause: a "decision

under Rule 19 '*not* to decide' a case otherwise properly before the court is a power to be exercised only 'in rare instances,'" *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 465 (D.C. Cir. 2017) (alteration omitted), and "if no alternative forum is available to the plaintiff, the court should be extra cautious before dismissing the suit," *Makah*, 910 F.2d at 560 (emphasis omitted). The Tribe's sweeping legal theory flies in the face of these principles, foreclosing judicial review altogether for entire categories of legal disputes.

### B. The Public-Rights Exception Applies.

Another, independent reason that this case should proceed is the "public-rights exception": the rule that courts will "refuse[] to require the joinder of all parties affected by public rights litigation—even when those affected parties have property interests at stake—because of the tight constraints traditional joinder rules would place on litigation against the government." *Conner v. Burford*, 848 F.2d 1441, 1459 (9th Cir. 1988); Opening.Br.60–66. The Tribe and the state defendants argue that this rule does not apply because (1) Maverick has an economic stake in its action and thus is not vindicating a public right; and (2) Maverick's

28

lawsuit would destroy the Tribe's legal entitlements. Tribe.Br.54–57. Both arguments fail.

*First*, the fact that Maverick has a private, economic motivation for bringing its claims does not mean that it is enforcing private rather than public rights. Private-rights cases involve "'the liability of one individual to another under the law,'" whereas "public rights" cases involve the rights and obligations "'between the Government and persons subject to its authority.'" *Stern v. Marshall*, 564 U.S. 462, 489 (2011). Accordingly, this Court has explained that public rights include "the interest in being governed by constitutional laws," *Shermoen*, 982 F.2d at 1319, and the government's obligation "to follow statutory procedures," *Makah*, 910 F.2d at 559 n.6. Maverick's action is one to enforce public rights against the government: its claims are that the state and federal defendants have violated IGRA, the Constitution's equal-protection guarantee, and the anti-commandeering doctrine. ER-116–23. And count I raises those claims under the APA, a classic font of public-rights litigation against the government.

The Tribe and state defendants are therefore wrong to rely on *American Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015 (9th Cir. 2002),

which did not challenge federal agency action. There, this Court concluded that the rights at issue were "more private than public" because the plaintiffs' interest was "in freeing themselves from the competition of Indian gaming." *Id.* at 1026. Maverick's primary interest is not in freeing itself from the competition of class III Indian gaming; Maverick seeks an *equal* competitive playing field, and would be happy to compete with the Tribes were it not criminally prohibited from doing so. Rather, and in contrast to *American Greyhound*, Maverick's primary interest is in vindicating the public right to equal treatment under the law by obtaining relief against the state and federal defendants' creation and maintenance of an unlawful class III gaming monopoly.

It makes no difference that Maverick has a private economic *motivation* for bringing its public-rights claim. The plaintiffs in *Shermoen* had an economic motivation for bringing a Takings Clause claim, but the suit still involved "public rights." 982 F.2d at 1316, 1319. Indeed, a plaintiff is constitutionally *required* to demonstrate that it has suffered a "'particularized'" injury that "'affect[s] the plaintiff in a personal and individual way'" to invoke a federal court's jurisdiction under Article III. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). The public-rights exception does

30

not paradoxically require a plaintiff to undermine its own standing by demonstrating that it has no private interest in the suit.

*Second*, a judgment in Maverick's favor would not destroy the Tribe's private legal entitlements. Rather, granting Maverick's requested relief would set aside the Secretary's approval of the compact amendments and would enjoin the state defendants from administering the compacts (or from enforcing Washington's criminal laws against Maverick) because such actions violate IGRA and the Constitution. ER-123–24. That relief involves the balance of public regulatory authority among sovereigns, not private legal entitlements.

Moreover, as the Supreme Court has explained, the public-rights doctrine applies "where the rights asserted arise independently of any contract which any adverse party may have made with another, not a party to the suit, even though their assertion may affect the ability of the former to fulfill his contract." *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 363 (1940). Even though the adjudication of public rights may have an adverse practical impact on a nonparty's contractual entitlements, a court may nonetheless "proceed to judgment without joining other parties to the contract, shaping its decree in such manner as to preserve the

31

rights of those not before it." *Id.* Accordingly, this Court applied the public-rights exception to an order enjoining the federal government "from permitting any surface-disturbing activity" on oil and gas leases "until they have fully complied with NEPA and ESA" because the Court "enjoin[ed] only the actions of the government; the lessees remain free to assert whatever claims they may have against the government." *Conner*, 848 F.2d at 1461. The fact that the order foreclosed the lessee's contractual "ability to get 'specific performance'" to compel the government to permit surface disturbing activity "until the government complies with NEPA and the ESA is insufficient to make the lessees indispensable to this litigation." *Id.*

So too here. Maverick seeks only to set aside the Secretary's unlawful approval of the compact amendments and to enjoin the state defendants from administering the compacts and amendments. A judgment in Maverick's favor would not prejudge any claim that the Tribe might have against the state or federal defendants. Tribe.Br.23–30. The public-rights exception therefore applies.

