**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Tel 202.955.8500
gibsondunn.com

Lochlan F. Shelfer
Direct: +1 202.887.3641
Fax: +1 202.831.6016
LShelfer@gibsondunn.com

March 15, 2024

<u>VIA ECF</u>

Molly C. Dwyer
Clerk of the Court
U.S. Court of Appeals for the Ninth Circuit
James R. Browning Courthouse
95 7th Street
San Francisco, CA 94103

*Re:*    *Maverick Gaming LLC v. United States, No. 23-35136*

Dear Ms. Dwyer:

Plaintiff-Appellant Maverick Gaming LLC respectfully submits this letter under Rule 28(j) to inform the Court that on February 21, 2024, the Department of the Interior promulgated a rule governing its review of compacts under the Indian Gaming Regulatory Act. Ex. A.

Interior explained that the rule "reinforces Congress's intent that Indian gaming continue to provide a critical revenue source for Tribal government and reflect an exercise of Tribal sovereignty and governance. 25 U.S.C. 2702(1)." Ex. A, at 13,255. This statement confirms that the federal government has a congressionally mandated interest in "the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments." 25 U.S.C. § 2702(1); Opening.Br.32-33. These are the same interests that the Tribe asserts. The interests of the federal government and the Tribe are thus identical.

Accordingly, as Maverick has argued, this case is analogous to *Southwest Center for Biological Diversity v. Babbitt*, 150 F.3d 1152 (9th Cir. 1998). There, as here, the federal government had a statutorily defined interest that mirrored the tribe's. *See Sw. Ctr. for Biological Diversity v. Babbitt*, 1997 WL 817345, at *1 n.5 (D. Ariz. Dec. 11, 1997). The federal government and the tribe shared "a strong interest in defeating [the] suit on the merits and ensuring that the [water facility] is available for use as soon as possible." 150 F.3d at 1154. By contrast, this case is unlike *Dine Citizens Against Ruining Our Environment v. Bureau of Indian Affairs*, 932 F.3d 843 (9th Cir. 2019), and *Klamath Irrigation District v. U.S. Bureau of Reclamation*, 48 F.4th 934 (9th Cir. 2022), where the federal government had the "task of balancing multiple competing interests," *id.* at 940, and had "obligations to follow relevant environmental laws [that] were in tension with tribal interests," *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 997 (9th Cir. 2020); Reply.Br.13-14. Because the federal government has a statutorily defined interest in tribal gaming itself, Ex. A, at 13,255, and not merely in defending federal actions that happen to allow such gaming, *Southwest Center*—not *Dine* or *Klamath*—controls this case.

Abu Dhabi · Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles
Munich · New York · Orange County · Palo Alto · Paris · Riyadh · San Francisco · Singapore · Washington, D.C.

# GIBSON DUNN

March 15, 2024
Page 2


Respectfully submitted,


*/s/ Lochlan F. Shelfer*

Lochlan F. Shelfer

# EXHIBIT A

**13232** Federal Register / Vol. 89, No. 35 / Wednesday, February 21, 2024 / Rules and Regulations

## DEPARTMENT OF THE INTERIOR

**Bureau of Indian Affairs**

**25 CFR Part 293**

[245A2100DD/AAKC001030/ A0A501010.999900]

RIN 1076–AF68

## Class III Tribal State Gaming Compacts

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Final rule.

**SUMMARY:** The Department of the Interior (Department) is issuing revisions to its regulations governing the review and approval of Tribal-State gaming compacts. The revisions add factors and clarify how the Department reviews "Class III Tribal-State Gaming Compacts" (Tribal-State gaming compacts or compacts).

**DATES:** This rule is effective on March 22, 2024.

**FOR FURTHER INFORMATION CONTACT:** Oliver Whaley, Director, Office of Regulatory Affairs and Collaborative Action (RACA), Office of the Assistant Secretary—Indian Affairs; Department of the Interior, telephone (202) 738–6065, *RACA@bia.gov.*

**SUPPLEMENTARY INFORMATION:** This final rule is published in exercise of authority delegated by the Secretary of the Interior to the Assistant Secretary—Indian Affairs (Assistant Secretary; AS–IA) by 209 DM 8.

### Table of Contents

I. Statutory Authority
II. Executive Summary
III. Background
IV. Summary of Comments Received
  A. General Comments
  B. Section Comments
V. Summary of Changes by Section
  A. Proposed Subpart A—General Provisions and Scope
  B. Proposed Subpart B—Submission of Tribal-State Gaming Compacts
  C. Proposed Subpart C—Secretarial Review of Tribal-State Gaming Compacts
  D. Proposed Subpart D—Scope of Tribal-State Gaming Compacts
VI. Procedural Requirements
  A. Regulatory Planning and Review (E.O. 12866)
  B. Regulatory Flexibility Act
  C. Congressional Review Act (CRA)
  D. Unfunded Mandates Reform Act of 1995
  E. Takings (E.O. 12630)
  F. Federalism (E.O. 13132)
  G. Civil Justice Reform (E.O. 12988)
  H. Consultation With Indian Tribes (E.O. 13175)
  I. Paperwork Reduction Act
  J. National Environmental Policy Act (NEPA)
  K. Effects on the Energy Supply (E.O. 13211)
  L. Clarity of This Regulation
  M. Public Availability of Comments

## I. Statutory Authority

In enacting the Indian Gaming Regulatory Act of 1988 (Pub. L. 100–497) 102 Stat. 2467 dated October 17, 1988, (Codified at 25 U.S.C. 2701–2721 (1988)) (hereinafter IGRA), Congress delegated authority to the Secretary to review compacts to ensure compliance with IGRA, other provisions of Federal law that do not relate to jurisdiction over gaming on Indian lands, and the trust obligations of the United States. 25 U.S.C. 2710(d)(8)(B)(i)–(iii).

## II. Executive Summary

The Department of the Interior (Department) is issuing revisions to its regulations located at 25 CFR part 293, which govern the Department's review and approval of Tribal-State gaming compacts under IGRA. The final rule includes revisions to the Department's existing part 293 regulations and adds provisions clarifying how the Department reviews "Class III Tribal-State Gaming Compacts" (Tribal-State gaming compacts or compacts).

The Department's current regulations do not identify the factors the Department considers when reviewing a compact; rather, those factors are contained in a series of letters issued by the Department dating back to 1988. Evolution in the gaming industry and ongoing litigation highlight the need for the Department to clarify how it will analyze Tribal-State gaming compacts to determine whether they comply with IGRA, 25 U.S.C. 2701, *et seq.,* other provisions of Federal law that do not relate to jurisdiction over gaming on Indian lands, and the trust obligations of the United States to Indians.

## III. Background

In the early 1970s, as part of the Federal shift away from the termination era policies towards Tribal self-governance, Federal support grew for Indian gaming as a means of generating revenue for Tribal governments. During that period, the United States was taking affirmative steps to encourage Tribal gaming operations as a way for Tribes to improve self-governance by reducing their dependence on Federal funds.[1] In response, States began to take police and regulatory based legal actions in an attempt to restrain Tribal gaming.[2] Then, in 1987, the Supreme Court issued its *Cabazon* decision, effectively holding that Tribes have the exclusive right to regulate gaming activities on Indian lands, provided that gaming is not prohibited by Federal law, and the State permits such gaming. *Cabazon,* 480 U.S. 202.

One year later, Congress enacted IGRA, which acknowledged that many Tribes were already engaged in gaming and placed limits on Tribes' sovereign right to conduct gaming. The IGRA divided gaming into three classes. Class I gaming includes social games for prizes of minimal value and traditional forms of Indian gaming that are engaged in as part of Tribal ceremonies and celebrations. 25 U.S.C. 2703(6) and 25 CFR 502.2. Class II gaming includes bingo and bingo like games as well as non-house banked card games for example traditional poker. 25 U.S.C. 2703(7) and 25 CFR 502.3. Class III gaming includes all other forms including: house backed card games, for example baccarat or blackjack; casino games for example roulette and craps; slot machines; sports betting and parimutuel wagering including horse racing; and lotteries. 25 U.S.C. 2703(8) and 25 CFR 502.4. Congress through IGRA sought to ensure that Tribes are the primary beneficiaries of Indian gaming operations, but also authorized State governments to play a limited role in the regulation of class III Indian gaming by negotiating agreements with Tribes called "Class III Tribal-State Gaming Compacts" (class III gaming compacts or compacts). Class III gaming compacts govern the conduct of class III gaming on the Indian lands of the Tribe by providing the jurisdictional framework for the licensing and regulation of the class III gaming. Congress sought to strike a balance between Tribal sovereignty and States' interests in regulating gaming and "shield[ing] it from organized crime and other corrupting influences." 25 U.S.C. 2702(2).

With IGRA, Congress sought to balance State interests while safeguarding Tribes against aggressive States by providing a specific list of permissible topics in a compact and requiring States to negotiate in good faith.[3] In addition to the good faith negotiation requirements and the limited list of permissible topics, Congress also provided both judicial remedies and administrative oversight in the form of Secretarial review. Congress provided the United States district courts with jurisdiction over causes of action stemming from IGRA's requirement that States enter into negotiations with Tribes who request

---

[1] *California* v. *Cabazon Band of Mission Indians,* 480 U.S. 202, 217 (1987) (*Cabazon*).

[2] *See* Cohen's Handbook of Federal Indian Law, 2012 edition, sec. 12.91 The Emergence of Gaming.

[3] *Chicken Ranch Rancheria* v. *California,* 42 F.4th 1024 (9th Cir. 2022).

negotiations, and that the State negotiate in good faith. 25 U.S.C. 2710(d)(7)(A)(i). Under IGRA, the district courts review the negotiation process which often includes reviewing if the negotiations have strayed beyond IGRA's limited list of permissible topics in a compact. The Secretary's review of a compact begins after the parties have executed the compact and necessarily includes reviewing if it contains terms that strayed beyond IGRA's limited list of permissible topics in a compact.

Congress expressly included "the trust obligations of the United States to Indians" as part of the Secretary's review of a compact.[4] In that respect, IGRA's use of the term *trust obligation* invokes the broader general government-to-government *trust relationship* to Tribes, not a specific fiduciary trust duty. These provisions in IGRA support the application of the government-to-government trust relationship, as well as its protection of Tribal sovereignty, to IGRA's carefully balanced encroachment into Tribal sovereignty. It is, therefore, appropriate for the Department to consider the general government-to-government trust relationship and protect Tribal sovereignty during its review of compacts. Further, this rulemaking upholds the government-to-government trust relationship by codifying longstanding Departmental policy and interpretations of caselaw addressing IGRA's limited list of permissible topics in a compact. The final rule will ensure Tribes have the tools they need to protect themselves against further encroachment by aggressive States that insist on including compact provisions that are not directly related to the operation of gaming activities. The final rule provides clarity by articulating the Department's "direct connection" test and by giving examples of provisions the Department has found *are* directly connected to a Tribe's operation of gaming activities and of provisions that do not meet this test. Some examples of improper provisions States have sought to require include requiring compliance with State tobacco regulations; requiring memoranda of understanding with local governments; adopting State environmental regulations of projects that are not directly related to the operation of gaming activities; or regulating non-gaming Tribal economic activities.

At the time of IGRA's enactment, Indian gaming represented an approximately \$121 million segment of the total United States gaming industry, while Nevada casinos reported approximately \$4.1 billion in gross gaming revenue.[5] By the end of fiscal year 2022, Indian gaming represented an approximately \$40.9 billion segment of the total United States gaming industry, with commercial gaming reporting approximately \$60.4 billion.[6] In the Casino City's 2018 Edition of the *Indian Gaming Industry Report,* Allen Meister, Ph.D., of Meister Economic Consulting estimated that in 2016, Indian Gaming represented a total economic contribution of \$105.4 billion across the U.S. economy.

In line with the growth in Indian gaming, State licensed commercial gaming and State lotteries have also experienced growth. When Congress began considering legislation addressing Indian gaming in the early 1980s, two States had legalized commercial casino gaming and seventeen had State run lotteries. By 2017, 24 States had legalized commercial casino gaming, resulting in approximately 460 commercial casino locations, excluding locations with State licensed video lottery terminals, animal racetracks without gaming machines, and card rooms. In 2017, the gross gaming revenue for the commercial casino industry represented approximately \$40.28 billion and generated approximately \$9.2 billion in gaming tax revenue. Further, 44 States were operating State lotteries in 2017.

The expansion of State lotteries and State licensed commercial gaming can place Tribes and States in direct competition for market share. Advancements in gaming technology and changes in State and Federal gaming law since the passage of IGRA have consequently shaped the compact negotiation process. As a result, class III gaming compacts have expanded in scope and complexity as the parties seek mutually beneficial provisions. IGRA, however, anticipated the compact negotiation process would be between sovereign governments seeking to regulate and safeguard Indian gaming, an arrangement protected by judicially enforceable limits on the provisions a State could seek to include in a compact.

Through IGRA, Congress diminished Tribal sovereignty by requiring Tribes to enter into compacts with States governing the Tribes' conduct of class III gaming before Tribes may conduct casino style or "class III gaming." 25 U.S.C. 2710(d)(1)(C). IGRA requires States to negotiate class III gaming compacts in good faith, limits the scope of negotiation for class III gaming compacts to seven enumerated subjects, and prohibits States from using the process to impose any tax, fee, charge, or other assessment on Tribal gaming operations. 25 U.S.C. 2710(d)(3)(A); 2710(d)(3)(C); and 2710(d)(4). However, States have often sought to include provisions in compacts which test the limits Congress provided in IGRA. Tribes have sought judicial and administrative relief resulting in a body of case law and administrative decisions clarifying the proper scope of compacts.

Under IGRA, the Department has 45 days to complete its review and either approve or disapprove a class III gaming compact. 25 U.S.C. 2710(d)(8). If the Department takes no action within that 45-day period, the Tribal-State gaming compact is considered approved by operation of law—to the extent that it is consistent with IGRA. 25 U.S.C. 2710(d)(8)(C). In order for a compact to take effect, notice of its approval or approval by operation of law must be published in the **Federal Register**. 25 U.S.C. 2710(d)(3)(B).

The regulations that codify the Department's review process for Tribal-State gaming compacts are found at 25 CFR part 293 and were promulgated in 2008 ("2008 Regulations"). 73 FR 74004 (Dec. 5, 2008). The Department's 2008 Regulations were designed to "address[] the process for submission by Tribes and States and consideration by the Secretary of Class III Tribal-State Gaming Compacts, and [are] not intended to address substantive issues." 73 FR 74004–5. The Department's consideration of substantive issues appears in decision letters, "deemed approved" letters, and technical assistance letters. In addition, a body of case law has developed that addresses the appropriate boundaries of class III gaming compacts. With this final rule, the Department codifies longstanding Departmental policies and interpretation of case law in the form of substantive regulations, which will provide certainty and clarity on how the Secretary will review certain provisions in a compact.

On March 28, 2022, the Department published a Dear Tribal Leader Letter announcing Tribal consultation regarding proposed changes to 25 CFR part 293, pursuant to the Department's consultation policy and under the criteria in E.O. 13175. The Department held two listening sessions and four

---

[4] 25 U.S.C. 2710(d)(8)(B)(iii).

[5] *See, e.g.,* "The Economic Impact of Tribal Gaming: A State-By-State Analysis," by Meister Economic Consulting and American Gaming Association dated November 8, 2018.

[6] *See, e.g.,* "The National Indian Gaming Commission's annual gross gaming revenue report for 2022;" *see also* American Gaming Association's press release "2022 Commercial Gaming Revenue Tops \$60B, Breaking Annual Record for Second Consecutive Year."

**13234** **Federal Register** / Vol. 89, No. 35 / Wednesday, February 21, 2024 / Rules and Regulations

formal consultation sessions. The Department also accepted written comments until June 30, 2022.

The Dear Tribal Leader Letter included a Consultation Draft of the proposed revisions to 25 CFR part 293 (Consultation Draft); a Consultation Summary Sheet of Draft Revisions to part 293; and a redline reflecting proposed changes to the 2008 Regulations. The Dear Tribal Leader Letter asked for comments on the Consultation Draft, as well as responses to seven consultation questions.

The Department received numerous written and verbal comments from Tribal leaders and Tribal advocacy groups. The Department also received written comments from non-Tribal entities, which are not addressed in the Tribal consultation comment and response. The Department has included and addressed those comments as part of the public comment record for the proposed rule.

On December 6, 2022, the Department published a notice of proposed rulemaking announcing the public comment period for the proposed revisions to 25 CFR part 293 (proposed rule). 87 FR 74916. The Department published a Dear Tribal Leader Letter dated December 5, 2022, announcing a second round of Tribal consultation sessions on the proposed rule. The Department also published a redline version of the proposed rule reflecting changes to the 2008 Regulations, a redline version reflecting changes made in response to the Tribal consultation comments, and a Table of Authorities identifying case law and Departmental decisions and other policy statements considered when drafting the proposed rule. The Department held one in-person Tribal consultation and two virtual Tribal consultation sessions. The Department also accepted written comments until March 1, 2023. Over 56 entities commented on part 293, including Tribal, State, and local governments, industry organizations, and individual citizens. In total, the submissions were separated into 607 individual comments. Generally, around 258 comments were supportive, 136 were not supportive, and 213 were neutral or provided constructive criticism.

## IV. Summary of Comments Received

### A. General Comments

Several commenters commented on the process and timing of the proposed rulemaking process. Some commenters requested additional time to comment and further consultations or listening sessions during the rulemaking process.

Other commenters requested detailed records of the government-to-government Tribal consultation sessions held between March 28 and June 30, 2022. Others encouraged the Department to proceed with the rulemaking expeditiously.

The Department acknowledges the comments. The Department seeks to balance robust consultation and public participation with expeditious processing of the rulemaking. The Department held two virtual consultation sessions, one in-person listening session, and provided an 85-day public comment period on the proposed rule. The final rule reflects public input on the proposed rule and builds on the input of Tribal leaders from the government-to-government Tribal consultation process.

### B. Section Comments

Comments on § 293.1—What is the purpose of this part?

Several commenters expressed support for the proposed amendments to § 293.1 and some commentors noted it is helpful that the Department states the regulations contain substantive requirements for class III compacts.

The Department acknowledges the comments.

Comments on § 293.2—How are key terms defined in this part?

Many commenters expressed support and approval for the proposed amendments to existing definitions and the proposed new definitions—including, but not limited to, "gaming facility," "gaming spaces," "amendment," and "meaningful concession."

The Department acknowledges the comments.

One commenter suggested the Department include a definition for "primary beneficiary" as the term is used in § 293.25(b)(3) [7] of the proposed rule, noting that the current version suggests that this be measured against projected revenue to the Tribe and State but that market circumstances often change. One commenter requested additional defined terms and clarified definitions. Requested definitions include: "Beneficiary," "Projected Revenue," and clarification of the difference (if any) between "great scrutiny" and "strict scrutiny."

The Department declines to accept the recommendation to define "primary beneficiary." The IGRA sets a benchmark that requires the Tribe receive at least 60 percent of net revenue. The National Indian Gaming Commission relies on Sole Proprietary Interest and IGRA at 25 U.S.C. 2710(b)(2)(A), consistent with 25 U.S.C. 2710(b)(4)(B)(III) and 2711(c), which collectively requires that the Tribe receive at least 60 percent of net revenue. *See, e.g.,* NIGC Bulletin No. 2021–6. The IGRA at 25 U.S.C. 2711(c) sets a presumptive cap on management contracts of 30 percent of net revenue but allows for some management contracts to go up to 40 percent of net revenue if the Chairman is satisfied that the income projections and capital investment required justify the higher fee.

One commenter believes the Department is artificially limiting the scope of compacts with the new defined terms "gaming facility" and "gaming space" in § 293.2(e) and § 293.2(f). The commenter also raised concerns these terms may bring compacts which are currently in effect out of compliance with the proposed rule.

The Department acknowledges the concern regarding existing compacts and notes that § 293.30 clarifies that the final rule is prospective and does not alter the Department's prior approval of compacts now in effect. As explained in the Notice of proposed rulemaking, IGRA limits the review period to approve or disapprove compacts or amendments to 45 days. As a result, the Department cannot retroactively approve or disapprove compacts or amendments after the 45-day review period has run. Therefore, any compacts already in effect for the purpose of Federal law will remain in effect. The definition of *gaming spaces* in the final rule continues to seek the smallest physical footprint of potential State jurisdiction over a Tribe's land under IGRA. This definition is intended to codify the Department's long-standing narrow read of 25 U.S.C. 2710(d)(3)(C) as applying only to the physical spaces in which the operation of class III gaming actually takes place. The definition of *gaming facility* addresses building maintenance and licensing under the second clause of 25 U.S.C. 2710(d)(3)(C)(vi) and is intended to be narrowly applied to only the building or structure where the gaming activity occurs on Indian lands.[8]

---

[7] The Department notes § 293.25 has been redesignated as § 293.27 in the final rule.