32

### III. The Tribe Can Be Joined Because It Waived Its Tribal Immunity By Intervening In This Suit.

Alternatively, this suit should proceed because the Tribe waived its immunity by intervening. Opening.Br.66–68. The weight of authority holds that an immune sovereign's "voluntary appearance in federal court amount[s] to a waiver" of sovereign immunity, *Lapides v. Bd. of Regents*, 535 U.S. 613, 619 (2002), and that a "Tribe's intervention constitutes consent" to suit, *United States v. Oregon*, 657 F.2d 1009, 1014 (9th Cir. 1981). This Court should follow that reasoning here.

The Tribe and the defendants do not contest that intervention on the merits waives sovereign immunity, but they contend that this Court permits tribes to selectively invoke the jurisdiction of federal courts to obtain dismissal of cases without waiving their immunity. Tribe.Br.45–47. That is incorrect. In *Dine Citizens*, it was "undisputed" that the absent tribal entity had not waived its immunity, so there was no need for the Court to consider whether its intervention constituted a waiver. 932 F.3d at 856. The same was true in *Backcountry Against Dumps v. Bureau of Indian Affairs*: "Backcountry d[id] not challenge the district court's determination that the Band cannot be joined because of its sovereign immunity." 2022 WL 15523095, at *1 (9th Cir. Oct. 27, 2022). In *Klamath*,

33

the Court held only that the McCarran Amendment had not waived the Tribes' sovereign immunity; the Court did not consider whether the Tribes waived their immunity by voluntarily intervening. 48 F.4th at 945. And *Bodi v. Shingle Springs Band of Miwok Indians* held only that a Tribe that has been sued in state court does not waive its sovereign immunity by removing to federal court "to have its immunity defense heard in a federal forum." 832 F.3d 1011, 1018 (9th Cir. 2016). The case did not address whether a tribe waives its sovereign immunity by *voluntarily* intervening in an action.

To the contrary, this Court *has* held that a Tribe cannot intervene "to establish and protect its treaty fishing rights" and then turn around and "claim[] immunity" from an order enjoining fishing to conserve an endangered species. *Oregon*, 657 F.2d at 1014 (Kennedy, J.). "Otherwise, tribal immunity might be transformed into a rule that tribes may never lose a lawsuit." *Id.* That is exactly what happened here. As in *Oregon*, the Tribe intervened to "protect" its "interest in its Compact." FedSER-11. The Tribe then weaponized its sovereign immunity to obtain dismissal of Maverick's claims under Rule 19. The Tribe's weaponization of sovereign immunity and Rule 19 would result in the very trump-card that

then-Judge Kennedy cautioned against in *Oregon*—namely that, whenever litigation threatens tribal interests, the Tribe must always win.

The Tribe also argues that the cases Maverick relies on involved waivers of immunity effected through litigation conduct other than intervention. Tribe.Br.46–47. But the rule in *Lapides* does not depend on such distinctions: an immune sovereign may not "invoke federal jurisdiction" and simultaneously assert sovereign immunity. 535 U.S. at 619. Intervention, removal, and "filing an original action in federal court" are merely different "mechanism[s] for invoking the federal court's jurisdiction," and "[t]here is no reason to think" that the use of a particular mechanism "carries [more or] less force for waiver purposes." *Bd. of Regents v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 461–62 (7th Cir. 2011). Because the Tribe voluntarily invoked the district court's jurisdiction to intervene in Maverick's action, it necessarily waived its sovereign immunity.

## CONCLUSION

This Court should reverse and remand for the district court to consider Maverick's claims on the merits.

Dated: October 23, 2023                      Respectfully submitted,

*/s/ Theodore B. Olson*
THEODORE B. OLSON
MATTHEW D. MCGILL
LOCHLAN F. SHELFER
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036

*Counsel for Plaintiff-Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 23-35136

I am the attorney or self-represented party.

**This brief contains** 6,993 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
   [ ] it is a joint brief submitted by separately represented parties.
   [ ] a party or parties are filing a single brief in response to multiple briefs.
   [ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated _____.

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Theodore B. Olson   **Date** 10/23/2023
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*