[8] *See, e.g.,* Letter to the Honorable Peter S. Yucupicio, Chairman, Pascua Yaqui Tribe of Arizona, from the Director, Office of Indian Gaming, dated June 15, 2012, at 5, and fn. 9, discussing the American Recovery & Reinvestment Act of 2009 and the IRS's "safe harbor" language to reassure potential buyers that tribally-issued bonds would be considered tax exempt by the IRS because the bonds did not finance a casino or other gaming establishment.

One commenter requested the Department define "Gaming facility" as follows: "Gaming facility means any physical space within a building or structure, *or portion thereof,* where the gaming activity occurs." The commenter stated this definition would avoid relying on structural design of buildings to determine the scope of a compact. The commenter noted that the definition of "gaming facility" is too broad and is concerned that it may allow the State more control than it is entitled to. Additionally, the commenter opined that the Department's reliance on the IRS' safe harbor provision for tax-free bonds may result in a compact which extends well beyond the gaming spaces based on the structural engineering of the building. Finally, the commenter is concerned that the Department has not incorporated its own definition of "gaming spaces" into the substantive portions of the draft.

The Department declines to accept the proposed change. As explained in the Notice of proposed rule Making, the Department included the defined terms "gaming facility" and "gaming spaces." The definition of gaming spaces seeks the smallest physical footprint of potential State jurisdiction over a Tribe's land under IGRA. This definition is intended to codify the Department's long-standing narrow read of 25 U.S.C. 2710(d)(3)(C) as applying only to the spaces in which the operation of class III gaming actually takes place. The definition of gaming facility addresses building maintenance and licensing under the second clause of 25 U.S.C. 2710(d)(3)(C)(vi) and is intended to be narrowly applied to only the building or structure where the gaming activity occurs on Indian lands. The IRS safe harbor definition of building was developed through consultation with the Secretary as a workable test for Tribes to use tax exempt bonds to fund economic development provided the bond was not being used to finance "any portion of a building in which class II or class III gaming . . . is conducted or housed". 26 U.S.C. 7871(f)(3)(B)(i). The IRS safe harbor provides that a structure will be treated as a separate building—for the purpose of tax exempt Tribal Economic Development Bonds—if it has "an independent foundation, independent outer walls, and an independent roof." [9] Further, "connections (*e.g.,* doorways, covered walkways or other enclosed common area connections) between two adjacent independent walls of separate buildings may be disregarded". [10] We are sensitive to the commenters concern that our reliance on the IRS safe harbor definition may result in the portions of the compact that address building maintenance and licensing under the second clause of 25 U.S.C. 2710(d)(3)(C)(vi), reaching beyond the *gaming spaces* as defined in § 293.2(f).

One commenter requested that proposed § 293.2(h)(2) be revised to include the word "activity" so that the provision would read "Directly related to gaming activity."

The Department has modified § 293.2(h)(2) in the final rule to include the word "activity."

Several commenters expressed concern with the definitions of "meaningful concessions" and "substantial economic benefit" as too narrow and vague. Several commenters stated that "meaningful concessions" and "substantial economic benefits" are not clear terms and suggested the proposed regulations include examples. Another commenter recommended the Department should make clear that "meaningful concessions" require the State to give something up and that proposed regulations should also address what constitutes "substantial" with respect to "economic benefits."

The Department acknowledges the comments and understands that the Tribe and State, during their negotiations, determine what a substantial economic benefit and meaningful concession means to them. The final rule at § 293.27 sets forth the Department's criteria for reviewing revenue sharing provisions to ensure they provide a substantial economic benefit in exchange for a meaningful concession.

One commenter suggested that the terms "ancillary agreement" and "documents" need further defining because it is still unclear how those terms apply to §§ 293.4, 293.8, 293.21, and 293.28 in the proposed rule. [11] Particularly in States like Arizona, where all tribes are required to come to the table with a single compact, one change to one tribe's compact might trigger changes to other Arizona tribes' compacts.

The Department acknowledges the comment and has reviewed the final rule for consistency. The Department declines to define the terms "ancillary agreement" or "documents" as used in §§ 293.4(b) and 293.8(d). Section 293.4(b) contains descriptions of the types of ancillary agreements or documents the Department will require be submitted for review as well as types of documents which are exempt from review.

Comments on § 293.3—What authority does the Secretary have to approve or disapprove compacts and amendments?

Many commenters support the proposed changes to § 293.3.

The Department acknowledges the comments.

Comments on § 293.4—Are compacts and amendments subject to review and approval?

Many commenters support the proposed changes made to § 293.4 because they help clarify what are considered to be compact amendments, while also clarifying the timelines to submit agreements between political subdivisions and Tribes. Commenters also support the opportunity for Tribes to submit documents to the Department for review.

The Department acknowledges the comments.

A commenter requested clarification if the Department's review of an amendment includes reviewing the underlying compact for consistency with the proposed rule.

The Department acknowledges the comment and notes IGRA limits the Secretary's authority to review and approve or disapprove a compact or amendment to 45 days. As a result, the Department cannot retroactively approve or disapprove a compact or amendment after the 45-day review period has run. Instead, the Department's review is limited to the text of the document under review during the 45-day review period. The Department treats restated and resubmitted compacts as a new compact because the parties have submitted entire text of the compact for review. The Department encourages parties to utilize restated compacts or amended and restated compacts as a best practice to incorporate a series of amendments into a single document. The Department finds it helpful if the Tribe or State also submits a redlined copy of the restated compact.

Several commenters expressed concerns whether proposed § 293.4(b) requires review or exempts from review certain types of intergovernmental and inter-tribal agreements including "Transfer Agreements" and "Pooling Agreements."

The Department has made some stylistic revisions to § 293.4(b) in the final rule in an effort to further clarify

---

[9] IRS Tax Exempt Bonds Notice 2009–51 (Tribal Economic Development Bonds) Section 10 (b).

[10] *Id.*

[11] The Department notes § 293.21 of the proposed rule has been redesignated as § 293.20 in the final rule, and § 293.28 of the proposed rule has been redesignated as § 293.29 in the final rule.

which documents are considered compacts or amendments subject to review and which documents are exempt from review. Further, § 293.4(c) of the final rule allows parties to submit documents for a determination if the document is a compact or amendment subject to review under IGRA.

Several commenters expressed support for proposed § 293.4(b), noting that revisions from the Consultation Draft resolved many concerns about the scope of § 293.4(b). Commenters stated proposed § 293.4(b) appears to exempt from review minor changes through mutual agreement under provisions in existing compacts that allow for such changes. Examples offered by commenters included adding class III games or adopting a more favorable provision in a newly negotiated compact or amendment through "most favored nations" provisions.

The Department notes that some compacts include provisions which allow for the Tribe and the State to add class III games, or forms of games, which are approved through changes in State law or regulations without amending the Compact. The final rule at § 293.4(b)(2) and (3) exempts from review a document memorializing the automatic addition of a class III game pursuant to such a provision. The final rule at § 293.4(b)(1) however clarifies that the incorporation of a more favorable compact term through a "most favored nation" provision would be treated as an amendment because it acts to modify or change a term in a compact or amendment. The Department also encourages parties to forgo submitting stand-alone amendments, and instead utilize restated compacts or amended and restated compacts as a best practice to incorporate a series of amendments into a single document.

A commentor requested the Department strike proposed § 293.4(b)(3), arguing the provision is redundant with proposed § 293.8(d), and contains various vague and undefined terms (*e.g.,* "expressly contemplates").

The Department acknowledges the comment and notes that the final rule at § 293.4 addresses whether a document is a compact or amendment to a compact. The final rule at § 293.8 addresses what documents are required to be submitted as part of the Secretary's review of a compact or amendment. Further, § 293.4(b)(3) exempts internal control standards and other documents between Tribal and State regulators from review as a compact or amendment. The final rule at § 293.8(d) requires the submission of agreements required by a compact which either

requires the Tribe to make payments to the State, its agencies, or its political subdivisions, or restricts or regulates the Tribe's use and enjoyment of its Indian lands.

Several commenters discussed the Department's efforts to limit and review agreements between Tribal and local governments through the inclusion of §§ 293.4(b)(4), 293.8(d), 293.24(c)(5), and § 293.28 in the proposed rule.[12] Some commenters expressed support for the Department's effort in the rule making to prevent local governments from disrupting Tribal gaming through revenue sharing demands noting this is a continuation of the Department's recent disapprovals of compacts containing similar language. Other commenters questioned if the proposed provisions were sufficiently holistic to address the efforts of local governments to disrupt Tribal gaming. Other commenters questioned the Secretary's authority to review intergovernmental agreements, suggesting that the Department's efforts were misplaced, encroached on Tribal sovereignty, and may result in uncertainty regarding the validity of existing intergovernmental agreements between Tribes and local governments. Some commenters opined that these sections contain inherent internal conflicts that could be interpreted as both prohibiting the inclusion of provisions addressing intergovernmental agreements in compacts, while also requiring the submission of intergovernmental agreements for review as a compact. Some commenters noted these agreements have resulted in strong co-operative working relationships between Tribes and local governments with overlapping or abutting jurisdictions.

The Department notes that intergovernmental agreements between Tribes and States or local governments can be beneficial; Congress, however, provided a narrow scope of topics that Tribes and States may include when negotiating a Tribal-State gaming compact. As explained in the Notice of proposed rulemaking, the Department revised these provisions in the proposed rule—which are codified with minor clarifying edits in the final rule—to clarify that these provisions cover only agreements between Tribes and States, or States' political subdivisions, which govern gaming, include payments from gaming revenue, or are required by a compact or amendment. Agreements that are not required by a compact and

that do not regulate gaming do not need to be submitted to the Department for approval as part of a Tribal-State gaming compact. Likewise, agreements between Tribes and the State and/or local governments that facilitate cooperation and good governance, but that do not regulate gaming or require gaming revenue sharing payments, should not be incorporated into or referenced as a requirement of a Tribal-State gaming compact. The Department also included the phrase "restricts or regulates a Tribe's use and enjoyment of its Indian lands" to clarify these agreements may be considered both as a contract which encumber Tribal lands under 25 U.S.C. 81 and the Department's regulations at 25 CFR part 84, and as a compact or amendment under IGRA. The Department has included the § 293.4(c) process for a determination if an agreement or other document is a compact or amendment in the final rule.

A commenter recommends qualifying proposed § 293.4(b)(4) by including a reference to "the State, its agencies or political subdivisions" to make it consistent with proposed § 293.8(d). Another recommends that the Department remove "or includes any of the topics identified in 25 CFR 292.24" from proposed § 293.4(b)(4). A commenter recommends qualifying § 293.4(b)(4) by including a reference to "the State, its agencies or political subdivisions" because adding this language would improve the clarity of the regulatory text by ensuring that this provision is consistent with proposed rule § 293.8(d) and proposed rule § 293.28.[13] The commenter argued it would also eliminate any uncertainty regarding whether a contract with a private party (*e.g.,* financing documents, management contracts, development agreements, etc.) could be subject to this provision. Others requested changes to proposed § 293.4(b)(4). Many commentors submitted draft language.

The Department has modified § 293.4(b)(4) in the final rule to state that if an ancillary agreement or document interprets language in a compact or an amendment concerning a Tribe's revenue sharing to the State, its agencies or political subdivisions under § 293.27, or includes topics which are directly related to the operation of gaming activities under § 293.23, then it may constitute an amendment subject to review and approval by the Secretary.

Several commenters noted the proposed § 293.4(b)(4) appeared to contain a typographical error in the cross-reference to 25 CFR 292.24 and

---

[12] The Department notes §§ 293.24 and 293.28 have been redesignated as §§ 293.23 and 293.29 in the final rule.

[13] The Department notes proposed § 293.28 has been redesignated as § 293.29 in the final rule.

**Federal Register** / Vol. 89, No. 35 / Wednesday, February 21, 2024 / Rules and Regulations **13237**

suggested the correct cross-reference is 25 CFR 293.24.[14]

The Department has corrected the error and changed the cross-reference to § 293.23 in the final rule.[15]

Several commenters recommended the Department make a technical amendment to proposed § 293.4(c) to provide clarity regarding when the clock begins to run on the opinion letter issuance timeline and offered suggested language. Commenters noted that the usefulness of proposed § 293.4(c) would be limited without including reasonable parameters on review time. Other commenters requested the Department reduce the timeline of review in § 293.4(c).

The Department has accepted the comments in part and modified § 293.4(c) in the final rule to state that the Department will issue a letter within 30 days of receipt of the written request, providing notice of the Secretary's determination. The revised language clarifies when the clock starts. Additionally, the Department has adjusted the review period to 30 days, for consistency with section 81, Encumbrances of Tribal Land Contract Approvals under 25 CFR 84.005. The Department notes some agreements may trigger both IGRA and section 81 review. Should the Secretary determine that an ancillary agreement or document is a compact or amendment subject to review and approval by the Secretary, the Department has included clarifying language that the Tribe or State must resubmit the ancillary agreement or document consistent with § 293.8.

Several commenters suggested the Department revise proposed § 293.4(c) by including a "deeming" language so that if the deadline is missed, the document or agreement submitted pursuant to § 293.4(c) would be presumed "not a compact or amendment."

The Department declines to include "deeming" language as it could result in unintended consequences, including compacts or amendments which are not in effect as a matter of Federal law. Rather, the Department has included clarifying language that should the Secretary determine that an ancillary agreement or document is a compact or amendment subject to review and approval by the Secretary, the Tribe or State must resubmit the ancillary agreement or document consistent with § 293.8.

Several commenters requested the Department clarify if an agreement or other document submitted for review under proposed § 293.4(c) would be subjected to adverse action.

The Department acknowledges the comments and notes that the review process in § 293.4(c) of the final rule builds on the Department's longstanding practice of providing compact technical assistance to Tribes and States. The review process found in § 293.4(c) utilizes a shorter review period and does not include the formal submission requirements of § 293.8. The § 293.4(c) review process culminates in a written determination if the submitted document is a compact or amendment under IGRA.

**Comments on § 293.5—Are extensions to compacts or amendments subject to review and approval?**

Several commenters expressed support for proposed changes to § 293.5, opining the revisions are consistent with other provisions of the rule. Some commenters appreciate the addition of "[t]he extension becomes effective only upon publication in the **Federal Register**." One commenter appreciates the lessened documentation requirements for processing compact extensions under proposed § 293.5.

The Department acknowledges the comments.

**Comments on § 293.6—Who can submit a compact or amendment?**

Several commenters expressed support for the proposed changes to § 293.6.

The Department acknowledges the comments.

**Comments on § 293.7—When should the Tribe or State submit a compact or amendment for review and approval?**

Several commenters expressed support for the proposed changes to § 293.7. One commenter supported the inclusion of the phrase "otherwise binding on the parties" and explained that language acknowledges some documents and ancillary agreements become binding on parties outside of an affirmative consent process.

The Department acknowledges the comments.

**Comments on § 293.8—What documents must be submitted with a compact or amendment?**

Several commenters support the proposed changes to § 293.8, and many commenters support the addition of proposed § 293.8(d).

The Department acknowledges the comments.

Several commenters requested that proposed § 293.8(d) be further clarified to avoid confusion about what documents should be submitted with a compact or amendment. One commenter offered the following edit to § 293.8(d) for clarity: "Any agreement between a Tribe and a State, its agencies or its political subdivisions required by a compact or amendment *(including ancillary agreements, documents, ordinances, or laws required by the compact or amendment)*." The commenter also recommended the Department strike the remainder of § 293.8(d).

The Department has accepted the revisions in part to reduce duplication with other sections of the final rule. The Department has changed the language of § 293.8(d) to state any agreement between a Tribe and a State, its agencies or its political subdivisions required by a compact or amendment (including ancillary agreements, documents, ordinances, or laws required by the compact or amendment) which the Tribe determines is relevant to the Secretary's review.

One commenter requested the Department strike proposed § 293.8(d) from the final rule, stating the subsection is unnecessary.

The Department declines to remove proposed § 293.8(d). The Department notes that intergovernmental agreements between Tribes and States or local governments can be beneficial; Congress, however, provided a narrow scope of topics that Tribes and States may include when negotiating a Tribal-State gaming compact. As explained in the notice of proposed rulemaking, and above, the Department included § 293.8(d) to address agreements between Tribes and States, or States' political subdivisions, which are required by a compact or amendment and require the Tribe to make payments to the State, its agencies, or its political subdivisions, or restricts or regulates the Tribe's use and enjoyment of its Indian lands. This provision ensures that such agreements receive proper scrutiny by the Department as required by IGRA and other Federal laws. The Department included the phrase "restricts or regulates a Tribe's use and enjoyment of its Indian Lands" to clarify these agreements may be considered both contracts which encumber Tribal lands under 25 U.S.C. 81 and the Department's regulations at 25 CFR part 84, and as a compact or amendment under IGRA. The Department has included the § 293.4(c) process for a determination if an agreement or other document is a compact or amendment in the final rule.

---

[14] The Department notes proposed § 293.24 has been redesignated as § 293.23 in the final rule.

[15] The Department notes proposed § 293.24 has been redesignated as § 293.23 in the final rule.

**13238** **Federal Register** / Vol. 89, No. 35 / Wednesday, February 21, 2024 / Rules and Regulations

One commenter requested the language in § 293.8(e) be narrowed by including the phrase "directly related to and necessary for making a determination."

The Department declines to accept the suggested change to the language in § 293.8(e). The relevant text of § 293.8(e) remains unchanged from the 2008 Regulations, where it was numbered as § 293.8(d) and allows the Secretary to request documentation relevant to the decision-making process.

A commenter expressed support that the proposed rule included a requirement of a market analysis, or similar documentation, as part of the compact submission package for compacts that include revenue sharing in § 293.8(e). This would require compacting parties to prove actual benefits to Tribes.

The Department acknowledges the comment and notes concerning § 293.8(e).

A commenter expressed concern that the proposed rule contained a new requirement of a market analysis, or similar documentation, for compacts that include revenue sharing in § 293.8(e). The commenter stated this requirement creates unnecessary delay and expense.

The Department acknowledges the comment and notes that the requirement in § 293.8(e) of the final rule represents a codification of the existing Departmental practice of requiring a market analysis, or similar documentation, as part of the submission package for compacts or amendments that include revenue sharing provisions. The Department routinely requests this information through § 293.8(d) of the 2008 Regulations. The Department included in § 293.8(e) of the proposed rule a cross reference to § 293.28,[16] codifying the Department's longstanding rebuttable presumption that any revenue sharing provisions are a prohibited tax, fee, charge, or other assessment. The Department has long required evidence, including market studies or other documentation, that a State's meaningful concession provides a substantial economic benefit to the Tribe in a manner justifying the revenue sharing required by the compact.

Comments on § 293.9—Where should a compact or amendment or other requests under this part be submitted for review and approval?

A number of commenters support the proposed changes to § 293.9—especially the Department's proposal to accept electronic submissions. Commenters argue that electronic submissions will allow for increased efficiency and decreased processing times.

The Department acknowledges the comments.

Comments on § 293.10—How long will the Secretary take to review a compact or amendment?

Several commenters expressed support for the proposed changes to § 293.10.

The Department acknowledges the comments.

Comments on § 293.11—When will the 45-day timeline begin?

Several commenters expressed support for the inclusion of a requirement for the Department to provide an acknowledgment email for electronically submitted compacts in § 293.11 of the final rule and note that a confirmation email works well with the proposed changes to § 293.9.

The Department acknowledges the comments. The Department also notes that § 293.8(a) requires submission of at least one original paper copy of the fully executed compact if the compact or amendment was submitted electronically and the compact or amendment was executed utilizing "wet" or ink signatures.

Comments on § 293.12—What happens if the Secretary does not act on the compact or amendment within the 45-day review period?

Several commenters expressed support for the proposed changes made to § 293.12, including the codification of a letter informing the parties when a compact has gone into effect by operation of law, commonly referred to as "deemed approved letters." Commenters also expressed support for the routine inclusion of language discussing provisions that may be inconsistent with the Department's interpretation of IGRA in "deemed approved letters." Commenters also requested the Department increase the specificity included in "deemed approved letters," including identifying the provisions that the Department considers are in violation of IGRA, as well as an explanation of the Department's reasoning.

The Department acknowledges the comments and notes that the final rule,

consistent with the proposed rule, requires the Secretary to issue a ministerial letter informing the parties to the compact or amendment that it has gone into effect by operation of law. That letter may, at the Secretary's discretion, include guidance to the parties reflecting the Department's interpretation of IGRA.

Several commenters requested additional clarification on the potential uses of "deemed approved" letters, including if the deemed approved letter is "final agency action" and if the underlying compact would be ripe for litigation that challenges provisions the Department identifies in a "deemed approved letter." Commenters offered proposed regulatory language: "Accordingly, the signatory Tribe or State may subsequently challenge the non-compliant Compact provisions as unenforceable or severable from the Compact."

The Department acknowledges the comment. The Department declines to include the proposed language in the final rule. Under IGRA, the Department has 45 days to complete its review and either approve or disapprove a class III gaming compact. If the Department takes no action within that 45-day period, the Tribal-State gaming compact is considered approved by operation of law—to the extent that it is consistent with IGRA. The Department takes no position on whether a Tribe or a State may subsequently challenge any compact provisions as unenforceable or severable from the compact.

One commenter requested the timeline for issuing a deemed approved letter be shortened to 60 days and provided draft language to that effect.

The Department declines to shorten the timeframe and refers to the second sentence of § 293.12, which states that the Secretary will issue a letter informing the parties that the compact or amendment has been approved by operation of law after the 45th day and before the 90th day. The 60-day suggestion falls within this timeframe. The final rule at § 293.14(b) states that the notice of affirmative approval or approval by operation of law must be published in the **Federal Register** within 90 days from the date the compact or amendment is received by the Office of Indian Gaming.

Several commenters are concerned that the proposed § 293.12 conflicts with *Amador County* v. *Salazar,* 640 F.3d 373 (D.C. Circuit 2011), in which the D.C. Circuit held that IGRA requires the Secretary to disapprove compacts that violate IGRA. Commenters raised both policy and legal concerns with the Department's practice of permitting

---

[16] The Department notes proposed § 293.28 has been redesignated as § 293.29 in the final rule.

compacts with problematic provisions to be approved by operation of law.

The Department acknowledges the comments. Congress, through IGRA at 25 U.S.C. 2710(d)(8), provided the Secretary with time-limited authority to review a compact and discretionary disapproval authority. Within this limited review period, the Secretary may approve or disapprove a compact. IGRA further directs that if the Secretary does not approve or disapprove a compact within IGRA's 45-day review period, then the compact shall be considered to have been approved by the Secretary, but only to the extent the compact is consistent with the provisions of IGRA. 25 U.S.C. 2710(d)(8)(C). The Department notes that one Circuit has held that the Secretary must disapprove a compact if it is inconsistent with IGRA and thus, may not approve such compact by operation of law. *Amador County* v. *Salazar,* 640 F.3d 373, 381 (D.C. Cir. 2011). The Department also notes that the D.C. Circuit in *West Flagler Associates, Ltd.* v. *Haaland,* 71 F.4th 1059, 1067 (D.C. Cir. 2023), explained that its holding in *Amador County* was premised on the requirement under 25 U.S.C. 2710(d)(8)(A) that compacts govern gaming on *Indian lands.* In *Amador County,* the central, then-unanswered question at issue in the case was whether the gaming contemplated by the compact at issue would occur on property that qualified as "Indian lands" under IGRA. The D.C. Circuit found that the Secretarial disapproval was obligatory in this context because the particular statutory requirement that compacts govern gaming on Indian lands could not be satisfied. *West Flagler,* 71 F.4th at 1064.

Comments on § 293.13—Who can withdraw a compact or amendment after it has been received by the Secretary?

Several commenters expressed support for the proposed changes made to § 293.13.

The Department acknowledges the comments.

Comments on § 293.14—When does a compact or amendment take effect?

Several commenters expressed support for the proposed changes made to § 293.14.

The Department acknowledges the comments.

Comments on § 293.15—Is the Secretary required to disapprove a compact or amendment that violates IGRA?

Several commenters support the proposed § 293.15.

The Department acknowledges the comments and after further consideration and review of all comments, the Department declines to adopt proposed § 293.15 in the final rule.

Several commenters opposed the entirety of proposed § 293.15. Several commenters expressed concern that the proposed § 293.15 would permit compacts with unlawful provisions to go into effect by operation of law and limit the ability of the compacting parties to challenge the legality of such compacts.

The Department acknowledges the comments, and after further consideration, the Department declines to adopt proposed § 293.15 in the final rule.

One commenter requested the Department include in the final rule a non-exhaustive list of IGRA violations which would compel a disapproval.

The Department acknowledges the comments, and after further consideration, the Department declines to adopt proposed § 293.15 in the final rule.

Several commenters argued that *Amador County* held that the Department has an affirmative duty to disapprove illegal compacts and provided draft language to effect that duty. Commenters further noted that the Department's brief in *West Flagler* appeared to adopt the *Amador County* standard as binding on the Department, which appeared to conflict with the proposed § 293.15.

The Department acknowledges the comments, and after further consideration, the Department declines to adopt proposed § 293.15 in the final rule.

Comments on § 293.16—Which has been redesignated as § 293.15—When may the Secretary disapprove a compact or amendment?

The Department has redesignated proposed § 293.16 as § 293.15 in the final rule. Comments have been edited to reflect the new section number in the final rule.

Two commenters support the proposed changes made to § 293.15.

The Department acknowledges the comments.

One commenter requested clarifying language regarding the Secretary's ability to approve or disapprove compacts.

The Department acknowledges the comment, but notes this provision is consistent with Congress' grant of discretionary disapproval authority to the Secretary. 25 U.S.C. 2710(d)(8)(B)(iii). The Department notes

the proposed § 293.15(b) would clarify that if a compact submission package is missing the documents required by § 293.8 and the parties decline to cure the deficiency, the Secretary may conclude that the compact or amendment was not "entered into" by the Tribe and State as required by IGRA, 25 U.S.C. 2710(d)(1)(C), and will disapprove the compact or amendment on that basis. *See, e.g., Pueblo of Santa Ana* v. *Kelly,* 104 F.3d 1546, 1555 (10th Cir. 1997) (a compact or amendment must have been "validly entered into" before it can go into effect through Secretarial approval). The Department notes this is a change from an earlier practice of returning incomplete compact submission packages. The Department has reconsidered this practice so as to better fulfill Congress's goal of avoiding unnecessary delay in the Secretary's review process. If the Department cannot determine, based on the lack of documentation, that the compact was validly entered into by both the Tribe and the State, then approval—affirmative or by operation of law—exceeds the Secretary's authority.

Several commenters believe proposed § 293.15(b) is unnecessarily punitive unless the parties are provided a timely opportunity to cure deficiencies within the submission package or provide the Secretary with any missing documents. Several commenters offered draft regulatory text, including differing timeframes for submitting missing information or explaining why the required information was not submitted.

The Department acknowledges the comments and has accepted the revisions in part, changing § 293.15(b) of the final rule to state that if the documents required in § 293.8 are not submitted and the Department has informed the parties in writing of the missing documents, and provided the parties with an opportunity to supply those documents, the Secretary may conclude the compact or amendment was not validly entered into between the Tribe and the State and will disapprove the compact or amendment on those grounds.

Another commenter suggested an additional paragraph (c): "At any time after the compact or amendment is submitted, the tribal party may submit a written request to pause the 45-day deadline for the Secretary to make a decision for purposes of supplying any missing document(s). Effective the date such request is received by the Department, no more days toward the 45-day deadline will accrue until written request to resume the 45-day period is received from the tribal applicant."

**13240** **Federal Register** / Vol. 89, No. 35 / Wednesday, February 21, 2024 / Rules and Regulations

The Department declines to incorporate the suggested new paragraph (c) in § 293.16 of the final rule and notes that IGRA's 45-day review period cannot be tolled. If the Tribe or the State is unable to provide missing documents within the 45-day review period, the parties may withdraw the compact from Secretarial review under § 293.13, then resubmit the compact with the documents required under § 293.8.

Comments on Subpart D

Several commenters expressed opposition to the part 293 Rulemaking effort and requested the Department remove all substantive provisions in subpart D.

The Department acknowledges the comments but declines to remove the substantive provisions contained in subpart D.

Several commenters objected to the rulemaking effort, questioned the Secretary's authority to engage in rulemaking or provide substantive rules on the scope of Tribal-State gaming compacts. Commenters also questioned the Department's inclusion of evidence of "bad faith" or "violations of IGRA."

The Secretary has authority to promulgate regulations regarding the Department's procedures for the submission and review of compacts and amendments based on the statutory delegation of powers contained in IGRA and 25 U.S.C. 2 and 9. In enacting IGRA, Congress delegated authority to the Secretary to review compacts to ensure that they comply with IGRA, other provisions of Federal law that do not relate to jurisdiction over gaming on Indian lands, and the trust obligations of the United States. 25 U.S.C. 2710(d)(8)(B)(i)–(iii). IGRA establishes the parameters for topics that may be the subject of compact and amendment negotiations and included in compacts. Thus, in reviewing submitted compacts and amendments, the Secretary is vested with the authority to determine whether the compacts contain impermissible topics. The Department recognizes that section 2710(d)(7)(A)(i) of IGRA vests jurisdiction in district courts over "any cause[s] of action . . . arising from the failure of a State . . . to conduct [ ] negotiations in good faith." The district courts review of the negotiation process often includes reviewing if the negotiations have strayed beyond IGRA's limited list of permissible topics in a compact. The Secretary's review of a compact begins after the parties have executed the compact and necessarily includes reviewing if it contains terms that strayed beyond IGRA's limited list of

permissible topics in a compact. This overlap has resulted in a body of case law the Department has interpreted and incorporated into longstanding Departmental policies. Additionally, courts have looked to prior Departmental decisions, "deemed approved" letters, and policy statements to guide the courts review. Therefore, the Department has replaced the phrase "is considered evidence of bad faith" with the phrase "may be considered evidence of a violation of IGRA" in the final rule. This change harmonizes the Department's regulations with IGRA's plain language by enumerating the specific topics that are appropriately addressed in compacts. The Department's regulations also identify examples of impermissible topics that may be considered evidence of a violation of IGRA.

Several commenters argued that the Department's interpretation of 25 U.S.C. 2710(d)(3)(C) as an exclusive list of proper compact terms is improper, and that the Department's interpretation that 25 U.S.C. 2710(d)(3)(C)(vii) must be narrowly applied is not supported by IGRA or case law.

The Department acknowledges the comment and notes that the Department's longstanding interpretation of IGRA's list of permissible topics for compacts, located at 25 U.S.C. 2710(d)(3)(c), as exhaustive is consistent with prevailing caselaw. For example, the Ninth Circuit in *Chicken Ranch* stated: "IGRA, we made clear, does not permit the State and the [T]ribe to negotiate of any subjects the desire; rather, IGRA anticipates a very specific exchange of rights and obligations." [17]

Comments on § 293.17—Which has been redesignated as § 293.16—May a compact or amendment include provisions addressing the application of the Tribe's or the State's criminal and civil laws and regulations?

The Department has redesignated proposed § 293.17 as § 293.16 in the final rule. Comments have been edited to reflect the new section number in the final rule.

Many commenters expressed support for the proposed § 293.16.

The Department acknowledges the comments.

One commenter requested the Department strike the phrase "At the request of the Secretary pursuant to § 293.8(e)" from the second sentence of § 293.16. The commenter argued that

change would allow Tribal control over what State regulations apply.

The Department declines the proposed revision to § 293.16, which allows the Secretary to determine when additional information is needed during the Department's review and approval process.

Comments on § 293.18—Which has been redesignated as § 293.17—May a compact or amendment include provisions addressing the allocation of criminal and civil jurisdiction between the State and the Tribe?

The Department has redesignated proposed § 293.18 as § 293.17 in the final rule. Comments have been edited to reflect the new section number in the final rule.

Many commenters expressed support for the proposed § 293.17.

The Department acknowledges the comments.

One commenter would like the Department to add "reasonable" to § 293.17 describing criminal and civil jurisdiction between the State and the Tribe necessary for the enforcement of the laws and regulations described in § 293.16.

The Department declines to accept the recommendation to add the word "reasonable." This is not needed because the final rule at § 293.17 authorizes only those provisions "necessary for the enforcement of the laws and regulations described in § 293.16," which in turn requires that the "laws and regulations are "*directly related to and necessary for* the licensing and regulation of the gaming activity." (emphasis added).

Two commenters requested the Department clarify proposed §§ 293.16 and 293.17 to confirm that the Tribe and the State may agree, as a matter of contract, that the Tribe will adopt standards that are equivalent to State standards.

The Department acknowledges the comments and notes that neither IGRA, nor the Department's regulations, prohibit a Tribe from adopting standards that are equivalent to State standards. Additionally, the final rule in § 293.21, directly addresses a Tribe's adoption of standards equivalent or comparable to State standards.

Comments on § 293.19—Which has been redesignated as § 293.18—May a compact or amendment include provisions addressing the State's costs for regulating gaming activities?

The Department has redesignated proposed § 293.19 as § 293.18 in the final rule. Comments have been edited

[17] *Chicken Ranch Rancheria of Me-Wuk Indians* v. *Cal.*, 42 F.4th 1024, 1034 (9th Cir. 2022). Internal citations and quotations omitted.

to reflect the new section number in the final rule.

Several commenters stated the proposed rule contained a typographical error with the use of the word ''is'' in the final sentence of proposed § 293.18 and offered a conforming edit.

The Department has accepted the conforming edit to the last sentence of § 293.18 in the final rule, which now states that if the compact does not include requirements for the State to show actual and reasonable annual expenses for regulating the specific Tribe's gaming activity over the life of the compact, the lack of such requirement may be considered evidence of a violation of IGRA.

Several commenters would like the Department to require greater proof of the reasonableness of a State's regulatory costs. Commenters requested the Department include the additional language to § 293.18, requiring specific forms of proof of both the actual cost and the reasonableness of the cost during the life of the compact.

The Department acknowledges the comments but declines to require specific forms of proof of both actual cost and the reasonableness of the cost or to define or require proof of reasonableness. The Department reads IGRA's provision permitting the State to assess regulatory costs narrowly and as inherently limited to the negotiated allocation of regulatory jurisdiction. The final rule at § 293.18 allows Tribes and States flexibility to determine how the parties will incorporate IGRA's limits on a State's assessment of regulatory costs into a compact, including flexibility in negotiating the terms that determine how the State will show aggregate costs are actual and reasonable. Providing specific definitions would diminish the parties' flexibility in negotiating reasonable compact terms that best meet the needs of the parties.

Several commenters expressed concern with the Department's inclusion of reporting requirements in § 293.18. The commenters argued that requirement would make it difficult for States to recoup the cost of regulating class III gaming, particularly in States with multiple Tribes who operate differing numbers and sizes of gaming facilities.

The Department acknowledges the comment. The final rule at § 293.27 includes a discussion of the Department's interpretation of IGRA's prohibition against the imposition of a tax, fee, charge, or other assessment. IGRA provides that a compact may include provisions relating to ''the assessment by the State of [the Tribe's class III gaming activity] in such

amounts as are necessary to defray the costs of regulating [the Tribe's class III gaming activity].'' 25 U.S.C. 2710(d)(3)(C)(iii). In section 2710(d)(4), IGRA then prohibits the State from imposing a tax, fee, charge, or other assessment except for any assessments that may be agreed to under section 2710(d)(3)(C)(iii). The Department reads IGRA's provision permitting the State to assess regulatory costs narrowly and as inherently limited to the negotiated allocation of regulatory jurisdiction. Further, the Department has revised § 293.18 in the final rule to give the parties flexibility in negotiating the terms of a compact to determine how the State will show aggregate costs are actual and reasonable.

Comments on § 293.20—Which has been redesignated as § 293.19—May a compact or amendment include provisions addressing the Tribe's taxation of gaming?

The Department has redesignated proposed § 293.20 as § 293.19 in the final rule. Comments have been edited to reflect the new section number in the final rule.

Several commenters support the proposed § 293.19.

The Department acknowledges the comments.

Several commenters expressed concerns with the Department's inclusion of § 293.19 in the proposed rule and argued that States may begin demanding compact provisions addressing the taxation of Tribal gaming. Others requested the Department strike specific language referencing State tax rates. Another commenter requested the Department include a ''directly related'' nexus for Tribal tax equivalents.

The Department acknowledges the comments but declines to make the requested changes to § 293.19 in the final rule. IGRA provides that a compact may address Tribal taxation of Tribal class III gaming in amounts comparable to State taxation of State gaming. 25 U.S.C. 2710(d)(3)(C)(iv).

Comments on § 293.21—Which has been redesignated as § 293.20—May a compact or amendment include provisions addressing the resolution of disputes for breach of the compact?

A number of commenters expressed support for proposed § 293.20, especially regarding the opportunity for Tribes to submit dispute resolution documents, settlement agreements, or arbitration decisions they are concerned act to amend the terms of their compact.

The Department acknowledges the comments.

Several commenters expressed concerns with the scope of review under § 293.20 and questioned how those provisions may impact existing compacts.

The Department acknowledges the comments and notes that § 293.32(b) of the final rule clearly states that the final rule is prospective and does not alter prior Departmental decisions on compacts. Additionally, § 293.20 allows the Tribe to use the § 293.4 process, including requesting a determination from the Department under § 293.4(c), to determine if their dispute resolution agreement or other document amends or alters the compact from which the dispute arose, or addresses matters not directly related to the operation of gaming.

One commenter requested the Department include within § 293.20 a duty on the Secretary to disapprove any compact which provides that the only remedy for a breach of compact is suspension or termination of the compact. The commenter argued that compacts should be required to include reasonable notice of alleged breach of compact with opportunities to cure any alleged violations.

The Department acknowledges the comment but declines to include an affirmative duty to disapprove a compact in all instances. The Department is concerned that a mandate requiring the Secretary to affirmatively disapprove compacts that contain illusory remedies for breach of compact would narrow the discretion IGRA provides the Secretary to either approve or disapprove a compact within the prescribed 45-day review period. The Department also notes that many compacts include opportunities for parties to the compact to meet and discuss alleged breaches of compact and arrange reasonable timelines for either curing the breach or negotiating an amendment to the compact addressing the breach.

Several commenters suggested that the Department is acting beyond its authority in proposed § 293.20 by impermissibly interpreting IGRA and acting without authority to review any and all court orders between Tribes and States as if they are compact amendments. The commenters also argued the proposed § 293.20 violates the Federal Arbitration Act.

The Department acknowledges the comments but disagrees with the commenters' view of the reach of §§ 293.20 and 293.4. These provisions provide Tribes the opportunity to seek a determination from the Department of whether their dispute resolutions, settlement agreements, or arbitration

decisions amend their compact such that Secretarial review and approval is required. The Department has observed Tribes and States resolving compact disputes through agreements that act to amend or change the terms in the underlying compact. Further, the Federal Arbitration Act permits an arbitration award to be vacated where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award was not made. 9 U.S.C. 10(a)(4). When an arbitration award acts to amend or change a term in the underlying compact it necessarily triggers IGRA's Secretarial review and approval requirement prior to becoming effective or final.

*Comments on § 293.22—Which has been redesignated as § 293.21—May a compact or amendment include provisions addressing standards for the operation of gaming activity and maintenance of the gaming facility?*

The Department has redesignated proposed § 293.22 as § 293.21 in the final rule. Comments have been edited to reflect the new section number in the final rule.

A number of commenters expressed support for § 293.21 because it helps to specify what provisions may be included in a compact.

The Department acknowledges the comments.

One commenter requested the Department add the phrase "within gaming spaces" to proposed § 293.21. The commenter argued this edit would be consistent with other portions of the proposed rule and IGRA by distinguishing between the physical space where the "standards for the operation of gaming" may properly reach, and from the gaming facility spaces where the standards for maintenance and licensing may properly reach.

The Department acknowledges the comment and has added the suggested phrase "within gaming spaces" to § 293.21 in the final rule.

A commenter expressed concerns that § 293.21 may have unintended consequences by restricting provisions which a Tribe may consider germane and arising from the Tribe's conduct of gaming.

The Department acknowledges the comment and notes § 293.21 in the final rule requires evidence that the required standards are "both directly related to and necessary for the licensing and regulation of the gaming activity." The Department seeks to clarify and enforce the proper scope of compacts negotiated under IGRA while deferring to and

respecting a Tribe's sovereign decision making.

*Comments on § 293.23—Which has been redesignated as § 293.22—May a compact or amendment include provisions that are directly related to the operation of gaming activities?*

The Department has redesignated proposed § 293.23 as § 293.22 in the final rule. Comments have been edited to reflect the new section number in the final rule.

A number of commenters expressed support for proposed § 293.22, explaining §§ 293.22 and 293.23 will help limit State overreach into class III gaming.

The Department acknowledges the comments.

One commenter requested that the proposed § 293.22 be struck as unnecessary.

The Department declines to strike the proposed § 293.22 from the final rule. The Department notes that the proposed § 293.22 was added in response to comments received during the Tribal consultation process. The final rule further clarifies, consistent with the holding of *West Flagler Associates., Ltd.* v. *Haaland,* 71 F.4th 1059 (D.C. Cir. 2023), that "directly related" activities may include activities that occur off Indian lands.

*Comments on § 293.24—Which has been redesignated as § 293.23—What factors will be used to determine whether provisions in a compact or amendment are directly related to the operation of gaming activities?*

The Department has redesignated proposed § 293.24 as § 293.23 in the final rule. Comments have been edited to reflect the new section number in the final rule.

A number of commenters expressed support for § 293.23 and applauded revisions the Department included in response to comments received during Tribal consultation. Commenters noted that the provisions would codify the Department's longstanding "direct connection test," which was found persuasive by the Ninth Circuit in *Chicken Ranch,* 42 F.4th at 1036. Commenters also stated that the proposed § 293.23 would help Tribes and States understand the limits that IGRA imposes on Tribal-State gaming compacts.

The Department acknowledges the comments.

A commenter requested the Department revise proposed § 293.23(a) by adding the phrase "within gaming spaces" for consistency with other provisions in the proposed rule.

The Department acknowledges the comment but declines to include the proposed revision, which would create a logical conflict with § 293.23(a)(2) which addresses the transportation of gaming devices and equipment.

Several commenters expressed concern that, as drafted, the proposed § 293.23 could be construed to prohibit provisions addressing the collective bargaining rights of employees of a Tribal gaming facility. The commenters argued such an interpretation of the regulations conflicts with existing Ninth Circuit caselaw, citing to *Coyote Valley II* [18] and the Biden Administration's stated policies in Executive Order 14025. One commenter requested the Department include clarifying language in § 293.23 and offered proposed regulatory text.

The Department acknowledges the comments and has included a new provision § 293.24 addressing rights of employees. The proposed regulations codify existing case law, including *Coyote Valley II,* [19] *Rincon,* [20] and *Chicken Ranch.* [21] These cases collectively recognize that a compact can include provisions addressing labor relations for employees, including service and hospitality workers (such as food and beverage, housekeeping, cleaning, bell and door services, and laundry employees) of the gaming facility or at a facility whose only significant purpose is to facilitate patronage at the gaming facility because gaming activities could not operate without someone performing those jobs and thus the labor is directly related to gaming activities and inseparable from gaming itself. Additionally, Tribes and Unions may negotiate labor relations agreements or labor relations ordinances outside of a compact. In light of this body of caselaw, in this labor-relations context only, gaming compacts may include provisions addressing labor relations, or the process for reaching a labor relations agreement, although portions of these provisions or processes may include labor activities performed beyond the physical areas where class III gaming actually takes place. Nothing in these regulations alters Unions' existing ability to negotiate labor relations agreements with Tribes or to advocate for Tribes to pass Tribal labor

---

[18] *In re Indian Gaming Related Cases (Coyote Valley II),* 331 F.3d 1094 (9th Cir. 2003).

[19] *In re Indian Gaming Related Cases (Coyote Valley II),* 331 F.3d 1094 (9th Cir. 2003).

[20] *Rincon Band of Luiseno Mission Indians* v. *Schwarzenegger,* 602 F.3d 1019, 1038–39 (9th Cir. 2010).

[21] *Chicken Ranch Rancheria of Me-Wuk Indians* v. *California,* 42 F.4th 1024 (9th Cir. 2022).

relations laws outside of the compacting process.

One commenter expressed concern that, as drafted, the proposed § 293.23(b) could be construed to prohibit provisions addressing employee licensing and back of house security requirements for non-gaming business and amenities which in some instances may be necessary due to proximity to gaming spaces and gaming facility design.

The Department acknowledges the comment and has included a new provision § 293.25 in the final rule clarifying that a compact may include provisions addressing employee licensing. The Department notes the National Indian Gaming Commission's regulations at 25 CFR part 556 and part 558 set minimum standards for background investigations and suitability determinations for tribally-issued licenses. The final rule includes a reference to these minimum standards as a baseline for employee background investigations and licenses issued pursuant to a compact to allow flexibility in the compact negotiation process while ensuring appropriate vetting and licensing of employees.

Several commenters requested the Department make typographical and stylistic edits to proposed § 293.23(c) to improve readability of the rule.

The Department acknowledges the comments and has accepted some of the proposed revisions in the final rule.

A commenter requested the Department clarify if the Department will defer to Tribes' sovereign decision making and negotiations when applying § 293.23. The commenter requested the Department include the phrase "the Department may consider" to § 293.23(c) and the phrase "and the department will defer to the Tribe regarding whether a direct connection exists" in § 293.23(d).

The Department acknowledges the comment but declines to accept the proposed language in the final rule.

Several commenters expressed concerns that proposed § 293.23(c)(1) could be misconstrued to limit or prohibit Statewide compacting schemes or compacts with "most favored nation" provisions. A commenter offered draft language to clarify the intended reach of § 293.23(c)(1).

The Department acknowledges the comments and has made a clarifying edit to § 293.23(c)(1) in the final rule, which states, "Expressly limiting third party Tribes' rights to conduct gaming activities under IGRA." The Department has consistently distinguished compacts with Statewide gaming market regulatory schemes from compacts

which limit third party Tribes' rights under IGRA. In both Michigan and Arizona, the States and the Tribes negotiated mutually beneficial agreements addressing the location and size of Tribal gaming as part of a Statewide scheme. These and similar compacts included Tribe-to-Tribe revenue sharing provisions to offset market disparities between urban and rural Tribes. These compacts are identical across the State or contain identical relevant provisions. The Department has consistently found these types of agreements consistent with IGRA.[22]

These are contrasted with compacts which act to prevent a Tribe who is not party to either the compact or the broader Statewide scheme from exercising its full rights to conduct gaming under IGRA, most notably in the form of geographic exclusivity from Tribal competition. The Department has consistently expressed concern with these types of arrangements, and in some cases disapproved compacts containing such provisions.[23] The

<hr>

[22] *See, e.g.,* Letter from Ada Deer, Assistant Secretary—Indian Affairs to Jeff Parker, Chairperson, Bay Mills Indian Community dated November 19, 1993, approving the 1993 Michigan Compact; Letter from Bryan Newland, Principal Deputy Assistant Secretary—Indian Affairs, to Robert Miguel, Chairman Ak-Chin Indian Community, dated May 21, 2021, at 2, discussing the Tribe-to-Tribe revenue sharing and gaming device leasing provisions.

[23] *See, e.g.,* Letter from Gale Norton, Secretary of the Interior, to Cyrus Schindler, Nation President, Seneca Nation of Indians dated November 12, 2002, discussing the limits placed on Tonawanda Band and the Tuscarora Nation in the Seneca Nation's exclusivity provisions, and describing such provisions as "anathema to the basic notion of fairness in competition and . . . inconsistent with the goals of IGRA"; Letter from Aurene Martin, Assistant Secretary—Indian Affairs (acting), to Harold "Gus" Frank, Chairman, Forest County Potawatomi Community, dated April 25, 2003, addressing the parties removal of section XXXI.B which created a 50 mile 'no fly zone' around the Tribe's Menominee Valley facility and explained "we find a provision excluding other Indian gaming anathema to basic notions of fairness in competition and inconsistent with the goals of IGRA"; Letter from Aurene Martin, Assistant Secretary—Indian Affairs (acting), to Troy Swallow, President, Ho-Chunk Nation, dated August 15, 2003, addressing section XXVII(B), limiting the Governor's ability to concur in a two-part Secretarial Determination under section 20(b)(1)(A) of IGRA for another Tribe as "repugnant to the spirit of IGRA"; Letter from Kevin Washburn, Assistant Secretary—Indian Affairs, to Harold Frank, Chairman, Forest County Potawatomi Community dated January 9, 2013, disapproving an amendment which would have made the Menominee Tribe guarantee Potawatomi's Menominee Valley facility profits as a condition of the Governor's concurrence for Menominee's Kenosha two-part Secretarial Determination, *affirmed by Forest Cty. Potawatomi Cmty.* v. *United States,* 330 F. Supp. 3d 269 (D.D.C. 2018). *See also* Letter from Bryan Newland, Assistant Secretary—Indian Affairs to Claudia Gonzales, Chairwoman, Picayune Rancheria of Chukchansi Indian of California, dated November 5, 2021, at 13.

Department has not limited this provision in the final rule to strictly "anti-compete" or "geographic exclusivity from Tribal competition." The final rule at § 293.23(c)(1) provides the Secretary flexibility when evaluating other provisions which may also improperly limit a third-party Tribe's rights under IGRA.

A commenter questioned the legality and public policy rationale of protecting third-party Tribes while not offering similar protections to State-licensed commercial gaming operators.

The Department acknowledges the comment and notes Tribal gaming under IGRA is a critical source of revenue for Tribal governments. The compact negotiation process in IGRA envisions a negotiation between two sovereigns over gaming on Indian lands and therefore does not directly address provisions a State seeks to institute regarding non-Indian gaming. The final rule at § 293.27 addresses when it is appropriate for a compact to include revenue sharing provisions through which a State may also receive a source of governmental revenue. We note that the expansion of State lotteries and State licensed commercial gaming can place Tribes and States in direct competition for market share.

A commenter requested the Department revise proposed § 293.23(c)(5) to clarify that any intergovernmental agreements containing provisions that are not directly related to the Tribe's gaming activities are not enforceable through a compact.

The Department acknowledges the comment but declines to include the requested language in § 293.23(c)(5) of the final rule. The Department notes § 293.30 provides a grandfather clause for compacts previously approved by the Department. Compacts that were approved by operation of law, also known as "deemed approved" compacts, are approved only to the extent they are consistent with IGRA. 25 U.S.C. 2710(d)(8)(C). The Department takes no position on whether a Tribe or a State may subsequently challenge compact provisions as unenforceable or severable from the compact.

A number of commenters offered differing opinions on whether regulations should allow, require, or prevent tort claims from being heard in State courts. Some commenters noted the proposed § 293.23(c)(7) was consistent with case law, citing to *Pueblo of Santa Ana* v. *Nash,* 972 F. Supp. 2d 1254 (D.N.M. 2013). Other commenters requested the Department defer to a Tribe's sovereign decision making and amend § 293.23(c)(7) to

allow for Tribes to request tort claims be heard in State court. Other commenters requested the Department revise § 293.23(c)(7) to effectively prohibit the inclusion of provisions addressing tort claims from compacts, arguing that such provisions can be overly burdensome on Tribes, while noting that the resolution of tort claims is not absolutely necessary for the licensing and regulation of gaming. Commenters offered proposed edits to § 293.23(c)(7) reflecting their stances on tort claims.

The Department acknowledges the comments and notes that these comments highlight the sensitive nature of provisions addressing tort claims in compacts. The Department declined to revise § 293.23(c)(7) in the final rule.

A commenter requested the Department revise proposed § 293.23(c)(8) to include provisions that would regulate conduct outside of the gaming spaces in addition to non-gaming Tribal economic development.

The Department has revised § 293.23(c)(8) in the final rule to reflect the proposed revision.

Several commenters requested the Department clarify in proposed § 293.23(c)(9) that class I and class II gaming are subject to the jurisdiction of Tribes and the United States at the exclusion of the States. Commenters offered draft language.

The Department acknowledges the comments but declines to accept the proposed language. The Department notes that IGRA at section 2710(a)(1) provides that class I gaming on Indian lands is within the exclusive jurisdiction of the Tribe and is not subject to the provisions of IGRA. IGRA further provides that class II gaming is subject to the jurisdiction of the Tribe and the National Indian Gaming Commission.

Comments on § 293.29—Which has been redesignated as § 293.26—May a compact or amendment include provisions addressing Statewide remote wagering or internet gaming?

The Department has redesignated proposed § 293.29 as § 293.26 in the final rule. Comments have been edited to reflect the new section number in the final rule.

Several commenters requested the Department clarify, either in the final rule or in the preamble, that players who are located on a Tribe's Indian land must comply with IGRA when initiating an i-gaming wager. The commenters noted that not all States or commercial i-gaming operators are properly mapping and geo-fencing Indian lands within the State, which could result in a player inadvertently violating IGRA

and other Federal laws by initiating a wager from the Indian lands of a Tribe who has not authorized the placement of such wagers.

The Department acknowledges the comments and encourages Tribes who are concerned that i-gaming wagers are being improperly initiated on their lands and being accepted off their lands to report concerns to the Secretary and the Department of Justice. In order for an i-gaming wager to be legally received on a Tribe's land, the wager must comply with both IGRA and other Federal laws, including the Unlawful internet Gambling Enforcement Act. 31 U.S.C. 5361–67 (UIGEA). The UIGEA requires that wagers must be legal both where they are initiated and where they are received. *See, e.g., State of Cal.* v. *Iipay Nation of Santa Ysabel,* 898 F.3d 960, 965 (9th Cir. 2018) (internal quotations omitted).

Several commenters requested the Department provide some flexibility to the requirement in proposed § 293.26(c) that the player initiating the wager not be located on another Tribe's land. The commenters noted that such flexibility may result in agreements between Tribes, through which novel solutions may emerge that allow for more Tribes to benefit from i-gaming.

The Department acknowledges the comments and has revised § 293.26(c) in the final rule to allow for wagers to be initiated on another Tribe's Indian lands if the Tribe has provided lawful consent. The Department also notes this is consistent with the UIGEA's exemption for Intratribal Transactions at 31 U.S.C. 5362(10)(C).

Several commenters requested the Department amend proposed § 293.26 to clarify that if a State allows any person, organization, or entity to engage in statewide mobile gaming for any purpose, the State is required under IGRA to negotiate with Tribes in the State to offer statewide mobile gaming, even if the State is unwilling to allocate its jurisdiction over wagers made by patrons located off of Indian lands to the Tribes. The commenters offered draft language for inclusion in proposed § 293.26.

The Department acknowledges the comments but declines to include the requested language in the final rule. Consistent with the D.C. Circuit's 2023 decision in *West Flagler Associates, Ltd.* v. *Haaland,* 71 F.4th 1059 (D.C. Cir. 2023), a compact may include provisions addressing regulatory issues concerning statewide mobile wagering provided that State law authorizes the portion of the wagering transaction occurring off of Indian lands. The Secretary, however, does not have the

authority to unilaterally require a State to allocate jurisdiction over wagers made by patrons located off Indian lands in the State.

Many commenters support the inclusion of proposed § 293.26, especially in the rapidly changing digital world. However, many commenters argued Tribes already have the authority to conduct online gaming without the language proposed § 293.26. Some commenters requested the Department include language in the proposed § 293.26 to reflect that pre-existing authority.

The Department acknowledges the comments. The final rule incorporates and codifies existing Departmental practice and, where relevant, existing case law. Consistent with the D.C. Circuit's 2023 decision in *West Flagler Associates, Ltd.* v. *Haaland,* 71 F.4th 1059 (D.C. Cir. 2023), a compact may include provisions addressing regulatory issues concerning statewide mobile wagering provided that State law authorizes the portion of the wager transaction occurring off of Indian lands.

Many non-Tribal organizations expressed deep concern about proposed § 293.26. These comments state that the Department has no authority to implement proposed § 293.26 under *Chevron* or the major questions doctrine, and that this provision illegally expands Indian gaming statewide and off-reservation.

The Department acknowledges the comments. The final rule incorporates and codifies existing Departmental practice and, where relevant, existing case law. Consistent with the D.C. Circuit's 2023 decision in *West Flagler Associates, Ltd.* v. *Haaland,* 71 F.4th 1059 (D.C. Cir. 2023), a compact may include provisions addressing regulatory issues concerning statewide mobile wagering provided that State law authorizes the portion of the wager transaction occurring off of Indian lands.

Comments on § 293.25—Which has been redesignated as § 293.27—What factors will the Secretary analyze to determine if revenue sharing is lawful?

The Department has redesignated proposed § 293.25 as § 293.27 in the final rule. Comments have been edited to reflect the new section number in the final rule.

Several commenters expressed support for the proposed § 293.27, and note it appears to codify existing Departmental practice while incorporating Tribal consultation comments.

The Department acknowledges the comments.

Several commenters expressed concern that § 293.27 is overly restrictive and may result in incentivizing direct competition from State lotteries and State licensed commercial gaming.

The Department acknowledges the comments and notes the final rule in § 293.27 codifies the Department's longstanding test for evaluating revenue sharing. IGRA prohibits a State from seeking to impose any tax, fee, charge, or other assessments on a Tribe's conduct of gaming. The final rule in § 293.27 addresses when it is appropriate for a compact to include revenue sharing provisions through which a State may also receive a source of governmental revenue. Alternatively, States may choose to license and tax commercial gaming operations within the State. We note the expansion of State lotteries and State licensed commercial gaming can place Tribes and States in direct competition for market share.

Several commenters requested the Department include examples of previously approved "meaningful concessions," similar to the lists found in § 293.23.

The Department acknowledges the comments and notes these comments highlight the sensitive nature of revenue sharing in compacts. The Department declines to include a list of meaningful concessions as both the concession and the revenue sharing rate must be evaluated on a case-by-case basis. The Department has previously approved revenue sharing in exchange for meaningful concessions, including geographic exclusivity from State-licensed gaming and statewide mobile or i-gaming exclusivity.[24] The Department cautions parties not to negotiate for a future meaningful concession which may require intervening Federal or State actions as that concession may be considered illusory.

A commenter requested carve out language for payments to local governments. The commenter argued that payments to local governments are consistent with IGRA's restrictions on the use of net gaming revenue in section 2710(b)(2)(B). The commenter argued Intergovernmental Agreements that include revenue sharing with local governments are beneficial to the relationship between the Tribe and local governments and help support critical needs of both governments. The commenter offered draft language establishing a test for such payments:

• In considering whether a compact provision providing for the Tribe's payment of gaming revenues to local governments is permissible, the Department may consider evidence submitted, at the insistence of the Tribe, that such a provision:

○ was created voluntarily by the Tribe;

○ is in exchange for benefits received by the Tribe; and/or

○ to offset the costs borne by such local governments as a result of the Tribe conducting its gaming activities.

The Department acknowledges the comment. The Department declines to accept the proposed regulatory text as it may result in unintended consequences. The Department notes the proposed test is consistent with past Departmental review and approval of revenue sharing provisions that included payments to local governments. The Department also notes intergovernmental agreements between Tribes and States, or local governments can be beneficial; however, Congress provided a narrow scope of topics Tribes and States may include when negotiating a Tribal-State gaming compact. IGRA limits a Tribe's use of gaming revenue to: funding Tribal governmental operations or programs; providing for the general welfare of the Tribe and its members; promoting Tribal economic development; donating to charitable organizations; or helping fund operations of local governmental agencies. 25 U.S.C. 2710(b)(2)(B). However, IGRA in section 2710(d)(4) prohibits the State or its political subdivisions from imposing a tax, fee, charge, or other assessment. The Department reads section 2710(b)(2)(B) of IGRA to permit a Tribe to voluntarily help fund operations of local governmental agencies, not as an end-run around the prohibition against imposed taxes, fees, charges, or other assessments in section 2710(d)(4). The Department included payments to local governments in §§ 293.4, 293.8, 293.27, and 293.29, of the final rule in an effort to address mandated intergovernmental agreements which may disguise improper taxes.

Several commenters requested the Department clarify, either in the regulatory text or the preamble, that exclusivity provisions which contain enforceable remedial provisions (also referred to as "poison pill" provisions) triggered by State action are considered directly related to gaming and permitted under IGRA.

The Department acknowledges the comments and notes that revenue sharing for geographic or game specific exclusivity from State sponsored or State licensed commercial gaming without enforceable remedial provisions can be considered illusory.[25] The Department notes the "poison pill" provision must also comply with § 293.23(c)(1).

A commenter requested the Department cease its practice of approving "exclusivity compacts," which limit commercial gaming operators' access to some gaming markets.

The Department acknowledges the comment and notes Tribal gaming under IGRA is a critical source of revenue for Tribal Governments. The compact negotiation process in IGRA envisions a negotiation between two sovereigns. IGRA prohibits a State from seeking to impose any tax, fee, charge, or other assessments on a Tribes conduct of gaming. The final rule in § 293.27 addresses when it is appropriate for a compact to include revenue sharing provisions through which a State may also receive a source of governmental revenue. Alternatively, States may choose to license and tax commercial gaming operations within the State. We note the expansion of State lotteries and State licensed commercial gaming can place Tribes and States in direct competition for market share.

A commenter requested that the Department define the term "projected revenue" because most compacts with revenue sharing call for the State to receive a percentage of gross revenue regardless of the costs required to develop, maintain, and regulate gaming activities. The commenter also asks the Department to analyze the need to distinguish "gross revenue" from "net revenue." Another commenter requested the Department address "free play" and "point play" as part of the revenue calculation in the regulations.

The Department acknowledges the comment but declines to define the terms or include a discussion of "free" or "point" play in the regulations in order to retain some flexibility in what evidence can be submitted. The IGRA sets a benchmark that requires the Tribe

---

[24] *See, e.g.,* Letter from Bryan Newland, Assistant Secretary—Indian Affairs to the Honorable R. James Gessner, Jr., Chairman, Mohegan Tribe of Indians dated September 10, 2021, approving the Tribe's compact amendment with the State of Connecticut; and Letter from Bryan Newland, Assistant Secretary—Indian Affairs to the Honorable Rodney Butler, Chairman, Mashantucket Pequot Indian Tribe dated September 10, 2021, approving the Tribe's amendment to its Secretarial Procedures, as amended in agreement with the State of Connecticut.

[25] *See, e.g.,* Letter from Kevin Foley, Assistant Secretary—Indian Affairs to the Honorable George E. Pataki, Governor of New York, disapproving the Tribal-State Compact between the State of New York and the St. Regis Mohawk Tribe dated July 26, 2000.

receive at least 60 percent of net revenue. The National Indian Gaming Commission relies on Sole Proprietary Interest and IGRA section 2710(b)(2)(A), consistent with sections 2710(b)(4)(B)(III) and 2711(c), which collectively require that the Tribe receive at least 60 percent of net revenue. *See, e.g.,* NIGC Bulletin No. 2021–6. Section 293.27(b)(3) reinforces this requirement and set an upper limit for revenue sharing. The National Indian Gaming Commission's regulations at 25 CFR 514.4(c) provide guidance on revenue calculation.

One commenter requested the Department clarify if there is a difference between "great scrutiny" and "strict scrutiny."

The Department acknowledges the comment. The Department's description of its review of revenue sharing provisions has evolved over time. Some of the Department's early revenue sharing decisions stated, "the Department has sharply limited the circumstances" of revenue sharing; that phrasing was replaced with "great scrutiny," which is the standard adopted in these regulations.[26]

One commenter requested adding language to allow Tribes to request guidance from the Secretary regarding revenue sharing terms during the life of the compact to ensure the Tribe remains the primary beneficiary of gaming. The commenter provided draft language, which included adding several paragraphs to § 293.27. The proposed additional language would provide a process for Tribes to request guidance letters, including a formal legal opinion regarding revenue sharing during the life of the compact. The Department acknowledges the comments but declines to include the requested provisions in the final rule. The Department has long expressed concern with relatively high revenue sharing arrangements, often permitting compacts containing them to go into effect by operation of law while occasionally disapproving them. The Department's understanding of revenue sharing provisions, as well as exclusivity provisions, has evolved consistent with case law and experiences of Tribes operating under differing revenue sharing provisions for more than 30 years. The Department has

long offered, and will continue to offer, technical assistance—highlighting the Department's precedents as well as observed best practices—to parties negotiating revenue sharing provisions. The Department notes that best practices include careful drafting of both the terms of the Tribe's exclusivity—or other meaningful concession—along with remedies for breach and triggers for periodic renegotiation of specific provisions.

A commenter requested the Department include carve out language for Tribe-to-Tribe revenue sharing but did not provide proposed regulatory text.

The Department acknowledges the comment but declines to include a specific carveout for Tribe-to-Tribe revenue sharing. The Department notes there are several existing examples of compacts which contain a Statewide gaming market regulatory scheme and include Tribe-to-Tribe revenue sharing provisions to offset market disparities between urban and rural Tribes. These compacts are identical across the State or contain identical relevant provisions. The Department has consistently found these types of agreements consistent with IGRA.[27]

**Comments on § 293.26—Which has been redesignated as § 293.28—May a compact or extension include provisions that limit the duration of the compact?**

The Department has redesignated proposed § 293.26 as § 293.28 in the final rule. Comments have been edited to reflect the new section number in the final rule.

Many commenters expressed support for the proposed § 293.28—especially regarding the Department's preference for long-term compacts. The commenters noted compact negotiations are a time and resource intensive effort.

The Department acknowledges the comments.

Several commenters requested the Department define "long-term" and offered suggested minimum terms ranging from 15–20 years.

The Department declines to define what a "long-term" compact is because that may have unintended consequences.

Other commenters requested the Department allow flexibility for compacts with "stacked renewal terms," which allow the compact to automatically renew for a defined period of time if neither party objects. Commenters also requested the Department include flexibility for reopener provisions.

The Department acknowledges the comments and notes that § 293.28 allows flexibility for "stacked renewal terms" or other duration provisions which meet the needs of the parties. The Department notes that a best practice includes triggers for periodic renegotiation of specific provisions, including adding games, adjusting for technological changes, and market conditions.

A commenter believes that proposed § 293.28 will needlessly limit compact negotiations, arguing that the proposed § 293.28 is inconsistent with prior affirmative approvals of compacts with fixed termination dates.

The Department acknowledges the comment and notes § 293.28 in the final rule allows for compacts with fixed termination dates. The Department notes the compact negotiation process can be lengthy and often requires a significant investment of resources.

A commenter requested the Department clarify that the existence of a compact between a Tribe and the State does not alleviate the State's obligation under IGRA to negotiate new compacts or amendments in good faith at the request of the Tribe, particularly for a period of time not covered by the existing compact.

The Department acknowledges the comments. The Department notes IGRA at 25 U.S.C. 2710(d)(3)(A) obligates a State to negotiate with a Tribe in good faith at the request of the Tribe. The existence of a compact does not absolve the State of its duty under IGRA.

**Comments on Proposed § 293.27—May a compact or amendment permit a Tribe to engage in any form of class III gaming activity?**

Several commenters expressed support for the proposed § 293.27. Commenters noted that the proposed § 293.27 is consistent with existing case law, citing to *Mashantucket Pequot Tribe* v. *Connecticut,* 913 F. 2d 1024 (2d Cir. 1990), which the commenter described as holding that Congress intended to codify the test set out in *California* v. *Cabazon Band of Mission Indians,* 480 U.S. 202 (1987). According to these commenters, the Second Circuit concluded in the *Mashantucket Pequot* case that when Congress used the phrase "permits such gaming" in IGRA,

[26] *See, e.g.,* Letter from Gale Norton, Secretary of the Interior, to Cyrus Schindler, Nation President, Seneca Nation of Indians dated November 12, 2002, at 3; *and* Letter from Gale Norton, Secretary of the Interior, to Christobal "Chris" Severs, Chairperson, Pauma Band of Luiseno Mission Indians dated August 20, 2004, at 2; *see also,* Letter from Larry Echo Hawk, Assistant Secretary—Indian Affairs to Sherry Treppa, Chairperson, Habematolel Pomo of Upper Lake dated August 17, 2010.

[27] *See, e.g.,* Letter from Ada Deer, Assistant Secretary—Indian Affairs to Jeff Parker, Chairperson, Bay Mills Indian Community dated November 19, 1993, approving the 1993 Michigan Compact; Letter from Bryan Newland, Principal Deputy Assistant Secretary—Indian Affairs, to Robert Miguel, Chairman Ak-Chin Indian Community, dated May 21, 2021, at 2, discussing the Tribe-to-Tribe revenue sharing and gaming device leasing provisions.

Congress categorically refers to class III gaming. Commenters also opined this rule would benefit Tribes during compact negotiations.

The Department acknowledges the comments and, after further consideration and review of all comments, the Department declines to adopt § 293.27 in the final rule.

Several commenters request that the Department provide additional analysis of the Department's interpretation of conflicting caselaw to bolster proposed § 293.27 against expected litigation.

The Department acknowledges the comments, and after further consideration, the Department declines to adopt proposed § 293.27 in the final rule.

Several commenters are concerned the proposed § 293.27 would take away States' power to limit class III gaming. Commenters argued that a State's allowance of charitable casino nights should not necessarily result in full blown casino gambling under IGRA. Others misconstrued the proposed § 293.27 as requiring a State to negotiate over forms of gaming expressly prohibited by State law. Commenters also noted proposed § 293.27 conflicts with some caselaw, citing to *Rumsey Indian Rancheria of Wintun Indians* v. *Wilson,* 64 F. 3d 1250 (9th Cir. 1994) and *Cheyenne River Sioux Tribe* v. *South Dakota,* 3 F. 3d 273 (8th Cir. 1993).

The Department acknowledges the comments, and after further consideration, the Department declines to adopt proposed § 293.27 in the final rule.

One commenter argued that the proposed § 293.27 impermissibly expands the scope of the Secretary's review of a compact to include the compact negotiation process. The Department acknowledges the comments, and after further consideration, the Department declines to adopt proposed § 293.27 in the final rule.

**Comments on § 293.28—Which has been redesignated as § 293.29—May any other contract outside of a compact regulate Indian gaming?**

The Department has redesignated proposed § 293.28 as § 293.29 in the final rule. Comments have been edited to reflect the new section number in the final rule.

Several commenters expressed support for proposed § 293.29. Commenters requested that the Department include internal cross references to § 293.4 and § 293.8, as well

as make clarifying edits for consistency across the proposed rule.

The Department acknowledges the comments and has made edits for clarity and consistency in the final rule and has included in § 293.29 cross references to § 293.4 and § 293.8.

One commenter requested clarity as to what agreements the Department may consider as regulating gaming, thus triggering § 293.29. The commenter also requested the Department clarify that agreements addressing public health and safety are allowable as either a separate agreement, or as part of the compact.

The Department acknowledges the comment. The final rule in §§ 293.4, 293.8, and 293.29 provide guidance on what types of agreements the Department is addressing. IGRA establishes a limited scope of appropriate topics in a Tribal-State gaming compact. Thus, in reviewing submitted compacts and amendments, the Secretary is vested with the authority to determine whether the compacts contain topics outside IGRA's limited scope. Agreements that do not regulate gaming do not need to be submitted to the Department for approval as part of a Tribal-State gaming compact. Likewise, agreements between Tribes and the State and/or local governments that facilitate cooperation and good governance, but that do not regulate gaming, limit a Tribe's use and enjoyment of its lands, or require payment of gaming revenue to local governments, should not be incorporated into or referenced as a requirement of a Tribal-State gaming compact.

Several commenters objected to proposed § 293.29 and argued that it exceeds the Secretary's authority to review compacts under IGRA. The commenters argue that many Tribes have intergovernmental agreements with local governments that address a wide range of topics which may affect a Tribe's gaming operation. The commenters argue that such agreements should not be subject to Secretarial Review as compacts or amendments under IGRA.

The Department acknowledges the comments and notes that § 293.29 has been revised to clarify that only agreements between Tribes and States, or States' political subdivisions, which govern gaming and include payments from gaming revenue, are covered by this section. In enacting IGRA, Congress delegated authority to the Secretary to review compacts and ensure that they comply with IGRA, other provisions of Federal law that do not relate to jurisdiction over gaming on Indian

lands, and the trust obligations of the United States. 25 U.S.C. 2710(d)(8)(B)(i)–(iii). IGRA establishes a limited scope of appropriate topics in a Tribal-State gaming compact. Thus, in reviewing submitted compacts and amendments, the Secretary is vested with the authority to determine whether the compacts contain topics outside IGRA's limited scope. IGRA limits a Tribe's use of gaming revenue to: funding Tribal governmental operations or programs; providing for the general welfare of the Tribe and its members; promoting Tribal economic development; donating to charitable organizations; or helping fund operations of local governmental agencies. 25 U.S.C. 2710(b)(2)(B). However, IGRA in section 2710(d)(4) prohibits the State or its political subdivisions from imposing a tax, fee, charge, or other assessment. The Department reads section 2710(b)(2)(B) to permit a Tribe to voluntarily help fund operations of local governmental agencies, not as an end-run around the prohibition against imposed taxes, fees, charges, or other assessments in section 2710(d)(4). Agreements that do not regulate gaming do not need to be submitted to the Department for approval as part of a Tribal-State gaming compact. Likewise, agreements between Tribes and the State and/or local governments that facilitate cooperation and good governance, but that do not regulate gaming or require payment of gaming revenue to local governments, should not be incorporated into or referenced as a requirement of a Tribal-State gaming compact.

**Comments on § 293.30—What effect does this part have on pending requests, final agency decisions already issued, and future requests?**

Several commenters expressed support for proposed § 293.30.

The Department acknowledges the comments.

A commenter requested that this regulation include a grandfather clause for currently valid compacts.

The Department acknowledges the comment and notes the final rule in § 293.30(b) contains a grandfather clause and states that part 293 does not alter final agency decisions made pursuant to this part before March 22, 2024.

**Comments on § 293.31—How does the Paperwork Reduction Act affect this part?**

No comments were submitted regarding proposed § 293.30.

## General Comments Not Otherwise Addressed Above

Various commenters requested more time to comment on the regulations.

The Department acknowledges the comment and notes that the Department issued a Dear Tribal Leaders letter with an attached Consultation Draft of Proposed Changes to part 293 on March 28, 2022. The letter and Consultation Draft were made publicly available on the Department's website at *https:// www.bia.gov/as-ia/oig*. The Department then held two listening sessions, four formal consultation sessions, and accepted written comments until June 30, 2022. The Department incorporated Tribal feedback into the proposed rule and included a summary and responded to comments received during Tribal Consultation in the Department's Notice of proposed rulemaking. Additionally, the Department published a follow up Dear Tribal Leaders letter on December 6, 2022, held two virtual consultation sessions and one in-person consultation, and accepted written comments until March 1, 2023. The Department received written and verbal comments from over 56 entities during the public comment period on part 293. Commenters included members of Congress; Tribal, State, and local governments; Tribal and commercial gaming industry organizations; and individual citizens. In total, the submissions were separated into 607 individual comments.

Many Tribes commented to express appreciation for the hard work and consideration exhibited in the Notice of proposed rulemaking. Many Tribes also stated the Proposed Regulations are a step in the right direction, but do not go far enough to protect Tribal sovereignty and Indian gaming.

The Department acknowledges the comments.

Some non-Tribal commenters commented to discourage any allowance of Indian gaming.

The Department acknowledges the comments and notes IGRA provides statutory limits on Tribes' sovereign right to conduct gaming.

One commenter requested the Department publish a gaming handbook.

The Department is in the process of finalizing a handbook addressing the Department's part 292 regulations (25 CFR part 292), which implement IGRA's exceptions to its general prohibition on the conduct of gaming on lands acquired in trust after October 17, 1988, and revisions to the fee-to-trust regulations in part 151. The Department's part 292 regulations were promulgated in 2008 and are not impacted by this rule making or the Department's part 151 rulemaking.

Several commenters stated the process was not transparent and that Tribes received unfair special treatment. They suggest releasing detailed records of Tribal comments from June 2022. Some commenters asked if the Department had engaged with commercial gaming interests in addition to Tribal governments during the development of the proposed rule.

The Department followed the procedures outlined in the Administrative Procedure Act at 5 U.S.C. 553, 556, and 557, as well as relevant White House, Congressional, and Departmental policies on Tribal consultations. The Department's part 293 regulations address the Tribal-State gaming compact review and approval process. The Department's Notice of proposed rulemaking contained a detailed summary and response to comments received during the Tribal Consultation process. The Department also posted a copy of the Tribal Consultation materials on the BIA's public Tribal-Consultations website, including a copy of the Dear Tribal Leader Letter, consultation dates, and transcripts of the consultation sessions. *See https://www.bia.gov/service/tribal-consultations/nprm-25-cfr-151-land-acquisitions-and-25-cfr-293-class-iii-tribal.*

One commenter requested a process for Tribes to seek Department of Justice intervention as part of a *Seminole* fix.

The Department declines to adopt a formal codification of its practice of providing technical assistance to Tribes and States. The Department will continue to coordinate with the Department of Justice and the National Indian Gaming Commission regarding enforcement of IGRA.

Some Tribes believe that the proposed changes to part 293 will be hollow without changes to part 291.

The Department notes that a minority of Federal circuits have invalidated the Department's part 291 regulations (25 CFR part 291), which were promulgated to provide Tribes with Secretarial Procedures in response to the Supreme Court's decision in *Seminole Tribe of Florida* v. *Florida,* 517 U.S. 44 (1996), which found that Congress lacked the authority to subject States to suits by Indian Tribes under IGRA. The Department is considering all avenues, including technical amendments to part 291. The proposed rule reflects the Department's efforts to ensure all Tribes benefit from the goals of IGRA, while enforcing IGRA's limited scope of compacts. The inclusion of clear guidance and codification of key tests is a step in this direction. The Department declines to codify a formal process by which Tribes may submit evidence of bad faith in negotiations to the Department for its consideration and referral to the Department of Justice. The Department has long coordinated with the Department of Justice and the National Indian Gaming Commission regarding enforcement or non-enforcement of IGRA's requirement that a Tribe conduct class III gaming pursuant to a compact or secretarial procedures. *See, e.g.,* Statement of Indian Gaming in New Mexico, DOJ 95–459 (August 28, 1995); Statement of Indian Gaming in New Mexico, DOJ 95–553 (October 27, 1995); and Justice Department and California announce plan for orderly transition to legal Indian Gaming, DOJ 98–102 (March 6, 1998). The Department will continue to coordinate with the Department of Justice and the National Indian Gaming Commission regarding enforcement of IGRA.

Some non-Tribal commenters believe the Department has failed to conduct a detailed review of the economic effects of the proposed rule despite being required to conduct one under the law. Additionally, these commenters believe a NEPA analysis must be undertaken before adopting a final rule.

The Department acknowledges the comments and notes that the final rule codifies existing case law and Departmental process. The Department notes comments suggesting specific economic impacts of the proposed rule contained material misrepresentations of the effect of the proposed rule and conflated the Department's part 293 rulemaking with the Department's part 151 fee-to-trust rulemaking efforts as part of the assessment of economic impacts of the rule (25 CFR part 151). The Department also notes that the notice of proposed rulemaking addressed the Department's compliance with NEPA.

One commenter believes the Department is asserting too much authority in a way that challenges Tribal sovereignty.

The Department acknowledges the comment and notes that the Department strives to strengthen its government-to-government relationship with Tribes and recognizes their right to self-governance and Tribal sovereignty.

Several commenters asked various process and implementation questions. Other commenters included comments addressing the Department's part 151 fee-to-trust rulemaking efforts.

The Department addressed the comments on the proposed 25 CFR part 151 in the part 151 rulemaking

published December 12, 2023, at 88 FR 86222.

## V. Summary of Changes by Section

The Department primarily proposed technical amendments to the existing process-based regulations, including the title. The proposed technical amendments are intended to clarify the submission and review process and conforming edits for internal consistency and improved readability. The Department also proposed to add 15 sections addressing substantive issues and to organize part 293 into 4 subparts. The Department proposed to amend the title of part 293 by removing the word ''process'' from the title to read: ''Part 293 Class III Tribal State Gaming Compacts.'' The Department's proposed amendments incorporated comments on the Consultation Draft that were received during Tribal consultation and were discussed in the notice of proposed rulemaking. The Department makes these changes in the final rule. The final rule incorporates comments received during the public comment period and during Tribal consultation on the proposed rule, and as discussed above in the summary and response to comments section.

### A. Subpart A—General Provisions and Scope

The Department proposed to organize part 293 into 4 subparts with subpart A, titled ''General Provisions and Scope'' containing §§ 293.1 through 293.5. The Department implements this organizational change in the final rule.

### Amendments to § 293.1—What is the purpose of this part?

The Department proposed technical amendments to clarify that the proposed part 293 regulations contain both procedural and substantive regulations for the submission and review of Tribal-State gaming compacts. The Department implements this change in the final rule with additional clarifying edits to improve readability.

### Amendments to § 293.2—How are key terms defined in this part?

The Department proposed restructuring the existing § 293.2 by removing the subsection paragraph for the introductory sentence and editing that sentence for clarity. The restructuring improves clarity by using subsection paragraphs for each defined term. The Department proposed edits to the existing definitions for *Amendment, Compact* or *Tribal-State Gaming Compact,* and *Extension* to improve clarity and respond to comments received during the government-to-

government Tribal consultation process. The Department also proposed seven new definitions: *gaming activity* or *gaming activities, gaming facility, gaming spaces, IGRA, meaningful concession, substantial economic benefit,* and *Tribe.* The Department implements these changes in the final rule with additional clarifying edits in response to comments received during the public comment period. Each defined term is discussed below:

• *Amendment* is a defined term in the 2008 Regulations. The Department proposed a clarifying revision to the definition, as well as adding a new § 293.2(a)(2) addressing agreements between a Tribe and a State to change the Tribe's Secretarial Procedures prescribed under 25 U.S.C. 2710(d)(7)(B)(vii). The Department implements these changes in the final rule.

• *Compact* or *Tribal-State Gaming Compact* is a defined term in the 2008 Regulations. The Department proposed clarifying and conforming edits to the definition. The Department implements these changes in the final rule.

• *Extension* is a defined term in the 2008 Regulations. The Department proposed clarifying and conforming edits to the definition. The Department implements these changes in the final rule.

• *Gaming activity* or *gaming activities* are interchangeable terms repeatedly used in IGRA, but not defined by IGRA or the Department's 2008 Regulations. The Department proposed defining these terms as used in part 293 and in Tribal-State gaming compacts as, ''the conduct of class III gaming involving the three required elements of chance, consideration, and prize.'' The Department includes this definition in the final rule.

• *Gaming Facility* is a term used in IGRA at 25 U.S.C. 2710(d)(3)(C)(vi) but is not defined by IGRA. The IGRA permits a compact to include ''standards for the operation of such activity and maintenance of the gaming facility, including licensing.'' As a result, compacting parties have occasionally used this provision to extend State regulatory standards beyond the maintenance and licensing of the physical structure where the Tribe is conducting gaming. The Department proposed defining *gaming facility* as ''the physical building or structure situated on Indian lands where the gaming activity occurs.'' [28] This

definition of *gaming facility* addresses building maintenance and licensing under the second clause of 25 U.S.C. 2710(d)(3)(C)(vi) and is intended to be narrowly applied to only the building or structure where the gaming activity occurs. The Department includes this definition in the final rule.

• *Gaming spaces* is a term that the Department has used to clarify the physical spaces a compact may regulate. The Department proposed defining *Gaming Spaces* in the proposed rule and notes that proposed definition contained a typographical error. The Department includes *Gaming Spaces* as a defined term in the final rule with edits to correct the typographical error.

• *IGRA* is the commonly used acronym for the Indian Gaming Regulatory Act of 1988 (Pub. L. 100–497) 102 Stat. 2467 dated October 17, 1988, (Codified at 25 U.S.C. 2701–2721 (1988)) and any amendments. The Department proposed including *IGRA* as a defined term to facilitate consistency and readability in the regulations. The Department includes this definition in the final rule.

• *Meaningful concession* is a term that the Department has adopted from Ninth Circuit case law as part of the Department's long-standing test for revenue sharing provisions. The Department proposed including *meaningful concession* as a defined term. The Department includes *meaningful concession* as a defined term. The Department revised the definition of *meaningful concession* in § 293.2(h)(2) of the final rule by adding the word ''activity'' in response to comments received on the proposed rule. The final rule defines *Meaningful concession* as:

○ Something of value to the Tribe;
○ Directly related to gaming activity;
○ Something that carries out the purposes of IGRA; and
○ Not a subject over which a State is otherwise obligated to negotiate under IGRA.

• *Substantial economic benefit* is a term that the Department has adopted from Ninth Circuit case law as part of the Department's long-standing test for revenue sharing provisions. The Department proposed (and includes in the final rule) defining *substantial economic benefit* as:

○ A beneficial impact to the Tribe;
○ Resulting from a meaningful concession;
○ Made with a Tribe's economic circumstances in mind;
○ Spans the life of the compact; and

---

[28] *See, e.g.,* Letter to the Honorable Peter S. Yucupicio, Chairman, Pascua Yaqui Tribe of Arizona, from the Director, Office of Indian Gaming, dated June 15, 2012, at 5, and fn. 9, discussing the

American Recovery & Reinvestment Act of 2009 and the IRS's ''safe harbor'' language.

○ Demonstrated by an economic/market analysis or similar documentation submitted by the Tribe or the State.

• *Tribe* is a term the Department proposed as a defined term to facilitate consistency and readability in the regulations. The Department includes this definition in the final rule.

Amendments to § 293.3—What authority does the Secretary have to approve or disapprove compacts and amendments?

The Department proposed clarifying and conforming edits to the existing § 293.3. The Department implements these changes in the final rule and has added the phrase "under IGRA" to the first sentence of § 293.3.

Amendments to § 293.4—Are compacts and amendments subject to review and approval?

The Department proposed clarifying edits to the existing § 293.4 by combining paragraphs (a) and (b) from the 2008 Regulations into a new paragraph (a), adding a new paragraph (b) which was proposed during Tribal consultation, and adding a new paragraph (c) which creates a process by which the parties may seek a determination if an agreement or other documentation is a "compact or amendment" without submitting that agreement for review and approval pursuant to IGRA. This process is modeled on the National Indian Gaming Commission's practice of issuing declination letters for agreements which do not trigger the Chairman's review and approval of management contracts as required by IGRA at 25 U.S.C. 2711.

The Department implements these changes in the final rule with additional clarifying edits in response to comments received during the public comment period. These revisions include changes to the sentence structure in § 293.4(b)(1) through (4) for improved clarity including duplicative phrasing and starting each subsection sentence with a verb, and revisions to § 293.4(c) to clarify when the 30-day review period begins. The Department has also revised the timeline for a § 293.4(c) determination from 60 days to 30 days in response to comments received, and for consistency with 25 CFR 84.005, which implements the Departments review of "section 81" contracts. The Department has also included a clarification that if an agreement is determined to be a compact or amendment, it must be resubmitted for Secretarial review and approval.

Amendments to § 293.5—Are extensions to compacts subject to review and approval?

The Department proposed clarifying and conforming edits for consistency and readability to the existing § 293.5. The Department also proposed adding a sentence which codifies the Department's long-standing practice that notice of an extension must be published in the **Federal Register** to be in effect.[29] The Department implements these changes in the final rule with a conforming edit to the citation to § 293.8(a) through (c).

*B. Proposed Subpart B—Submission of Tribal-State Gaming Compacts*

The Department proposed to organize part 293 into 4 subparts with subpart B, titled "Submission of Tribal-State Gaming Compacts" containing §§ 293.6 through 293.9. The Department implements this organizational change in the final rule.

Amendments to § 293.6—Who can submit a compact or amendment?

The Department proposed a conforming edit for consistency to § 293.6. The Department implements this change in the final rule.

Amendments to § 293.7—When should the Tribe or State submit a compact or amendment for review and approval?

The Department proposed conforming edits for consistency to both the heading and the body of § 293.7. The Department implements these changes in the final rule.

Amendments to § 293.8—What documents must be submitted with a compact or amendment?

The Department proposed conforming edits for consistency to § 293.8. Additionally, the Department proposed to renumber the existing paragraphs and add a new paragraph (d). The proposed paragraph (d) clarifies that a compact submission package should include any agreements between the Tribe and the State, or its political subdivisions, which are required by the compact or amendment and either involve payments made by the Tribe from gaming revenue, or restricts or regulates the Tribe's use and enjoyment of its Indian lands, as well as any ancillary agreements, documents, ordinances, or laws required by the compact which the Tribe determines is relevant to the Secretary's review. The Department's review of the compact includes analyzing if the provision(s) requiring

[29] *See, e.g.,* final rule, 25 CFR part 293, 73 FR 74004, 74007 (Dec. 5, 2008).

ancillary agreements, documents, ordinances, or laws violate IGRA or other Federal law because the underlying agreement includes provisions prohibited by IGRA, and therefore the Secretary may disapprove the compact.

The Department incorporates the proposed changes to § 293.8 with additional clarifying and conforming edits in the final rule.

Amendments to § 293.9—Where should a compact or amendment be submitted for review and approval?

The Department proposed conforming edits for consistency to § 293.9 and a proposed new sentence to permit electronic submission of compacts. The Office of Indian Gaming will accept and date stamp electronic submissions for the purpose of initiating the 45-day review period. The first copy of a compact or amendment that is received and date stamped initiates the 45-day review period. The Department notes, however, that § 293.8(a) requires submission of at least one original paper copy of the fully executed compact or amendment if the compact or amendment was submitted electronically and the compact or amendment was executed utilizing "wet" or ink signatures. The Department will accept digitally signed original copies provided digital signatures are consistent with applicable Tribal and State law. The Department implements these changes in the final rule.

*C. Proposed Subpart C—Secretarial Review of Tribal-State Gaming Compacts*

The Department proposed to organize part 293 into 4 subparts with subpart C, titled "Secretarial Review of Tribal-State Gaming Compacts" containing §§ 293.10 through 293.16. The proposed change included renumbering the existing § 293.14 *When may the Secretary disapprove a compact or amendment?* as § 293.16; renumbering and renaming the existing § 293.15 *When does an approved or considered-to-have-been-approved compact or amendment take effect?* as § 293.14 *When does a compact or amendment take effect?;* and adding a new § 293.15 *Is the Secretary required to disapprove a compact or amendment that violates IGRA?.* The Department implements these organizational changes in the final rule. The Department after further consideration declines to adopt proposed § 293.15 in the final rule. The existing § 293.14 *When may the Secretary disapprove a compact or amendment?* is redesignated as § 293.15 in the final rule.

Amendments to § 293.10—How long will the Secretary take to review a compact or amendment?

The Department proposed a conforming edit to § 293.10 for consistency. The Department implements this change in the final rule.

Amendments to § 293.11—When will the 45-day timeline begin?

The Department proposed conforming edits to § 293.11 for consistency with proposed changes to § 293.9, and a new sentence providing the Department will provide an email acknowledgement to the Tribe and the State of receipt and provide the date of the 45th day for electronically submitted compacts or amendments. The Department implements these changes, along with clarifying edits to § 293.11, in the final rule.

Amendments to § 293.12—What happens if the Secretary does not act on the compact or amendment within the 45-day review period?

The Department proposed clarifying edits to § 293.12 for consistency and readability. Additionally, the Department proposed a new provision codifying the Department's practice of issuing ministerial letters that inform the parties that the compact or amendment has been approved by operation of law after the 45th day. The proposed § 293.12, also codifies the Department's practice of occasionally including guidance to the parties, reflecting the Department's interpretation of IGRA—also known as "Deemed Approved" Letters. The Department implements these changes in the final rule.

Amendments to § 293.13—Who can withdraw a compact or amendment after it has been received by the Secretary?

The Department proposed conforming edits to § 293.13 for consistency. The Department implements these changes in the final rule.

Amendments to § 293.14—When does a compact or amendment that is affirmatively approved or approved by operation of law take effect?

The Department proposed redesignating the existing § 293.15 as § 293.14 to improve overall organization of the regulations. The Department also proposed clarifying and conforming edits for consistency and readability to both the heading and the body of § 293.14. The Department implements these changes in the final rule.

§ 293.15—When may the Secretary disapprove a compact or amendment?

The Department proposed redesignating and restructuring the existing § 293.14 as § 293.16 to improve the overall organization of the regulations, for the reasons stated above it is designated as § 293.15 in the final rule. Additionally, the Department proposed to renumber the existing paragraphs and add a new paragraph (b). The proposed paragraph (b) would clarify that if a compact submission package is missing the documents required by § 293.8 and the parties decline to cure the deficiency, the Secretary may conclude that the compact or amendment was not "entered into" by the Tribe and State as required by IGRA, 25 U.S.C. 2710(d)(1)(C) and will disapprove the compact or amendment on that basis. *See, e.g.,* *Pueblo of Santa Ana* v. *Kelly,* 104 F.3d 1546, 1555 (10th Cir. 1997) (a compact or amendment must have been "validly entered into" before it can go into effect through Secretarial approval). The Department notes this is a change from an earlier practice of "returning" incomplete compact submission packages. The Department has reconsidered this practice so as to better fulfill Congress's goal of avoiding unnecessary delay in the Secretary's review process. If the Department cannot determine, based on the lack of documentation, that the compact was validly entered into, then approval—affirmative or by operation of law—exceeds the Secretary's authority. The Department implements these changes in the final rule, and in response to comments received has added clarifying language stating it provided the parties with an opportunity to supply those documents, the Secretary may conclude the compact or amendment was not validly entered into between the Tribe and the State and will disapprove the compact or amendment on those grounds.

*D. Proposed Subpart D—Scope of Tribal-State Gaming Compacts*

The Department proposed to organize part 293 into 4 subparts with subpart D, titled "Scope of Tribal-State Gaming Compacts" containing §§ 293.17 through 293.31. The Department proposed substantive provisions that address the appropriate scope of a compact under IGRA. These provisions continue the question-and-answer approach utilized in the existing regulations. These provisions codify existing Departmental practice and provide compacting parties with clear guidance on the appropriate scope of compact negotiations. The Department implements this organizational change, and consistent with the proposed rule, codifies the new substantive provisions in the final rule. These provisions are renumbered in the final rule consistent with the removal of § 293.15.

In response to comments received on the proposed rule, the Department has added two new sections in the final rule. The first is numbered § 293.24 and addresses rights of employees. The second is numbered § 293.25 and addresses licensing of employees. The Department also redesignated proposed § 293.29 as § 293.26. Proposed §§ 293.25 and 293.26 have been redesignated in the final rule as §§ 293.27 and 293.28 respectively. The Department after further consideration declines to adopt proposed § 293.27 in the final rule. Proposed § 293.28 has been redesignated in the final rule as § 2 93.29. Proposed §§ 293.30 and 293.31 retain these section numbers in the final rule. The Department makes this organizational change so that two provisions courts have determined are "directly related to the operation of gaming activities" are positioned with the Department's other sections addressing 25 U.S.C. 2710(d)(3)(C)(vii). The new § 293.24 titled "May a compact or amendment include provisions addressing rights of employees?" codifies case law and the Department's precedent that a compact may include provisions addressing rights of employees that have a direct connection to the operation of gaming activity. The new § 293.25 titled "May a compact or amendment include provisions addressing employee licensing?" clarifies, consistent with IGRA and the National Indian Gaming Commission's regulations, that compacts may include provisions addressing employee licensing. The redesignated § 293.26 titled "May a compact or amendment include provisions addressing Statewide remote wagering or internet gaming?" consistent with *West Flagler,* codifies the Department's positions that the negotiation between a Tribe and State over Statewide remote wagering or i-gaming falls under these broad categories of criminal and civil jurisdiction and is inherently related to the operation of gaming.

§ 293.16—May a compact include provisions addressing the application of the Tribe's or State's criminal and civil laws and regulations?

The Department has redesignated proposed § 293.17 as § 293.16 in the final rule for the reasons explained above in the summary of changes to

subpart D. This summary reflects the final rule section number.

The Department proposed a new § 293.16, clarifying the appropriate scope of terms that address the application of the criminal and civil laws and regulations in a compact. Congress, through IGRA at 25 U.S.C. 2710(d)(3)(C)(i), provided that, to the extent permitted by law, a compact may include provisions addressing the application of criminal and civil laws and regulations of the Tribe or the State that are directly related to, and necessary for, the licensing and regulation of the gaming activity. The Department codifies § 293.16 in the final rule with an edit to the reference to § 293.8 for constancy with revisions made to that section.

§ 293.17—May a compact include provisions addressing the allocation of criminal and civil jurisdiction between the Tribe and the State?

The Department has redesignated proposed § 293.18 as § 293.17 in the final rule for the reasons explained above in the summary of changes to subpart D. This summary reflects the final rule section number.

The Department proposed a new § 293.17, clarifying the appropriate scope of terms addressing the allocation of Tribal and State criminal and civil jurisdiction in a compact. Congress, through IGRA at 25 U.S.C. 2701(5), found that "[T]ribes have the exclusive right to regulate gaming activity on Indian lands if the gaming activity is not specifically prohibited by Federal law and is conducted within a State which does not, as a matter of criminal law and public policy, prohibit such gaming activity." Congress then provided that a compact may include provisions addressing the allocation of criminal and civil jurisdiction between the Tribe and the State that are necessary for the enforcement of laws and regulations described in section 2710(d)(3)(C)(ii). We note that a compact or compact amendment may not, however, alter otherwise applicable Federal law. The Department codifies § 293.17 in the final rule with conforming edits to the title and text for consistency with other provisions in part 293.

§ 293.18—May a compact include provisions addressing the State's costs for regulating gaming activities?

The Department has redesignated proposed § 293.19 as § 293.18 in the final rule for the reasons explained above in the summary of changes to subpart D. This summary reflects the final rule section number.

The Department proposed a new § 293.18, clarifying the appropriate scope of assessments by the State to defray the costs of regulating the Tribe's gaming activity. Congress, through IGRA at 25 U.S.C. 2710(d)(3)(C)(iii), provided that a compact may include provisions relating to the assessment by the State of the gaming activity in amounts necessary to defray the costs of regulating the gaming activity. Congress, through IGRA at 25 U.S.C. 2710(d)(4), clarified that any assessments must be negotiated, and at no point may a State or its political subdivisions impose any taxes, fees, charges, or other assessments upon a Tribe through the compact negotiations. The Department's proposed new section clarifies that the compact should include requirements for the State to show actual and reasonable expenses over the life of the compact, and that the absence of such provisions may be considered evidence of a violation of IGRA. The Department codifies § 293.18 in the final rule, and in response to comments received has added the phrase "the lack of such a requirement shall be" to the final sentence of § 293.18.

§ 293.19—May a compact include provisions addressing the Tribe's taxation of gaming?

The Department has redesignated proposed § 293.20 as § 293.19 in the final rule for the reasons explained above in the summary of changes to subpart D. This summary reflects the final rule section number.

The Department proposed a new § 293.19 clarifying the appropriate scope of provisions that address a Tribe's taxation of tribally licensed gaming activity. Congress, through IGRA at 25 U.S.C. 2710(d)(3)(C)(iv), provided that a compact may include provisions relating to the Tribe's taxation of gaming activities in amounts comparable to the State's taxation of gambling. A Tribal-State gaming compact may not be used to address the Tribe's taxation of other activities that may occur within or near the Tribe's gaming facility. The inclusion of provisions addressing the Tribe's taxation of other activities may be considered evidence of a violation of IGRA. The Department codifies § 293.19 in the final rule with a conforming edit.

§ 293.20—May a compact or amendment include provisions addressing the resolution of disputes for breach of the compact?

The Department has redesignated proposed § 293.21 as § 293.20 in the final rule for the reasons explained above in the summary of changes to

subpart D. This summary reflects the final rule section number.

The Department proposed a new § 293.20, clarifying the appropriate scope of provisions addressing remedies for breach of the compact. Congress, through IGRA at 25 U.S.C. 2710(d)(3)(C)(v), provided that a compact may include provisions relating to remedies for breach of contract. Compacts often include alternative dispute resolution, including binding arbitration, as part of the parties' remedies for allegations of breach of contract. Despite the Department's existing regulations clarifying that compacts and all amendments are subject to Secretarial review, some compacting parties have resolved disputes in manners which seek to avoid Secretarial review. The Department proposed § 293.20 to clarify that any dispute resolution agreement, arbitration award, settlement agreement, or other resolution of a dispute outside of Federal court must be submitted for review and approval by the Secretary. Further, the Department § 293.20 references the § 293.4 determination process for review, prior to a formal submission of a dispute resolution agreement as an amendment. The inclusion of provisions addressing dispute resolution in a manner that seeks to avoid the Secretary's review may be considered evidence of a violation of IGRA. The Department codifies § 293.20 in the final rule.

§ 293.21—May a compact or amendment include provisions addressing standards for the operation of gaming activity and maintenance of the gaming facility?

The Department has redesignated proposed § 293.22 as § 293.21 in the final rule for the reasons explained above in the summary of changes to subpart D. This summary reflects the final rule section number.

The Department proposed a new § 293.21, clarifying the appropriate scope of provisions addressing the Tribe's standards for the operation of the gaming activity, as well as the Tribe's standards for the maintenance of the gaming facility, including licensing in a compact. Congress, through IGRA at 25 U.S.C. 2710(d)(3)(C)(vi), provided that a compact may include provisions relating to standards for the operation of such activity and maintenance of the gaming facility, including licensing. The Department interprets section 2710(d)(3)(C)(vi) narrowly and as two separate clauses addressing separate Tribal and State interests. First, a compact may include provisions addressing the standards for the operation and licensing of the gaming

activity. Second, a compact may include provisions addressing the maintenance and licensing of the gaming facility building or structure. The final rule in § 293.2 includes definitions of both *gaming facility* and *gaming spaces* to provide parties with clarity regarding the appropriate limits of a State's oversight under IGRA. Any compact provisions addressing the maintenance and licensing of a building or structure must be limited to the building or structure situated on Indian lands where the gaming activity occurs—the *gaming facility*. Further, if a compact or amendment mandates that the Tribe adopt standards equivalent or comparable to the standards set forth in a State law or regulation, the parties must show that these mandated Tribal standards are both directly related to and necessary for the licensing and regulation of the gaming activity. The Department codifies § 293.21 in the final rule, and in response to comments received, has added the phrase ''within gaming spaces'' to the second sentence.

§ 293.22—May a compact or amendment include provisions that are directly related to the operation of gaming activities?

The Department has redesignated proposed § 293.23 as § 293.22 in the final rule for the reasons explained above in the summary of changes to subpart D. This summary reflects the final rule section number.

The Department proposed a new § 293.22, clarifying that a compact may include provisions that are directly related to the operation of gaming activities. Congress, through IGRA at 25 U.S.C. 2710(d)(3)(C)(vii), provided that a compact may include provisions relating to any other subjects that are directly related to the operation of gaming activities, including activities occurring off Indian lands. The Department also proposed a new § 293.23, codifying the Department's longstanding narrow interpretation of section 2710(d)(3)(C)(vi). The Department codifies § 293.22 in the final rule.

§ 293.23—What factors will be used to determine whether provisions in a compact or amendment are directly related to the operation of gaming activities?

The Department has redesignated proposed § 293.24 as § 293.23 in the final rule for the reasons explained above in the summary of changes to subpart D. This summary reflects the final rule section number.

The Department proposed a new § 293.23, codifying existing case law

and the Department's longstanding narrow interpretation of section 2710(d)(3)(C)(vi) of IGRA as requiring a ''direct connection.'' The Department notes that the Ninth Circuit in *Chicken Ranch* found the Department's longstanding direct connection test persuasive and consistent with the Court's own independent analysis of IGRA and case law. The proposed § 293.23 provides compacting parties with examples of provisions which have a direct connection to the Tribe's conduct of class III gaming activities, as well as examples the Department has found that do not satisfy the direct connection test. The Department codifies § 293.23 in the final rule, and in response to comments received has made some clarifying edits.

§ 293.24—May a compact or amendment include provisions addressing the rights of employees?

In response to comments received on the proposed rule, the Department has added a new § 293.24, which addresses organizational and representational rights of employees in the final rule. This provision continues the question-and-answer approach utilized in the existing regulations and the remainder of the final rule. The new § 293.24 titled ''May a compact or amendment include provisions addressing the rights of employees?'' The text of § 293.24 states that, yes, notwithstanding § 293.23(c)(8), a compact or amendment may include provisions or procedures addressing the organizational and representational rights of employees, including service or hospitality workers, where such provisions or procedures are ''directly related'' to the operation of gaming activities as articulated by the Ninth Circuit in *Chicken Ranch Rancheria of Me-Wuk Indians* v. *California,* 42 F.4th 1024, 1035–1040 & n.2 (*Coyote Valley Band of Pomo Indians* v. *California (In re Indian Gaming Related Cases Chemehuevi Indian Tribe),* 331 F.3d 1094, 1116 (9th Cir. 2003)). The Department notes this provision codifies case law that a compact may include provisions addressing organizational and representational rights of employees.

§ 293.25—May a compact or amendment include provisions addressing employee licensing?

In response to comments received on the proposed rule, the Department has added a new § 293.25, which addresses standards for employee licensing. The Department notes the National Indian Gaming Commission's regulations at 25 CFR part 556 and part 558 set minimum standards for background investigations

and suitability determinations for tribally issued licenses. The final rule includes a reference to these minimum standards as a baseline for employee background investigations and licenses issued pursuant to a compact to allow flexibility in the compact negotiation process while ensuring appropriate vetting and licensing of employees.

§ 293.26—May a compact or amendment include provisions addressing Statewide remote wagering or internet gaming?

The Department has redesignated proposed § 293.29 as § 293.26 in the final rule for the reasons explained above in the summary of changes to subpart D. This summary reflects the final rule section number.

The Department proposed a new § 293.26, which clarifies that a compact may include provisions allocating jurisdiction to address Statewide remote wagering or internet gaming. The IGRA provides that a Tribe and State may negotiate for ''the application of the criminal and civil laws and regulations of the Indian Tribe or the State that are directly related to, and necessary for, the licensing and regulation of such activity'' and ''the allocation of criminal and civil jurisdiction between the State and the Indian Tribe necessary for the enforcement of such laws and regulations.'' 25 U.S.C. 2710(d)(3)(c)(i)–(ii). The IGRA also provides that a Tribe and State may negotiate over ''any other subjects that are directly related to the operation of gaming activities.'' 25 U.S.C. 2710(d)(3)(c)(vii). The Department's position, consistent with the D.C. Circuit's decision in *West Flagler Associates, Ltd.* v. *Haaland,* 71 F. 4th 1059 (D.C. Cir. 2023), is that Tribes and States may negotiate, consistent with IGRA and other Federal law, over how wagers placed outside Indian land within a State and received by a Tribe on Indian lands are treated for purposes of State and Tribal law, and how regulation of such activity is allocated between Tribes and States. Such topics fall under these broad categories of criminal and civil jurisdiction and such wagering is inherently directly related to the operation of gaming. Accordingly, provided that a player is not physically located on another Tribe's Indian lands, a Tribe should have the opportunity to engage in this type of gaming pursuant to a Tribal-State gaming compact. The Department notes that the ultimate legality of gaming activity occurring off Indian lands remains a question of State law, notwithstanding that a compact discusses the activity. However, in enacting IGRA, Congress did not contemplate the Department would

address or resolve complex issues of State law during the 45-day review period,[30] and such issues are outside the scope of the Secretary's review. *West Flagler,* 71 F. 4th at 1065. Further, non-IGRA Federal law may also place restrictions on that activity. The Department codifies § 293.26 in the final rule, with edits for consistency with *West Flagler,* and, in response to comments, includes the phrase ''unless that Tribe has lawfully consented'' to paragraph (c).

§ 293.27—What factors will the Secretary analyze to determine if revenue sharing is lawful?

The Department has redesignated proposed § 293.25 as § 293.27 in the final rule. This summary reflects the final rule section number.

The Department proposed a new § 293.27, clarifying the appropriate scope of provisions addressing revenue sharing. Congress, through IGRA at 25 U.C.S. 2710 (d)(4), prohibited States from seeking to impose any tax, fee, charge, or other assessment upon an Indian Tribe or upon any other person or entity authorized by an Indian Tribe to engage in a class III gaming activity. The proposed § 293.27 codifies the Department's longstanding rebuttable presumption that any revenue sharing provisions are a prohibited tax, fee, charge, or other assessment. The proposed § 293.27 also contains the Department's test to rebut that presumption. The Department codifies § 293.27 in the final rule with edits to improve readability.

§ 293.28—May a compact or extension include provisions that limit the duration of the compact?

The Department has redesignated proposed § 293.26 as § 293.28 in the final rule. This summary reflects the final rule section number.

The Department proposed a new § 293.28, addressing the appropriate duration of a compact. The Department and IGRA anticipate that compacts are long-term agreements between a Tribe and a State that reflect carefully negotiated compromises between sovereigns. The Department codifies § 293.28 in the final rule.

§ 293.29—May any other contract outside of a compact regulate Indian gaming?

The Department has redesignated proposed § 293.28 as § 293.29 in the final rule. This summary reflects the final rule section number.

The Department proposed a new § 293.29, clarifying that any agreement between a Tribe and a State, or its political subdivisions, which seeks to regulate a Tribe's right to conduct gaming—as limited by IGRA—is a gaming compact that must comply with IGRA and be submitted for review and approval by the Secretary. The Department codifies § 293.29 in the final rule with edits to improve readability.

§ 293.30—What effect does this part have on pending requests, final agency decisions already issued, and future requests?

The Department proposed a new § 293.30, clarifying that the proposed regulations are prospective and establishing the effective date of the regulations is 30 days after this final rule is published. The proposed § 293.30(b) includes a grandfather clause, which clarifies that the final rule does not alter prior Departmental decisions on compacts submitted under the 2008 Regulations. The Department codifies § 293.30 in the final rule with edits to improve certainty and clarity.

Proposed § 293.31—How does the Paperwork Reduction Act affect this part?

The Department proposed renumbering the existing § 293.16 as § 293.31 to improve overall organization of the regulations. The Department implements this change in the final rule.

## VI. Procedural Requirements

### A. Regulatory Planning and Review (E.O. 12866)

E.O. 12866, as reaffirmed by E.O. 13563 and E.O. 14094, provides that the Office of Information and Regulatory Affairs (OIRA) in the Office of Management and Budget (OMB) will review all significant rules. OIRA determined that this rule is significant under E.O. 12866 section 3(f), but not significant under section 3(f)(1).

Executive Order 14094 reaffirms the principles of E.O. 12866 and E.O. 13563 and states that regulatory analysis should facilitate agency efforts to develop regulations that serve the public interest, advance statutory objectives, and are consistent with E.O. 12866, E.O. 13563, and the Presidential Memorandum of January 20, 2021 (Modernizing Regulatory Review). Regulatory analysis, as practicable and appropriate, shall recognize distributive impacts and equity, to the extent permitted by law. E.O. 13563 emphasizes further that regulations must be based on the best available science and that the rulemaking process must allow for public participation and an open exchange of ideas. The Department and BIA developed this final rule in a manner consistent with these requirements.

Summary of Final Rule and Need for Rulemaking

The Department of the Interior (Department) is issuing revisions to its regulations located at 25 CFR part 293, which govern the Department's review and approval of Tribal-State gaming compacts under IGRA. The final rule includes revisions to the Department's existing part 293 regulations and adds provisions clarifying how the Department reviews Tribal-State gaming compacts or compacts.

The regulations that codify the Department's review process for Tribal-State gaming compacts are found at 25 CFR part 293 and were promulgated in 2008 (''2008 Regulations''). 73 FR 74004 (Dec. 5, 2008). The Department's 2008 Regulations were designed to address the process for submission by Tribes and States and consideration by the Secretary of Class III Tribal-State Gaming Compacts, and are not intended to address substantive issues. 73 FR 74004–5. The Department's consideration of substantive issues appears in decision letters, ''deemed approved'' letters, and technical assistance letters. In addition, a body of case law has developed that addresses the appropriate boundaries of class III gaming compacts. Negotiating parties have been forced to review both the body of case law as well as the Department's library of decision letters, ''deemed approved'' letters, and technical assistance letters to evaluate how the Department views both routine and more novel issues in compacts. With this final rule, the Department codifies longstanding Departmental policies and interpretation of case law in the form of substantive regulations, which will provide certainty and clarity on how the Secretary will review certain provisions in a compact.

In addition, with this final rule, the Department makes primarily technical amendments to the existing process-based regulations, including the title. The technical amendments clarify and modernize the submission and review process and contain conforming edits for internal consistency and improved readability. Some of the key process improvements include:

• updated definitions;
• clarifications of when ancillary agreements or documents are *amendments* requiring Secretarial review under IGRA;

---

[30] *See, e.g., Pueblo of Santa Ana* v. *Kelly,* 104 F.3d 1546, 1556 (10th Cir. 1997).

• updates to the submission process and documents required with a submission;

• a process change requiring the Department to provide an email acknowledging receipt of a compact and provide the date on which the 45 day review period expires;

• a process change requiring the Department to issue a letter to the parties if the compact or amendment has been approved by operation of law due to the 45-day review period expiring; and

• clarification that Tribes may submit any document or agreement to the Department for technical assistance and a determination if the agreements or documents are *amendments.*

With this final rule, the Department adds 15 sections addressing substantive issues and organizes part 293 into 4 subparts. Some of the key longstanding Departmental policies and interpretation of case law codified in the final rule include:

• requiring the parties to show that for any compact or amendment that requires the Tribe to adopt standards equivalent to State law or regulation, these mandated Tribal standards are both directly related to and necessary for the licensing and regulation of the gaming activity; *see* final rule § 293.21;

• distinguishing between compact provisions that are and are not directly related to the operation of gaming activities, based on specific factors and providing specific examples (including a section confirming that gaming compacts may include statewide remote wagering or internet gaming); *see* final rule §§ 293.22, 293.23, 293.24, 293.25, and 293.26;

• requiring the parties justify any revenue sharing provisions by demonstrating that the Tribe is the primary beneficiary of the gaming; *see* final rule § 293.27; and

• clarifying the final rule does disrupt or alter previously issued agency decisions; *see* final rule § 293.30.

*Anticipated Benefits*

With this final rule, the Department upholds the Federal-Tribal government to government trust relationship by codifying longstanding Departmental policies and interpretation of case law in the form of substantive regulations. The substantive provisions in the final rule will provide nationwide certainty and clarity on how the Secretary will review certain provisions in a compact. The final rule also reinforces Congress's intent that Indian gaming continue to provide a critical revenue source for Tribal government and reflect an exercise of Tribal sovereignty and

governance. 25 U.S.C. 2702(1). States, similarly, exercise State sovereignty and generate State revenue through State lotteries and tax revenue from State licensed gaming.

The Department also expects the final rule will reduce the need for protracted litigation and dispute resolution between Tribes, States, and third parties over permissible topics in a compact. The Department notes the body of Departmental policy and interpretations of case law codified in the final rule is built on numerous examples of protracted litigation and dispute resolution. Both *West Flagler* and *Chicken Ranch* are recent examples of this type of litigation. The final rule will improve employee licensing by requiring compacts to be consistent with NIGC's licensing regulations.

*Anticipated Costs*

The Department anticipates the final rule will have minimal costs because the final rule codifies longstanding Departmental policies and interpretation of case law. Tribes and States seeking to negotiate a compact will be able to rely on the substantive provisions in the final rule for guidance on what may or may not be included in a compact or amendment. Section 293.26, which addresses remote wagering or internet gaming, is consistent with existing case law. Additionally, States will remain free to choose whether or not to permit mobile or internet gaming in the State as well as if such gaming will be State-licensed and taxed or compact based Tribal gaming potentially with government-to-government revenue sharing.

The Department does expect the Office of Indian Gaming will experience a slight increase in requests for technical assistance. However, that increased demand will be offset by the Department's ability to rely on the final rule to provide such guidance rather than the existing body of case law and Department policy statements in decision letters and other guidance letters. Additionally, this increased demand for technical assistance will be offset by an expected reduction in legal counsel costs for Tribes and States during negotiations.

*Alternatives Considered*

The Department considered but ultimately rejected three rule making alternatives to the final rule. The first alternative the Department considered was to not engage in an update to the part 293 Rule, effectively take no rule making action. The Department rejected this alternative because it would not allow for modernization of the

Department's process and would not resolve some of the key issues which continue to result in litigation between Tribes, States, and some third parties. The second alternative the Department considered was to update the existing process-based regulations, to allow for modernizations to the Department's compact submission and acceptance process including digital submission. This alternative would codify some of the process improvements the Department has made including accepting email submissions. However, this alternative would not codify any of the Department's longstanding policy and case law interpretation resulting in continued litigation. The third alternative the Department considered was to update the existing process-based regulations with some substantive provisions but excluding § 293.26, which addresses remote wagering or internet gaming. The Department notes, the rule making effort as well as the inclusion of remote wagering or internet gaming received overwhelming support form Tribal leaders.

*B. Regulatory Flexibility Act*

The Department certifies that this final rule would not have a significant economic effect on a substantial number of small entities under the Regulatory Flexibility Act (5 U.S.C. 601 *et seq.*). This final rule codifies longstanding Departmental policies and interpretation of case law in the form of substantive regulations, which would provide certainty and clarity on how the Secretary will review certain provisions in a compact.

*C. Congressional Review Act (CRA)*

This rule does not meet the criteria in 5 U.S.C. 804(2). Specifically, it:

• Does not have an annual effect on the economy of $100 million or more.

• Will not cause a major increase in costs or prices for consumers, individual industries, Federal, State, or local government agencies, or geographic regions.

• Does not have significant adverse effects on competition, employment, investment, productivity, innovation, or the ability of U.S.-based enterprises to compete with foreign-based enterprises.

The Administrative Pay-As-You-Go Act of 2023 (Fiscal Responsibility Act of 2023, Pub. L. 118–5, div. B, title II). applies to actions that meet the definition of a rule under 5 U.S.C. 804(3). The rule does not affect direct spending and does not have any mandatory net outlays because there will be no additional full-time equivalent (FTE) costs or any other additional administrative costs to

review Class III Tribal State Gaming Compacts. The rule clarifies case law, Department Policy, and other related guidance over the last 30 plus years, so the review and approval of Class III Tribal Gaming Compacts is more efficient and better streamlined.

### D. Unfunded Mandates Reform Act of 1995

This rule would not impose an unfunded mandate on State, local, or Tribal governments, or the private sector of more than $100 million per year. The rule would not have a significant or unique effect on State, local, or Tribal governments or the private sector. A statement containing the information required by the Unfunded Mandates Reform Act (2 U.S.C. 1531 *et seq.*) is not required.

### E. Takings (E.O. 12630)

This rule would not affect a taking of private property or otherwise have taking implications under Executive Order 12630 because this rulemaking, if adopted, does not affect individual property rights protected by the Fifth Amendment or involve a compensable "taking." A takings implication assessment is not required.

### F. Federalism (E.O. 13132)

Under the criteria in section 1 of Executive Order 13132, this rule would not have sufficient federalism implications to warrant the preparation of a federalism summary impact statement. A federalism summary impact statement is not required because the Department seeks to codify longstanding Departmental policies and interpretation of case law in the form of substantive regulations which would provide certainty and clarity on how the Secretary will review certain provisions in a compact.

### G. Civil Justice Reform (E.O. 12988)

This rule complies with the requirements of Executive Order 12988. This rule:

• Meets the criteria of section 3(a), requiring that all regulations be reviewed to eliminate errors and ambiguity and be written to minimize litigation; and

• Meets the criteria of section 3(b)(2), requiring that all regulations be written in clear language and contain clear legal standards.

### H. Consultation With Indian Tribes (E.O. 13175)

The Department conducted two virtual session, one in-person consultation, and accepted oral and written comments. The consultations sessions were open to Tribal leadership and representatives of federally recognized Indian Tribes and Alaska Native Corporations.

• *In-Person Session:* The in-person consultation was held on January 13, 2023, from 1 p.m. to 4 p.m. MST, at the BLM National Training Center (NTC), 9828 N 31st Ave, Phoenix, AZ 85051.

• *1st Virtual Session:* The first virtual consultation session was held on January 19, 2023, from 1 p.m. to 4 p.m. EST.

• *2nd Virtual Session:* The second virtual consultation was held on January 30, 2023, from 2 p.m. to 5 p.m. EST.

• The Department also accepted written comments until March 1, 2023.

The Department strives to strengthen its government-to-government relationship with Indian Tribes through a commitment to consultation with Indian Tribes and recognition of their right to self-governance and Tribal sovereignty. The Department evaluated this rule under its consultation policy and the criteria in E.O. 13175 and hosted extensive consultation with federally recognized Indian Tribes in preparation of this final rule, including through two Dear Tribal Leader letters delivered to every federally recognized Tribe in the country. The Department held two listening sessions and four formal consultation sessions on the Consultation Draft. The Department has included and addressed those comments as part of the public comment record for the proposed rule. The Department then held three consultation sessions on the proposed rule. The Department has included and addressed those comments as part of the public comment record for the final rule.

### I. Paperwork Reduction Act

OMB Control No. 1076–0172 currently authorizes the collection of information related to the Class III Tribal-State Gaming Compact Process, with an expiration of August 31, 2024. This rule does not require a change to that approved information collection under the Paperwork Reduction Act (PRA), 44 U.S.C. 3501 *et seq.*

### J. National Environmental Policy Act (NEPA)

This rule would not constitute a major Federal action significantly affecting the quality of the human environment. A detailed statement under the National Environmental Policy Act of 1969 (NEPA) is not required because this is an administrative and procedural regulation. (For further information see 43 CFR 46.210(i)). The Department also determined that the rule does not involve any of the extraordinary circumstances listed in 43 CFR 46.215 that would require further analysis under NEPA.

### K. Effects on the Energy Supply (E.O. 13211)

This rule is not a significant energy action under the definition in Executive Order 13211. A Statement of Energy Effects is not required.

### L. Clarity of This Regulation

The Department is required by Executive Orders 12866 (section 1 (b)(12)), 12988 (section 3(b)(l)(B)), and 13563 (section l(a)), and by the Presidential Memorandum of June 1, 1998, to write all rules in plain language. This means that each rule we publish must:

• Be logically organized;

• Use the active voice to address readers directly;

• Use common, everyday words and clear language rather than jargon;

• Be divided into short sections and sentences; and

• Use lists and tables wherever possible.

### List of Subjects 25 CFR Part 293

Administrative practice and procedure, Gambling, Indians-Tribal government, State and local governments.

■ For the reasons stated in the preamble, the Department of the Interior, Bureau of Indian Affairs, revises 25 CFR part 293 to read as follows:

## PART 293—CLASS III TRIBAL-STATE GAMING COMPACTS

### Subpart A—General Provisions and Scope

Sec.
293.1   What is the purpose of this part?
293.2   How are key terms defined in this part?
293.3   What authority does the Secretary have to approve or disapprove compacts and amendments?
293.4   Are compacts and amendments subject to review and approval?
293.5   Are extensions to compacts or amendments subject to review and approval?

### Subpart B—Submission of Tribal-State Gaming Compacts

293.6   Who can submit a compact or amendment?
293.7   When should the Tribe or State submit a compact or amendment for review and approval?
293.8   What documents must be submitted with a compact or amendment?
293.9   Where should a compact or amendment or other requests under this part be submitted for review and approval?

**Subpart C—Secretarial Review of Tribal-State Gaming Compacts**

293.10  How long will the Secretary take to review a compact or amendment?

293.11  When will the 45-day timeline begin?

293.12  What happens if the Secretary does not act on the compact or amendment within the 45-day review period?

293.13  Who can withdraw a compact or amendment after it has been received by the Secretary?

293.14  When does a compact or amendment take effect?

293.15  When may the Secretary disapprove a compact or amendment?

**Subpart D—Scope of Tribal-State Gaming Compacts**

293.16  May a compact or amendment include provisions addressing the application of the Tribe's or the State's criminal and civil laws and regulations?

293.17  May a compact or amendment include provisions addressing the allocation of civil and criminal jurisdiction between the Tribe and the State?

293.18  May a compact or amendment include provisions addressing the State's costs for regulating gaming activities?

293.19  May a compact or amendment include provisions addressing the Tribe's taxation of gaming?

293.20  May a compact or amendment include provisions addressing the resolution of disputes for breach of the compact?

293.21  May a compact or amendment include provisions addressing standards for the operation of gaming activity and maintenance of the gaming facility?

293.22  May a compact or amendment include provisions that are directly related to the operation of gaming activities?

293.23  What factors will be used to determine whether provisions in a compact or amendment are directly related to the operation of gaming activities?

293.24  May a compact or amendment include provisions addressing rights of employees?

293.25  May a compact or amendment include provisions addressing employee background investigations and licensing?

293.26  May a compact or amendment include provisions addressing statewide remote wagering or internet gaming?

293.27  What factors will the Secretary analyze to determine if revenue sharing is lawful?

293.28  May a compact or extension include provisions that limit the duration of the compact?

293.29  May any other contract outside of a compact regulate Indian gaming?

293.30  What effect does this part have on pending requests, final agency decisions already issued, and future requests?

293.31  How does the Paperwork Reduction Act affect this part?

**Authority:** 5 U.S.C. 301; 25 U.S.C. 2, 9, 2710.

## Subpart A—General Provisions and Scope

### § 293.1  What is the purpose of this part?

This part contains:

(a) Procedures that Indian Tribes and States must use when submitting Tribal-State gaming compacts and compact amendments to the Department of the Interior (Department); and

(b) Procedures and criteria that the Secretary of the Interior (Secretary) will use for reviewing such Tribal-State gaming compacts or compact amendments.

### § 293.2  How are key terms defined in this part?

This part relies on but does not restate all defined terms set forth in the definitional section of IGRA.

(a) *Amendment* means:

(1) A change to a class III Tribal-State gaming compact other than an extension, or

(2) A change to secretarial procedures prescribed under 25 U.S.C. 2710(d)(7)(B)(vii) when such change is agreed upon by the Tribe and State.

(b) *Compact* or *Tribal-State Gaming Compact* means an intergovernmental agreement executed between Tribal and State governments under IGRA that establishes between the parties the terms and conditions for the operation and regulation of the Tribe's class III gaming activities.

(c) *Extension* means an intergovernmental agreement executed between Tribal and State governments under IGRA to change the duration of a compact or amendment.

(d) *Gaming activity* or *gaming activities* means the conduct of class III gaming involving the three required elements of chance, consideration, and prize or reward.

(e) *Gaming facility* means the physical building or structure situated on Indian lands where the gaming activity occurs.

(f) *Gaming spaces* means the areas within a gaming facility (as defined in paragraph (e) of this section) that are directly related to and necessary for the conduct of class III gaming such as: the casino floor; vault; count room; surveillance, management, and information technology areas; class III gaming device and supplies storage areas; and other secured areas where the operation or management of class III gaming takes place.

(g) *IGRA* means the Indian Gaming Regulatory Act of 1988 (Pub. L. 100–497) 102 Stat. 2467 dated October 17, 1988, (Codified at 25 U.S.C. 2701–2721 (1988)) and any amendments.

(h) *Meaningful concession* means:

(1) Something of value to the Tribe;

(2) Directly related to gaming activity;

(3) Something that carries out the purposes of IGRA; and

(4) Not a subject over which a State is otherwise obligated to negotiate under IGRA.

(i) *Substantial economic benefit* means:

(1) A beneficial impact to the Tribe;

(2) Resulting from a meaningful concession;

(3) Made with a Tribe's economic circumstances in mind;

(4) Spans the life of the compact; and

(5) Demonstrated by an economic/market analysis or similar documentation submitted by the Tribe or the State.

(j) *Tribe* means Indian Tribe as defined in 25 U.S.C. 2703(5).

### § 293.3  What authority does the Secretary have to approve or disapprove compacts and amendments?

The Secretary has the authority to approve a compact or amendment "entered into" by a Tribe and a State under IGRA. See § 293.15 for the Secretary's authority to disapprove compacts or amendments.

### § 293.4  Are compacts and amendments subject to review and approval?

(a) Yes. All compacts and amendments, regardless of whether they are substantive or technical, must be submitted for review and approval by the Secretary.

(b) If an ancillary agreement or document:

(1) Modifies a term in a compact or an amendment, then it must be submitted for review and approval by the Secretary.

(2) Implements or clarifies a provision within a compact or an amendment and is not inconsistent with an approved compact or amendment, it does not constitute a compact or an amendment and need not be submitted for review and approval by the Secretary.

(3) Is expressly contemplated within an approved compact or amendment, such as internal controls or a memorandum of agreement between the Tribal and State regulators, then such agreement or document is not subject to review and approval so long as it is not inconsistent with the approved compact or amendment.

(4) Interprets language in a compact or an amendment concerning a Tribe's revenue sharing to the State, its agencies, or political subdivisions under § 293.27 or includes any of the topics identified in § 293.23, then it may constitute an amendment subject to review and approval by the Secretary.

(c) If a Tribe or a State (including its political subdivisions) is concerned that

its agreement or other document may be considered a "compact" or "amendment," either party may request in writing a determination from the Department if their agreement or other document is a compact or amendment and therefore must be approved and a notice published in the **Federal Register** prior to the agreement or other document becoming effective. The Department will issue a letter within 30 days of receipt of the written request, providing notice of the Secretary's determination. If the agreement or other document is determined to be a compact or amendment, it must be resubmitted for Secretarial review and approval consistent with the requirements of subpart B of this part.

### § 293.5 Are extensions to compacts or amendments subject to review and approval?

No. Approval of an extension to a compact or amendment is not required if the extension does not include any changes to any of the other terms of the compact or amendment. However, the parties must submit the documents required by § 293.8(a) through (c). The extension becomes effective only upon publication in the **Federal Register**.

### Subpart B—Submission of Tribal-State Gaming Compacts

### § 293.6 Who can submit a compact or amendment?

Either party (Tribe or State) to a compact or amendment can submit the compact or amendment to the Secretary for review and approval.

### § 293.7 When should the Tribe or State submit a compact or amendment for review and approval?

The Tribe or State should submit the compact or amendment after it has been duly executed by the Tribe and the State in accordance with applicable Tribal and State law or is otherwise binding on the parties.

### § 293.8 What documents must be submitted with a compact or amendment?

Documentation submitted with a compact or amendment must include:

(a) At least one original compact or amendment executed by both the Tribe and the State;

(b) A Tribal resolution or other document, including the date and place of adoption and the result of any vote taken, that certifies that the Tribe has approved the compact or amendment in accordance with applicable Tribal law and IGRA;

(c) Certification from the Governor or other representative of the State that

they are authorized to enter into the compact or amendment in accordance with applicable State law;

(d) Any agreement between a Tribe and a State, its agencies, or its political subdivisions required by a compact or amendment if the agreement:

(1) Requires the Tribe to make payments to the State, its agencies, or its political subdivisions; or

(2) Restricts or regulates a Tribe's use and enjoyment of its Indian lands, and any other ancillary agreements, documents, ordinances, or laws required by the compact or amendment that the Tribe determines are relevant to the Secretary's review; and

(e) Any other documentation requested by the Secretary that is necessary to determine whether to approve or disapprove the compact or amendment. If a compact includes revenue sharing, a market analysis or similar documentation as required by § 293.27.

### § 293.9 Where should a compact or amendment or other requests under this part be submitted for review and approval?

Submit compacts, amendments, and all other requests under this part to the Director, Office of Indian Gaming, U.S. Department of the Interior, 1849 C Street NW, Mail Stop 3543, Washington, DC 20240. If this address changes, a document with the new address will be sent for publication in the **Federal Register** within five business days. Compacts and amendments may also be submitted electronically to *Indian Gaming@bia.gov* as long as the original copy is submitted to the address listed in this section.

### Subpart C—Secretarial Review of Tribal-State Gaming Compacts

### § 293.10 How long will the Secretary take to review a compact or amendment?

(a) The Secretary must approve or disapprove a compact or amendment within 45 calendar days after receiving the compact or amendment.

(b) The Secretary will notify the Tribe and the State in writing of the decision to approve or disapprove a compact or amendment.

### § 293.11 When will the 45-day timeline begin?

The 45-day timeline will begin when a compact or amendment is received either electronically or hard copy submission and date stamped by the Office of Indian Gaming. The Department will provide an email acknowledgement to the Tribe and the State of receipt and provide the date on which the Secretary's 45-day review

period will expire for electronically submitted compacts or amendments.

### § 293.12 What happens if the Secretary does not act on the compact or amendment within the 45-day review period?

If the Secretary does not take action to approve or disapprove a compact or amendment within the 45-day review period, the compact or amendment is approved by operation of law, but only to the extent the compact or amendment is consistent with the provisions of IGRA. The Secretary will issue a letter informing the parties that the compact or amendment has been approved by operation of law after the 45th day and before the 90th day. The Secretary's letter may include guidance to the parties reflecting the Department's interpretation of IGRA. The compact or amendment that is approved by operation of law becomes effective only upon publication in the **Federal Register**.

### § 293.13 Who can withdraw a compact or amendment after it has been received by the Secretary?

To withdraw a compact or amendment after it has been received by the Secretary, the Tribe and the State must both submit a written request to the Director, Office of Indian Gaming at the address listed in § 293.9.

### § 293.14 When does a compact or amendment take effect?

(a) A compact or amendment, that is affirmatively approved or approved by operation of law, takes effect on the date that notice of its approval is published in the **Federal Register**.

(b) The notice of affirmative approval or approval by operation of law must be published in the **Federal Register** within 90 days from the date the compact or amendment is received by the Office of Indian Gaming.

### § 293.15 When may the Secretary disapprove a compact or amendment?

The Secretary may disapprove a compact or amendment only if:

(a) It violates:

(1) Any provision of IGRA;

(2) Any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands; or

(3) The trust obligations of the United States to Indians; or

(b) The documents required in § 293.8 are not submitted and the parties have been informed in writing of the missing documents and are provided with an opportunity to supply those documents.

## Subpart D—Scope of Tribal-State Gaming Compacts

### § 293.16    May a compact or amendment include provisions addressing the application of the Tribe's or the State's criminal and civil laws and regulations?

Yes. A compact or amendment may include provisions addressing the application of the criminal and civil laws and regulations of the Tribe or the State that are directly related to and necessary for the licensing and regulation of the gaming activity. At the request of the Secretary pursuant to § 293.8(e), the parties must show that these laws and regulations are both directly related to and necessary for the licensing and regulation of the gaming activity.

### § 293.17    May a compact or amendment include provisions addressing the allocation of criminal and civil jurisdiction between the Tribe and the State?

Yes. A compact or amendment may include provisions allocating criminal and civil jurisdiction between the Tribe and the State necessary for the enforcement of the laws and regulations described in § 293.16.

### § 293.18    May a compact or amendment include provisions addressing the State's costs for regulating gaming activities?

Yes. If the compact or amendment includes a negotiated allocation of jurisdiction to the State for the regulation of the gaming activity, the compact or amendment may include provisions to defray the State's actual and reasonable costs for regulating the specific Tribe's gaming activity. If the compact does not include requirements for the State to show actual and reasonable annual expenses for regulating the specific Tribe's gaming activity over the life of the compact, the lack of such a requirement may be considered evidence of a violation of IGRA.

### § 293.19    May a compact or amendment include provisions addressing the Tribe's taxation of gaming?

Yes. A compact or amendment may include provisions addressing the Tribe's taxation of tribally licensed gaming activity in amounts comparable to the State's taxation of State licensed gaming activities. A compact may not include provisions addressing the Tribe's taxation of other activities that may occur within or near the Tribe's gaming facility. The inclusion of provisions addressing the Tribe's taxation of other activities may be considered evidence of a violation of IGRA.

### § 293.20    May a compact or amendment include provisions addressing the resolution of disputes for breach of the compact?

Yes. A compact or amendment may include provisions addressing how the parties will resolve a breach of the compact or other disputes arising from the compact including mutual limited waivers of sovereign immunity. If a Tribe is concerned that an agreement or other document including, but not limited to, any dispute resolution, settlement agreement, or arbitration decision, constitutes a compact or amendment, or if the Tribe is concerned that the agreement or other document interprets the Tribe's compact or amendment to govern matters that are not directly related to the operation of gaming activities, the Tribe may submit the document to the Department as set forth in § 293.4. The inclusion of provisions addressing dispute resolution outside of Federal court in a manner that seeks to avoid the Secretary's review may be considered evidence of a violation of IGRA.

### § 293.21    May a compact or amendment include provisions addressing standards for the operation of gaming activity and maintenance of the gaming facility?

Yes. A compact or amendment may include provisions addressing the Tribe's standards for the operation of the gaming activity within gaming spaces, as well as the Tribe's standards for the maintenance of the gaming facility, including licensing. If a compact or amendment mandates that the Tribe adopt standards equivalent or comparable to the standards set forth in a State law or regulation, the parties must show that these mandated Tribal standards are both directly related to and necessary for the licensing and regulation of the gaming activity.

### § 293.22    May a compact or amendment include provisions that are directly related to the operation of gaming activities?

Yes. A compact or amendment may include provisions that are directly related to the operation of gaming activities; such provisions may address activities occurring off of Indian lands.

### § 293.23    What factors will be used to determine whether provisions in a compact or amendment are directly related to the operation of gaming activities?

(a) The parties must show that these provisions described in § 293.22 are directly connected to the Tribe's conduct of class III gaming activities. Examples include, but are not limited to:

(1) Minimum age for patrons to participate in gaming;

(2) Transportation of gaming devices and equipment; or

(3) Exclusion of patrons.

(b) Mutually beneficial proximity, or even co-management alone is insufficient to establish a "direct connection" between the Tribe's class III gaming and adjacent business or amenities. Additionally, Tribal infrastructure projects or economic development activities that are funded by gaming revenue and may service or otherwise provide a benefit to the gaming activity are not directly related to the conduct of gaming without other evidence of a direct connection.

(c) Provisions which are not directly related to the operation of gaming activities include, but are not limited to:

(1) Expressly limiting third party Tribes' rights to conduct gaming activities under IGRA;

(2) Relating to treaty rights;

(3) Relating to tobacco sales;

(4) Requiring compliance with or adoption of State environmental regulation of projects or activities that are not directly related to the Tribe's operation of gaming activities and maintenance of the gaming facility;

(5) Requiring memorandum of understanding, intergovernmental agreements, or similar agreements with local governments;

(6) Requiring enforcement of State court orders garnishing employee wages or patron winnings;

(7) Granting State court jurisdiction over tort claims arising from the Tribe's conduct of class III gaming activities;

(8) Regulating non-gaming conduct not within gaming spaces or non-gaming Tribal economic activities, including activities in or adjacent to the gaming facility, including, but not limited to, restaurants, nightclubs, hotels, event centers, water parks, gas stations, and convenience stores; or

(9) Relating to the conduct of Tribal class I or class II gaming activities.

(d) The inclusion of provisions for which the parties cannot show a direct connection to the Tribe's conduct of class III gaming activities may be considered evidence of a violation of IGRA.

### § 293.24    May a compact or amendment include provisions addressing rights of employees?

Yes. Notwithstanding § 293.23(c)(8), a compact or amendment may include provisions or procedures addressing the organizational and representational rights of employees, including service or hospitality workers, where such provisions or procedures are "directly related" to the operation of gaming activities as articulated by the Ninth

Circuit in *Chicken Ranch Rancheria of Me-Wuk Indians* v. *California,* 42 F.4th 1024, 1035–1040 & n.2 (citing *Coyote Valley Band of Pomo Indians* v. *California (In re Indian Gaming Related Cases Chemehuevi Indian Tribe),* 331 F.3d 1094, 1116 (9th Cir. 2003)).

### § 293.25 May a compact or amendment include provisions addressing employee background investigations and licensing?

Yes. Consistent with 25 CFR 558.1, a compact or amendment may include provisions addressing the Tribe's standards and requirements for employee background investigations and licensing. If the compact or amendment includes a negotiated allocation to the State for concurring in or processing employee background investigations or licenses, the parties must show that the licensing process is as stringent and timely as the background investigation and licensing requirements of 25 CFR parts 556 and 558. The compact may also include provisions for the reasonable reimbursement of background investigation and licensing fees.

### § 293.26 May a compact or amendment include provisions addressing statewide remote wagering or internet gaming?

Yes. A compact or amendment consistent with §§ 293.16 and 293.22 may include provisions addressing statewide remote wagering or internet gaming that is directly related to the operation of gaming activity on Indian lands. A compact or compact amendment may not, however, alter otherwise applicable Federal law. A compact may specifically include, for regulatory purposes, provisions allocating State and Tribal jurisdiction within the State over remote wagering or internet gaming originating outside Indian lands where:

(a) State law and the compact or amendment deem the gaming to take place, for the purposes of State and Tribal law, on the Tribe's Indian lands where the server accepting the wagers is located;

(b) The Tribe regulates the gaming; and

(c) The player initiating the wager is not located on another Tribe's Indian lands within the State, unless that Tribe has lawfully consented.

### § 293.27 What factors will the Secretary analyze to determine if revenue sharing is lawful?

(a) A compact or amendment may include provisions that address revenue sharing in exchange for a State's meaningful concessions resulting in a substantial economic benefit for the Tribe.

(b) The Department reviews revenue sharing provisions with great scrutiny beginning with the presumption that a Tribe's payment to a State or local government for anything beyond § 293.18 regulatory fee is a prohibited ''tax, fee, charge, or other assessment.'' In order for the Department to approve revenue sharing the parties must show through documentation, such as a market study or other similar evidence, that:

(1) The Tribe has requested and the State has offered specific meaningful concessions the State was otherwise not required to negotiate;

(2) The value of the specific meaningful concessions offered by the State provides substantial economic benefits to the Tribe in a manner justifying the revenue sharing required by the compact; and

(3) The Tribe is the primary beneficiary of the gaming measured by projected revenue to the Tribe against projected revenue shared with the State.

(c) The inclusion of revenue sharing provisions to the State that is not justified by meaningful concessions of substantial economic benefit to the Tribe may be considered evidence of a violation of IGRA.

### § 293.28 May a compact or extension include provisions that limit the duration of the compact?

Yes. However, IGRA anticipates compacts are long-term agreements between a Tribe and a State. These agreements reflect carefully negotiated compromises between sovereigns. A refusal to negotiate a long-term compact, or a short-term extension of at least one year to allow for negotiations to continue, may be considered evidence of a violation of IGRA.

### § 293.29 May any other contract outside of a compact regulate Indian gaming?

No. Subject to §§ 293.4(c) and 293.8(d), any contract or other agreement between a Tribe and a State, its agencies, or its political subdivisions that seeks to regulate a Tribe's right to conduct gaming—as limited by IGRA—is a gaming compact that must comply with IGRA and be submitted for review and approval by the Secretary consistent with § 293.8. A Tribe may submit any other agreement between the Tribe and the State, its agencies, or its political subdivisions for a determination if the agreement is a compact or amendment under § 293.4(c). This includes agreements mandated or required by a compact or amendment, which contain provisions for the payment from a Tribe's gaming revenue or restricts or regulates a Tribe's use and enjoyment of its Indian lands, including a Tribe's conduct of gaming.

### § 293.30 What effect does this part have on pending requests, final agency decisions already issued, and future requests?

(a) Compacts and amendments pending on March 22, 2024, will continue to be processed under this part, promulgated on December 5, 2008, and revised June 4, 2020, unless the Tribe or the State requests in writing to proceed under this part. Upon receipt of such a request, the Secretary shall process the pending compact or amendment under this part.

(b) This part does not alter final agency decisions made pursuant to this part before March 22, 2024.

(c) All compacts and amendments submitted after March 22, 2024 will be processed under this part.

### § 293.31 How does the Paperwork Reduction Act affect this part?

The information collection requirements contained in this part have been approved by the Office of Management and Budget (OMB) under the Paperwork Reduction Act of 1995, 44 U.S.C. 3507(d), and assigned control number 1076–0172. A Federal agency may not conduct or sponsor, and you are not required to respond to, a collection of information unless it displays a currently valid OMB control number.

**Bryan Newland,**

*Assistant Secretary—Indian Affairs.*

[FR Doc. 2024–03456 Filed 2–20–24; 8:45 am]

**BILLING CODE 4337–15–P**